1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, et al.,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

Case No. 2:23-cv-01495-JHC

**AMAZON'S MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
March 22, 2024

*ORAL ARGUMENT REQUESTED*

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY .......................................................................... 1

STATEMENT OF THE CASE ................................................................................... 4

    A.    The Complaint's Allegations ....................................................... 4

    B.    The Complaint's Claims .............................................................. 8

ARGUMENT ........................................................................................................... 8

I.     THE COMPLAINT FAILS TO STATE A CLAIM OF ANTICOMPETITIVE
      MONOPOLY MAINTENANCE UNDER SECTION 2 OF THE SHERMAN ACT ....... 8

    A.    The Complaint Attacks Well-Established Forms of Competition on the Merits .... 9

    B.    The Complaint Alleges No Plausible Anticompetitive Effects ........................... 13

II.    COUNTS III AND IV SHOULD BE DISMISSED BECAUSE THE FTC MAY
      NOT BRING STANDALONE SECTION 5 CLAIMS IN DISTRICT COURT ............. 15

III.   COUNT IV ALSO SHOULD BE DISMISSED AS IRRECONCILABLE WITH
      SETTLED PRECEDENT AND AS UNTIMELY .......................................... 18

IV.   THE STATE LAW CLAIMS ALSO SHOULD BE DISMISSED ................................. 20

    A.    State-Law Equivalents Fall with the Sherman Act Claims................................... 20

    B.    Pennsylvania Does Not Recognize a Sherman Act Section 2 Equivalent ............ 21

    C.    The Complaint Does Not Allege Violations of State Consumer-Protection
        Statutes .......................................................................................... 21

    D.    Claims Based on Territorially Limited State Laws Fail ....................................... 22

    E.    Count XV (New York) Should Be Dismissed ..................................................... 23

CONCLUSION........................................................................................................ 23

AMAZON'S MOTION TO DISMISS - i
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# TABLE OF AUTHORITIES

## Cases

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
  499 F.2d 232 (2d Cir. 1974)................................................................................23

*AMG Cap. Mgmt., LLC v. FTC*,
  141 S. Ct. 1341 (2021)...................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................15

*Atl. Ref. Co. v. FTC*,
  381 U.S. 357 (1965).......................................................................................17

*Atl. Richfield Co. v. USA Petrol. Co.*,
  495 U.S. 328 (1990).......................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................8, 13, 14, 18

*Boise Cascade Corp. v. FTC*,
  637 F.2d 573 (9th Cir. 1980) .......................................................................16, 19

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ......................................................................13, 14

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ...................................................................................*passim*

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977).........................................................................................9

*Cal. Comput. Prod., Inc. v. Int'l Bus. Machs. Corp.*,
  613 F.2d 727 (9th Cir. 1979) .............................................................................9

*Cargill, Inc. v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986)......................................................................................9, 10

*Coronavirus Rep. v. Apple, Inc.*,
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021), *aff'd*, 85 F.4th 948 (9th Cir. 2023)...............12

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) .........................................................................1, 9

*Dreamstime.com, LLC v. Google LLC*,
    54 F.4th 1130 (9th Cir. 2022) ...................................................................................11

*E.I. du Pont de Nemours & Co. v. FTC*,
    729 F.2d 128 (2d Cir. 1984).......................................................................................19

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) .....................................................................................12

*FTC v. Abbott Lab'ys*,
    853 F. Supp. 526 (D.D.C. 1994) ..............................................................................17

*FTC v. Food Town Stores, Inc.*,
    539 F.2d 1339 (4th Cir. 1976) ..................................................................................17

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ........................................................................12, 13, 20

*FTC v. Shire Viropharma, Inc.*,
    917 F.3d 147 (3d Cir. 2019).......................................................................................20

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972) ...................................................................................................17

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ....................................................................................7

*Hunt v. U.S. Tobacco Co.*,
    2006 WL 2619806 (E.D. Pa. Sept. 11, 2006), *vacated on other grounds*,
    538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) .......................................22

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ..................................................................................19

*Island Mortg. of N.J. v. 3M (Minn. Mining & Mfg. Co.)*,
    860 A.2d 1013 (N.J. Super. Ct. 2004) ......................................................................21

*Lavoie v. Bayer Corp.*,
    2002 WL 230962 (Conn. Super. Ct. Jan. 23, 2002)..................................................22

*Long v. Dell, Inc.*,
    93 A.3d 988 (R.I. 2014) ............................................................................................22

*Md. Staffing Servs., Inc. v. Manpower, Inc.*,
    936 F. Supp. 1494 (E.D. Wis. 1996).........................................................................22

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Murphy Tugboat Co. v. Crowley*,
   658 F.2d 1256 (9th Cir. 1981) ...................................................................................10

*N. Secs. Co. v. United States*,
   193 U.S. 197 (1904)...................................................................................................21

*New Jersey v. Lawn King, Inc.*,
   375 A.2d 295 (N.J. Super. Ct. Law. Div. 1977), *rev'd on other grounds*,
   404 A.2d 1215 (N.J. Super. Ct. App. Div. 1979)................................................22, 23

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ..................................................................................7, 8

*O'Donnell v. Bank of Am., Nat'l Ass'n*,
   504 F. App'x 566 (9th Cir. 2013) ..............................................................................23

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018)...............................................................................................10

*Prentice v. Title Ins. Co. of Minn.*,
   500 N.W.2d 658 (Wis. 1993).....................................................................................20

*Sambreel Holdings LLC v. Facebook, Inc.*,
   906 F. Supp. 2d 1070 (S.D. Cal. 2012)......................................................................12

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) .........................................................................22

*Smith v. Wells Fargo Bank, N.A.*,
   158 F. Supp. 3d 91 (D. Conn.), *aff'd*, 666 F. App'x 84 (2d Cir. 2016) ...................22

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993).....................................................................................................9

*Stearns Airport Equip. Co. v. FMC Corp.*,
   170 F.3d 518 (5th Cir. 1999) .....................................................................................12

*Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*,
   998 F.2d 1073 (1st Cir. 1993)....................................................................................20

Br. for the United States, *United States v. Am. Express*,
   No. 15-1672 (2d Cir. filed Sept. 14, 2015), 2015 WL 5450937 ...........................2, 11

*United States v. AT&T Inc.*,
   310 F. Supp. 3d 161 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019)...........14

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) .................................................................................9

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
    549 U.S. 312 (2007) ...............................................................................10

*Young v. Seaway Pipeline, Inc.*,
    576 P.2d 1148 (Okla. 1977) ....................................................................23

**Statutes**

15 U.S.C. § 45 ................................................................................17, 21

15 U.S.C. § 53 ................................................................................17, 19

Conn. Gen. Stat. § 35-44b ......................................................................20

Md. Code Ann. Com. Law § 11-202 ........................................................20

Md. Code, Com. Law § 11-204 ................................................................22

Mich. Comp. Laws § 445.784(2) .............................................................20

N.J. Stat. § 56:9-4(a) ..............................................................................22

N.J. Stat. §§ 56:9-18, 56:8-4 ...................................................................20

Nev. Rev. Stat § 598A.050 ......................................................................20

New York Executive Law § 63(12) ..........................................................23

79 Okla. Stat. § 203 ..........................................................................22, 23

79 Okla. Stat. § 212 ...............................................................................20

Or. Rev. Stat. § 646.715(2) .....................................................................20

R.I. Gen. Laws § 6-13.1-1(6) ..................................................................22

R.I. Gen. Laws § 6-36-2(b) .....................................................................20

**Other**

Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
    Principles and Their Application* ¶ 1436a (2023) ....................................19

*Antitrust Laws and Trade Regulation* § 138.03 .........................................21

AMAZON'S MOTION TO DISMISS - v
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, 116th
Cong., *Investigation of Competition in Digital Markets* 397 (Comm. Print 2020) ................11

Lina M. Khan, *Amazon's Antitrust Paradox*, 126 Yale L.J. 710, 805 (2017) ........................3, 5, 6

FTC, *Policy Statement Regarding the Scope of Unfair Methods of Competition Under
Section 5 of the FTC Act* (Nov. 10, 2022),
https://www.ftc.gov/system/files/ftc_gov/pdf/P221202Section5PolicyStatement.pdf............16

*Statement of Principles Regarding Enforcement of FTC Act as a Competition Statute*
(Aug. 13, 2015), https://www.ftc.gov/news-events/news/press-releases/2015/08/ftc-
issues-statement-principles-regarding-enforcement-ftc-act-competition-statute ...................16

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## INTRODUCTION AND SUMMARY

Amazon competes every minute of every day with thousands of online and brick-and-mortar retailers. To meet that competition, Amazon has relentlessly innovated, delivering previously unimagined benefits for consumers and pushing competitors to do likewise, all to make every penny of a consumer's purchase count for more. Amazon promptly matches rivals' discounts, features competitively priced deals rather than overpriced ones, and ensures best-in-class delivery for its Prime subscribers. Those practices—the targets of this antitrust Complaint—benefit consumers and are the essence of competition. Because "[a]ntitrust law does not seek to punish economic behavior that benefits consumers," *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023), the Complaint should be dismissed.

1.     **Sherman Act claims.** To state a Sherman Act claim, the Complaint must plausibly allege facts showing, among other things, that Amazon engaged in anticompetitive *conduct* that has an anticompetitive *effect*.[1] It fails on both fronts.

*Failure to allege anticompetitive conduct.* The conduct challenged in the Complaint consists of common retail practices that presumptively benefit consumers. The Complaint labels these practices "anticompetitive," but the facts alleged rebut that epithet. Consider the Complaint's allegation that Amazon "rapidly" matches competitors' price cuts. Complaint ("Compl.") ¶ 20, ECF No. 1. Matching rivals' discounts is not, in Plaintiffs' jargon, an "anti-discounting tactic"; it *is* discounting, and the antitrust laws affirmatively encourage it. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223-24 (1993). The Complaint also faults Amazon for featuring competitively priced offers, and declining to feature uncompetitive ones, in the "Featured Offer" or "Buy Box." Compl. ¶ 16. As the government previously (and correctly) confirmed, these types of purchasing recommendations from retailers to consumers are "both pro-competitive and

---

[1] Plaintiffs also must prove that Amazon has monopoly power in a properly defined antitrust market, and the Complaint's highly gerrymandered market is unlikely to survive that test. *See infra* p. 7. That factual dispute need not be resolved in this motion.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   ubiquitous." Br. for the United States at 46, *United States v. Am. Express*, No. 15-1672 (2d Cir.

2   filed Sept. 14, 2015), 2015 WL 5450937, at *46 ("U.S. Amex Br."). Under the Complaint's theory,

3   Amazon would be required to feature what it knows are bad deals.

4       Finally, the Complaint takes issue with Amazon's practice of highlighting with the Prime

5   badge only those offers that it is confident will meet customers' expectations for fast, free, and

6   reliable delivery. It alleges that Amazon does so to push sellers to use Amazon's fulfillment

7   services. Even if that allegation were true (it is not), such seller recommendations—made to protect

8   trust in a retailer's brand and to deliver products to consumers with unprecedented speed, service,

9   and reliability—are presumptively procompetitive.

10       ***Failure to allege plausible anticompetitive effects.*** Because the challenged conduct is

11   facially procompetitive, Plaintiffs face an even greater challenge to plead facts showing that the

12   conduct nonetheless harmed consumers. The Complaint does not carry that burden.

13       For Amazon's practice of matching other retailers' discounts, the Complaint cannot meet

14   that burden because such above-cost discounting is not only procompetitive but also categorically

15   lawful.

16       As to the other challenged practices, the Complaint does not acknowledge the facially

17   procompetitive effects of featuring well-priced offers, let alone assert facts plausibly showing that

18   despite those effects, market-wide prices have risen—whether on average or for any particular

19   product. Indeed, the Complaint does not identify a single product or product category for which

20   prices have risen as a result of the challenged conduct. Instead, it implausibly, and illogically,

21   assumes that Amazon's efforts to keep featured prices low on Amazon somehow raised consumer

22   prices across the whole economy. At most, the Complaint contains vague allegations that a handful

23   of sellers have responded, not by lowering their prices in Amazon's store, but by raising them

24   elsewhere. But anecdotes are insufficient to plead a claim under antitrust law's rule of reason.

25       The Prime-badge allegations fare no better. The Complaint claims that Amazon's conduct

26   "raises the cost of multihoming" for sellers who offer their products both in Amazon's store and

AMAZON'S MOTION TO DISMISS - 2
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    elsewhere, and somehow harms "rival … marketplaces" and "independent fulfillment providers."

2    Compl. ¶¶ 355, 396. But it does not, as it must, allege facts that support these conclusory assertions.

3    It provides no factual support at all for its (incorrect) assertion that multihoming sellers "must

4    maintain a separate supply of inventory" for Amazon customers and "a separate fulfillment

5    provider to serve" other customers. *Id.* ¶ 354. And it does not identify a single supposedly

6    "foreclosed" rival. That is no surprise. It defies common sense to suggest that Amazon's use of the

7    Prime badge could have marginalized retail heavyweights like Walmart and Target or delivery

8    incumbents like UPS, FedEx, and the U.S. Postal Service—some of which Amazon uses to deliver

9    orders today—let alone any other entity.

10   Precisely because Amazon's conduct falls well within settled Sherman Act precedent, the

11   Federal Trade Commission's ("FTC's") current Chair candidly acknowledged in 2017 that it

12   would be necessary to "revise antitrust law" to condemn Amazon's actions. Lina M. Khan,

13   *Amazon's Antitrust Paradox*, 126 Yale L.J. 710, 805 (2017). Six years later, antitrust law remains

14   unchanged, but the FTC has sued Amazon under the Sherman Act anyway. Those claims are

15   untenable and should be dismissed.

16   **2.      "Standalone" FTC Act claims.** The weakness of the Complaint's Sherman Act

17   claims explains why the FTC has asked this Court alternatively to condemn the alleged conduct

18   under Section 5 of the FTC Act even if it does not violate the Sherman Act. By bringing these

19   "standalone" claims (Counts III and IV), the FTC implicitly recognizes that it cannot meet its

20   burdens of proof under the Sherman Act. But such claims must be dismissed because the FTC

21   lacks statutory authority to ask a district *court*, in the first instance, to determine whether conduct

22   that would not otherwise violate the antitrust laws is "unfair" under Section 5 of the FTC Act. The

23   FTC must first make such a novel "unfairness" determination in its administrative court. Indeed,

24   this Court would be the first Article III court ever to decide in the first instance that a defendant's

25   competitive methods are "unfair" under Section 5 of the FTC Act even though they do not violate

26   the Sherman Act. Count IV also should be dismissed on two additional grounds: the FTC's

AMAZON'S MOTION TO DISMISS - 3
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

standalone claim about the long-discontinued "Nessie" experimental program is (1) irreconcilable with settled Section 5 precedent and (2) untimely.

3.      **State law claims.** The state law claims fail for several, often overlapping, reasons. For example, all state-law claims paralleling the Sherman Act claims fail for the same reasons the Sherman Act claims fail (and at least one state does not have a state equivalent to Section 2 of the Sherman Act), state-law claims premised on consumer-protection theories are not supported by any facts in the Complaint, and state antitrust laws that are territorially limited cannot support claims against business practices that, like those alleged here, are inherently interstate in nature.

## STATEMENT OF THE CASE

### A.      The Complaint's Allegations

*Amazon's store.* When Amazon first opened for business, it "sold goods to shoppers by purchasing items wholesale and reselling them on its website." Compl. ¶ 68. The Complaint uses the term "Amazon Retail" to refer to this traditional vendor-retailer relationship, which Amazon continues to use today. *Id.* ¶ 70. When pricing its Retail products, Amazon tries to match the lowest price its competitors are charging for those products. *Id.* ¶ 329. Years ago, Amazon experimented with an automated pricing system—"Nessie"—that would, for "limited" products and duration, match to the second-lowest competitor instead of the absolute lowest. *Id.* ¶¶ 419-22. Amazon stopped those "Nessie" experiments in 2019, *id.* ¶ 430, and today continues to match to the lowest price, *id.* ¶ 329.

In 2000, Amazon pursued a "Marketplace" idea, inviting third-party sellers to sell directly in its store "side-by-side" with Amazon Retail. Compl. ¶¶ 71, 76. By 2021, more than 560,000 active third-party sellers operated in Amazon's store. *Id.* ¶ 74. That innovation benefited both consumers, by "exponentially expand[ing] the selection of products" available to them, *id.* ¶¶ 74, 78, and third-party sellers, who now make the majority of sales in Amazon's store, *id.* ¶ 75. As the FTC's current Chair previously acknowledged, consumers "universally seem to love" Amazon

AMAZON'S MOTION TO DISMISS - 4
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

because it has "delivered enormous benefits to [them]—not to mention revolutionized e-commerce." Khan, *supra* p. 3, at 714, 716.

"[S]hopper[s] browsing on Amazon" observe "no obvious differences" between Amazon Retail listings (where Amazon sets the price and controls the delivery experience) and third-party seller listings (where third-party sellers set the price and control the delivery experience). Compl. ¶¶ 19, 76, 192-96. Moreover, in many instances, a single product offered for sale in Amazon's store—such as a 5-pack of "Pilot G2 Premium Gel Roller Pens"—is "offered by more than one seller." *Id.* ¶¶ 83-84. To make the experience of choosing among these offers more convenient, Amazon developed a method of featuring the offer most likely to be preferred by customers. *Id.* ¶ 84. Amazon "calls this displayed offer the 'Featured Offer'" and "[b]eing chosen as the Featured Offer is commonly known as 'winning' the Buy Box." *Id.*; *compare id.* Fig. 4a (displaying Amazon's Featured Offer for 5-pack of "Pilot G2 Premium Gel Roller Pens"), *with id.* Fig. 5a (displaying additional offers for 5-pack of "Pilot G2 Premium Gel Roller Pens" with different prices, ship speeds, sellers, and seller star ratings).

Amazon works hard to ensure that the Featured Offer it selects for any given product will provide a good experience for customers. Third-party sellers in Amazon's store set their own prices for the products they offer, and Amazon generally makes all such offers available to customers. Compl. ¶¶ 19, 86. But Amazon will not select a third-party seller's offer to be the Featured Offer if it knows that another reputable retailer is offering the same product for less elsewhere. *Id.* ¶ 277. Indeed, Amazon would rather feature no offer—and therefore not display a "Buy Box" at all for certain products—if doing so risks losing a customer's trust. *Id.* According to the Complaint, Amazon also has required that certain "important" sellers offer competitive prices, wide selection, and reliable in-stock availability to help maintain Amazon's reputation for a great customer experience. *Id.* ¶¶ 288, 291-92.[2]

---

[2] Under this policy, Amazon may source certain sellers' products at wholesale, and offer them directly to customers. *See* Standards for Brands Selling in the Amazon Store, https://sellercentral.amazon.com/help/hub/reference/external/G201797950?locale=en-US.

1    ***Amazon develops fulfillment services and launches Amazon Prime***. Amazon also

2    invested in a fulfillment infrastructure to give customers access to two-, one-, and sometimes same-

3    day delivery. "[F]ulfillment is a significant business cost." Compl. ¶ 110. Thus, in 2006, Amazon

4    made the lower-cost infrastructure it had developed for its own offerings available to third-party

5    sellers, in a program known as "Fulfilment by Amazon" ("FBA"). *Id.* ¶ 108. A seller's voluntary

6    participation in FBA—through which sellers send products to Amazon fulfillment centers, and

7    Amazon then stores, retrieves, packages, and coordinates delivery of the product, *id.* ¶¶ 109-12—

8    allows sellers to ship goods quickly and reliably without paying the higher fees it would otherwise

9    have to pay the shipping incumbents. *Id.* ¶ 110; *see also* Khan, *supra* p. 3, at 779 (FBA "offer[ed]

10   independent sellers the ability to ship goods more cheaply and quickly than they could by using

11   UPS and FedEx directly"). Participation in FBA also assures that the seller meets Amazon's high

12   standards for delivery speed and reliability, although sellers are free to demonstrate their

13   commitment to those standards through other means.[3]

14        Amazon launched Prime in 2005 as a service for customers that includes free two-day

15   shipping in exchange for a membership fee. Compl. ¶ 98. Only certain of the products in Amazon's

16   store, however, meet the criteria to be Prime-eligible. *Id.* ¶¶ 98, 104. To assist customers looking

17   for the fast, free, and reliable shipping associated with Prime, Amazon therefore "displays a 'Prime

18   Badge' to show Prime subscribers which items are eligible." *Id.* ¶ 103. And to help assist customers

19   looking for products with fast, free shipping, Amazon also allows customers to "filter their

20   searches to display only Prime-eligible offers." *Id.* ¶ 104.

21        ***Amazon's competition.*** Amazon developed these innovations because it faces competition

22   from thousands of rivals across its product categories. These competitors range from countless

23

---

24   [3] Amazon does not in fact condition the Prime Badge on use of FBA. In 2015, Amazon created a program called Seller
     Fulfilled Prime ("SFP"), Compl. ¶ 398, which it maintains today, *id.* ¶ 409. SFP permits third-party sellers to obtain
25   the Prime badge on offers even if they do not use FBA. The Complaint misleadingly states that Amazon "shuttered
     SFP" in 2019, *id.*, but elsewhere acknowledges that Amazon merely paused "*new enrollment* in SFP," *id.* ¶ 404, a
26   temporary step taken to address speed and performance issues. Amazon has reopened new enrollment in SFP. *See*
     Seller Fulfilled Prime, https://sell.amazon.com/programs/seller-fulfilled-prime.

smaller retailers to massive online and brick-and-mortar operations of household names like Walmart, Target, Best Buy, Home Depot, Kroger, Costco, Staples, Walgreens, Nike, Apple, and many others. Amazon competes with these retailers on a number of dimensions. As alleged in the Complaint, for example, retailers compete by "offering shoppers lower prices," Compl. ¶ 264; offering "features that meaningfully reduce the time and effort shoppers expend online," such as those that help consumers "compare different items," *id.* ¶¶ 122, 126; developing "long-term relationships with shoppers" that "encourage them to come back again," *id.* ¶ 126; "maintaining the perception among shoppers that [the retailer] has the lowest prices," *id.* ¶ 262 (emphasis omitted); and providing "a convenient and consolidated post-purchase experience," *id.* ¶ 138. The Complaint likewise alleges that the customer beliefs a retailer can cultivate—such as "a positive reputation" and whether "the shopper finds the online store particularly trustworthy and reliable"—improve a retailer's ability to compete. *Id.* ¶¶ 130, 149.

The Complaint nonetheless alleges that there is a separate relevant market within retail that includes only "online superstores." Compl. ¶ 122. That notional market excludes (1) the online stores of all retailers except the few alleged to be "superstores" and (2) the brick-and-mortar stores of all retailers, even including the brick-and-mortar stores of alleged "superstores." By alleging a market around certain "stores," the Complaint fails to allege a *product* market that "encompass[es] the product at issue as well as all economic substitutes for the product.'" *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008)). Apart from that fatal flaw, the Complaint's "online superstore" market is implausible because it suggests, for example, that consumers would not consider buying a low-priced TV on bestbuy.com only because Best Buy does not also sell shoes or cosmetics and is thus not a "superstore."[4] Nonetheless, because "the validity of the 'relevant market' is typically a factual

---

[4] The "online superstores" market also assumes customers seeking cough medicine might comparison-shop between Amazon.com and Walmart.com, but not call their local Walgreens, even if it offered lower prices and was a short walk away.

1  element," *Newcal Indus.*, 513 F.3d at 1045, this motion focuses on the other reasons the Complaint

2  fails to state a claim even under its contrived market definition.

3  ### B.       The Complaint's Claims

4  The FTC asserts Sherman Act claims in Counts I and II; the States have filed parallel

5  Sherman Act claims in Counts V and VI. All of those claims rest on allegations related to three

6  business practices. First, the Complaint condemns Amazon Retail for competing on price by

7  matching its rivals' discounts. Compl. ¶¶ 266-68. Second, the Complaint attacks Amazon's

8  practice of seeking to highlight only competitively-priced products. *Id.* ¶¶ 272-85 (featured offer

9  policies); *id.* ¶¶ 286-304 (ASB policy). Third, the Complaint alleges that Amazon gives undue

10  preference, when assigning the Prime badge, to third-party sellers who use Amazon's fulfillment

11  services. *Id.* ¶¶ 351-409. The Complaint does not specify a remedy, identify the alternative conduct

12  it believes Amazon should have engaged in (such as still featuring offers when it knows a customer

13  could buy the same product for less elsewhere), or allege how any alternative "but for" world

14  would be better for consumers.

15  The FTC alternatively alleges in Count III that the same three business practices violate

16  Section 5 of the FTC Act even if they do not violate the Sherman Act. And Count IV challenges

17  the discontinued "Nessie" automated pricing experiment under the FTC Act alone (the Complaint

18  does not allege that it violated the Sherman Act).

19  Finally, Counts VII–XX allege various state law violations.

20  ## ARGUMENT

21  ## I.    THE COMPLAINT FAILS TO STATE A CLAIM OF ANTICOMPETITIVE

22  MONOPOLY MAINTENANCE UNDER SECTION 2 OF THE SHERMAN ACT.

23  The three business practices attacked in the Sherman Act claims are far from

24  anticompetitive: they are, instead, the very essence of competition. It is thus no surprise that the

25  Complaint fails to allege *facts* that could transform Plaintiffs' conclusory assertions of harm to

26  consumers from "conceivable" to "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

AMAZON'S MOTION TO DISMISS - 8
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   (2007) (dismissing complaint for failing plausibly to allege necessary element of Sherman Act

2   claim). These deficiencies require dismissal of Counts I, II, V, and VI.

3   **A.      The Complaint Attacks Well-Established Forms of Competition on the Merits.**

4        "Antitrust law does not seek to punish economic behavior that benefits consumers."

5   *Coronavirus Rep.*, 85 F.4th at 957. And it does not target businesses for succeeding due to "a

6   superior product" or "business acumen." *Cal. Comput. Prod., Inc. v. Int'l Bus. Machs. Corp.*, 613

7   F.2d 727, 742 (9th Cir. 1979) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71

8   (1966)). Therefore, even the alleged possession of monopoly power will "not be found unlawful

9   unless it is accompanied by an element of anticompetitive *conduct*" because to conclude otherwise

10  would chill "the incentive to innovate." *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko,*

11  *LLP*, 540 U.S. 398, 407 (2004). The antitrust laws are directed "not against conduct which is

12  competitive, even severely so, but [only] against conduct which unfairly tends to destroy

13  competition itself." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).

14       Each policy challenged by the Complaint is facially procompetitive, and Plaintiffs' efforts

15  to obstruct such procompetitive conduct would chill retail competition and harm consumers.

16       ***Competing on price***. The Complaint condemns Amazon Retail for matching rivals'

17  discounts so that it can offer its customers similarly low prices. Compl. ¶ 20. The Complaint does

18  not claim that Amazon has engaged in predatory below-cost pricing. It alleges only that Amazon's

19  discounting "limits rivals' ability to gain customers by undercutting Amazon's prices," leaving

20  them with "lower margins." *Id.* ¶¶ 330, 332. "The antitrust laws, however, were enacted for 'the

21  protection of competition not competitors.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429

22  U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)); *accord*

23  *Brooke Grp.*, 509 U.S. at 223 ("To hold that the antitrust laws protect competitors from the loss of

24  profits due to ... price competition would, in effect, render illegal any decision by a firm to cut

25  prices in order to increase market share. The antitrust laws require no such perverse result."

26  (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986))).

AMAZON'S MOTION TO DISMISS - 9
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

As the Supreme Court has made clear for decades, "competition for increased market share[] is not activity forbidden by the antitrust laws." *Cargill*, 479 U.S. at 116 (cleaned up); *Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256, 1259 (9th Cir. 1981) ("The antitrust laws do not require the erection of a price umbrella for the benefit of inefficient competitors."). Nor can a plaintiff escape this black letter law by alleging, as the Complaint does, that a defendant's price-matching "deters rivals from even attempting to compete." Compl. ¶ 330. "Even in an oligopolistic market"—from which retail is a far cry—"when a firm drops its prices to a competitive level to demonstrate to [rivals] the unprofitability" of a price cut, "it would be illogical to condemn the price cut" because "[t]he antitrust laws then would be an obstacle to the chain of events most conducive to … the onset of competition." *Brooke Grp.*, 509 U.S. at 223-24; *see also Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 337 (1990) ("When a firm … lowers prices but maintains them above predatory levels, the business lost by rivals cannot be viewed as an 'anticompetitive' consequence of the claimed violation.").

The import of this well-settled law is clear: attempting to distinguish between a "good" price cut and a "bad" price cut would encourage retailers toward *no* price cuts, thus "chill[ing] the very conduct the antitrust laws are designed to protect." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2287 (2018) (quoting *Brooke Grp.*, 509 U.S. at 226); *accord Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 319 (2007) ("We are particularly wary of allowing recovery for above-cost price cutting because allowing such claims could, perversely, chill legitimate price cutting, which directly benefits consumers." (cleaned up)). The Complaint's contrary approach would expose retailers to legal risk whenever they lowered their prices to meet competition, and prices would predictably rise as a result. Fortunately, that is not the law. Indeed, precisely because *Brooke Group* forecloses the type of Sherman Act Section 2 claim asserted here, a House Subcommittee previously urged Congress to "overrid[e] the Supreme Court's decision[] in …

AMAZON'S MOTION TO DISMISS - 10
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   *Brooke Group*."[5] But Congress has enacted no such legislation, and *Brooke Group* remains the
2   law. A Sherman Act claim based on Amazon's discount-matching practices is thus untenable.

3       ***Competing by offering a better in-store experience.*** The Complaint next criticizes
4   Amazon for how it seeks to provide a good experience for shoppers in its store. In particular, while
5   still making the offer available for purchase in its store, Amazon does not *feature* an offer when it
6   knows a customer could obtain the product from a reputable competitor elsewhere for less money.
7   Compl. ¶¶ 272-85. For "especially important" sellers, Amazon may restrict their "privilege" to
8   "operate as a seller in the Amazon store" altogether. *Id.* ¶¶ 286-304.[6] Those alleged policies, too,
9   are procompetitive on their face. By featuring offers it thinks a customer will like, Amazon reduces
10  the inconvenience and time associated with sorting through many offers, without taking away
11  consumers' ability to do so if they would prefer. And by not featuring offers when it knows a
12  competitor is offering a better price in another store, Amazon both builds trust with consumers and
13  facilitates the comparison-shopping that the Complaint itself acknowledges is necessary for
14  retailers to compete. *Id.* ¶¶ 122, 126, 130, 149, 181, 265, 338.

15      This alleged retail practice of "steer[ing]," Compl. ¶ 86, customers towards good deals and
16  away from bad ones "is both pro-competitive and ubiquitous," U.S. Amex Br. at 46. As the
17  government explained previously: "Merchants routinely attempt to influence customers'
18  purchasing decisions, whether by placing a particular brand of cereal at eye level rather than on a
19  bottom shelf, discounting last year's fashion inventory, or offering promotions such as 'buy one,
20  get one free.' … [T]hat is normally called 'competition.'" *Id.* (quoting *United States v. Am. Express
21  Co.*, 88 F. Supp. 3d 143, 150 (E.D.N.Y. 2015)). Courts, for their part, agree that this type of
22  procompetitive behavior is difficult to challenge under the antitrust laws. *See, e.g.,
23  Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1141 (9th Cir. 2022) (affirming dismissal

---

24
25  [5] Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, 116th Cong., *Investigation of Competition in Digital Markets* 397 (Comm. Print 2020); *see id.* at 2 (identifying FTC Chair Khan as Committee Counsel).
26  [6] *See supra* note 2.

AMAZON'S MOTION TO DISMISS - 11
(Case No. 2:23-cv-01495-JHC)

because allegation defendant "favored" some contractual partners by making their products more prominently visible was "not anticompetitive conduct under Section 2"); *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1075-76 (S.D. Cal. 2012) (recognizing defendant's "right to control its own product" and "the manner in which its website will be viewed" in granting motion to dismiss Sherman Act claims); *Coronavirus Rep. v. Apple, Inc.*, 2021 WL 5936910, at *13 (N.D. Cal. Nov. 30, 2021) ("The effect of 'suppression' in search rankings affects the relative positions among products in the market; but there is no showing of harm to competition across the market."), *aff'd*, 85 F.4th 948 (9th Cir. 2023).

**Competing through better delivery experiences.** The Complaint also attacks procompetitive conduct when it alleges that Amazon displays the Prime badge to third-party sellers only if they enlist Amazon to handle fulfillment under the FBA program.[7] The Prime badge represents Amazon's promise that customers will receive fast and reliable delivery on that product, which the Complaint acknowledges makes the products "more attractive." Compl. ¶ 352. Such branding is presumptively procompetitive because it points consumers to offers that will be quickly and dependably delivered, which Plaintiffs acknowledge is something customers want. *See id.* ¶ 138 (recognizing competition to offer "a convenient … post-purchase experience").

By improving a customer's delivery experience, Amazon is simply "tapping into consumer demand and differentiating its products from those of its competitors—goals that are plainly procompetitive rationales." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 987 (9th Cir. 2023). Once again, courts typically view such behavior as procompetitive. *See, e.g.*, *FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) (identifying "consumer appeal" as a legitimate procompetitive rationale); *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 525 (5th Cir. 1999) ("Competition grounded in nonprice considerations such as reliability, maintenance support, and general quality is competition on the merits.").

---

[7] As noted, sellers may obtain the Prime badge without using FBA. *See supra* note 3.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**B.      The Complaint Alleges No Plausible Anticompetitive Effects.**

The Complaint also fails to allege facts plausibly showing that Amazon's procompetitive conduct has anticompetitive effects. As the Ninth Circuit explained: "[A] complaint's allegation of a practice that may or may not injure competition is insufficient to 'state a claim to relief that is plausible on its face.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570); *see also Qualcomm*, 969 F.3d at 990 (plaintiff must plausibly allege conduct has "an 'anticompetitive effect'" and thus "harms consumers" as opposed to "one or more competitors" (emphasis omitted) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (per curiam))).

***Matching rivals' discounts.*** As discussed, antitrust law conclusively presumes that Amazon's strategy of matching discounts offered by other retailers is procompetitive and lawful. *Supra* Section I.A; *Brooke Grp.*, 509 U.S. at 223-24. The Complaint cannot allege facts to make that conduct an antitrust violation.[8]

***Featuring low-priced offers.*** Amazon's Featured Offer and ASB policies are procompetitive practices aimed at encouraging third-party sellers, who are responsible for setting their own prices in Amazon's store, to offer low prices. When sellers respond by lowering their prices—as the policies contemplate—that effect is a pro-consumer benefit, and the Complaint does not contend otherwise. Instead, the Complaint ignores this price-reducing effect and alleges only that a *handful* of Amazon's more than 560,000 third-party sellers purportedly responded to these policies by increasing their prices on, or removing products from, other sales channels. *See* Compl. ¶ 314 (alleging that a single seller "increased the price" of a single unnamed product "to a really high number"); *id.* ¶¶ 311, 313, 319, 321 (alleging actions from "one" or "some sellers" without any detail as to, for example, the quantity of sellers, volume of products, or type of products

---

[8] The Complaint's efforts to nonetheless do so underscore the conclusory nature of the allegations throughout. *See* Compl. ¶¶ 333-37. The Complaint references a *single* competitor and purported effects from "one point in 2019." *Id.* Notably, the Complaint does not allege that this competitor or any other still discounts fewer products. Nor does it allege that other retailers offering those (unnamed) products also stopped discounting them, such that prices for those products rose marketwide at that "point in 2019" or anytime thereafter.

AMAZON'S MOTION TO DISMISS - 13
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   affected). Indeed, despite most of these allegations focusing on the actions of third-party sellers

2   who sell on both Amazon and another marketplace, *id.* ¶¶ 320-22, the Complaint simultaneously

3   alleges that there are "relatively few" such sellers, *id.* ¶ 321.

4          These vague allegations are insufficient to state a plausible claim. *See Twombly*, 550 U.S.

5   at 567-70 & n.13. Moreover, the Complaint fails to plead, as it must, that these allegedly

6   anticompetitive effects predominated over the more obvious price-reducing effects of the policy

7   for customers who purchased in Amazon's store. *See, e.g.*, *Brantley*, 675 F.3d at 1198 (dismissing

8   complaint for alleging no more than "a practice that may or may not injure competition"); *United*

9   *States v. AT&T Inc.*, 310 F. Supp. 3d 161, 197-98 (D.D.C. 2018) (concluding government failed

10  to show consumers overall would pay higher average prices after factoring in likely price

11  reductions for the defendant's customers), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019). The Complaint

12  does not include a single assertion—vague, conclusory, or otherwise—to that effect. Indeed, the

13  Complaint does not identify a single product for which any consumer paid more as a result of these

14  challenged policies.

15         ***Prime badge policies.*** The alleged effects from Amazon's purported reservation of the

16  Prime Badge for FBA sellers likewise are insufficient. The Complaint asserts that Amazon's

17  policies have raised the costs to sellers of offering products through multiple marketplaces ("multi-

18  homing"), thereby supposedly limiting the growth of "rival … marketplaces." Compl. ¶¶ 354-55,

19  366, 395-96. But the Complaint does not contain even the most basic facts needed to plausibly

20  allege such a claim. For example, it alleges no facts to support the conclusory (and inaccurate)

21  assertion that sellers must have two fulfillment providers to sell in Amazon and other stores—

22  which is the only theoretical reason identified as to why sellers' costs may be higher.[9] It identifies

23  not a single seller—let alone a competitively significant percentage of otherwise multi-homing

24  sellers—that responded by selling only through Amazon. It alleges no facts suggesting so-called

25
26  [9] As the Complaint appears to acknowledge, sellers can use FBA to fulfill orders in other sales channels. *See* Compl. ¶ 354 (using qualifier "principally," presumably to account for this option); *see also* FBA Multi-Channel Fulfillment, https://sell.amazon.com/fulfillment-by-amazon/fba-multi-channel.

AMAZON'S MOTION TO DISMISS - 14
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  "rival marketplaces" face any significant degree of foreclosed business, let alone a degree large

2  enough to drive them below efficient scale. And most importantly, as elsewhere, the Complaint

3  contains no facts to plausibly allege that Amazon's Prime-badge policies have increased prices to

4  consumers for any identifiable product or line of products.

5       The Complaint also alleges that Amazon's conduct somehow "deprives independent

6  fulfillment companies of an important source of scale that is necessary to develop efficient

7  fulfillment networks." Compl. ¶ 366. Once again, that assertion is entirely conclusory and thus

8  entitled to no weight, even at the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

9  ("conclusory statements" concerning "elements of a cause of action" are insufficient to withstand

10  motion to dismiss). The Complaint asserts no facts to support the implausible notion that leading

11  providers like UPS, FedEx, and the U.S. Postal Service—some of which Amazon itself continues

12  to use—are operating below efficient scale. The Complaint does not identify a single provider

13  allegedly foreclosed, indicate how much of the alleged market has been foreclosed, or even try to

14  plead facts indicating that the alleged foreclosure resulted in anticompetitive effects such as higher

15  prices, reduced output, or degraded services.

16  ## II.  COUNTS III AND IV SHOULD BE DISMISSED BECAUSE THE FTC MAY NOT
17  ## BRING STANDALONE SECTION 5 CLAIMS IN DISTRICT COURT.

18       As a fallback to its Sherman Act claims, the FTC contends in Count III that the very same

19  conduct is an "unfair method of competition" under Section 5 of the FTC Act even if it complies

20  with the Sherman Act. *Compare* Compl. ¶¶ 447, 453 (alleging, in Counts I and II, that Amazon's

21  conduct violates the Sherman Act and the FTC Act), *with id.* ¶ 455 (alleging, in Count III, that the

22  same conduct violates only the FTC Act). In Count IV, the FTC also claims that a long-

23  discontinued automated pricing experiment ("Nessie") violates Section 5 even though the FTC

24  does not allege that it violates the Sherman Act. *Id.* ¶ 462.

25       As an initial matter, the substantive pleading failures identified above also require dismissal

26  of the claim in Count III. The FTC may not use Section 5 of the FTC Act to condemn practices

AMAZON'S MOTION TO DISMISS - 15
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

that are lawful under "well forged" Sherman Act doctrine. *Boise Cascade Corp. v. FTC*, 637 F.2d 573, 582 (9th Cir. 1980). That is true regardless of where the FTC sues—*i.e.*, in federal court or in its administrative tribunal—and is particularly true where, as here, it may "blur the distinction between guilty and innocent commercial behavior." *Id.* Count IV must be dismissed for similar reasons. *See infra* Section III.

Independently, Counts III and IV should be dismissed because they improperly attempt to side-step the procedures the FTC must use to develop new policy and instead ask this Court to do what no federal district court has done: become an administrative policy-maker for the FTC by defining new meanings of "unfair" competition. When bringing claims under Section 5 of the FTC Act,[10] the FTC has for decades relied on judicially established Sherman Act principles to define what competitive methods are "unfair" under Section 5. In 2015, for example, the FTC issued a policy statement confirming that "consistent with FTC precedent," it was "formally align[ing] Section 5 with the Sherman … Act."[11]

A year ago, the FTC reversed course. In a new policy statement, it announced that a wide range of competitive methods may be "unfair" under the FTC Act even if they do not violate the Sherman Act.[12] The FTC also observed that the agency itself was the entity tasked by Congress with making such a determination. *See* 2022 FTC Policy Statement at 6-8 (describing FTC as the "expert body charged with elucidating the meaning of Section 5"). Yet, it now asks this Court to make that substantive policy determination in the first instance. We are aware of only one other case in the FTC's 109-year history where, as here, it asked a district court in the first instance to

---

[10] The FTC uses Section 5 of the FTC Act to bring its antitrust claims because it cannot sue under the Sherman Act itself.

[11] FTC, Press Release, *FTC Issues Statement of Principles Regarding Enforcement of FTC Act as a Competition Statute* (Aug. 13, 2015), https://www.ftc.gov/news-events/news/press-releases/2015/08/ftc-issues-statement-principles-regarding-enforcement-ftc-act-competition-statute.

[12] FTC, *Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 of the FTC Act* (Nov. 10, 2022) ("2022 FTC Policy Statement"), https://www.ftc.gov/system/files/ftc_gov/pdf/P221202 Section5PolicyStatement.pdf.

AMAZON'S MOTION TO DISMISS - 16
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  expand the meaning of Section 5 of the FTC Act beyond the scope of established law—and it lost

2  that case. *See FTC v. Abbott Lab'ys*, 853 F. Supp. 526 (D.D.C. 1994).

3      The reason for that dearth of authority is clear. When a Section 5 allegation is premised on

4  a violation of some other well-developed source of law—such as the Sherman Act—district courts

5  can apply existing legal standards to adjudicate the claim. That is not true for "standalone" claims

6  like those alleged here.[13] In those circumstances, "label[ing] a practice 'unfair'" is "a determination

7  of policy or judgment which the agency alone is authorized to make" in its administrative forum.

8  *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 249 (1972) (quoting *SEC v. Chenery Corp.*, 318

9  U.S. 80, 88 (1943)); *accord Atl. Ref. Co. v. FTC*, 381 U.S. 357, 367 (1965) ("Congress

10  intentionally left development of the term 'unfair' to the Commission …."); *FTC v. Food Town*

11  *Stores, Inc.*, 539 F.2d 1339, 1342 (4th Cir. 1976) (single judge order) ("Th[e] adjudicatory function

12  is vested in FTC in the first instance."). That conclusion accords with the plain text of Section 5

13  itself. *See* 15 U.S.C. § 45(b), (c) (granting the Commission responsibility to decide conduct is

14  "unfair" and, following notice and a hearing, determine whether "it" is "of the opinion that the …

15  practice in question is prohibited").

16      In 1973, Congress added Section 13(b) to the FTC Act, but that does not alter the analysis

17  here. Section 13(b) is a procedural provision that outlines when the FTC may seek an injunction

18  in district court. 15 U.S.C. § 53. It does not authorize or provide a substantive standard for a district

19  court to determine in the first instance whether such standalone conduct qualifies as an "unfair

20  method of competition" under the FTC Act. *Id*. That policy-laden determination still is governed

21  by Section 5 and must be adjudicated by the FTC in the first instance.

22      The text of Section 13(b) reinforces this conclusion: it explicitly recognizes that there are

23  limits on the FTC's ability to pursue claims directly in district court. *See* 15 U.S.C. § 53(b)

24  (permitting the FTC to seek a permanent injunction only "in proper cases"). That there exist

---

25  [13] The term "standalone" refers to claims in which the FTC asserts that conduct is an "unfair" method of competition
26  under Section 5 of the FTC Act even though it does not violate the Sherman Act. For purposes of this motion, Amazon takes no position on whether the FTC may bring *non*-"standalone" claims directly in district court.

AMAZON'S MOTION TO DISMISS - 17
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

"proper" cases necessarily means there also are "improper" cases. Standalone claims like those in Counts III and IV must fall on the "improper" side of the line because, by definition, they ask a Court to make a policy judgment reserved for the Commission itself, without reference to judicially developed standards.

In short, the FTC asks this Court to be the first Article III court ever to decide in the first instance that a defendant's competitive methods are "unfair" under Section 5 of the FTC Act even though they do not violate the Sherman Act. The Court should decline that invitation. Instead, because the Commission has not followed the statutorily prescribed procedures for determining whether the challenged conduct is "unfair" under the FTC Act, the Complaint's standalone Section 5 claims (Counts III and IV) should be dismissed.

## III.   COUNT IV ALSO SHOULD BE DISMISSED AS IRRECONCILABLE WITH SETTLED PRECEDENT AND AS UNTIMELY.

Count IV invokes the FTC Act to challenge a long-discontinued, experimental automated pricing program ("Nessie") that the FTC does not allege violates the Sherman Act. The FTC claims that Amazon Retail employed Nessie to match the second-lowest price offered by competitors for certain products rather than the absolute lowest. (The Sherman Act counts attack Amazon for matching rivals' lowest prices too often, while Count IV attacks Amazon for not matching rivals' lowest prices often enough.) Beyond the reasons for dismissal discussed in the preceding section, which apply equally to both Counts III and IV, Count IV should be dismissed for two additional and independent reasons.

*First*, the FTC's legal basis for attacking Nessie contradicts settled precedent under both the Sherman Act and the FTC Act. The Complaint asserts this discontinued program prompted parallel responses from other retailers. Compl. ¶ 420. But a theory of liability based upon other firms' uncoordinated conduct in response to Amazon's unilateral setting of its own prices has no basis in law. Such parallel pricing, ubiquitous throughout the economy, is lawful in the absence of an anticompetitive agreement, which the Complaint nowhere alleges. *See, e.g.*, *Twombly*, 550 U.S.

AMAZON'S MOTION TO DISMISS - 18
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

at 553-54; *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) (mere allegations of parallel conduct are insufficient); *see also Brooke Grp.*, 509 U.S. at 227 (competitors may "recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions" to reach consciously parallel decisions). That doctrine reflects important judicial values about the limits of antitrust intervention in a free economy. In the words of the leading antitrust treatise, non-collusive parallel pricing "cannot be remedied without making antitrust tribunals price control agencies, without incongruently controlling oligopoly pricing more intensively than the more dangerous monopoly price, or without restructuring markets on an enormous scale exceeding the ability or mandate of those tribunals." Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1436a (2023).

"These same policy reasons also dictate that mere interdependent pricing is not an unfair method of competition in violation of FTC Act § 5," even in cases heard by the FTC as an administrative body. *Id.* ¶ 1436b3. The Second Circuit made exactly that point when it vacated an FTC administrative order holding a company liable under a standalone Section 5 theory for conduct the FTC described in terms strikingly similar to its criticisms of Nessie. *See E.I. du Pont de Nemours & Co. v. FTC*, 729 F.2d 128, 137-40 (2d Cir. 1984). As the Court explained, "labelling one producer's price change in [an oligopolistic] market as a 'signal,' parallel price changes as 'lock-step,' or prices as 'supracompetitive,' hardly converts its pricing into an 'unfair' method of competition." *Id.* at 139. Any contrary rule, the Court held, would create intractable "doubt as to the types of otherwise legitimate conduct that are lawful and those that are not." *Id.*; *see also Boise Cascade*, 637 F.2d at 582 (FTC Act cannot condemn practices lawful under "well forged" Sherman Act doctrine).

*Second*, the claim is untimely. The FTC concedes that Amazon used Nessie only "[f]rom 2015 to 2019." Compl. ¶ 416. But the FTC may seek an injunction only when the defendant "is violating, or is about to violate" a relevant provision of law. 15 U.S.C. § 53(b). Courts demand

1    strict adherence to this requirement and have dismissed FTC complaints for only alleging a past

2    violation. *See AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021) ("[T]he words 'is

3    violating' and 'is about to violate' (not 'has violated') set[] forth when the Commission may

4    request injunctive relief."); *Qualcomm* , 969 F.3d at 1005 ("As a general rule, past wrongs are not

5    enough for the grant of an injunction." (cleaned up)); *FTC v. Shire Viropharma, Inc.*, 917 F.3d

6    147, 158-59 (3d Cir. 2019) (same). The FTC tries to deal with that precedent by alleging that

7    Amazon "considered" reviving Nessie two years ago. Compl. ¶ 431. Putting aside the Complaint's

8    misinterpretation of a document to leap to that allegation, Amazon *did not revive the Nessie*

9    *experiment*, as the Complaint concedes. *Id.* The Complaint cites no other basis for concluding that

10   Amazon is "about to" revive Nessie. Count IV should be dismissed.

11   **IV.     THE STATE LAW CLAIMS ALSO SHOULD BE DISMISSED.**

12   The state plaintiffs also bring several state-specific claims. These claims should be

13   dismissed, in some cases for multiple independent reasons.

14   **A.     State-Law Equivalents Fall with the Sherman Act Claims.**

15   Most state plaintiffs bring monopolization claims under their state's equivalent to Section

16   2 of the Sherman Act. These state laws track the elements of, and are interpreted consistent with,

17   Section 2 liability. *See* Conn. Gen. Stat. § 35-44b; Md. Code Ann. Com. Law § 11-202(a)(2)(i);

18   Mich. Comp. Laws § 445.784(2); Nev. Rev. Stat § 598A.050; N.J. Stat. §§ 56:9-18, 56:8-4; 79

19   Okla. Stat. § 212; Or. Rev. Stat. § 646.715(2); 6 R.I. Gen. Laws § 6-36-2(b); *Tri-State Rubbish,*

20   *Inc. v. Waste Mgmt., Inc.*, 998 F.2d 1073, 1081 (1st Cir. 1993) (Maine law); *Prentice v. Title Ins.*

21   *Co. of Minn.*, 500 N.W.2d 658, 662 (Wis. 1993). Accordingly, for the reasons discussed above,

22   *supra* Section I, all Counts brought solely under state equivalents of the Sherman Act must be

23   dismissed in their entirety—Counts VIII (Maine), IX (Maryland), X (Michigan), XI (Nevada),

24   XII-XIII (New Jersey), XVII (Oregon), and XX (Wisconsin)—and Counts that raise multiple

25   causes of action must be dismissed to the extent they allege violations of the state equivalents of

26   the Sherman Act—Counts VII (Connecticut), XVI (Oklahoma), and XIX (Rhode Island).

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**B.    Pennsylvania Does Not Recognize a Sherman Act Section 2 Equivalent.**

Unique among the plaintiff states, the Commonwealth of Pennsylvania has no statutory equivalent to the Sherman Act. Pennsylvania thus attempts to bring a common law "monopolization" claim. Compl. ¶ 554. But common law prohibits only unreasonable "restraint[s] of trade"—i.e., agreements between two entities addressed by Section 1 of the Sherman Act; it has no counterpart to modern Section 2 principles. *See N. Secs. Co. v. United States*, 193 U.S. 197, 404 (1904) (Holmes, J., dissenting). Count XVIII therefore fails because the conduct alleged here (monopolization under Section 2) is not cognizable under common law. *See* 7 *Antitrust Laws and Trade Regulation* § 138.03 (2d ed.) (noting that "[t]here are no cases concerning unilateral monopolization under Pennsylvania common law"). If Pennsylvania law does authorize a plaintiff to bring a monopolization claim analogous to Section 2, that claim would fail with the Sherman Act claims. *See supra* Sections I, IV(A).

**C.    The Complaint Does Not Allege Violations of State Consumer-Protection Statutes.**

Five states—Connecticut, Oklahoma, Pennsylvania, Rhode Island, and New Jersey—bring claims under their state consumer-protection statutes, asserting that Amazon engaged in deceptive commercial practices. Tellingly, the FTC—the nation's leading consumer-protection agency— asserts no such claim under its own consumer-protection authority (which is the federal statute on which these state-law schemes are based).[14] That is because the Complaint focuses solely on claims of anticompetitive (not deceptive) conduct. The relevant counts allege in general and conclusory terms that Amazon has somehow deceived consumers by calling its prices "low" and its marketplace "competitive." Compl. ¶¶ 513, 542-43. That is insufficient even to allege deception, let alone the other necessary elements of such a claim, such as reliance or materiality. *See Island Mortg. of N.J. v. 3M (Minn. Mining & Mfg. Co.)*, 860 A.2d 1013, 1016 (N.J. Super. Ct. 2004)

---

[14] *See* 15 U.S.C. § 45(a)(1). Section 5 of the FTC Act prohibits both "unfair methods of competition"—which corresponds to the FTC's antitrust authority—and "unfair or deceptive acts or practices"—which corresponds to the FTC's consumer-protection authority.

(dismissing consumer protection claim); *Hunt v. U.S. Tobacco Co.*, 2006 WL 2619806, at *2 (E.D. Pa. Sept. 11, 2006), *vacated on other grounds*, 538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) (same); *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 102-03 (D. Conn.), *aff'd*, 666 F. App'x 84 (2d Cir. 2016) (same); *Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 420 (E.D. Pa. 2010) (same for an Oklahoma consumer protection claim); *see also Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014) (applying the same standard).

Connecticut, Pennsylvania, and Rhode Island also allege that Amazon violated their respective consumer protection statutes by employing "unfair methods of competition." Compl. ¶¶ 482, 536, 560. But neither Pennsylvania nor Rhode Island define "unfair methods of competition" any differently than they define "unfair or deceptive acts or practices," and so these allegations fail for the same reasons. *See* 73 Pa. Stat. and Cons. Stat. Ann. § 201-2(4); 6 R.I. Gen. Laws § 6-13.1-1(6). As for Connecticut, because its claim stands only upon its deficient antitrust allegations, its "[f]ailure to state a claim under the antitrust act bars recovery for an antitrust violation under CUTPA," no matter how it characterizes Amazon's acts. *Lavoie v. Bayer Corp.*, 2002 WL 230962, at *10 (Conn. Super. Ct. Jan. 23, 2002).

This Court should therefore dismiss Counts VII (Connecticut), XVI (Oklahoma), XVIII (Pennsylvania), and XIX (Rhode Island) to the extent they rely on consumer protection statutes, and it should dismiss Count XIV (New Jersey) in its entirety.

**D.    Claims Based on Territorially Limited State Laws Fail.**

Maryland, New Jersey, and Oklahoma rely on state laws with language limiting their territorial reach (*e.g.*, "within this state"). *See* Md. Code, Com. Law § 11-204(a)(2); N.J. Stat. § 56:9-4(a); 79 Okla. Stat. § 203(B). Courts have interpreted these statutes as not capturing conduct that is predominantly interstate in nature. *See Md. Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1504-05 (E.D. Wis. 1996) (holding that the activities "were of an interstate nature" and not subject to Maryland's antitrust statute); *New Jersey v. Lawn King, Inc.*, 375 A.2d

295, 303 (N.J. Super. Ct. Law. Div. 1977), *rev'd on other grounds*, 404 A.2d 1215 (N.J. Super. Ct. App. Div. 1979) (suggesting that New Jersey's antitrust statute cannot be invoked against activities that "substantially affec[t] interstate commerce"); *Young v. Seaway Pipeline, Inc.*, 576 P.2d 1148, 1151 (Okla. 1977) (finding that Oklahoma's antitrust statute does not reach "industr[ies]" that "operat[e] as an aspect of interstate commerce"). Plaintiffs allege monopolization only of nationwide markets, *see* Compl. ¶¶ 123, 164-65, 187, 203, and the alleged conduct is inherently national in scope as it depends on the existence of marketwide effects, *see, e.g.*, *id.* ¶¶ 209, 356. This Court should therefore dismiss Counts IX (Maryland) and XII (New Jersey), and dismiss Count XVI with respect to the alleged violations of the Oklahoma Antitrust Reform Act, 79 Okla. Stat. § 203.

### E.      Count XV (New York) Should Be Dismissed.

Count XV (New York) alleges violations of Section 63(12) of New York's Executive Law, which allows the New York Attorney General ("NYAG") to sue for violations of state or federal law. The violations alleged, however, are based on the federal Sherman Act and FTC Act; there is no allegation that the conduct violates a state law. These derivative claims should therefore be dismissed for the same reasons. *Supra* Section I, IV(A). Additionally, New York is precluded from pursuing its FTC claims under Section 63(12) because Section 5 of the FTC Act preempts any state law purporting to authorize a non-federal party—here, the NYAG—to bring a claim under the statute. *See O'Donnell v. Bank of Am., Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) ("The [FTC Act] doesn't create a private right of action." (citing *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973))); *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) ("[T]he Federal Trade Commission Act may be enforced only by the Federal Trade Commission.").

## **<u>CONCLUSION</u>**

The Complaint, which attacks pro-consumer and procompetitive conduct, should be dismissed in its entirety.

1    DATED this 8th day of December, 2023.

2
                                                *I certify that this memorandum contains 8,316*
3                                               *words, in compliance with the Local Civil Rules.*

4                                               **WILLIAMS & CONNOLLY LLP**

5
                                                By:  *s/ Heidi K. Hubbard*_____
6                                               Heidi K. Hubbard (*pro hac vice*)
                                                Kevin M. Hodges (*pro hac vice*)
7                                               Carl R. Metz (*pro hac vice pending*)
                                                Carol J. Pruski (*pro hac vice pending*)
8                                               680 Maine Avenue SW
                                                Washington, DC 20024
9                                               Phone: (202) 434-5000
10                                              Email: hhubbard@wc.com
                                                        khodges@wc.com
11                                                      cmetz@wc.com
                                                        cpruski@wc.com
12

13                                              **MORGAN, LEWIS & BOCKIUS LLP**

14
                                                By:  *s/ Patty A. Eakes*_____
15                                              Patty A. Eakes, WSBA #18888
                                                Molly A. Terwilliger, WSBA #28449
16                                              1301 Second Avenue, Suite 2800
                                                Seattle, WA 98101
17                                              Phone: (206) 274-6400
                                                Email: patty.eakes@morganlewis.com
18                                                      molly.terwilliger@morganlewis.com

19                                              **COVINGTON & BURLING LLP**
20
                                                Thomas O. Barnett (*pro hac vice*)
21                                              One CityCenter
                                                850 Tenth Street, NW
22                                              Washington, DC 20001-4956
                                                Phone: (202) 662-5407
23                                              Email: tbarnett@cov.com
24
                                                *Attorneys for Defendant Amazon.com, Inc.*
25

26

AMAZON'S MOTION TO DISMISS - 24
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401