1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, *et al.*,

        Plaintiffs,

    v.

AMAZON.COM, INC., a corporation,

        Defendant.

CASE NO. 2:23-cv-01495-JHC

**LCR 37 JOINT SUBMISSION FOR A PROTECTIVE ORDER**

NOTING DATE: February 5, 2024

14

15

16

17

18

19

      The parties respectfully move for the Court to enter a Protective Order.  The parties met and conferred regarding a Protective Order on December 7, December 14, 2023, and January 4, 2024, with further exchanges by email, and have resolved all but two related issues, on which they are at an impasse.  Exhibit A is a proposed Protective Order reflecting the remaining disagreements between the parties.  Pursuant to L.C.R. 26(c)(2), a redlined version of the proposed Protective Order compared to this Court's model order is attached as Exhibit B.

20

**I.**     **INTRODUCTORY STATEMENTS**

21

    **A.**     **Plaintiffs' Introductory Statement**

22

23

      Amazon is a monopolist engaged in a widespread course of anticompetitive conduct. Third parties in this case will include Amazon's rivals and potential rivals in the markets for

24

online superstores and online marketplace services, online sellers (Amazon's customers for marketplace services), and other market participants.  Discovery from those third parties will involve competitively sensitive documents and information, including information regarding third parties' assessments of the impact of Amazon's conduct on competition, their dealings with Amazon, their business plans and strategic assessments, commercial agreements, and more. Third parties reasonably fear that Amazon will use this information for business purposes or to stifle sellers who speak out again Amazon.  For example, many third-party sellers on Amazon's platform are beholden to Amazon to reach their customers and, because of that, may fear reprisal from Amazon if Amazon learned of any cooperation with Plaintiffs or fear that Amazon would have access their competitively sensitive material.

The parties have agreed to a two-tiered Protective Order that allows third parties to designate materials as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY."  Amazon's proposed Protective Order, however, would allow Amazon in-house counsel involved in competitive decision-making to see all "CONFIDENTIAL" material and would allow at least four Amazon in-house counsel to see all "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY" material, which does not adequately protect third parties from potential competitive harm.  Plaintiffs' proposed Protective Order, on the other hand, would limit "CONFIDENTIAL" information to Amazon in-house counsel who do not have any involvement in competitive decision-making (Section 5.2), and would allow in-house counsel to see "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY" material only after a showing of particularized need (Section 5.3).  Plaintiffs respectfully submit that their proposal strikes an appropriate balance between protections for third parties and Amazon's need to review discovery materials in this case.

1

**B.      Amazon's Introductory Statement**

2      Plaintiffs' Complaint assails commonplace, procompetitive retail practices, using novel

3   interpretations of the antitrust laws in an effort to hobble one of America's most consumer-

4   focused businesses.  To manage that attack, the company has a designated in-house litigation

5   team that actively manages and collaborates with outside counsel in the litigation.  For

6   information designated Highly Confidential, Amazon seeks access for four members of this

7   team, none of whom is involved in Competitive Decision-Making, as confirmed in their

8   accompanying Declarations.  Plaintiffs contend that this small group of in-house lawyers should

9   not be permitted to see the full discovery record, critical documents in this case, or even

10   Plaintiffs' sealed complaint allegations.  That is inequitable and unreasonable in an action that

11   seeks structural relief that could fundamentally alter Amazon's business and ability to innovate

12   and serve customers.  The four in-house attorneys are heavily involved in the defense of this

13   case.  To prevent them from reviewing or discussing critical record evidence—or motions or

14   briefs discussing such evidence—would impair Amazon's ability to supervise the litigation,

15   understand the available evidence, coordinate multiple lawsuits covering similar subject matters,

16   and evaluate outside counsel's recommendations.  And it would provide no countervailing

17   benefit because these in-house lawyers are not involved in Competitive Decision-Making.

18      Courts in other antitrust cases (including those filed by the FTC) have not imposed such

19   restrictions.  *See Whaleco Inc. v. Shein Tech. LLC*, 2024 WL 324238, at *2 (D.D.C. Jan. 29,

20   2024) ("But requesting that a lawyer may not share these types of materials with his client is an

21   extraordinary request.").  For example, in the FTC's pending case against Meta, *FTC v. Meta*

22   *Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Mar. 25, 2022), the protective order permits

23   disclosure of highly confidential information to designated in-house counsel.  Protective Order

24

1    § D.1(d), ECF No. 134.  In *FTC v. Shire Viropharma Inc.*, No. 1:17-cv-00131 (D. Del. Aug. 3,

2    2017), the protective order permitted disclosure of confidential information to "in-house counsel

3    actively involved in the prosecution or defense of this Litigation."  Protective Order § 3(b), ECF

4    No. 27.  Similarly, in *FTC v. Thomas Jefferson University*, No. 2:20-cv-01113 (E.D. Pa. Apr. 17,

5    2020), the protective order permitted disclosure of confidential information to "counsel for the

6    parties and employees of counsel who have responsibility for this action."  Protective Order § 10,

7    ECF No. 55.  And in *FTC v. Advocate Health Care Network*, No. 1:15-cv-11473 (N.D. Ill. Jan.

8    8, 2016), the protective order permitted disclosure of confidential information to the parties'

9    employees "to the extent counsel determines in good faith that the employee's assistance is

10   reasonably necessary to the conduct of the litigation."  Agreed Confidentiality Order § 5(b)(3),

11   ECF No. 36; *see also Anova Applied Elecs., Inc. v. Precision Appliance Tech., Inc.*, 2022 WL

12   17338875, at *3 (W.D. Wash. Nov. 30, 2022) (permitting in-house counsel access to highly

13   confidential material, where counsel was not involved in "strategic business and competitive

14   decisions" and party would be prejudiced by denying access because such information would

15   "bear on his advice and counsel ... in this litigation").

16          Under Federal Rule of Civil Procedure 26(c), a protective order may be entered only

17   upon a showing of "good cause."  "For good cause to exist, the party seeking protection bears the

18   burden of showing specific prejudice or harm will result if no protective order is granted."

19   *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

20   Here, it is Plaintiffs who seek additional restrictions on disclosure to Amazon's in-house counsel,

21   and thus Plaintiffs bear the burden to show that such restrictions are necessary.  "This burden

22   cannot be met by conclusory statements," but "must be [satisfied] on a case-by-case basis,

23   according to the specific facts and circumstances."  *Pac. Coast Feather Co. v. Ohio Mattress Co.*

24

1    *Licensing & Components Grp.*, 2012 WL 13024710, at *1 (W.D. Wash. Dec. 28, 2012);

2    *Whaleco*, 2024 WL 324238, at *2-4 (Plaintiff must show "substantial, serious harm;" allegations

3    of potential harm in complaint and counsel's declaration did not justify "extraordinary request"

4    that arguably infringed on constitutional interests of defendant); *see also Doe v. Reed*, 2010 WL

5    3947501, at *1 (W.D. Wash. Oct. 6, 2010) (similar).

6         Plaintiffs never even acknowledge their burden, much less have they sought to meet it.

7    Their arguments rest on speculative, generalized, and unsupported assertions that third parties

8    "may fear reprisal from Amazon" or that limited in-house counsel access "would chill third

9    parties' willingness to cooperate" in unspecified future government proceedings.  All antitrust

10   actions involve third-party discovery, so Plaintiffs' stated concern would broadly preclude in-

11   house counsel from reviewing the record in such cases.  This is not the law, and Plaintiffs'

12   hypotheses cannot overcome the real prejudice that would be caused to Amazon by shutting out

13   the group of in-house lawyers who actively participate in, and make strategic decisions about,

14   Amazon's defense across this and multiple related cases.

15        Plaintiffs also ignore that the terms of Amazon's proposed protective order are

16   substantially similar to the protective order in the pending related case *California v.*

17   *Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Super. Ct.) (the "California Action"), which has

18   been governing discovery there for the past year.  The small group of in-house lawyers who seek

19   access to protected information in this case have already been granted access in the California

20   Action.  That case overlaps with the facts and issues here, and many third parties (for example,

21   competing retailers) will be producing many of the same documents in both cases.  Indeed, many

22   of those third parties have already produced documents in the California Action subject to the

23   protective order entered there.  Plaintiffs do not and cannot explain why the Amazon in-house

24

1    lawyers who have access to such information in the California Action cannot be trusted or

2    permitted to have knowledge of the same information here, or what practical benefit could result

3    from denying access to duplicates of the same documents, or to reviewing unredacted copies of

4    briefs, discovery responses, and other filings that they would be able to review if they were

5    instead prepared for the California Action.

6           Regarding material designated "Confidential" (the lower level of designation under the

7    protective order), the parties agree that such material may only be disclosed to in-house counsel

8    when such "disclosure is reasonably necessary for the purpose of litigating this Action."

9    Plaintiffs seek to impose the additional restriction that in-house counsel may not receive such

10   material if they have any involvement in Competitive Decision-Making.  This would, again,

11   prejudice Amazon's defense.  "Confidential" is the default minimum designation for third-party

12   document productions; few documents are produced with no confidentiality designation.

13   Plaintiffs' position means that Amazon would not be able to confer with the in-house attorneys

14   who are most knowledgeable about particular issues raised by third-party documents, even when

15   those documents contain information that is, by definition, not the most highly sensitive.

16          Regarding material designated "Highly Confidential," Amazon seeks access for four in-

17   house counsel who are not involved in Competitive Decision-Making, as defined in the draft

18   Protective Order.  The Four Designees were granted access over a year ago to Highly

19   Confidential material under the California protective order and can see much of the same

20   information as will be produced here.  Plaintiffs, by contrast, would burden the Court by

21   requiring Amazon to file a detailed motion each time in-house counsel has need for access to

22   particular material in this case.  That would prejudice Amazon's ability to prepare its defense,

23   and Plaintiffs do not make the required showing of any countervailing, non-speculative harm,

24

that would result from allowing these four lawyers to continue to participate in the defense of this lawsuit.

## II.    SECTION 5.2: "CONFIDENTIAL" MATERIAL

### A.  Plaintiffs' Proposed Section 5.2

5.2    Disclosure of "CONFIDENTIAL" Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any material designated "CONFIDENTIAL" only to:

. . .

(c) the Receiving Party's In-House Counsel, who have no involvement in Competitive Decision-Making, and to whom disclosure is reasonably necessary for the purpose of litigating this Action;

### B.    Plaintiffs' Arguments Regarding Section 5.2

Amazon in-house counsel who are engaged in competitive decision making should not have access to materials third parties have designated "CONFIDENTIAL"—which may include "commercially sensitive information, trade secrets, or competitive or strategic initiatives" and "commercially sensitive information" such as "research, technical, financial or accounting information," "commercially sensitive internal communications or information," "internal business planning documents," and "documents reflecting business negotiations, transactions, dealings and/or competition with Non-Parties."  (Ex. A, §4.1).

Plaintiffs' proposed Protective Order would limit in-house counsel who can access "CONFIDENTIAL" material to counsel who have no involvement in competitive decision-making.  Amazon objects to that limitation.

Third parties are protected from "'undue burden' in discovery, including protection from

1  misuse of trade secrets by competitors."[1]  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d

2  1465, 1470 (9th Cir. 1992) (citing Fed. R. Civ. P. 26(c)).  Disclosure of such confidential

3  business information risks "competitive harm from disclosure of [third parties'] trade secrets

4  relating to research and development, pricing policies, and other confidential business practices."

5  *See Seiter v. Yokohama Tire Corp.*, 2009 WL 2461000, at *2 (W.D. Wash. Aug. 10, 2009).

6        Courts routinely distinguish between in-house counsel and outside counsel for purposes

7  of access to sensitive materials.  *See Brown Bag*, 960 F.2d at 1470.  Whether counsel are

8  engaged in competitive decision making is a "crucial factor" in determining whether they should

9  be permitted access to sensitive information because protective orders alone cannot adequately

10 prevent inadvertent or accidental disclosure.  *Id.*; *see U.S. Steel*, 730 F.2d at 1468 ("Inadvertent

11 or accidental disclosure may or may not be predictable.  To the extent that it may be predicted,

12 and cannot be adequately forestalled in the design of a protective order, it may be a factor in the

13 access decision.").  Importantly, courts have recognized that counsel cannot "lock-up trade

14 secrets in [their] mind[s], safe from inadvertent disclosure to [their] employer once [they] had

15 read the documents." *Brown Bag*, 960 F.2d at 1471.

16       Amazon's proposal to allow in-house counsel who are engaged in competitive decision-

17 making to access highly sensitive third-party materials would unreasonably burden third parties.

18 Amazon inappropriately seeks to allow in-house counsel to access "CONFIDENTIAL" third-

19 party information even when those counsel are "advising on decisions about pricing or design

20 'made in light of similar or corresponding information about a competitor.'"  *Id.* at 1470 (quoting

21 *U.S. Steel*, 730 F.2d at 1468 n.3).  At the very least, this proposal poses a significant risk of

22

23 [1] The Ninth Circuit has stated that "[a] trade secret may consist of any formula, pattern, device or
   compilation of information which is used in one's business, and which gives him an opportunity
24 to obtain an advantage over competitors who do not know or use it."  *Clark v. Bunker*, 453 F.2d
   1006, 1009 (9th Cir. 1972) (quoting Restatement of Torts, § 757).

accidental disclosure of highly sensitive third-party information for the purposes of Amazon's

own competitive decision-making.  Before disclosing "CONFIDENTIAL" material to in-house

counsel, Amazon should be required to first ensure that its in-house counsel cannot either

intentionally or unintentionally use this confidential information to the detriment of producing

third parties.  These type of protections are common in antitrust cases such as this that involve

allegations of exclusionary conduct by a monopolist.  *See, e.g.*, *FTC v. Meta Platforms LLC*, No.

20-cv-3590-JEB (D.D.C. Mar. 25, 2022), Dkt. #134 at 16-17 (providing that in-house counsel

with access to confidential material must not be engaged in competitive decision-making);

*United States v. Google LLC*, No. 20-cv-3010-APM (D.D.C. Dec. 14, 2020), Dkt. #72-1 at 15

(same); *FTC v. Qualcomm, Inc.*, No. 17-cv-220-LHK (N.D. Cal. May 1, 2017), Dkt. #81 at 10

(same).

**C.     Amazon's Proposed Section 5.2**

Section 5.2 is preceded by a definition of "Competitive Decision-Making" and an agreed-

upon basic principle, as follows:

2.2     <u>Competitive Decision-Making</u>. Participation in decision-making regarding

a firm's business operations, including the development or implementation of

competitive strategies, business plans, and third-party negotiations, or other decisions

made in light of similar corresponding information about a competitor, except when such

participation is for the purpose of rendering legal advice as to litigation or antitrust issues.

\* \* \*

5.1     <u>Basic Principles</u>. A Receiving Party may use Protected Material that is

disclosed or produced by another Party or by a Non-Party in connection with this Action

only for prosecuting, defending, or attempting to settle this Action.

* * *

5.2    Disclosure of "CONFIDENTIAL" Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any material designated "CONFIDENTIAL" only to:

. . .

(c) the Receiving Party's In-House Counsel to whom disclosure is reasonably necessary for the purpose of litigating this Action;

. . . .

**D.    Amazon's Arguments Regarding Section 5.2**

A designation of discovery material as "Confidential" is the lower level designation under the proposed protective order.  Based on experience in the California Action, Plaintiffs and third parties have applied the "confidential" designation to nearly all third-party documents and information they have produced.  Given the overlap with the California Action, including many of the same third-party witnesses, Amazon expects that most of the discovery produced in this action will also be designated "Confidential" or higher.  Accordingly, what is at stake is whether most of the third-party information produced in discovery can be shared with in-house counsel who are best positioned to help outside counsel understand the context surrounding information contained in third-party documents.

Plaintiffs' proposal would treat lower-level "Confidential" information the same as higher "Highly Confidential" designation, by making it available only to lawyers who are not involved in Competitive Decision-Making.  But, as noted above, Amazon is proposing that only four of its in-house lawyers have access to "Highly Confidential" information.  The result will be that Amazon defense counsel cannot share even the less sensitive information with other in-

1    house lawyers who are most knowledgeable about subjects that are important and necessary to

2    the defense.  This may include lawyers other than the Four Designees, including lawyers who

3    may have business responsibilities.  But this is appropriate for information bearing the lower-

4    level "Confidential" designation, and barring outside counsel from conferring with

5    knowledgeable in-house counsel prejudices Amazon's defense.

6            For example, Paragraph 337 of Plaintiffs' Complaint contains sealed information

7    concerning allegations about how Amazon's practices supposedly prevent sellers from offering

8    lower prices on the Amazon Store.  Under Plaintiffs' proposal, Amazon's outside counsel could

9    not ask in-house counsel responsible for seller and pricing policies about the accuracy of that

10   allegation, or to provide any additional relevant facts.  Plaintiffs' proposal would make it so that

11   Amazon could not even tell a knowledgeable in-house attorney what the specific allegation was,

12   in order to ask whether they are aware of evidence or information corroborating, explaining, or

13   contradicting the alleged facts.  *See* Compl. ¶ 337, ECF No. 114.  Plaintiffs' position would

14   deprive the defense of this crucial, relevant source of information and would severely prejudice

15   Amazon's defense, all for the purported goal of protecting information that is, by definition, not

16   the most sensitive.

17           This is a remarkable and novel restriction, particularly as to in-house attorneys who are

18   subject to ethics rules and will abide by the protective order.  Indeed, many protective orders

19   allow "Confidential"-level information to be shared with non-lawyer employees.  *See* Agreed

20   Confidentiality Order § 5(b)(3), *Advocate Health*, No. 1:15-cv-11473, ECF No. 36 (permitting

21   disclosure to "employees of a party . . . to the extent counsel determines in good faith that the

22   employee's assistance is reasonably necessary to the conduct of the litigation"); Protective Order

23   § 10, *Thomas Jefferson Univ.*, No. 2:20-cv-01113, ECF No. 55 (similar); Protective Order § 3,

24

1    *Seiter v. Yokohama Tire Corp.*, No. 3:08-cv-05578 (W.D. Wash. Aug. 10, 2009), ECF No. 27.

2         Plaintiffs wrongly suggest that barring in-house counsel's access to third-party

3    information is necessary to protect third parties from harm.  First, although Plaintiffs suggest that

4    documents designated "Confidential" will consist of "highly sensitive third-party information,"

5    in fact, that is exactly what the higher tier of the Protective Order ("Highly Confidential") is

6    designed for; third parties that believe in good faith that a document contains "highly sensitive"

7    information can make that designation and render it unavailable to most of Amazon's in-house

8    counsel.  *See* Ex. A § 4.2 ("HIGHLY CONFIDENTIAL" applies to "materials that qualify as

9    'CONFIDENTIAL' and that the Designating Party reasonably believes contain *highly sensitive*

10   *business or personal information*") (emphasis added).  In contrast, the "Confidential"

11   designation can apply to any "commercially sensitive information that [the designating party] has

12   maintained as confidential."  *Id.* § 4.1.  And in practice, third parties designate nearly all

13   documents as "Confidential."

14        Second, the case Plaintiffs principally rely upon, *Brown Bag Software v. Symantec Corp.*,

15   960 F.2d 1465 (9th Cir. 1992), is nothing like this one.  In *Brown Bag*, the Ninth Circuit

16   considered whether in-house counsel could access a specifically identified set of trade secrets,

17   including computer source code that the plaintiff alleged infringed its copyright and trademark.

18   960 F.3d at 1469-70.  That narrow restriction is unlike the near-total ban on access to third-party

19   materials that Plaintiffs seek here.  Further, the court in *Brown Bag* relied on specific factual

20   circumstances not present here, including that the source code was irrelevant to the plaintiff's

21   principal claim and that in-house counsel's review of the information could not lead to

22   discoverable evidence because the discovery deadline had passed.  *Id.* at 1471.

23        Finally, Plaintiffs are incorrect in suggesting that it is commonplace to bar in-house

24

counsel from accessing "Confidential" documents.  In *U.S. Steel Corp. v. United States*, cited by Plaintiffs, the Federal Circuit held that "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." 730 F.2d 1465, 1469 (Fed. Cir. 1984).  In the other case cited by Plaintiffs, *Seiter v. Yokohama Tire Corp.*, the protective order allowed confidential information to be inspected both by "counsel of record for the parties" and by "employees of the parties." Protective Order § 3, *Seiter*, No. 3:08-cv-05578, ECF No. 27.  That, of course, is even less restrictive than the in-house counsel access that would be permitted under Amazon's proposed version of Section 5.2.  Nor are such restrictions invariably imposed in antitrust cases or cases where the FTC is involved.  Protective Order § 3(b), *Shire Viropharma*, No. 1:17-cv-00131, ECF No. 27 (permitting disclosure of confidential information to "in-house counsel actively involved in the prosecution or defense of this Litigation"); Protective Order § 10, *Thomas Jefferson Univ.*, No. 2:20-cv-01113, ECF No. 55 (permitting disclosure of confidential information to "counsel for the parties and employees of counsel who have responsibility for this action"); Agreed Confidentiality Order § 5(b), *Advocate Health*, No. 1:15-cv-11473, ECF No. 36 (permitting disclosure of confidential information to employees of the parties "to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation").

E.     **Plaintiffs' Reply Regarding Section 5.2**

Amazon claims its proposals are substantially similar to the protective order entered in the California Action. Amazon fails to acknowledge, however, that it has made non-public side agreements with select third parties that include greater protections than the protective order in that case. *See California Action*, (Oct. 25, 2023), at 42-45 (transcript attached as Exhibit D).

1   Amazon's proposals here will foster a system of more protection for some third parties and lesser

2   protections for others, even though Amazon's side deals show that Amazon *can* work with

3   greater protections—when it is convenient for Amazon. *Id.* at 43. Plaintiffs' proposals provide

4   equitable treatment for all third parties without the need for side agreements.

5          Amazon is also incorrect in suggesting that Plaintiffs seek a wholesale bar against in-

6   house counsel from accessing "CONFIDETNIAL" material. Plaintiffs seek only to ensure that

7   the in-house counsel who access such material are not engaged in competitive decision-making,

8   thus reassuring third parties that their sensitive materials will not be used against them for

9   competitive purposes. *See Brown Bag*, 960 F.2d at 1471.

10  **III.    SECTION 5.3: "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY"**

11  **MATERIAL**

12       **A.    Plaintiffs' Proposed Section 5.3**

13       5.3    Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY"

14  Material. Unless otherwise ordered by the Court or permitted in writing by the Designating

15  Party, a Receiving Party may disclose any material designated "HIGHLY CONFIDENTIAL—

16  ATTORNEYS' EYES ONLY" only to:

17       (a) those individuals listed in Section 5.2(a)-(b), and 5.2(d)-(i);[2]

18       **B.    Plaintiffs' Arguments Regarding Section 5.3**

19       The parties' second dispute concerns the extent to which Amazon in-house counsel can

20  access information designated "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY."

21  That designation applies to "[e]xtremely competitively sensitive materials that qualify as

22

23  [2] Plaintiffs' proposal would allow access to "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" by Plaintiffs' counsel, Amazon's outside counsel, retained experts, professional vendors, the Court, authors and recipients of documents, witnesses who had access to such material, and any other person that the designating party consents to disclosure.

24

'CONFIDENTIAL' and that the Designating Party reasonably believes contain highly sensitive business or personal information, the disclosure of which . . . would create a substantial risk of serious competitive or commercial harm to the Designating Party," including "trade secrets," "technical details concerning proprietary technology," "current or forward-looking internal business strategy documents concerning direct competition with [Amazon]," "current or forward looking intellectual property and product development documents," and "documents that reflect negotiating positions with respect to [Amazon]."  (Ex. A, §4.2).

Amazon advocated for heightened protections such as these when it was a third party. *See United States v. Google LLC*, No. 20-cv-3010-APM (D.D.C. Dec. 4, 2020), Dkt. # 66 at 35-38 (arguing in favor of proposed protective order because Amazon's documents were "very highly sensitive documents," and characterizing materials as the "playbook" for competing with the defendant) (transcript attached as Exhibit C); *see also United States v. Google LLC*, No. 20-cv-3010-APM (D.D.C. Dec. 14, 2020), Dkt. # 72-1 at 13-14 (protective order entered in same case barring in-house counsel from accessing highly confidential information).

Plaintiffs proposed—and Amazon accepted—a process in Section 6 of the Protective Order through which Amazon can seek in-house counsel access to "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" on an as-needed basis.  This process affords relevant third parties the opportunity to meet and confer with Amazon, and object to in-house counsel access to materials as appropriate.  Similar provisions have been adopted in other significant antitrust cases where in-house counsel access to highly confidential information was presumptively barred to protect the rights of third parties.  *See United States v. Google LLC*, No. 23-cv-108-LMB-JFA (E.D. Va. May 11, 2023), Dkt. # 203 at 24 (providing process for obtaining access to highly confidential material to in-house counsel on an as-needed basis); *United States v. Google LLC*, No. 20-cv-3010-APM (D.D.C. Dec. 14, 2020), Dkt. # 72-1 at 18-19 (same).

1    Amazon, however, wants more.  Amazon's proposal would allow four designated in-

2    house counsel to see all "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY" material

3    in this case, and would allow Amazon to designate replacements for those in-house counsel on a

4    rolling basis.  Third parties, who were not targets of the investigation, should be afforded extra

5    safeguards from having their sensitive material disclosed within Amazon.  Courts have

6    recognized that third parties are differently situated than parties to a litigation, and should be

7    protected from unnecessary disclosure of their materials, especially when those materials were

8    submitted in response to a government subpoena.  *See United States v. Aetna Inc*., No. 16-CV-

9    01494-JDB (D.D.C. Sept. 5, 2016), 2016 WL 8738420, at *6 ("[W]e are not talking about an

10   exchange of documents between two sides in a lawsuit.  We are talking about a number of third

11   parties, not targets of any [government] action, who had to give up exceedingly confidential

12   information in response to a government subpoena." (quoting *FTC v. Advoc. Health Care*

13   *Network*, 162 F. Supp. 3d 666, 671 (N.D. Ill. 2016)).

14   To avoid risk of irreparable harm to third parties, access to "HIGHLY

15   CONFIDENTIAL—ATTORNEYS' EYES ONLY" should be presumptively limited to outside

16   counsel and other outside entities.  The information that will be produced in this case and

17   designated as "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY" is likely to involve

18   Amazon's rivals and customers' highly competitively sensitive information.  As with a

19   competitive decision-making bar for in-house counsel that access confidential information,

20   protections against in-house counsel accessing highly confidential information are routine in

21   major antitrust cases brought by government enforcers.  *See, e.g.*, *United States v. Google LLC*,

22   No. 23-cv-108-LMB-JFA (E.D. Va. May 11, 2023), Dkt. # 203 at 18-19; *United States v. Google*

23   *LLC*, No. 20-cv-3010-APM (D.D.C. Dec. 14, 2020), Dkt. # 72-1 at 13-14; *FTC v. Vyera*

24

1   *Pharmaceuticals, et al.*, No. 20-cv-00706 (S.D.N.Y. April 20, 2020), Dkt. No. 92 at 10; *FTC v.*

2   *Qualcomm, Inc.*, No. 17-cv-220 (N.D. Cal. June 28, 2017), Dkt. # 136 at 18 (ruling that

3   circumstances of government monopolization case justified departure from court's model

4   protective order with respect to in-house counsel access to third-party confidential information);

5   *United States v. Anthem, Inc.*, No. 16-cv-1493-ABJ (D.D.C. Sept. 15, 2016), 2016 WL

6   11164026, *4  (observing that the protective order "does not permit disclosure to Defendants' in-

7   house counsel or to any direct employee of either of the Defendant companies"); *United States v.*

8   *Microsoft Corp.*, No. 98-cv-1232-TPJ (D.D.C. May 27, 1998), Dkt. # 928-4 at 9.  Amazon has in

9   fact advocated for these same protections when it was a third party.  *See United States v. Google*

10  *LLC*, No. 20-cv-3010-APM (D.D.C. Dec. 4, 2020), Dkt. # 66 at 35-38 (arguing in favor of

11  proposed protective order because Amazon's documents were "very highly sensitive

12  documents," and characterizing materials as the "playbook" for competing with the defendant)

13  (transcript attached as Exhibit C); *see also United States v. Google LLC*, No. 20-cv-3010-APM

14  (D.D.C. Dec. 14, 2020), Dkt. # 72-1 at 13-14 (protective order entered in same case barring in-

15  house counsel from accessing highly confidential information).

16         Amazon has not shown that in-house counsel need access to "HIGHLY

17  CONFIDENTIAL—ATTORNEYS EYES ONLY" materials to assist in the defense of this

18  lawsuit.  *See Brown Bag*, 960 F.2d at 1470 ("[T]he nature of the claims and of a party's

19  opportunity to develop its case through alternative discovery procedures factors into decisions on

20  the propriety of such protective orders.").  Amazon has at least four highly experienced outside

21  law firms currently representing it in this litigation.  Those firms are fully capable of representing

22  Amazon.  *See Aetna*, No. 16-CV-01494-JDB (D.D.C. Sept. 5, 2016), 2016 WL 8738420, at *9

23  (finding defendants could not demonstrate need for in-house counsel to access confidential

24

material, "[g]iven the quality of retained outside counsel").[3]  Moreover, although there should be a competitive decision-making bar, Amazon's in-house counsel will have access to "CONFIDENTIAL" material.

Finally, adopting Amazon's proposal would chill third parties' willingness to cooperate with government investigations and enforcement actions.  *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1483 (Fed. Cir. 1986) ("Disclosure of sensitive materials to an adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the Commission's fact-finding processes.  The Commission has resolved the difficult and controversial question of the role of in-house counsel by taking a conservative position on the side of optimum shielding of business information.").  Unlike private plaintiffs, government enforcers have an interest in not deterring third-party cooperation in future investigations and actions, thus counseling in favor of adopting Plaintiffs' position here.  *See Aetna*, No. 16-CV-01494-JDB (D.D.C. Sept. 5, 2016), 2016 WL 8738420, at *9 (finding "persuasive Plaintiffs' argument that granting Defendants' in-house counsel access to the information at issue may deter non-parties from producing information to the government in future cases").

Consistent with the precedent, Plaintiffs' proposal strikes the appropriate balance between the rights of third parties and Amazon's access to their highly sensitive materials.  Accordingly, Plaintiffs respectfully request that the Court enter a Protective Order adopting Plaintiffs' proposals.

---

[3] The *Aetna* court later entered an amended protective order allowing defendants to move for a limited number of in-house counsel to have access to confidential information, adopting a procedure similar to Section 6.1, which allows some in-house counsel to have access to "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" material based on a showing of need.  *Aetna*, No. 16-cv-1494 (D.D.C. Sept. 30, 2016), Dkt. # 132 at 10-11.

1

**C.      Amazon's Proposed Sections 5.3 and 5.4**

2

5.3      Disclosure of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES

3

ONLY" Material. Unless otherwise ordered by the Court or permitted in writing by the

4

Designating Party, a Receiving Party may disclose any material designated "HIGHLY

5

CONFIDENTIAL—ATTORNEYS' EYES ONLY" only to:

6

(a) those individuals listed in Section 5.2(a)-(b), and 5.2(d)-(i)

7

(b) the following Designated In-House Counsel, who Amazon certifies are not

8

involved in Competitive Decision-Making and are not reasonably likely to become

9

involved in Competitive Decision-Making: (i) Nate Sutton; (ii) Bryson Bachman; (iii)

10

Larry Reicher; and (iv) Cristina Fernandez;

11

(c) additional Designated In-House Counsel of any Receiving Party substituted

12

for an individual listed in 5.3(b): (i) who have no involvement in Competitive Decision-

13

Making; (ii) to whom disclosure is reasonably necessary for the litigation of this Action;

14

(iii) who have been disclosed under Section 5.4 of this Order; and (iv) who are not

15

subject to an objection by a Designating Party under Section 5.4, unless the court

16

overrules such objection.

17

5.4      Procedure for Identifying Designated In-House Counsel Pursuant to

18

Section 5.3(c). Unless otherwise agreed to in writing by the Designating Party or

19

otherwise ordered by the court, material designated "HIGHLY CONFIDENTIAL—

20

ATTORNEYS' EYES ONLY" can be disclosed to Designated In-House Counsel of the

21

Receiving Party contemplated by Section 5.3(c) and not identified in Section 5.3(b) only

22

after:

23

(a) The Receiving Party notifies the Designating Party of: (i) the name(s) of the

24

additional Designated In-House Counsel; (ii) the title and a general description of the responsibilities of those Designated In-House Counsel; and (iii) a certification that (1) the Designated In-House Counsel are not involved in Competitive Decision-Making; and (2) it is not reasonably foreseeably that the Designated In-House Counsel will become involved in Competitive Decision-Making.

(b) If the Designating Party fails to object within twenty-one (21) days, the Receiving Party may disclose "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" material to the Designated In-House Counsel identified pursuant to Section 5.4(a).

(c) If the Designating Party objects, it must do so in writing and set forth in detail the grounds on which the objection is based. Upon a written request by the Receiving Party, the Receiving Party and the Designating Party shall meet and confer on the objection to try and resolve the objection. Except by agreement of both the Receiving Party and the Designating Party, such meet and confer should be conducted promptly, and, in any event, within no later than ten (10) days of the written request from the Receiving Party. If the Receiving Party and the Designating Party are unable to reach a resolution after a good faith effort to meet and confer, then either Party may seek any appropriate order following the applicable procedures for such requests from the court. A good faith effort to confer requires a face-to-face meeting or a telephone conference.

## D.     Amazon's Arguments Regarding Section 5.3

For material designated "Highly Confidential," Amazon seeks access for only four members of the Competition team within Amazon's Litigation Department.  This very small group of in-house lawyers focuses specifically on competition issues, and is responsible for

managing litigation and for litigation counseling—including management of this case, the

California Action, and related private cases.  Sutton Decl. ¶ 7 & n.1; Bachman Decl. ¶ 7 & n.1;

Reicher Decl. ¶ 7 & n.1.  Three of the Four Designees have submitted a declaration

accompanying this submission.[4]  As they explain, these Four Designees actively direct and make

strategic decisions in this significant antitrust litigation that seeks the restructuring of Amazon.

Sutton Decl. ¶ 8; Bachman Decl. ¶ 8; Reicher Decl. ¶ 8.  Absent access to the discovery record,

they will not be able to be informed as to the pertinent evidence, or review filings that discuss

that evidence, and thus cannot effectively make decisions or direct outside counsel.  Moreover,

these Four Designees do not participate in day-to-day decision-making about Amazon's business

operations, including the development or implementation of competitive strategies, business

plans, third-party negotiations, or other decisions made in light of information about a

competitor, except to provide legal advice as to litigation or regulatory competition issues.

Sutton Decl. ¶¶ 8,10; Bachman Decl. ¶¶ 8,10; Reicher Decl.¶¶ 8, 10.

Plaintiffs' suggestion that in-house counsel are invariably denied access to "Highly

Confidential" material is wrong.  Courts routinely permit access to in-house counsel who are not

involved with Competitive Decision-Making, especially when they are responsible for

overseeing the litigation.  *See, e.g.*, *Anova,* 2022 WL 17338875, at *3 (permitting in-house

counsel access to highly confidential material, where counsel was not involved in "strategic

business and competitive decisions" and party would be prejudiced by denying access because

such information would "bear on his advice and counsel … in this litigation"); *Pac. Coast*

*Feather*, 2012 WL 13024710, at *1 ("Plaintiff has not met its burden of showing that the need to

prevent inadvertent disclosure of trade secrets outweighs the hardship to Defendants caused by

---

[4] The fourth Designee is currently on parental leave and will submit a substantially similar declaration upon her return.

excluding in-house counsel, who has the responsibility of acting as the client to give direction to outside counsel."); *Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134, 139 (W.D. Wash. 1994) (permitting in-house counsel access to highly confidential material, where they were "not involved in making competitive decisions").

Consistent with this precedent, the Court in the California Action has approved each of these Four Designees to view "Highly Confidential" Material.  Sutton Decl. ¶ 11; Bachman Decl. ¶ 11; Reicher Decl.¶ 11.  Courts in this district and in large competition cases regularly follow this same approach, recognizing that even as to material designated "Highly Confidential," limiting access to a small number of attorneys not involved in Competitive Decision-Making is sufficient to protect the interests of third parties.  *E.g.*, *Anova*, 2022 WL 17338875, at *4 (permitting in-house counsel access to highly confidential information is "hardly 'unprecedented' in the Ninth Circuit"); Protective Order § D.1(d), *Meta*, No. 1:20-cv-03590, ECF No. 134 (permitting disclosure of highly confidential information to in-house counsel uninvolved in Competitive Decision-Making); Protective Order § 4(c), *FTC v. Surescripts, LLC*, No. 19-cv-01080 (D.D.C. Mar. 9, 2020), ECF No. 57 (same); Protective Order § 4(b), *Shire Viropharma*, No. 1:17-cv-00131 , ECF No. 27 (permitting disclosure of highly confidential information to in-house attorneys with primary responsibility for the litigation); *see also United States v. AB Electrolux*, 139 F.Supp.3d 390, 393-94 (D.D.C. 2015) (permitting disclosure of protected material to in-house attorneys who received protected material in other "litigation and investigation matters").

Plaintiffs suggest that Amazon's in-house counsel may be granted access to "Highly Confidential" documents on an "as-needed basis," but their actual proposal is that no in-house counsel may be provided access unless either (1) the designating party consents or (2) this Court

1   grants a motion to permit disclosure—which would require a highly specific showing and the

2   identification of precisely which information outside counsel believe is most critical for in-house

3   counsel to review.  This procedure is burdensome and unworkable—Plaintiffs' Joint Scheduling

4   Report proposes that up to 100 third party witnesses could be subpoenaed and deposed in this

5   case, ECF No. 135, at 27, creating the prospect of countless requests and motions.  More

6   importantly, Plaintiffs' proposed procedure would interfere with Amazon's ability to supervise

7   the litigation, understand the available evidence, and evaluate outside counsel's

8   recommendations.  In this complex and fast-moving litigation, it will be practically impossible to

9   negotiate third-party consent or brief a detailed motion every time a draft filing or piece of

10  correspondence cites a document designated "Highly Confidential."  And it would improperly

11  invade Amazon's attorney-client relationship, and reveal its litigation strategy, by requiring

12  Amazon's outside counsel to identify specific documents to Plaintiffs—and their reasons for

13  needing to discuss them with their client—and request Plaintiffs' consent to share them with

14  their in-house clients if Plaintiffs or third parties have marked the documents (whether properly

15  or not) as "Highly Confidential."

16      Plaintiffs contend that no in-house counsel should be permitted to access "Highly

17  Confidential" material because Amazon "has not shown that in-house counsel need access" to

18  assist in defense of the litigation.  This argument turns the Rule 26(c) standard on its head; as the

19  party seeking limitations on disclosure, it is Plaintiffs who must substantiate the harms they

20  allege.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad

21  allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

22  the Rule 26(c) test."); *Suture Exp., Inc. v. Cardinal Health, 200, LLC*, 2013 WL 6909158, at *8

23  (D. Kan. Dec. 31, 2013) (permitting in-house counsel access to highly-confidential material

24

when plaintiff "failed to show that Defendants' in-house counsel are competitive decisionmakers or present an unacceptable risk of" disclosure).  In any event, Amazon has shown that the Four Designees need access here.  Amazon's in-house competition lawyers have actively supervised and directed the litigation and the investigation that preceded it, and they cannot continue to do so if they are barred from seeing or discussing the evidence in the case or else must engage in a highly burdensome process for seeking such access—while necessarily divulging their strategy to their litigation adversaries.  *See* Sutton Decl. ¶ 8; Bachman Decl. ¶ 8; Reicher Decl. ¶ 8.

Plaintiffs speculate that permitting a limited number of in-house counsel access to highly confidential information would "chill [unidentified] third parties' willingness to cooperate with government investigations and enforcement actions" in "future investigations."  Such speculative and unsupported assertions provide no basis on which to issue a Protective Order substantively hampering Amazon's ability to defend itself.  For example, in the recent *Whaleco Inc. v. Shein Tech. LLC*, decision, the District Court for the District of Columbia rejected plaintiffs' argument that an outside-counsel's eyes-only protective order was justified by third parties' alleged fear of retaliation from defendant or a potential chilling effect on cooperation from third party witnesses. 2024 WL 324238, at *2-4 (D.D.C. Jan. 29, 2024).  The court found that mere assertions of such speculative harms by plaintiffs' counsel were insufficient to back up "an unusual request" to bar in-house counsel from access to relevant information.  *Id.* at *4.  In any event, Plaintiffs' concern is unjustified.  In the investigative phase, Plaintiffs were not reliant on voluntary cooperation; they made use of the pre-complaint compulsory processes to obtain information from various witnesses.  During litigation both Plaintiffs and Amazon will similarly use subpoenas to obtain information from witnesses.  Like any defendant, Amazon should have the right to develop the record and defend itself against misinformed allegations, and should not be denied the ability to

1   do so based on unsupported speculation about future investigations.

2          Plaintiffs argue that in-house counsel's participation is unnecessary because Amazon has

3   "at least four highly experienced outside law firms currently representing it."  But the defendants

4   in *Meta*, *Amgen*, and *Anova*, among other cases cited herein, were also represented by outside

5   counsel, and this did not prevent the courts from also granting access to designated in-house

6   attorneys.  Indeed, the complexity of this litigation underscores the need for in-house counsel to

7   coordinate and direct the activities of outside counsel.  Sutton Decl. ¶¶ 12-13; Bachman Decl. ¶¶

8   12-13; Reicher Decl. ¶¶ 12-13.  Amazon's legal department is structured so that some of its

9   counsel, such as the Four Designees, can supervise and assist in litigation and not be focused on

10  day-to-day legal advice to the business.  *See AB Electrolux*, 139 F.Supp.3d at 392-93 (granting

11  access to Highly-Confidential material to in-house competition counsel who worked within the

12  legal team, which "function[ed] independently" from their company's business team).

13         Under Plaintiffs' version of the protective order, outside counsel would have to identify

14  and explain in-house counsel's particularized need for access to documents, without ever being

15  able to show the documents to in-house counsel.  *See* Ex. A § 6.1 (prohibiting disclosure of

16  material to in-house counsel prior to issuance of particularized Court order).  As explained by

17  their declarations, the Four Designees need access to the documents produced by third parties to

18  effectively supervise and strategize with outside counsel.  Sutton Decl. ¶¶ 12-13; Bachman Decl.

19  ¶¶ 12-13; Reicher Decl. ¶ ¶12-13.[5]  *See Whaleco*, 2024 WL 324238, at *5 (Plaintiff "makes

20  _____

21  [5] Plaintiffs criticize Amazon's proposal that allows it to substitute one of the four designated in-house attorneys, derisively describing it as a means to seek access for in-house counsel on a "rolling basis."  In fact, Amazon's proposal requires it to give written notice to the parties that

22  designated material "Highly Confidential," and only enables Amazon to share materials with the substituted attorney after twenty-one days passes without objection from the designating party.

23  Ex. A, §§ 5.3(c), 5.4.  And Plaintiffs ignore the real reason for this provision, which counsel for Amazon explained to them during the meet-and-confer process: In the California Action, one of

24  the four designated attorneys took parental leave; Amazon was able to avail itself of a provision

1    essentially no attempt to explain how outside counsel for [defendant] could investigate and rebut

2    these allegations without consulting their client").[6]

3         **E.    Plaintiffs' Reply Regarding Section 5.3**

4         The circumstances of this case are more than sufficient to warrant the Court adopting

5    Plaintiffs' proposals.  *See* Local Rules, W.D. Wash. LCR 26(c)(2).  Amazon has acknowledged

6    that third parties in the California Action were concerned about Amazon in-house counsel

7    accessing their sensitive information.  *See California Action*, No. CGC-22-601826 (Oct. 25,

8    2023), at 43 (Exhibit D).  There, Amazon struck side deals with third parties on a case-by-case

9    basis; here, Plaintiffs' proposal would provide the same protections for all third parties.

10        The fact that Amazon has accepted more restrictions on in-house counsel access in the

11   California Action (for some third parties), is also at odds with Amazon's claim that its in-house

12   counsel need access to third parties' most highly sensitive documents.  *See id.* at 44 ("The upshot

13   to us is outside counsel can get the documents and they can start making productive use of them.

14   The limitation is we have less support internally as a consequence of it.").  Plaintiffs' proposals

15   strike the appropriate balance for all third parties and should be adopted by the Court.

16

17

18   like the one it seeks here to substitute in other counsel without needing to ask the Court to amend
     the protective order in that case.  Amazon's proposed provision offers a pragmatic solution to

19   such eventualities that would not require the Court to change the text of the protective order if
     Amazon needs to substitute personnel in a similar manner.

20

21   [6] Plaintiffs suggest there is somehow something inconsistent about Amazon's seeking access
     here for critical in-house attorneys while seeking different levels of protection in a different case
     involving different claims and different discovery material.  In so doing, Plaintiffs ignore that in

22   other cases, Plaintiffs themselves have permitted in-house counsel precisely the sort of access
     Amazon's in-house counsel seek here.  *See, e.g.*, Protective Order § D.1(d), *Meta*, No. 1:20-cv-
     03590, ECF No. 134 (permitting disclosure of highly confidential information to two in-house

23   counsel without involvement in Competitive Decision-Making); Protective Order § 4(c),
     *Surescripts, LLC*, No. 19-cv-01080, ECF No. 57 (same); Protective Order § 4(b), *Shire*

24   *Viropharma*, No. 1:17-cv-00131, ECF No. 27 (similar).

1

**IV.     CONCLUSION**

2

For the reasons above, the parties respectfully request that the Court enter a Protective

3

Order resolving the parties' disputes.

4

5

Dated: February 5, 2024                        Respectfully submitted,

6

*s/ Daniel A. Principato*
SUSAN A. MUSSER (DC Bar # 1531486)

7

EDWARD H. TAKASHIMA (DC Bar # 1001641)
DANIELLE C. QUINN (NY Reg. # 5408943)
DANIEL A. PRINCIPATO (NY Reg. # 5350129)

8

Federal Trade Commission
600 Pennsylvania Avenue, NW

9

Washington, DC 20580
Tel.:    (202) 326-2122 (Musser)
           (202) 326-2464 (Takashima)

10

Email:  smusser@ftc.gov
           etakashima@ftc.gov

11

           dquinn@ftc.gov
           dprincipato@ftc.gov

12

*Attorneys for Plaintiff Federal Trade Commission*

13

14

15

16

17

18

19

20

21

22

23

24

*s/ Michael Jo*
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

*s/ Rahul A. Darwar*
Rahul A. Darwar (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: Rahul.Darwar@ct.gov
*Counsel for Plaintiff State of Connecticut*

*s/ Alexandra C. Sosnowski*
Alexandra C. Sosnowski (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

*s/ Caleb J. Smith*
Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street, Suite 1000
Tulsa, OK 74119
Telephone: (918) 581-2230
Email: caleb.smith@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

*s/ Jennifer A. Thomson*
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

*s/ Michael A. Undorf*
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

*s/ Christina M. Moylan*
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

*s/ Gary Honick*
Gary Honick (admitted *pro hac vice*)
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6474
Email: Ghonick@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

1

*s/ Michael Mackenzie*
Michael Mackenzie (admitted *pro hac vice*)
2 Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
3 One Ashburton Place, 18th Floor
Boston, MA 02108
4 Telephone: (617) 963-2369
Email: michael.mackenzie@mass.gov
5 *Counsel for Plaintiff Commonwealth of
Massachusetts*
6
*s/ Scott A. Mertens*
7 Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General
8 Michigan Department of Attorney General
525 West Ottawa Street
9 Lansing, MI 48933
Telephone: (517) 335-7622
10 Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*
11
*s/ Zach Biesanz*
12 Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel
13 Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
14 Saint Paul, MN 55101
Telephone: (651) 757-1257
15 Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*
16
*s/ Lucas J. Tucker*
17 Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
18 Office of the Nevada Attorney General
100 N. Carson St.
19 Carson City, NV 89701
Telephone: (775) 684-1100
20 Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*
21
*s/ Ana Atta-Alla*
22 Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
23 New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor

24

Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

*s/ Jeffrey Herrera*
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

*s/ Timothy D. Smith*
Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

*s/ Stephen N. Provazza*
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

*s/ Gwendolyn J. Cooley*
Gwendolyn J. Cooley (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 261-5810
Email: cooleygj@doj.state.wi.us
*Counsel for Plaintiff State of Wisconsin*

1

2

**MORGAN, LEWIS & BOCKIUS LLP**

3

By: _s/ Patty Eakes_
Patty A. Eakes, WSBA #18888

4

Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 2800

5

Seattle, WA 98101
Phone: (206) 274-6400

6

Email: patty.eakes@morganlewis.com
      molly.terwilliger@morganlewis.com

7

**WILLIAMS & CONNOLLY LLP**

8

Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)

9

Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Carl R. Metz (*pro hac vice*)

10

Carol J. Pruski (*pro hac vice*)
Constance T. Forkner (*pro hac vice*)

11

680 Maine Avenue SW
Washington, DC 20024

12

Phone: (202) 434-5000
Email: hhubbard@wc.com

13

       jschmidtlein@wc.com
       khodges@wc.com
       jpitt@wc.com

14

       cmetz@wc.com
       cpruski@wc.com

15

       cforkner@wc.com

16

**COVINGTON & BURLING LLP**

17

Thomas O. Barnett (*pro hac vice*)
One CityCenter

18

850 Tenth Street, NW
Washington, DC 20001-4956

19

Phone: (202) 662-5407
Email: tbarnett@cov.com

20

*Attorneys for Defendant Amazon.com, Inc.*

21

22

23

24

1

**CERTIFICATION**

2

I certify that Amazon's total text in this submission contains 4,094 words, in compliance

3

with the Local Civil Rules.  I further certify that this motion complies with the requirements of

4

LCR 37.

5

6

DATED:  February 1, 2024

7

*s/ Kevin M. Hodges*
Kevin M. Hodges

8

9

10

**CERTIFICATION**

11

I certify that the full response by the responding party has been included in this

12

submission, and that prior to making this submission the parties conferred to attempt to resolve

13

this dispute in accordance with LCR 37(a).  I further certify that Plaintiffs' total text in this

14

submission contains 2,472 words, and that Plaintiffs' replies are 175 words or fewer with respect

15

to each issue in dispute, in compliance with the Local Civil Rules.

16

17

DATED:  February 5, 2024

18

*s/ Daniel A. Principato*
Daniel A. Principato

19

20

21

22

23

24