# Exhibit D

Page 1

1   SUPERIOR COURT OF THE STATE OF CALIFORNIA
2   IN AND FOR THE COUNTY OF SAN FRANCISCO
3   400 McALLISTER STREET, SAN FRANCISCO, CALIFORNIA 94102
4   BEFORE THE HONORABLE ETHAN P. SCHULMAN, JUDGE
5   DEPARTMENT NO. 304
6   ---oOo---
7   THE PEOPLE OF THE STATE OF
    CALIFORNIA,
8
        Plaintiff,
9
    vs.                                    CASE NO. CGC-22-601826
10
    AMAZON.COM, INC.,
11
        Defendant.
12  _____/
13
14
15
16       REPORTER'S TRANSCRIPT OF PROCEEDINGS
17           WEDNESDAY, OCTOBER 25, 2023
18                   ---oOo---
19
20
    STENOGRAPHICALLY REPORTED BY:
21  CAROL HARABURDA, CSR NO. 8052
    Court Certified Realtime Reporter
22  Official Reporter Pro Tempore
23
24              VERITEXT LEGAL SOLUTIONS
25

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFF:
 3       ROB BONTA, Attorney General of California
         BY:  STEPHEN R. SMEREK, Deputy Attorney General
 4            CATHERINE S. SIMONSEN, Deputy Attorney General
              MINA NOROOZKHANI, Deputy Attorney General
 5       Division of Public Rights, Antitrust Section
         300 South Spring Street, Suite 1702
 6       Los Angeles, California 90013
         213.269.6353 - 213.269.6409
 7       stephen.smerek@doj.ca.gov
         catherine.simonsen@doj.ca.gov
 8       mina.noroozkhani@doj.ca.gov
 9   FOR DEFENDANT:
10       WILLIAMS & CONNOLLY LLP
         BY:  CARL R. METZ, Attorney at Law
11            HEIDI K. HUBBARD, Attorney at Law
              ANDREW P. LEMENS, Attorney at Law
12       680 Maine Avenue SW
         Washington, DC 20024
13       202.434.5000 - 202.434.5451
         cmetz@wc.com
14       hhubbard@wc.com
         alemens@wc.com
15
         COVINGTON & BURLING LLP
16       BY:  JEFFREY M. DAVIDSON, Attorney at Law
         Salesforce Tower
17       415 Mission Street, Suite 5400
         San Francisco, California 94105
18       415.591.6000
         jdavidson@cov.com
19
20   ALSO PRESENT:
21       CONSTANCE FORKNER, Attorney at Law
         (CourtCallï¿½)
22       Williams & Connolly LLP
23                       ---oOo---
24
25
```

Page 3

1  MORNING SESSION
2  WEDNESDAY, OCTOBER 25, 2023
3  ---oOo---
4
5  P R O C E E D I N G S
6  THE COURT:  Good morning, everybody.
7  ALL COUNSEL:  Good morning, Your Honor.
8  THE COURT:  This is a case management conference
9  in People vs. Amazon.  May I have appearances, please.
10  MR. SMEREK:  Your Honor, Stephen Smerek, Deputy
11  Attorney General for the People of the State of
12  California.  With me today are Deputy Attorneys General,
13  Mina Noroozkhani and Catherine Simonsen.
14  MS. HUBBARD:  Good morning, Your Honor.  Heidi
15  Hubbard from Williams & Connolly, counsel for Amazon.
16  With me are my colleagues, Karl Metz and Andrew Lemens,
17  and my co-counsel, Jeff Davidson of Covington.
18  THE COURT:  Good morning, everybody.
19  I have reviewed your joint case management
20  statement, which I think is a useful summary of where
21  things stand.  There are, obviously, a lot of moving
22  pieces here.
23  What I propose to do today is walk through a few
24  topics, including discovery -- status of discovery,
25  including a couple of simmering disputes that you

Page 42

1  THE COURT: Okay.
2  MR. METZ: Thank you, Your Honor. Carl Metz for
3  Amazon. I just want to say four quick things and I will
4  say it slowly.
5  First is, I'm not going to dignify the comment
6  about witness intimidation. That is utterly baseless.
7  There is nothing to point to on that.
8  Second, I think there was a representation made
9  by the plaintiff's production of their own correspondence
10 was entirely nonsubstantive. It's all been designated
11 highly confidential, and I can't talk about the details
12 here today. I'll just put down a marker, there will be an
13 opportunity to show that information and it will not fit
14 that characterization.
15 Third --
16 THE COURT: In other words, some of it is
17 substantive from your standpoint?
18 MR. METZ: Yes.
19 THE COURT: Your perspective.
20 MR. METZ: Yes -- and a subjective standpoint,
21 yes.
22 Third, there are certain agreements, we have not
23 denied that. I won't go into the details on it, but the
24 basic term is that in circumstances where Your Honor will
25 allow, for example, my client representative is here --

Page 43

1   your protective order will allow certain documents by
2   certain third parties to be seen by him so he can assist
3   us in the case.
4           The general nature of these agreements is as to
5   some third parties, he can't.  It's us who have to figure
6   it out as best we can.
7           That doesn't concern them.  It hampers us.  We
8   reluctantly agreed to it in certain circumstances so that
9   we can get access to the documents and get going, but they
10  are documents that they either already have or are going
11  to get on an unrestricted basis.
12          THE COURT:  Let me see if I can read between the
13  lines here.  Some third parties -- and tell me whether I'm
14  right or wrong here.  I recognize this is sensitive, so
15  I'm going to be careful.
16          Some third parties evidently have expressed
17  concerns about the disclosure of their documents to Amazon
18  client representatives as opposed to Amazon's outside
19  counsel.
20          MR. METZ:  In general, yes.
21          THE COURT:  Presumably, because those third
22  parties have an ongoing business relationship with Amazon,
23  and they are concerned that disclosure of those documents
24  within Amazon, even in response to a subpoena, could
25  adversely affect that business relationship, is that the

Page 44

1  gist of it?
2           MR. METZ:  I would phrase it a little
3  differently, which is, I would characterize it again at a
4  higher, general level.  They are competitors of Amazon,
5  and their concern is that this litigation would bring
6  about the very thing the plaintiff says it's trying to
7  avoid, which is a reduction in competition, if their
8  internal documents were seen by People employed, not by
9  outside counsel, but employment at Amazon itself.
10          THE COURT:  So, they have prevailed on you or you
11 have agreed in these side agreements to designate certain
12 of those documents, their documents, as "attorney's eyes
13 only."
14          MR. METZ:  I can't -- I can't get that specific
15 without generalizing over things that are not all the
16 same.  But, in general, it has been to restrict access on
17 the -- restrict access to a level below what Your Honor's
18 protective order would otherwise allow, not enter into an
19 agreement.
20          The upshot to us is outside counsel can get the
21 documents and they can start making productive use of
22 them.  The limitation is we have less support internally
23 as a consequence of it.
24          THE COURT:  Right.
25          MR. METZ:  If Your Honor is settled on that

1   point, I'll just make my fourth and final point very
2   quickly.
3           My colleague on the other side identified what he
4   thought would be our concern, which is that we would not
5   want other third parties to know what we've agreed to with
6   different third parties.
7           My question in response is:  Why should they?  If
8   what is being talked about is that we would be producing
9   these to the plaintiff, then why would other third parties
10  find out about it?  Implicit in the very suggestion is
11  that they would inform other third parties of what
12  restrictions we've agreed to, and that would lead to more
13  third parties imposing restrictions on us.
14          We obviously don't want to facilitate that.  I
15  don't know why the suggestion would otherwise be in the
16  discussion.  So, we think there is a real chance of
17  mischief by forcing us to disclose to the plaintiff who
18  could then disclose to somebody else how we might be
19  willing to hobble ourselves depending on their importance
20  to our case.
21          THE COURT:  Okay.  Like I say -- all right.
22  Look, what I have heard, kind of, confirms my initial
23  reaction to this.  That said, if there are larger concerns
24  here, for example, the concern that Mr. Smerek articulated
25  about witness intimidation, or threats, or the like, it