THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

FEDERAL TRADE COMMISSION, *et al.*,

      Plaintiffs,

      v.

AMAZON.COM, INC., a corporation,

      Defendant.

CASE NO.: 2:23-cv-01495-JHC

**PLAINTIFFS' OPPOSITION TO AMAZON'S MOTION TO DISMISS**

NOTE ON MOTION CALENDAR: March 22, 2024

*ORAL ARGUMENT REQUESTED*

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 3

STANDARD OF REVIEW .................................................................................................... 5

ARGUMENT ......................................................................................................................... 5

I.     THE COMPLAINT PLAUSIBLY ALLEGES AN ANTICOMPETITIVE COURSE OF
       CONDUCT. ............................................................................................................... 6

       A.     Amazon's conduct must be assessed holistically ........................................... 6

       B.     Amazon's claims of procompetitive benefits are premature. ......................... 8

II.    THE COMPLAINT PLAUSIBLY ALLEGES THAT EACH PART OF AMAZON'S
       MONOPOLISTIC SCHEME IS ANTICOMPETITIVE. ......................................... 10

       A.     Amazon stifles price competition. ............................................................... 10

       B.     Amazon's conditioning of Prime eligibility on use of Amazon's
              fulfillment services is anticompetitive. ....................................................... 15

III.   THE COMPLAINT PLAUSIBLY ALLEGES STANDALONE UNFAIR METHOD OF
       COMPETITION CLAIMS UNDER THE FTC ACT ............................................... 18

IV.    THE FTC ACT CLAIMS MAY BE PURSUED IN FEDERAL COURT. ................. 20

V.     THE STATE LAW CLAIMS ARE PROPERLY PLEADED. .................................. 22

       A.     Amazon's conduct violates state consumer protection statutes. ................... 22

       B.     The relevant state law claims are not territorially limited. .......................... 24

       C.     Pennsylvania common law prohibits Amazon's anticompetitive conduct. .......... 25

       D.     New York's Executive Law § 63(12) claim is not preempted ........................ 26

CONCLUSION .................................................................................................................... 26

OPPOSITION TO MOTION TO DISMISS - i
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
    499 F.2d 232 (2d Cir. 1974) ................................................................................. 26

4
*Altria Grp. v. Good*,
    555 U.S. 70 (2008)............................................................................................... 26

5
*Appeal of Cumberland Valley R.R. Co.*,
    62 Pa. 218 (1869) ................................................................................................ 25
6

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
7
    472 U.S. 585 (1985) ............................................................................................ 13

8
*Atl. Refin. Co. v. FTC*,
    381 U.S. 357 (1965)...................................................................................... 19, 21
9

*Bell Atl. Corp. v. Twombly*,
10
    550 U.S. 544 (2007)............................................................................................... 5

11
*Boise Cascade Corp. v. FTC*,
    637 F.2d 573 (9th Cir. 1980) ............................................................................... 19

12
*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ............................................................................. 12

13
*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ............................................................................................ 14
14

*Brown v. Amazon.com, Inc.*,
15
    2023 WL 5793303 (W.D. Wash. Sept. 7, 2023)................................................... 10

16
*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989)............................................................................................... 25

17
*California v. Infineon Techs. AG*,
    2008 WL 1766775 (N.D. Cal. Apr. 15, 2008)..................................................... 24

18
*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*,
19
    148 F.3d 1080 (D.C. Cir. 1998)............................................................................. 7

*Carlson v. Coca-Cola Co.*,
20
    483 F.2d 279 (9th Cir. 1973) ............................................................................... 26

21
*Cascade Health Sols. v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008) ................................................................................. 6

22
*Chicago Bd. of Trade v. United States*,
    246 U.S. 231 (1918).............................................................................................. 13
23

*Church & Dwight Co. v. Mayer Lab'ys, Inc.*,
24
    2011 WL 1225912 (N.D. Cal. Apr. 1, 2011) ...................................................... 14

OPPOSITION TO MOTION TO DISMISS - ii
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*City of Anaheim v. S. Cal. Edison Co.,*
  955 F.2d 1373 (9th Cir. 1992) ................................................................... 7, 8

*Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.,*
  895 A.2d 683 (Pa. Commw. Ct. 2006) ........................................................ 24

*Commonwealth ex rel. Zimmerman v. Nickel,*
  26 Pa. D. & C.3d 115 (Pa. C.P. Mercer Cnty. 1983) .................................. 23

*Commonwealth v. Monumental Props., Inc.,*
  329 A.2d 812 (Pa. 1974) ............................................................................. 23

*Connecticut v. Exxon Mobil Corp.,*
  83 F.4th 122 (2d Cir. 2023) ......................................................................... 23

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.,*
  370 U.S. 690 (1962).......................................................................................7

*Cox v. Sears Roebuck & Co.,*
  647 A.2d 454 (N.J. 1994) ............................................................................ 23

*De Coster v. Amazon.com, Inc.,*
  2023 WL 372377 (W.D. Wash. Jan. 24, 2023) ........................................ 9, 11

*Eastman Kodak Co. v. Image Tech. Servs., Inc.,*
  504 U.S. 451 (1992)..................................................................................... 16

*E.I. Du Pont de Nemours & Co. v. FTC,*
  729 F.2d 128 (2d Cir. 1984) ........................................................................ 19

*Epic Games, Inc. v. Apple, Inc.,*
  67 F.4th 946 (9th Cir. 2023) ...................................................................... 6, 7

*Erickson v. Pardus,*
  551 U.S. 89 (2007)....................................................................................... 17

*Fairhaven Health, LLC v. BioOrigyn, LLC,*
  2021 WL 5987023 (W.D. Wash. Dec. 17, 2021) ...........................................5

*Floyd v. Amazon.com, Inc.,*
  2023 WL 3891973 (W.D. Wash. June 8, 2023) ........................................... 10

*Frame-Wilson v. Amazon.com, Inc.,*
  591 F. Supp. 3d 975 (W.D. Wash. 2022) ................................................. 9, 11

*Free FreeHand Corp. v. Adobe Sys. Inc.,*
  852 F. Supp. 2d 1171 (N.D. Cal. 2012) .........................................................8

*FTC v. Abbott Lab'ys,*
  853 F. Supp. 526 (D.D.C. 1994) ................................................................. 21

*FTC v. Adept Mgmt. Inc.,*
  2019 WL 2433193 (D. Or. June 7, 2019) .................................................... 22

OPPOSITION TO MOTION TO DISMISS - iii
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*FTC v. Affordable Media, LLC,*
 179 F.3d 1228 (9th Cir. 1999) ............................................................... 21, 22

*FTC v. Brown Shoe Co.,*
 384 U.S. 316 (1966) .................................................................................... 18

*FTC v. Cardiff,*
 2021 WL 3616071 (C.D. Cal. June 29, 2021) ............................................ 21

*FTC v. Cement Inst.,*
 333 U.S. 683 (1948) ........................................................................... 6, 18, 19

*FTC v. D Squared Sols., LLC,*
 2003 WL 22881377 (D. Md. Oct. 30, 2003) ............................................... 21

*FTC v. Elec. Payment Sols. of Am. Inc.,*
 2019 WL 4287298 (D. Ariz. Aug. 28, 2019) ........................................ 21, 22

*FTC v. Evans Prods. Co.,*
 775 F.2d 1084 (9th Cir. 1985) .......................................................... 20, 21, 22

*FTC v. Food Town Stores, Inc.,*
 539 F.2d 1339 (4th Cir. 1976) .................................................................... 21

*FTC v. H.N. Singer, Inc.,*
 668 F.2d 1107 (9th Cir. 1982) .................................................................... 20

*FTC v. Hoyal & Assocs., Inc.,*
 859 F. App'x 117 (9th Cir. 2021) ................................................................ 20

*FTC v. Ind. Fed'n of Dentists,*
 476 U.S. 447 (1986) .................................................................................... 18

*FTC v. Noland,*
 2021 WL 4127292 (D. Ariz. Sept. 9, 2021) ............................................... 20

*FTC v. Qualcomm Inc.,*
 2017 WL 2774406 (N.D. Cal. June 26, 2017) ...................................... 17, 18

*FTC v. Qualcomm Inc.,*
 969 F.3d 974 (9th Cir. 2020) ...................................................................... 12

*FTC v. Shire ViroPharma, Inc.,*
 917 F.3d 147 (3d Cir. 2019) ....................................................................... 22

*FTC v. Shkreli,*
 581 F. Supp. 3d 579 (S.D.N.Y. 2022) ................................................... 25, 26

*FTC v. Sperry & Hutchinson Co.,*
 405 U.S. 233 (1972) .................................................................................... 21

*FTC v. Willms,*
 2011 WL 4103542 (W.D. Wash. Sept. 13, 2011) ...................................... 20

OPPOSITION TO MOTION TO DISMISS - iv
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*Greyhound Comput. Corp. v. IBM Corp.*,
   559 F.2d 488 (9th Cir. 1977) ................................................................................. 7, 13

*Heck v. Amazon.com, Inc.*,
   2024 WL 248712 (W.D. Wash. Jan. 23, 2024) .......................................................... 17

*Hunt v. U.S. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008) ..................................................................................... 23

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ............................................................................... 8, 13

*In re Condemnation by Susquehanna Area Reg'l Airport Auth.*,
   No. 2005-CV-1282-CN (Pa. C.P. Dauphin Cnty. Aug. 14, 2006)
   (attached as Exhibit A to Declaration of Tracy A. Wertz) ................................... 25

*In re eBay Seller Antitrust Litig.*,
   545 F. Supp. 2d 1027 (N.D. Cal. 2008) ..................................................................... 9

*In re Suboxone Antitrust Litig.*,
   622 F. Supp. 3d 22 (E.D. Pa. 2022) ......................................................................... 15

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
   596 F. Supp. 2d 497 (D. Conn. 2009) ...................................................................... 24

*Lacey v. Maricopa Cnty.*,
   693 F.3d 896 (9th Cir. 2012) (en banc) ..................................................................... 5

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ..................................................................................... 9

*Leon v. Rite Aid Corp.*,
   774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) ................................................. 23, 24

*Long v. Dell, Inc.*,
   93 A.3d 988 (R.I. 2014) ........................................................................................... 23

*Neumann v. Reinforced Earth Co.*,
   786 F.2d 424 (D.C. Cir. 1986) ................................................................................. 13

*O'Donnell v. Bank of Am., Nat'l Ass'n*,
   504 F. App'x 566 (9th Cir. 2013) ............................................................................ 26

*Olstad v. Microsoft Corp.*,
   700 N.W.2d 139 (Wis. 2005) ................................................................................... 25

*P.C. Weist Co. v. Weeks*,
   35 A. 693 (Pa. 1896) ................................................................................................ 25

*Patterson v. Beall*,
   19 P.3d 839 (Okla. 2000) .................................................................................... 23, 24

*People v. Amazon.com, Inc.*,
   2023 WL 8719823 (Cal. Super. Ct. L.A. Cnty. Mar. 30, 2023) ............................. 11

OPPOSITION TO MOTION TO DISMISS - v
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*PLS.com, Inc. v. Nat'l Ass'n of Realtors*,
    32 F.4th 824 (9th Cir. 2022) ................................................................. 9

*Pulse Network, LLC v. Visa, Inc.*,
    30 F.4th 480 (5th Cir. 2022) ......................................................... 14, 15

*Schwartz v. Laundry & Linen Supply Drivers' Union, Local 187*,
    14 A.2d 438 (Pa. 1940) ...................................................................... 25

*Simon & Simon, PC v. Align Tech., Inc.*,
    533 F. Supp. 3d 904 (N.D. Cal. 2021) ............................................... 8

*Soto v. Bushmaster Firearms Int'l*,
    202 A.3d 262 (Conn. 2019) ............................................................... 23

*State ex rel. McCormac v. Qwest Commc'ns Int'l*,
    904 A.2d 775 (N.J. Super. Ct. App. Div. 2006) ................................ 23

*State v. Lawn King, Inc.*,
    375 A.2d 295 (N.J. Super. Ct. Law Div. 1977), *rev'd on other grounds*,
    404 A.2d 1215 (N.J. Super. Ct. App. Div. 1979) ............................. 25

*Talalai v. Cooper Tire & Rubber Co.*,
    823 A.2d 888 (N.J. Super. Ct. Law Div. 2001) ................................ 23

*United Food & Com. Workers Local 1776 v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ............................................... 9

*United States v. AT&T Inc.*,
    310 F. Supp. 3d 161 (D.D.C. 2018) .................................................. 12

*United States v. Delta Dental of R.I.*,
    943 F. Supp. 172 (D.R.I. 1996) ........................................................ 11

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ............................................................................ 6

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) (per curiam) (en banc) .......... 7, 10, 12, 16

*United States v. MyLife.com, Inc.*,
    499 F. Supp. 3d 757 (C.D. Cal. 2020) ............................................. 22

*United States v. Philip Morris Inc.*,
    263 F. Supp. 2d 72 (D.D.C. 2003) .................................................... 26

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) ............................................................ 16

*Wolfire Games, LLC v. Valve Corp.*,
    2022 WL 1443744 (W.D. Wash. May 6, 2022) ............................... 11

*Young v. Seaway Pipeline, Inc.*,
    576 P.2d 1148 (Okla. 1977) ......................................................... 24, 25

OPPOSITION TO MOTION TO DISMISS - vi
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012) ............................................... 14

**Statutes**

15 U.S.C. § 2 .......................................................................... *passim*

15 U.S.C. § 45 ........................................................................ *passim*

15 U.S.C. § 53(b) ............................................................ 20, 21

73 Pa. Cons. Stat. § 201-3(a) .................................................. 23

Conn. Gen. Stat. § 42-110b(a) ................................................ 23

N.J. Stat. Ann. § 56 ......................................................... 23, 24

N.Y. Exec. Law § 63(12) ......................................................... 26

1998 Okla. Sess. Laws ch. 356 ................................................ 24

Okla. Stat. tit. 15, § 752 .................................................. 22, 23

Okla. Stat. tit. 15, § 753 ......................................................... 23

R.I. Gen. Laws § 6-13.1-1(6) ................................................... 23

R.I. Gen. Laws § 6-13.1-2 ....................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................... 5, 9

**Other Authorities**

Aaron S. Edlin & Eric R. Emch,
    *The Welfare Losses from Price-Matching Policies*, 47 J. INDUS. ECON. 145 (1999) ............ 13

D. Kent Meyers & Michael Barnett,
    *Oklahoma's New Antitrust Reform Act*, 24 OKLA. CITY U. L. REV. 187 (1999) .................... 25

Zach Y. Brown & Alexander MacKay,
    *Competition in Pricing Algorithms*, 15 AM. ECON. J.: MICROECONOMICS 109 (2023) .......... 20

OPPOSITION TO MOTION TO DISMISS - vii
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

# INTRODUCTION

Despite Amazon's attempt to rewrite it, Plaintiffs' Complaint tells a straightforward story of illegal conduct. It lays out how Amazon is a monopolist and explains how Amazon unlawfully maintains its monopoly power, enriching itself while harming its customers. Amazon employs various anticompetitive tactics to prevent third-party sellers and rivals from discounting and coerces sellers into using Amazon's services to fulfill orders, all of which works together to impede free and fair competition. Collectively, Amazon's tactics deny rivals the scale that its founder Jeff Bezos recognized is "necessary to succeed." With rivals foreclosed from gaining scale and competing, Amazon is free to exploit its monopoly power. For example, Amazon has steadily hiked the fees it charges sellers—now taking close to *half* of every dollar from the typical seller that uses Amazon's fulfillment services—while also degrading its search results and extracting over a billion dollars from shoppers through a secret algorithm that quietly raises prices. Though Amazon claims its tactics are "procompetitive," the Complaint's well-pleaded facts demonstrate classic illegal monopoly behavior.

Plaintiffs bring this action on behalf of the American public, seeking to end and remedy Amazon's violations of Section 5 of the FTC Act, Section 2 of the Sherman Act, and state competition and consumer protection laws. Amazon's motion to dismiss this action rests primarily on distortions of Plaintiffs' Complaint, repeatedly mischaracterizing its allegations and asserting different facts.

*First*, the Complaint pleads that Amazon has unlawfully maintained monopolies through conduct whose collective anticompetitive effect is greater than the sum of its parts. Plaintiffs allege that Amazon's tactics are part of an interconnected and mutually reinforcing strategy to unlawfully maintain its monopolies—and that feedback loops in the relevant markets amplify the cumulative impact of Amazon's unlawful behavior. The law is clear that such a course of conduct must be

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

assessed holistically. Amazon's motion fails because it focuses on individual acts in isolation, ignoring the synergistic effect of the challenged conduct. (§ I.A.) Moreover, Amazon's arguments characterizing its conduct as "procompetitive" contradict the Complaint's allegations and cannot be resolved on a motion to dismiss. (§ I.B.)

*Second*, the Complaint amply alleges that each aspect of Amazon's challenged conduct is anticompetitive, even considered in isolation. Amazon's anti-discounting tactics suppress price competition and inflate prices across much of the internet by penalizing sellers that offer lower prices off Amazon (where Amazon's hefty seller fees do not apply) and disciplining rivals from undercutting Amazon's prices. (§ II.A.) Amazon also coerces sellers into using its fulfillment services, raising sellers' costs of selling on multiple marketplaces and thereby depriving rival marketplaces of scale. (§ II.B.) Preventing discounts and creating barriers to competition, as the Complaint alleges, are not "facially procompetitive," as Amazon contends, but rather prevent Amazon's rivals from gaining the scale necessary to challenge Amazon's monopolies.

*Third*, the FTC properly asserts claims under the FTC Act, which is broader in scope than the Sherman Act. (§ III.) Ninth Circuit precedent forecloses Amazon's position that this is not a "proper case" under Section 13(b) of the FTC Act. And the detailed allegations that Amazon's conduct is likely to recur undercut Amazon's assertion that one of the FTC's claims is "untimely." (§ IV.)

*Fourth*, the state law claims are well-pleaded. Amazon's arguments to the contrary rest on multiple misunderstandings of these States' laws and their claims. (§ V.)

Plaintiffs seek to end Amazon's monopoly maintenance scheme, restore the competition Amazon has quashed, and prevent a recurrence of Amazon's illegal behavior. Amazon cannot re-write Plaintiffs' well-pleaded Complaint. Its motion to dismiss should be denied.

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

## FACTUAL BACKGROUND

Amazon monopolizes two distinct yet related markets: the online superstore market and the online marketplace services market. Online superstores provide shoppers with a unique offering: a single destination for purchases across an expansive variety of goods, reducing the time and effort expended while shopping. (¶¶ 117-83.)[1] Meanwhile, online marketplaces offer a distinct set of services to businesses that wish to sell goods directly to shoppers: access to an established customer base and an interface that facilitates product discovery and sales. (¶¶ 184-208.)

Economies of scale are critical to these markets. As Mr. Bezos has explained, to "build an important and lasting company . . . online in e-commerce . . . you have to have a scale business," because "[t]his kind of business isn't going to work in small volumes." (¶¶ 10, 177, 206-17.) But Amazon's scheme aims to keep rivals from gaining the scale needed to compete effectively against Amazon. (¶¶ 12, 36.)

Amazon prevents rivals from gaining scale in multiple ways, including by blocking price competition. (¶¶ 262-324.) Using an army of web crawlers to monitor prices charged elsewhere online, Amazon prevents third-party sellers from discounting below their prices on Amazon. (¶¶ 262-63, 362.) When Amazon's surveillance network finds a lower price elsewhere for a third-party seller's product, Amazon punishes the seller. For example, Amazon takes away a crucial source of sales—the "Buy Box" from which a shopper can "Add to Cart" or "Buy Now." (¶¶ 83-85, 269, 277.) Nearly 98% of Amazon sales are made through the Buy Box and, as Amazon recognizes, excluding a seller from the Buy Box causes that seller's sales to "tank." (¶¶ 85-89, 284.) Meanwhile, Amazon charges its sellers ever-increasing fees, which sellers account for in their product prices, forcing them to use their inflated Amazon prices as a price floor elsewhere.

---

[1] "¶" refers to the corresponding paragraph in the Complaint (Dkt. #114).

(¶¶ 72-73, 251, 306-08.) Sellers cannot simply abandon Amazon altogether, because sellers need access to a large customer base (¶ 212) and Amazon's marketplace has five times the sales of the next largest marketplace (¶ 205).

Amazon also suppresses price competition by algorithmically disciplining rivals that offer prices lower than Amazon's first-party product listings. (¶¶ 325-37.) Amazon deems setting its own prices lower than those of its rivals to be "heretical" and instead relentlessly follows rivals' prices up or down, over and over, teaching rivals that they cannot gain business by undercutting Amazon's prices. (¶¶ 326-32.) As Amazon's leadership has observed, this strategy has the purpose and effect of deterring rivals from discounting. (¶¶ 326-28.) Rivals quickly learn they cannot gain share through lower prices, discounts, and promotions. (¶¶ 330-50.) In short, Amazon's tactic freezes price competition. (¶¶ 22, 330.)

Amazon further blocks rivals from gaining scale through its fulfillment conduct. Amazon coerces sellers into using its fulfillment service, Fulfillment by Amazon ("FBA"), by conditioning Prime eligibility—which can triple a product's sales on Amazon (¶¶ 361-74)—on the use of FBA. (¶¶ 351-52.) FBA, however, serves only Amazon sales (¶ 388), forcing sellers who use it to either fulfill orders themselves or add a second fulfillment service to sell on rival marketplaces. (¶¶ 364-74.) By forcing sellers to use FBA for Prime-eligible orders, Amazon adds costs for sellers that they would not incur if they could use a single fulfillment service to sell both on and off Amazon. (¶¶ 375-91.) Amazon's coercion also deprives independent fulfillment providers of the opportunity to compete for the large volume of Prime-eligible orders, keeping them artificially small in a business where scale is important. (¶¶ 384-85, 392-94.) Sellers who wish to operate across multiple online stores must inefficiently split their inventory and, in some cases, use artificially small fulfillment providers, which limits rival marketplaces' ability to attract sellers and stunts their growth. (¶¶ 368-69, 384-89, 395-96.)

OPPOSITION TO MOTION TO DISMISS - 4
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Amazon has also raised prices directly with another algorithm—codenamed "Project

2   Nessie"—that studied other retailers' pricing algorithms and predicted when they would follow

3   Amazon's price hikes. (¶¶ 419-20.) Amazon used Project Nessie to raise its own prices and induce

4   rivals to follow. (¶ 420.) Amazon estimated that this algorithm increased Amazon's profits by a

5   billion dollars within three years. (¶ 423.)

6    Amazon's interconnected course of conduct artificially keeps sellers and shoppers on

7   Amazon and away from Amazon's competitors. And because feedback loops in the relevant

8   markets amplify the cumulative effect of anticompetitive tactics, Amazon's conduct creates a

9   self-reinforcing cycle of dominance and harm. (¶¶ 209-27, 410-15.) Overall, Amazon's scheme

10   prevents rivals from gaining the scale needed to meaningfully compete against Amazon and

11   challenge its monopolies, inflating prices and degrading quality for both shoppers and sellers.

12   (¶¶ 433-41.)

13                                   **STANDARD OF REVIEW**

14    A complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*,

15   550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to state a

16   claim to relief that is plausible on its face," *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir.

17   2012) (en banc) (cleaned up). Furthermore, "Rule 12(b)(6) may not be used to challenge specific

18   allegations in a complaint." *Fairhaven Health, LLC v. BioOrigyn, LLC*, 2021 WL 5987023, at *5

19   (W.D. Wash. Dec. 17, 2021). In other words, "a motion to dismiss under Rule 12(b)(6) doesn't

20   permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the

21   complaint includes factual allegations that state a plausible claim for relief." *Id.* (cleaned up).

22                                       **ARGUMENT**

23    Plaintiffs challenge Amazon's monopoly maintenance and unfair methods of competition

24   under Section 2 of the Sherman Act, 15 U.S.C. § 2 (Counts I, II, V, and VI), Section 5 of the FTC

OPPOSITION TO MOTION TO DISMISS - 5
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Act, 15 U.S.C. § 45(a)[2] (Counts III and IV), and state laws (Counts VII-XX). For the reasons below, Amazon's arguments do not warrant dismissal of any of Plaintiffs' claims.

## I.   THE COMPLAINT PLAUSIBLY ALLEGES AN ANTICOMPETITIVE COURSE OF CONDUCT.

"A Section 2 monopolization claim 'has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). Amazon does not contest either element with respect to Plaintiffs' overall course of conduct allegations, which alone prevents dismissal of Plaintiffs' monopolization claims. (§ I.A.) Instead, Amazon resorts to characterizing its conduct as "procompetitive"—an affirmative defense that cannot be resolved on a motion to dismiss. (§ I.B.)

### A.  Amazon's conduct must be assessed holistically.

Amazon does not contest that Plaintiffs have adequately pleaded monopoly power. (Motion to Dismiss, Dkt. # 127 ("Mot.") at 1 n.1, 7-8.) To satisfy the second element of a Section 2 monopolization claim, a plaintiff "must show that the defendant acquired or maintained its monopoly through anticompetitive conduct." *Epic Games*, 67 F.4th at 998 (cleaned up). Anticompetitive conduct consists of acts that "tend[] to impair the opportunities of rivals" and "do[] not further competition on the merits or do[] so in an unnecessarily restrictive way." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008). Monopolists have "myriad"

---

[2] Section 5 of the FTC Act prohibits "[u]nfair methods of competition in or affecting commerce." 15 U.S.C. § 45(a). Unfair methods of competition include, but are not limited to, practices that violate the Sherman Act. *FTC v. Cement Inst.*, 333 U.S. 683, 694-95 (1948).

1    "means of illicit exclusion," *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)

2    (en banc) (per curiam); anticompetitive conduct "can come in too many forms, and is too

3    dependent upon context, for any court or commentator ever to have enumerated all the varieties,"

4    *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1087 (D.C. Cir. 1998).

5    "[T]he existence of market power . . . casts an anticompetitive shadow over a party's practices."

6    *Epic Games*, 67 F.4th at 983 (cleaned up). Indeed, a company possessing monopoly power is

7    "precluded from employing" even "otherwise lawful practices" when those practices

8    "unnecessarily exclude[] competition." *Greyhound Comput. Corp. v. IBM Corp.*, 559 F.2d 488,

9    498 (9th Cir. 1977). Accordingly, in assessing alleged anticompetitive conduct, "it would not be

10   proper to focus on the specific individual acts of an accused monopolist while refusing to consider

11   their overall combined effect." *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th

12   Cir. 1992). Instead, a court must always "deal with what has been called the synergistic effect of

13   the mixture of the elements." *Id.* (cleaned up).

14        Here, Plaintiffs adequately allege that Amazon has implemented an "overarching strategy"

15   to "keep rivals from gaining the scale needed to compete effectively against Amazon." (¶ 12.) The

16   Complaint details how rivals cannot grow by competing for shoppers on price due to Amazon's

17   set of anti-discounting tactics, and how rivals cannot effectively grow by competing for third-party

18   sellers due to both those tactics and Amazon's "coercive tactics involving its order fulfillment

19   service to prevent rivals from gaining the scale they need to meaningfully compete." (¶¶ 12, 18.)

20   The various components of Amazon's scheme work together to perpetuate Amazon's monopoly

21   position. (*See, e.g.*, ¶¶ 33-34, 257, 260-61, 291-93, 410-15, 445, 451, 467, 474.) These allegations

22   underscore why Amazon's multipronged scheme cannot "be judged by dismembering it and

23   viewing its separate parts, but only by looking at it as a whole." *Cont'l Ore Co. v. Union Carbide*

24   *& Carbon Corp.*, 370 U.S. 690, 699 (1962).

OPPOSITION TO MOTION TO DISMISS - 7
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1        The "impact of scale and related network effects" in the relevant markets, where "a denial

2   of scale in one market can make it harder to grow in the other," further amplify the anticompetitive

3   effects of Amazon's conduct. (¶ 210; *see also* ¶¶ 8-10, 119, 177-83, 206-08, 209-27.) Amazon's

4   combined "set of anticompetitive tactics" allows it to "unlawfully deny its rivals access to both

5   shoppers and sellers, artificially stunting their growth by starving them of the feedback loops

6   across the relevant markets that would benefit shoppers and sellers alike." (¶ 227.) Amazon thus

7   illegally uses its monopoly power "to foreclose competition, to gain a competitive advantage, [and]

8   to destroy . . . competitor[s]." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1208

9   (9th Cir. 1997).

10        Amazon ignores these allegations, segregating the Complaint's allegations into "three

11   business practices" and arguing that each—considered separately—is "procompetitive" and lacks

12   "anticompetitive effects." (Mot. 8-15.) While Amazon fails to demonstrate that each category of

13   alleged conduct is not independently anticompetitive (§ II below), its motion also fails to address

14   the overall *combined* effects of the challenged conduct. Amazon's compartmentalized analysis

15   cannot justify dismissal of Plaintiffs' monopoly maintenance claims. *See, e.g.*, *Free FreeHand*

16   *Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180-84 (N.D. Cal. 2012) (Koh, J.) (relying on

17   *City of Anaheim* in evaluating the "overall combined effect" of alleged anticompetitive conduct

18   and denying motion to dismiss); *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904,

19   912-20 (N.D. Cal. 2021) (same).

20        **B.  Amazon's claims of procompetitive benefits are premature.**

21        Rather than engage with Plaintiffs' detailed, plausible allegations of anticompetitive

22   conduct, Amazon previews its likely affirmative defenses. Amazon's motion repeatedly

23   contradicts the Complaint's factual allegations, insisting that the challenged conduct has

24   "legitimate procompetitive rationale[s]" and "procompetitive effects," including increased

OPPOSITION TO MOTION TO DISMISS - 8
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   "consumer appeal" and "lower[] . . . prices." (*E.g.*, Mot. 2, 12-14; *cf., e.g.*, ¶¶ 433-41.) Amazon

2   argues that the Complaint must establish that the alleged anticompetitive effects "predominated"

3   over the purported procompetitive justifications Amazon presents in its motion (Mot. 14), but

4   "whether the alleged procompetitive benefits of [conduct challenged under the Sherman Act]

5   outweigh its alleged anticompetitive effects is a factual question that the district court cannot

6   resolve on the pleadings." *PLS.com, Inc. v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 839 (9th Cir.

7   2022).

8        Amazon's arguments about the purported "procompetitive" effects of its conduct—which

9   repeatedly rely on citations to merits-stage decisions—are therefore "misplaced." *In re eBay Seller*

10  *Antitrust Litig.*, 545 F. Supp. 2d 1027, 1033 (N.D. Cal. 2008). While a "procompetitive benefit

11  may rebut a *prima facie* case," plaintiffs need only "establish a *prima facie* case" to survive a

12  motion to dismiss monopolization claims. *Id.*; *see United Food & Com. Workers Local 1776 v.*

13  *Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1067 & n.16 (N.D. Cal. 2014) (collecting cases);

14  *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (reversing dismissal of

15  claims where district court's decision was "rooted in defendants' factual assertions").

16        Applying this standard, *four* different courts in this District have recently rejected as

17  premature similar arguments from Amazon at the motion to dismiss stage. *See Frame-Wilson v.*

18  *Amazon.com, Inc.*, 591 F. Supp. 3d 975, 992 (W.D. Wash. 2022) (Jones, J.) ("Amazon's argument

19  that its pricing provision has procompetitive justifications may be used to rebut Plaintiffs' claims

20  once a *prima facie* case has been established, but the Court need not consider such rebuttals on a

21  motion to dismiss."); *De Coster v. Amazon.com, Inc.*, 2023 WL 372377, at *3 (W.D. Wash. Jan.

22  24, 2023) (Martinez, J.) ("Amazon argues that its policies 'provide for competitive prices to

23  consumers, rather than for itself' . . . . To the extent Amazon is asking the Court to construe the

24  facts in an unfavorable light, such is contrary to Rule 12(b)(6) and premature given the

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   underdeveloped factual record."); *Floyd v. Amazon.com, Inc.*, 2023 WL 3891973, at \*5 (W.D.

2   Wash. June 8, 2023) (Coughenour, J.) ("While Defendants assert that the [challenged conduct],

3   and its subsequent effects, are the result of pro-competitive and anti-counterfeit motivations, the

4   Court . . . cannot address that countervailing fact at this time."); *Brown v. Amazon.com, Inc.*,

5   2023 WL 5793303, at \*4 (W.D. Wash. Sept. 7, 2023) (Chun, J.) ("[T]he Court need not consider

6   Amazon's justifications on a motion to dismiss."). These decisions underscore that considering

7   Amazon's asserted justifications would be premature here.

8   **II.    THE COMPLAINT PLAUSIBLY ALLEGES THAT EACH PART OF AMAZON'S**

9   **MONOPOLISTIC SCHEME IS ANTICOMPETITIVE.**

10  Even setting aside the above deficiencies in Amazon's arguments, the Complaint amply

11  alleges how each part of Amazon's monopolistic scheme, considered separately, violates the law.

12  It is enough that each "reasonably appears capable of making a significant contribution to

13  maintaining monopoly power." *Microsoft*, 253 F.3d at 79 (cleaned up).

14  **A.  Amazon stifles price competition.**

15  Amazon designed its anti-discounting tactics to deprive rivals of scale and exert control

16  over pricing at rival stores, with the intention of deterring sellers and rivals from lowering prices.

17  (¶¶ 262-65, 316, 328, 365.) For Amazon's marketplace, when Amazon detects a lower price

18  elsewhere, it punishes third-party sellers by removing their offers from the all-important Buy Box.

19  For Amazon's first-party sales, Amazon uses an algorithmic pricing strategy designed to deter

20  price competition and "avoid 'a perfectly competitive market.'" (¶ 327.)

21  ***Third-Party Sellers.*** Amazon's tactics to prevent third-party sellers from offering

22  discounts on other sites are anticompetitive because they foreclose price competition from those

23  sellers elsewhere, such as on marketplaces that charge lower fees. (¶¶ 17, 285.) For certain

24  important sellers, Amazon uses contractual restraints to prevent price competition. (¶¶ 291, 302.)

OPPOSITION TO MOTION TO DISMISS - 10
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   For all sellers, Amazon threatens disqualification from the Buy Box—where nearly 98% of

2   Amazon sales are made—if they offer discounts elsewhere. (¶¶ 85-86, 269, 297.) Amazon further

3   threatens to bury discounting sellers in its search results or conceal those sellers' prices, even if a

4   seller's price is the best deal available on Amazon. (¶¶ 16, 283.) As a result, the price on Amazon—

5   which often includes Amazon's bloated fees—effectively becomes the price floor market-wide.

6   (¶¶ 17, 309-12.)

7        Other courts in this District have found similar allegations sufficient to state a Sherman

8   Act claim, rejecting many of the same arguments Amazon makes here. *See Frame-Wilson*,

9   591 F. Supp. 3d at 992; *De Coster*, 2023 WL 372377, at *3; *see also People v. Amazon.com, Inc.*,

10  2023 WL 8719823 (Cal. Super. Ct. L.A. Cnty. Mar. 30, 2023) (applying California competition

11  law). These courts and others have recognized that preventing price competition by ensuring price

12  uniformity across providers, as Amazon's strategy does, can be anticompetitive. *See, e.g.*, *Wolfire*

13  *Games, LLC v. Valve Corp.*, 2022 WL 1443744, at *3-4 (W.D. Wash. May 6, 2022) (denying

14  motion to dismiss claims that price-parity clauses constituted anticompetitive conduct); *United*

15  *States v. Delta Dental of R.I.*, 943 F. Supp. 172, 176 (D.R.I. 1996) (price-parity clauses can

16  "produce substantial anticompetitive effects").

17       Amazon contends its anti-discounting policies are "facially procompetitive" (Mot. 2, 11)

18  because they improve the in-store experience by not featuring "bad deals," but that assertion is

19  both premature (*see* § I.B above) and mischaracterizes the Complaint. The Complaint alleges that

20  Amazon penalizes sellers for off-Amazon discounts "even if the [seller's] offer is the best deal

21  available on Amazon" (¶ 16) and even if the off-Amazon price is only a penny less than the price

22  on Amazon (¶ 277). Hiding the best deal on Amazon from Amazon's customers merely because a

23  better deal is available elsewhere does not improve the Amazon in-store experience. Amazon's

24  citations to cases involving steering customers to good deals (Mot. 11-12) are inapposite.

OPPOSITION TO MOTION TO DISMISS - 11
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Amazon's claim that the Complaint inadequately alleges anticompetitive effects flowing

2    from its third-party anti-discounting strategies also fails. (Mot. 13-14.) Conduct has an

3    anticompetitive effect when it "harm[s] the competitive *process*," an inquiry which may be

4    informed by the impact on customers. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020)

5    (quoting *Microsoft*, 253 F.3d at 58). Amazon asserts that its policies have "obvious price-reducing

6    effects" (Mot. 14) and that "the Complaint does not contend otherwise" (Mot. 13). That is plainly

7    false. The Complaint details how Amazon has nearly doubled its seller fees over the past decade

8    (¶¶ 34, 252, 308) and requires sellers to charge at least as much off Amazon (where those fees do

9    not apply) as on Amazon (where sellers must recoup those fees) (¶¶ 17, 309). The "obvious" effect

10   of that requirement, as Amazon was told by sellers, is higher prices on competing sites, not lower

11   prices on Amazon. (*E.g.*, ¶ 300 (seller informing Amazon executive that its anti-discounting

12   policies may "cause us to raise prices in other sales channels in order to keep Amazon offers").)[3]

13       ***First-Party Pricing Strategy.*** When Amazon acts as a seller, its use of surveillance and

14   pricing algorithms to deter rivals from offering lower prices constitutes anticompetitive conduct.

15   Amazon uses an "extensive surveillance network" to track prices online and "immediately

16   cop[ies]—but never undercut[s]" other stores' prices, "automatically increas[ing] its Retail price

17   to copy" other online stores or marketplaces, even if that means higher prices for Amazon

18   shoppers. (¶¶ 325-29.) This strategy is a "game theory approach" (¶ 328) that Amazon devised to

19   teach rivals that it is committed to not let them win share from Amazon by lowering prices. If

20   prices do not affect a rival's share relative to Amazon, the rival's incentives to offer lower prices

21   _____

22   [3] Amazon's citation to merits-stage decisions involving a balancing of procompetitive and
     anticompetitive effects, such as *United States v. AT&T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018),
23   does not support its position at the pleadings stage. (*See* § I.B above.) Amazon also cites *Brantley
     v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (Mot. 14) in support of a
24   predominance requirement at the pleading stage, but that case does not even discuss balancing pro-
     and anti-competitive effects to determine which predominates.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

are diminished, and its incentives to raise prices increase. (¶¶ 330-31.) In the words of a senior executive, Amazon designed this system deliberately to avoid a "perfectly competitive market" in which stores undercut each other to win customers. (¶ 327.) When Amazon implemented the strategy, it predicted that "prices will go up" (¶ 328), and afterward observed that the strategy "work[ed]" (¶ 332).

Amazon's strategy uses its monopoly power to eliminate the normal incentives for firms to compete on price, harming the competitive process. *See Neumann v. Reinforced Earth Co.*, 786 F.2d 424, 427 (D.C. Cir. 1986) (when a monopolist's "rivals will be chastened sufficiently to abandon competitive behavior," its conduct violates Section 2). The faster and more consistently automatic price matching occurs, the more it reduces price competition. *See, e.g.*, Aaron S. Edlin & Eric R. Emch, *The Welfare Losses from Price-Matching Policies*, 47 J. INDUS. ECON. 145, 162 (1999) ("It has long been observed that when rivals' reaction times decrease sufficiently, undercutting becomes unprofitable."). Amazon estimates it can identify price changes for many products "virtually anywhere on the internet within hours" (¶ 267), allowing its pricing responses to occur "immediately" (¶ 329). Amazon's tactics discipline price cutters and freeze price competition (¶¶ 21-22, 258), clearly harming the competitive process.

Amazon tellingly ignores the Complaint's detailed allegations that eliminating these incentives was the *intended* effect of its conduct. (¶¶ 327-32.) A defendant's intent is "relevant to the question whether the challenged conduct is fairly characterized as 'exclusionary' or 'anticompetitive.'" *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985). In a monopolization case, intent evidence "may help the court interpret facts and predict consequences" of the alleged anticompetitive conduct and "understand the likely effect of the monopolist's conduct." *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918); *see Image Tech. Servs.*, 125 F.3d at 1211; *Greyhound Comput.*, 559 F.2d at 499.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Amazon argues that its first-party anti-discounting policy is "facially procompetitive"

2    (Mot. 9-11) and "conclusively presume[d]" to be procompetitive because it involves above-cost

3    pricing (Mot. 13) by mischaracterizing the Complaint and applying the law to its preferred facts.

4    Amazon's arguments address an imagined predatory pricing claim (which depends on below-cost

5    pricing), rather than the Complaint's challenge to Amazon's use of monopoly power to

6    automatically and immediately match both price cuts *and price increases*, with the overarching

7    goal and effect of *eliminating price competition*. As the Supreme Court has made clear, whether

8    prices are above cost (the "price-cost test") only matters when "a plaintiff seek[s] to establish

9    competitive injury resulting from a rival's *low prices*." *Brooke Grp. Ltd. v. Brown & Williamson

10   Tobacco Corp.*, 509 U.S. 209, 222 (1993) (emphasis added); *see also, e.g.*, *Church & Dwight Co.

11   v. Mayer Lab'ys, Inc.*, 2011 WL 1225912, at *8-10 (N.D. Cal. Apr. 1, 2011) ("[*Brooke Group*]

12   line of cases is inapposite" where the relevant claim "is not a predatory pricing claim"). Conduct

13   involving above-cost pricing may be anticompetitive. *See, e.g.*, *ZF Meritor, LLC v. Eaton Corp.*,

14   696 F.3d 254, 279 (3d Cir. 2012) (*Brooke Group* did not "overturn decades of other precedent

15   holding that conduct that does not result in below-cost pricing may nevertheless be

16   anticompetitive."). This is true even if the challenged conduct involves a pricing strategy. *See,

17   e.g.*, *Pulse Network, LLC v. Visa, Inc.*, 30 F.4th 480, 493 (5th Cir. 2022) (*Brooke Group*

18   inapplicable because plaintiff "isn't challenging . . . low or below-cost pricing" but rather claims

19   defendant is "manipulating prices in a way that excludes competitors from the market"). Apart

20   from the inapplicable *Brooke Group* principle (Mot. 13), Amazon does not seriously challenge the

21   sufficiency of the Complaint's well-pleaded allegations of anticompetitive effect (*e.g.*, ¶¶ 332

22   (Amazon observed its effectiveness), 333-50 (specific instances of stifled price competition)).

23   Moreover, Amazon's strategy to foreclose price competition from sellers and rivals alike

24   depends on both its first- and third-party anti-discounting strategies, and the price-cost test does

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   not apply to just one element of a larger course of conduct. *See, e.g.*, *In re Suboxone Antitrust*

2   *Litig.*, 622 F. Supp. 3d 22, 66 (E.D. Pa. 2022) (price-cost test inapplicable where low prices were

3   "part of a broader and more extensive exclusionary scheme"); *see also Pulse Network*, 30 F.4th

4   at 492-93 (declining to apply price-cost test where "artificially deflate[d]" prices were just one part

5   of an "integrated program" that "raises overall prices for merchants" while "excluding competitors

6   from the market"). Amazon's goal of preventing comparison shopping depends on blocking price

7   competition from both rivals and third-party sellers. (¶ 265.) Because the Complaint alleges several

8   types of anticompetitive conduct working together to eliminate price competition, the price-cost

9   test does not apply and cannot support dismissal.

10          **B.   Amazon's conditioning of Prime eligibility on use of Amazon's fulfillment services**

11                 **is anticompetitive.**

12          The Complaint sufficiently alleges that Amazon coerces sellers into using its fulfillment

13   services and thereby forecloses competition. Amazon accomplishes this by conditioning Prime

14   eligibility on the use of FBA. (¶¶ 351-53.) Amazon recognizes that "[s]ellers may not have wanted

15   to buy [FBA] but they did so in order to 'buy increased sales that come with Prime eligibility'"

16   (¶ 361), which regularly triples sellers' sales (¶¶ 359-60). Absent this policy, "many sellers would

17   prefer to use an independent fulfillment provider" that would allow sellers to seamlessly fulfill

18   orders across multiple online sales channels. (¶ 355.)

19          The Complaint details how this challenged conduct unlawfully maintains Amazon's

20   monopolies: by conditioning Prime eligibility on FBA use, Amazon raises the costs of selling off

21   Amazon and limits multihoming, as sellers must maintain separate inventory pools and find

22   another fulfillment solution to sell off Amazon. (¶¶ 368-69.) This makes it harder for Amazon's

23   rivals to attract sellers to their online stores and, in turn, makes it harder for rivals to attract

24   shoppers seeking the wide selection offered by third-party sellers. (¶¶ 364-74.) Amazon's conduct

OPPOSITION TO MOTION TO DISMISS - 15
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   also limits the growth of independent fulfillment providers that could facilitate sellers offering

2   their goods across multiple marketplaces, thereby preserving Amazon's monopoly position.

3   (¶¶ 375-94.)

4         Courts have long recognized that coercion by a dominant firm to force customers to

5   purchase unwanted products may be anticompetitive. *See, e.g.*, *Eastman Kodak Co. v. Image Tech.*

6   *Servs., Inc.*, 504 U.S. 451, 465, 483 (1992) (Kodak "took exclusionary action to maintain its . . .

7   monopoly" over repair parts, including by "forc[ing] unwilling consumption" of related repair

8   services); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467-76 (7th Cir. 2020) (monopolist

9   "engaged in exclusionary conduct forbidden by Section 2" by coercing customers into purchasing

10  related services). This is particularly true when that strategy deprives rivals of the scale they need

11  to compete effectively, including by choking off growth of related products that might support the

12  development of competitors. *See, e.g.*, *Microsoft*, 253 F.3d at 60, 65-66 (Microsoft maintained its

13  Windows monopoly by coercing customers to use Internet Explorer, thereby "keeping rival

14  browsers from gaining the critical mass of users necessary to attract developer attention away from

15  Windows").

16        Amazon's arguments that limiting Prime eligibility is about improving delivery (Mot. 12)

17  and does not produce anticompetitive effects (Mot. 14) again ignore the Complaint's allegations.

18  Contrary to Amazon's claims of improved delivery, the Complaint alleges that when sellers were

19  given the chance to enroll in "Seller Fulfilled Prime," many sellers enrolled, and some chose

20  independent fulfillment providers (¶¶ 398-400) while successfully meeting Amazon's delivery

21  metrics (¶ 401). Relaxing the FBA requirement for Prime eligibility worried Amazon because, as

22  it said internally, Prime order fulfillment would be an "enabler" for independent fulfillment

23  providers to "get to scale," which would then benefit "other retailers." (¶ 402.) Accordingly,

24  Amazon pressed sellers to stop using independent fulfillment providers for Prime-eligible orders.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    (¶¶ 403-05.) Amazon's attempts to present an alternative explanation for its conduct must fail on

2    a motion to dismiss. *See, e.g.*, *Heck v. Amazon.com, Inc.*, 2024 WL 248712, at *3 (W.D. Wash.

3    Jan. 23, 2024).

4           Amazon's arguments concerning the anticompetitive effects of its coercion rewrite the law

5    (inventing a list of pleading requirements) and the facts (mischaracterizing the Complaint and

6    relying on factual claims not alleged). (Mot 14-15.) Without supporting authority, Amazon claims

7    that the Complaint must identify a host of details: specific sellers deterred from multihoming, the

8    fraction of sellers who would multihome, consumer price effects for specific products, and

9    analogous details for foreclosed fulfillment services. This level of detail is not required. *See, e.g.*,

10    *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (a complaint "need only give the defendant fair notice

11    of what the claim is and the grounds upon which it rests" (cleaned up)); *FTC v. Qualcomm Inc.*,

12    2017 WL 2774406, at *25 (N.D. Cal. June 26, 2017) (Koh, J.) ("Although FTC has not identified

13    by name any *specific* competitor that was excluded . . . , the case law does not suggest that this

14    degree of specificity is required at the motion to dismiss stage."). The Complaint's allegations that

15    Amazon's coercion harmed competition are entirely plausible: Amazon itself was concerned that

16    allowing independent providers to fulfill Prime orders would "enable[]" those providers to "get to

17    scale" and help "other retailers." (¶ 402.)

18           Nor may Amazon revise the well-pleaded facts. Citing its own website, Amazon says the

19    Complaint is "conclusory (and inaccurate)" when it alleges that sellers must use a non-FBA option

20    to fulfill orders from other stores, thereby raising costs for sellers on rival marketplaces. (Mot. 14

21    n.9.) But the Complaint explains that "Sellers cannot use FBA to fulfill orders off Amazon"

22    because doing so requires "pay[ing] an additional fee for a separate Amazon fulfillment service"

23    and Amazon "does not provide custom packaging, [or] standard integration with non-Amazon

24    platforms." (¶ 388.) Likewise, Amazon suggests, without citation to the Complaint, that "delivery

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   incumbents" like UPS, FedEx, and the U.S. Postal Service operate at efficient scale in *delivery*

2   services and that this somehow negates the Complaint's allegations regarding the anticompetitive

3   effects of denying scale to independent *fulfillment* providers. (Mot. 3, 15.) Whether or not UPS,

4   FedEx, and the U.S. Postal Service offer delivery services at large scale, the Complaint explains

5   how fulfillment services, a critical input for online sales, do not include delivery—only "preparing

6   items for shipping . . . [including] storing, picking (retrieving from storage), packaging, and

7   preparing items purchased from online retail stores for delivery." (¶¶ 109-11.) Amazon's factual

8   contentions and unsupported demands for detail do not merit dismissal of Plaintiffs' claims.

9   **III.    THE COMPLAINT PLAUSIBLY ALLEGES STANDALONE UNFAIR METHOD**

10          **OF COMPETITION CLAIMS UNDER THE FTC ACT.**

11          The Supreme Court has long recognized that the prohibition of "unfair method[s] of

12   competition" in Section 5 of the FTC Act reaches beyond the prohibitions in the Sherman Act.

13   *See, e.g.*, *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986); *Cement Inst.*, 333 U.S. at 694

14   ("[T]here are many unfair methods of competition that do not assume the proportions of Sherman

15   Act violations."). Amazon ignores this well-established principle, arguing that the purported

16   deficiencies in Plaintiffs' monopolization claims also require dismissal of Count III. (Mot. 15-16.)

17   Amazon's arguments for dismissal of the monopolization claims fail for the reasons explained

18   above (*see* §§ I-II), which is justification enough to reject Amazon's passing argument regarding

19   Count III.

20          Even a failure to adequately plead monopolization claims would not warrant dismissal of

21   claims under Section 5, whose prohibitions extend beyond the Sherman Act. *See, e.g.*, *FTC v.*

22   *Brown Shoe Co.*, 384 U.S. 316, 320-22 (1966); *Qualcomm*, 2017 WL 2774406, at *8. Congress

23   "deliberately" used the general term "unfair method of competition" in Section 5 because Congress

24   knew "that [t]here is no limit to human inventiveness in this field; that consequently, a definition

1   that fitted practices known to lead towards an unlawful restraint of trade today would not fit

2   tomorrow's new inventions in the field." *Cement Inst.*, 333 U.S. at 708-09 (cleaned up). The

3   Complaint's detailed allegations regarding the anticompetitive character of Amazon's conduct

4   challenged under Count III suffice to state a standalone unfair method of competition claim. *See,*

5   *e.g.*, *id.* at 713 (pricing system that was "a handy instrument to bring about elimination of any kind

6   of price competition" violated Section 5); *Atl. Refin. Co. v. FTC*, 381 U.S. 357, 367-70 (1965)

7   (coercive actions by powerful oil company against its dealers violated Section 5).

8        The Complaint also properly states a standalone unfair method of competition claim

9   regarding Amazon's Project Nessie (Count IV). Contrary to Amazon's argument that this claim

10  conflicts with precedent, the Ninth Circuit has concluded that Section 5 reaches strategic pricing

11  practices that can have the effect of maintaining prices at an elevated level. *See Boise Cascade*

12  *Corp. v. FTC*, 637 F.2d 573, 575 (9th Cir. 1980); *see also E.I. Du Pont de Nemours & Co. v. FTC*,

13  729 F.2d 128, 139-40 (2d Cir. 1984) (conduct may be "unfair" if there are "indicia of

14  oppressiveness . . . such as . . . evidence of anticompetitive intent or purpose"); *Cement Inst.*, 333

15  U.S. at 708. Although the court in *Boise Cascade* reversed an FTC order enjoining manufacturers'

16  use of a particular pricing system, its decision turned on the absence of proof of anticompetitive

17  effects after trial and not—as Amazon suggests—on whether the FTC Act reached the challenged

18  conduct. 637 F.3d at 579-80. Amazon's citation to cases examining the presence or absence of an

19  agreement on prices in the context of Sherman Act claims (Mot. 18-19) say nothing about the

20  scope of the FTC Act or the FTC's claim here.

21       The Complaint alleges in detail that Amazon's Project Nessie pricing algorithm was

22  expressly designed to—and did—result in higher prices for millions of shoppers on both Amazon

23  and other online stores. (¶¶ 419-25.) Amazon's conduct involves precisely the type of "systematic

24  matching of prices" that, as the Ninth Circuit warned in *Boise Cascade*, threatens free and fair

OPPOSITION TO MOTION TO DISMISS - 19
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   competition. 637 F.2d at 579; *see also* Zach Y. Brown & Alexander MacKay, *Competition in*

2   *Pricing Algorithms*, 15 Am. Econ. J.: Microeconomics 109, 110 (2023) ("[P]ricing algorithms

3   can generate supracompetitive prices through novel, non-collusive mechanisms.").

4   **IV.     THE FTC ACT CLAIMS MAY BE PURSUED IN FEDERAL COURT.**

5          Without basis, Amazon argues that the FTC cannot seek a permanent injunction in federal

6   court under Section 5 of the FTC Act on a standalone basis without first concluding an

7   administrative proceeding. (Mot. 16-18.) No such requirement exists. Section 13(b) of the FTC

8   Act provides that "in proper cases the Commission may seek, and after proper proof, the court may

9   issue, a permanent injunction." 15 U.S.C. § 53(b). In *FTC v. H.N. Singer, Inc.*, the Ninth Circuit

10  held that Section 13(b) authorizes "permanent injunctions in proper cases even though the

11  Commission does not contemplate any administrative proceedings." 668 F.2d 1107, 1111 (9th Cir.

12  1982). The Ninth Circuit long ago rejected the argument that "proper cases" are only routine fraud

13  cases—similar to Amazon's argument here. *See FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1086

14  (9th Cir. 1985). The court recognized that a "proper case" under Section 13(b) is one involving

15  "violations of *any provisions of law enforced by the Commission*." *Id.* (quoting *Singer*, 668 F.2d

16  at 1113); *see also, e.g.*, *FTC v. Hoyal & Assocs., Inc.*, 859 F. App'x 117, 120 (9th Cir. 2021) (case

17  against defendants likely to violate law in future was "'proper case" under Section 13(b)); *FTC v.*

18  *Noland*, 2021 WL 4127292, at *17 (D. Ariz. Sept. 9, 2021) ("[A] permanent injunction may issue

19  under § 13(b) without regard to the existence of administrative proceedings.").

20         The FTC is aware of no court that has dismissed an FTC action for not being a "proper

21  case," let alone individual *claims* in an action, as Amazon seeks here. To the contrary, district

22  courts have routinely heard standalone Section 5 cases challenging unfair or deceptive acts or

23  practices, without prior administrative proceedings—even as to issues of first impression. *See, e.g.*,

24  *FTC v. Willms*, 2011 WL 4103542 (W.D. Wash. Sept. 13, 2011) (deceptive marketing tactics);

OPPOSITION TO MOTION TO DISMISS - 20
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  *FTC v. D Squared Sols., LLC*, 2003 WL 22881377 (D. Md. Oct. 30, 2003) (first FTC action

2  alleging that use of computer program to barrage consumers with pop-up ads was unfair). And for

3  good reason. Amazon's interpretation of Section 13(b) would require wasteful threshold litigation

4  about whether a Section 5 claim is sufficiently "well-developed" to be heard in district court,

5  before any evidence has been presented.

6       Amazon's cases do not support its position. Instead, they merely describe procedures the

7  FTC and courts may follow in circumstances different from those present here. *See FTC v. Sperry*

8  *& Hutchinson Co.*, 405 U.S. 233, 249 (1972) (pre-dating Section 13(b), outlining appellate review

9  standard for administrative order); *Atl. Refin. Co.*, 381 U.S. at 367 (same); *FTC v. Food Town*

10  *Stores, Inc.*, 539 F.2d 1339, 1341-42 (4th Cir. 1976) (describing standard for issuance of

11  preliminary injunction pending completion of related administrative proceeding). Even in *FTC v.*

12  *Abbott Laboratories*, 853 F. Supp. 526, 536 (D.D.C. 1994), the district court allowed a standalone

13  unfair method of competition claim to proceed to trial without the FTC first issuing an opinion

14  addressing the conduct.

15       Amazon's argument that the FTC's Project Nessie claim must be dismissed as "untimely"

16  (Mot. 19-20) also fails. Ninth Circuit precedent makes clear that the FTC may seek injunctive

17  relief in federal court when the conduct challenged is "ongoing or likely to recur." *Evans Prods.*,

18  775 F.2d at 1087; *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999);

19  *FTC v. Cardiff*, 2021 WL 3616071, at *7 (C.D. Cal. June 29, 2021). In fact, "an inference arises

20  from illegal past conduct that future violations may occur." *FTC v. Elec. Payment Sols. of Am.*

21  *Inc.*, 2019 WL 4287298, at *9 (D. Ariz. Aug. 28, 2019) (cleaned up). Accordingly, "courts should

22  be wary of a defendant's termination of illegal conduct when a defendant voluntarily ceases

23  unlawful conduct in anticipation of formal intervention." *Id.* (collecting cases).

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Here, the Complaint alleges that Amazon turned "off" Project Nessie during periods of

2    high public scrutiny of its prices, only to turn the pricing algorithm back on again once public

3    attention receded. (¶¶ 426-28 (Amazon considered turning Project Nessie on to "recapture the lost

4    [profit] opportunity" from having temporarily paused it).) Since 2019, when Amazon set aside

5    Project Nessie amid mounting regulatory scrutiny, Amazon has actively considered turning Nessie

6    back on, including as recently as 2022. (¶¶ 430-32.) The FTC has thus plausibly alleged that

7    Amazon's unlawful conduct is "likely to recur." *Evans Prods.*, 775 F.2d at 1087.

8    Courts in this Circuit have recognized that *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147

9    (3d Cir. 2019), on which Amazon relies, is an "out-of-circuit case that conflicts with governing

10   Ninth Circuit precedent." *United States v. MyLife.com, Inc.*, 499 F. Supp. 3d 757, 766 (C.D. Cal.

11   2020); *see also Elec. Payment Sols.*, 2019 WL 4287298, at *9-10 & n.5 (same); *FTC v. Adept*

12   *Mgmt. Inc.*, 2019 WL 2433193, at *1 (D. Or. June 7, 2019) (same). Here, the Complaint alleges

13   that Amazon paused its challenged practice in anticipation of government scrutiny (¶ 430) and is

14   "free to return to [its] old ways" the moment Amazon believes it is safe to do so. *Affordable Media*,

15   179 F.3d at 1237.

16   **V.    THE STATE LAW CLAIMS ARE PROPERLY PLEADED.**

17   **A.  Amazon's conduct violates state consumer protection statutes.**

18   Amazon's arguments for dismissing claims under Connecticut, New Jersey, Oklahoma,

19   Pennsylvania, and Rhode Island consumer protection statutes mischaracterize these States' laws

20   and their allegations.

21   First, Amazon incorrectly asserts that all five States alleged "that Amazon engaged in

22   deceptive commercial practices." (Mot. 21.) Only New Jersey, Oklahoma, and Pennsylvania raised

23   deception claims. (¶¶ 513, 522(c), 541-52.) However, all five states alleged that Amazon violated

24   their consumer protection statutes in multiple and distinct ways. *See* Okla. Stat. tit. 15, §§ 752(14),

OPPOSITION TO MOTION TO DISMISS - 22
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

753(20) (prohibiting unfair *and* deceptive trade practices); Conn. Gen. Stat. § 42-110b(a) (prohibiting unfair and deceptive practices as well as unfair methods of competition); 73 Pa. Cons. Stat. § 201-3(a) (same); R.I. Gen. Laws §§ 6-13.1-1(6), 6-13.1-2 (same); N.J. Stat. Ann. § 56:8-2 (prohibiting deceptive or unconscionable commercial practices and misrepresentations); *id.* § 56:8-4(b) (prohibiting commercial practices violating State or federal law). In particular, Amazon's claim that unfairness and deception are identical in Connecticut, Pennsylvania, and Rhode Island is mistaken. *See Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 141 (2d Cir. 2023) (deception and unfairness claims are distinct); *Commonwealth ex rel. Zimmerman v. Nickel*, 26 Pa. D. & C.3d 115, 120, 139 (Pa. C.P. Mercer Cnty. 1983) (same, and statute reaches beyond antitrust laws); *Long v. Dell, Inc.*, 93 A.3d 988, 1000-01, 1003 (R.I. 2014) (distinct definitions of "unfair" and "deceptive"). And courts liberally and broadly construe these statutes to effectuate their underlying purposes. *See Commonwealth v. Monumental Props., Inc.*, 329 A.2d 812, 817 (Pa. 1974); *Soto v. Bushmaster Firearms Int'l*, 202 A.3d 262, 298-99 (Conn. 2019); *Long*, 93 A.3d at 1081; *State ex rel. McCormac v. Qwest Commc'ns Int'l*, 904 A.2d 775, 784-85 (N.J. Super. Ct. App. Div. 2006); *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000).

Second, Amazon misconstrues the elements of deception claims in New Jersey, Oklahoma, and Pennsylvania. It urges dismissal of these claims for failure to allege reliance or materiality, but neither is required in government enforcement actions. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (reliance, intent, and harm not required); *Leon v. Rite Aid Corp.*, 774 A.2d 674, 680 (N.J. Super. Ct. App. Div. 2001) (materiality not required); Okla. Stat. tit. 15, §§ 752(13) (prohibiting practices that "could reasonably be expected to deceive or mislead"); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008) (reliance requirement not applicable to Pennsylvania Attorney General). Amazon also calls these claims "conclusory" (Mot. 21), but they meet the applicable pleading standards. *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 899

OPPOSITION TO MOTION TO DISMISS - 23
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   (N.J. Super. Ct. Law Div. 2001) (description of scheme sufficient; particulars of underlying

2   conduct "matters of discovery"); *Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.*,

3   895 A.2d 683, 689-90 (Pa. Commw. Ct. 2006) (same); *Patterson*, 19 P.3d at 848. Advertising best

4   and lowest prices while artificially raising them—as with Project Nessie—constitutes deception.

5   *See, e.g.*, *Leon*, 774 A.2d at 680. As Amazon does not directly challenge New Jersey's

6   misrepresentation and unconscionable commercial practices allegations, per N.J. Stat. Ann. § 56:8-

7   2, or *all* unlawful practices allegations (save as to the Sherman Act), per N.J. Stat. Ann. § 56:8-4,

8   these claims must survive. (*See* ¶ 513.)

9       Lastly, Amazon argues that Connecticut's unfair methods claim "stands only upon its"

10   antitrust claims (Mot. 22), but Connecticut's allegation that Project Nessie violated the

11   Connecticut Unfair Trade Practices Act (¶¶ 478, 482) does not require a violation of the Sherman

12   Act, the Connecticut Antitrust Act, the FTC Act, or any other statute. *Indiaweekly.com, LLC v.*

13   *Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 506-07 (D. Conn. 2009).

14       **B.  The relevant state law claims are not territorially limited.**

15       Amazon incorrectly argues that the phrase "within the state" or equivalent language in the

16   antitrust statutes of Maryland, New Jersey, and Oklahoma limits their territorial reach. (Mot. 22-

17   23.) The plain meaning of this phrase requires only that the challenged conduct affect markets

18   within these States; it does not preclude liability when markets outside these States are *also*

19   affected. *See, e.g.*, *California v. Infineon Techs. AG*, 2008 WL 1766775, at *8 (N.D. Cal. Apr. 15,

20   2008). Here, Amazon's anticompetitive conduct, though nationwide in scope, occurred in part or

21   had effects "within" these States.

22       Amazon's cited cases do not support its argument. The Oklahoma antitrust statute at issue

23   in *Young v. Seaway Pipeline, Inc.*, 576 P.2d 1148 (Okla. 1977), was repealed and replaced in 1998.

24   1998 Okla. Sess. Laws ch. 356. Oklahoma's current statute reaches interstate commerce that

OPPOSITION TO MOTION TO DISMISS - 24
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   impacts Oklahoma. *See* D. Kent Meyers & Michael Barnett, *Oklahoma's New Antitrust Reform*

2   *Act*, 24 OKLA. CITY U. L. REV. 187, 204-05 (1999). Moreover, *Seaway Pipeline* addresses only

3   whether Oklahoma state courts had subject matter jurisdiction over the particular claims in that

4   case. 576 P.2d at 1150. Amazon also misreads *State v. Lawn King, Inc.*, which does not limit New

5   Jersey's territorial reach and says it would be "absurd" to rule that state antitrust laws are federally

6   preempted. 375 A.2d 295, 302 (N.J. Super. Ct. Law Div. 1977), *rev'd on other grounds*, 404 A.2d

7   1215 (N.J. Super. Ct. App. Div. 1979). Finally, Amazon's argument assumes that state and federal

8   antitrust laws cannot overlap. To the contrary, the Supreme Court has held that both can reach the

9   same conduct. *See California v. ARC Am. Corp.*, 490 U.S. 93, 100 (1989) (upholding claims under

10  "both the Sherman Act and state antitrust Acts" and rejecting preemption). Moreover, given the

11  nature of the modern economy, a state antitrust statute limited to wholly intrastate conduct would

12  be "a dead letter." *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 157 (Wis. 2005). Amazon asks this

13  Court to effectively nullify state antitrust statutes without any basis for doing so.

14          **C.  Pennsylvania common law prohibits Amazon's anticompetitive conduct.**

15          Amazon's argument that Pennsylvania common law does not proscribe monopolization

16  fails. Courts have long held that it does. *See, e.g.*, *In re Condemnation by Susquehanna Area Reg'l*

17  *Airport Auth.*, No. 2005-CV-1282-CN, Order at 1 (Pa. C.P. Dauphin Cnty. Aug. 14, 2006)

18  (attached as Exhibit A to Declaration of Tracy A. Wertz) (recognizing cause of action for attempted

19  monopolization (citing *Schwartz v. Laundry & Linen Supply Drivers' Union, Local 187*, 14 A.2d

20  438, 440-41 (Pa. 1940) (monopolies violate common law))); *P.C. Weist Co. v. Weeks*, 35 A. 693,

21  693 (Pa. 1896) (monopolies "held by the common law to be against public policy"); *Appeal of*

22  *Cumberland Valley R.R. Co.*, 62 Pa. 218, 222 (1869) (well-settled principles of law against

23  monopoly); *FTC v. Shkreli*, 581 F. Supp. 3d 579, 629 (S.D.N.Y. 2022) (upholding Sherman Act

24  and Pennsylvania common law claims).

OPPOSITION TO MOTION TO DISMISS - 25
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**D.  New York's Executive Law § 63(12) claim is not preempted.**

New York alleges that Amazon violated New York Executive Law § 63(12), which prohibits "persistent . . . illegality in the carrying on, conducting or transaction of business." Courts recognize that "any conduct which violates state *or federal* law or regulation is actionable under Executive Law § 63(12)." *Shkreli*, 581 F. Supp. 3d at 627-28 (cleaned up, emphasis added). Amazon, arguing that FTC Act Section 5 preempts Section 63(12), erroneously assumes that the FTC's exclusive jurisdiction over Section 5, precluding private actions under the *same* federal statute, somehow endows Section 5 with preemptive effect over *different* state statutes that independently authorize state law actions, such as Section 63(12). That is not the law; the FTC's exclusive jurisdiction over FTC Act claims has "never . . . been an obstacle to suits premised on overlapping state statutes or on common law." *United States v. Philip Morris Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003).

Amazon's cases provide no support for its position. All deal with the lack of a private right of action under Section 5 itself, saying nothing about Section 5 preempting state law. *See O'Donnell v. Bank of Am., Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) (Section 5 "doesn't create a private right of action"); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973) (same for "private litigants"); *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) (same for "competitors or consumers"). Even if a preemption argument were appropriate, Amazon never offers its basic elements, failing to identify the type of preemption present, whether express, field, or conflict. *See, e.g.*, *Altria Grp. v. Good*, 555 U.S. 70, 76-77 (2008) (types of preemption).

## **CONCLUSION**

Plaintiffs respectfully submit that the Court should deny Amazon's motion to dismiss.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Dated: February 6, 2024

*I certify that this memorandum contains*
*8,392 words, in compliance with the Local Civil Rules.*

Respectfully submitted,

*s/ Susan A. Musser*
SUSAN A. MUSSER (DC Bar # 1531486)
EDWARD H. TAKASHIMA (DC Bar # 1001641)
EMILY K. BOLLES (NY Reg. # 5408703)
SARA M. DIVETT (DC Bar # 1736504)
MEGAN E. B. HENRY (NY Reg. # 5539671)
COLIN M. HERD (NY Reg. # 5665740)
KENNETH H. MERBER* (DC Bar # 985703)
CHRISTINA F. SHACKELFORD (NY Reg. # 5339114)
MARK J. WOODWARD* (DC Bar # 479537)

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.:   (202) 326-2122 (Musser)
        (202) 326-2464 (Takashima)
Email: smusser@ftc.gov
        etakashima@ftc.gov
        ebolles@ftc.gov
        sdivett@ftc.gov
        mhenry1@ftc.gov
        cherd@ftc.gov
        kmerber@ftc.gov
        cshackelford@ftc.gov
        mwoodward@ftc.gov

*Notices of Appearance forthcoming

*Attorneys for Plaintiff Federal Trade Commission*

OPPOSITION TO MOTION TO DISMISS - 27
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    FOR PLAINTIFF STATE OF NEW YORK:

2                                    LETITIA JAMES
                                     Attorney General

3
                                     Christopher D'Angelo
4                                    Chief Deputy Attorney General,
                                     Economic Justice Division

5
                                     *s/ Elinor R. Hoffmann*
6                                    Elinor R. Hoffmann (admitted *pro hac vice*)
                                     Chief, Antitrust Bureau

7
                                     *s/ Amy McFarlane*
8                                    Amy McFarlane (admitted *pro hac vice*)
                                     Deputy Chief, Antitrust Bureau

9
                                     *s/ Michael Jo*
10                                   Michael Jo (admitted *pro hac vice*)
                                     Assistant Attorney General, Antitrust Bureau

11
                                     *s/ James Yoon*
12                                   James Yoon (admitted *pro hac vice*)
                                     Assistant Attorney General, Antitrust Bureau

13
                                     New York State Office of the Attorney General
14                                   28 Liberty Street
                                     New York, NY 10005
15                                   Telephone: (212) 416-6537 (Jo)
                                     Email: Elinor.Hoffmann@ag.ny.gov
16                                          Amy.McFarlane@ag.ny.gov
                                            Michael.Jo@ag.ny.gov
17                                          James.Yoon@ag.ny.gov

18                                   *Attorneys for Plaintiff State of New York*

19

20

21

22

23

24

OPPOSITION TO MOTION TO DISMISS - 28
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    FOR PLAINTIFF STATE OF CONNECTICUT:

2                                        WILLIAM TONG
                                         Attorney General
3
                                         Jeremy Pearlman
4                                        Associate Attorney General

5                                        *s/ Nicole Demers*
                                         Nicole Demers (admitted *pro hac vice*)
6                                        Deputy Associate Attorney General

7                                        *s/ Rahul A. Darwar*
                                         Rahul A. Darwar (admitted *pro hac vice*)
8                                        Assistant Attorney General

9                                        Office of the Attorney General of Connecticut
                                         165 Capitol Avenue
10                                       Hartford, CT 06016
                                         Telephone: (860) 808-5030
11                                       Email: Nicole.Demers@ct.gov
                                                  Rahul.Darwar@ct.gov
12
                                         *Attorneys for Plaintiff State of Connecticut*
13
      PLAINTIFF STATE OF NEW HAMPSHIRE:
14
                                         By its attorney,
15
                                         JOHN M. FORMELLA
16                                       Attorney General

17                                       *s/ Alexandra C. Sosnowski*
                                         Alexandra C. Sosnowski (admitted *pro hac vice*)
18                                       Assistant Attorney General
                                         Consumer Protection and Antitrust Bureau
19                                       New Hampshire Department of Justice
                                         Office of the Attorney General
20                                       One Granite Place South
                                         Concord, NH 03301
21                                       Telephone: (603) 271-2678
                                         Email: Alexandra.c.sosnowski@doj.nh.gov
22
                                         *Attorneys for Plaintiff State of New Hampshire*
23

24

**FEDERAL TRADE COMMISSION**
                                                              600 Pennsylvania Avenue, NW
                                                              Washington, DC 20580
                                                              (202) 326-2222

1    FOR PLAINTIFF STATE OF OKLAHOMA:

2                                            GENTNER DRUMMOND
                                             Attorney General
3
                                             *s/ Caleb J. Smith*
4                                            Caleb J. Smith (admitted *pro hac vice*)
                                             Assistant Attorney General
5                                            Consumer Protection Unit
                                             Office of the Oklahoma Attorney General
6                                            15 West 6th Street, Suite 1000
                                             Tulsa, OK 74119
7                                            Telephone: (918) 581-2230
                                             Email:  caleb.smith@oag.ok.gov
8
                                             *Attorneys for Plaintiff State of Oklahoma*
9
     FOR PLAINTIFF STATE OF OREGON:
10
                                             ELLEN F. ROSENBLUM
11                                           Attorney General

12                                           *s/ Timothy D. Smith*
                                             Timothy D. Smith, WSBA No. 44583
13                                           Senior Assistant Attorney General
                                             Antitrust and False Claims Unit
14                                           Oregon Department of Justice
                                             100 SW Market St
15                                           Portland, OR 97201
                                             Telephone: (503) 934-4400
16                                           Email: tim.smith@doj.state.or.us

17                                           *Attorneys for Plaintiff State of Oregon*

18

19

20

21

22

23

24

OPPOSITION TO MOTION TO DISMISS - 30
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:

MICHELLE A. HENRY
Attorney General of Pennsylvania

*s/ Tracy W. Wertz*
Tracy W. Wertz (admitted *pro hac vice*)
Chief Deputy Attorney General

*s/ Jennifer A. Thomson*
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General

*s/ Brandon S. Sprecher*
Brandon S. Sprecher (admitted *pro hac vice*)
Deputy Attorney General

Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email:  twertz@attorneygeneral.gov
          jthomson@attorneygeneral.gov
          bsprecher@attorneygeneral.gov

*Attorneys for Plaintiff Commonwealth of
Pennsylvania*

OPPOSITION TO MOTION TO DISMISS - 31
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  FOR PLAINTIFF STATE OF DELAWARE:

2                                          KATHLEEN JENNINGS
                                           Attorney General
3
                                           *s/ Michael A. Undorf*
4                                          Michael A. Undorf (admitted *pro hac vice*)
                                           Deputy Attorney General
5
                                           *s/ Brian Canfield*
6                                          Brian Canfield (admitted *pro hac vice*)
                                           Deputy Attorney General
7
                                           Delaware Department of Justice
8                                          820 N. French St., 5th Floor
                                           Wilmington, DE 19801
9                                          Telephone: (302) 683-8816 (Undorf)
                                           Email:  michael.undorf@delaware.gov
10                                                 brian.canfield@delaware.gov

11                                         *Attorneys for Plaintiff State of Delaware*

12 FOR PLAINTIFF STATE OF MAINE:

13                                         AARON M. FREY
                                           Attorney General
14
                                           *s/ Christina M. Moylan*
15                                         Christina M. Moylan (admitted *pro hac vice*)
                                           Assistant Attorney General
16                                         Chief, Consumer Protection Division

17                                         *s/ Michael Devine*
                                           Michael Devine (admitted *pro hac vice*)
18                                         Assistant Attorney General

19                                         Office of the Maine Attorney General
                                           6 State House Station
20                                         Augusta, ME 04333-0006
                                           Telephone: (207) 626-8800
21                                         Email:  christina.moylan@maine.gov
                                                   michael.devine@maine.gov
22
                                           *Attorneys for Plaintiff State of Maine*
23

24

**FEDERAL TRADE COMMISSION**
                                           600 Pennsylvania Avenue, NW
                                           Washington, DC 20580
                                           (202) 326-2222

1   FOR PLAINTIFF STATE OF MARYLAND:

2                                    ANTHONY G. BROWN
                                     Attorney General

3
                                     *s/ Gary Honick*
4                                    Gary Honick (admitted *pro hac vice*)
                                     Assistant Attorney General
5                                    Deputy Chief, Antitrust Division

6                                    *s/ Byron Warren*
                                     Byron Warren (admitted *pro hac vice*)
7                                    Assistant Attorney General

8                                    Office of the Maryland Attorney General
                                     200 St. Paul Place
9                                    Baltimore, MD 21202
                                     Telephone: (410) 576-6470
10                                   Email: ghonick@oag.state.md.us
                                              bwarren@oag.state.md.us
11
                                     *Attorneys for Plaintiff State of Maryland*
12
     FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:
13
                                     ANDREA JOY CAMPBELL
14                                   Attorney General

15                                   *s/ Michael MacKenzie*
                                     Michael MacKenzie (admitted *pro hac vice*)
16                                   Deputy Chief, Antitrust Division
                                     Office of the Massachusetts Attorney General
17                                   One Ashburton Place, 18th Floor
                                     Boston, MA 02108
18                                   Telephone: (617) 963-2369
                                     Email: michael.mackenzie@mass.gov
19
                                     *Attorneys for Plaintiff Commonwealth of*
20                                   *Massachusetts*

21

22

23

24

OPPOSITION TO MOTION TO DISMISS - 33                    **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                              600 Pennsylvania Avenue, NW
                                                        Washington, DC 20580
                                                        (202) 326-2222

1    FOR PLAINTIFF STATE OF MICHIGAN:

2                                     DANA NESSEL
                                      Attorney General
3
                                      *s/ Jason Evans*
4                                     Jason Evans (admitted *pro hac vice*)
                                      Division Chief, Corporate Oversight Division
5                                     Assistant Attorney General

6                                     *s/ Scott A. Mertens*
                                      Scott A. Mertens (admitted *pro hac vice*)
7                                     Assistant Attorney General

8                                     *s/ Jonathan Comish*
                                      Jonathan Comish (admitted *pro hac vice*)
9                                     Assistant Attorney General

10                                    Michigan Department of Attorney General
                                      525 West Ottawa Street
11                                    Lansing, MI 48933
                                      Telephone: (517) 335-7622
12                                    Email:  EvansJ@michigan.gov
                                              MertensS@michigan.gov
13                                            ComishJ@michigan.gov

14                                    *Attorneys for Plaintiff State of Michigan*

15

16

17

18

19

20

21

22

23

24

OPPOSITION TO MOTION TO DISMISS - 34
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

FOR PLAINTIFF STATE OF MINNESOTA:

KEITH ELLISON
Attorney General

Jessica Whitney
James W. Canaday
Deputy Attorneys General

*s/ Zach Biesanz*
Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel

*s/ Sarah Doktori*
Sarah Doktori (admitted *pro hac vice*)
Assistant Attorney General

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
          sarah.doktori@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General

ERNEST D. FIGUEROA
Consumer Advocate

*s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov

*Attorneys for Plaintiff State of Nevada*

OPPOSITION TO MOTION TO DISMISS - 35
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

FOR PLAINTIFF STATE OF NEW JERSEY:

MATTHEW J. PLATKIN
Attorney General of New Jersey

*s/ Ana Atta-Alla*
Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General

*s/ Isabella Pitt*
Isabella R. Pitt (admitted *pro hac vice*)
Deputy Attorney General
Assistant Section Chief - Antitrust

New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
            Isabella.Pitt@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*

FOR PLAINTIFF STATE OF NEW MEXICO:

RAÚL TORREZ
Attorney General

*s/ Julie Meade*
Julie Meade (admitted *pro hac vice*)
Division Director, Consumer and
Environmental Protection Division

*s/ Jeffrey Herrera*
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General

New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jmeade@nmag.gov
            jherrera@nmag.gov

*Attorneys for Plaintiff State of New Mexico*

OPPOSITION TO MOTION TO DISMISS - 36
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

FOR PLAINTIFF STATE OF RHODE ISLAND:

PETER F. NERONHA
Attorney General

*s/ Stephen N. Provazza*
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

FOR PLAINTIFF STATE OF WISCONSIN:

JOSHUA L. KAUL
Attorney General

*s/ Gwendolyn J. Cooley*
Gwendolyn J. Cooley (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 261-5810
Email: cooleygj@doj.state.wi.us

*Attorneys for Plaintiff State of Wisconsin*

OPPOSITION TO MOTION TO DISMISS - 37
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222