| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | WESTERN DISTRICT OF WASHINGTON AT SEATTLE |

```
                                    )
FEDERAL TRADE COMMISSION, et        ) C23-01495-JHC
al.,                                )
                                    ) SEATTLE, WASHINGTON
              Plaintiffs,           )
                                    ) February 8, 2024 -
v.                                  ) 2:00 p.m.
                                    )
AMAZON.COM, INC., a                 )
corporation,                        ) SCHEDULING CONFERENCE
                                    )
              Defendant.            )
```

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN H. CHUN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff FTC: | Edward H. Takashima |
| | Emily K. Bolles |
| | Susan A. Musser |
| | Federal Trade Commission |
| | 600 Pennsylvania Avenue N.W. |
| | Washington, D.C. 20580 |
| | |
| For the State of Oregon and Plaintiff States: | Timothy D. Smith |
| | Oregon Department of Justice |
| | 1162 Court Street N.E. |
| | Salem, OR 97301-4096 |
| | |
| For the Defendant: | Heidi K. Hubbard |
| | Kevin M. Hodges |
| | Williams & Connolly |
| | 680 Maine Avenue S.W. |
| | Washington, DC 20024 |
| | |
| | Patricia A. Eakes |
| | Molly A. Terwilliger |
| | Morgan Lewis & Bockius |
| | 1301 Second Avenue, Suite 3000 |
| | Seattle, WA 98101 |

**Proceedings stenographically reported and transcript produced with computer-aided technology**

 1          THE COURT:  Good afternoon, everyone.  Please be seated.

 2          THE CLERK:  This is Case No. C23-1495, Federal Trade

 3    Commission, et al. versus Amazon.com Incorporated.

 4       Counsel, please rise and make your appearances for the

 5    record.

 6          MR. TAKASHIMA:  Good afternoon, Your Honor.  Ed

 7    Takashima for the Federal Trade Commission, and with me are my

 8    colleagues Susan Musser and Emily Bolles.

 9          THE COURT:  Good afternoon.

10          MR. SMITH:  Good afternoon, Your Honor.  Tim Smith from

11    the Oregon Department of Justice appearing on behalf of the

12    State of Oregon, which is acting by and through its Attorney

13    General, Helen Rosenblum.  I'm also appearing, Your Honor, as

14    local counsel for the remaining plaintiff states, which are also

15    acting by and through their respective Attorneys General.

16          MS. HUBBARD:  Good afternoon, Your Honor.  Heidi Hubbard

17    from Williams & Connolly, counsel for Amazon.  I'm here with my

18    colleague Kevin Hodges and my co-counsel Patty Eakes and Molly

19    Terwilliger from Morgan Lewis here in Seattle.

20          THE COURT:  Good afternoon.

21       Well, to those of you who've traveled here from out of town,

22    welcome to Seattle.  I had a hearing at 1 p.m., and it took about

23    five minutes, and something tells me that this might go a little

24    bit longer than that.

25       A quick housekeeping matter.  If you submit a proposed order

 1   to this court, please remember to e-mail a Word version of it to

 2   my orders e-mail address, and that address is on my web page, but

 3   it's chunorders@wawd.uscourts.gov.

 4       So I want to talk about my planned format for the rest of

 5   this hearing.  It's going to go in two parts.  First, I have some

 6   questions based on the parties' submissions, and then, second,

 7   I'll give each side a chance to address succinctly anything

 8   within the scope of the joint status report that has not already

 9   been briefed in that report.

10       So moving on to my questions.  I want to thank the lawyers on

11   their thoughtful joint status report and discovery plan.  The

12   submission, I think, will help me resolve most of the case

13   scheduling and case management issues before the court.

14       I have about seven areas of inquiry based on the submission,

15   and I will start with the first.  And these inquiries vary in

16   complexity.  The first has to do with a deadline for joining

17   additional parties.

18       And, Mr. Takashima, will you be speaking for the plaintiffs?

19           MR. TAKASHIMA:  I'll be speaking for the FTC, Your

20   Honor.  Mr. Smith may have something to add for the plaintiff

21   states.

22           THE COURT:  Okay.  Great.

23       My question for your side is, why do you propose that we wait

24   for 60 days after my decision on the motion to dismiss to join

25   additional parties?

1    Related to that, is this standard practice anywhere?  If so,

2    can you give me an example of this being done in another case?

3         MR. TAKASHIMA:  Generally speaking, Your Honor, I don't

4    think there is a standard practice about joining additional

5    states, especially where there's already a state coalition acting

6    in concert with the federal government.

7    As to our reasoning for affording/wanting additional states

8    to have more time, I frankly think other states who are still

9    considering whether to join the case may benefit in that

10   decision, from having the court's decision on a motion to

11   dismiss.  And Mr. Smith can maybe speak more to that issue.

12        MR. SMITH:  Thank you, Your Honor.

13   The states would benefit -- the states that have not yet

14   joined but are looking to join, I think, would benefit from the

15   court's analysis of the issues raised in the motion to dismiss,

16   and we've asked for 60 days following that decision because it

17   does take states a period of time to review those issues with the

18   Attorney General.  Usually it goes right to the Attorney General,

19   and it takes time for the front office for each state to digest

20   those issues and to then decide whether to join or not.

21        THE COURT:  Wouldn't that be the case in any action

22   involving multiple potential plaintiffs, that the potential

23   plaintiffs who have not joined in the case would get the benefit

24   of an order on a motion to dismiss?  I guess I'm asking what

25   makes this case different from any other case like that.

1          MR. SMITH:  Well, Judge, I think the main difference is

2     that this is an antitrust enforcement action brought by

3     government actors, and so allowing the government entities that

4     have not yet joined have time to consider the court's analysis

5     and decide whether they want to join will make it more efficient

6     to resolve government actions.  If they don't have time to

7     properly consider those issues, it's very possible that the

8     states may be forced to file separate actions in different

9     states.

10          THE COURT:  Okay.  Thank you.

11     Ms. Hubbard.

12          MS. HUBBARD:  Thank you, Your Honor.

13     Briefly, the standard practice, as Your Honor knows, is

14     typically to have the deadline that Amazon has proposed, which is

15     30 days after the entry of the scheduling order.

16          One reason why that's especially appropriate here is that the

17     plaintiffs conducted a four-year investigation, in which the

18     states participated, and then took another nine months to

19     evaluate when and whether they were going to file, and the states

20     had the opportunity to evaluate whether they were going to join.

21     It isn't more efficient to wait a longer period of time to

22     clearly define who the parties are in the action; it's more

23     efficient to have everyone here.

24          And there are things we need to start doing and talking

25     about, including coordination.  Because, as Your Honor knows,

1    there are a number of other cases with overlapping allegations,

2    and getting all of the parties in in one place and get going

3    would be standard, and we propose that makes more sense here.

4        THE COURT:  Okay.  Thank you.

5    Is there anything else on that topic that the plaintiffs wish

6    to address?

7    Okay.  Thank you.

8    My next question is for the defendant, a minor question.  I

9    just want to confirm that you agree that there should be regular

10   status conferences.  I understand that you disagree quarterly

11   versus bimonthly, but you do think it's a good idea?

12       MS. HUBBARD:  Absolutely, Your Honor.  And we actually

13   want to do what is most useful for the court.  So if the court

14   wanted them to be bimonthly, it would be my pleasure to be here.

15   If the court would prefer quarterly, which is what I have

16   typically seen in a case of this size, which puts some

17   encouragement on the parties to start working together to work

18   things out before we're in here bringing every little issue to

19   Your Honor.  So quarterly made more sense to us, but we want to

20   do whatever the court would find most helpful.

21       THE COURT:  Okay.  Thank you.

22   I want to turn next to one of the bigger issues in this case,

23   and that's the limitation on depositions.  I understand that

24   there isn't disagreement with respect to expert depositions, but

25   that there is disagreement with respect to these two fact witness

1   categories:  party depositions and third-party depositions.  And,

2   frankly, I don't feel like either side has given me enough

3   information to make a reasoned decision on limits on depositions

4   of party witnesses and third-party witnesses.  For example, I

5   don't feel like I have enough information to determine whether

6   630 hours is reasonable.  Likewise, only ten party depositions

7   seems comically low.

8        So what I'm thinking is that I would like some more briefing

9   on this particular issue, then issue a ruling on the limits.  And

10  here is what I'm thinking.  I will give you my proposal, and you

11  can tell me what you think.  I'm thinking of a brief from each

12  side, which can be supported by declarations.  My ultimate ruling

13  on this issue is going to limit the number of depositions and not

14  deposition hours.  I just find that it's easier to count number

15  of depositions versus keeping track of deposition time,

16  especially on a case of this magnitude.  So unless there is leave

17  of court, I think each deposition shouldn't exceed seven hours.

18       So I would ask you to limit your briefs to addressing a

19  proposal to numbers of party and third-party depositions and not

20  hours.  I'm thinking each side's brief shouldn't exceed

21  2,100 words.  Again, they could be supported by declarations.

22  And as far as a deadline for the parties to submit that briefing,

23  I was thinking next Friday, February 16, so I could get a ruling

24  out to you quickly.

25       But I'm interested in your thoughts on my proposal.

```
 1    Mr. Takashima?
 2              MR. TAKASHIMA:  That's fine with us, Your Honor.
 3              THE COURT:  Mr. Smith?
 4              MR. SMITH:  That's fine for the states, Your Honor.
 5              THE COURT:  Okay.
 6              MS. HUBBARD:  And it's fine with Amazon, Your Honor.
 7              THE COURT:  Okay.  Would you like me to repeat those
 8    ground rules just to make sure we're all clear?
 9              MS. HUBBARD:  Yes, that would be great.  Thank you.
10              THE COURT:  Okay.  Each side's brief is due next Friday,
11    February 16, each brief may not exceed 2,100 words, and each side
12    will propose numbers of depositions both with respect to party
13    witnesses and third-party witnesses.
14         All right.  The next issue I wanted to ask about is the
15    length of trial, and I understand that it's hard to say at this
16    point how long trial is going to be, but the plaintiffs, after
17    giving some qualifications, estimated four weeks of trial.
18         And I was wondering, is that for both liability and damages?
19              MR. TAKASHIMA:  That would be for liability, Your Honor.
20              THE COURT:  Just for liability?
21              MR. TAKASHIMA:  Yes, Your Honor.
22              THE COURT:  Okay.  So for the damages phase, what were
23    you thinking?
24              MR. TAKASHIMA:  Our proposal is to have that be a
25    separate proceeding.
```

 1          THE COURT:  Understood.

 2          MR. TAKASHIMA:  And, frankly, as I'm standing here, I'm

 3   not sure how long we think that would need to be.  I think that

 4   would depend on the court's findings in the liability phase.

 5          THE COURT:  Okay.  Thank you.

 6      And am I correct in estimating that the six-week estimate, on

 7   the Amazon side, is for both liability and damages?

 8          MS. HUBBARD:  Yes, Your Honor.

 9      And I would say that it is premature -- I mean, I light up

10   like a Christmas tree when we get to talk about trials.  I'm not

11   sure, though, that six weeks is really going to be the right

12   length.  There are multiple things that can happen along the way.

13   We have a motion to dismiss pending on substantial issues.  If

14   the case survives that, we will have summary judgment.  There are

15   multiple ways in which the case could be narrowed and shaped

16   along the way.

17      I want to be really respectful of the court's time, and I

18   think in two ways we can be really respectful.  One is to come

19   back to Your Honor with a reasonable estimate on what trial

20   really should take here, when we get a little further into it.  I

21   think six weeks is sort of the outer limit.  It's an

22   overestimate, in my opinion as a trial lawyer.

23      The other thing that I think we need to do, to be really

24   respectful of the court's time, is bifurcation of liability and

25   damages or remedy does not make sense here.  It is going to

1  result in a lot of duplication and trying to get witnesses back

2  for a second time, including because some of the pressure testing

3  of the liability theories here necessarily asks:  Is what the

4  plaintiffs are alleging reasonable in light of what the remedy

5  would be?  It's easy to attack things, but if you're attacking

6  something that, in their words, goes to the core of our

7  operations, which we deem to be exceptionally pro-customer, we

8  have to talk about what is it they think should be different, and

9  we're going to have to talk about that in the liability phase.

10  So we're going to end up in a situation where there's just a lot

11  of repetition, if there's a separate remedy phase.

12      I do think that is something that would make sense to brief

13  to the court at some point, what the trial structure should be,

14  and that has been my experience in these kind of cases.  We brief

15  trial structure so we can have a thoughtful discussion with the

16  court.  But I would say it is not going to be efficient in this

17  particular situation to bifurcate liability and remedy.

18          THE COURT:  Okay.  Thank you.

19      So I'm going to let the plaintiffs' side respond to that

20  issue of bifurcation, which incidentally was my next area of

21  inquiry.

22          MR. TAKASHIMA:  I'm happy to address it, Your Honor.

23          THE COURT:  Yeah.

24          MR. TAKASHIMA:  We think the clearest way forward for

25  the court here is to really analyze those two issues:  One, the

1    issue of whether plaintiffs have adequately shown that Amazon's

2    conduct is anticompetitive and unlawful, and then, second, based

3    on those findings, to analyze what injunctive relief and what

4    structural relief may be necessary both to stop the illegal

5    conduct and to restore lost competition in the market.

6        I'm concerned that muddling the two just makes an already,

7    frankly, complex case much more complex.  And I would note that

8    sort of this bifurcation of liability and remedies is a path

9    forward that's been taken in both the Google antitrust cases, in

10   the FTC's case against Meta, a little while ago in the FTC's

11   case against Qualcomm.  I think it's a reasoned path.  It lets

12   the court address the issues in a clearer and reasonable way.

13       THE COURT:  And if I were to reserve on this issue and

14   set a deadline for briefing on your motion to bifurcate, what do

15   you think a sensible deadline would be?

16       MR. TAKASHIMA:  I think we're happy to do whatever works

17   for the court.

18       THE COURT:  Okay.

19       MR. TAKASHIMA:  We're happy to start addressing that

20   issue now.  I think we could also deal with it a little bit later

21   on down the case.

22       THE COURT:  Okay.  Thank you.

23       MS. HUBBARD:  Thank you, Your Honor.

24       Just to respond briefly to that.  In antitrust cases, whether

25   or not liability and remedy is bifurcated, it's kind of all over

1    the map, and so it's very case dependent.  And we would like, at

2    the appropriate opportunity, to brief why there's just going to

3    be massive duplication here if there is this bifurcation.

4        On page 27 of the joint status report, the plaintiff said,

5    "This case goes to the core of Amazon's business and multiple

6    arms of Amazon's operation."  Their liability theories, they're

7    saying, goes to the core of our business.  So they should be

8    prepared to say what is it they think should be different.  We

9    can't really evaluate their claims that the current practices,

10   which we deem to be exceptionally pro-customer, as I said, should

11   be changed without them being willing to say what is it that

12   should be different.  And we have to have that discussion in the

13   liability phase to really evaluate the reasonableness of these

14   attacks they're making.

15             THE COURT:  Okay.  Thank you.

16       All right.  I now want to talk about some of the deadlines

17   that I should be setting in this case.  Unless I missed it, a

18   deadline wasn't proposed as to when all motions related to

19   discovery must be filed.

20       And so if I'm correct that that was missing from the

21   proposal, my question for you is, what's your proposal as to what

22   that deadline should be?

23             MR. TAKASHIMA:  Your Honor, we're happy to take the

24   court's guidance on this.  I don't know that I have a strong

25   prior, but, by default, I would say the deadline should be such

 1  that any motions on discovery would be fully submitted before the

 2  close of fact discovery.

 3          THE COURT:  Okay.  Thank you.

 4      Mr. Smith, don't let me ignore you here.

 5          MR. SMITH:  Fine.  That's fine, Judge.  We have no

 6  objection.

 7          THE COURT:  Okay.  Thank you.

 8          MS. HUBBARD:  I think that makes sense, Your Honor.

 9          THE COURT:  Thank you.

10      The next question:  Does it make any sense to set a deadline

11  for a settlement conference?

12      That is typically done in cases that proceed to bench trials

13  before this court.  I do understand that this is not your

14  ordinary case.  And I know that the parties, apparently, aren't

15  interested in proceeding to a settlement conference or a

16  mediation at this particular point.

17      My only question is:  Does it makes sense to include a

18  deadline in the scheduling?  Mr. Takashima?

19          MR. TAKASHIMA:  I think, again, we're happy to do

20  whatever the court prefers.  I think here, at the very least, a

21  settlement conference would need to be quite a ways down the road

22  before it would be productive, but I think we don't have any

23  objection to having one before trial.

24          THE COURT:  Okay.  Thank you.

25          MR. SMITH:  Your Honor, for the states, we take the same

1  position, Your Honor.

2      THE COURT:  Thank you.

3   Ms. Hubbard?

4      MS. HUBBARD:  This is a rare area where we might be in

5  agreement.

6      THE COURT:  Okay.  And, actually, there was substantial

7  agreement.  I know you were saying that in jest.  There was

8  substantial agreement between the parties, which I appreciated.

9   I also wanted to just say that when I said that the number of

10 ten depositions per party was, I think I maybe used the word

11 "comically low," I understand Amazon's reason for taking that

12 position, and that it also takes the position that plaintiffs can

13 seek leave of the court to add to that number of depositions.

14   My last area of inquiry regards the related cases.  There are

15 a number of related cases pending before this court, the *Hogan*

16 case, which was consolidated with *Hopper*, the *Zulily* case, the

17 *Frame-Wilson* case, and the *De Coster* case.

18   I'm going to think out loud here a little bit and let you

19 know that I'm just wondering about the interplay between that

20 litigation and this particular case.  For example, I'm asking

21 myself:  Is there any way in which rulings in any of those cases

22 could affect this particular case?  Does it make any sense to

23 consider staying any of those cases?  And, of course, I'd have to

24 hear from the parties in those cases before ruling on such a

25 question, but I was curious as to your thoughts on this issue.

 1    Mr. Takashima?

 2       MR. TAKASHIMA:  Your Honor, I think the main issue, from

 3  our point of view, is there may need to be some coordination, at

 4  least informal coordination, between us and other cases that are

 5  in discovery, which, as far as I understand, or right now, would

 6  only be *De Coster* and *Frame-Willson* from within that group.  And

 7  what that coordination will look like, I think, will depend quite

 8  a bit on what schedule the court sets.  The more closely our

 9  schedule aligns with other cases, and particularly California,

10  where the discovery is in full swing, will matter.  But we have

11  already had some informal discussions with the other plaintiffs

12  and will likely have further discussions after the court issues a

13  ruling on a schedule.

14    As far as staying the other cases, I don't think that would

15  be necessary.  I don't think there are necessarily going to be

16  any areas where a ruling in any of those cases would affect us.

17  Although we overlap factually in some areas of discovery, we have

18  some different legal theories and are suing under different laws.

19       THE COURT:  Okay.  Thank you.

20    Mr. Smith?

21       MR. SMITH:  Your Honor, for the states, we agree with

22  that concept, so ...

23       THE COURT:  Okay.  Thank you.

24       MS. HUBBARD:  Your Honor, Heidi Hubbard for Amazon.

25    Since we are in all of those cases, let me spend a minute.

1    I'm very appreciative that the court brought this up.

2        There are a number of cases in front of Your Honor, and just

3    to kind of table-set on where the allegations overlap, the

4    *Frame-Wilson* and *De Coster* private plaintiff cases involve

5    pricing allegations where there is some overlap with the

6    plaintiff claims here.  Those are class actions, obviously, and

7    there's the whole class-certification stage in those cases.

8        The *Hogan* and *Hopper* cases are at the motion-to-dismiss

9    stage, and they involve more of the fulfillment allegations in

10   this case, and so they overlap with this case on fulfillment.

11       And then the California AG's case, which plaintiffs' counsel

12   noted, is far ahead.  We are in the heart of third-party

13   discovery there.  It was filed a year before this case.  But the

14   pricing allegations that the plaintiffs here decided to bring

15   substantially mirror many of the pricing allegations in the

16   California AG case.

17       Judge Schulman, who is handling that case in California, has

18   really strongly encouraged the parties to think about ways in

19   which we can informally coordinate.  Here is why it really

20   matters.  Third parties, there's a massive amount of discovery

21   from third parties.  There will be in this case, as Your Honor

22   got a sense of in the joint status report.  We're in the middle

23   of that in California.  It is exceptionally time consuming, and

24   there are a lot of reasons for that - you have parties all over

25   the country, from small companies to big companies, with lawyers,

1   without lawyers.  They are saying, in California, they would

2   appreciate coordination, those third parties; they're saying we

3   don't want to be deposed two, three times.

4       So we have been strongly encouraged to pursue coordination

5   informally, obviously, of the California case with this case.  We

6   already have efforts at coordination with the other cases in

7   front of Your Honor that have proceeded past the motion-to-

8   dismiss stage, and we have proposed a coordination protocol to

9   the plaintiffs here.

10      It matters for depositions.  Your Honor asked a good

11  question.  Does it matter for rulings?  So it matters a lot for

12  depositions, so that you're not having people have to go up over

13  and over again on the same topic.  But in terms of rulings, to

14  the extent that we're having discovery disputes about those

15  depositions, it also matters, so that we can bring them to Your

16  Honor once and have it kind of decide the issue.  And so I think

17  there's real efficiency to be gained on the discovery, on the

18  deposition-discovery front, if the parties can be encouraged to

19  actively pursue coordination.

20      It won't be perfect, things aren't going to run on exactly

21  the same schedule, but, you know, perfect is the enemy of good.

22  We could get some good coordination, which I think would help a

23  lot both for the burden on parties and third parties and the

24  burden on the court.

25          THE COURT:  Okay.  Thank you.

1      Anything you wish to add?

2           MR. TAKASHIMA:  No, Your Honor.

3           THE COURT:  Mr. Smith?

4           MR. SMITH:  No, Your Honor.

5           THE COURT:  Okay.  All right.  Well, let's move to the

6      second stage of this hearing, which is where you get to address

7      anything that you didn't say in the JSR that you wish you had

8      said or maybe something came up in today's hearing that you would

9      like to address.

10          So, Mr. Takashima, I will start with you.

11          MR. TAKASHIMA:  I don't want to belabor the point.  We

12     have already addressed this in the JSR.  I think the primary

13     issue, from our point of view, is moving this case quickly.

14     There's an ongoing harm related to Amazon's conduct and there's a

15     strong public interest in resolving this case as quickly as

16     possible.  We have outlined a number of measures in the JSR in

17     making a trial date in January -- in 2026 feasible, and we think

18     that is workable.

19          THE COURT:  Did you say January?  I thought --

20          MR. TAKASHIMA:  I'm sorry.  Just 2026.  Not January

21     2026.

22          THE COURT:  Okay.

23          MR. TAKASHIMA:  May of 2026.  We think that's feasible,

24     and we would ask the court to enter that schedule.

25          THE COURT:  Okay.  Thank you.

1          MR. SMITH:  Your Honor, we support the schedule that the

2     FTC has proposed.

3          THE COURT:  Okay.  Thank you.

4          MS. HUBBARD:  Your Honor, thank you for this

5     opportunity.

6        This is an area where we have a different view.  And just to

7     table-set here, the FTC took four years to investigate and then

8     another nine months to sue.  So it's been five years that they

9     have been able to go out there and take evidence, and now that

10    the case is filed, we finally have our opportunity to pursue

11    evidence to defeat those allegations.

12       The California case, which was filed a full year before this

13    case and is much narrower, is set for trial in August of 2026.

14    I'm particularly aware of that because I'm trial counsel there,

15    and, you know, we have proposed a trial-ready date for this case

16    that would substantially move this case a lot faster than

17    California and almost catch up.

18       So the schedule we're proposing with a trial-ready date in

19    December of 2026 would get this case -- would move this case nine

20    months more quickly than California.  That is important here

21    because it is hard to describe how difficult it has been to get

22    third-party discovery done in California, for the reasons I have

23    already identified.  So we know from that real-world experience

24    that it is a time-consuming process.  And to say, "Amazon, the

25    government took five years to investigate and develop their case,

1  you don't get adequate time to respond to those, and, by the way,

2  you know, you have got this conflicting trial in August," that's

3  just not fair.

4      And we're asking for a schedule that is an aggressive

5  schedule that can really -- if we're trial ready by December of

6  2026, we can really only do that with reasonable limits on

7  discovery.  We would be held by that if the case is pared; if

8  it's not dismissed, if it's pared.  But it's going to be a sprint

9  to get this together by December of 2026.  And we're just asking

10  for a fair opportunity, after the government took five years, to

11  have adequate time.

12      THE COURT:  You have mentioned that the government took

13  five years.  And just for the record, when you say that, I think

14  you're implying that when they were doing their investigation,

15  they did a number of interviews without an Amazon representative

16  present?

17      MS. HUBBARD:  Right.  That's absolutely right.  Thank

18  you, Your Honor, for clarifying.  That's right.

19      They can go out and, during their investigation, they can

20  talk to third parties.  And so this is our opportunity, now that

21  there's a case and there's formal process, for us to go out and

22  talk to third parties.  And you think about this case, which sort

23  of hits at retail practices that are ubiquitous in the retail

24  industry, and you think about how big the retail industry is,

25  where you have all kinds of retailers who compete with Amazon,

1  everyone from the drug store on the corner to the mega store two

2  miles away, to online stores of all sizes, and there's going to

3  be a question about relevant market.  That's a big part of

4  discovery.  There's going to be a question about all these third

5  parties.

6      We haven't had our opportunity to conduct meaningful

7  discovery, and, you know, all I'm saying is we just want a fair

8  opportunity.  We're willing to go faster than we're going in

9  California, and that has been a sprint.

10         THE COURT:  What's the exact trial date in California?

11 August what of --

12         MS. HUBBARD:  August 10th.

13         THE COURT:  August 10th.  And what's the estimated

14 length of trial?

15         MS. HUBBARD:  So it's kind of a similar situation to the

16 discussion we had with Your Honor.  The parties have been, you

17 know, trying to ballpark it, and I don't think there is a firm

18 number of weeks reserved yet for that trial.

19      My sense, though, is we should be finished with that trial by

20 the end of September, at the latest, if we start on August 10th.

21 I mean, I think, you know, it's our job to be efficient when

22 we're trying a case, and I think we can do that there.  So we

23 would want to get clear of that and have a second to regroup.

24 But we're saying, you know, we will go as fast as we possibly

25 can.  We will want help from the court with some reasonable

 1   limits so that we can, in fact, get it all done.  But I think

 2   December 2026, when we mapped it out, was like that is fast, that

 3   is as fast as we think we can do it here and have our fair

 4   opportunity.

 5            THE COURT:  Okay.  Thank you.

 6            MS. HUBBARD:  Thank you.

 7            THE COURT:  Mr. Takashima?

 8            MR. TAKASHIMA:  Your Honor, respectfully, the end of

 9   December of 2026 is functionally 2027 and it's more than three

10   years after the filing of the complaint.  I wouldn't characterize

11   it as fast.

12        As to the deadline for fact discovery, you know, it's our

13   experience, Your Honor, that deadlines create pressure, and as a

14   result, the parties and third parties move more quickly when

15   there's a firm deadline.  They find a way to meet it; they find a

16   way to make it happen.  A year and a half in discovery is a

17   substantial amount of time.  There's plenty of time in there for

18   Amazon and for the government to fully develop this case for

19   trial.  I don't really know that there's anything that can be

20   done in two years in discovery that can't get done in a year and

21   a half with sufficient motivation for the parties.

22            THE COURT:  Thank you.

23        Mr. Smith, do you have anything to add?

24            MR. SMITH:  Nothing to add for the states, Your Honor.

25            THE COURT:  Anything else from the parties?

 1          MS. HUBBARD:  Nothing else, unless there's something we

 2   can address that would be helpful.

 3          THE COURT:  No.

 4      Mr. Takashima?

 5          MR. TAKASHIMA:  Nothing else, Your Honor.

 6          THE COURT:  Mr. Smith?

 7          MR. SMITH:  Nothing else, Your Honor.

 8          THE COURT:  Okay.  So I will issue at least a case

 9   scheduling order forthwith, then I will follow up on that with an

10   order with respect to limits on depositions.  I may also be

11   issuing a case management order before that.  And, of course, I

12   understand that you have a proposed protective order with a

13   couple of issues that I need to resolve, and we will be working

14   on that too.

15      Okay.  Thank you.  We will be in recess.

16          MS. HUBBARD:  Thank you, Your Honor.

17          MR. TAKASHIMA:  Thank you, Your Honor.

18          MR. SMITH:  Thank you, Your Honor.

19          THE COURT:  Safe travels back.

20          MR. TAKASHIMA:  Thank you.

21          MS. HUBBARD:  Thank you.

22                          (Adjourned.)

23

24

25

1    C E R T I F I C A T E

2

3        I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

4    United States District Court in the Western District of

5    Washington at Seattle, do certify that the foregoing is a correct

6    transcript, to the best of my ability, from the record of

7    proceedings in the above-entitled matter.

8

9

10                     /s/ Nickoline Drury

11                     Nickoline Drury

12

13

14

15

16

17

18

19

20

21

22

23

24

25