THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a corporation,<br><br>Defendant. | CASE NO.: 2:23-cv-01495-JHC<br><br>**PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS** |

Pursuant to the Court's Order, Dkt. #151, Plaintiffs submit this brief in further support of the deposition limits Plaintiffs proposed in the Joint Status Report, Dkt. #135 ("JSR").

Plaintiffs allege that Amazon is engaged in a multi-faceted scheme of anticompetitive conduct that has foreclosed its rivals from gaining the scale needed to compete effectively against Amazon and harms both shoppers and sellers. Throughout this years-long course of conduct, Amazon has wielded its Buy Box, pricing algorithms, seller contracts, Prime eligibility, and proprietary fulfillment service for the same fixed purpose—to maintain its monopolies.

Courts may allow parties to take more than the default ten depositions per side, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, . . . the importance of the proposed discovery in resolving the issues," and the factors set out in Rule 26(b)(2)(c). *Thykkuttathil v. Keese*, 294

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 1

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

F.R.D. 601, 602 (W.D. Wash. 2013); *see* Fed. R. Civ. P. 26(b). Here, "[t]he breadth and complexity" of Amazon's anticompetitive conduct, *Thykkuttathil*, 294 F.R.D. at 603, and the importance of this case to the public, justify Plaintiffs' request to take up to 135 fact depositions of party witnesses and up to 90 fact depositions of non-party witnesses, or alternately up to 630 deposition hours for party witnesses and 350 hours for non-party witnesses.

## ARGUMENT

### A.     Party Depositions

Plaintiffs propose that each side be allowed to take up to 135 fact depositions of party witnesses, including former employees. Plaintiffs' initial proposal of 630 hours was based in part on the expectation that many depositions would be narrowly focused, with many taking a half day or less. If the Court is inclined to set a cap based on the number of depositions, rather than hours, Plaintiffs' current estimate is that approximately half of their time would be used for full-day depositions and the other half would be used for shorter depositions averaging a half day or less in length.

Courts have adopted similar discovery caps in other major antitrust enforcement actions, and this case is even broader in scope than those actions. *See, e.g.*, *United States v. Google LLC*, No. 20-cv-03010 (D.D.C. Feb. 3, 2021), Dkt. #108-1 at 11 (80 fact depositions per side, including up to 16 14-hour depositions); *FTC v. Meta Platforms, Inc.*, No. 20-cv-03590 (D.D.C. Mar. 3, 2022), Dkt. #103 at 4 (840 hours per side); *FTC v. Qualcomm Inc.*, No. 17-cv-00220 (N.D. Cal. Sept. 22, 2017), Dkt. #207 at 4 (no limit); *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155, Dkt. #177 at 1 (E.D. Mich. May 29, 2012) (170 depositions per side); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 1:05-cv-485, Dkt. #1455 at 5 (D. Del. Apr. 14, 2009) (1,297 hours for plaintiffs and 1,061 for defendant); *In re Microsoft Corp. Antitrust*

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 2

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*Litig.*, No. 1:05-cv-1087, Dkt. #51 at 3 (D. Md. Feb. 6, 2008) (500 hours per side).

Plaintiffs' proposal is driven by two key factors: the scope of Amazon's conduct at issue, which is extensive, and the relevant timeframe, which stretches from the 2010s through the present.

**Scope of Amazon's Conduct.** Amazon is engaged in an interrelated, exclusionary course of conduct that stifles competition, keeps rivals from gaining the scale needed to compete effectively against Amazon, and unlawfully maintains Amazon's monopolies in two markets. That conduct spans multiple arms of Amazon's business, including its first-party Retail and third-party Marketplace units, online superstore, advertising services, Prime subscription program, and fulfillment services.

Plaintiffs challenge Amazon's anti-discounting tactics, which punish third-party sellers that offer lower prices off-Amazon and discipline rivals from undercutting Amazon's prices. (¶¶ 262-350.)[1] Plaintiffs intend to depose senior executives responsible for that overarching strategy, and employees from multiple teams involved in this anti-discounting conduct, including employees responsible for or involved with:

- Amazon's Competitive Monitoring Team, which maintains Amazon's massive price surveillance system (¶ 263);
- the development, implementation, and operation of the SC-FOD algorithm, which disqualifies a seller's offer from winning the Buy Box if Amazon detects a price that is lower for that product elsewhere (¶¶ 275-77);
- the various penalties Amazon uses to make it more difficult for shoppers to find and purchase items that do not have a Buy Box, including employees involved in

---

[1] Citations in the form (¶ __) are to Plaintiffs' Complaint, Dkt. # 114.

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 3

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

search, advertising, and the design of Amazon's online store (¶¶ 282-84);

- the design and enforcement of Amazon Standards for Brands and Customer Experience Ambassadors, contractual mechanisms Amazon uses to ensure that sellers do not offer lower prices or a different selection of products elsewhere (¶¶ 291-304);
- the development, implementation, and operation of Amazon's first-party anti-discounting algorithm (¶¶ 325-37); and
- specific instances where Amazon has deployed its anti-discounting tactics against rivals, including Walmart (¶¶ 334-37), Jet.com (¶¶ 340-42), and Zulily (¶¶ 343-49).

Plaintiffs also allege that Amazon coerces sellers into using its fulfillment service, Fulfillment by Amazon ("FBA"), by conditioning Prime eligibility on the use of FBA (¶¶ 351-409). In addition to senior executives responsible for that strategy, Plaintiffs intend to depose employees from several relevant teams, including employees responsible for or involved with:

- Amazon's strategic decision to force sellers to use FBA to obtain Prime eligibility for their products (¶¶ 353, 361-63);
- Seller-Fulfilled Prime ("SFP"), a program that allowed sellers to use non-FBA fulfillment solutions for Prime-eligible orders, which Amazon closed to new enrollment in 2019 due to fears that it could help independent fulfillment providers grow to scale and benefit other retailers (¶¶ 397-404);
- the Featured Merchant Algorithm, which determines which offer will win the Buy Box and gives preference to Prime-eligible offers (¶ 359); and
- Prime, the subscription program that underlies Amazon's ability to successfully

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 4

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

coerce sellers (¶¶ 106-07, 358-60).

Plaintiffs' claims concerning Project Nessie, Amazon's scheme to induce other online stores to raise their prices, will require Plaintiffs to depose employees involved in the development and operation of Project Nessie (¶¶ 419-25) and witnesses involved in Amazon's decisions to repeatedly turn it on and off (¶¶ 426-30).

Plaintiffs have pleaded two relevant markets monopolized by Amazon: an Online Superstore Market and an Online Marketplace Services Market. Plaintiffs intend to depose several groups of witnesses with information relevant to market definition beyond those discussed above, such as employees responsible for analyzing competition and making competitive assessments (*e.g.*, ¶¶ 172-75) and employees familiar with financial data relevant to market shares (¶¶ 168-71, 204-05). Plaintiffs also anticipate deposing employees involved in search and advertising, areas where direct evidence shows that Amazon has monopoly power. (¶¶ 228-48).

Plaintiffs intend to depose Amazon employees involved in tracking and analyzing the impact of Amazon's conduct on competition, shoppers, and sellers. Those witnesses will include, among others, Amazon's in-house economists (*e.g.*, ¶ 235).[2]

Finally, Plaintiffs intend to depose Amazon witnesses regarding any procompetitive or other cognizable justifications asserted by Amazon. Amazon has claimed that its conduct is "facially procompetitive" (Dkt. #127 at 2) and will bear the burden of proof on that issue. *See FTC v. Meta Platforms, Inc.*, 2023 WL 3092651, at *1 (D.D.C. Apr. 26, 2023). However, Amazon has not identified any of the 18 Amazon employees named in its initial disclosures as

---

[2] *See also* Lydia DePillis, *Amazon gets an edge with its secret squad of PhD economists*, CNN BUS. (Mar. 13, 2019), https://www.cnn.com/2019/03/13/tech/amazon-economists/index.html (reporting that Amazon had hired more than 150 Ph.D. economists, "making it probably the largest employer in the field behind institutions like the Federal Reserve").

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 5

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

having information regarding any such justifications. (Bolles Decl., Ex. A.) Plaintiffs cannot predict what specific justifications Amazon will eventually assert, or how many witnesses will need to be deposed as a result.

**Relevant Timeframe.** Amazon's conduct at issue extends across over a decade, which means Plaintiffs will have to take additional depositions to account for employee turnover and movement within Amazon. For example, Amazon's Business Solutions Agreement explicitly prohibited sellers from offering lower prices elsewhere from at least 2011 through 2019, when Amazon quietly stopped enforcing its price parity provisions in the face of government scrutiny and instead expanded SC-FOD to enforce its pricing "expectations and policies," which "ha[d] not changed." (¶¶ 272-276.) Amazon launched SFP in 2015 (¶ 398) and began developing Project Nessie in the early 2010s (¶ 419).

Amazon's conduct is ongoing, and there have already been relevant changes since Plaintiffs filed the Complaint: for example, Amazon reopened SFP to new enrollment in October 2023, shortly after this case was filed.[3] Plaintiffs have reason to believe that Amazon will continue to make changes to its conduct throughout discovery in this case, all in the service of its exclusionary course of conduct. As Mr. Bezos has said, "on matters of vision we are stubborn and relentless," but "[o]n the details, we at Amazon are always flexible." (¶ 38.)

Plaintiffs respectfully submit that their proposed limits for fact depositions of Amazon employees and former employees—135 depositions per side, or alternatively, 630 deposition hours per side—are justified based on the needs of the case, the importance of the proposed discovery in resolving the issues, and the importance of the issues at stake in this litigation.

---

[3] *New seller enrollment has reopened for Seller Fulfilled Prime*, AMAZON SELLER FORUMS, https://sellercentral.amazon.com/seller-forums/discussions/t/ff5fcef8-c5d5-4035-b94f-c9922954912e (last visited Feb. 16, 2024).

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 6

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Amazon itself has described this as "an exceptional case in its scope and complexity," JSR, Dkt. #135 at 4, and as discussed above, the vast scope of Amazon's conduct at issue will require substantial discovery. Further, there can be no question that this case involves vitally important issues, given that Amazon's monopolistic conduct affects tens of millions of American households, hundreds of thousands of sellers on Amazon, and hundreds of billions of dollars in commerce every year.

### B. Non-Party Depositions

Plaintiffs propose that each side be allowed to take up to 90 fact depositions of non-party witnesses. As with Plaintiffs' initial proposal for party depositions discussed above, Plaintiffs' initial proposal of 350 hours for non-party depositions was based in part on the expectation that most non-party depositions would be less than seven hours, and that many would take a half day or less. Plaintiffs believe this proposal strikes a reasonable balance between the needs of this case and the potential burden and expense of discovery for non-parties. In contrast, Amazon proposes no limit on non-party depositions—an approach Plaintiffs are concerned will result in an undue burden for non-parties and Plaintiffs.

This case will involve discovery from several categories of non-parties. Plaintiffs anticipate deposing several categories of third-party sellers relevant to Plaintiffs' allegations, including sellers impacted by Amazon's ever-increasing take rate, which is the percentage cut Amazon takes out of sellers' revenues (¶¶ 252-54); sellers subject to Amazon's anti-discounting conduct, like the sellers Amazon punishes when it finds lower prices off-Amazon (¶¶ 272-285); sellers subject to Amazon Standards for Brands and Customer Experience Ambassadors (¶¶ 286-304); and sellers who Amazon has coerced into using FBA (¶¶ 361-74).

Plaintiffs also anticipate taking depositions of actual and potential competitors in both

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 7

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  relevant markets, as well as depositions of companies Amazon identifies as competitors (¶¶ 170-
2  75, 204-05); out-of-market businesses that Amazon may contend should be included in a relevant
3  market, such as brick-and-mortar stores and Software-as-a-Service providers (¶¶ 140-47, 198-
4  200); and independent fulfillment providers (¶ 386-89). Amazon has identified several of the
5  same or similar groups of relevant non-parties in its initial disclosures (although it has not
6  identified any non-parties by name). (Bolles Decl., Ex. A.)

7  Amazon has also identified three additional categories of non-parties: "third-party service
8  providers, such as e-commerce service providers, social media channels, [and] search engines";
9  wholesale suppliers and vendors; and "third-party customer benefit program providers." (Bolles
10 Decl., Ex. A.) However, these categories do not justify Amazon's proposal for unlimited non-
11 party depositions.[4] A limit of 90 non-party depositions per side will allow both sides to
12 adequately develop non-party evidence while still giving the parties guidance as to how many
13 non-party depositions they may need to prepare for. A limit will also require both sides to use
14 depositions judiciously, which will limit the overall burden of discovery on non-parties.

## CONCLUSION

Plaintiffs respectfully request that the Court adopt Plaintiffs' proposal for limits on depositions.

---

[4] Amazon's proposal is difficult to reconcile with its approach to non-party discovery in the California Action. At the parties' February 8 Scheduling Conference, Amazon's counsel indicated that it was "in the middle of that [non-party discovery] in California." Scheduling Conf. Tr. at 16:20-23. However, as of the last Joint Case Management Statement in the California Action, filed on January 18, "Amazon ha[d] not identified or noticed the depositions of any third parties beyond those noticed by [California]." (Bolles Decl., Ex. B).

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 8

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

| | |
|---|---|
| Dated: February 16, 2024 | *I certify that this brief contains 2098 words, in compliance with Dkt. #151.* |
| | Respectfully submitted, |
| | s/ Emily K. Bolles<br>SUSAN A. MUSSER (DC Bar # 1531486)<br>EDWARD H. TAKASHIMA (DC Bar # 1001641)<br>DANIELLE C. QUINN (NY Reg. # 5408943)<br>EMILY K. BOLLES (NY Reg. # 5408703)<br>JAKE WALTER-WARNER (NY Reg. # 3396668)<br>Federal Trade Commission<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580<br>Tel.:   (202) 326-2122 (Musser)<br>         (202) 326-2464 (Takashima)<br>Email: smusser@ftc.gov<br>         etakashima@ftc.gov<br>         dquinn@ftc.gov<br>         ebolles@ftc.gov<br>         jwalterwarner@ftc.gov |
| | *Attorneys for Plaintiff Federal Trade Commission* |

| | |
|---|---|
| s/ Michael Jo<br>Michael Jo (admitted *pro hac vice*)<br>Assistant Attorney General, Antitrust Bureau<br>New York State Office of the Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Telephone: (212) 416-6537<br>Email: Michael.Jo@ag.ny.gov<br>*Counsel for Plaintiff State of New York*<br><br>s/ Rahul A. Darwar<br>Rahul A. Darwar (admitted *pro hac vice*)<br>Assistant Attorney General<br>Office of the Attorney General of Connecticut<br>165 Capitol Avenue<br>Hartford, CT 06016<br>Telephone: (860) 808-5030<br>Email: Rahul.Darwar@ct.gov<br>*Counsel for Plaintiff State of Connecticut* | s/ Alexandra C. Sosnowski<br>Alexandra C. Sosnowski (admitted *pro hac vice*)<br>Assistant Attorney General<br>Consumer Protection and Antitrust Bureau<br>New Hampshire Department of Justice<br>Office of the Attorney General<br>One Granite Place South<br>Concord, NH 03301<br>Telephone: (603) 271-2678<br>Email: Alexandra.c.sosnowski@doj.nh.gov<br>*Counsel for Plaintiff State of New Hampshire*<br><br>s/ Caleb J. Smith<br>Caleb J. Smith (admitted *pro hac vice*)<br>Assistant Attorney General<br>Consumer Protection Unit<br>Office of the Oklahoma Attorney General<br>15 West 6th Street, Suite 1000<br>Tulsa, OK 74119<br>Telephone: (918) 581-2230<br>Email: caleb.smith@oag.ok.gov<br>*Counsel for Plaintiff State of Oklahoma* |

| | |
|---|---|
| s/ Jennifer A. Thomson<br>Jennifer A. Thomson (admitted *pro hac vice*)<br>Senior Deputy Attorney General<br>Pennsylvania Office of Attorney General<br>Strawberry Square, 14th Floor<br>Harrisburg, PA 17120<br>Telephone: (717) 787-4530<br>Email: jthomson@attorneygeneral.gov<br>*Counsel for Plaintiff Commonwealth of Pennsylvania* | s/ Michael Mackenzie<br>Michael Mackenzie (admitted *pro hac vice*)<br>Deputy Chief, Antitrust Division<br>Office of the Massachusetts Attorney General<br>One Ashburton Place, 18th Floor<br>Boston, MA 02108<br>Telephone: (617) 963-2369<br>Email: michael.mackenzie@mass.gov<br>*Counsel for Plaintiff Commonwealth of Massachusetts* |
| s/ Michael A. Undorf<br>Michael A. Undorf (admitted *pro hac vice*)<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French St., 5th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 683-8816<br>Email: michael.undorf@delaware.gov<br>*Counsel for Plaintiff State of Delaware* | s/ Scott A. Mertens<br>Scott A. Mertens (admitted *pro hac vice*)<br>Assistant Attorney General<br>Michigan Department of Attorney General<br>525 West Ottawa Street<br>Lansing, MI 48933<br>Telephone: (517) 335-7622<br>Email: MertensS@michigan.gov<br>*Counsel for Plaintiff State of Michigan* |
| s/ Christina M. Moylan<br>Christina M. Moylan (admitted *pro hac vice*)<br>Assistant Attorney General<br>Chief, Consumer Protection Division<br>Office of the Maine Attorney General<br>6 State House Station<br>Augusta, ME 04333-0006<br>Telephone: (207) 626-8800<br>Email: christina.moylan@maine.gov<br>*Counsel for Plaintiff State of Maine* | s/ Zach Biesanz<br>Zach Biesanz (admitted *pro hac vice*)<br>Senior Enforcement Counsel<br>Office of the Minnesota Attorney General<br>445 Minnesota Street, Suite 1400<br>Saint Paul, MN 55101<br>Telephone: (651) 757-1257<br>Email: zach.biesanz@ag.state.mn.us<br>*Counsel for Plaintiff State of Minnesota* |
| s/ Gary Honick<br>Gary Honick (admitted *pro hac vice*)<br>Assistant Attorney General<br>Deputy Chief, Antitrust Division<br>Office of the Maryland Attorney General<br>200 St. Paul Place<br>Baltimore, MD 21202<br>Telephone: (410) 576-6474<br>Email: Ghonick@oag.state.md.us<br>*Counsel for Plaintiff State of Maryland* | s/ Lucas J. Tucker<br>Lucas J. Tucker (admitted *pro hac vice*)<br>Senior Deputy Attorney General<br>Office of the Nevada Attorney General<br>100 N. Carson St.<br>Carson City, NV 89701<br>Telephone: (775) 684-1100<br>Email: LTucker@ag.nv.gov<br>*Counsel for Plaintiff State of Nevada* |

| | |
|---|---|
| s/ Ana Atta-Alla | s/ Stephen N. Provazza |
| Ana Atta-Alla (admitted *pro hac vice*) | Stephen N. Provazza (admitted *pro hac vice*) |
| Deputy Attorney General | Special Assistant Attorney General |
| New Jersey Office of the Attorney General | Chief, Consumer and Economic Justice Unit |
| 124 Halsey Street, 5th Floor | Department of the Attorney General |
| Newark, NJ 07101 | 150 South Main Street |
| Telephone: (973) 648-3070 | Providence, RI 02903 |
| Email: Ana.Atta-Alla@law.njoag.gov | Telephone: (401) 274-4400 |
| *Counsel for Plaintiff State of New Jersey* | Email: sprovazza@riag.ri.gov |
| | *Counsel for Plaintiff State of Rhode Island* |
| s/ Jeffrey Herrera | |
| Jeffrey Herrera (admitted *pro hac vice*) | s/ Gwendolyn J. Cooley |
| Assistant Attorney General | Gwendolyn J. Cooley (admitted *pro hac vice*) |
| New Mexico Office of the Attorney General | Assistant Attorney General |
| 408 Galisteo St. | Wisconsin Department of Justice |
| Santa Fe, NM 87501 | Post Office Box 7857 |
| Telephone: (505) 490-4878 | Madison, WI 53707-7857 |
| Email: jherrera@nmag.gov | Telephone: (608) 261-5810 |
| *Counsel for Plaintiff State of New Mexico* | Email: cooleygj@doj.state.wi.us |
| | *Counsel for Plaintiff State of Wisconsin* |
| s/ Timothy D. Smith | |
| Timothy D. Smith, WSBA No. 44583 | |
| Senior Assistant Attorney General | |
| Antitrust and False Claims Unit | |
| Oregon Department of Justice | |
| 100 SW Market St | |
| Portland, OR 97201 | |
| Telephone: (503) 934-4400 | |
| Email: tim.smith@doj.state.or.us | |
| *Counsel for Plaintiff State of Oregon* | |

PLAINTIFFS' BRIEF REGARDING NUMBER OF DEPOSITIONS
No. 2:23-cv-01495 - 11

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222