THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a corporation,<br><br>Defendant. | CASE NO.: 2:23-cv-01495-JHC<br><br>**PLAINTIFFS' MOTION TO BIFURCATE**<br><br>NOTE ON MOTION CALENDAR:<br>March 15, 2024<br><br>*ORAL ARGUMENT REQUESTED* |

MOTION TO BIFURCATE
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 1

LEGAL STANDARD................................................................................................................... 2

ARGUMENT ................................................................................................................................ 2

I.   COURTS COMMONLY SPLIT COMPLEX ANTITRUST CASES INTO SEPARATE LIABILITY AND REMEDY PHASES FOR PURPOSES OF CONVENIENCE AND JUDICIAL ECONOMY. ................................................................................................. 3

II.  BIFURCATING THE LIABILITY AND REMEDIES PHASES OF THIS CASE WOULD BE CONVENIENT AND PROMOTE JUDICIAL ECONOMY....................... 6

III. AMAZON'S ARGUMENTS AGAINST BIFURCATION HIGHLIGHT THE NEED FOR BIFURCATION. ...................................................................................................... 8

CONCLUSION........................................................................................................................... 12

MOTION TO BIFURCATE - i
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

# TABLE OF AUTHORITIES

**Cases**

*City of Anaheim v. S. Cal. Edison Co.*,
  955 F.2d 1373 (9th Cir. 1992) .................................................................................. 7

*Estate of Diaz v. City of Anaheim*,
  840 F.3d 592 (9th Cir. 2016) .................................................................................... 2

*F & G Scrolling Mouse, L.L.C. v. IBM Corp.*,
  190 F.R.D. 385 (M.D.N.C. 1999) .......................................................................... 11

*Ford Motor Co. v. United States*,
  405 U.S. 562 (1972) .................................................................................................. 5

*FTC v. Meta Platforms, Inc.*,
  No. 1:20-cv-03590 (D.D.C. Mar. 3, 2022), Dkt. #103 ........................................... 6

*Gaekwar v. Amica Mut. Ins. Co.*,
  2024 WL 85089 (W.D. Wash. Jan. 8, 2024) ........................................................ 10

*Goldfarb v. Va. State Bar*,
  421 U.S. 773 (1975) .................................................................................................. 3

*Greening v. B.F. Goodrich Co.*,
  1993 WL 134781 (N.D. Ill. Apr. 23, 1993) ........................................................... 11

*In re Data Gen. Corp. Antitrust Litig.*,
  490 F. Supp. 1089 (N.D. Cal. 1980) ....................................................................... 3

*In re Google Play Store Antitrust Litig.*,
  No. 3:21-md-02981 (N.D. Cal. Jan. 18, 2024), Dkt. #917 .................................. 6

*In re High Fructose Corn Syrup Antitrust Litig.*,
  295 F.3d 651 (7th Cir. 2002) .................................................................................. 4

*Hirst v. Gertzen*,
  676 F.2d 1252 (9th Cir. 1982) .............................................................................. 10

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
  2023 WL 5177501 (N.D. Ill. Aug. 11, 2023) .................................................. 4, 5, 7

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
  No. 1:11-cv-8808 (N.D. Ill. Nov. 27, 2023), Dkt. #587 ..................................... 11

*In re Master Key Antitrust Litig.*,
  528 F.2d 5 (2d Cir. 1975) ......................................................................................... 3

*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) ................................................................................ 11

MOTION TO BIFURCATE - ii
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*NCAA v. Alston*,
    594 U.S. 69 (2021) ................................................................................................................ 9

*New York v. Microsoft Corp.*,
    224 F. Supp. 2d 76 (D.D.C. 2002) ...................................................................................... 10

*Oltz v. St. Peter's Cmty. Hosp.*,
    19 F.3d 1312 (9th Cir. 1994) ................................................................................................ 3

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
    20 F.4th 466 (9th Cir. 2021) ................................................................................................. 5

*Reines Distribs., Inc. v. Admiral Corp.*,
    257 F. Supp. 619 (S.D.N.Y. 1965) .................................................................................... 4, 5

*Union Carbide Corp. v. Montell N.V.*,
    28 F. Supp. 2d 833 (S.D.N.Y. 1998) .................................................................................... 4

*United States v. Am. Express Co.*,
    No. 1:10-cv-04496 (E.D.N.Y. Feb. 19, 2015), Dkt. #620 ................................................... 10

*United States v. Boeing Co.*,
    2023 WL 5836487 (W.D. Wash. Aug. 31, 2023) ................................................................. 2

*United States v. Google LLC*,
    No. 1:20-cv-03010, (D.D.C. Dec. 6, 2021), Dkt. #264 ........................................................ 6

*United States v. Google LLC*,
    No. 1:23-cv-00108 (E.D. Va. June 11, 2023), Dkt. #283 ..................................................... 6

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) .............................................................................................................. 9

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam) ....................................................... 5, 8

*United States v. U.S. Gypsum Co.*,
    340 U.S. 76 (1950) ................................................................................................................ 9

*Wall Prods. Co. v. Nat'l Gypsum Co.*,
    357 F. Supp. 832 (N.D. Cal. 1973) ....................................................................................... 3

*Yanni v. City of Seattle*,
    2005 WL 2180011 (W.D. Wash. Sept. 9, 2005) ................................................................. 10

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) .............................................................................................. 2

MOTION TO BIFURCATE - iii
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**Rules**

Fed. R. Civ. P. 42(b) ............................................................................................................. 2

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (5th ed. 2020) ................................................................................ 3, 4

Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* (3d ed. 2016) ........................................................................................ 3

MOTION TO BIFURCATE - iv
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

## INTRODUCTION

Plaintiffs move to bifurcate this action into two separate proceedings: a trial solely on liability to be followed by a proceeding on remedies. By first addressing liability, Plaintiffs will be able to present a streamlined case focused on showing the Court how Amazon has violated the law and harmed competition to the detriment of shoppers and sellers. Once the Court finds Amazon liable, the Parties would then move to a remedy proceeding tailored to the Court's specific findings on liability. Bifurcation allows the Parties to make focused presentations at each stage, thereby reducing the overall burden on the Parties, the Court, and non-party witnesses alike. Given the efficiencies associated with proceeding in this manner, Plaintiffs respectfully ask this Court to order that the trial be bifurcated.

## BACKGROUND

Plaintiffs filed this suit to challenge the illegal course of exclusionary conduct Amazon deploys to block competition, stunt rivals' growth, and cement its dominance to the detriment of the tens of millions of American households who regularly shop on Amazon's online superstore and the hundreds of thousands of businesses who rely on Amazon to reach them. (¶¶ 3, 7.)[1] Plaintiffs allege that Amazon has illegally maintained monopoly power in two discrete but interrelated markets (¶¶ 117-19) through intricate schemes that span more than a decade (¶¶ 257-415). Plaintiffs collectively bring twenty claims against Amazon under the FTC Act, the Sherman Act, and state competition and consumer protection laws. (¶¶ 442-564.) Plaintiffs seek, among other relief, equitable relief necessary to "redress and prevent recurrence of Amazon's violations of the law" and "restore fair competition and remedy the harm to competition caused by Amazon's violations of the law," along with "any additional relief the Court finds just and proper."

---

[1] Citations in the form (¶ __) are to Plaintiffs' Complaint, Dkt. #114.

MOTION TO BIFURCATE - 1
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

(Complaint, Dkt. #114 at 148-49.) Plaintiff States also seek equitable monetary relief and the costs of suit. (*Id.* at 149.)

While Plaintiffs and Amazon appear to agree that fact discovery should encompass both liability and remedy issues, Amazon opposed Plaintiffs' proposal "that trial should address only Amazon's liability under Section 5 of the FTC Act, Section 2 of the Sherman Act, and applicable state competition and consumer protection laws." (Joint Status Report, Dkt. #135 at 44-45.) Plaintiffs now move for bifurcation consistent with the Case Scheduling Order (Dkt. #159).

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) allows "the court [to] order a separate trial of one or more separate issues" "[f]or convenience, to avoid prejudice, or to expedite and economize." Rule 42(b) "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *see also Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) ("It is clear that Rule 42(b) gives courts the authority to separate trials into liability and damages phases." (cleaned up)). In considering a motion for bifurcation, "[c]ourts weigh several factors, including convenience, prejudice, and judicial economy in determining whether to phase or bifurcate proceedings." *United States v. Boeing Co.*, 2023 WL 5836487, at *2 (W.D. Wash. Aug. 31, 2023). Bifurcation should "be encouraged where experience has demonstrated its worth." Fed. R. Civ. P. 42(b) advisory committee's notes to 1966 amendment.

## ARGUMENT

Complex antitrust cases, like this one, are often bifurcated into separate liability and remedies proceedings to increase convenience and judicial economy. (§ I.) The rationale for bifurcation applies with particular force here given the scope of the allegations and the role the

MOTION TO BIFURCATE - 2
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Court's findings on liability will play in guiding the Parties' remedies arguments. (§ II.) Amazon's arguments against bifurcation are unpersuasive and actually underscore why bifurcation is especially appropriate here. (§ III.)

I. **COURTS COMMONLY SPLIT COMPLEX ANTITRUST CASES INTO SEPARATE LIABILITY AND REMEDY PHASES FOR PURPOSES OF CONVENIENCE AND JUDICIAL ECONOMY.**

Bifurcating liability and relief into separate proceedings in especially complex cases is a common and "obvious" application of Rule 42(b) because "liability must be resolved before damages are considered." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2390 (3d ed. 2016). Courts have often found complex antitrust cases well-suited for bifurcation due to the intricacy of the liability issues and the efficiencies in addressing each phase separately. *See id.* (noting that "a significant number of federal courts, in many different kinds of civil litigation, have ordered the questions of liability and damages to be tried separately, for example *in cases involving antitrust*" (emphasis added)); *accord Goldfarb v. Va. State Bar*, 421 U.S. 773, 778 (1975) (district court conducted bench trial "solely on the issue of liability" in case brought under the Sherman Act for injunctive relief and damages); *Oltz v. St. Peter's Cmty. Hosp.*, 19 F.3d 1312, 1313 (9th Cir. 1994) (bifurcated antitrust trial on liability and remedies); *In re Data Gen. Corp. Antitrust Litig.*, 490 F. Supp. 1089, 1099 (N.D. Cal. 1980) (same); *Wall Prods. Co. v. Nat'l Gypsum Co.*, 357 F. Supp. 832, 834 (N.D. Cal. 1973) (same); *see also, e.g.*, *In re Master Key Antitrust Litig.*, 528 F.2d 5, 15 (2d Cir. 1975) (recognizing that "bifurcated trials have frequently been employed with great success [including] in antitrust suits").

Resolving complex antitrust cases is often a significant undertaking. *See generally* 3B Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ("Areeda & Hovenkamp") ¶ 311a (5th ed. 2020) ("[A]n antitrust case may

MOTION TO BIFURCATE - 3
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

involve so many issues, documents, witnesses, and lawyers as to defy comprehension . . . ."). Bifurcating remedy proceedings from the underlying resolution of liability allows the factfinder to address each of these complex issues independently, promoting the efficient development and presentation of evidence on the merits. *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 666 (7th Cir. 2002) (Posner, J.) ("No doubt in view of the complexity of [this antitrust] case the judge will also want to bifurcate the trial, that is, to have a trial on liability first and only if the jury finds that the defendants violated the law to conduct a trial to determine the plaintiffs' damages."); *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 5177501, at *10-13 (N.D. Ill. Aug. 11, 2023) (recognizing that "antitrust cases are often strong candidates for bifurcation" given their complexity and granting motion to bifurcate trial into liability and damages phases in part to avoid "add[ing] another layer of complexity to an already complex trial"); *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837-38 (S.D.N.Y. 1998) (ordering bifurcation to "[s]egment[] difficult issues of liability and damages" in antitrust case involving "voluminous evidence and difficult concepts lying at the crossroads of law and economics" where "[c]onfronting one complex set of issues at a time" would reduce potential confusion); *Reines Distribs., Inc. v. Admiral Corp.*, 257 F. Supp. 619, 621 (S.D.N.Y. 1965) ("The inherent complexity of an antitrust case is itself a factor promoting a separate trial of an issue in such a case where the result of the separate trial may simplify the litigation.").

Moreover, it is often efficient to address how a monopolist violated the law separately from how to appropriately remedy that violation given the wide variety of relief that may be necessary. Equitable relief may need to be much broader than simply ordering the monopolist to cease the illegal conduct. "The principal purpose of equitable relief" in monopolization cases "is not to punish violations but to restore competitive conditions—the 'undoing' of what the antitrust violation achieved." 3D Areeda & Hovenkamp ¶ 325c. Accordingly, if a district court concludes

MOTION TO BIFURCATE - 4
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  that monopolization has occurred, "the available injunctive relief is broad" because the court must "terminate the illegal monopoly, deny to defendant the fruits of its statutory violation, and ensure that there remain no practices likely to result in monopolization in the future." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 486 (9th Cir. 2021) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001) (en banc) (per curiam)); *accord Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972) (holding that antitrust relief must restore competition).

In order to efficiently carry out this broad mandate, courts often bifurcate complex antitrust cases to allow the remedies proceeding to be tailored to the specific violations found by the court. The court cannot craft appropriate injunctive relief until it knows "the wrong creating the occasion for the remedy." *Microsoft*, 253 F.3d at 107. Separate proceedings can thus be more efficient because the scope and specifics of any remedy depend on the scope and specifics of the court's liability determination. *Cf. id.* at 103-05 (vacating district court's remedy decree because court of appeals revised underlying bases of liability, requiring district court to reevaluate remedy based on new scope of liability). When proceedings are not bifurcated in cases with a broad scope, witnesses may have to testify about a range of potential remedies covering all possible liability outcomes. This could result in the parties litigating—and the court considering—remedies that may ultimately be foreclosed by the court's liability determinations, thereby reducing judicial economy. *See Kraft Foods*, 2023 WL 5177501, at *10 (bifurcation allows the parties and the court to focus on remedies that are "actually in play after [a] liability verdict"). And, as courts have recognized, bifurcation may obviate the need for a remedies proceeding altogether. *See, e.g., Reines Distribs.*, 257 F. Supp. at 621 ("If plaintiff should lose on [liability], the issue[] of . . . damage[s] . . . will be out of the case and there will be neither duplication nor cumulation." (cleaned up)).

MOTION TO BIFURCATE - 5
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Given the benefits that bifurcation can bring, it is unsurprising that courts overseeing recent complex monopolization cases concerning online markets have bifurcated proceedings into bench trials on liability followed by separate tailored proceedings on remedies. *See United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C. Dec. 6, 2021), Dkt. #264 ("The Court finds that, to the extent necessary, holding separate trials on the issues of liability and remedies will be more convenient for the Court and the Parties, and will expedite and economize this litigation."); *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Mar. 3, 2022), Dkt. #103 ("There will be a first phase that will address only the Defendant's liability under the antitrust laws. If the Court renders a decision finding the defendant liable, then the Court will hold a separate proceeding regarding any remedies for any violations of the antitrust laws that it finds."); *accord United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. June 11, 2023), Dkt. #283 ("In the event plaintiffs obtain a jury verdict [in] their favor on liability and monetary damages, the court will promptly convene a status conference to discuss whether plaintiffs wish to pursue equitable relief based on the jury's verdict, what equitable relief plaintiffs intend to pursue, the schedule for exchanging expert reports addressing the specific equitable remedy or remedies being sought, the schedule for briefing by the parties, and a date for the hearing."); *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981 (N.D. Cal. Jan. 18, 2024), Dkt. #917 (noting court's intention to "hear from the parties' economist experts at [an] evidentiary hearing on the issue of an appropriate conduct remedy" following jury trial on liability that resulted in verdict in favor of plaintiff).

## II.   BIFURCATING THE LIABILITY AND REMEDIES PHASES OF THIS CASE WOULD BE CONVENIENT AND PROMOTE JUDICIAL ECONOMY.

This case is broader in scope and complexity than a typical antitrust case. As such, the rationales related to convenience and judicial economy that courts have applied in other complex antitrust cases when ordering bifurcation weigh in favor of separate proceedings here.

MOTION TO BIFURCATE - 6
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

As discussed above, remedying monopolization requires not only halting illegal conduct, but also restoring competition. (*See* § I.) To craft an appropriate remedy here, the Court will need to understand the mechanics of how Amazon has violated the law to fashion injunctive relief sufficient to return the markets to the states they would have been in absent Amazon's illegal conduct. The scope of the inquiry on remedies combined with the scope of Amazon's challenged practices heightens the benefits of holding a separate liability trial.

Plaintiffs allege Amazon has used many different programs, business units, and tactics to illegally maintain its monopolies in two separate but interrelated markets. Contractual price parity clauses, Select Competitor–Featured Offer Disqualification, Amazon Standards for Brands, Customer Experience Ambassadors, and a first-party anti-discounting algorithm all contribute to Amazon's long-term strategy of punishing online discounting. (¶¶ 272-304, 326-32.) Amazon also uses Prime eligibility, the Featured Merchant Algorithm, Fulfillment by Amazon, and Seller Fulfilled Prime to reduce seller multihoming. (¶¶ 351-60, 397-409.) And Amazon used Project Nessie to raise prices by manipulating other online stores' pricing algorithms. (¶¶ 416-32.) The Court must assess Amazon's tactics holistically and examine the cumulative impact of Amazon's unlawful behavior. *See City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992) ("[I]t would not be proper to focus on the specific individual acts of an accused monopolist while refusing to consider their overall combined effects."); Plaintiffs' Opposition to Amazon's Motion to Dismiss, Dkt. #149 at 6-8. A separate trial on liability would allow the Court to make this holistic assessment in the context of focused presentations about how Amazon's various tactics fit together. Simultaneously evaluating remedy issues and Amazon's liability for its course of conduct, on the other hand, would "add another layer of complexity to an already complex trial." *Kraft Foods*, 2023 WL 5177501 at *11.

MOTION TO BIFURCATE - 7
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

The number and variety of laws Amazon has violated also favors bifurcation. Several Plaintiff States allege that Amazon has engaged in deceptive acts or practices in addition to unfair and anticompetitive conduct. (¶¶ 513, 522(c), 541-52.) These claims differ from Plaintiffs' antitrust claims and will require independent analysis of applicable remedies. Certain Plaintiff States have also raised state law claims for equitable monetary relief, including disgorgement. (*See, e.g.*, ¶¶ 482(a), 507(a), 521(b), 523(b), 540, 552, 561.) Plaintiff FTC also alleges that Amazon has engaged in unfair methods of competition in violation of Section 5 of the FTC Act (¶¶ 454-63), a law with a broader reach than the Sherman Act. *See* Plaintiffs' Opposition to Amazon's Motion to Dismiss, Dkt. #149 at 18-20. The scope of claims advanced here thus increases the breadth of issues to be decided beyond those normally at issue in an antitrust case, and further supports streamlining an already complex trial.

In addition, bifurcation will simplify the proceedings on remedies and save the Court and the Parties significant time and resources by enabling the Parties to tailor presentations on remedies to the Court's liability findings. (*See* § I above.) For example, the Court's findings regarding how each strain of Amazon's anticompetitive conduct amplifies the effects of every other anticompetitive behavior it has engaged in will impact what equitable relief may be necessary to "unfetter [the] market[s] from anticompetitive conduct." *Microsoft*, 253 F.3d at 103 (quoting *Ford Motor Co.*, 405 U.S. at 577).

For the reasons explained above, adoption of Plaintiffs' bifurcation proposal would make the proceedings more convenient for the Parties and the Court and promote judicial economy.

### III. AMAZON'S ARGUMENTS AGAINST BIFURCATION HIGHLIGHT THE NEED FOR BIFURCATION.

Amazon claims that bifurcation will result in "massive duplication" because determining liability requires "pressure testing . . . what the remedy would be" and that bifurcation would

MOTION TO BIFURCATE - 8
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  therefore require some witnesses to testify during both phases. (February 8, 2024 Scheduling
2  Conference Tr. at 9:23-10:11; *id.* at 11:24-12:3.) Amazon's arguments are not persuasive; in fact,
3  they show why bifurcation would be useful and appropriate.

4      Amazon's argument against bifurcation confuses the remedy phase of an antitrust case with
5  the much narrower question that may be relevant within the liability analysis of whether
6  "substantially less restrictive means exist to achieve any proven procompetitive benefits." *NCAA*
7  *v. Alston*, 594 U.S. 69, 100 (2021). (*See, e.g.*, Scheduling Conference Tr. at 10:5-11 ("[I]f you're
8  attacking something that, in their words, goes to the core of our operations, which we deem to be
9  exceptionally pro-customer, we have to talk about what is it they think should be different, and
10 we're going to have to talk about that in the liability phase. So we're going to end up in a situation
11 where there's just a lot of repetition, if there's a separate remedy phase.").) At the liability phase,
12 the Court may need to probe alternative conduct Amazon could have engaged in if—and only if—
13 Amazon proves that its anticompetitive conduct also has cognizable procompetitive benefits. But
14 the "less restrictive alternatives" issue is very different and much more circumscribed than
15 deciding appropriate remedies after liability is established. The purpose of the "less restrictive
16 alternative" inquiry at the liability phase is to determine whether a restraint with anticompetitive
17 effects is unreasonably broad—that is, broader than necessary to achieve its purported
18 procompetitive justification. *See Alston*, 594 U.S. at 100-01. This is a fundamentally different
19 inquiry than the one the court must engage in to fashion an appropriate equitable remedy, where
20 its task is to "cure the ill effects of the illegal conduct, and assure the public freedom from its
21 continuance." *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950); *see also United States v.*
22 *Grinnell Corp.*, 384 U.S. 563, 577 (1966) ("[A]dequate relief in a monopolization case should put
23 an end to the combination and deprive the defendants of any of the benefits of the illegal conduct,
24 and break up or render impotent the monopoly power found to be in violation of the Act.").

MOTION TO BIFURCATE - 9
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  Amazon's improper conflation of these issues helps to show why bifurcation is needed. *See Hirst
2  v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (upholding bifurcation in part because "certain
3  evidence relevant [to the second proceeding] might [have] tend[ed] to obscure the more
4  fundamental question [in the first proceeding]").

5        Amazon's contention that bifurcation would require presenting the same evidence twice is
6  without merit. The remedies phase may not require additional witness testimony. *See, e.g.*, *United
7  States v. Am. Express Co.*, No. 1:10-cv-04496 (E.D.N.Y. Feb. 19, 2015), Dkt. #620 (ordering,
8  following bench trial resulting in liability for antitrust violations, that each party submit proposed
9  remedial orders within thirty days "consistent with the analysis" in court's findings of fact and
10 conclusions of law and accompanied by "a supporting memorandum explaining why the court
11 should adopt its proposed remedy"). To the extent there is evidence relevant to both phases,
12 bifurcation will not result in "massive duplication." Because the Court is acting as the factfinder,
13 it can rely on evidence submitted at the liability bench trial during the remedies phase without
14 repetition of testimony. *See, e.g.*, *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 98 (D.D.C.
15 2002) (concluding that "the district court's factual findings . . . may be relied upon during the
16 remedy phase of this proceeding" as "it would make little sense to proceed to craft a remedy in the
17 absence of substantial reliance upon the factual foundation which underlies the liability entered in
18 this case"); *Yanni v. City of Seattle*, 2005 WL 2180011, at *2 (W.D. Wash. Sept. 9, 2005) (granting
19 motion for bifurcation over defendants' objections concerning "duplicative" testimony because
20 the factfinder can "consider testimony from the first phase in [its] deliberations in the second
21 phase"); *Gaekwar v. Amica Mut. Ins. Co.*, 2024 WL 85089, at *2 (W.D. Wash. Jan. 8, 2024)
22 (granting bifurcation motion and noting that "trying the case before a single [factfinder] in two
23 phases will minimize the need for any evidence and witnesses to be presented twice, thereby
24 undermining [the] argument that bifurcat[ion] will lengthen and increase the cost of trial").

MOTION TO BIFURCATE - 10
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    If, however, the Court finds that it would be helpful to hear further testimony during the remedies phase, including from a witness who appeared during the liability phase, the Court can impose limits on the scope of testimony to avoid repetition. *See, e.g.*, *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (recognizing that "[t]rial courts have broad authority" to manage trials and "challenges to trial court management" are reviewed for "abuse of discretion"); *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 1:11-cv-8808 (N.D. Ill. Nov. 27, 2023), Dkt. #587 (order limiting evidence parties may present during bifurcated damages phase to avoid duplication of evidence received during liability phase). Some overlap in evidence, moreover, is not a barrier to bifurcation because the Court's dual role will ensure that Amazon is not prejudiced. *See F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 388 & n.5 (M.D.N.C. 1999) ("[A] mere minor overlap of evidence between the liability phase and the damage phase has not prevented courts from ordering an otherwise justified bifurcation.") (collecting cases); *Greening v. B.F. Goodrich Co.*, 1993 WL 134781, at *3 (N.D. Ill. Apr. 23, 1993) ("Any minimal overlap of evidence on these issues is outweighed by the potential for judicial economy through bifurcation . . . ."). Amazon's concerns that bifurcation would lead to "massive duplication" are therefore unfounded.

While a non-bifurcated proceeding may obviate the need for any witness to testify twice, the time each witness spends on the stand during that single proceeding will likely run much longer than the time they would spend testifying across two bifurcated proceedings. Absent bifurcation, such trial witnesses will need to testify not only about complex issues relevant to liability, but also about a range of potential remedies covering a constellation of conceivable liability findings. Conducting a single proceeding to avoid "duplication" of testimony—an objective also readily achievable through bifurcation—is not more economical or convenient if doing so sacrifices efficiency and makes an already complex case even more complicated.

MOTION TO BIFURCATE - 11
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

# CONCLUSION

Plaintiffs respectfully submit that the Court should grant this motion and bifurcate the proceedings into liability and remedies phases in accordance with Plaintiffs' proposed order. To the extent the Court is not inclined to order bifurcated proceedings at this time, Plaintiffs respectfully request the Court defer resolution of this motion until this case is closer to trial. At present, the Parties agree that fact discovery should encompass both liability and remedy issues, which alleviates the need for an immediate decision on bifurcation.

Dated: February 29, 2024

*I certify that this memorandum contains 3,704 words, in compliance with the Local Civil Rules.*

Respectfully submitted,

*s/ Susan A. Musser*
SUSAN A. MUSSER (DC Bar # 1531486)
EDWARD H. TAKASHIMA (DC Bar # 1001641)
SARA M. DIVETT (DC Bar # 1736504)
COLIN M. HERD (NY Reg. # 5665740)
JAKE WALTER-WARNER (NY Reg. # 5396668)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.:   (202) 326-2122 (Musser)
        (202) 326-2464 (Takashima)
Email: smusser@ftc.gov
       etakashima@ftc.gov
       sdivett@ftc.gov
       cherd@ftc.gov
       jwalterwarner@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

MOTION TO BIFURCATE - 12
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

s/ Michael Jo
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

s/ Rahul A. Darwar
Rahul A. Darwar (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: Rahul.Darwar@ct.gov
*Counsel for Plaintiff State of Connecticut*

s/ Alexandra C. Sosnowski
Alexandra C. Sosnowski (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

s/ Caleb J. Smith
Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street, Suite 1000
Tulsa, OK 74119
Telephone: (918) 581-2230
Email: caleb.smith@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

s/ Jennifer A. Thomson
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

s/ Michael A. Undorf
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

s/ Christina M. Moylan
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

s/ Gary Honick
Gary Honick (admitted *pro hac vice*)
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6474
Email: Ghonick@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

MOTION TO BIFURCATE - 13
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

| | | |
|---|---|---|
| 1 | s/ Michael Mackenzie | s/ Ana Atta-Alla |
| 2 | Michael Mackenzie (admitted *pro hac vice*)<br>Deputy Chief, Antitrust Division | Ana Atta-Alla (admitted *pro hac vice*)<br>Deputy Attorney General |

s/ Michael Mackenzie
Michael Mackenzie (admitted *pro hac vice*)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2369
Email: michael.mackenzie@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

s/ Scott A. Mertens
Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*

s/ Zach Biesanz
Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

s/ Ana Atta-Alla
Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

s/ Jeffrey Herrera
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

s/ Timothy D. Smith
Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

s/ Stephen N. Provazza
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

MOTION TO BIFURCATE - 14
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1 | *s/ Gwendolyn J. Cooley*
Gwendolyn J. Cooley (admitted *pro hac vice*)
2 | Assistant Attorney General
Wisconsin Department of Justice
3 | Post Office Box 7857
Madison, WI 53707-7857
4 | Telephone: (608) 261-5810
Email: cooleygj@doj.state.wi.us
5 | *Counsel for Plaintiff State of Wisconsin*

MOTION TO BIFURCATE - 15
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222