THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, et al.,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

Case No. 2:23-cv-01495-JHC

**AMAZON'S REPLY IN SUPPORT OF MOTION TO DISMISS**

# INTRODUCTION

Amazon matches rivals' discounts, recommends competitively priced offers, and provides fast and reliable shipping. Mot. 9-12. Plaintiffs label each of those practices "anticompetitive." But the Opposition fails to identify facts that, if proven, plausibly demonstrate how these facially procompetitive and commonplace practices have harmed competition in any market. Plaintiffs instead employ three tactics to try to lower the pleading bar they must clear to avoid dismissal of their claims.

*First,* Plaintiffs ask the Court to view distinct theories of liability "holistically" so that they need not allege facts adequate to establish each theory individually. Opp. 1-2. The Supreme Court has foreclosed that very approach, explaining that "[t]wo wrong claims do not make one that is right." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (plaintiffs may not

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 1
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

"join [one] claim that cannot succeed with [another] claim that cannot succeed, and alchemize them into a new form of antitrust liability"). Instead, where, as here, Plaintiffs attack several different business practices, a court must assess each separately, particularly where some are *per se* lawful.

*Second*, Plaintiffs attempt to divert attention from their own pleading failures by mischaracterizing Amazon's argument as seeking an affirmative ruling at this stage that its conduct is procompetitive. Opp. 8-9. Amazon seeks no such thing. As Amazon's motion makes clear, the Complaint should be dismissed because Plaintiffs fail to carry their burden to allege facts plausibly showing that Amazon's practices have resulted in harm to competition. Mot. 1-3. For example, the Complaint anecdotally asserts that Amazon's practices influenced a handful of Amazon's hundreds of thousands of third-party sellers; it nowhere alleges facts showing that the behavior of these sellers—even if accurately described in the Complaint—could plausibly have caused market-wide anticompetitive harm. Indeed, the Complaint does not identify a single product for which any consumer paid a supracompetitive price as a result of the alleged conduct. Plaintiffs' failure to allege such facts is unsurprising, not least because the challenged conduct is commonplace and procompetitive.

*Third*, the FTC asks the Court to rule on novel formulations of Section 5 of the FTC Act before the FTC itself has considered them. Specifically, the FTC asks the Court to rule in the first instance that Amazon's conduct, even if lawful under the Sherman Act, nevertheless was an "unfair method of competition" under Section 5 of the FTC Act. But no court has ever taken such a step, for good reason: Congress gave the federal courts no administrable standards to make such determinations and was clear that such claims must first be adjudicated in the FTC's administrative courts.

*Finally*, the Opposition fails to remedy the various flaws in Plaintiffs' state law claims.

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 2
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

# ARGUMENT

## I. THE SHERMAN ACT CLAIMS (COUNTS I, II, V, AND VI) SHOULD BE DISMISSED.

### A. Controlling Precedent Precludes Plaintiffs' "Holistic" Liability Theory.

Plaintiffs urge the Court to take a "holistic[]" view of its challenges to distinct practices and deem them "greater than the sum of [their] parts." Opp. 1-2, 6. But the Supreme Court has rejected that approach, explaining that an antitrust plaintiff may not "join [one] claim that cannot succeed with [another] claim that cannot succeed, and alchemize them into a new form of antitrust liability." *linkLine*, 555 U.S. at 457. In other words, "[t]wo wrong claims do not make one that is right." *Id.*; *see also Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022) ("Because each individual action alleged by [plaintiff] does not rise to anticompetitive conduct … their collective sum likewise does not.").

That principle has particular force where, as here, certain of the conduct is *per se* lawful. Mot. 9-11. Allowing a plaintiff to convert immunized conduct into challengeable conduct simply by commingling different conduct together would create an "intolerable risk[] of chilling" the "legitimate procompetitive conduct." *Valassis Commc'ns, Inc. v. News Corp.*, 2019 WL 802093, at *8, *10 (S.D.N.Y. Feb. 21, 2019) (quotation omitted); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458-59 (1993) (blurring line between lawful and unlawful conduct would "chill competition, rather than foster it"); *Mercatus Grp. LLC v. Lake Forest Hosp.*, 641 F.3d 834, 839 (7th Cir. 2011) ("[A]ggregat[ing] the effects of conduct immunized from antitrust liability with the effects of conduct not so immunized … would nullify the immunity.").

Two recent and high-profile decisions confirm this point. Judge Boasberg dismissed an antitrust suit against Facebook on the ground that holding a defendant liable for a "course of conduct" that includes presumptively lawful activity "would recreate the negative policy consequences" that those presumptions are "meant to avoid." *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 46-47 (D.D.C. 2021), *aff'd*, 66 F.4th 288 (D.C. Cir. 2023). And Judge Mehta

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 3
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  rejected the government's conduct aggregation theory against Google, explaining that a court may
2  not "combine the anticompetitive effects across different types of monopolistic behavior, when
3  deciding whether any particular type of conduct has anticompetitive effects." *United States v.*
4  *Google LLC*, -- F. Supp. 3d --, 2023 WL 4999901, at *14 (D.D.C. 2023). A court instead "must
5  disaggregate the exclusionary conduct into its component parts before applying the relevant law."
6  *Id.* (cleaned up); *see also Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1184
7  (N.D. Cal. 2012) (because defendant "ha[d] no duty to give away its technology … the Court does
8  not consider [its refusal to license that technology] in evaluating the overall effect" of defendant's
9  conduct).

10  Plaintiffs' reliance on the Supreme Court's 1962 decision in *Continental Ore Co. v. Union*
11  *Carbide & Carbon Corp.*, 370 U.S. 690, is misplaced. That case applies only to "proof of antitrust
12  *conspiracy*, not, as here, an alleged monopolist's '*unilateral* conduct.'" *Google*, 2023
13  WL 49999901, at *13 (emphases added); *see also id.* (citing cases); *Malheur Forest Fairness Coal.*
14  *v. Iron Triangle, LLC*, -- F. Supp. 3d --, 2023 WL 6811871, at *15 (D. Or. 2023) (same). Plaintiffs'
15  citation to the Ninth Circuit's 1992 decision in *City of Anaheim v. Southern California Edison Co.*,
16  955 F.2d 1373, fares no better. As that court acknowledged, "if all we are shown is a number of
17  perfectly legal acts, it becomes much more difficult to find overall wrongdoing." *Id.* at 1376.
18  Indeed, when a divided Ninth Circuit panel later reaffirmed the theory adopted in *City of Anaheim*,
19  the Supreme Court reversed it in *linkLine. See linkLine Commc'ns, Inc. v. SBC Cal., Inc.*, 503 F.3d
20  876, 880-84 (9th Cir. 2007), *rev'd*, 555 U.S. 438.

21  Today, district courts in the Ninth Circuit dismiss complaints that, like this one, seek to
22  "consolidate multiple theories of anticompetitive conduct" into a single "theory of synergistic
23  conduct." *Malheur*, 2023 WL 6811871, at *15 (emphasis omitted); *accord Dreamstime*, 54 F.4th
24  at 1142. As the *Malheur* court explained, such an approach would impermissibly "transform[] the
25  anticompetitive conduct element of a Section 2 claim into a 'totality of the circumstances' analysis
26  devoid of any guidelines by which to evaluate the legality of such conduct." 2023 WL 6811871,

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 4
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

at *15. The same precedent forecloses Plaintiffs' "synergistic" and "holistic[]," Opp. 2, 6, approach to antitrust liability here.

### B. The Complaint's Allegations About Amazon's Specific Practices Are Insufficient to State Any Sherman Act Violation.

Regardless of whether Plaintiffs package their claims as "holistic" or independent, they fail because Plaintiffs do not allege facts sufficient to meet their pleading burden. As Amazon explained, the first alleged category of conduct (above-cost discounting) is *per se* lawful; there are no facts Plaintiffs could allege to make that conduct illegal. Mot. 9, 13. The remaining two categories involve practices that, while not *per se* lawful, are commonplace in retail and have facially procompetitive attributes. Mot. 12-13. Those facts do not lessen Plaintiffs' burden at this stage, nor do they mean Amazon somehow shares in Plaintiffs' burden. To the contrary, they highlight Plaintiffs' burden to allege facts plausibly showing that those practices counterintuitively have anticompetitive effects when used here. Mot. 13-15. Plaintiffs have not met that burden.

***Competing on price.*** *Brooke Group* establishes a bright-line rule: above-cost price discounts are *per se* lawful regardless of the intent because such pricing is competition on the merits. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223-24 (1993) (above-cost price cuts lawful even if designed "to demonstrate to a maverick the unprofitability" of its own price cut). Plaintiffs do not contend that Amazon's prices were below cost. Instead, they argue that Amazon's discount-matching policy falls outside the *Brooke Group* safe harbor because it involved "both price cuts *and price increases*." Opp. 14. But that is true of any discount-matching policy, as *Brooke Group* itself illustrates. *See* 509 U.S. at 235-37 (discounts were *per se* lawful even though, after price war ended, the "list prices on … cigarettes increased twice a year"). Plaintiffs' position would reduce *Brooke Group* to a nullity.

Plaintiffs also note that, in other cases involving different theories of liability, "[c]onduct involving above-cost pricing may be anticompetitive." Opp. 14. To be sure, there are theories of antitrust liability other than discounting, such as the exclusive-dealing theory at issue in

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 5
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) (cited at Opp. 14). But Plaintiffs do not allege such theories in this case. Plaintiffs challenge Amazon's practice of matching rivals' prices, and it is that very practice that Supreme Court precedent protects. Mot. 9-10 (citing cases).

***Recommending low-priced offers.*** As Amazon explained, the Complaint fails to allege facts plausibly showing that Amazon's practice of featuring offers with low, competitive prices somehow had the effect of raising prices market-wide. Mot. 13-14. The Opposition does nothing to remedy this flaw. Plaintiffs do not even acknowledge, let alone try to explain away, the Antitrust Division's position that it is routine and procompetitive for retailers to highlight good deals rather than overpriced ones to customers. *See* Mot. 11. Nor do Plaintiffs address the two recent cases cited by Amazon in which the Ninth Circuit affirmed dismissal of antitrust claims where, as here, the plaintiffs had not adequately alleged facts demonstrating that a defendant's promotion of superior offers had anticompetitive effects (such as higher prices or more limited options). *See Dreamstime,* 54 F.4th at 1141; *Coronavirus Rep. v. Apple, Inc.*, 2021 WL 5936910, at *13 (N.D. Cal. Nov. 30, 2021), *aff'd* 85 F.4th 948 (9th Cir. 2023); *see also* Mot. 11-12.

The same result should follow here, given the paucity of facts plausibly showing anticompetitive effects arising from this conduct. Indeed, as putative evidence of such effects, the Opposition cites only (1) allegations that Amazon's seller fees have increased over time—but *not* that those amounts are higher than what sellers would pay to sell, ship, or advertise through Amazon's competitors, *nor* that those increases are a result of the challenged conduct; and (2) a single seller's remark that Amazon's Featured Offer policies "may" cause it to increase prices outside of Amazon's store. Opp. 12. In other words, after four years of investigation, Plaintiffs muster only an irrelevant observation about Amazon's fees and an inconclusive anecdote from a single seller.[1] Such paltry claims are especially insufficient where, as here, the most obvious effect

---

[1] Unlike the private-plaintiff cases cited in the Opposition, Opp. 9-10, Plaintiffs here are governmental authorities who spearheaded a multi-year investigation, reviewed millions of records from Amazon and others, and conducted dozens of investigative interviews before filing their Complaint. If Plaintiffs' claim of market-wide anticompetitive effects had merit, the Complaint would have been rife with evidence instead of anecdotes. In any event, Amazon's arguments here do not depend on construing facts in an "unfavorable light" or weighing any "procompetitive justifications." *Id*.

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 6
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

of Amazon's practice is that sellers will lower their prices in Amazon's store in order to be featured. The Complaint simply offers no plausible basis to conclude that Amazon's Featured Offer policies resulted in higher prices in the market as a whole.

***Recommending offers with reliably fast shipping.*** The Complaint also alleges no factual basis for condemning Amazon's Prime-badge policies. Mot. 14-15. Like other retailers, Amazon serves its customers' interests when it highlights offers it knows will be fulfilled reliably and promptly. It is thus no surprise that many Prime-eligible offers are fulfilled using Amazon's best-in-class fulfillment option. Antitrust law does not require retailers to give equal prominence to offers that will frustrate consumers' expectations.

The Opposition repeats the Complaint's convoluted assertion that Amazon's Prime-badge policies harm competition from other marketplaces. Opp. 15-16. Plaintiffs claim, for example, that Amazon has predicated any seller's eligibility for the Prime badge (and in turn the Featured Offer) on its use of Fulfillment by Amazon ("FBA"). *But see* Mot. 6 n.3 (discussing "Seller Fulfilled Prime"). And Plaintiffs claim that sellers using FBA have disincentives to sell on rival marketplaces because they supposedly must use a second fulfillment provider to do so, incurring additional costs in the process. *But see* Mot. 14 n.9 (sellers can use Amazon's fulfillment services for non-Amazon sales channels).

Critically, however, the Complaint does not plausibly tie these allegations to any harm to competition among marketplaces in the alleged seller-facing market for "marketplace services." Competition over service quality is competition on the merits. *See* Mot. 12. It is not enough to allege that sellers incur *some* incremental cost to avail themselves of the opportunity to sell their products with the "Prime" badge. Rather, the question is whether Plaintiffs have alleged facts showing that by making the "Prime" badge available to sellers who utilize Amazon's fulfillment network, Amazon has somehow reduced—rather than increased—competition with other marketplaces that do not provide the same service levels. The Complaint alleges no facts that, even if true, would plausibly support that conclusion.

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 7
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## II. THE "STANDALONE" SECTION 5 CLAIMS (COUNTS III AND IV) SHOULD BE DISMISSED.

### A. A Standalone Unfair Method of Competition Claim Provides No Justiciable Legal Standard to Apply.

In nearly all cases where the FTC asks a court to enforce Section 5's prohibition on "unfair methods of competition," it alleges that the challenged practice is "unfair" precisely because it violates judicially developed antitrust laws. Mot. 16-17. In Counts III and IV, however, the FTC asks this Court to evaluate whether the challenged practices (i.e., Amazon's "competitive methods") are "unfair" under Section 5 of the FTC Act even though they comport with the antitrust laws. The FTC cites no case in which any district court has ever held a defendant liable on such a "standalone" unfair method of competition claim. That is for good reason: Congress directed the Commission to adjudicate such claims in the first instance, not to outsource that policy-laden role to the federal courts.

In drafting Section 5, Congress "explicitly considered, and rejected, the notion that it reduce the ambiguity of the phrase 'unfair methods of competition' by tying the concept of unfairness to a common-law or statutory standard or by enumerating the particular practices to which it was intended to apply." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 240 (1972). A court thus has no justiciable standards for deciding in the first instance whether a method of competition is "unfair" when it complies with all judicially developed Sherman Act principles. Instead, "label[ing] a practice 'unfair'" in these circumstances is "a determination of policy or judgment which the agency alone is authorized to make" in its administrative forum. *Id.* at 249. Notably, Congress amended Section 5 in 1994 to supply a three-part definition of "unfair" in the *consumer-protection* context—*i.e.*, as applied to "acts or practices," but not "methods of competition." *See* 15 U.S.C. § 45(n). The FTC's reliance on court-adjudicated consumer-protection cases, Opp. 20-21, is thus puzzling. Those cases merely underscore Congress's decision

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 8
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

not to give courts judicially administrable standards for deciding standalone "unfair methods of competition" claims.

Section 13(b), on which the FTC relies, does not supply those missing standards; it merely sets forth conditions for obtaining injunctions without altering, expanding, or clarifying the underlying prohibitions in Section 5. 15 U.S.C. § 53(b) (allowing such injunctions only "in proper cases"). Moreover, contrary to Plaintiffs' characterization, Amazon is not making an argument "similar" to that decided in *FTC v. Evans Products*, 775 F.2d 1084 (9th Cir. 1985), Opp. 20, which did not involve an unfair method of competition claim. Specifically, Amazon does not argue here that Section 13(b) permits the FTC to bring "only routine fraud cases," Opp. 20, or that Section 5 falls outside the "provisions of law enforced by the Commission," *id.* (cleaned up). Amazon's argument instead is narrower: a standalone unfair method of competition theory devoid of judicially administrable standards does not present a "proper case" for a court to resolve. *See FTC v. Surescripts, LLC*, 424 F. Supp. 3d 92, 98 (D.D.C. 2020) ("'[P]roper cases' is not synonymous with 'all cases,' for such an interpretation would make the phrase superfluous.").

Finally, there is no logic to the FTC's circular suggestion that the Court should preserve Count III—which covers the very same conduct as the Sherman Act claims—on the ground that the Sherman Act claims themselves are valid. Opp. 18. The FTC included Count III in the alternative out of concern that its Sherman Act claims premised on that same conduct would fail; if those claims were in fact valid, Count III would be surplusage. Because Count III is meaningful only insofar as it states a standalone Section 5 claim, the Court should dismiss it if it concludes that such claims must first be adjudicated in the FTC's administrative tribunal.[2] Such dismissal would simplify the case by making clear that the FTC must prove liability in this forum under established Sherman Act principles.

---

[2] Plaintiffs' attempt to distinguish *Sperry* as pre-dating the enactment of Section 13(b), Opp. 21, is unavailing. As the FTC concurrently is arguing, Supreme Court decisions remain binding until the Court itself says otherwise. *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 9
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

### B. Count IV (Nessie) Should Be Dismissed on Additional Grounds as Well.

The Complaint does not allege that the long-discontinued Nessie pricing algorithm violated any Sherman Act prohibition, nor could it: the challenged practice involved purely unilateral decisions to price (certain) goods to match (for short periods of time) the second-lowest, rather than the absolute lowest, competing offer. Mot. 18. Count IV nonetheless contends that Nessie constituted a standalone Section 5 violation. Even if standalone Section 5 claims could be adjudicated by a court in the first instance, Count IV still should be dismissed for two independent reasons.

*First*, it is untimely. Section 13(b) permits courts to issue injunctions only when a defendant "is violating, or is about to violate," the FTC Act. 15 U.S.C. § 53(b). Here, the Complaint concedes that Amazon used Nessie only "[f]rom 2015 to 2019." Compl. ¶ 416. The FTC misleadingly asserts that Amazon turned Nessie off "during periods of high public scrutiny" and then "back on again once public attention receded," suggesting Amazon may reinstate Nessie if and when this claim is dismissed. Opp. 22. But the cited paragraphs in the Complaint allege that, between 2015 and 2019, Amazon applied Nessie *seasonally*, "paus[ing]" it during "the holiday shopping season and Prime Day." Compl. ¶ 426. Nothing in that long-past practice suggests what the FTC concedes it must show (at minimum): that Amazon is "likely" to reinstate Nessie now, five years after it was discontinued. Opp. 21 (quoting *Evans Prods.*, 775 F.2d at 1087); *see also* Mot. 20 (noting decision not to reinstate Nessie two years ago).

Second, appellate precedent forecloses the FTC's use of Section 5 to attack such unilateral pricing strategies. Mot. 18-19. The FTC argues, Opp. 19-20, that *Boise Cascade Corp. v. FTC*, 637 F.2d 573, 575 (9th Cir. 1980), somehow blesses its Nessie theory, even though it rejected the FTC's standardless application of Section 5. To the contrary, *Boise Cascade* explains that, *even in its administrative adjudications*, the FTC may not condemn practices that are lawful under "well forged" Sherman Act doctrine. *Id.* at 582. But that is what the FTC asks the Court to do here. Well-forged Sherman Act doctrine precludes liability for such unilateral pricing decisions in the

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 10
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  absence of an actual agreement among firms. Mot. 18-19. That doctrine reflects important judicial
2  values about the limits of antitrust intervention in a market economy and precludes this FTC effort
3  to expand the scope of liability for unilateral pricing.

4  **III.  THE STATE-LAW CLAIMS (COUNTS VII-XX) SHOULD BE DISMISSED.**

5  ***State-law monopolization claims.*** The State Plaintiffs do not dispute that all
6  monopolization claims under state-law Sherman Act equivalents fail if the Sherman Act claims
7  themselves fail. Mot. 20. That disposes of most state-law counts. *Id.* Counts IX, XII, and XVI also
8  should be dismissed because they rely on state statutes that are territorially limited by the term-of-
9  art "within this state." Mot. 22-23. Although the State Plaintiffs claim that this term "requires only
10 that the challenged conduct affect markets within these States," Opp. 24, the term in fact precludes
11 application of these states' laws if the allegedly monopolistic "activities … were of an interstate
12 nature," *Md. Staffing Servs., Inc. v. Manpower Inc.*, 936 F. Supp. 1494, 1504-05 (E.D. Wis. 1996),
13 as these indisputably were. *See also Young v. Seaway Pipeline, Inc.*, 576 P.2d 1148, 1151 (Okla.
14 1977); *State v. Lawn King, Inc.*, 375 A.2d 295, 303 (N.J. Law Div. 1979), *rev'd on other grounds*,
15 404 A.2d 1215. Oklahoma seeks to minimize *Seaway Pipeline* on the ground that it construes
16 Oklahoma's antitrust statute before a 1998 amendment. Opp. 24-25. But the amendment is
17 irrelevant because the new statutory language retains the same limiting clause ("within this state").
18 *See* 79 Okla. Stat. § 203(A).

19       Similarly, the Court should dismiss Pennsylvania's "common law" antitrust claim because
20 the common law recognizes antitrust claims only for Section 1-style agreements in restraint of
21 trade, not Section 2-style single-firm conduct. Mot. 21. The State Plaintiffs disagree, but cite no
22 Pennsylvania authority for bringing any common law claim against *unilateral* monopolization.
23 The so-called "monopolization" cases they cite, Opp. 25, instead (i) concern multi-firm
24 *agreements* to monopolize; (ii) merely confirm that Pennsylvania common law recognizes *some*
25 antitrust claims; or (iii) make vague statements of public policy in disputes involving no antitrust
26 claims at all.

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 11
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1          ***State consumer-protection claims.*** Five states bring consumer-protection claims under state-law equivalents to the FTC Act's prohibition on "unfair or deceptive acts or practices" ("UDAP"). Tellingly, the FTC itself brings no UDAP claim of its own, and for good reason: the Complaint alleges no facts necessary to state one. *See* Mot. 21-22.

           As to "deception," the State Plaintiffs argue that Amazon deceived consumers by "[a]dvertising best and lowest prices" while sporadically employing Nessie to temporarily match the *second*-lowest price offered by a competitor. Opp. 24. But the Complaint identifies no statement by Amazon that it would always offer the "lowest prices" for all products. Instead, the Complaint faults Amazon for its general mission statement that it "seek[s] to be Earth's most customer-centric company." Compl. ¶ 417. That general pledge is neither deceptive nor actionable. *See Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991); *Piccioli v. Faust Heating & A/C Co.*, 299 A.3d 877 (Pa. Super. Ct. 2023).

           Although the Complaint describes its consumer-protection claims solely in terms of deception, these five states also wish to assert UDAP-style "unfairness" or "unconscionability" claims. *See* Opp. 22-23. But even now they do not explain the nature of such claims; they appear simply to presume that any antitrust violation also is a consumer-protection violation. Courts in these states have rejected that basis for UDAP liability. *See, e.g., Sickles v. Cabot Corp.*, 877 A.2d 267, 274 (N.J. Super. App. Div. 2005) (rejecting "legal theory that … alleged monopolistic conduct [is], by itself, an unconscionable commercial practice"); *Anadarko Petrol. Corp. v. Commonwealth*, 206 A.3d 51, 60 (Pa. Commw. Ct. 2019) (similar), *aff'd in part*, 247 A.3d 934 (Pa. 2021); *J. Publ'g Co. v. Hartford Courant Co.*, 2014 WL 5094970, at *4-5 (Conn. Super. Ct. Sept. 4, 2014) (similar). Furthermore, Oklahoma's consumer-protection law does not even apply where, as here, a federal agency "provides extensive consumer protections and enforcement regarding the type of actions and transactions that occurred in the present case." *U.S. Bank Nat'l Ass'n v. Hill*, 540 P.3d 1, 12 (Okla. 2023) (citing 15 Okla. Stat. § 754(2)).

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 12
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*New York claim.* The State Plaintiffs concede the FTC has "exclusive jurisdiction over FTC Act claims" but assert that states may still bring claims "premised on overlapping state statutes or on common law." Opp. 26 (cleaned up). That is true but irrelevant. N.Y. Exec. Law § 63(12), under which New York sues, is not a substantive source of law; it is a procedural device that enables the New York Attorney General to enforce substantive prohibitions contained in *other* laws. Here, the other laws Plaintiffs invoke are not state laws, but the Sherman Act and the FTC Act. The Sherman Act claims should be dismissed for the reasons discussed above. That leaves only the FTC Act, which—again—the FTC alone may enforce. *See Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973).

## CONCLUSION

The Complaint's challenge to Amazon's pro-consumer conduct should be dismissed.

DATED this 22nd day of March, 2024.

*I certify that this memorandum contains 4,158 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Patty A. Eakes*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Constance T. Forkner (*pro hac vice*)

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 13
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
jschmidtlein@wc.com
khodges@wc.com
cmetz@wc.com
cpruski@wc.com
jpitt@wc.com
cforkner@wc.com

**COVINGTON & BURLING LLP**

Thomas O. Barnett (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com

*Attorneys for Defendant Amazon.com, Inc.*

---

AMAZON'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 14
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401