# EXHIBIT A



UNITED STATES OF AMERICA
**Federal Trade Commission**
WASHINGTON, DC 20580

Emily K. Bolles
Bureau of Competition
Attorney
(202) 326-3633
ebolles@ftc.gov

March 1, 2024

**By Electronic Mail**

Robert Keeling
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
rkeeling@sidley.com

   Re: *Federal Trade Commission, et al. v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC

Dear Robert:

  I write to follow up on our meet and confer on February 23, 2024, regarding the parties' proposals for an ESI Stipulation and Order.

**1.  Search Terms**

  In the revised proposal I sent on February 22, 2024, Plaintiffs made a further attempt to reach common ground on the language governing the search terms process to be used by the parties. As I explained on our call, Plaintiffs accepted much of Amazon's February 7 language, with some modifications that are important to Plaintiffs and that are justified by the needs of this case. Plaintiffs proposed the following:

  a. <u>Language making clear that the parties *may* use search terms. (C.2.)</u> On our call, we seemed to agree that there are times when parties would not use search terms such as, for example, when collecting go-get documents. Several small changes to Amazon's proposed language (*e.g.*, adding "chooses to use" and "if applicable") are meant to clarify that search terms are optional rather than required.

  b. <u>Language obligating the producing party to "exercise reasonable due diligence in investigating and analyzing its data in providing its proposed list of search terms." (C.2.b.)</u> Plaintiffs propose this language to make clear that producing parties must exercise reasonable due diligence when proposing search terms, including by identifying acronyms and project names used by the producing party. On our call, Amazon argued that because the parties are not "starting from scratch" due to Plaintiffs' pre-Complaint

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC

      investigation, Plaintiffs' proposed language requiring that producing parties exercise reasonable due diligence is not "applicable." We understand your position to be that Amazon does not have a responsibility to propose search terms that are reasonable and appropriate because there was a government investigation prior to this litigation.

      Plaintiffs strongly disagree. Amazon's unwillingness to exercise due diligence in proposing search terms is contrary to the spirit of cooperation that should pervade search negotiations. *See, e.g.*, *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI. Moreover, where counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft the appropriate keywords . . . ."). Given Amazon's troubling position that it is not required to exercise reasonable due diligence if it proposes search terms, Plaintiffs' proposed language making clear that the parties do in fact have that obligation is necessary to ensure a fair search terms process in this case.

      To the extent Amazon has any legal authority supporting its position, we ask that you provide it promptly.

c. <u>One deadline for disclosure of custodians, search terms, file type and date restrictions, and intent to use technology-assisted review. (C.2.a.)</u> On our call, Amazon explained that it would prefer a process where the parties negotiate on custodians and search terms in an iterative manner, and that a deadline that contemplates disclosing both custodians and search terms on the same date is therefore unworkable. As we have said before, we are concerned that without a deadline, discussions around search methodology—and thus document production and discovery generally—will stall. However, based on your representation on our call that Amazon will engage in iterative negotiations on search methodology, we are willing to drop this express deadline, as shown in Attachment 1.

d. <u>Process for Disputed Terms. (C.2.e.)</u> We still have a dispute about whether to include language governing the exchange of proposals and information if the parties disagree on search terms. Plaintiffs continue to believe that the process laid out in our proposal facilitates cooperation between the parties, enables the parties to have these disputes based on concrete evidence, and will move these disputes along efficiently. If a party opposes a search term based on burden or overbreadth, it should be able to substantiate its objection. *See Llera v. Tech Mahindra (Americas) Inc.*, No. C19-0445RSL, 2021 WL 5182346, at *3 (W.D. Wash. June 29, 2021) (noting that the defendant did not provide the "number of hits generated" and holding that the party objecting to search terms "bears the initial burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b).").

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC

        Plaintiffs note that Plaintiffs' proposal has been road-tested, since similar language has been used in prior antitrust cases. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, Case No. 13-md-02420 (N.D. Cal.), Dkt. #679 (Mar. 12, 2015).

    As we explained on our call, in addition to the above, Plaintiffs' February 22 proposal changed two nits from Amazon's February 7 proposal: one, we added the word "generally" to "[f]ocused terms and queries *generally* should be employed" to allow for deviations on a case-by-case basis. Two, we moved the agreed language "[t]he Parties may propose modifications to the search terms proposed by any Party, and the Parties shall continue to cooperate in revising the appropriateness of the search methodology" to where it fits better in the structure of the section.

**2.      Deadlines and Compliance**

    Amazon has made clear that it is opposed to "hard" or "fixed" deadlines in the ESI Stipulation and Order. *See, e.g.*, Letter from R. Keeling to E. Bolles (Jan. 19, 2024) ("we remain concerned regarding the inclusion of fixed deadlines in the ESI Stipulation . . ."). On our January 19 meet and confer, Amazon proposed that there be a grace period for the deadlines. After Plaintiffs explained that a grace period would just be a de facto extension of the deadlines, which Plaintiffs did not find acceptable, Amazon inserted "reasonable best efforts" language before each deadline in its proposal. *See id.* (an example of this language in context is: "producing Party shall make reasonable best efforts to produce native files within 14 days."). Most recently, Amazon inserted "good-faith efforts" before each deadline in its proposal. *See* Letter from R. Keeling to E. Bolles (Feb. 7, 2024) (an example of this language in context is: "producing Party shall make good-faith efforts to produce native files upon reasonable request within 14 days."). None of these proposals address Plaintiffs' concerns because they all allow a party to unilaterally extend its deadlines, thus undermining the point of having deadlines in the first place.

    Plaintiffs have tried to accommodate Amazon's concerns to the extent possible. Plaintiffs inserted the following language into our proposal: "The deadlines in this Stipulation and Order can be altered by agreement of all Parties without filing a motion with the Court. If any Party makes a reasonable request to alter a deadline, the other Parties shall consider the request in good faith." (G.2.) As we have explained, this enables the parties to handle unforeseen issues affecting the deadlines without involving the Court.

    Yet on our February 23 meet and confer, Amazon argued that having firm deadlines in an ESI Stipulation and Order is akin to imposing a "strict liability" standard on Amazon. Plaintiffs disagree. Setting clear deadlines in the ESI Stipulation and Order means that all parties can anticipate when other parties will take action required by the ESI Stipulation and Order and imposes accountability on the parties to get things done on time. It is normal for ESI Stipulations and Orders to have clear deadlines devoid of the type of hedge language that Amazon is demanding, including in cases related to this matter. *See, e.g.*, *De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693 (W.D. Wash.), Dkt. #66 ("Privilege logs will be produced to all other parties no later than 45 days after delivering a production unless an earlier deadline is agreed to by the

3

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC

parties."); *Frame-Wilson v. Amazon.com, Inc.*, No 2:20-cv-00424 (W.D. Wash.), Dkt. #91 (same). And of course, courts regularly set deadlines and require parties to abide by them.

On our February 23 call, Amazon asked Plaintiffs how removing Amazon's hedge language from the deadlines would "benefit Amazon." It may not, if Amazon intends to miss the deadlines in the ESI Stipulation and Order without agreement from Plaintiffs. However, we continue to believe that Plaintiffs' proposed language is reasonable and fits the needs of this case.

**3.   Privilege**

    **a.   Metadata Fields for Redacted Documents**

In the interest of reaching an agreement or narrowing our disputes, on February 22 Plaintiffs proposed a compromise position in which we mostly accept Amazon's proposed language about attorney names on metadata privilege logs but add language reserving rights to request that Amazon identify the attorney involved in documents where it has claimed attorney-client privilege or work-product protection. This language is also shown in Attachment 1. You agreed to take this language back but did not foresee an issue.

On our call, Amazon explained that where it adds an asterisk to attorney names, as described in your February 7 letter, it intends to do so for all attorneys whose names appear in the metadata, not just the attorney that forms the basis of the claim of privilege or work product.

    **b.   Privilege Logging Exclusions**

Plaintiffs have proposed privilege logging exclusions for certain internal and common interest communications since their first proposal to Amazon on November 21, 2023. Yet, despite the seven meet and confers the parties have had on the ESI Stipulation and Order, Amazon has not once explained why it opposes Plaintiffs' proposal to exclude from privilege logging FTC's internal documents and communications, Plaintiff States' internal documents and communications, and the FTC's and Plaintiff States' communications with other states and plaintiffs with whom they have a common legal interest.

Plaintiffs have been forthcoming with their positions and rationale while Amazon has not. For example, to further the parties' discussions, Plaintiffs' February 21 letter provided Amazon with the identities of entities with which Plaintiffs currently claim a common interest. Exhibit A to that letter identified states, territories, and private plaintiffs with whom the FTC shares a common legal interest related to this litigation, or the investigation that preceded this litigation. Exhibit B did the same for Plaintiff States. During the parties' February 23 meet and confer, Plaintiffs asked Amazon for its position on Plaintiffs' proposal, but again Amazon failed to explain whether or why it opposes excluding these types of communications from privilege logging.

4

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC

During the common interest discussion, Plaintiffs answered Amazon's questions and explained how the exclusion will apply. A common interest applies to communications among and between states and the FTC in the course of Plaintiffs' pre-Complaint investigation. If Plaintiffs no longer have a common interest with a particular entity, then we would log communications responsive to discovery requests or produce responsive non-privileged communications.

Amazon asked whether Plaintiffs' proposal excluding from privilege logging communications between Amazon outside counsel and Amazon in-house counsel would include communications between Amazon outside counsel and Amazon employees (aside from in-house counsel). We explained that it would not. Plaintiffs' proposal would relieve Amazon of the obligation to log communications among outside counsel and communications between outside counsel and in-house counsel, which would likely include the bulk of privileged communications regarding the litigation of this case.

Amazon suggested that there "is an equivalence" between Plaintiffs and Amazon in-house counsel. We disagree. As we have previously explained, Amazon's conduct is the subject of this litigation, and it is undisputed that many of Amazon's in-house counsel are copied on non-privileged communications and documents. Simply put, Amazon cannot deny that many of its in-house counsel will be copied on documents that touch upon core business conduct issues at the heart of this litigation. In contrast, Plaintiffs are government law enforcement agencies whose offices are comprised of attorneys and persons acting at their direction. Communications within the FTC and Plaintiff States are equivalent to communications within Amazon's outside counsel, and our proposal would provide an exclusion for those communications.

Plaintiffs asked a series of follow up questions to understand the roles of the in-house counsel Amazon proposes to exclude from privilege logging. In its February 7 letter, Amazon proposed privilege logging exclusions for communications to and from its entire litigation department, as well as its business conduct and ethics attorneys. Plaintiffs would like to understand how many attorneys are in those two groups and whether all of those attorneys work on this matter. In addition, Plaintiffs would like to understand the roles and responsibilities of Amazon's business conduct and ethics attorneys, including what role these attorneys play in antitrust compliance and providing legal advice on business matters related to antitrust issues.

Finally, Amazon counsel asked whether FTC has any internal policies that would prevent it from entering into common interest agreements with private plaintiffs. FTC is not aware of any such policies.

\*\*\*

Plaintiffs request that Amazon provide its position on Plaintiffs' proposals set forth in Attachment 1, Plaintiffs' latest proposed ESI Order, in writing by March 6, 2024.

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC

                                                Sincerely,

                                                */s/ Emily K. Bolles*

                                                Emily K. Bolles

cc      Nicole Booth
         Kristen DeWilde
         Constance Forkner
         Kevin Hodges
         Ray Mangum
         Molly Terwilliger

         Milly Dick
         Victor Donati
         Michael Jo
         Christine Kennedy
         Susan Musser
         Danielle Quinn
         Tim Smith
         Edward Takashima
         Yolanda Tucker
         Eric Zepp