# EXHIBIT B



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8396
RKEELING@SIDLEY.COM

January 19, 2024

**CONFIDENTIAL**

**By Email**

Emily K. Bolles
Bureau of Competition Attorney
(202) 326-3633
ebolles@ftc.gov

    Re:    *Federal Trade Commission, et al. v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC

Dear Emily:

    We appreciate your time this morning during the meet and confer. As discussed, I am providing a written response to your January 12, 2024 letter regarding Plaintiffs' revisions to the proposed ESI Stipulation and Order. The Parties appear to have made further steps toward reaching an agreement on most aspects, including again this morning. I address below the outstanding issues raised in your letter. I am also including Amazon's revised version of the proposal (Attachment 1), a redline from Amazon's proposal sent January 4 (Attachment 2), a redline from Plaintiffs' proposal sent January 12 (Attachment 3), Amazon's revised privilege logging stipulation (Attachment 4), a redline from Amazon's privilege logging stipulation sent January 4 (Attachment 5), and a redline from Plaintiff's privilege logging provisions from Plaintiffs' proposal sent January 12 (Attachment 6).

    **Search Terms**

    Your letter purports to find "puzzling" Amazon's request for modest flexibility on deadlines even though we discussed it thoroughly during our recent meet and confer. Moreover, your letter and proposal show that you understand the issue, which is simply that deadlines that might generally be workable might not always be so in every instance. Plaintiffs have inserted an array of hard deadlines into the protocol that would govern the timing of a variety of discovery activities where good faith and reasonable efforts ordinarily control. We have agreed in principle to these where we could but are concerned that, once the protocol is entered as a court order, any failure to meet any deadline at any point would put Amazon (or Plaintiffs) in violation. Take the deadline for turning around third-party productions to all other parties within 10 days. Suppose for some production it takes Plaintiffs eleven days to load the production and prepare reproductions for all other parties. What then? Or consider the requirement that parties provide

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 2

privilege logs at rolling intervals of "six, nine, and twelve months after the commencement of fact discovery." Suppose Amazon provides one of its rolling logs a couple of days ahead of schedule. Technically speaking, Amazon would be in violation of the order. We want to avoid uncertainty and potential disagreements over these types of minor deviations if the protocol is to have such deadlines. Although we appreciate Plaintiffs' willingness to include additional language clarifying that deadlines may be modified by agreement of the Parties, we believe more definite language is needed. For these reasons, Amazon has included language in places that ensures the Parties are not considered in violation of a deadline if they have made reasonable best efforts to comply, and that the Parties will meet and confer before raising an issue with the Court.

Regarding the second point in your letter, related to search term proposals, we continue to disagree that such a formalistic negotiation framework is necessary or even helpful. The common-sense approach proposed in Amazon's prior drafts of the ESI stipulation, which more closely mirrors the language of the model ESI order, is preferable. Both sides here are sophisticated parties with experience negotiating search terms. As you well know, such negotiations can be complex and multifaceted. Rather than the simple back-and-forth imagined by your proposal, these negotiations—especially the most productive ones—are often more fluid. It seems to us to represent an oversimplified view of the process that will prove a distraction rather than an aid. Moreover, many parts of your proposal are completed in the ordinary course of search term negotiations. In that respect, during the Parties' meet and confer on January 4, Plaintiffs asked if Amazon would provide search term hit reports under its proposed language. We can confirm that Amazon will do so in response to reasonable requests and further note that such requests are covered by the language that we proposed in our January 4, 2023 draft. That language should assuage any of Plaintiffs' concerns, and we have reinserted it into our counterproposal.

### Previously Produced Documents

We can largely agree to Plaintiffs' proposed language limiting the re-production agreement to productions made prior to this Stipulation and Order being entered. But we think it ought to apply equally to documents produced in response to particular requests for production in this litigation that specifically call for documents produced in other matters. Plaintiffs' Request for Production No. 18, for example, calls for "[a]ll documents produced or provided by Amazon or produced or provided to Amazon in *People of the State of California v. Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Super. Ct.) or any of the Related Cases." Given that Plaintiffs are expressly asking for copies of documents produced in another litigation, it only makes sense to reproduce them in the same form as they were produced in those matters, to the extent that they

**SIDLEY**

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 3

are produced here.[1] To do otherwise would result in costly and unnecessary reimaging at a large scale for no clear benefit. That was also the motivation for the final sentence we added stating that Plaintiffs do not anticipate requiring any large-scale reproduction of documents from the investigation, even though you reserve your rights to request reproductions where necessary on a document-by-document basis. We take your point about extending this statement to "related cases" in which the FTC was not involved. We have accordingly struck that reference. As revised, we understand this sentence to merely reflect the assurances that you have provided during the meet and confers, and we hope that the statement will be uncontroversial. As discussed this morning during the meet and confer, we will consider your question regarding whether Amazon could comply with the aspects of Attachment A other than imaging.

**Automatically Saved Drafts**

We appreciate Plaintiffs' revised language regarding the preservation of automatically saved drafts. The language proposed in Plaintiffs' draft is agreeable to Amazon, and we have incorporated it into Amazon's counterproposal.

**Linked Files**

As we have discussed, the process of identifying and collecting linked documents is a burdensome and highly manual process and is an area of known complexity and difficulty in eDiscovery. For the systems in use at Amazon, there is no mechanism to automatically retrieve linked documents as part of ordinary document collections. Rather, any identification and collection of linked documents will require engineering resources from our vendor and other internal resources within Amazon. Moreover, as links often are no longer active for a wide range of reasons, attempting to collect linked documents often fails. As previously conveyed, sampling performed in connection with linked document discussions during the investigation revealed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Email from Edward Rippey to June Im re File Nos. 191-0129 & 191-0130 - Confidential, (Apr. 20, 2021 4:55PM). As we continue to discuss how the Parties will approach linked documents, we emphasize that it is important to keep this context in mind.

The five internal document repositories for which Amazon has proposed a process to attempt to identify hyperlinks represent the document repositories that are most likely to contain relevant linked documents in this matter. This set was identified in good faith, at your request, in an effort to advance the negotiations over linked documents. In response to our request to identify Plaintiffs' internal document repositories, you state that "Plaintiffs do not know of any relevant, non-privileged information contained in linked files." Yet, as a "showing of good

---

[1] In using this example, Amazon does not waive its objections to Request for Production No. 18.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 4

faith," you identified SharePoint as your sole internal document repository. Although we appreciate this information, your response appears to conflate relevance and privilege. At this stage, the focus should be on the primary systems that Plaintiffs use that are most likely to contain relevant linked documents. If there are other such systems, please disclose them.

In hopes of moving this issue forward, we have added language that permits the Parties to meet and confer as to the identification of additional internal documents repositories, including after the entry of the stipulation and order. Otherwise, we respond to your three questions regarding Amazon's internal document repositories in turn below.

First, regarding your request to add ▮▮▮▮ as an internal document repository, the ▮▮▮▮ is not an internal document repository of the kind appropriate for this sort of linking. Put simply, it is not a place where custodians save documents like ▮▮▮▮. It is a ▮▮▮▮. Although ▮▮▮▮ uplicative of documents collected from the users themselves. Moreover, ▮▮▮▮ ▮▮▮▮ we understand that they are considerably more burdensome to retrieve in the event that Plaintiffs were to request ▮▮▮▮. Because it was designed as a ▮▮▮▮ ▮▮▮▮—not a document repository—collecting ▮▮▮▮ is a very manual process requiring significant engineering time and resources. As discussed this morning during the meet and confer, we are requesting additional information on the nature of the burden from our vendor and ▮▮▮▮. We also note that, in the same email that you cited from the investigation, counsel for Amazon conveyed the results of a sampling exercise that determined that documents in ▮▮▮▮ ▮▮▮▮.

Second, regarding your questions related to certain categories of linked documents disclosed by Amazon as part of a table provided in an email from April 2021—i.e., ▮▮▮▮ ▮▮▮▮—those terms represented a mix of particular repositories (e.g., ▮▮▮▮) and categories of link types (e.g., ▮▮▮▮) that were specific to the report provided in the email. In any set of emails, there will be a range of link types that could fit into those categories—e.g., external non-Amazon file sharing sites like box.com, GitHub code repositories, various external web pages and ▮▮▮, and so on. It is too burdensome to identify every potential link type, and any beyond the set of ▮▮ we have proposed are less commonly used and more burdensome (and potentially impossible) to collect. We note that Plaintiffs have only reluctantly agreed to identify links for SharePoint, even though Plaintiffs emails undoubtedly contain links to other sources.

**SIDLEY**

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 5

Third, we do not object in principle to an obligation to meet and confer to the extent that there is a change in a producing party's ability to identify or retrieve linked files during the course of the litigation. But it is difficult for us to agree to do so without some limiting principle. Amazon is a large company, and the scope of this litigation is very broad. The larger difficulty, however, is that it is impracticable to monitor the adoption of *any* new tool that can result in a linked document at Amazon. We suspect the same is true for Plaintiffs. We have, accordingly, proposed the following revision, "If a producing party identifies significant new internal document repositories or if a producing party's capabilities to identify hyperlinks or retrieve hyperlinked files materially changes with respect to already identified internal document repositories during the course of the litigation, the producing party shall disclose those changes to the requesting party, and the Parties will meet and confer further accordingly."

**Privilege**

*Separate Privilege Logging Protocol*

We continue to believe that privilege logging issues are better addressed outside of the ESI Stipulation as part of a separate privilege logging protocol. The respective burdens of privilege logging are difficult to assess at this early juncture and will become clearer as the Parties engage on custodians, time periods, and search methodology. At that point, privilege logging discussions will be more fruitful. Moreover, the Parties appear close to reaching an agreement on the remaining aspects of the ESI Stipulation. So we think it is misguided to force the Parties into a premature disagreement—one that will likely require Court involvement—when such a discussion is better suited for a later time. This is the approach that FTC and Amazon agreed to follow in the Prime litigation, where the ESI Stipulation, entered less than two months ago for the same parties in the same Court, says simply that "[t]he Parties will discuss in good faith the production of privilege logs." We do not understand why the same approach cannot be followed here.

We nonetheless address several proposed revisions to Plaintiffs' proposal below—and will again propose our edits in a separate privilege logging protocol.

*Metadata Fields for Redacted Documents*

In general, we agree with Plaintiffs' revisions to the required metadata fields for redacted documents as outlined in the proposed ESI Stipulation. But we disagree that any metadata log for redacted documents requires identifying the attorney(s) involved for each document.[2] The chief

---

[2] We note that "the basis for the privilege" in your proposed language appears to be separate from "the type of privilege being asserted," which we do agree to provide as part of the metadata log.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 6

benefit of a metadata log is that it can be prepared programmatically from available metadata, and there is no metadata field for the attorney(s) involved. Requiring such information would change the exercise from an automated process into a manual one, as the names of the attorneys would need to be populated manually by a human reviewer for each document withheld, where applicable. Moreover, providing this information appears especially unnecessary here, where the Parties have agreed to metadata logs only for partially redacted documents and for lesser included emails. In both cases, such information generally will be otherwise available, either from the face of the partially redacted document or as part of the log entry for the inclusive email. Relatedly, as discussed during the meet and confer this morning, we want to confirm that your request for "the basis for the privilege" as part of metadata logs is duplicative of your request for "the type of privilege being asserted." We have struck it assuming that is the case because providing more would require manual effort and defeat the benefits of a metadata log.

*Deadlines*

As addressed at the beginning of this letter, we remain concerned regarding the inclusion of fixed deadlines in the ESI Stipulation without a reliable mechanism to address unforeseen problems that may arise in the course of complying with the proposed deadlines. We believe that many of these concerns can be addressed through the addition of language in places that the Parties are not considered in violation of a deadline if they have made reasonable best efforts to comply. In the case of the deadlines for rolling productions of privilege logs, this serves as an adequate substitute for "approximately" in our prior proposal.

We have also proposed minor supplemental language relating to the Parties' clawback provision. We can agree to the 15-day notification requirement with the reasonable best effort language and with one further addition relating to redacted documents. Redacting documents can be a time-intensive process and requires attorney review. Where a portion of a document is clawed back, it requires a new production with new redacted images. Although this process typically is achievable in 15 days, it may not always be. We have proposed as an alternative that the Parties "promptly" provide redacted copies where only part of a document is being clawed back. Finally, we believe the Parties are in agreement that these provisions do not relate to or result in the waiver of privilege.

*Exclusions*

In your letter, you broadly assert, without citation, that "courts have repeatedly found" that all communications among or between Plaintiffs or any documents created by Plaintiffs are both not relevant and protected by a host of privileges and protections. The same, you say, is also "undoubtedly" true for any communications with any other executive branch offices or agencies.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 7

We simply cannot agree to such a sweeping generalization, which essentially asks Amazon to waive any right to discovery or even a privilege log.

      That said, we have been more than willing to work cooperatively with you to identify ways to reduce the privilege logging burdens for the Parties, including by providing a metadata log for partially redacted documents and by use of email threading. We are appreciative of the progress we have made in our discussions in this respect and believe it will be beneficial to all parties. In this respect, we have also proposed a number of categorical exceptions from the requirement to log documents based on comparable exceptions the FTC has agreed to in other matters, including an additional exception for post-complaint documents as was recently agreed to in the Prime litigation.

      More generally, our view is that further progress on these discussions is proving difficult largely because it is premature. As noted above, we believe it would be much more sensible for the Parties to try to reach agreement on the remainder of the protocol and postpone this discussion until the scope of discovery is clearer, as the same Parties recently agreed to do in the Prime litigation. Once the scope of discovery is better defined, the logging burdens—and the applicability of any proposed exceptions—will be much easier to assess.

      *Email Threading*

      In general, we agree to Plaintiffs' revised language regarding email threading and the requirements for privilege logging. But, for the reasons discussed above, we do not agree to include information related to the "identity of the attorney or attorneys involved (if applicable)," in the metadata log for lesser-included privileged emails. As noted above, a full log entry will be provided for the inclusive emails in the thread. And, in many cases, such information will already be reflected in the to/from/cc/bcc fields for the metadata log entries. For these reasons, we can agree to Plaintiffs' proposed language with the exception outlined above. These edits are reflected in Attachment 1.

*\* \* \**

      Thank you again for your time this morning, As discussed, we look forward to meeting and conferring again early next week.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 8

                              Sincerely,

                              Robert D. Keeling
                              Partner

RDK:

cc:    Nicole Booth
       Kristen DeWild
       Constance Forkner
       Kevin Hodges
       Ray Mangum
       Molly Terwilliger

       Milly Dick
       Michael Jo
       Susan Musser
       Daniel Principato
       Danielle Quinn
       Tim Smith
       Edward Takashima