# EXHIBIT C



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8396
RKEELING@SIDLEY.COM

February 7, 2024

**CONFIDENTIAL**

**By Email**

Emily K. Bolles
Bureau of Competition Attorney
(202) 326-3633
ebolles@ftc.gov

Re:   *Federal Trade Commission, et al. v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC

Dear Emily:

Thank you for the productive discussion during our meet and confer on January 23, 2024, and for your January 31, 2024 letter regarding Plaintiffs' revisions to the proposed ESI Stipulation and Order. I think we have made meaningful progress on several of these issues, and I address the outstanding items below. I am also attaching Amazon's revised version of the ESI proposal (Attachment 1), a redline from Amazon's ESI proposal sent January 19 (Attachment 2), a redline from Plaintiffs' ESI proposal sent January 31 (Attachment 3), Amazon's revised privilege logging stipulation (Attachment 4), a redline from Amazon's privilege logging stipulation sent January 19 (Attachment 5), and a redline from Plaintiff's privilege logging provisions from their proposal sent January 31 (Attachment 6).

**Deadlines and Compliance**

We appreciate your acknowledgment that "the parties should be able to modify deadlines without involving the Court where circumstances outside a party's control make it impossible to comply." However, your added language does not address our core concern. By requiring "agreement of all Parties," your proposal still grants either party unilateral authority to veto a reasonable request to alter a deadline. While it is true that your proposal now requires the Parties to "*consider* the request in good faith," it still places one party in the position of deciding whether or not the other's delay should result in a violation of a court order.

We believe it is important to use an objective standard that could be evaluated by the court in the event of a dispute. For that reason, we proposed "reasonable best efforts" language with respect to several of your proposed deadlines. Similarly, we do not believe that minor delays on discovery issues such as delivery of interim privilege logs or the remedying of

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 2

document imaging errors are likely to prejudice the receiving party. We, accordingly, proposed limiting relief to "material" violations. By using these well-established standards that appear routinely in agreements and that are regularly enforced by courts, we aimed to provide the modest flexibility needed under the circumstances without reinventing the wheel. *See, e.g.*, *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 2016 WL 6167914 at *5 (D. Md. 2016) (explaining that best efforts provisions "are common in private contracting as well as government contracting").

Indeed, it is hard to understand Plaintiffs' objections on this point when "best efforts" or "good faith" standards are regularly used with respect to deadlines in federal antitrust cases. *See, e.g.*, Joint Stipulation and Discovery Order at 4, *United States v. Visa, Inc.*, No. 4:20-cv-07810-JSW (N.D. Cal. filed Nov. 5, 2020) ("The Parties must make good-faith efforts to complete responsive productions"); Scheduling and Case Management Order at 7, *United States v. Quad/Graphics, Inc.*, No. 1:19-cv-04153 (N.D. Ill. filed Nov. 10, 2019) ("The Parties must make good-faith efforts to complete responsive productions"). The point is that a party should not be considered late—and in violation of a court order—unless it somehow failed to be diligent in attempting to meet the deadline. To require otherwise would put a party on the hook despite "reasonable best efforts" or "good faith efforts" to the contrary. And we could not agree to deadlines under such an unforgiving standard without extending them considerably further to allow for unexpected events.

This is especially true given the unusual number of hard deadlines that Plaintiffs have inserted where good faith and reasonable efforts ordinarily control. In large, complex antitrust litigation, there will inevitably be times when factors outside a party's control make compliance with discovery deadlines impossible. We have tried to meet Plaintiffs halfway by largely agreeing to the deadlines but qualifying them modestly. We have reinserted similar qualifying language into our current draft but our prior "reasonable best efforts" language also remains acceptable to us.

Finally, we have revised the deadline concerning reproduction of non-party productions within 10 days to clarify that the clock should run from the time the non-party consents to the reproduction.

**Search Terms**

Beyond the deadline issue, we also continue to disagree that the unnecessarily rigid and formalistic framework you have insisted upon for search term negotiation is appropriate. As we have previously explained, it departs drastically from both this Court's Model and from the terms agreed to recently in the Prime litigation. It also deviates from the *Frame-Wilson* and *De Coster* class actions before this Court. And it deviates significantly from the ESI protocols adopted by

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 3

the FTC and DOJ in other recent, major antitrust cases. Those orders—like the Model and Prime agreements—provide for a much more flexible and efficient process and demonstrate the wisdom and practicality of such an approach in a matter of this scale involving sophisticated parties on each side.

It is difficult to imagine how your proposal could work in practice. Plaintiffs recently served over 300 requests for production in a single day. Under your proposal, Amazon would—if it wishes to propose search terms—need to "disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and its intent to use technology-assisted review, if applicable" and "provide unique hit counts for each search query"—all within just 10 days of responding or objecting to the requests for production themselves. This aggressive deadline would put Amazon in the position of needing to promptly collect data, develop search terms in response to the particular RFPs, and prepare the associated hit reports, all with no assurance of how any of it will be received by Plaintiffs. Plaintiffs would then have an unspecified—seemingly unlimited—amount of time to object and propose disputed terms, at which point Amazon would have only 10 days to prepare detailed hit reports and provide information on the "nature and type" of irrelevant documents being returned by Plaintiffs' terms. That is not a reasonable, fair, or efficient process.

Plaintiffs' search term negotiation protocol is (1) a burdensome deviation from the Court's Model; (2) a significant departure from the FTC's practice in other antitrust matters of similar scale; and (3) unworkable in practice. As stated, we propose to follow the court's standard procedure on search terms set out in the model ESI agreement, and negotiate reasonable search terms from there. We again ask you to consider the concerns that we have raised and the more flexible approach we have proposed based on the Court's model.

**Previously Produced Documents**

We appreciate Plaintiffs' willingness to accept Amazon's proposed language in footnote 1. We have no objection to your proposed addition making clear that the Parties will meet and confer regarding reasonable requests for reproductions.

**Linked Files**

On linked files, there appears to be an inconsistency between your letter and your draft ESI Stipulation and Order. Your letter states that "Plaintiffs agree to the language Amazon proposed on January 19." But your draft nonetheless contains a redline adding ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ as one of Amazon's designated internal document repositories. We assume this was inadvertent. Assuming so, we believe that the parties are in agreement, but please confirm.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 4

**Privilege**

*Separate Privilege Logging Protocol*

We continue to believe that privilege logging issues are better addressed at a later juncture, outside of the ESI stipulation, as part of a separate privilege logging protocol, for the reasons provided in our January 19 letter. And we still do not understand why Plaintiffs insist on pressing forward with their joint proposal when there is ample time to address disagreements regarding the privilege and logging issues. Nonetheless, as in our January 19 letter, we address the issues raised in your letter and will again propose our edits in a separate privilege logging protocol.

*Metadata Fields for Redacted Documents*

The Court's Model states that "[r]edactions need not be logged so long as the basis for the redaction is clear on the redacted document." At your request, Amazon has agreed to provide more information in the form of a metadata log but only if it is truly a *metadata* log.

Accordingly, we continue to believe that it is inappropriate and unduly burdensome to require the metadata privilege log for redacted documents to specify the "attorney or attorneys involved." Plaintiffs claim that "[a]ny incremental burden associated with logging that information is negligible," but that is simply incorrect. As we explained in our January 19 letter, the chief purpose of a metadata log is to avoid the "make-work of a [typical] document-by-document privilege log," *DIC. v. Crowe Horwath LLP*, 2018 WL 3105987, at *14-15 (N.D. Ill. 2018), by automating the process such that documents can be logged with the push of a button. If Amazon must manually enter the name of the "attorney or attorneys involved" for all redacted documents, that burden is hardly "negligible"—and it defeats the purpose of having a metadata log in the first place. *See, e.g.*, ESI Protocol & Search Methodology Order at 19, *In re Peanut Farmers Antitrust Litig.*, No. 2:19-cv-00463-RAJ-LRL (E.D. Va. filed Feb. 10, 2020) ("[E]ach Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information.)"); Case Management & Discovery Order No. 7 at 28, *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP (S.D. Ala. filed Apr. 16, 2015) (same).

And as we have explained, including this information in the metadata log will almost always be unnecessary because the Parties have agreed to the metadata log only for redacted documents and for lesser included, privileged emails. Thus, the information Plaintiffs seek will almost always be evident by simply reviewing the produced redacted documents or by examining the full, traditional log entry for the inclusive email(s). By imposing substantial additional costs for next-to-no additional benefit, Plaintiffs' proposal on this issue is an undue

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 5

burden. As a compromise, we propose providing an indication on the log (e.g., *, esq.) to the extent that the available metadata corresponds to the attorney(s) involved.

*Waiver and Clawbacks*

We appreciate Plaintiffs' compromise on this issue and can agree to the addition of "alone" to our proposed language.

*Subject-Based Exclusions*

Regarding draft litigation filings, Plaintiffs' understanding of Amazon's position is correct, and we have accepted your proposed language on this point.

We remain confused, however, by Plaintiffs' insistence that Amazon log non-responsive, privileged documents attached to responsive documents. Plaintiffs claim that "this category is not clearly privileged," but the point of the exclusion is that these documents are *non-responsive* as well as privileged. *See, e.g.*, *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, 2019 WL 5003681 at *17 (N.D. Ill. 2019) (criticizing practice of "[l]arding a privilege log with entries for irrelevant documents" and stressing that "[a] privilege log should identify only *relevant* privileged documents that would otherwise be produced *in response* to discovery"); *Favors v. Cuomo*, 285 F.R.D. 187, 213 n.26 (E.D.N.Y. 2012) (ordering non-responsive documents removed from privilege logs). The only reason these documents appear in discovery at all is because they are bound up with relevant documents. And there is no reason either party should need to undertake the burden of separately logging documents that, by definition, have no bearing on this case—and that are privileged to boot. Indeed, such an exclusion has been applied in previous antitrust actions involving the FTC and DOJ. *See, e.g.*, Case Management Order at 16, *FTC v. Lockheed Martin*, No. 22-174-RDM (D.D.C. filed Feb. 10, 2022); Scheduling and Case Management Order at 3, *United States v. Bertelsmann SE & Co. KGaA*, No. 21-2886-FYP (D.D.C. filed December 15, 2021). Your letter offers no reason to depart from this commonsense practice.

Your letter likewise does not respond to our rationale for excluding privileged draft contracts and draft regulatory filings. As to privileged draft contracts, this type of exclusion is routinely applied in complex antitrust litigation. *See, e.g.*, Case Management Order at 9, *John Muir Health* (No. 5:23-CV-05952-PCP); Scheduling and Case Management Order at 15, *United States v. Assa Abloy AB*, No. 1:22-cv-02791-ABJ (D.D.C. filed Nov. 18, 2022); Scheduling and Case Management Order at 11, *United States v. UnitedHealth Grp.*, No. 1:22-cv-0481-CJN (D.D.C. filed March 28, 2022); Stipulation and Scheduling Order at 6, *United States v. Novelis, Inc.*, No. 1:19-cv-02033-CAB (N.D. Ohio filed Oct. 11, 2019); Scheduling and Case Management Order at 15, *United States v. Aon plc*, No. 1:21-cv-01633 (D.D.C. filed July 20, 2021); Joint Stipulation and Discovery Order at 9, *United States v. Visa, Inc.*, No. 4:20-cv-

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 6

07810-JSW (N.D. Cal. filed Nov. 5, 2020); Scheduling and Case Management Order at 12, *United States v. Quad/Graphics, Inc.*, No. 1:19-cv-04153 (E.D. Ill. filed Nov. 10, 2019). This exclusion is so common because of the nature of contract negotiation, which typically involves numerous exchanges of drafts between the parties with each incoming draft undergoing internal legal review. The drafts exchanged between the parties, to the extent they are responsive, will be non-privileged and will be produced. The same is true for internal discussions regarding the business rationale for each proposal and counterproposal. Therefore, internal drafts involving redlines and comments by counsel are not only clearly privileged but often highly duplicative of the produced materials. Plaintiffs offer no reason why the marginal benefit (if any) of logging privileged draft contracts outweighs the substantial burden of doing so.

The same goes for draft regulatory filings, which are almost invariably protected by attorney-client privilege, work-product protection, or both. And as with privileged draft contracts, regulatory filings are regularly excluded from logging in antitrust litigation involving FTC and DOJ. *See, e.g.*, Scheduling and Case Management Order at 3, *Bertelsmann* (No. 21-2886-FYP); Case Management Order at 9, *John Muir Health* (No. 5:23-CV-05952-PCP); Scheduling and Case Management Order at 15, *Assa Abloy AB* (No. 1:22-cv-02791-ABJ); Scheduling and Case Management Order at 11, *UnitedHealth Grp.* (No. 1:22-cv-0481-CJN); Stipulation and Scheduling Order at 6, *Novelis* (No. 1:19-cv-02033-CAB); Scheduling and Case Management Order at 15; *Aon plc*, (No. 1:21-cv-01633); Joint Stipulation and Discovery Order at 9, *Visa* (No. 4:20-cv-07810-JSW); Scheduling and Case Management Order at 12, *Quad/Graphics* (No. 1:19-cv-04153). Amazon is subject to numerous regulations[1] and, in a matter with discovery as broad as that already propounded by Plaintiffs, the volume of such privilege draft regulatory filings can be substantial. Your letter offers no good reason to depart from this common and commonsense practice.

---

[1] *See* Amazon, Form 10-K, https://www.sec.gov/ixviewer/ix.html?doc=/Archives/edgar/data/1018724/000101872424000008/amzn-20231231.htm (fiscal year ending December 31, 2023) (Amazon is "subject to general business regulations and laws, as well as regulations and laws specifically governing the internet, physical, e-commerce, and omnichannel retail, digital content, web services, electronic devices, advertising, artificial intelligence technologies and services, and other products and services that [Amazon] offer[s] or sell[s]. These regulations and laws cover taxation, privacy, data use, data protection, data security, data localization, network security, consumer protection, pricing, content, copyrights, distribution, transportation, mobile communications, electronic device certification, electronic waste, energy consumption, environmental and climate-related regulation, electronic contracts and other communications, competition, employment, trade and protectionist measures, web services, the provision of online payment services, registration, licensing, and information reporting requirements, unencumbered internet access to our services or access to our facilities, the design and operation of websites, health, safety, and sanitation standards, the characteristics, legality, and quality of products and services, product labeling, the commercial operation of unmanned aircraft systems, healthcare, and other matters.").

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 7

  In sum, although Amazon is happy to explain further regarding the burden and the types of regulatory filings or draft contracts that could be swept up in discovery—and Amazon can do so at our next meet and confer—we believe these two exclusions should be uncontroversial. That said, for privileged draft contracts and regulatory filings, we would be open to logging these documents but providing only an abbreviated description—*e.g.*, "privileged draft contract" or "privileged draft regulatory filing." We have included this compromise position in our attached proposal.

  Regarding our exclusion for privileged or work-product information generated after the filing of the complaint, we likewise believe its inclusion should also be uncontroversial. For one, it is part of the Court's Model—and for good reason. Without this exclusion Amazon could well be subject to an ongoing burden to log myriad unquestionably privileged documents related to this very litigation. Many such documents will be captured by search terms (or TAR) as they were specifically created as a result of the lawsuit and will contain relevant terms. This frequently leads to a disproportionate uptick in the percentage of privileged documents possessed by custodians post-complaint and, further, puts counsel for Amazon in the awkward position where every communication with a custodian may result in an additional privilege log entry. The FTC and Amazon recently agreed to such an exclusion in this very Court in the Prime litigation. And such exclusions are common in antitrust cases involving the FTC and DOJ. *See, e.g.*, Scheduling Order at 7, *FTC v. Surescripts, LLC*, No. 19-1080-JDB (D.D.C. filed Feb. 28, 2020); Scheduling and Case Management Order at 14, *Assa Abloy AB* (No. 1:22-cv-02791-ABJ); Joint Stipulation and Discovery Order at 9, *Visa* (No. 4:20-cv-07810-JSW). Your letter offers no reason to treat Amazon any differently.

  Nonetheless, in the interest of compromise, we are open to restricting our proposed exclusion to "Documents or communications dated after the filing of the complaint and privileged solely on the basis that they relate to the prosecution or defense of this Action." This framing of the exclusion is based on the order in the Google antitrust litigation, *see* Order Regarding Electronically Stored Information at 10, *Google LLC,* (No. 1:23-cv-00108-LMB-JFA) (E.D. Va. filed April 20, 2023), and we believe it should address your concerns on this issue.

  Finally, regarding our exclusion for "[a]ctivities undertaken in compliance with the duty to preserve information," your letter says that you have "repeatedly explained" your "serious concerns" regarding this exclusion. Here, we again point out that this provision is simply taken from the Court's Model and that FTC agreed to this provision just a few months ago in the Prime litigation. We see no reason to depart from the Model.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 8

*Personnel-Based Exclusions*

Consistent with our productive discussion on the privilege log protocol during the January 23, 2024 meet and confer and your January 31, 2024 letter, we agree "that it makes little sense to go through the burden of reviewing and logging communications that are routinely privileged." Ltr. at 3. It is for this reason, and as discussed on our call, that Plaintiffs' proposal as it relates to Amazon is too narrow. Plaintiffs' proposal only excludes Outside Counsel and Outside Counsel communications with Amazon In-House Counsel. It does not account for the fact that Amazon employs in-house lawyers whose role is not to advise Amazon's business units on a day-to-day basis, but rather to provide legal advice on active and potential litigation, investigations, and enforcement matters, as well as other legal functions like compliance and risk mitigation. These attorneys are performing the very same function as Plaintiffs' in-house counsel—they are "attorneys or persons acting at their direction to provide legal advice" to Amazon. *Id.* And, like Plaintiffs, their "internal communications are covered by a variety of privileges, including … attorney client privilege[] and attorney work product protections." *Id.* As such, any proposal to exclude communications from logging that does not include these in-house counsel from Amazon does not appreciably lessen the logging burden for Amazon. Rather, it would require logging of counsel communications that are privileged because they relate to the provision of legal advice, not day-to-day advising on a particular business's operations and legal issues that arise in connection with those business operations.

Accordingly, set forth below is Amazon's proposal for its logging exclusions, which excludes the Vice President and Associate General Counsel of Litigation and the Vice President and Associate General Counsel of Business Conduct & Ethics, including the lawyers who report to these individuals. Non-lawyer support staff for these in-house counsel would also be subject to the exclusion. As noted on our call, the role of Amazon's Litigation attorneys is to provide legal advice on active and potential litigation, regulatory investigations, and enforcement matters, including by providing direction and guidance to outside counsel on these matters. Likewise, attorneys working in the Business Conduct & Ethics group do not provide day-to-day business advice, but handle compliance, risk mitigation, information security, and internal investigations, among other things. Excluding these individuals from logging would significantly reduce Amazon's burden in line with the proposal the FTC seeks for its in-house lawyers. Amazon is not proposing to exclude lawyers in the role of business attorneys who do provide day-to-day advising on Amazon's business units business operations and legal issues arising from those operations. Those documents, to the extent responsive, would still be logged.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 9

We understand from our discussion and your January 31 letter that the FTC is working to compile information for Amazon in response to our request for a better understanding of some of the FTC's proposed exclusions. We will evaluate that information, including any revised language for the FTC/Plaintiff State exclusions, once we receive it.

<u>Amazon's Proposed Language for Logging Exclusions</u>

1. The Parties agree that the following privileged or otherwise protected communications shall not be the subject of discovery, need not be preserved, and need not be placed on a privilege log: Email, notes, drafts, communications, memoranda, documents, or other work product produced by or exchanged solely among and between:

    a. Outside counsel for Amazon;

    b. Outside counsel for Amazon and persons employed by or contracted with Amazon;

    c. In-House counsel for Amazon and persons employed by or contracted with Amazon;

    d. [FTC/Plaintiff State exclusions TBD]

[FN1] "In-house counsel" refers to Amazon's Vice President and Associate General Counsel, Litigation and Vice President and Associate General Counsel, Business Conduct and Ethics and the lawyers reporting to these individuals, including their support staff.

\* \* \*

Thank you for your continued attention to resolving these issues. To further facilitate their resolution, we propose a meet and confer next week.

**SIDLEY**

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 10

                                                Sincerely,

                                                Robert D. Keeling
                                                Partner

RDK:

cc:    Kevin Hodges
        Constance Forkner
        Kristen DeWild
        Molly Terwilliger
        Ray Mangum
        Manuel Valle
        Nicole Booth

        Milly Dick
        Michael Jo
        Susan Musser
        Daniel Principato
        Danielle Quinn
        Tim Smith
        Edward Takashima