# Exhibit C



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX


AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8396
RKEELING@SIDLEY.COM


March 8, 2024


**CONFIDENTIAL**


**By Email**

Emily K. Bolles
Bureau of Competition Attorney
(202) 326-3633
ebolles@ftc.gov

      Re:    *Federal Trade Commission, et al. v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC

Dear Emily:

      Thank you for your February 22, 2024 email proposing revisions to the draft ESI Stipulation and Order and the discussion during our meet and confer on February 23, 2024. I address below the outstanding issues and related follow-up items from our discussion and from Plaintiffs' March 1, 2024 letter regarding the parties' proposals for an ESI Stipulation and Order.

      **Search Terms**

      As an initial matter, we appreciate Plaintiffs' acknowledgement that its proposal for the simultaneous disclosure of custodians and search terms was impractical. We remain concerned, however, that the FTC's rigid framework for search term negotiations continues to be unworkable and intended to impose unnecessary and time-consuming burdens on Amazon. Plaintiffs' incorrectly assert that it is Amazon's position that it "does not have a responsibility to propose search terms that are reasonable and appropriate because there was a government investigation prior to this litigation." Ltr. from E. Bolles to R. Keeling (Mar. 1, 2024) at 2. Plaintiffs know that is not and has not been Amazon's position, and such statements reflect a fundamental misstating of Amazon's concerns with Plaintiffs' proposal. Amazon's position is simply that, while Amazon will undertake reasonable steps in negotiating search terms to identify responsive documents, Amazon does not need Plaintiffs' mandated steps to do so. In contrast, Plaintiffs' proposal imposes burdensome, time-consuming, and unnecessary costs that will necessarily slow down search term negotiations. Moreover, they are disconnected from the manner in which search terms are routinely, and productively, negotiated in complex cases.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 2

Plaintiffs' proposal continues to prescribe certain steps that Amazon must take before it could propose any search terms, including, for example, "identifying idiosyncratic language … utilized by a party in responsive documents and by interviewing relevant custodians about the same." The process outlined by Plaintiffs is not only time-consuming and burdensome, but also unnecessary in the circumstances of this case. As Plaintiffs well know, the parties are not starting from scratch. This litigation follows an FTC investigation into Amazon in which the FTC and Amazon already negotiated search terms and Amazon made substantial document productions. Plaintiffs have the benefit of the parties' prior negotiations related to search terms and custodians, among other topics, as well as millions of pages of Amazon's documents. In addition, Amazon has been litigating "related" cases filed well before Plaintiffs' lawsuit. In light of the parties' significant history—which included months of search term negotiations and agreements relating to the allegations in FTC's complaint—a more flexible and cooperative approach based on reasonableness and good faith efforts should govern.

In addition to the cumbersome and unnecessary process proposed by Plaintiffs for Amazon's initial search terms proposal, Plaintiffs thereafter continue to prescribe additional burdensome, time-consuming, and unnecessary steps for the process by which the parties would "negotiate" revisions to the search terms. Pursuant to Plaintiffs' proposal, it would propose additional terms and modifications to Amazon's terms and, should Amazon object to any term, it would have to provide (1) detailed hit reports, (2) a counterproposal, and (3) an explanation of the "nature and type" of the documents captured by the terms that it alleges are irrelevant. Although Amazon has repeatedly noted its willingness to provide hit reports during the course of negotiating search terms (once all or nearly all custodians are agreed upon), Amazon objects to Plaintiffs' proposal insofar as it would require Amazon to provide the "nature and type" of the irrelevant documents being returned. With complex search terms involving Boolean connectors, proximity operators, parenthetical groupings, and wildcards, as are common in matters of this size, there will be a wide range of reasons why irrelevant documents are captured. If, for example, Amazon's term returns 10,000 documents and Plaintiffs' revised term returns 10,000,000, it is unworkable to provide an explanation of the "nature and type" of irrelevant documents within the additional 9,990,000. Moreover, to identify exemplars would require document review, which would be necessary for each and every disputed term for which Amazon objects to the resulting burden. This unnecessary procedure departs from standard practice and simply cannot be done in a reasonable timeframe where the parties may be discussing search terms related to over 300 requests for production.

In practice, search term negotiations—like any kind of negotiation—are a dynamic process and require flexibility, not a rigid and one-sided framework. As seasoned e-discovery and litigation counsel, we have never, in our collective experience, negotiated search terms pursuant to a framework like this. Plaintiffs assert that its framework has been "road-tested," but

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 3

cite a *single* ESI protocol entered in the Northern District of California *nine years ago*. *See id.* at 2-3. Notably, that protocol conformed neither to this Court's Model ESI Order as it stood in 2015 nor to the current Model.

By contrast, and from the outset, Amazon has drawn its proposed framework from the Model. The Court has explained that "the model order is the model for a reason—it was 'drafted and approved by the judges of this district based on their collective experience managing numerous cases.'" *Kater v. Churchill Downs Inc.*, 2020 WL 13490764 at *2 (W.D. Wash. 2020) (citing *Minnis v. Washington*, 2023 WL 3189051 at *2 (W.D. Wash 2023)); *see also Frame-Wilson v. Amazon.com, Inc.,* 2023 WL 1433655 at *4 (W.D. Wash. 2023) (parties disputing discovery issues must show "good cause" before deviating from the Model). For this reason, the Prime agreement essentially copied the Model's negotiation framework verbatim. Stipulation Regarding Discovery of Electronically Stored Information and Order at 2-3, *FTC v. Amazon.com, Inc.*, No. 2:23-cv-0932-JHC (W.D. Wash. filed Nov. 30, 2023). Where Amazon has deviated from the Model it has done so consistent with the ESI order recently entered by this Court in the Prime litigation.

Plaintiffs have asserted, however, that a case of this scale and complexity requires more than the Model or what was agreed to in the Prime litigation. In that respect, we have reviewed the search term negotiation provisions agreed to by the FTC in its ongoing antitrust case against Meta. *See* Appendix. That framework would also be acceptable. As Amazon proposes here, the FTC and Meta stipulated to a flexible, efficient process governed by good faith and reasonableness. Unlike Plaintiffs' proposal, in the Meta ESI Order the parties agreed to meet and confer in good faith regarding development of search terms and resolution of any disputes that arose. Stipulation and Order Regarding Discovery Procedure at 5-6, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C. filed March 8, 2022).

At bottom, the Model, Prime, and Meta protocols demonstrate the practicality of simple and flexible search term negotiation provisions in ESI stipulations and orders, including those entered in large-scale antitrust litigation involving sophisticated parties. Amazon does not object to some of Plaintiffs' minor deviations from the Model, such as its clarification that the parties *may* use search terms. Our disagreement is more fundamental. Plaintiffs' proposed process sweeps far beyond a typical ESI protocol. Given where the parties are at this point, it may be time to revert to the Model or something closer to what the FTC has agreed to in these other cases.

## Deadlines and Compliance

We remain disappointed that Plaintiffs continue to insist upon imposing a series of rigid deadlines in areas where good faith and reasonableness ordinarily control. In an effort to

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 4

compromise, Amazon has been agreeable to including most of Plaintiffs' proposed deadlines—including accepting many not found in the Model. However, we must insist that these additional deadlines are limited to requiring the parties to make good faith efforts to comply. Without that modest qualification, we cannot accept deadlines Plaintiffs have created from whole cloth, especially where failing to meet them would put Amazon in violation of a Court order. Our proposal—along with our previous offer to include grace periods for Plaintiffs' proposed deadlines—represents the only serious effort by either side to compromise on this issue. By contrast, Plaintiffs have made no effort to compromise with Amazon. As explained in our February 7, 2024 letter, Plaintiffs' proposal, which requires both parties' consent to change deadlines, does not address our concern that a party could unilaterally declare that the other party violated a court order for failing to meet a deadline, even when the party made good faith efforts to comply (*e.g.*, a technological issue encountered by the party's eDiscovery vendor).

During the February 23, 2024 meet and confer, you claimed that the Model endorsed Plaintiffs' proposed deadlines. But the Model features only one ESI deadline and one privilege deadline: a 30-day timeframe for ESI disclosures in response to discovery requests and a 30-day timeframe for submitting privilege logs, respectively. The Prime agreement again followed the Model, only adopting the ESI deadline. The Model and Prime agreements contain no deadlines in the areas where we proposed good-faith qualifying language: for producing native files upon request, reproducing documents obtained under non-party subpoenas, requesting clawbacks, and providing a rolling privilege log. And of course, because the Model has a more sensible search-term negotiation framework, it has none of the deadlines Plaintiffs propose in its search term framework either. As we have made clear, we would be happy to institute the Model if Plaintiffs wish. In this case, however, Amazon has already agreed to a *stricter* deadline than the Model's lone ESI deadline, with no qualifying language. We have agreed to make ESI disclosures "[w]ithin 10 days after written responses to discovery requests made under Fed. R. Civ. P. 34 are served, but no earlier than 14 days after entry" of the Order. Similarly, we agreed to a deadline based on the Model's lone privilege deadline, also with no qualifying language: "A producing Party must provide a final privilege log no later than 30 days prior to the close of fact discovery." It is all the *other* deadlines, not found in the Model or Prime agreements, that you are proposing which we cannot agree to unless they are limited to a requirement to make good faith efforts.

Like the Model and Prime agreements, the Meta litigation also featured minimal deadlines in its ESI order. The only deadline that the FTC and Meta agreed to was a 10-day period for designating ESI liaisons. Stipulation and Order Regarding Discovery Procedure at 2, *FTC v. Meta Platforms, Inc.* (No. 1:20-cv-03590-JEB). Plaintiffs also referred us to the ESI Orders in *Frame-Wilson* and *De Coster* to support its position. But both cases featured far fewer

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 5

deadlines overall, and neither case featured any deadlines in the areas where we proposed qualifying language.[1] Neither ESI order supports Plaintiff's position.

We have tried to accommodate Plaintiffs' desire for more deadlines in this case. But we can only go so far, especially in light of the challenging nature of the electronic discovery process, as recognized by the more reasonable and flexible provisions in these prior analogous agreements. While Plaintiffs claim rigid deadlines are required in a case of this magnitude, it is for precisely this reason that reasonableness and good faith should prevail. That is, when dealing with the volume of documents at issue, rigid deadlines are ripe for error. Accordingly, your arguments in favor of manufacturing hard deadlines (without any acknowledgement of a parties' good faith and reasonable efforts) in areas where they do not typically exist are simply unfounded and unpersuasive. Amazon's proposed good faith language would not, contrary to Plaintiffs' claim, give a party the unfettered right to extend its deadlines whenever it desires, and it in no way suggests that Amazon "intends to miss the deadlines in the ESI Stipulation and Order." Ltr. from E. Bolles to R. Keeling (Mar. 1, 2024) at 2-3. Instead, it recognizes the uncertainty and challenges that often arise during discovery and allows for an extension where, despite a party's good faith efforts, compliance with a hard deadline is not possible.

**Privilege**

*Separate Privilege Logging Protocol*

As we have from the outset, we continue to believe that privilege logging issues are better addressed at a later juncture, outside of the ESI stipulation, as part of a separate privilege logging protocol. Our negotiations to this point have vindicated that position. We have nearly reached agreement on all aspects of the ESI stipulation, with the exception of the two issues outlined above. And our most recent meet and confer further clarified that the parties are much closer to agreement on ESI than privilege. For instance, during the meet and confer, Plaintiffs represented that they still do not understand the scope of Amazon's in-house counsel designations and Amazon's corporate structure more generally. Amazon, in turn, asked clarifying questions regarding the intended scope of Plaintiffs' proposed logging exclusion for certain common interest communications. It is clear that both parties are still working to understand the other's positions regarding privilege logging, which is not the case regarding ESI.

Nonetheless, as in our previous letters, we address the privilege issues currently in dispute and will again propose our edits in a separate privilege logging protocol. As stated during

---

[1] Plaintiffs also stated that the ESI Orders in *Frame-Wilson* and *De Coster* only allowed the parties to agree to an earlier deadline than what the Orders provided. In *De Coster,* however, the parties were enabled to extend deadlines by agreement. *Id.*

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 6

our latest meet and confer, Amazon does not agree to a piecemeal approach to privilege logging negotiations. Either the parties will reach agreement on the entire privilege log protocol, or the parties will proceed without such a protocol.

*Metadata Fields for Redacted Documents*

In connection with Plaintiffs' proposed language reserving their right to request the identity of the attorney(s) involved with any documents, we have added language to clarify that the parties must only comply with reasonable requests. As we explained during the meet and confer, both parties should understand that, in some circumstances, the name of the attorney(s) involved will be unknowable. Upon reasonable request, we will make good-faith efforts to identify the attorney(s). In those circumstances where a more specific attorney cannot be identified, however, we will indicate on the log that the attorney(s) involved was "Amazon Legal" or "Outside Counsel" or similar.

*Logging Exclusions*

Federal Rule 26(b)(5) requires that litigants "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection." The default method for complying with this Rule is to produce a traditional privilege log of documents withheld on the basis of privilege. The parties can agree to a different method of substantiating the privilege, but agreement is required. And where both parties are producing documents, that means the agreement must fairly address the burdens of logging for both sides.

Plaintiffs contend that "Amazon has not once explained why it opposes Plaintiffs' proposal to exclude from privilege logging FTC's internal documents and communications." Ltr. from E. Bolles to R. Keeling (Mar. 1, 2024) at 4. That is not the case, as Amazon has repeatedly emphasized that Plaintiffs' logging proposal is entirely lopsided. It would exclude from logging all communications between FTC attorneys and any of its employees or contractors—effectively erasing *all* privilege logging obligations for the FTC, and would extend this logging exclusion to the Plaintiff States. Conversely, with respect to Amazon's logging obligations, Plaintiffs' proposal would only exclude (1) communications solely among Amazon's outside counsel and (2) communications solely between Amazon's outside counsel and in-house counsel. Of course, those documents would *only* come into play if Amazon's outside counsel or in-house counsel were *themselves* a custodian. As Plaintiffs clarified on our February 23 meet and confer, any communication from an Amazon business custodian would be ineligible for either exclusion—even where those communications are with Amazon's outside counsel or in-house litigation counsel and concern matters related to this litigation. It is no exaggeration to say that Plaintiffs' proposed exclusions could be collectively a null set for Amazon, while they would simultaneously exclude nearly all of Plaintiffs' privileged documents

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 7

from logging requirements. Thus, Plaintiffs' proposal is not fair or proportional, and Amazon cannot agree to such a one-sided proposal.

In addition, Amazon cannot agree to Plaintiff's broad exclusion of all communications involving private plaintiffs and non-litigating states. We do not believe that common interest privilege will apply as broadly as Plaintiffs claim with respect to these parties. In order to assess those claims, Plaintiffs should log such communications.

Otherwise, Amazon's proposal to exclude all communications involving Amazon's outside counsel and in-house litigation counsel would capture a comparable set of documents to those the FTC seeks to exclude from logging and result in a meaningful and equitable exclusion of clearly privileged documents. Indeed, Plaintiffs' proposal fails to account for an area where the comparison between counsel for the parties is truly apples to apples. Amazon's in-house litigation counsel are litigators and do not operate as line-of-business attorneys. They perform a litigation function and are directly comparable to Plaintiffs' litigation counsel.[2] To be clear, Amazon's proposed exclusion would *not* extend to communications involving only its in-house line-of-business attorneys. Amazon's proposal would still result in logging responsive communications between employees, contractors, and business attorneys who provide day-to-day advising on Amazon's business units, business operations, and legal issues arising from those operations.

At the latest meet and confer and in your March 1, 2024 letter, Plaintiffs asked for more information about Amazon's February 7, 2024 proposal regarding privilege log exclusions. Specifically, Plaintiffs asked how many attorneys are captured by Amazon's proposed exclusion for Amazon's Vice President and Associate General Counsel, Litigation, and the Associate General Counsel for Business Conduct & Ethics, including the attorneys reporting to these individuals. By contrast to Plaintiffs' definition of in-house counsel as defined in the Protective Order, which would include the approximately 915 attorneys employed by Amazon in the United States, the exclusions that Amazon proposes return numbers that—respectively—are 81 and 15 attorneys, and they do not exclude communications involving Amazon's General Counsel.

Plaintiffs also asked us for more information on the roles of the two groups. As previously described, the role of Amazon's Litigation attorneys is to provide legal advice on active and potential litigation, regulatory investigations, and enforcement matters, including by

---

[2] Plaintiff's letter asserts that "it is undisputed that many of Amazon's in-house counsel are copied on non-privileged communications." This is a red herring. It is not Amazon's position that all documents involving in-house counsel will be deemed privileged. Non-privileged communications involving in-house counsel will be produced, including communications with Amazon's Vice President and Associate General Counsel, Litigation, and the Associate General Counsel for Business Conduct & Ethics. What we are seeking to exclude from the log are privileged communications involving those in-house counsel.

# SIDLEY

*Federal Trade Commission, et al. v. Amazon.com, Inc.*
No. 2:23-cv-01495-JHC
Page 8

providing direction and guidance to outside counsel on this and the related matters. The role of these lawyers is not to advise Amazon's business units on a day-to-day basis, but rather to manage and provide legal advice to Amazon on investigations and active and potential litigation. The Business Conduct and Ethics team administers the Company's Code of Conduct, which involves investigating allegations of improper conduct by employees. The team does not handle antitrust regulatory filings or provide legal advice on business matters related to antitrust issues. And as with the litigation attorneys, the attorneys on the Business Conduct and Ethics team do not advise Amazon's business units on a day-to-day basis. Thus, all of these lawyers perform functions similar to Plaintiffs' litigation counsel and would encompass privileged communications similar in nature to those Plaintiffs' seek to exclude.

Plaintiffs also reject Amazon's proposed exclusions of non-responsive, privileged documents attached to responsive documents, and documents or communications dated after the filing of the complaint that are privileged solely on the basis that they relate to the prosecution or defense of this action. As explained in our February 7, 2024 letter, these exclusions are common, and we based the latter exclusion on both the Model and the Prime agreement. Plaintiffs also continue to strike the Model's language on activities undertaken in compliance with the duty to preserve information, which was agreed to in Prime, *Frame-Wilson*, and *De Coster*. We had hoped that these would represent common ground and common-sense exclusions to which all parties could agree.

\* \* \*

Thank you for your continued attention to resolving these issues. To further facilitate their resolution, we propose a meet and confer next week.

Sincerely,

Robert D. Keeling

# APPENDIX

**Meta Search Terms Negotiation Provisions**

Stipulation and Order Regarding Discovery Procedure

Case 1:23-cv-00108-LMB-JFA   Document 108   Filed 03/08/22   Page 5 of 18

### III. COLLECTION AND REVIEW

1.  The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2.  The parties will meet and confer in good faith regarding search terms and/or use of technology-assisted review or a similar tool (collectively "TAR") to identify responsive documents. If a requesting party objects to the sufficiency of the producing party's terms, the requesting Party may propose modifications or a list of additional terms. The parties will meet and confer in good faith regarding any proposed changes. Any disputes over search terms that cannot be resolved between the parties during a meet and confer may be consequently raised with the Court.