THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, et al.,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

Case No. 2:23-cv-01495-JHC

**AMAZON'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .............................................................................................................................. 1

BACKGROUND ................................................................................................................................ 2

I. Use Of Signal By Certain Amazon Personnel ........................................................... 3

II. Preservation Notices ................................................................................................... 3

III. Custodial Diligence ..................................................................................................... 4

IV. Disclosure To The FTC .............................................................................................. 5

V. Cooperation With The FTC ....................................................................................... 6

VI. Enterprise Wickr ......................................................................................................... 7

ARGUMENT ...................................................................................................................................... 8

I. The Requested Materials Are Privileged. ................................................................. 8

II. Plaintiffs Fail To Justify Piercing The Privilege. ..................................................... 8

    A. Plaintiffs cannot show that relevant or material evidence has been lost. ................ 9

    B. Amazon timely issued preservation notices and legal guidance, and timing concerns do not support discovery of privileged contents. ................................... 11

    C. The relief requested is improper. ............................................................................ 12

    D. Plaintiffs have not demonstrated a need for privileged materials. ....................... 14

CONCLUSION ................................................................................................................................ 15

AMAZON'S OPPOSITION TO PLAINTIFFS'  
MOTION TO COMPEL - i  
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP  
ATTORNEYS AT LAW  
1301 SECOND AVENUE, SUITE 3000  
SEATTLE, WASHINGTON 98101  
TEL +1.206.274.6400   FAX +1.206.274.6401

# TABLE OF AUTHORITIES

**Cases**

*Agne v. Papa John's Int'l*,
   2012 WL 12882903 (W.D. Wash. 2012) ................................................................. 11

*Al Otro Lado, Inc. v. Wolf*,
   2020 WL 4432026 (S.D. Cal. 2020) ................................................................. 10, 14

*Allen v. Purss*,
   2022 WL 17733679 (D. Or. 2022) ......................................................................... 12

*AMC Tech., LLC v. Cisco Sys., Inc.*,
   2013 WL 3733390 (N.D. Cal. 2013) ...................................................................... 12

*Day v. LSI Corp.*,
   2016 WL 10352481 (D. Ariz. 2016) ...................................................................... 11

*In re Cathode Ray Tube Antitrust Litig.*,
   2023 WL 5667882 (N.D. Cal. 2023) ...................................................................... 14

*In re Hitachi Television Optical Block Cases*,
   2010 WL 11748027 (S.D. Cal. 2010) ....................................................................... 8

*Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*,
   2013 WL 5311292 (S.D. Ohio 2013) ....................................................................... 8

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
   2022 WL 1694428 (S.D. Cal. 2022) ................................................................. 12, 13

*Raynor v. District of Columbia*,
   2020 WL 13603997 (D.D.C. 2020) ........................................................................ 13

*Shenwick v. Twitter, Inc.*,
   2018 WL 833085 (N.D. Cal. 2018) ........................................................................ 12

*Stevens v. Brigham Young Univ. – Idaho*,
   2020 WL 7366318 (D. Idaho 2020) ....................................................................... 10

*Thomas v. Cricket Wireless, LLC*,
   2020 WL 7344742 (N.D. Cal. 2020) ...................................................................... 13

*United Illuminating Co. v. Whiting-Turner Contracting Co.*,
   2020 WL 8611045 (D. Conn. 2020) ....................................................................... 13

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - ii
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*United States v. Bauer*,
    132 F.3d 504 (9th Cir. 1997) .................................................................................................. 8

*United States v. Cmty. Health Network*,
    2023 WL 4761664 (S.D. Ind. 2023) ..................................................................................... 13

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ............................................................................................... 8

**<u>Rules</u>**

Fed. R. Civ. P. 37(e) ........................................................................................................................ 9

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - iii
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# INTRODUCTION

Plaintiffs paint a misleading picture of Signal use by Amazon personnel in an attempt to compel discovery of privileged documents. As Plaintiffs know, the Signal messaging application was not a substitute for Amazon's detailed written communications. Rather, it was a secure and informal means of short-form messaging that certain employees began using following a broadly-publicized incident in which Jeff Bezos's phone was hacked by agents of a foreign government. Despite the FTC's best efforts to malign it, that use was an appropriate response to the hacking incident: Signal and similar secure messaging applications are widely used—including by numerous federal and state actors—precisely because they are more secure than ordinary text-messaging applications.

There is also no evidence, despite the FTC's best efforts to suggest otherwise, that Amazon personnel used Signal to discuss the business practices at issue in this case. The FTC knows this because they deposed Amazon's executives about their use of Signal and, at Amazon's invitation, inspected work-related Signal conversations from the start of Signal use following the hacking incident through May 2022. Amazon then produced the Signal messages Plaintiffs requested from those inspections and offered additional inspections and productions. As a result, Plaintiffs possess, or have been offered access to, virtually all the information Amazon has on this topic. That information reinforces the executives' legitimate use of Signal, and provides no indication that Signal was used to conceal or spoliate evidence for this case.

The only thing Amazon has declined to disclose are privileged communications with counsel. Plaintiffs do not dispute that these materials are privileged, and their motion does not justify piercing the privilege, for four reasons: First, courts facing similar requests have required a predicate showing that responsive or material communications were likely deleted, which Plaintiffs here cannot make. Second, while Plaintiffs complain about the timing of certain preservation notices and guidance, those complaints do not support discovery of their contents. Third, courts have ordered lesser alternatives that protect the privilege—such as disclosure of the

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 1
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

recipients and dates of preservation notices and holding a corporate deposition on preservation—which Amazon has already provided here. Fourth, Plaintiffs have not demonstrated that discovery of privileged materials is necessary to litigate preservation in this case.

## BACKGROUND

As of 2022, approximately 40 million people use Signal. *See* Ex. 1 at 2.[1] The application's popularity has risen sharply, from approximately 500,000 users in 2019. *See* Ex. 2 at 3. According to public reports, countless federal and state officials use Signal to discuss work. *See* Ex. 3. Officeholders in many Plaintiff States communicate with employees over Signal. *See id.* The U.S. Senate and the European Commission (the E.U.'s antitrust regulator) explicitly endorse the use of Signal for work. Exs. 4 & 5. Meredith Whittaker—the president of the non-profit Signal Foundation, whose mission is to protect user privacy—even served as an official advisor to FTC Chair Lina Khan. *See* Ex. 6 at 2.

Signal is neither owned nor operated by Amazon. It is a free, publicly available, and secure messaging application. *See* Ex. 7. Anyone can download Signal onto a mobile phone or other personal device. Signal ensures a user's privacy and prevents hacking through end-to-end encryption. Signal messages are stored only on the devices participating in a conversation, and not on any server or other location.

Like WhatsApp and other popular messaging applications, Signal has an ephemerality feature (sometimes called the disappearing message or "DM" feature). This feature allows users to set the time that messages will remain visible in each conversation. If a user turns the feature on, subsequent messages in the conversation will disappear after a specified amount of time, until the feature is turned off. The feature can be enabled or disabled by any participant to the Signal conversation.

---

[1] Exhibits filed in support of this opposition are attached to the Declaration of Kosta S. Stojilkovic and are cited as "Ex. __." Citations to Plaintiffs' Motion to Compel are cited as "Mot. __," and exhibits attached to the declaration in support of the motion are cited as "Mot. Ex. __."

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 2
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

### I. Use Of Signal By Certain Amazon Personnel

As Plaintiffs recognize, Amazon "famously uses dense six-page memos" to discuss business. Mot. 1. To Amazon and its founder Jeff Bezos, "Well structured, narrative text is what we're after . . . because the narrative structure of a good memo forces better thought and better understanding." Ex. 8 at 2. Thus, many Amazon business meetings begin with the distribution of a six-page document to attendees, who read it before debating its merits. *Id*. at 1. Their conclusions are typically memorialized in communications on Amazon's centrally-managed systems, including email and Chime (an Amazon conferencing and messaging application). No one claims that Amazon failed to preserve such communications. Indeed, Amazon already has produced to the FTC more than 1.7 million documents and more than 100 terabytes of data from numerous platforms and devices.

Signal has no part in Amazon's practice of detailed writing and discussion. Instead, certain Amazon employees—like many of us—also occasionally texted each other on their personal phones, both for personal and work reasons. That practice evolved, however, after Jeff Bezos's cell phone was hacked in 2018 and, by early 2019, that hack was linked to a foreign government. *See* Ex. 9 at 2–4; Ex. 10 at 4–5. As a result, in light of the demonstrated need for its enhanced security features, Mr. Bezos started using Signal on his personal phone, and certain Amazon executives followed suit. *See* Ex. 11 (Jassy) at 304:2–305:4; Mot. Ex. F (Bezos) at 277:3–16. For these individuals, just like other short-form messaging, Signal was not a means to send "structured, narrative text"; it was a way to get someone's attention or have quick exchanges on sensitive topics like public relations or human resources. As Mr. Bezos testified, "[t]o discuss anything in text messaging or Signal messaging or anything like that of any substance would be akin to business malpractice. It's just too short of a messaging format." Ex. 12 at 269:13–17.

### II. Preservation Notices

The FTC issued a preservation letter to Amazon in June 2019. Mot. Ex. K. The letter stated that the FTC was investigating Amazon's "online retail sales and distribution," but provided no

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 3
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

specificity into what aspects of this broad topic the agency might be scrutinizing. *Id*. After receiving this letter, Amazon sent preservation notices to more than 100 employees. Mot. Ex. D at 5–9. The FTC followed up with a more formal letter, known as a Voluntary Access Letter ("VAL"), in August 2019, that included an equally broad range of topics and also encompassed specific requests for information about Amazon's sale of Apple products (a topic that ultimately did not become part of this case). *See* Ex. 13.

In February 2020, the FTC issued a formal request for documents and information, known as a Civil Investigation Demand ("CID"), that provided further indication of the agency's focus. At that time, Amazon issued another round of preservation notices. *See* Mot. Ex. D. at 3–5. Mr. Bezos received a preservation notice in April 2020. *See id.* at 3. He had previously received preservation notices in other matters, and Amazon was preserving his communications on centrally-managed systems long before the FTC's investigation.

After lengthy negotiations with the FTC about the scope of the CID in Spring 2020, Amazon issued a third wave of preservation notices that June. *See id.* at 3–5. In all, Amazon issued preservation notices to approximately 400 employees. *See id.* at 5–9. The FTC and Amazon ultimately agreed that Amazon would collect documents from 133 of those employees. *See id.* at 3–5. Collections were not limited to centrally-managed systems like email and Chime; Amazon also forensically imaged 143 computers and 19 personal phones. *See id.* at 15–19.

### III. Custodial Diligence

Amazon started gathering information from potential custodians before the 133 custodians were finalized. During that diligence—made more difficult in the early months of the COVID-19 pandemic—Amazon's counsel managing the collection process learned that a minority of custodians at times used Signal to communicate about work. Many only used Signal for non-substantive purposes (such as scheduling, travel, or to prompt someone to check their email) or for a narrow range of issues clearly unrelated to the CID (*e.g.*, security or issues in foreign countries); for a few others, work-related Signal messages were no longer available to be collected. When

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 4
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

Amazon's counsel learned that a custodian used Signal to discuss work-related matters, counsel communicated with that custodian about use and preservation of Signal messages. Mot. Ex. D at 10–14. These preservation and collection efforts had to be taken on an individual basis because Signal is not an enterprise-managed application, and, unlike email, could not be preserved via Amazon's IT systems.

In late September 2020, the FTC and Amazon finished negotiating parameters for production of documents and data. Amazon also issued written legal guidance to its entire senior executive team regarding use of ephemeral messaging applications. Mot. Ex. M. Amazon continued to advise custodians on messaging applications and their preservation obligations after this date. *Id.* (logging privileged legal guidance issued between October 2020 and March 2022). Amazon even provided executives with explicit instructions on how to disable Signal's DM feature—instructions that have been produced to the FTC. Mot. Ex. N.

### IV. Disclosure To The FTC

While the investigation that led to this case was still ongoing, the FTC commenced a separate investigation into Amazon's proposed acquisition of MGM. Amazon determined that certain custodians in the MGM investigation possessed potentially responsive Signal messages. As a result of Signal's encryption technology, Amazon developed and implemented special methods in collaboration with its collections vendor to capture Signal messages by scrolling through conversations and taking screenshots of all work-related messages on a custodian-by-custodian basis. Amazon repeated this collection process as time passed. And Amazon produced responsive messages to the MGM investigation to the FTC.

On February 14, 2022, in connection with the MGM investigation, Amazon formally disclosed to the FTC that some custodians occasionally used Signal to discuss matters related to the acquisition. *See* Ex. 14. Mr. Bezos, Andy Jassy, Jeff Blackburn, and Mike Hopkins—all of whom are explicitly named in the FTC's motion—were identified by name as Signal users in that disclosure. *Id.* at 3 n.3. Given Signal's ephemeral messaging feature, Amazon also acknowledged

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 5
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

that "it is possible that some responsive communications were not available for collection and production," but that any such hypothetical losses would have been "a *de minimis* percentage of the overall production universe." *Id.* at 4. Amazon included these statements in its certification of substantial compliance, where such disclosures are typically made. *Id*.

On March 4, 2022, Amazon disclosed the use of Signal to the FTC team investigating this matter—but, unlike in the MGM investigation, no collected Signal messages were responsive here. Mot. Ex. D at 9.

**V.   Cooperation With The FTC**

The FTC eventually subpoenaed Amazon for additional information about the company's preservation practices. In response, Amazon produced numerous policies related to document preservation, the use of personal devices for work, and related topics. Amazon also identified the dates and recipients of its preservation notices, the identities of custodians who occasionally used Signal, and the dates when Signal collections occurred. Amazon also provided a privilege log of legal guidance about Signal. And it prepared a corporate witness to provide sworn testimony on these topics, which the FTC took in October 2022. Amazon also logged potentially work-related Signal conversations, including any changes in DM settings in each conversation.

To address the FTC's questions, Amazon went above and beyond its legal obligations and invited FTC staff to outside counsel's offices to review the entirety of collected Signal conversations in which DM had been enabled, without regard to whether those messages were responsive to the FTC's document requests. That is, Amazon allowed the FTC to review hard copies of Signal messages to see what the custodians were discussing, and in what depth, regardless of what those messages were about. The inspections occurred throughout the investigation, and ultimately encompassed more than 2,900 screenshots.

The FTC also took sworn testimony from Amazon executives about their Signal use, including Mr. Bezos, Mr. Jassy, and Mr. Blackburn, and five others. *See, e.g.*, Ex. 12 (Bezos) at 268:17–24 ("I've used Signal for data security, you know, very personal [and] sensitive personnel

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 6
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

issues. Occasional sensitive PR issues. And, you know, and very minor things, like somebody will maybe say, Don't – don't forget to read this e-mail. Almost the way you might use text messaging or something for casual, I'm going to be ten minutes late to the meeting, that sort of thing."); Ex. 11 (Jassy) at 304:22–305:4 ("And Signal, as an app, does endpoint-to-endpoint encryption, which meaningfully decreases the chance that some third party can intercept a communication or a message, so that was I think for—I didn't use it for most or all of my communication, but for—for information that we thought was potentially sensitive if it somehow got intercepted, that was when we chose to use it."); Mot. Ex. G (Blackburn) at 202:21–24 ("I started—it's the beginning of 2019, around there. It was related to Jeff. He likes security and wanting us to have a more secure way to text.").

Amazon's cooperation has continued since Plaintiffs filed suit. When Plaintiffs requested production of a fraction of the screenshots the FTC had previously inspected, Amazon agreed. *See* Ex. 15. Amazon also agreed to produce corporate policies on preservation through December 2023. *See* Ex. 16 at 4. And Amazon agreed to produce additional non-privileged documents related to ephemeral messaging for custodians in this case once those individuals are identified by the parties. Mot. Ex. R at 5. And Amazon has offered both an inspection of any collected Signal message postdating the FTC's prior inspections and a targeted production of such messages. In sum, as a result of Amazon's transparency, the only material information about Signal that Amazon has not shared with Plaintiffs is the privileged guidance provided by its attorneys.

**VI.   Enterprise Wickr**

During its diligence and communication with the FTC, Amazon acquired a messaging application called Wickr. Like Signal, Wickr is a secure, end-to-end encrypted messaging application. But unlike Signal, the enterprise version of Wickr implemented at Amazon allows the company to automatically retain all conversations for custodians on litigation hold. As it rolled out the enterprise version of Wickr, Amazon provided further legal instructions to employees. *See* Mot. Ex. M; Mot. Ex. P.

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 7
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## ARGUMENT

"[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). Plaintiffs' motion does not justify piercing the privilege.

### I. The Requested Materials Are Privileged.

The litigation holds and other legal advice Plaintiffs seek are privileged. Here, Plaintiffs agree that, "as long as certain conditions are met, the general rule is that document preservation notices are privileged and protected as work product." Ex. 17 at 12. The same is true of the legal guidance related to those preservation notices. As noted in Amazon's privilege log, this legal guidance addresses messaging applications generally, the use of Signal particularly, and Amazon's efforts to implement Wickr. Mot. Ex. M. These documents contain legal advice prepared and disseminated by Amazon's attorneys under attorney-client privilege. Such materials are privileged. *See, e.g.*, *In re Hitachi Television Optical Block Cases*, 2010 WL 11748027, *3 (S.D. Cal. 2010) (litigation holds are "presumptively privileged"); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (confidential legal advice is privileged).

### II. Plaintiffs Fail To Justify Piercing The Privilege.

Attorney-client privilege is only breached in exceptional circumstances. Plaintiffs point to some courts' willingness to entertain production upon a preliminary showing of spoliation. But "whether a 'preliminary showing' of spoliation has been made is necessarily a fact-based inquiry" that considers "proportionality and reasonableness." *Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*, 2013 WL 5311292, *4 (S.D. Ohio 2013). Speculation that evidence has been spoliated is insufficient. *Id.* Here, Plaintiffs cannot make more than a speculative showing, and fail to justify the discovery of privileged documents.

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 8
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

### A. Plaintiffs cannot show that relevant or material evidence has been lost.

The duty to preserve reaches only relevant documents. *See* Fed. R. Civ. P. 37(e). From the thousands of screenshots Plaintiffs have reviewed, they identified only three purported instances in which Amazon personnel used Signal to talk generally about "antitrust and competition-related business topics." Mot. at 8. None of those messages suggest that relevant, let alone material, evidence has been lost.[2]

The first instance shows an employee sharing a news article about other technology companies. Mot. Ex. H (citing Ex. 18). The underlying article does not even mention Amazon. *See* Ex. 18. The second instance shows a public-relations employee sharing an article about Amazon's advertising practices with Jeff Bezos, an attorney, and another public-relations employee. Mot. Ex. J (citing Ex. 19). That article mentions regulatory investigations into Amazon, but there is no discussion of the article—and certainly none of the underlying advertising practices—in the Signal conversation. *See* Ex. 19. In the third instance, Dave Clark—a former executive who oversaw Amazon's logistics operations at the time—advised Jeff Bezos that Amazon had revised its contract with USPS and the contract was awaiting approval from USPS's Board of Governors. Mot. Ex. I. The two do not discuss details, which makes sense because Amazon's substantive decision-making on these topics was memorialized in documents produced to the FTC. Exs. 20–23.

Plaintiffs also note, and even paste into their motion, a screenshot showing that the DM feature was enabled in a Signal conversation between two executives, Mot. at 8–9, days after one of them received an email from a company attorney with the words "FTC investigations" in the subject line. But the email in question *had nothing to do with* the FTC investigation that led to this case. Indeed, neither of these executives (who work in M&A and not in Amazon's business operations) had even received a preservation notice for this FTC investigation at the time. Thus,

---

[2] Some cases cited in Plaintiffs' brief look to materiality, while others look to relevance. Amazon addresses both standards in this opposition.

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 9
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

their exchange has no bearing on Plaintiffs' request for production of preservation notices and legal guidance in the investigation that led to this case.

The screenshots Plaintiffs identify fall short of demonstrating that Amazon personnel used Signal to discuss the matters at issue here. This case concerns certain specific Amazon business practices. Am. Compl. ¶¶ 4–7, 13–30. If the FTC had seen Signal messages containing material discussion of those business practices in the 2,900 screenshots they inspected, or there was any hint that such messages ever existed in the hours of testimony they took, they would have mentioned that in their motion. In fact, there is no evidence that Amazon personnel engaged in such discussions on Signal. As a result, contrary to the evidence, Plaintiffs ask this Court to speculate that the absence of any such messages means that they disappeared. Yet the equally logical explanation—made more compelling by the available evidence—is that such messages never existed.

Finally, Plaintiffs rely on anonymous sources in a 2022 Wall Street Journal article to claim that Amazon executives used Signal to communicate about "antitrust." *See* Mot. at 1, 2, 9 (citing Mot. Ex. A). Even these anonymous sources—which only surfaced *after* Amazon disclosed Signal usage to the FTC—do not suggest that employees used Signal to discuss the practices at issue in this case. Reliance on that vague, anonymous characterization, particularly balanced against the more than 2,900 Signal screenshots the FTC has examined in detail, strongly suggests that Plaintiffs have no evidence that Signal use was relevant or material to this case.

The record here is very different than in the cases cited by Plaintiffs. In *Stevens v. Brigham Young University – Idaho*, the Court found that plaintiff's destruction of *all* of her cell phone data—after she had "selectively" printed 800 relevant text messages from the phone—was evidence of spoliation. 2020 WL 7366318, *1, *4 (D. Idaho 2020). In *Al Otro Lado, Inc. v. Wolf*, a government official's practice of shredding the hand-written notes he took during daily operational meetings spanning more than two years justified a preliminary showing of spoliation (but not the production of hold notices to the opposing party). 2020 WL 4432026, *1–3, *5 (S.D.

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 10
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

Cal. 2020). And in *Agne v. Papa John's International*, the court found that the defendant in a putative class action ordered a third-party vendor to destroy relevant evidence (specifically the lists they used to contact alleged class members as well as any complaints received for sending those text messages), which "seriously impacted the Plaintiff's ability to identify relevant class members." 2012 WL 12882903, *3 (W.D. Wash. 2012). Here, Plaintiffs can only speculate—contrary to the evidence—that Signal use was relevant and material to their case, and their speculation is insufficient for the Court to make a preliminary finding of spoliation.

        **B.**    **Amazon timely issued preservation notices and legal guidance, and timing concerns do not support discovery of privileged contents.**

Plaintiffs' motion places disproportionate weight on the timing of certain events. For example, Plaintiffs assert that Amazon's preservation notice to Mr. Bezos was untimely. Mot. at 10. But Amazon understandably did not issue preservation notices to everyone in the company upon first learning of the FTC's investigation. *See, e.g.*, *Day v. LSI Corp.*, 2016 WL 10352481, *4 (D. Ariz. 2016) ("Day has not provided any authority that required LSI to issue a universal litigation hold . . . ."). And, aside from including Amazon's sale of Apple products among the covered topics—a corporate relationship about which Mr. Bezos has limited (if any) unique knowledge—the FTC retained its incredibly broad scope in the August 2019 VAL. Ex. 13. It was not until the FTC and Amazon began constructive discussions over the agency's CID that Amazon gained material insight into the focus of the FTC's investigation. At that time, Amazon issued a preservation notice for this investigation to Mr. Bezos—and he had already received preservation notices in other matters and his documents and communications on Amazon's systems were already being preserved.

Plaintiffs also contend that Amazon was obligated to issue custodial questionnaires and begin custodial interviews immediately upon receipt of the June 2019 preservation letter. Mot. at 10–11. But Amazon could not be expected to do so based only on the understanding that the FTC was investigating Amazon's "online retail sales and distribution," Mot. Ex. K. at 1, because this is

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 11
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

tantamount to saying that the agency was investigating *the entirety of Amazon's retail* business. A preservation letter should inform a counter-party *what* it needs to preserve, not suggest that *everything* be preserved on an ongoing basis. *AMC Tech., LLC v. Cisco Sys., Inc.*, 2013 WL 3733390, *3 (N.D. Cal. 2013) ("Requiring a litigant to preserve all documents, regardless of their relevance, would cripple parties who are often involved in litigation or are under the threat of litigation.").

In any event, the timing of Mr. Bezos's preservation notice, custodial questionnaires, and ESI collections is immaterial to the relief requested here. Amazon has already disclosed the dates when company personnel, including Mr. Bezos, received preservation notices, and when custodial interviews and ESI collections occurred. Even if Plaintiffs' complaints about the *timing* of those events had merit (and they do not), they would not justify disclosure of the privileged *contents* of preservation notices and other legal guidance. *See MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2022 WL 1694428, *3 (S.D. Cal. 2022) ("the contents of the litigation holds will shed no light on the timing of the holds themselves or on the separate and larger issues surrounding Plaintiffs' ESI retention policies and practices").

**C.     The relief requested is improper.**

Even if Plaintiffs were able to make a preliminary showing of spoliation, "[a]ny concerns that Plaintiffs have about spoliation can be addressed through means other than forcing Defendants to reveal attorney-client privileged documents or documents protected by the work product doctrine." *Shenwick v. Twitter, Inc.*, 2018 WL 833085, *4 (N.D. Cal. 2018).

Courts often deny motions to compel production of privileged documents, and in some cases order a corporate deposition of the non-movant or disclosure of factual information about the hold notices. As one judge put it: "This Court reminds the moving parties that, while they are entitled to factual information and documents that are not covered by the attorney-client privilege, they are not entitled to the disclosure of confidential communications covered by the privilege even if related to evidence spoliation." *Allen v. Purss*, 2022 WL 17733679, *5 (D. Or. 2022). Other

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 12
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

courts have followed this approach. *See, e.g., MedImpact*, 2022 WL 1694428, *3 (denying motion to compel production of litigation holds, but ordering a corporate deposition on preservation and related topics); *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, *3 (N.D. Cal. 2020) (similar). And Plaintiffs' request here is doubly invasive of the privilege because they seek not only the production of Amazon's preservation notices but also of "all documents relating to instructions or advice given to employees about the use of ephemeral messaging," Mot. Ex. R at 5, including attorney-client communications that elaborated on those notices and continued throughout the investigation.

Even in cases—unlike this one—in which the movant makes a preliminary showing of spoliation, courts frequently order relief short of the production of privileged materials. *See, e.g.*, *United States v. Cmty. Health Network*, 2023 WL 4761664, *10–11 (S.D. Ind. 2023) (allowing deposition testimony about the defendant's preservation efforts, but prohibiting questions about the contents of litigation holds); *United Illuminating Co. v. Whiting-Turner Contracting Co.*, 2020 WL 8611045, *2–3 (D. Conn. 2020) (ordering disclosure of the individuals who received litigation holds but not their contents); *Raynor v. District of Columbia*, 2020 WL 13603997, *2 (D.D.C. 2020) (ordering a 30(b)(6) deposition instead of production of litigation holds).

Here, as part of its efforts to be cooperative and transparent about Signal, Amazon has already provided the FTC with such discovery. Amazon disclosed the recipients and dates of its preservation notices, the identities of investigation custodians who used Signal, and the timeline and details of preservation efforts including Signal collections. *See* Mot. Ex. D. Amazon also allowed the FTC to inspect thousands of collected Signal messages even though they were not relevant to this case. Amazon produced a corporate deponent who testified on behalf of the company as to preservation and answered all of the FTC's questions other than those about the contents of privileged materials. Amazon also acquired the Wickr messaging application and implemented an enterprise version that offers end-to-end encryption while preserving all messages by Amazon personnel on litigation hold.

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 13
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**D.      Plaintiffs have not demonstrated a need for privileged materials.**

Plaintiffs argue that they "need" the requested preservation notices and legal guidance "to assess whether Amazon failed to take reasonable steps to preserve documents and to map out what information has been destroyed." Mot. at 12. This argument is not well-founded.

As explained, Amazon disclosed when preservation notices were provided to each investigation custodian, when additional legal guidance was provided, when Signal messages were collected, and what the DM settings were over time in those collected conversations. Amazon's executives testified to their conduct upon receipt of the preservation notices and other legal guidance. *See, e.g.*, Mot. Ex. F. (Bezos) at 298:21–24 ("I tried very hard to be careful not to use [the DM feature], to preserve messages and only use disappearing messages on things that were not, you know, responsive to these document preservation requests.").[3] Amazon also agreed to inspections and productions of collected Signal messages regardless of relevance. Given all this information, Plaintiffs have not demonstrated a need to pierce the attorney-client privilege. They can rely on all the information that Amazon has disclosed to date—including the more than 1.7 million documents and 100 terabytes of data that Amazon produced from other sources—as well as the testimony of Amazon witnesses. And they will be free to rely on additional discovery that Amazon has offered on use and preservation of Signal beyond May 2022.

Finally, questions about privileged documents can be answered without piercing the privilege, because the Court could inspect them *in camera*. *See, e.g.*, *In re Cathode Ray Tube Antitrust Litig.*, 2023 WL 5667882, *5 (N.D. Cal. 2023) (conducting *in camera* review of litigation hold); *Al Otro Lado*, 2020 WL 4432026, *1–3, *5 (same). To be clear, Plaintiffs have not asked the Court to conduct such an inspection, and it is not necessary to resolve the instant motion. But

---

[3] Plaintiffs claim that one former Amazon executive—Jeff Blackburn—"did not understand Signal messages to be covered by those [preservation] notices." Mot. at 5. But Mr. Blackburn was on sabbatical from Amazon from March 2020 to May 2021, when several waves of preservation notices and legal guidance were issued via email. He received additional legal guidance upon his return to Amazon. *See* Mot. Ex. D. at 10. When asked, "Did you ever learn that Signal messages were or were not covered by the document preservation notices?" he testified that he discussed that issue with lawyers and followed their advice. Mot. Ex. G (Blackburn) at 221:21–222:17.

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 14
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

even if the Court would find it helpful to inspect these materials to confirm that custodians were advised on Amazon's preservation obligations, that still does not demonstrate *Plaintiffs'* need to obtain them in discovery.

## CONCLUSION

The Court should deny Plaintiffs' motion.

DATED this 13th day of May, 2024.

*I certify that this memorandum contains 4,947 words, in compliance with the Local Civil Rules and this Court's 5/9/2024 Order.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Patty A. Eakes*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
         molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Katherine Trefz (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
         jschmidtlein@wc.com
         khodges@wc.com
         cmetz@wc.com
         cpruski@wc.com
         jpitt@wc.com
         ktrefz@wc.com

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 15
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**COVINGTON & BURLING LLP**

Thomas O. Barnett (*pro hac vice*)
Katharine Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Phone: (202) 662-5407
Email: tbarnett@cov.com
   kmitchelltombras@cov.com

**WILKINSON STEKLOFF LLP**

Kosta S. Stojilkovic (*pro hac vice pending*)
2001 M Street NW, 10th Fl.
Washington, DC 20036
Phone: (202) 847-4045
Email: kstojilkovic@wilkinsonstekloff.com

*Attorneys for Defendant Amazon.com, Inc.*

AMAZON'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL - 16
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401