1

THE HONORABLE JOHN H. CHUN

2

3

4

5

6

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

7

8

FEDERAL TRADE COMMISSION, *et al.*,

9

Plaintiffs,

**CASE NO.: 2:23-cv-01495-JHC**

10

v.

**JOINT STATUS REPORT**

11

AMAZON.COM, INC., a corporation,

12

Defendant.

13

14

15

16

17

18

19

20

21

22

23

24

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENTS ................................................................ 3

        A.      PLAINTIFFS' PRELIMINARY STATEMENT ...................................... 3

        B.      AMAZON'S PRELIMINARY STATEMENT ...................................... 5

II.     STATUS OF LITIGATION ..................................................................... 7

III.    PLAINTIFFS' REPORT ON THE STATUS OF DISCOVERY ...................................... 8

        A.      AMAZON'S DISCOVERY RESPONSES AND PRODUCTIONS..................... 8

        B.      PLAINTIFFS' DISCOVERY RESPONSES AND PRODUCTIONS ................ 16

        C.      THIRD PARTY DISCOVERY .................................................. 17

        D.      COORDINATION ISSUES...................................................... 18

IV.     AMAZON'S REPORT ON THE STATUS OF DISCOVERY ...................................... 18

        A.      AMAZON'S STATEMENT REGARDING ITS RESPONSIVE

                DISCOVERY.................................................................. 19

        B.      PLAINTIFFS' RESPONSES TO AMAZON'S REQUESTS FOR

                PRODUCTION............................................................... 25

        C.      THIRD PARTY DISCOVERY .................................................. 25

        D.      AMAZON'S REPORT ON STATUS OF COORDINATION ......................... 27

V.      PENDING MOTIONS............................................................................ 28

JOINT STATUS REPORT - 2
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Pursuant to the February 13, 2024 Case Management Order ("CMO"), Plaintiffs Federal Trade Commission ("FTC") and the states and territories of New York, Connecticut, New Hampshire, Oklahoma, Oregon, Pennsylvania, Delaware, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Puerto Rico, Rhode Island, Vermont, and Wisconsin, by and through their respective Attorneys General (together, "Plaintiff States," and collectively with the FTC, "Plaintiffs") and Defendant Amazon.com, Inc. ("Amazon") submit this joint status report in advance of the parties' June 6, 2024, quarterly status conference with the Court.

This JSR is organized as follows:  the parties provide brief preliminary statements beginning at page 3.  Plaintiffs' Report on the Status of Discovery begins at page 8.  Amazon's Report on the Status of Discovery begins at page 18.  The parties provide a list of pending motions at page 28.

## I.      PRELIMINARY STATEMENTS

### A.      PLAINTIFFS' PRELIMINARY STATEMENT

The parties are seven months into fact discovery, with approximately 14 months remaining. Amazon has produced approximately 2,850 documents from its files, of which approximately 2,200 are reproductions of documents produced in other cases. Assuming Amazon meets its commitment to complete its reproduction of documents from other cases by July 1, that process will have taken more than six months. Amazon has estimated that it will not complete its productions of certain targeted "go-get" documents until February 2025, and has only recently agreed to begin negotiations regarding custodians, sources of non-custodial documents, and the methods it will use to search for documents responsive to Plaintiffs' discovery requests. The FTC and Plaintiff States, on the other hand, have produced more than 326,300 documents, including documents from more than 110 third parties and responsive

1   documents identified after a search of approximately 200 custodians, and have substantially

2   completed their production of non-privileged pre-Complaint communications with third parties

3   related to Plaintiffs' respective investigations.

4       Plaintiffs are concerned about the limited progress Amazon has made in responding to

5   discovery. Amazon has produced only a handful of documents to date, is maintaining unfounded

6   relevance objections to many of Plaintiffs' document requests (a sample of which are discussed

7   below), and is continuing to object to an interrogatory seeking information about any

8   procompetitive justifications Amazon contends are associated with the interrelated conduct

9   challenged in the Amended Complaint. While Plaintiffs are hopeful that the parties can resolve

10   or at least narrow these issues, and that Amazon will begin to make more progress in document

11   and data production, Plaintiffs may need to seek relief from the Court.

12       Amazon repeatedly cites its production of approximately 1.7 million documents during

13   Plaintiffs' pre-Complaint investigation to suggest that it is making good progress in discovery, or

14   that any further discovery should be limited. That is not the case. Amazon itself has argued that

15   the materials it produced during Plaintiffs' investigation "go beyond the allegations in the

16   complaint and therefore are not all responsive to requests served in the litigation." That is

17   because government investigations serve a different purpose than discovery in litigation, as

18   Plaintiffs explained in the parties' initial Joint Status Report. *See* JSR at 29, Dkt. #135. The

19   purpose of an agency's "pre-complaint . . . investigation is not to 'prove' its case but rather to

20   make an informed decision on whether or not to file a complaint." *United States v. GAF Corp.*,

21   596 F.2d 10, 14 (2d Cir. 1979); *see also Oklahoma Press Pub Co. v. Walling*, 327 U.S. 186, 201

22   (1946) (agency investigations are intended to "discover and procure evidence, not to prove a

23   pending charge or complaint, but upon which to make one if, in the Administrator's judgment,

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  the facts thus discovered should justify doing so.”). As a result, investigations often encompass

2  topics that are not relevant to the case that is ultimately filed. On the other hand, discovery in

3  litigation probes more deeply into topics that are relevant to the case.

4      Moreover, major antitrust cases routinely involve far more documents than Amazon

5  produced in Plaintiffs’ pre-Complaint investigation. In *United States v. Google LLC*, Google

6  produced approximately three million documents in the pre-complaint investigation, and another

7  three million documents during the litigation itself. *See* Google LLC’s Fifth Status Report

8  Regarding Document Review and Production at 1, *United States v. Google LLC*, No. 23-cv-

9  00108, Dkt. #485 (E.D. Va. Oct. 13, 2023). Notably, Google produced just under 2 million

10 documents in less than 30 days—proof that document production *can* move quickly when

11 ordered by a court. *See* Google LLC’s Fourth Status Report Regarding Document Review and

12 Production at 1, *United States v. Google LLC*, No. 23-cv-00108, Dkt. #478 (E.D. Va. Oct. 6,

13 2023). Other recent antitrust cases have likewise involved significant document discovery. *See*

14 Mem. in Support of Meta Platforms, Inc.’s Motion for Summary Judgment at 40, *FTC v. Meta*

15 *Platforms, Inc.*, No. 20-cv-3590, Dkt. # 324-1 (Apr. 5, 2024) (more than 5.6 million documents);

16 Order Granting Preliminary Approval of Class Action Settlement at 3, *Cameron, et al. v. Apple*,

17 No. 19-cv-3074, Dkt. # 453 (Nov. 16, 2021) (more than 5 million documents); *see also* Order

18 Granting Complaint Counsel’s Motion to Compel at 3, *Kroger*, Dkt. No. 9428 (May 22, 2024)

19 (over 13.6 million documents produced during a pre-complaint investigation).

20 **B.    AMAZON’S PRELIMINARY STATEMENT**

21     Discovery is proceeding in an efficient manner for a case of this size.  Plaintiffs served a

22 large number of discovery requests on Amazon, including 349 Requests for Production.

23 Amazon has engaged in good faith in 26 meet and confer sessions with Plaintiffs.  Those meet

24 and confer sessions have generally proceeded on agendas requested by Plaintiffs that covered

JOINT STATUS REPORT - 5
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  only a limited number of Plaintiffs' requests and required substantive follow up from either or

2  both sides.  To date, more than 150 of the requests have not even been discussed in these meet

3  and confer sessions.  Amazon has begun making productions, and it has committed to dates for

4  substantial completion of agreed future productions.  It has already produced 70,000 pages of

5  documents responsive to Plaintiffs' first set of requests, which sought a targeted collection of

6  certain types of documents.[1]  Amazon has already made productions from the discovery record

7  in the earlier-filed, related *California v. Amazon* action (in which document discovery has been

8  ongoing during the past six months), and expects to produce the remaining documents by July 1.

9  Like Plaintiffs have done with third party productions they received during the investigation,

10  Amazon has been working to provide notice to third parties whose information may be contained

11  in the *California* materials, as required by that action's Protective Order.  Amazon anticipates

12  that the majority of targeted document collections it has agreed to produce in response to

13  Plaintiffs' Second and Third Sets of Requests for Production will be complete in the next four

14  months; some voluminous data requests may take longer.  Amazon has also agreed that the 1.7

15  million documents (10 million pages) and 100 terabytes of data produced in the pre-complaint

16  FTC investigation can be part of the record in this case—which is significant because the time

17  period and subject matters covered by that investigation overlaps with the time period of

18  Plaintiffs' discovery requests.

19      Plaintiffs present a lengthy description of the positions they have taken in the meet and

20  confer process, but they do not present any disputes for the Court's resolution, presumably

21

---

22  [1] Plaintiffs criticize the volume of new Amazon documents produced to date in response to those
    initial requests, while also arguing that those requests were targeted.  The fact is that Plaintiffs'
23  first set of requests called for specific documents rather than large volumes of documents and
    data.  Those requests still imposed a burden on Amazon to search for, review, and produce
24  responsive documents.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   because they recognize their voluminous and wide-ranging requests require meaningful

2   conferral.  It should be no surprise to Plaintiffs that understanding their Requests for Production,

3   investigating whether documents and data exist and where, collecting documents and preparing

4   them for production, and addressing third party needs takes time and effort.  Indeed, Plaintiffs

5   themselves needed six months to reproduce third party documents and what they claim are their

6   own investigative files—all of which were or should have been collected prior to filing this

7   lawsuit.

8          There is no question that the record in this case will be large, and the fact discovery

9   period accounts for effort that will be needed to complete productions.  Amazon expects that the

10  parties can continue working cooperatively to ensure the record is developed in a way that

11  accounts for the fact that gathering, reviewing, and producing voluminous documents and data

12  takes time and effort.

13  **II.    STATUS OF LITIGATION**

14         Plaintiffs filed the Complaint on September 26, 2023, Dkt. #1, and filed an Amended

15  Complaint adding Puerto Rico and Vermont as Plaintiffs on March 14, 2024, Dkt. #170. Amazon

16  filed a motion to dismiss the Complaint on December 8, 2023, Dkt. #127, which the parties

17  agreed and the Court ordered would be deemed to be Amazon's motion to dismiss the Amended

18  Complaint, Dkt. #175. That motion has been fully briefed. *See* Dkt. #178.

19         On February 13, 2024, the Court issued a Case Scheduling Order, Dkt. #159, that

20  included the following key dates:

21         August 8, 2025              Close of Fact Discovery

22         February 23, 2026           Close of Expert Discovery

23         April 6, 2026               Deadline to File Dispositive and *Daubert* Motions
                                       (with motions noted for June 15, 2026)

24

JOINT STATUS REPORT - 7                          **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                        600 Pennsylvania Avenue, NW
                                                  Washington, DC 20580
                                                  (202) 326-2222

September 28, 2026         Final Pretrial Conference

October 13, 2026          Bench Trial

As of this filing, the parties have been engaged in fact discovery for approximately seven months. Approximately 14 months remain before the scheduled close of fact discovery.

## III.    PLAINTIFFS' REPORT ON THE STATUS OF DISCOVERY

### A.    AMAZON'S DISCOVERY RESPONSES AND PRODUCTIONS

Plaintiffs served their First Set of Requests for Production of Documents on November 14, 2023, and Amazon served its Responses and Objections on December 14, 2023. Plaintiffs served their Second and Third Sets of Requests for Production of Documents on February 1, 2024, and Amazon served its Responses and Objections on March 25, 2024, pursuant to an extension of time agreed to by the parties.

Plaintiffs have significant concerns about the pace of Amazon's document and data productions to date. Although Plaintiffs served requests seeking the reproduction of documents from the *California* Action and Related Cases in November 2023, Amazon has not yet completed its production of those documents.[2] These are documents Amazon has already produced in other matters and could have reproduced here at the push of a button—rather than piecemeal, over the course of more than six months. Amazon has also set unreasonably extended timelines for its production of narrow, targeted collections of certain documents responsive to Plaintiffs' Requests for Production. Amazon estimates that it will not complete most of those document productions until December, and that it will not complete the last of them until

---

[2] As noted above, Amazon has produced approximately 2,850 documents from its files. Amazon has also produced documents from a small number of third parties that were previously produced in the *California* Action. Amazon has represented that it will soon begin reproductions of custodial documents originally produced in the *California* Action and that it will substantially complete its reproduction of the materials produced to date in the *California* Action and Related Cases by July 1.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    February 2025—a full year after Plaintiffs served their requests. Those timelines are

2    unreasonable for narrow, targeted document collections, and Plaintiffs are further concerned

3    about what these timelines mean for Amazon's broader productions of documents based on

4    searches of both non-custodial and custodial sources, which will make up the majority of

5    Amazon's document productions in this case. And Amazon has not provided any substantive

6    response to nineteen data-related requests whose responses were due in March, stating for each

7    that it was "continuing to investigate whether relevant, non-privileged materials responsive to

8    this Request exist in the ordinary course, can be collected and produced without undue burden,

9    and can be located after a reasonable search," and that Amazon would "supplement its response

10   once it has more information." Plaintiffs have yet to receive any substantive update on whether

11   Amazon has located responsive data or in what form that data exists and will be produced.[3]

12        Plaintiffs are also concerned that Amazon is maintaining a number of unfounded

13   relevance objections that would unduly limit the scope of discovery and limit Plaintiffs' ability to

14   fully develop the factual record. For example, Amazon is maintaining relevance objections to

15   several categories of document requests on the grounds that they seek information about Amazon

16   programs and policies that are not specifically named in the Amended Complaint. That is not the

17   standard for relevance in discovery. While the parties are continuing to meet and confer,

18   Plaintiffs provide a sample of those disputes for the Court's awareness:

19        ***Documents Amazon Produced in the California Action.*** As part of their initial document

20   requests in November 2023, Plaintiffs requested that Amazon produce materials from the

21   *California* Action and Related Cases. Because this case and the *California* Action overlap,

22

23   ───────────────
     [3] Plaintiffs' position is that Amazon has waived any objections it has not yet asserted to these
24   requests.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Plaintiffs viewed these requests as a way to jump-start discovery in this action with no burden to

2    Amazon. Amazon has unfortunately chosen to frustrate that approach.

3            In addition to the slow pace of production, Amazon is withholding *California* documents

4    based on two unjustified relevance objections. First, Amazon refuses to produce documents

5    relating to Amazon's Minimum Margin Agreements with vendors, the Amazon Seller Code of

6    Conduct, and the Amazon Marketplace Fair Pricing Policy, on the grounds that those documents

7    are not relevant to this case. Amazon has also identified six additional categories of documents it

8    is withholding on relevance grounds, and has indicated that it may later carve out further

9    categories of documents from what it has agreed to reproduce from the *California* Action.

10   Amazon's carve-out extends to structured data, where Amazon has refused to produce certain

11   data relating to Amazon's agreements with its vendors. Plaintiffs disagree with Amazon's

12   position that these categories of documents are irrelevant: they inform how Amazon sets prices

13   as a retailer and govern how third-party sellers must set prices on Amazon's marketplace. Both

14   are part of the course of conduct Plaintiffs are challenging. Documents relating to these topics

15   also illustrate Amazon's power over sellers, which is relevant to Plaintiffs' allegations that

16   Amazon has monopoly power in the relevant markets. And there is no burden associated with the

17   production of these documents, given that they have already been produced in another case—to

18   the contrary, Amazon is inflicting on itself the burden of separating out some documents from

19   what it has already produced in the *California* Action, and unnecessarily slowing the pace of

20   document discovery in this case.

21           Second, Amazon also refuses to produce discovery correspondence from the *California*

22   Action and Related Cases. Plaintiffs have explained that this discovery correspondence is

23   important to understand what Amazon has produced in other cases, because parties often come to

24

JOINT STATUS REPORT - 10
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   agreements or provide context regarding the scope of their document and data productions

2   through correspondence. The production of this correspondence (which Plaintiffs understand

3   Amazon consistently designates as Protective Order material) would at least reduce the need for

4   the parties to engage in repeated back-and-forth questioning about the scope of Amazon's

5   document and data reproductions from the *California* Action and Related Cases, might let

6   Plaintiffs streamline some discovery, and would facilitate coordination between the various

7   cases. Amazon's objection is frankly hard to understand given that the documents in question

8   obviously exist, are non-privileged, and can readily be collected and produced.

9       ***Personnel Reviews.*** Amazon refuses to produce personnel reviews, evaluations, and

10   promotion materials concerning individuals with responsibilities relating to the conduct

11   described in the Amended Complaint, claiming that they are not relevant. These materials are

12   plainly relevant to this case, and Amazon has confirmed they are stored in a central repository.

13   Amazon's personnel reviews are relevant to the merits of the case and to streamlining upcoming

14   custodian negotiations. On the merits, these reviews often identify relevant company goals (for

15   example, regarding Amazon's pricing strategies at issue in this case), a specific employee's acts

16   to further those goals, and Amazon's progress in achieving those goals, with significant

17   discussion of the relevant markets and Amazon's conduct in them. For the parties' upcoming

18   negotiations regarding document custodians, a detailed description of relevant employees'

19   responsibilities would be highly informative.

20       ***First-Party Pricing Strategies.*** Plaintiffs have served discovery requests seeking

21   documents related to how Amazon sets prices for its Retail offers and Amazon's Retail pricing

22   rules, algorithms, and methods. Amazon refuses to produce documents related to any first-party

23   pricing strategies other than its first-party anti-discounting program, *see* Am. Compl. ¶¶ 327-39,

24

JOINT STATUS REPORT - 11
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   Dkt. #170, which Amazon describes as its "competitive price-matching strategy," on the grounds

2   that Plaintiffs are not directly challenging other first-party pricing strategies. However, the

3   proper scope of discovery is not limited to the specific acts and programs pleaded in the

4   Amended Complaint. To the extent Amazon has additional pricing strategies that are similar or

5   related to the anti-discounting program alleged in the Amended Complaint, those pricing

6   strategies may be relevant to understanding Amazon's overall course of anticompetitive and

7   exclusionary conduct. At minimum, documents related to other first-party pricing strategies are

8   relevant to fully understanding the context for Amazon's first-party anti-discounting program,

9   less restrictive alternatives to Amazon's conduct, and potential remedies.

10       ***Supply Chain by Amazon***. Supply Chain by Amazon is a "fully automated set of supply

11   chain services,"[4] launched late last year, that includes warehousing, fulfillment, and distribution

12   services. It integrates directly with Amazon's Fulfillment by Amazon (FBA) and Multichannel

13   Fulfillment (MCF) programs for sellers and appears to encompass both programs. Amazon does

14   not dispute that both FBA and MCF are centrally relevant to Plaintiffs' fulfillment-related claims

15   but nonetheless refuses to produce documents relating to Supply Chain by Amazon. Amazon

16   argues that those documents are irrelevant because Supply Chain by Amazon is not discussed by

17   name in Plaintiffs' Amended Complaint. Even leaving aside Amazon's incorrect and unfounded

18   position regarding the proper scope of discovery, Plaintiffs have explained that documents

19   relating to Supply Chain by Amazon are relevant to understand the structure, operations, and

20   pricing of Amazon's core FBA fulfillment service and MCF. Such documents are also relevant

21   to understand Amazon's efforts to further entrench its FBA service and thereby deprive rival

22

23   [4] *See* Supply Chain by Amazon, https://sell.amazon.com/programs/supply-chain (last visited
June 1, 2024).

24

1  online marketplace service providers and superstores the ability to gain the scale needed to

2  compete meaningfully with Amazon, conduct that is central to Plaintiffs' fulfillment allegations.[5]

3  *See* Am. Compl. ¶¶ 353, 366-96, Dkt. #170.

4      ***Buy with Prime.*** Buy with Prime is a program that allows Amazon sellers to "display the

5  Prime logo and delivery promise on [their] own website,"[6] using Amazon's checkout process and

6  fulfillment infrastructure. Like Supply Chain by Amazon, Buy with Prime integrates directly

7  with Amazon's fulfillment programs FBA and MCF,[7] and is therefore relevant to understanding

8  the structure and operation of those programs and the ways that Amazon's services may limit

9  sellers from seeking out other fulfillment providers, which in turn deprives independent

10 fulfillment providers of an important source of business and scale needed to build out an efficient

11 fulfillment network. Documents relating to Buy with Prime are also relevant to understanding

12 Amazon's claims about customer expectations associated with the Prime badge, given that the

13 program allows sellers to display the Prime badge outside of the Amazon ecosystem. Yet, as

14

15   [5] Amazon has suggested that fulfillment services encompass virtually all aspects of the supply

16 chain, from warehousing through delivery to the final customer. *See, e.g.*, Mot. to Dismiss at 3, Dkt. #127 (pointing to delivery providers such as UPS, FedEx and the Postal Service in arguing

17 that Amazon has not foreclosed rivals who provide fulfillment services); Amazon's Responses and Objections to Plaintiffs' Second Set of Requests for Production at 8 (defining "Third-Party

18 Logistics Provider" as "any entity other than Amazon that provides services relating to any and all steps involved in (a) transporting and/or facilitating the transportation of products from the

19 point of origin to delivery to a customer, including any intermediary points along the way; and (b) addressing any issues with a product that arise after delivery to a customer."). Amazon's

20 refusal to produce documents related to Supply Chain by Amazon is plainly inconsistent with its own position regarding the scope of fulfillment services.

21 [6] *See* Buy with Prime, https://sell.amazon.com/programs/buy-with-prime (last visited June 1,

22 2024).

  [7] *See* Supply Chain by Amazon, https://sell.amazon.com/programs/supply-

23 chain?ref_=sdus_bwp_sba ("If a customer places an order on your own website through Buy with Prime . . . we'll deliver through Multi-Channel Fulfillment (MCF).") (last visited June 1,

24 2024).

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   with Supply Chain by Amazon, Amazon categorically refuses to produce documents relating to

2   this program.[8]

3       ***Date Range.*** Plaintiffs have proposed that, as a default, Amazon should produce

4   documents from January 1, 2014 through the date of collection from each custodian or non-

5   custodial source, provided that date is after March 25, 2024 (when Amazon served responses and

6   objections to Plaintiffs' Second and Third Sets of Requests for Production of Documents). The

7   parties can then address specific requests that involve different timeframes on a case-by-case

8   basis, without separately negotiating a date range for each and every document request.

9       A default timeframe for document discovery going back to 2014 is necessary and

10  appropriate given that much of the Amazon conduct at issue in this case began in or around

11  2014. Post-Complaint discovery is warranted given the ongoing nature of Amazon's conduct and

12  changes to Amazon's conduct after the filing of the Complaint. Plaintiffs' proposal to use the

13  date when documents are collected as a default end date for document production reasonably

14  balances Plaintiffs' need for post-Complaint discovery against the burden associated with

15  multiple document collections.

16      Amazon's current position is that, as a default, it will produce documents for the time

17  period from January 1, 2018 through the filing of the Complaint on September 26, 2023.

18  Amazon has proposed to have further date range discussions "in the context of Request-by-

19  Request negotiations, or, when the parties begin to discuss relevant custodians, custodian-by-

20

21  _____

22  [8] Amazon notes that it has agreed to produce documents relating to Supply Chain by Amazon
    and Buy with Prime to the extent those documents are responsive to other document requests and
23  are captured by Amazon's search methodology. But this concession means little because
    Amazon already has an obligation to produce those documents, regardless of Plaintiffs'
24  discovery requests seeking documents related to Supply Chain by Amazon and Buy with Prime.

JOINT STATUS REPORT - 14
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   custodian." Plaintiffs do not that believe that approach is warranted or efficient but will continue

2   to meet and confer with Amazon.

3       ***Procompetitive Justifications.*** Finally, Plaintiffs are concerned by Amazon's continued

4   resistance to answering an interrogatory seeking information about any procompetitive

5   justifications Amazon contends are associated with the interrelated conduct challenged in the

6   Amended Complaint. Plaintiffs need information regarding any procompetitive justifications in

7   order to seek and obtain timely discovery regarding those justifications throughout document

8   discovery and depositions. If Amazon unduly delays identification of its claimed procompetitive

9   justifications, that will likely limit Plaintiffs' ability to obtain relevant information regarding

10  those justifications within the existing case schedule.

11      Amazon's procompetitive justifications for its challenged conduct (if any) are a key

12  aspect of this case under the rule of reason analysis. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th

13  946, 985-86 (9th Cir. 2023). If Plaintiffs show that Amazon's conduct is likely anticompetitive,

14  then "the burden shifts back to [Amazon] to 'show a procompetitive rationale for the restraint.'"

15  *Id.* (quoting *NCAA v. Alston*, 594 U.S. 69, 96 (2021)). After any such showing has been made,

16  the burden shifts back to Plaintiffs to show that such "procompetitive efficiencies could be

17  reasonably achieved through less anticompetitive means." *Id.* at 990 (quoting *Alston*, 594 U.S. at

18  990). If less restrictive alternative means are not established, the court must "balance the

19  [conduct's] anticompetitive harms against its procompetitive benefits." *Id*. at 994; *see also*

20  *United States v. Microsoft Corp.*, 253 F.3d 34, 58-59 (D.C. Cir. 2001).

21      Amazon has repeatedly claimed that the conduct Plaintiffs are challenging is

22  procompetitive, including in its motion to dismiss. *See* Motion to Dismiss at 1, Dkt. #127

23  ("Those practices – the targets of this antitrust Complaint – benefit consumers and are the

24

JOINT STATUS REPORT - 15
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  essence of competition."). Accordingly, Plaintiffs served an interrogatory seeking an

2  identification and description of those procompetitive justifications, including any alternatives

3  considered and an explanation as to why those alternatives were not sufficient.

4       Amazon maintains two primary objections to the interrogatory. First, Amazon argues that

5  it does not need to need to answer this interrogatory until the close of discovery, which would

6  severely prejudice Plaintiffs' ability to conduct discovery into Amazon's alleged procompetitive

7  justifications. Second, Amazon claims that the interrogatory "includes *at least* but more likely

8  *more than* 108 discrete subparts" because the interrogatory points to paragraphs in the Complaint

9  describing the challenged course of conduct. Both of those objections are unfounded. There is no

10 reason Amazon cannot answer the interrogatory now, and doing so is necessary for the efficient

11 progress of discovery in this case. And Plaintiffs have asked only a single question: what are

12 Amazon's procompetitive justifications, if any, for the challenged course of conduct? *See, e.g.*,

13 *Minnis v. Washington*, No. C11-5600, 2013 WL 1964832, at *2 (W.D. Wash. May 10, 2013)

14 (quoting *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)) ("Courts

15 generally agree that interrogatory subparts are to be counted as one interrogatory . . . if they are

16 logically or factually subsumed within and necessarily related to the primary question.").

17      Amazon's most recent position on this interrogatory is unreasonable and incomplete.

18 Amazon "maintain[ed] its position that a response to this interrogatory should follow the end of

19 substantial discovery," which would largely defeat the point of the interrogatory, and was vague

20 about how this interrogatory should be counted for purposes of the 40-interrogatory limit. *See*

21 CMO ¶ 4(a), Dkt. # 161.

22      **B.    PLAINTIFFS' DISCOVERY RESPONSES AND PRODUCTIONS**

23      Amazon served its First Set of Requests for Production on November 14, 2023, and

24 Plaintiffs served their respective Responses and Objections on December 14, 2023. After several

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

discussions between the parties, Plaintiffs agreed to conduct a reasonable search of documents within their possession, custody, or control for responsive, non-privileged pre-Complaint documents from and communications with third parties related to Plaintiffs' respective investigations, and to substantially complete production of materials from their respective investigations by May 27, 2024. After the Protective Order was entered on February 13, 2024, and third parties had the opportunity to object to the production of and apply confidentiality designations to their materials under the Protective Order, Plaintiffs prioritized providing Amazon with the largest third-party productions on a rolling basis. Beginning on March 27 and continuing through May 24, Plaintiffs made rolling productions containing over 326,300 documents associated with more than 110 third parties. Plaintiffs also searched the files of approximately 200 custodians and non-custodial sources, and produced responsive documents. Plaintiffs substantially completed their agreed-upon productions of documents on May 24, 2024.

## C.    THIRD PARTY DISCOVERY

Plaintiffs have served 15 document subpoenas to online retailers, marketplaces, and third-party logistics providers, and will continue to issue additional subpoenas on a rolling basis. Plaintiffs are also conferring with third party subpoena recipients regarding the scope of their responses to Plaintiffs' requests.

Plaintiffs have issued deposition subpoenas to two third parties and are coordinating those depositions with the *California* Action.  Plaintiffs are discussing other potential coordinated depositions with California and plaintiffs in certain Related Cases.

The parties have agreed to regular exchanges of information about subpoenas to third parties and third parties' responses and objections. The parties have also agreed to hold joint meet and confers when requested by third parties in order to minimize the burden of discovery for third parties.

1

### D.      COORDINATION ISSUES

2        The parties are continuing to discuss a draft protocol for the coordination of depositions

3   between this case, the *California* Action, and certain Related Cases in discovery. Only a limited

4   number of issues remain in dispute, and the parties are meeting and conferring further. Plaintiffs

5   anticipate that parties will have an agreement or a dispute for the Court's consideration soon.

6        While this issue is not yet ripe for the Court, Plaintiffs believe it is necessary to respond

7   to one issue raised by Amazon below: Amazon's suggestion that the entry of a protocol that

8   differs from the coordination order entered by the *California* court would hinder coordination

9   ignores a provision in the *California* coordination order expressly providing that if "any order" is

10  entered in this case "permitting higher time limits for any Coordinated Depositions, such higher

11  time limits shall apply" in the *California* Action. (Ex. A, ¶ 20.)

12  ## IV.     AMAZON'S REPORT ON THE STATUS OF DISCOVERY

13       Plaintiffs' concerns about the pace of discovery are not well-founded given the scope of

14  documents, data, and other information produced to Plaintiffs to date; the breadth and volume of

15  material sought by their 349 Requests for Production and Interrogatories; the guidance Amazon

16  has provided with respect to timing of its productions responsive to those requests; and the

17  parties' many conferrals.  As discussed in more detail below, millions of documents and 100

18  terabytes of data produced by Amazon in the pre-complaint investigations have been deemed

19  produced here.  Plaintiffs also have access to the testimony of 46 Amazon witnesses taken in pre-

20  complaint investigations.  Plaintiffs served 349 Requests for Production (not counting subparts)

21  on Amazon touching nearly every aspect of the retail business, including subject matters and

22  time periods for which Amazon previously made voluminous productions.  Amazon has begun

23  producing documents responsive to Plaintiffs' requests and, as stated in the December status

24  report, anticipates substantially completing production on Plaintiffs' First Set of Requests for

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Production (30 requests) by July 1.  The parties have been conferring on the remaining 319

Requests served by Plaintiffs for the past eight weeks, on a cadence requested by Plaintiffs;

because of the sheer volume of requests, there are still more than 150 requests on which

Plaintiffs have not yet requested a meet and confer.[9]

Meanwhile, it has taken Plaintiffs six months to produce the primary category of

documents that they have agreed to produce, namely, portions of their pre-complaint

investigative file that includes materials received from third parties.  Plaintiffs made productions

on May 24, 2024 that they state substantially complete their agreed productions.  Plaintiffs

produced 24,000 pages on May 24, and Amazon's review of these productions is ongoing.

With respect to the status of discovery, Amazon states as follows:

### A.      AMAZON'S STATEMENT REGARDING ITS RESPONSIVE DISCOVERY

#### 1.      Plaintiffs Served Voluminous and Expansive Discovery Requests on Amazon

Since November 14, 2023, Plaintiffs have served 349 Requests for Production and one

set of Interrogatories.  Amazon has served responses and objections to all of Plaintiffs' discovery

requests and has begun producing documents.  Specifically:

- On November 14, 2023, Plaintiffs served their first set of 30 Requests for

    Production.  Amazon served its Responses and Objections on December 14, 2023.

- On November 14, 2023, Plaintiffs also served their first set of Interrogatories.

---

[9] Plaintiffs principally use this status report to set forth for the Court the positions they have
taken in the ongoing meet and confers.  Amazon does not believe that the purpose of this status
report is to go through a point-by-point discussion of these (incomplete and misleading)
litigation positions, which Plaintiffs do not identify as disputed issues.  By way of example, it is
not true that Amazon has "categorically" refused to produce documents related to two programs
not mentioned in the Complaint, Supply Chain by Amazon and Buy with Prime; to the contrary,
even though those programs are not mentioned in the Complaint, Amazon has said it *will*
produce documents about those programs to the extent they are discussed in the extensive
custodial document production Amazon expects to make about the programs actually alleged in
the Complaint.  Plaintiffs have issued more than 100 requests related to fulfillment issues alone.

Amazon served its Responses and Objections on December 14, 2023.

- On February 1, 2024, Plaintiffs served their second and third sets of Requests for Production, consisting of 319 total requests.  Many of these RFPs include multiple subparts and at least 49 of these RFPs request voluminous amounts of data.  Amazon served its Responses and Objections to these requests on March 25, 2024.

During the FTC's nearly four-year pre-complaint investigation, Amazon produced more than 1.7 million documents, consisting of nearly 10 million pages, and 100 terabytes of data—all of which Amazon has agreed to deem produced in this case.  Plaintiffs took pre-suit testimony of 29 Amazon witnesses that Amazon made available.  Plaintiffs also have access to the records produced by Amazon in the California Attorney General's investigation, including transcripts of 28 additional investigative hearings of Amazon witnesses, which included transcripts 17 non-overlapping witnesses, and 88 terabytes of data of the type that they seek here (*e.g.*, offers and transaction data).  The subjects and the time period of the pre-complaint discovery overlaps with those of Plaintiffs' discovery requests in this case.

Given the records from these lengthy pre-suit investigations, it would have been entirely reasonable for Plaintiffs to serve tailored Requests for Production aimed primarily at updating prior information.  Instead, Plaintiffs issued 349 Requests for Production for documents encompassing nearly all aspects of Amazon's retail business for a period going back over a decade (with some specific periods going back well beyond ten years).[10]  Over 250 of those Requests seek "all documents" on a particular topic, and many have several sub-parts.  The data requests—styled as 49 requests but constituting over *400* distinct data requests—contemplate *hundreds of terabytes* of data.  As Amazon has explained to Plaintiffs, the

---

[10] Plaintiffs have demanded that all requests cover the time period back to 2014.  Amazon believes that the appropriate time period is dependent on the subject of the request, and it has agreed in some cases to produce documents for earlier time periods as requested by Plaintiffs.  The issue of the appropriate time period for the requests is best suited to meet and confer discussions.

JOINT STATUS REPORT - 20
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

diligence required to understand the Requests and how they connect to the allegations made in Plaintiffs' Complaint, research what documents or data might exist and where, and scope the potential burden of collection and production has been an incredibly arduous process, particularly when the information Plaintiffs seek is not maintained in the form Plaintiffs imagine.  Plaintiffs also incorrectly contend that Amazon has not substantively responded to 19 of the data RFPs.  For these 19 requests, Amazon asserted specific objections and otherwise agreed to produce data, once it identifies what data exists and in what form, and has been regularly updating the Plaintiffs on its efforts and cooperating in good faith.  Although Plaintiffs' Requests identified no particular priorities, Amazon also endeavored to provide guidance to Plaintiffs as to when targeted productions would begin and end so that Plaintiffs could plan and manage their workflow efficiently.

Plaintiffs have also served an interrogatory on Amazon that, although styled as a single interrogatory, demands that Amazon describe and identify justifications, alternative means for achieving justifications, and explanations as to alternative means not chosen, for different types of conduct alleged in *185* different paragraphs of Plaintiffs' Complaint.  Amazon submits that this interrogatory is an improper attempt to evade the 40-interrogatory limit set by the Court.  If Amazon were to answer this interrogatory as drafted, the effort involved would be immense, as Amazon would need to undertake a separate investigation and prepare a response to answer multi-part questions for any instance of discrete conduct identified in the 185 Complaint paragraphs.  Despite its objections, Amazon has met and conferred with Plaintiffs on this topic and made a proposal on May 10, 2024, to which Plaintiffs have not yet responded with any specificity.[11]

## 2. Amazon Has Engaged in Good Faith Meet and Confer Efforts For Months and Has Been Producing Documents Simultaneously.

[11] Based on a statement in the Joint Status Report, Plaintiffs appear to view Amazon's proposal as "vague."  They have not asked any questions about it in responsive correspondence or requested a follow up conferral.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Amazon has consistently engaged in good faith discussions with Plaintiffs on their

2    discovery requests.  Since January 5, 2024, Amazon has participated in over 26 meet and confer

3    sessions concerning Amazon's responses.  Over 15 of these conferrals have occurred in the last 8

4    weeks.   Plaintiffs have conducted the meet and confers by seeking to discuss each individual

5    request, and most of those discussions have required follow up from either or both sides.  In this

6    process, Amazon and Plaintiffs have discussed more than 165 of the Requests and Plaintiffs'

7    First Set of Interrogatories, but more than 150 requests have not yet been the subject of any meet

8    and confer.  In data-related meet and confers, Plaintiffs have acknowledged that the investigation

9    of decentralized data sources for their voluminous requests takes time, and Amazon has provided

10   updates about its progress and findings as it diligently investigates Plaintiffs' Requests.

11   Concurrently with these conferrals, Amazon has begun producing additional documents

12   to Plaintiffs on a rolling basis.  Amazon has produced over 70,000 pages responsive to these first

13   requests, including targeted collections, reproductions of third-party productions, and documents

14   produced in the private actions.  Amazon has also agreed that the more than 1.7 million

15   documents produced by Amazon during Plaintiffs' pre-complaint investigation can be deemed

16   produced in this litigation.  Plaintiffs' focus on the volume of new material produced from

17   Amazon's files in the context of the First Set of Requests does not make sense.  The volume of

18   that production is largely a function of the targeted sets of documents that were sought by

19   Plaintiffs' First Set of Requests.  Plaintiffs' Second and Third Sets of Requests, served nearly

20   three months later, are far broader in scope and production efforts and discussions are ongoing.

21   With respect to Plaintiffs' First Set of 30 Requests for Production, Amazon still expects

22   to complete substantial production of an agreed collection of documents by July 1, 2024, as it

23   advised the Court in the initial December 15, 2023 JSR.  Dkt. 135 at 21.  This includes

24

JOINT STATUS REPORT - 22
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1 reproduction of materials produced to date in the *California* action, in which discovery is

2 proceeding simultaneously.

3      With respect to Plaintiffs' Second and Third Sets of Requests for Production (319

4 requests), the parties are engaged in discussions concerning the process for identifying relevant

5 documents and, in particular, for producing relevant electronic documents and data.  Responding

6 to these Requests has been and will be a lengthy and labor-intensive effort on Amazon's part.

7 Amazon is able to respond to only a minority of these requests by collecting identified (albeit

8 voluminous) documents and data sources stored in a variety of different places within the

9 company and dating back years.  Amazon has agreed to make rolling productions of those

10 materials starting no later than June 15, July 15, August 15, and September 15, 2024, depending

11 on the request.   Amazon has also agreed to make these rolling productions earlier if they are

12 available earlier.  Amazon has also explained that the amount of time and effort involved in

13 preparing targeted productions cannot simply be wished away.  Amazon has indicated an end

14 date of December 15, 2024 for those rolling productions, but it expects that the majority of these

15 productions will be complete on the anticipated start dates that correspond to the specific

16 requests.  For only certain data (not document) requests has Amazon estimated an ending

17 production date of February 2025 due to the breadth of data that Plaintiffs seek.

18      For the remaining Requests (which constitute the majority of them), e-discovery search

19 methods will be needed to respond.  The parties are engaged in discussions concerning the

20 specifics of how these documents will be identified and produced, including the identification of

21 appropriate document custodians and the types of search methods to be used to locate responsive

22 documents of those custodians.  Amazon expects that the number of documents that will be

23 collected through these efforts will be in the millions.  Amazon also expects that this effort will

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  require the use of technology-assisted review ("TAR") techniques, which involves time and

2  complexity.  Plaintiffs want to negotiate what those TAR techniques will be and how they will

3  be used, such as what search terms will be used.  After agreement is reached, Amazon will need

4  to "train" the artificial intelligence used in TAR, through iterative searches, to locate potentially

5  relevant documents from terabytes of data.  It is customary for the parties to have ongoing

6  discussions about adjustments that may be needed to the TAR process.  As part of the TAR

7  process, Amazon will still need to review the identified documents for privilege and

8  responsiveness prior to production.[12]

9  **3.      Discovery Should be Allowed to Proceed.**

10  Plaintiffs' section of the JSR sets forth many complaints about the status and pace of

11  discovery, but they identify no ripe disputes requiring a Court ruling.  The status of discovery, as

12  discussed above, is simply this:  Plaintiffs have served extraordinarily broad and burdensome

13  discovery requests on Amazon; Amazon has begun producing documents but is not finished;

14  Amazon has participated in more than two dozen meet and confer sessions, which have not even

15  covered all of the requests; and it will take considerable time and effort for Amazon to respond

16  to the requests.  If and when an actual discovery dispute arises, either side may properly raise it

17  with the Court in accordance with the Local Rules.  No Court intervention is needed at this time

18  on the discovery topics identified in Plaintiffs' report.

19

20  _____

21  [12] Plaintiffs also suggest that Amazon "only recently agreed" to begin negotiations regarding
custodians and data sources.  That presentation is misleading.  In mid-May, Plaintiffs requested
22  that the parties agree to a date certain to exchange this information (and other information).
Plaintiffs had not previously made this request.  Amazon has already provided the other
23  information requested, and the parties had what Amazon believed to be a productive call about
the process going forward.

24

### B.   PLAINTIFFS' RESPONSES TO AMAZON'S REQUESTS FOR PRODUCTION

On November 14, 2023, Amazon served its First Set of Requests for Production to each Plaintiff, and Plaintiffs served Responses and Objections on December 14, 2024.  These requests called for, among other subjects, the documents subject to production from Plaintiffs' pre-complaint investigative file (*e.g.*, communications with, testimony of, and materials received from third parties).  Notably, portions of their investigative files are the primary materials that Plaintiffs indicated they would agree to produce.  These materials should have been stored in central locations and are typically produced at the outset of cases filed by these federal and state agencies.  It took Plaintiffs six months to produce them.  On May 24, 2024, Plaintiffs produced over 24,000 pages that they represent substantially completes their production of these responsive documents, as well as productions from third parties.  Plaintiffs refused to discuss what would or would not be produced from their investigative files prior to their May 24 productions, and so Amazon will need to raise any issues in meet and confers after it completes its review of these productions.  Additionally, because of the lack of clarity as to what would be included in the investigative files, the parties also agreed to discuss Plaintiffs' responses to Amazon's other requests after production of the investigative files.  Amazon expects those additional requests to be the subject of subsequent meet and confers. Amazon does not request any Court action on this issue at this time.

### C.   THIRD PARTY DISCOVERY

Both Amazon and Plaintiffs are actively engaged in seeking discovery from non-party witnesses.  Since the February 8, 2024 scheduling conference, Amazon has served 8 non-party subpoenas seeking documents from competing retailers.  Amazon is in the process of conferring with these retailers to reach agreement on the documents to be produced in response to

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Amazon's requests.  Amazon expects to serve additional non-party document subpoenas on

2    additional third parties, including additional retail competitors and market participants.

3         Amazon has also conducted third-party discovery in the *California* action, and some of

4    that discovery will also be used in this action.  In instances in which Amazon serves subpoenas

5    on third parties in both this action and the *California* action, Amazon is seeking to streamline

6    and coordinate discovery by negotiating both subpoenas together.  Amazon has also agreed to

7    produce to Plaintiffs non-party discovery from the *California* action.  Amazon has already

8    produced more than 18,000 such non-party documents, and anticipates producing approximately

9    223,000 additional non-party documents from the *California* action by June 6, 2024.

10        Plaintiffs have served or are in the process of serving 14 non-party document subpoenas,

11   including the 8 non-parties already served by Amazon.  The subpoena topics identified by

12   Plaintiffs substantially overlap with the topics in Amazon's subpoenas, and Amazon is

13   committed to working with Plaintiffs and the non-parties to engage in coordinated conferrals to

14   identify a mutually agreeable set of documents to be produced by the non-parties.  Amazon and

15   Plaintiffs have further agreed to exchange written responses and objections received in response

16   to each subpoena so as to allow for further coordination as to non-party discovery.

17        With regard to third-party depositions, Amazon has informed Plaintiffs of 9 non-party

18   depositions that have been noticed in the *California* action so as to allow for a coordinated

19   deposition of these non-parties.  Amazon understands that Plaintiffs intend to participate in 8 of

20   those depositions, and that those depositions will be rescheduled at a time that allows all parties

21   sufficient time to prepare and participate on a coordinated basis.  (Two of those depositions are

22   scheduled to take place this month.)  Amazon expects that most of the non-party depositions in

23   this case will occur in late 2024 and early 2025.

24

JOINT STATUS REPORT - 26
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

### D.      AMAZON'S REPORT ON STATUS OF COORDINATION

On November 28, 2023, Amazon proposed to Plaintiffs a draft protocol to allow for the coordinated depositions of Amazon witnesses and non-party witnesses among this case, the related *California* action, and the *Frame-Wilson*, *De Coster*, and *Brown* actions that are also pending before this Court.  Plaintiffs did not provide feedback on the draft protocol until March 25, 2024, and the Parties have since conferred (and are continuing to confer) on a coordination protocol.  The draft protocol establishes procedures to ensure that the parties in each of the coordinated actions receive notice of and can participate in the depositions, contemplates additional time for coordinated depositions of Amazon witnesses, and establishes a framework for coordinated non-party depositions.  A similar coordination order has already been entered by the court in the *California* action (a copy of the *California* order is attached as Exhibit A).  The terms of that *California* order have also been adopted in the related case *Mbadiwe v. Amazaon.com, Inc.*, Dkt. # 69, Case No. 1:22-cv-09542 (S.D.N.Y.) (Exhibit B). The *California* protocol includes terms regarding time limits on depositions of Amazon witnesses, in summary:

- Seven hours for depositions of Amazon witnesses in which only the California Attorney General participates. (Ex. A, ¶ 17);

- Ten hours for depositions of Amazon witnesses in which more than one plaintiff participates. (Ex. A, ¶ 18); and

- Fourteen hours for up to eight depositions of Amazon witnesses who did not testify in a pre-complaint investigational hearing.  (Ex. A, ¶ 19).

Amazon submits that the *California* coordination order implements a framework that is also appropriate for this case.  Plaintiffs are limited to seven hours on the record and have indicated that intend to use this time in their depositions, and the additional time has been agreed to by the California Attorney General and ordered by the Court.  Entry of an inconsistent protocol would hinder efforts to coordinate the *California* action with the related cases pending

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  before this Court.  Plaintiffs' proposals to date do not merely seek different time limits, they seek

2  a different structure that would be difficult to reconcile with the *California* order (*e.g.,* Plaintiffs

3  seek additional 14-hour depositions but have not recognized the effect of 10-hour depositions

4  provided in the *California* order).  Amazon will continue to work with Plaintiffs to reach

5  agreement on a coordination protocol and, if unable to do so, will seek further guidance from the

6  Court concerning deposition coordination.

7         Amazon has also proposed to plaintiffs in the related private cases (*Frame-Wilson*, *De*

8  *Coster*, and *Brown*) that the parties in those cases agree to enter a coordination protocol similar

9  to that entered in the *California* action.

10  **V.      PENDING MOTIONS**

11         The chart below lists the motions that are pending before the Court:

| Motion | Response | Reply | Notice Date |
|---|---|---|---|
| Amazon's Motion to Dismiss for Failure to State a Claim (Dkt #127) (12/8/2023) | Plaintiffs' Response (Dkt #149) (2/6/2024) | Amazon's Reply (Dkt # 178) (3/22/2024) | March 22, 2024 |
| Plaintiffs' Motion to Bifurcate (Dkt #167) (2/29/2024) | Amazon's Response (Dkt #168) (3/11/2024) | Plaintiffs' Reply (Dkt #173) (3/15/2024) | March 15, 2024 |
| Plaintiffs' Motion to Enter an ESI Order (Dkt #181) (3/22/2024) | Amazon's Response (Dkt #191) (4/8/2024) | Plaintiffs' Reply (Dkt #193) (4/12/2024) | April 12, 2024 |
| Plaintiffs' Motion to Compel Production of Documents Related to Spoliation (Dkt #198) (4/25/2024) | Amazon's Response (Dkt #223) (5/12/2024) | Plaintiffs' Reply (Dkt #235) (5/23/2024) | May 23, 2024 |

JOINT STATUS REPORT - 28
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

| Amazon's Motion to Seal (Dkt. # 220) regarding Response to Motion to Compel (Dkt # 223) (5/13/2024) | Plaintiffs' Response (Dkt. # 236) (5/23/2024) | | June 7, 2024 |
|---|---|---|---|

Plaintiffs respectfully request that the Court prioritize ruling on the Plaintiffs' Motion to Enter an ESI Order, Dkt. #181, which will facilitate the parties' progress in discovery. The resolution of the parties' disputes regarding the process for search term negotiations would help the parties proceed forward in negotiations without unnecessary delays, and the resolution of the parties' dispute regarding privilege logging would likewise allow Plaintiffs to efficiently continue moving forward with their remaining document production.

Amazon respectfully submits that the pending Motion to Dismiss, Dkt. #127, raises important issues and its resolution may promote efficiency by providing guidance to the parties on relevant case issues.

Dated: June 3, 2024

Respectfully submitted,

*s/ Edward H. Takashima*
SUSAN A. MUSSER (DC Bar # 1531486)
EDWARD H. TAKASHIMA (DC Bar # 1001641)
LEIGH BARNWELL (NY Reg. # 5440821)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.:    (202) 326-2122 (Musser)
         (202) 326-2464 (Takashima)
Email: smusser@ftc.gov
         etakashima@ftc.gov
         lbarnwell@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

JOINT STATUS REPORT - 29
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   *s/ Michael Jo*
    Michael Jo (admitted *pro hac vice*)
2   Assistant Attorney General, Antitrust Bureau
    New York State Office of the Attorney
3   General
    28 Liberty Street
4   New York, NY 10005
    Telephone: (212) 416-6537
5   Email: Michael.Jo@ag.ny.gov
    *Counsel for Plaintiff State of New York*
6
    *s/ Rahul A. Darwar*
7   Rahul A. Darwar (admitted *pro hac vice*)
    Assistant Attorney General
8   Office of the Attorney General of Connecticut
    165 Capitol Avenue
9   Hartford, CT 06016
    Telephone: (860) 808-5030
10  Email: Rahul.Darwar@ct.gov
    *Counsel for Plaintiff State of Connecticut*
11
    *s/ Alexandra C. Sosnowski*
12  Alexandra C. Sosnowski (admitted *pro hac
    vice*)
13  Assistant Attorney General
    Consumer Protection and Antitrust Bureau
14  New Hampshire Department of Justice
    Office of the Attorney General
15  One Granite Place South
    Concord, NH 03301
16  Telephone: (603) 271-2678
    Email: Alexandra.c.sosnowski@doj.nh.gov
17  *Counsel for Plaintiff State of New Hampshire*

18  *s/ Caleb J. Smith*
    Caleb J. Smith (admitted *pro hac vice*)
19  Assistant Attorney General
    Consumer Protection Unit
20  Office of the Oklahoma Attorney General
    15 West 6th Street, Suite 1000
21  Tulsa, OK 74119
    Telephone: (918) 581-2230
22  Email: caleb.smith@oag.ok.gov
    *Counsel for Plaintiff State of Oklahoma*
23

24

*s/ Timothy D. Smith*
Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

*s/ Jennifer A. Thomson*
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of
Pennsylvania*

*s/ Michael A. Undorf*
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

*s/ Christina M. Moylan*
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   s/ Gary Honick
Gary Honick (admitted *pro hac vice*)
2   Assistant Attorney General
Deputy Chief, Antitrust Division
3   Office of the Maryland Attorney General
200 St. Paul Place
4   Baltimore, MD 21202
Telephone: (410) 576-6474
5   Email: Ghonick@oag.state.md.us
*Counsel for Plaintiff State of Maryland*
6
s/ Michael Mackenzie
7   Michael Mackenzie (admitted *pro hac vice*)
Deputy Chief, Antitrust Division
8   Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
9   Boston, MA 02108
Telephone: (617) 963-2369
10  Email: michael.mackenzie@mass.gov
*Counsel for Plaintiff Commonwealth of*
11  *Massachusetts*

12  s/ Scott A. Mertens
Scott A. Mertens (admitted *pro hac vice*)
13  Assistant Attorney General
Michigan Department of Attorney General
14  525 West Ottawa Street
Lansing, MI 48933
15  Telephone: (517) 335-7622
Email: MertensS@michigan.gov
16  *Counsel for Plaintiff State of Michigan*

17  s/ Zach Biesanz
Zach Biesanz (admitted *pro hac vice*)
18  Senior Enforcement Counsel
Office of the Minnesota Attorney General
19  445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
20  Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
21  *Counsel for Plaintiff State of Minnesota*

s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

s/ Ana Atta-Alla
Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

s/ Jeffrey Herrera
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

s/ Zulma Carrasquillo-Almena
Zulma Carrasquillo (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00901-0192
Telephone: (787) 721-2900
Email: zcarrasquillo@justicia.pr.gov
*Counsel for Plaintiff Commonwealth of Puerto Rico*

22

23

24

JOINT STATUS REPORT - 31
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

s/ Stephen N. Provazza
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

2

3

4

5

6

s/ Sarah L. J. Aceves
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Counsel for Plaintiff State of Vermont*

7

8

9

10

11

s/ Laura E. McFarlane
Laura E. McFarlane (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us
*Counsel for Plaintiff State of Wisconsin*

12

13

14

15

16

17

18

19

20

21

22

23

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

**MORGAN, LEWIS & BOCKIUS LLP**

2

By: _s/ Molly A. Terwilliger_

Patty A. Eakes, WSBA #18888

3

Molly A. Terwilliger, WSBA #28449

1301 Second Avenue, Suite 2800

4

Seattle, WA 98101

Phone: (206) 274-6400

5

Email: patty.eakes@morganlewis.com

                   molly.terwilliger@morganlewis.com

6

**WILLIAMS & CONNOLLY LLP**

7

Heidi K. Hubbard (*pro hac vice*)

8

Kevin M. Hodges (*pro hac vice*)

John E. Schmidtlein (*pro hac vice*)

9

Jonathan B. Pitt (*pro hac vice*)

Carl R. Metz (*pro hac vice*)

10

Katherine A. Trefz (*pro hac vice*)

Carol J. Pruski (*pro hac vice*)

11

680 Maine Avenue SW

Washington, DC 20024

12

Phone: (202) 434-5000

Email: hhubbard@wc.com

13

                   khodges@wc.com

                   jschmidtlein@wc.com

14

                   jpitt@wc.com

                   cmetz@wc.com

15

                   ktrefz@wc.com

                   cpruski@wc.com

16

17

**COVINGTON & BURLING LLP**

18

Thomas O. Barnett (*pro hac vice*)

Derek Ludwin (*pro hac vice forthcoming*)

19

Katharine Mitchell-Tombras (*pro hac vice*)

One CityCenter

20

850 Tenth Street, NW

Washington, DC 20001-4956

21

Phone: (202) 662-5407

Email: tbarnett@cov.com

22

                   dludwin@cov.com

                   kmitchelltombras@cov.com

23

*Attorneys for Defendant Amazon.com, Inc.*

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222