# EXHIBIT L

COVINGTON

BEIJING BRUSSELS DUBAI FRANKFURT JOHANNESBURG
LONDON LOS ANGELES NEW YORK PALO ALTO
SAN FRANCISCO SEOUL SHANGHAI WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**CONFIDENTIAL TREATMENT REQUESTED**

**By Electronic Mail**

May 20, 2022

David Schwartz, Esq.
United States Federal Trade Commission
Bureau of Competition
Technology Enforcement Division
400 7th Street, SW
dschwartz1@ftc.gov

**Re: Amazon.com, Inc., FTC File Nos. 191-0129 & 191-0130**

Dear David:

I am writing on behalf of Amazon in response to the above-referenced matter and in response to your March 29, 2022 and April 25, 2022 letters regarding Amazon's document collection process. This letter addresses your questions regarding (i) Signal messages and [REDACTED]

**Overview of Amazon's Preservation and Collection Efforts**

Preservation

As part of Amazon's extensive efforts to respond to the February 20, 2020 Civil Investigative Demand ("CID"), which has resulted in the production of more than 100 terabytes of data and nearly 1.4 million documents, the company has taken reasonable steps to preserve potentially relevant documents, including messages on phones.[1] For example, in connection with receiving the FTC's June 17, 2019 voluntary access letter ("VAL"), Amazon issued document preservation notices to a large number of personnel in a manner that was consistent with

[1] Amazon does not provide employees with company-issued handheld devices. Accordingly, all references in this letter are to employees' personal phones.

Amazon's discovery collection obligations, including with respect to electronic documents.[2] When the Commission issued the CID in February of 2020, Amazon sent document preservation notices to additional personnel. In all, Amazon issued document preservation notices to approximately 400 employees, including each of the 23 individuals who used Signal referenced in your March 29, 2022 letter. Table 1 identifies the date when each of these custodians first received a document preservation notice related to the Commission's investigation.

| **Table 1** | |
|---|---|
| **Custodian** | **Date of First Document Preservation Notice**[3] |
| Beauchamp, Christine | July 2, 2019 |
| Bezos, Jeff | April 13, 2020 |
| Blackburn, Jeff | July 2, 2019 |
| Carter, Jeff | March 19, 2020 |
| Chand, Natasha | July 2, 2019 |
| Clark, Dave | July 2, 2019 |
| Coleman, Janette | June 4, 2020 |
| Connors, John | June 4, 2020 |
| Felton, John | July 2, 2019 |
| Grandinetti, Russ | July 2, 2019 |
| Jassy, Andy | February 10, 2021 |
| Henri, David | July 2, 2019 |
| Herrington, Doug | July 2, 2019 |
| Hopkins, Mike | March 19, 2020 |
| Kotas, Paul | July 2, 2019 |
| Krawiec, Peter | March 19, 2020 |
| Limp, Dave | March 19, 2020 |
| Lindsay, Neil | July 2, 2019 |
| Olsavsky, Brian | March 19, 2020 |
| Sibay, Cem | July 2, 2019 |
| Taylor, Tom | March 19, 2020 |
| Wilke, Jeff | July 2, 2019 |

Collections

Amazon undertook a systematic collection of potentially responsive documents from the more than 130 custodians requested by the FTC, an effort that spanned more than a dozen

---

[2] *See, e.g.*, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1 (2018), p. 94 ("The obligation to preserve relevant evidence is generally understood to require that the producing party make reasonable and good faith efforts to identify and preserve the information that is identified as relevant to the claims or defenses in the matter.")

[3] Amazon took separate steps to preserve enterprise resources, such as email and Chime, which were subject to contemporaneous or earlier-in-time preservation measures.

potential document sources. In total, Amazon collected many millions of documents, executing the bulk of these collections during the height of the COVID-19 pandemic. And over a period of 14 months, Amazon produced almost 1.4 million documents to the FTC as a result of its extensive collection and review efforts in this matter. As discussed further below—and as the Commission is surely aware from its own review—these materials provide an ample record for reviewing and evaluating the aspects of Amazon's business operations covered by the investigation.

Amazon's collection efforts in response to the CID involved multiple steps designed to identify materials potentially responsive to the Commission's investigation, including a systematic, back-end collection of relevant enterprise resources, as well as direct engagement with custodians to identify the methods by which they may have generated work-related documents and communications. While conducting custodian-facing diligence in Summer 2020, Amazon learned that some custodians had used Signal.[4] As with other sources, Amazon undertook various follow-up steps to assess the scope and potential responsiveness of this Signal use. Based on this diligence process, other than the 23 individuals referenced in your March 29 letter (most who did not use Signal substantively, as Amazon has explained), Amazon did not identify any other CID custodian who used Signal for potentially responsive communications during the period relevant to their status as a document custodian.

Among numerous other sources, Amazon also collected and reviewed text messages from 13 custodians that Amazon learned may have used texts on their personal phones for potentially relevant communications, as summarized in Table 2. As a result of the COVID-19 pandemic, Amazon employees generally were working from home at the time these collections occurred, which meant that Amazon had to coordinate these in-person collections across various locations while following health-related protocols. In addition to text messages, Amazon collected WhatsApp messages from one custodian (Adam Berns) on April 5, 2021.

| Table 2 | |
|---|---|
| **Custodian** | **Phone Collection Date** |
| Baker, Adam | January 25, 2021 |
| Bangs, Jon | October 28, 2020 |
| Berns, Adam | April 5, 2021 |
| Chand, Natasha | January 19, 2021 |
| Collins, Tim | February 9, 2021 |
| Downer, Steve | January 11, 2021 |
| Fincham, Tim | February 25, 2021 |
| Gao, Wei | June 25, 2021 |
| Krawiec, Peter | March 10, 2021 |
| Landry, Stephenie | July 1, 2021 |

---

[4] Three of the 23 individuals who used Signal were identified after Summer 2020: (i) Mr. Jassy, whose Signal use was identified after the Commission issued its February 2021 letter requesting that the company preserve Mr. Jassy's materials; (ii) Mr. Hopkins, a successor whose Signal use was identified during Amazon's collection-related diligence process for the Second Request in Summer 2021; and (iii) Mr. Sibay, whose Signal use was similarly identified in Fall 2021.

| Limp, Dave | January 19, 2021 |
|---|---|
| Pulciani, Rob | May 14, 2021 |
| Stites, Robert | July 22, 2021 |

As explained in Amazon's March 22 letter, Amazon did not identify any potentially responsive Signal documents to collect during its CID-related diligence. Specifically: (i) 16 Signal Custodians either used Signal exclusively or principally for non-substantive purposes—such as scheduling, travel, or to prompt someone to return a call or check their email—or for issues clearly unrelated to the CID (e.g., security or issues in foreign countries); (ii) for three custodians, Amazon learned that work-related Signal messages were no longer available to collect from the period covered by the September 29, 2020 Final Production Schedule ("Final Production Schedule");[5] and (iii) the Final Production Schedule did not require Amazon to produce documents from the phones of Jeff Bezos, Mike Hopkins, and Andy Jassy.

Amazon later collected Signal messages from some of the Signal Custodians in connection with the Company's response to the Commission's July 2021 Second Request related to the MGM acquisition and this letter response. Table 3 provides the dates on which these Signal messages were collected from these custodians.

| Table 3 | |
|---|---|
| **Custodian** | **Signal Collection Date[6]** |
| Bezos, Jeff | January 7, 2022 |
| Blackburn, Jeff | November 17, 2021 and January 18, 2022 |
| Hopkins, Mike | October 20, 2021 and January 3, 2022 |
| Jassy, Andy | January 5, 2022 |
| Krawiec, Peter | November 15, 2021 |

Amazon's CID-related diligence did not identify any other messaging applications that custodians used on their phones for potentially responsive communications during the time period covered by the Final Production Schedule other than two enterprise-supported applications—Chime and email—both of which were collected from all relevant custodians. Amazon also identified seven custodians[7] who used WhatsApp principally (or exclusively) for non-substantive purposes (e.g., scheduling) or for issues unrelated to the CID. Where responsive,

---

[5] The three custodians are Jeff Blackburn, Dave Limp, and Jeff Wilke. In November 2021, Amazon collected Mr. Krawiec's Signal messages dating back to September 2019. None of Mr. Krawiec's messages from the time period covered by the Final Production Schedule that Amazon was able to collect were responsive to the CID.

[6] Amazon also separately collected text messages from these custodians' phones in connection with its response to the Second Request.

[7] The seven custodians are Christine Beauchamp, John Felton, Russ Grandinetti, Mark Griffith, Doug Herrington, John Love, and Brenda Spoonemore. Amazon collected and reviewed WhatsApp messages from Adam Berns, as noted above.

Amazon produced text messages collected from CID custodians' phones, and did not identify any responsive Signal or WhatsApp messages in the messages that were collected.

With respect to your questions about Amazon's preservation and collection of documents from Mr. Hopkins's and Mr. Bezos's phones, both individuals received document preservation notices (*see* Table 1). As agreed in the Final Production Schedule, Mr. Hopkins was a custodian only in his capacity as a successor to portions of Jeff Blackburn's former role. In accordance with the agreed-upon terms of the Final Production Schedule, Amazon collected and produced responsive, non-privileged emails and Chime messages from Mr. Hopkins for the period from March 1, 2020 (the last day that Mr. Blackburn was in his relevant role) through April 1, 2021. With respect to Mr. Bezos, Amazon discussed with the Commission that documents from other custodians should be sufficient to understand the company's business practices, including material communications with Mr. Bezos on these issues, and that collecting documents directly from Mr. Bezos would be of minimal value and unduly burdensome. Ultimately, as agreed and reflected in Amazon's August 28, 2020 letter to the Commission, the Commission's September 3, 2020 letter to Amazon, and the Final Production Schedule, Amazon agreed to collect and produced responsive, non-privileged documents from Mr. Bezos's internal emails from January 1, 2014 to March 1, 2020. Despite its objections, Amazon also collected and produced Mr. Bezos's responsive, non-privileged internal emails and Chime messages from March 1, 2020 to April 1, 2021, consistent with the Final Production Schedule. As described above, Amazon also collected Signal messages and text messages from both of these custodians as part of its response to the Second Request, consistent with its agreement with the Commission in that matter.

**Summary of Custodians' Signal Use**

Certain Amazon CID custodians began using the Signal messaging app in 2019—before the Commission issued the VAL—as a result of a well-publicized security intrusion into the private communications of then-CEO Jeff Bezos and ongoing concerns from the AWS security team about unauthorized efforts to gain access to Amazon's executives' communications.[8] Specifically, Mr. Bezos and some members of his executive leadership team (including Jeff Blackburn, Dave Limp, Jeff Wilke, and Andy Jassy)[9] installed Signal, a communications application that affords end-to-end encryption technology that provides heightened security compared to standard text

[8] Personal messages from Mr. Bezos's phone were leaked to the public. *See e.g.*, https://www.foxbusiness.com/technology/how-jeff-bezos-girlfriend-texts-went-public-timeline; https://arstechnica.com/tech-policy/2019/04/bezos-rep-says-saudis-stole-racy-texts-leaked-them-to-the-enquirer/; https://www.theguardian.com/technology/2020/jan/31/jeff-bezos-met-fbi-investigators-in-2019-over-alleged-saudi-hack.

[9] Peter Krawiec began using Signal around the time that he was promoted to the executive leadership team in Fall 2019; Mike Hopkins began using Signal shortly after he started at Amazon in February 2020.

messaging.[10] As explained in Amazon's March 22 letter, seven custodians—Messrs. Bezos, Blackburn, Hopkins, Jassy, Krawiec, Limp, and Wilke—also had the disappearing message feature enabled at times after the issuance of the VAL.

Our review indicates that much of the work-related usage of Signal was for short, administrative communications and/or related to topics outside the scope of the investigation (such as security and personnel discussions) that would not have been produced in any event. Moreover, even were a small number of potentially responsive messages no longer available due to the disappearing message feature, there is no reasonable basis to conclude that the Commission was prejudiced in any way. The entire universe of potentially responsive data in Signal communications is miniscule compared to the millions of documents and terabytes of data that Amazon collected in its response to the CID. Even a fraction more, by any measure, would still be *de minimis*. Further, while these seven custodians occasionally sent or received substantive, work-related messages via Signal, material communications concerning Amazon's significant business decisions typically take place through others means—including email, Chime, and related attachments—that were systematically collected and produced. Considering Amazon's voluminous production in response to the CID, which included over 125,000 documents from the files of these seven custodians, it is not plausible that the potential absence of a small number of messages from a handful of custodians could materially impair the Commission's ability to evaluate Amazon's retail operations. *See, e.g., Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, No. 14-CV-62216, 2016 WL 1105297, at *6 (S.D. Fla. Mar. 22, 2016) (denying spoliation sanctions where "missing text messages appear[ed] to be unimportant, and the abundance of preserved information appear[ed] sufficient"). This is particularly true given Amazon's well-documented corporate culture of using detailed documents for meetings and important decisions, providing the Commission with an unusually rich record from which to understand the rationale behind Amazon's business practices. And, of course, use of Signal began before the Commission issued the VAL for reasons unrelated to concerns about regulatory oversight or investigations, and Amazon has uncovered no evidence of an intent to deprive the Commission of any information.

The Commission's March 29 letter also includes various questions about the Signal use of 16 custodians who were unlikely to possess potentially responsive documents given that their use was exclusively or principally for non-substantive communications or for issues clearly unrelated to the CID. The limited probative value of collecting these materials was significantly outweighed by the corresponding burden of collecting these custodians' personal phones during a global pandemic. *See U.S. v. Allergan, Inc.*, 2021 WL 969215 (C.D. Cal. 2021) (permitting "limited discovery" into text messages in order to avoid creating a disproportionate burden and issuing guidance that subject matter, frequency of text usage, and availability of text messages would be relevant factors in determining from which custodians collection was warranted). Further, the Commission's March 29 letter includes questions covering these custodians' Signal use that are

---

[10] https://restoreprivacy.com/secure-encrypted-messaging apps/signal/#:~:text=1%20Signal%20is%20generally%20considered%20the%20most%20secure,Clients%20for%20Android%2C%20iOS%2C%20Mac%20OS%2C%20Windows%2C%20Linux (noting Signal is "generally considered the most secure messaging app in existence").

not tethered to whether Signal messages potentially were relevant to the CID. Amazon therefore objects to these questions as seeking irrelevant information and as unduly burdensome.

The Commission's March 29 letter also includes questions relating to the Signal usage of the other custodians that are not tethered to whether the Signal messages were potentially relevant to the CID. Nonetheless, in the interest of continued cooperation, Amazon has provided information below responsive to the Commission's requests. The Commission asked numerous questions regarding the use of the disappearing messages feature. Because of the nature of this feature and the duration of time since these custodians' Signal use began, some of these questions cannot be answered with precision in this context, such as the subject matter of a particular message that may have disappeared years ago. Amazon has made a good-faith effort to conduct diligence into the Commission's questions and provides the following additional details:

- **Mr. Bezos:** In response to your requests, Amazon identified 78 Signal conversations going back to early 2019 involving Mr. Bezos in which the disappearing messages feature was enabled at some point. At least two-thirds of these conversations involve personnel from Amazon's public relations, HR, or security teams or were with executive assistants, whose roles are logistical by nature and generally not relevant, and thus likely not responsive, to the Commission's investigation.

- **Mr. Blackburn:** Amazon identified six Signal conversations involving Mr. Blackburn and Jennifer Salke, Mr. Hopkins, Mr. Jassy, Mr. Bezos, Mr. Sibay, and Beth Galetti in which the disappearing messages feature was enabled at some point.

- **Mr. Hopkins:** Amazon identified eight Signal conversations involving Mr. Hopkins and Christopher Brearton (COO, MGM), Mr. Bezos, Mr. Blackburn, Ms. Salke, Mr. Jassy, Mr. Limp, Mr. Krawiec, and Jay Carney in which the disappearing messages feature was enabled at some point.

- **Mr. Jassy:** Amazon identified ten Signal conversations involving Mr. Jassy and Mr. Hopkins, Mr. Blackburn, Mr. Limp, Mr. Krawiec, Matt Garman (SVP, AWS Sales & Marketing), Adam Selipsky (CEO, AWS), Andrew Herdener (VP, Worldwide Communications), Peter DeSantis, Dan Grossman, and Stephen Schmidt (Chief Information Security Officer) in which the disappearing messages feature was enabled at some point. Two of these conversations involved personnel from Amazon's public relations or security teams.

- **Mr. Krawiec:** Amazon identified 13 Signal conversations involving Mr. Krawiec and Carlo Bertucci, Mr. Hopkins, Abhijeet Muzumdar, Dan Grossman, Mr. Limp, Donald Katz, Rahul Kewalramani, Will Hsu, Mr. Bezos, Mr. Sibay, Mr. Wilke, Alex Ceballos Encarnacion, and Mr. Jassy in which the disappearing messages feature was enabled at some point.

- **Mr. Limp:** Amazon identified two Signal conversations involving Mr. Limp and Mr. Krawiec and Mr. Hopkins in which the disappearing messages feature was enabled at some point.

- **Mr. Wilke:** Amazon identified one Signal conversation with Mr. Krawiec in which the disappearing messages feature was enabled at some point.

The Commission also asked, with respect to Messrs. Blackburn, Krawiec, Limp, and Wilke, for the "latest date on which each potentially responsive document on Signal was available." As explained in our March 22 letter, each of these custodians at times used Signal's disappearing message feature. This feature allows users to set a timer for specific messaging threads, though the fact of setting the timer does not mean that a user necessarily sent a message afterwards or that the thread was active thereafter. As such, potentially responsive messages would have been available for the time period for which disappearing messages was set, beginning on the date each potentially responsive message was sent. Amazon cannot confirm these dates with any certainty.

Finally, the Commission asked Amazon to confirm whether any Signal messages have been "lost or deleted by means other than the auto-delete feature." Amazon has identified below the instances it is aware of in which Signal messages from the seven custodians may not have been preserved for reasons other than the disappearing message feature. Amazon cannot rule out the possibility that additional Signal messages may have been lost for other reasons, including, for example, because Signal messages cannot be transferred from an old device to a new device via a cloud-based backup (*e.g.*, iCloud).

- **Andy Jassy:** Amazon determined that there are no Signal messages on Mr. Jassy's phone from the period before June 2021, but is unable to determine the reason why there are no such messages. Additionally, the Signal messages collected from Mr. Jassy indicate that on December 29, 2021, a single Signal message in a thread with Mr. Grossman was deleted.
- **Mike Hopkins:** Amazon collected Signal messages from Mr. Hopkins's phone as part of the company's response to the Second Request. Amazon identified two threads that are available on other individuals' phones, and thus were preserved, but that were not on Mr. Hopkins's phone. Amazon is unable to determine why the threads do not appear on Mr. Hopkins's phone.
- **Jeff Blackburn:** Amazon collected Signal messages from Mr. Blackburn's phone as part of the company's response to the Second Request, of which the earliest message was from May 2021, when Mr. Blackburn re-joined Amazon after leaving the company on March 1, 2020. Amazon is unable to determine why Signal messages before May 2021 are not on Mr. Blackburn's phone.

[redacted]



* * * * *

As discussed at the outset, Amazon has undertaken good-faith and reasonable efforts to comply with a burdensome CID during the trying conditions imposed by an international pandemic; as a result of these efforts, Amazon has provided the FTC with an extensive documentary record of the key business practices and decisions relevant to the FTC's investigation. We look forward to discussing the merits of those business practices with you at the appropriate time.

Regards,

*/s/ Thomas Barnett*

Thomas O. Barnett
Covington & Burling LLP