THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

FEDERAL TRADE COMMISSION, *et al.*,

       Plaintiffs,

       v.

AMAZON.COM, INC., a corporation,

       Defendant.

**CASE NO.: 2:23-cv-01495-JHC**

**JOINT STATUS REPORT**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENTS ................................................................. 4

        A.      Plaintiffs' Preliminary Statement.................................................. 4

        B.      Amazon's Preliminary Statement .................................................. 6

II.     STATUS OF LITIGATION ...................................................................... 7

III.    PLAINTIFFS' REPORT ON THE STATUS OF DISCOVERY ...................................... 8

        A.      Amazon's Discovery Responses and Productions................................ 8

        B.      Disputes Regarding Amazon's Discovery Responses and Productions .............. 15

        1.      Interim Discovery Deadlines ................................................. 16

        2.      Timing of Status Conferences................................................ 18

        3.      Obligation to Identify and Search Non-Custodial Repositories ......................... 18

        4.      Personnel Reviews .............................................................. 22

        5.      Discovery Correspondence from the California Action and Related Cases
                and the Timing of Document Reproductions.................................... 23

        6.      Economics Day ................................................................ 26

        C.      Plaintiffs' Discovery Responses and Productions ................................. 26

        D.      Third Party Discovery.......................................................... 26

IV.     Amazon's Report on the Status of Discovery................................................ 27

        A.      Amazon's Responses to Plaintiffs' Written Discovery. ........................... 27

        B.      Plaintiffs' Disputes Regarding Amazon's Discovery Responses and
                Productions .................................................................. 34

        1.      Plaintiffs' Request for Interim Discovery Deadlines and a Deadline for
                Amazon to Substantially Complete Document Productions by the
                Beginning of Next Year ....................................................... 34

        2.      Request for More Frequent Status Conferences............................... 35

JOINT STATUS REPORT - 2
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

3.   Non-Custodial ESI Sources ................................................................. 36

4.   Personnel Review Files .......................................................................... 37

5.   Discovery Correspondence from the California Action and Related
     Cases and Timing of Document Reproductions ................................. 39

6.   Economics Day ........................................................................................ 42

C.   Plaintiffs' Responses to Amazon's Written Discovery ......................... 42

D.   Third Party Discovery ........................................................................... 43

V.   OTHER ISSUES .......................................................................................... 44

VI.  PENDING MOTIONS ................................................................................. 44

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Pursuant to the February 13, 2024 Case Management Order ("CMO"), Plaintiffs Federal Trade Commission ("FTC") and the states and territories of New York, Connecticut, New Hampshire, Oklahoma, Oregon, Pennsylvania, Delaware, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Puerto Rico, Rhode Island, Vermont, and Wisconsin, by and through their respective Attorneys General (together, "Plaintiff States," and collectively with the FTC, "Plaintiffs") and Defendant Amazon.com, Inc. ("Amazon") submit this joint status report in advance of the parties' September 3, 2024 status conference with the Court.

This status report is organized as follows: the parties provide brief preliminary statements beginning at page 4. Plaintiffs' Report on the Status of Discovery begins at page 8. Amazon's Report on the Status of Discovery begins at page 27. The parties provide a list of pending motions at page 44.

## I.  PRELIMINARY STATEMENTS

### A.  Plaintiffs' Preliminary Statement

The parties are now nearly halfway through the fact discovery period set by the Court, but many of the concerns that Plaintiffs raised in the last joint status report about the progress of discovery remain. *See* Dkt. #246. As of the parties' June 3, 2024 status report, Amazon produced approximately 650 documents specific to this litigation. Three months later, that number is **2,919 documents**.  Amazon says that "[d]iscovery is proceeding at an appropriate pace given the scope of the material at issue and the sheer volume of requests and demands Plaintiffs have made." Plaintiffs disagree.

Amazon continues to drag out discovery through a combination of piecemeal disclosures, groundless objections, and delayed responses. Plaintiffs are working diligently to pursue evidence relevant to their claims and address Amazon's purported concerns, and in some areas

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    have made progress. But Amazon's overall approach—as well as its refusal to commit to interim

2    discovery deadlines—threatens to derail the discovery schedule set by the Court.

3         Notwithstanding Amazon's unfounded objections about the breadth of Plaintiffs'

4    requests, Plaintiffs are seeking discovery entirely commensurate with the scale and significance

5    of this case. *See* Dkt. #246 at 5 (providing examples of antitrust cases where document discovery

6    encompassed millions of documents). Amazon is one of the largest, most technically

7    sophisticated companies in the world and is more than capable of timely complying with

8    Plaintiffs' discovery requests. Instead, on multiple fronts, progress has been halting. Even the

9    most basic requests—such as Amazon reproducing documents already produced in Related

10   Cases or identifying the members of its Senior Leadership Team—have frequently devolved into

11   months- or weeks-long slogs. Amazon has also slowed the pace of discovery by continuing to

12   lodge meritless objections to Plaintiffs' requests. In some cases, Amazon eventually dropped its

13   objections only when faced with the threat of an imminent motion to compel or joint status report

14   filing. But in other cases, Amazon continues to draw out disputes with unfounded and

15   unnecessary objections.

16        Many, but not all, of the parties' disputes over document requests have now collapsed

17   into a broader negotiation regarding the scope of Amazon's collection, search, and review of

18   documents. That process is likewise proceeding slowly. Amazon's positions on the protocol for

19   Technology Assisted Review ("TAR"), search terms, document custodians, and relevant date

20   ranges mean that nearly halfway into fact discovery, Amazon has not yet begun producing

21   custodial documents in this case and has not committed to a timeline for doing so.[1]

22        Plaintiffs respectfully request the Court's assistance to ensure that discovery stays on

23

24   _____

     [1] As explained in the last status report to the Court, Plaintiffs have already produced hundreds of
     thousands of documents to Amazon. *See* Dkt. #246 at 3-4.

JOINT STATUS REPORT - 5                          **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                       600 Pennsylvania Avenue, NW
                                                 Washington, DC 20580
                                                 (202) 326-2222

track. As outlined below, Plaintiffs ask the Court to take certain steps now, including the imposition of interim discovery deadlines and increasing the cadence of the parties' regular status conferences, that will help push the parties along. Plaintiffs also ask the Court to resolve specific discovery disputes now, or at minimum provide guidance to assist the parties with the resolution of these disputes.

### B.       Amazon's Preliminary Statement

Discovery is proceeding at an appropriate pace given the scope of the material at issue and the sheer volume of requests and demands Plaintiffs have made.  Since the last status conference, Amazon has:

- produced well over **half a million** more documents (on top of the 1.7 million produced in the investigation and "deemed produced" here) and dozens of terabytes of data;[2]

- responded to interrogatories issued by Plaintiffs;

- answered two dozen letters from Plaintiffs containing many more informal demands for information;

- and conferred around two dozen times with Plaintiffs.

Additionally, the parties have made substantial progress on negotiating the scope of Amazon's responsive discovery, and they are well-positioned to continue to work together on reaching agreement on search terms and custodians.

It is therefore disappointing to see Plaintiffs use the Joint Status Report to paint a misleading picture of the parties' interactions in discovery, particularly while Plaintiffs seek Court intervention on items (1) they have already received, (2) Amazon has agreed to provide,

---

[2] As Amazon explains below, Plaintiffs' focus on the number of documents produced in response to specific targeted requests for information while ignoring the hundreds of thousands of documents Amazon has produced is not an appropriate measure of the parties' progress.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

and/or (3) for which they have backtracked on the parties' progress and refused to negotiate. Amazon believes that a case like this works best when the parties work together to resolve issues and move past them.  Amazon would prefer to use these Joint Status Reports to update the Court on the progress of the case and seek guidance if useful—not to describe for the Court already-resolved disputes.  But because Plaintiffs have painted a picture of the parties' interactions that is missing key context, Amazon feels compelled to provide that context.  Amazon has attempted to provide that context as succinctly as practical.

Plaintiffs have served nearly 400 separate requests for production and proposed that 1,100 search terms, including facially overbroad stand-alone terms like "Microsoft" and "Jesus," be applied to nearly 150 custodians over a period of a decade.  Amazon has been diligently producing documents, responding to dozens of letters containing many more questions and informal requests for information, and since the last status conference has engaged in tens of hours of meet and confers covering scores of issues.  In light of that context, it is not reasonable for Plaintiffs to complain to the Court about the pace of discovery without acknowledging the role their approach to discovery has played in that process.

Below, Amazon discusses in more detail the status of discovery and the parties' efforts. With respect to Plaintiffs' disputes, Amazon responds to each in turn and respectfully requests that the Court deny Plaintiffs' requests as (1) unnecessary (more frequent status conferences, non-custodial ESI sources), (2) premature (interim discovery deadlines), or (3) unwarranted (personnel reviews and discovery correspondence).

## II.    STATUS OF LITIGATION

Plaintiffs filed the Complaint on September 26, 2023, Dkt. #1, and filed an Amended Complaint adding Puerto Rico and Vermont as Plaintiffs on March 14, 2024, Dkt. #170. Amazon filed a motion to dismiss the Complaint on December 8, 2023, Dkt. #127, which the parties

JOINT STATUS REPORT - 7
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

agreed and the Court ordered would be deemed to be Amazon's motion to dismiss the Amended

Complaint, Dkt. #175. That motion has been fully briefed. *See* Dkt. #178. Plaintiffs have filed

two notices of supplemental authority. *See* Dkt. ##267, 272. Amazon has objected to the first of

those notices. *See* Dkt. #271.

On February 13, 2024, the Court issued a Case Scheduling Order, Dkt. #159, that

included the following key dates:

| | |
|---|---|
| August 8, 2025 | Close of Fact Discovery |
| February 23, 2026 | Close of Expert Discovery |
| April 6, 2026 | Deadline to File Dispositive and *Daubert* Motions |
| | (with motions noted for June 15, 2026) |
| September 28, 2026 | Final Pretrial Conference |
| October 13, 2026 | Bench Trial |

The parties have been engaged in fact discovery for approximately ten months.

Approximately eleven months remain before the scheduled close of fact discovery.

## III.    PLAINTIFFS' REPORT ON THE STATUS OF DISCOVERY

### A.    Amazon's Discovery Responses and Productions

Plaintiffs have issued four sets of document and data requests to Amazon, the last of

which was served shortly after the June 6, 2024 status conference.[3] Following many months of

negotiations, Amazon has begun to make some progress on Plaintiffs' discovery requests. The

---

[3] Plaintiffs served their First Set of Requests for Production of Documents on November 14, 2023, and Amazon served its Responses and Objections on December 14, 2023. Plaintiffs served their Second and Third Sets of Requests for Production of Documents on February 1, 2024, and Amazon served its Responses and Objections on March 25, 2024, pursuant to an extension of time agreed to by the parties. Plaintiffs served their Fourth Set of Requests for Production of Documents on June 28, 2024, and Amazon served its Responses and Objections on July 29, 2024. Plaintiffs have also served two sets of interrogatories on Amazon, which Amazon has objected to and responded to in part.

JOINT STATUS REPORT - 8
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

vast majority of the documents Amazon has produced to date, however, are reproductions of materials Amazon has produced in the *California* Action or Related Cases. Apart from those reproductions, Amazon has produced **2,919 documents**, a tiny fraction of what will be produced in this case—and of what needs to be produced before the parties can move forward with depositions of Amazon witnesses and key third parties.

At this point, the parties' primary disputes concern the timing of Amazon's document production, the scope of Amazon's collection, search, and review of documents, its use of TAR, and the date range for relevant documents. The parties are also continuing to meet and confer regarding Amazon's substantive objections to Plaintiffs' document requests. Plaintiffs are hopeful that the parties will soon resolve their remaining disputes or reach a point where those disputes are ripe for motions to compel. However, the Court should be aware that Amazon has engaged in an ongoing pattern of obstruction and delay that will derail the discovery schedule if it is left unchecked.

Amazon has repeatedly raised objections that are patently unreasonable, forcing Plaintiffs to unnecessarily expend considerable time and resources—and in some cases, preparing to file motions to compel. To give just one example, as Plaintiffs noted in their last status report, Amazon refused to produce documents regarding two of Amazon's fulfillment-related programs—Supply Chain by Amazon and Buy with Prime—that interconnect with and encompass Amazon's core Fulfillment by Amazon offering. *See* Dkt. #246 at 12-14. Amazon maintained categorical objections to searching for and producing documents relating to either program for over six months, through dozens of meet and confers and letter exchanges. Amazon only relented and agreed to produce documents relating to Supply Chain by Amazon and Buy with Prime—programs that Amazon now acknowledges "sit[] within" and "encompass[]" the

1   fulfillment programs at issue that are "relevant to Plaintiffs' claims"—after Plaintiffs informed

2   Amazon they would seek relief from the Court.

3       Amazon has also routinely raised objections, including undue burden objections, based

4   on little or no due diligence. For example, Amazon objected to Plaintiffs' request for all final

5   agreements between Amazon and fulfillment and delivery providers, on the grounds it was

6   unduly burdensome. Plaintiffs noted that any such agreements were likely in a centralized

7   repository that could be readily collected. Amazon then represented that it had not even

8   investigated whether any such central repository existed. In other words, its purported burden

9   objection was speculative and made without any reasonable investigation. In another example,

10  several of Plaintiffs' requests for production seek information about Amazon's Multichannel

11  Fulfillment service "or other Amazon ecommerce fulfillment services." It took over three months

12  for Amazon to "investigate" the services it offers and to identify another fulfillment service, and

13  at one point Amazon took the position that "it is not Amazon's duty . . . to do the FTC's

14  homework of identifying whether 'other Amazon ecommerce fulfillment services' exist." The

15  additional service identified by Amazon is relevant to Plaintiffs' case, and Plaintiffs proposed

16  search terms relating to it more than a month ago. As of this joint status report, Plaintiffs do not

17  know if Amazon is objecting to those search terms.

18      Finally, Amazon has repeatedly delayed its responses to Plaintiffs' attempts to move

19  discovery negotiations forward. For example, on August 5, Plaintiffs informed Amazon that they

20  were waiting for responses on *eight* outstanding letters regarding RFP negotiations, three of

21  which had been outstanding for more than 30 days. Amazon finally provided responses on

22  August 16.

23      Taken together, these issues help explain how it is possible that Amazon has only

24  produced a few thousand documents unique to this case, after almost ten months of fact

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

discovery. Looking forward, Plaintiffs are seriously concerned that if Amazon continues this approach during the parties' ongoing negotiations regarding search methodology, it will derail the discovery and trial schedule set by the Court, or that Amazon will leverage its own strategic delays to limit the scope of discovery produced to Plaintiffs. As discussed further below, Plaintiffs respectfully request that the Court order interim discovery deadlines and step up the cadence of status conferences to ensure that the parties are making progress in discovery and staying on track with the Court's schedule.

While the parties are continuing to discuss search methodology issues, Plaintiffs believe a brief overview of the parties' current disputes may be useful background for the Court:

*Technology Assisted Review.* Plaintiffs initiated discussions regarding Amazon's potential use of TAR in May, and since then the parties have had ongoing discussions regarding a TAR protocol. Properly used, TAR should allow Amazon to expedite its production of responsive documents. Because a properly-used TAR system should be able to effectively separate out potentially responsive documents from non-responsive documents without individualized review of each document, TAR can also alleviate the need for the parties to spend an extended amount of time negotiating search terms, which can unnecessarily delay the document production process.

The principal dispute between the parties is whether Brainspace, Amazon's proposed TAR platform, can accommodate more than 9 million documents. Amazon's counsel claims that Brainspace will become unstable when used with more than 9 million documents, based on their experience and the experience of Amazon's e-discovery vendor Consilio. Plaintiffs' understanding, based on the experience of their e-discovery experts, discussions with Brainspace, and publicly available literature from Relativity, is that Brainspace *can* accommodate more than 9 million documents, and have proposed several suggested approaches to do so. Plaintiffs are

1  hopeful that the parties can reach a mutually agreeable resolution of this issue, but do not believe

2  that Amazon should be permitted to unilaterally set a cap on the number of documents it will

3  review based on claimed technological limitations. Large, complex cases such as this often

4  involve the review of more than 9 million documents.[4] Amazon is one of the world's leading

5  data management companies, and is represented in this case by five top-tier law firms. It is hard

6  to believe Amazon cannot find a way to work around any purported limitations of its chosen

7  TAR platform.

8  **Search Terms.** The parties exchanged initial search term proposals on July 22. Plaintiffs

9  subsequently sent Amazon revised search term proposals on July 29 and August 2 that

10  incorporated some of the search terms proposed by Amazon and addressed some syntax issues

11  identified by Amazon. Plaintiffs' view is that if Amazon uses search terms to collect documents

12  (as Amazon insists on doing), search terms should be deployed to collect substantially all

13  documents that may be responsive to Plaintiffs' discovery requests, and that Amazon's use of

14  TAR will address any undue burden concerns.

15

16

---

17  [4] For example, in the pending *Google AdTech* case, Google reviewed more than 12 million
documents. *See* Status Report, *United States v. Google*, 1:23-cv-00108, Dkt. #467 (E.D. Va.

18  Sept. 29, 2023) (representing that Google was reviewing 6.4 million unique documents from set
of 16.1 million documents Google initially failed to ingest into Google's review platform); *id.*

19  Dkt. #422 (representing that before this issue was identified, Google had already reviewed 6
million documents); *see also* Def.'s Response in Opposition to Motion for Extension of

20  Discovery Deadlines, *In re Domestic Airlines Travel Antitrust Litigation*, 1:15-mc-1404, Dkt.
#276 (D.D.C. Aug. 30, 2018) (one defendant in a multi-defendant case representing that it had a

21  universe of over 18 million non-duplicative documents); *Gabriel Technologies Corporation v.
Qualcomm Inc.*, Case No. 09-cv-1992 (2013 WL 410103, at *10 (S.D. Cal. Feb. 1, 2013)

22  (describing "computer assisted, algorithm-driven document review" for almost 12 million
documents); Lighthouse Document Technologies, Streamlining Document Review for DOJ

23  Antitrust Division Compliance, https://www.lighthouseglobal.com/case-study/streamlining-
document-review-for-doj-antitrust-division-compliance# (describing the use of TAR to review

24  21 million documents in connection with a merger review) (last visited Aug. 26, 2024).

JOINT STATUS REPORT - 12
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Since the parties first exchanged search terms proposals, Plaintiffs have consistently told

2  Amazon that they are willing to consider any undue burden objections supported by unique

3  search term hit reports. Until August 26, Amazon refused to provide any hit reports, including hit

4  reports it had already run, and insisted that hit reports were unnecessary as recently as an August

5  22 meet and confer. Amazon finally agreed on August 26 that it would provide hit reports, and

6  represented on August 28 that those reports would include unique hit counts, but as of this filing

7  Plaintiffs have not received any hit reports. Without unique hit counts, Plaintiffs cannot assess or

8  respond to Amazon's undue burden claims. While Plaintiffs look forward to assessing Amazon's

9  undue burden claims once they receive hit reports with unique hit counts, Amazon's month-plus

10  refusal to provide them has caused an unnecessary delay in search term negotiations.[5]

11    ***Custodians.*** On June 20, Amazon proposed an initial list of 54 custodians. That list

12  omitted many plainly relevant custodians, including Amazon CEO Andy Jassy. On July 25,

13  Plaintiffs responded with a proposed list of 148 custodians. Plaintiffs reserved their rights to

14  supplement their custodian proposal based on information Amazon provides in responses to

15  Plaintiffs' questions about employees' roles and responsibilities, or other information Amazon

16  produces in discovery. The parties continue to meet and confer.

17    Amazon's delay and unwillingness to provide basic information about its employees have

18  contributed to delays in custodial negotiations. For example, Plaintiffs asked Amazon for a list of

19  current and former members of its Senior Leadership Team (S-Team) on July 10. Amazon

20  provided an initial list that had several obvious omissions on August 5, and then a (presumably)

21  final list of S-Team members on August 16, more than a month after Plaintiffs requested this

---

[5] Amazon's refusal conflicted with its prior representation to the Court, in its opposition to Plaintiffs' proposal to mandate hit count reports in the ESI Order, that "Amazon is willing to have the parties substantiate the associated burdens [of search terms] by exchanging hit reports showing counts of documents returned by the terms." Dkt. #191 at 10.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   basic information. For more than a month, Amazon similarly refused to provide crucial

2   information about who has responsibility for key programs within Amazon, describing Plaintiffs'

3   questions as akin to interrogatories. At the same time, Amazon questioned why Plaintiffs require

4   custodians beyond those proposed by Amazon and challenged the relevance of Plaintiffs'

5   additional proposed custodians. As Amazon itself has explained to Plaintiffs when discussing the

6   need for predecessor and successor custodians, job titles do not necessarily reflect employees'

7   responsibilities. Providing information about company employees with key responsibilities is a

8   fundamental tenet of good faith custodian negotiations. Plaintiffs have struggled to get this

9   information from Amazon and cannot realistically move forward in custodian negotiations

10  without it.

11      ***Date Range.*** As Plaintiffs noted in the parties' last joint status report, the parties continue

12  to disagree about the default date range for discovery. *See* Dkt. #246 at 14-15. Plaintiffs maintain

13  that, as a default, Amazon should produce documents from January 1, 2014 through the date of

14  collection from each custodian or non-custodial source, provided that date is after March 25,

15  2024 (when Amazon served its responses and objections to Plaintiffs' Second and Third Sets of

16  Requests for Production of Documents). As Plaintiffs have repeatedly explained to Amazon, the

17  allegations in the Amended Complaint make clear that much of Amazon's alleged

18  anticompetitive conduct, or discussions and development that underlie that conduct dates back to

19  at least 2014. *See, e.g.*, Dkt. #170, ¶¶ 92, 231 (alleging Amazon launched its advertising business

20  in 2014), ¶¶ 274-75 (alleging from 2011 until 2019, Amazon required each seller to maintain

21  price parity), ¶ 364 (Mr. Bezos described FBA as "glue that inextricably links Marketplace and

22  Prime" in 2014), ¶ 421 (alleging Amazon began monitoring other online stores' pricing

23  algorithms in early 2010s). A timeframe beginning at the start of 2014 is therefore relevant to

24  understanding the "origin, background, and purpose of [Amazon's] alleged anticompetitive

conduct." *See Rumble, Inc. v. Google LLC*, 2023 WL 3751797, at *5 (N.D. Cal. May 31, 2023); *see also Sidibe v. Sutter Health*, 103 F.4th 675, 685-86 (9th Cir. 2024) (relevant factors include "the history of the restraint" and "the reasons for adopting the particular practice"); *Cyntegra, Inc. v. IDEXX Labs., Inc.*, 2007 WL 9701999, at *4-5 (C.D. Cal. June 29, 2007) ("In antitrust cases, courts have allowed liberal discovery.").

Amazon's position has shifted since the parties' last joint status report. *See* Dkt. #246 at 14-15. Amazon is currently proposing a default time period from January 1, 2016, through a single, yet to be determined date after the filing of the Complaint for custodial collections, with a potentially narrower default range for certain targeted collections. Amazon first proposed this default time period on August 8, after eight months of negotiations. Prior to August, Amazon refused to move from its initial position of January 1, 2018 through September 26, 2023, a position it supported with nothing more than "blanket objection[s] without specifics." *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005). Indeed, it was not until a meet and confer on August 22 that Amazon clearly articulated a purported basis for its relevance objection to Plaintiffs' proposed start date.

### B. Disputes Regarding Amazon's Discovery Responses and Productions

While the parties have made incremental progress on various fronts since the June 6, 2024 status conference, Plaintiffs believe that a ruling from the Court on five specific issues would be helpful—and for the first three issues, is *necessary*—to keep discovery moving forward and on track with the case schedule set by the Court. Plaintiffs respectfully request that the Court (1) set interim discovery deadlines, including a deadline for Amazon to substantially complete its document productions by January 15, 2025; (2) increase the cadence of status conferences to hold a conference every two months, at least through the close of fact discovery; and (3) confirm Amazon's obligations to diligently investigate, disclose, and search non-custodial document

JOINT STATUS REPORT - 15
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

repositories. Plaintiffs also ask that the Court (4) compel Amazon to produce personnel reviews, evaluations, and promotion materials from Amazon's central repository; and (5) compel Amazon to produce discovery correspondence from the *California* Action and Related Cases and reproduce all documents produced in the *California* Action or Related Cases on a rolling basis within one week of their initial production. Finally, if the Court is still inclined to hold an Economics Day, as the Court proposed at the June 6, 2024 status conference, Plaintiffs request that the Court adopt Plaintiffs' proposal regarding the scope and protocol for that hearing and schedule the hearing for October or November 2024.

### 1.  Interim Discovery Deadlines

Plaintiffs previously proposed interim discovery deadlines to help ensure that the parties make meaningful discovery progress and stay on track with the deadlines ultimately set by the Court. *See, e.g.*, Dkt. #135 at 12-13 (Dec. 15, 2023 JSR); Dkt. #135-1 at 2-3 (Plaintiffs' Proposed Case Management Order, including interim deadlines for the substantial completion of document discovery). While the Court did not order those deadlines at the outset of discovery, the parties' experience to date and the slow pace of discovery shows that interim deadlines are necessary now.

Without interim discovery deadlines, negotiations over the scope of Plaintiffs' document requests have taken half a year or more. Now the parties' negotiations over search methodology, non-custodial sources, and the date range for discovery seem poised to last just as long, if not longer. Even where Amazon has agreed to produce responsive information, it has generally refused to commit to any timeline. For example, Amazon has cited the lack of negotiation progress in refusing to commit to (or so far, to even discuss) a deadline by which it will substantially complete its production of custodial documents. Further delays in Amazon's

1   compliance with Plaintiffs' document requests could in turn delay the depositions of Amazon

2   witnesses and key third parties, and risk derailing the Court's existing case schedule.

3         In July, Plaintiffs told Amazon that the parties should set milestones for document

4   collection and review to ensure that the parties were making progress in line with the Court's

5   schedule. Plaintiffs explained that Amazon should produce documents on a rolling basis and

6   substantially complete its document production by the end of 2024 to ensure that the parties

7   could move forward with depositions and conduct any necessary follow-up discovery in 2025.

8   Among other deadlines, Plaintiffs proposed that Amazon begin its document review by

9   September 3, 2024, and produce documents on a rolling basis, with productions every two

10  weeks, and that Amazon should substantially complete its document production no later than

11  December 20, 2024. Amazon objected to those milestones but was not willing to provide a

12  counter-proposal.

13        To keep discovery moving, Plaintiffs respectfully request that the Court order that:

14  • Amazon must begin its custodial document review no later than **September 23,**

15  **2024**. To the extent the parties have been unable to reach an agreement by this

16  date regarding Amazon's search methodology (including TAR, custodians, search

17  terms, non-custodial sources, or date ranges), Amazon must start its review based

18  on its last proposal(s). Plaintiffs will submit any remaining disputes to the Court

19  for resolution promptly and within seven days of reaching an impasse.

20  • Amazon must produce documents on a rolling basis, with substantial productions

21  at least every two weeks beginning on **October 14, 2024**.

22  • Amazon must substantially complete its production of documents no later than

23  **January 15, 2025**, except as agreed upon by the parties.

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

### 2. Timing of Status Conferences

To ensure that disputes can be brought to the Court's attention and resolved quickly, Plaintiffs have previously proposed holding status conferences every two months, rather than quarterly, through the completion of fact discovery. *See* Dkt. #135 at 10; *see also* June 6, 2024, Hr'g Tr. 11:14-25. Given the current state of discovery and ongoing issues with Amazon's pace in complying with its discovery obligations, Plaintiffs again request that the Court amend its scheduling order to provide for bimonthly status conferences, beginning in early November 2024. During the lead-up to both this status conference and the June 6, 2024 status conference, the parties made significant progress on key discovery issues that had previously stalled, demonstrating that increasing the frequency of status conferences should speed the pace of discovery.[6] Holding status conferences more frequently may also allow the Court to resolve some disputes that would otherwise delay discovery or require full motion briefing.

### 3. Obligation to Identify and Search Non-Custodial Repositories

Throughout the parties' discovery negotiations, Amazon has consistently failed in its obligation to investigate, identify, and disclose the existence of non-custodial document repositories (e.g., documents stored not with specific individuals but on shared sources such as network shared drives or databases). Under the Court's ESI order, Amazon was required to disclose a "list of non-custodial data sources (e.g., shared drives, servers), if any, likely to

---

[6] For example, with respect to Amazon's production of structured data, although Plaintiffs served their data-related requests over six months ago, it was not until the preparation of this joint filing that Amazon agreed to provide estimated completion dates for all of the data requests in Plaintiffs' Third Set of Requests for Production. Plaintiffs understand that Amazon's dataset production timelines will include production dates on a rolling basis, as required by the Court's Case Management Order (Dkt. #161, 2.c.) and that Amazon will provide data samples or data fields and definitions, where appropriate, to allow for streamlined, good-faith negotiations. The parties also made significant progress on data discovery and several other issues in conjunction with the June 6, 2024 status conference.

JOINT STATUS REPORT - 18
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  contain discoverable ESI" no later than June 25, 2024. *See* Dkt. 256 at 2. Amazon's June 20 ESI

2  Disclosures simply referred Plaintiffs to a February 22 letter in which, after objecting to

3  relevance, Amazon provided an incomplete high-level description of sources of discoverable ESI

4  in response to one of Plaintiffs' requests for production. That list is so high-level that it is

5  functionally useless as a basis for negotiations.

6        Amazon finally agreed on August 23, in the lead-up to this status conference, that it

7  would provide a full list of sources of responsive material beyond an individual custodian's files,

8  and, when collecting from shared drives and the like, it will search for and produce from files

9  where custodians had *access*, not merely where custodians created or edited documents. While

10  there is some disagreement between the parties about whether shared drives and similar

11  repositories are custodial or non-custodial, Plaintiffs are not concerned with whether something

12  is designated as custodial or noncustodial as long as the relevant sources are disclosed and the

13  scope of the search is clear.

14        Plaintiffs are concerned, however, that when they have repeatedly identified various

15  sources of Amazon's own information to Amazon, in response, Amazon has taken over a month

16  to investigate those sources (which it should have already investigated as part of its due

17  diligence), only to ultimately provide piecemeal responses that often do not withstand scrutiny.

18  For example, Plaintiffs sent Amazon a letter on July 8 inquiring about Amazon's "Kingpin"

19  database, which Amazon witnesses testified about during Plaintiffs' pre-Complaint investigation

20  as containing information about Senior Leadership Team business goals. Amazon did not

21  disclose Kingpin in its ESI disclosures and then, after receiving the aforementioned letter spent

22  over a month purportedly investigating Kingpin. When Amazon ultimately responded, it said that

23  the witness identified did not have fulfillment-related responsibilities, and Plaintiffs had only

24  asked about Kingpin in connection with the fulfillment aspect of the case. Plaintiffs have since

JOINT STATUS REPORT - 19
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   located documents showing that Kingpin is used by fulfillment teams to track S-Team goals, and

2   that it contains responsive information related to other aspects of the case. Amazon still has not

3   committed to searching Kingpin for responsive documents.

4        It is Amazon's obligation to identify non-custodial sources of information that are likely

5   to contain information responsive to Plaintiffs' document requests. Amazon is currently forcing

6   *Plaintiffs* to identify non-custodial sources on a piecemeal basis, even though Amazon plainly

7   has superior information about what information it has and where that information is stored.

8   When Plaintiffs are able to identify specific sources, Amazon typically argues that those sources

9   are not relevant, based on the information identified by Plaintiffs, but does not share the results

10  (if any) of its own investigations.[7]

11       Plaintiffs are willing to negotiate regarding any specific objections Amazon may have to

12  searching particular repositories, but any such negotiations depend on Amazon conducting a

13  diligent search for non-custodial repositories (which only Amazon can do), fully disclosing the

14  nature of the repositories to Plaintiffs, and identifying any specific reasons why Amazon

15  contends it should be excused from its obligation to conduct a reasonable search for responsive

16  documents.

17       Plaintiffs accordingly respectfully request that the Court:

18

19

---

20  [7] Kingpin is not the only example. For example, Plaintiffs have also had to affirmatively inquire about the SAINT (Seller Anecdote and Insight Narrowing Tool) system, which is a tool allowing

21  Amazon employees to access the result of feedback provided by sellers on Amazon. That feedback includes sellers' dissatisfaction with FBA, sellers' desires to diversify to other

22  channels, and sellers' fears regarding Amazon's anti-discounting programs. Amazon has refused to commit to producing files from SAINT. While Amazon claims SAINT has been "deprecated,"

23  it has not denied that it can still retrieve responsive information from this system. Given that SAINT only launched in 2020, and the fact that Amazon has been subject to litigation holds

24  since then, Plaintiffs would be concerned if this system no longer exists.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

- Confirm that Amazon must conduct a diligent search for non-custodial sources (including centralized repositories and shared drives) that may contain documents responsive to Plaintiffs' discovery requests, and that Amazon must conduct a reasonable search of those non-custodial sources for documents responsive to Plaintiffs' discovery requests;

- Order Amazon to produce, no later than September 17, 2024, a list of non-custodial sources (including centralized repositories and shared drives) likely to contain discoverable ESI, at a level of detail that will allow the parties to meaningfully discuss Amazon's collection, review, and production of documents from non-custodial sources;

- Order Amazon to supplement that disclosure on a rolling basis, no later than five days after identifying any non-custodial sources that may contain documents responsive to Plaintiffs' discovery requests;

- Order Amazon to promptly provide Plaintiffs with information (starting no later than September 17, 2024, and continuing on a rolling basis) regarding (a) what Amazon has done so far to search for non-custodial sources; (b) what Amazon is continuing to do to search for non-custodial sources; (c) what non-custodial sources Amazon is searching or commits to search for responsive documents; and (d) how Amazon is conducting those searches; and

- Order Amazon, to the extent it is objecting to searching any non-custodial sources, to promptly identify specific objections as to why it should not have to search those repositories.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

### 4. Personnel Reviews

In the parties' last joint status report, Plaintiffs flagged that Amazon was refusing to produce personnel reviews, evaluations, and promotion materials concerning individuals with responsibilities relating to the conduct described in the Complaint.[8] *See* Dkt. #246 at 11. These materials are highly relevant, including because they can identify relevant company goals (for example, regarding Amazon's pricing strategies at issue in this case), a specific employee's acts to further those goals, and Amazon's progress in achieving those goals, with significant discussion of the relevant markets and Amazon's conduct in them. *See id.*

While Amazon has confirmed that a central repository exists for these documents, Amazon's position to date has been that it will only produce personnel reviews if they happen to turn up in the course of searching a particular custodian's files. Amazon has maintained this position even though it has admitted that individual employees do not have access to their own personnel review, evaluation, and promotion materials, which means that any custodial collection will be incomplete.[9]

---

[8] Plaintiffs' RFP No. 32 calls for: "All Documents relating to personnel reviews, evaluations, and promotion materials (whether in draft or final form) concerning individuals with responsibilities relating to the conduct described in the Complaint . . . ." As noted here, Plaintiffs are willing to narrow the scope of that request to the custodians agreed upon by the parties or ordered by the Court.

[9] Amazon states that Plaintiffs will receive relevant personnel reviews in custodial files but does not address the fact that custodians do not have access to their own personnel review, evaluation, and promotion materials. For example, Amazon "confirmed in writing" that personnel materials will be included in productions of custodial files, and it identified a promotion request that was produced during Plaintiffs' investigation from the files of a higher-level employee (Amazon's CFO, who Amazon continues to object to as a custodian in this litigation). *See* Amazon-FTC-CID_07679127 at -130 (describing employee's efforts to expand Amazon's Advertising business despite "challenges [that] remain as we push the envelope on monetization through increased prominence of placements, placement parity, and increasing placement density"). A collection from Amazon's centralized repository is necessary to ensure that personnel materials for custodians—who may be deponents and trial witnesses—are produced.

JOINT STATUS REPORT - 22
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1      A party opposing discovery "has the burden to show that discovery should not be

2 allowed, and has the burden of clarifying, explaining, and supporting its objections with

3 competent evidence." *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (internal citations

4 and quotations omitted). The party opposing discovery "cannot simply invoke generalized

5 objections," but instead "must show specifically how, despite the broad and liberal construction

6 afforded the federal discovery rules, each request is not relevant or how each request is overly

7 broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the

8 nature of the burden." *Sherman v. CLP Res., Inc.*, 2014 WL 12850524, at *2 (C.D. Cal. Sept. 10,

9 2014) (internal quotation and citation omitted).

10      Amazon has not offered any explanation as to how searching a centralized repository for

11 documents related to a discrete set of employees could be unduly burdensome. Plaintiffs

12 respectfully request that the Court order Amazon to collect and produce personnel reviews,

13 evaluations, and promotion materials from its centralized repository for all document custodians

14 agreed upon by the parties or ordered by the Court. Plaintiffs further ask that the Court order

15 Amazon to produce those documents for the individuals on Amazon's current proposed

16 custodian list no later than September 17, 2024.

17      **5.  Discovery Correspondence from the California Action and Related Cases**

18      **and the Timing of Document Reproductions**

19      In the parties' last status report, Plaintiffs flagged several disputes regarding Plaintiffs'

20 requests for materials Amazon has produced in the *California* Action and Related Cases. *See*

21 Dkt. #246 at 10-11. While Amazon has recently resolved several of those issues by agreeing to

22 Plaintiffs' requests, two disputes remain.

23      First, Amazon objects to producing all discovery correspondence from the *California*

24 Action and Related Cases, which Plaintiffs have sought to expedite discovery negotiations and

JOINT STATUS REPORT - 23
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Amazon's production of structured data.[10] After months of discussions, Amazon has produced

2    select correspondence from the *California* Action and a summary of certain document

3    productions in that case. However, Amazon refuses to provide *all* discovery correspondence, on

4    the grounds that Plaintiffs' request seeks "piggyback discovery and discovery-on-discovery

5    materials that are not relevant to Plaintiffs' claims." Amazon also claims that Plaintiffs' request

6    is unduly burdensome but has not provided any support for that objection.

7         The discovery correspondence at issue is relevant here. The parties have agreed that the

8    subject matter of this case overlaps with the *California* Action and Related Cases. *See* Dkt. #135

9    (Dec. 12, 2023 JSR) at 38-39. As a result, the discovery correspondence from those cases is

10   highly likely to contain information that could inform and expedite the parties' discovery

11   negotiations here. The limited documents provided by Amazon have contained useful

12   information regarding non-custodial sources and custodians; it is likely that the documents

13   Amazon is withholding contain additional information that could let the parties make faster

14   progress in discovery. On another note, Amazon has repeatedly referred Plaintiffs to documents

15   Amazon is reproducing from the *California* Action, but Plaintiffs do not have the details of what

16   Amazon agreed to produce in that action, or insight into how any agreements with the California

17   Attorney General were reached.[11] While Amazon recently produced in mid-August a summary

18   description of certain *California* Action productions, Plaintiffs should not be forced to rely on

19   Amazon's second-hand narratives when the first-hand correspondence between Amazon and

20

21   ───────────────
     [10] Plaintiffs' RFP No. 23 calls for: "All written correspondence between the parties in *People of*
22   *the State of California v. Amazon.com, Inc*., No. CGC-22-601826 (Cal. Super. Ct.) or any of the
     Related Cases regarding discovery issues."

23   [11] Plaintiffs cannot obtain this correspondence directly from the California Attorney General or
     the plaintiffs in the Related Cases because Amazon routinely designates its discovery
24   correspondence as Highly Confidential or Confidential under the protective orders in those cases.

JOINT STATUS REPORT - 24
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    other parties is readily available. Amazon's discovery correspondence regarding structured data

2    would be particularly useful. As an initial matter, those documents may identify sources of

3    relevant data that were discussed in other cases but ultimately not searched or produced. Those

4    documents also likely contain information Amazon provided in other cases to interpret and

5    explain certain structured data, which would eliminate the need for duplicative back-and-forth

6    questioning and could speed up the production of structured data in this case.

7        All of this correspondence can be readily collected and produced with minimal, if any,

8    burden. *See O.H. v. Secret Harbor*, 2024 WL 310281 at *1 (W.D. Wash., Jan. 26, 2024) ("As a

9    practical matter, if [Defendant] has already produced documents responsive to similar requests in

10    the state court proceedings (likely in electronic format), the burden of producing the same

11    documents in this lawsuit should be low."). The documents Plaintiffs are seeking are almost

12    certainly in centralized files held by Amazon's outside counsel, including outside counsel

13    representing Amazon in this case. Accordingly, Plaintiffs respectfully request that the Court

14    order Amazon to produce all discovery correspondence from the *California* Action and Related

15    Cases.

16        Second, Amazon has not responded to Plaintiffs' request that Amazon produce any

17    further reproductions from the *California* Action and Related Cases within one week of their

18    initial production. Such an assurance is important because Amazon waited months before

19    reproducing earlier productions in the *California* Action. Plaintiffs do not believe that schedule

20    could be unduly burdensome, given that Amazon can plan for those productions. Plaintiffs

21    respectfully request that the Court order Amazon to make any reproductions from the *California*

22    Action or Related Cases within one week of their productions in those cases.

23

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

### 6.  Economics Day

At the June 6, 2024 status conference, the Court proposed "a hearing where [the Court] would hear from both sides' economists about the theories being advanced in this case," with the goal of being "as educated as possible regarding the economic theories in this case." June 6, 2024, Hr'g Tr. 4:14-24. The parties met and conferred, and then submitted competing proposals regarding the scope and protocol for that hearing. *See* Dkt. #263. Plaintiffs believe their proposed structure and ground rules for the hearing would best address the Court's request. If the Court is still inclined to hold an Economics Day, Plaintiffs request that the Court set a date for that hearing in October or November 2024.

### C.  Plaintiffs' Discovery Responses and Productions

In response to Amazon's First Set of Requests for Production, Plaintiffs agreed to conduct a reasonable search of documents within their possession, custody, or control for responsive, non-privileged pre-Complaint documents from and communications with third parties related to Plaintiffs' respective investigations. Plaintiffs substantially completed their agreed-upon productions of documents on May 24, 2024.

Amazon served its First Set of Interrogatories on Plaintiffs on July 30, 2024. Plaintiffs will serve their responses and objections on August 29, 2024.

### D.  Third Party Discovery

Plaintiffs have served 21 document subpoenas to online retailers, marketplaces, and third-party logistics providers, and will continue to issue additional subpoenas on a rolling basis as needed. Plaintiffs are also conferring with third-party subpoena recipients regarding the scope of their responses to Plaintiffs' requests.

Plaintiffs participated in the depositions of two third-party witnesses who were initially noticed in the *California* Action. Plaintiffs have issued deposition subpoenas to five third-party

JOINT STATUS REPORT - 26
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   witnesses and are discussing other potential coordinated depositions with California and

2   plaintiffs in certain Related Cases.

3       The parties have agreed to regular exchanges of information about subpoenas to third

4   parties and third parties' responses and objections. The parties have also agreed to hold joint

5   meet and confers when requested by third parties in order to minimize the burden of discovery

6   for third parties.

7   **IV.   AMAZON'S REPORT ON THE STATUS OF DISCOVERY**

8       **A.   Amazon's Responses to Plaintiffs' Written Discovery.**

9       Amazon is actively and diligently responding to Plaintiffs' voluminous discovery

10  requests.  Plaintiffs air many "concerns" with the Court but their characterization of the

11  dynamics of the parties' interactions elides important context that must be provided.

12      **Plaintiffs' Disregard for Efficiency or Compromise.**  Plaintiffs have issued a total of

13  393 Requests for Production,[12] which seek voluminous documents in addition to the more than

14  1.7 million documents that Amazon produced to Plaintiffs during the four-year pre-Complaint

15  investigation by the FTC and certain of the Plaintiff States.  Those documents date back to 2016

16  and earlier, and have been deemed produced in this case.  The parties have actively engaged in

17  conferrals related to these 393 Requests.  Since the last status conference alone, there have been

18  more than 20 conferrals spanning over 31 hours, addressing over 170 different Requests for

19  Production, all of Plaintiffs' interrogatories, and other discovery-related protocols such as

20  privilege logging, the use of TAR, custodians, and search terms.  Additionally, since the last

21  status conference, Plaintiffs have sent Amazon approximately two dozen letters from a dozen

22   

---

23  [12] At the time of the June Status Conference, Plaintiffs had issued 349 Requests for Production.
    On June 28, 2024, Plaintiffs issued a Fourth Set of Requests for Production with an additional 44
    requests.  Amazon responded to those, and the parties have discussed them in four conferrals to

24  date.

JOINT STATUS REPORT - 27
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    different lawyers consisting of more than 200 single-spaced pages with additional questions,

2    requests, or arguments coming out of the conferrals.  Amazon has responded to those letters after

3    consideration and investigation.[13]  The burden imposed by these efforts is difficult to overstate:

4    As a practical matter, Plaintiffs' approach has resulted in demands that Amazon simultaneously

5    investigate hundreds of questions without any effort by Plaintiffs to prioritize and without

6    apparent regard for the importance of the questions to the case or the present procedural posture.

7    In an effort to work cooperatively, progress the litigation forward, and avoid burdening the Court

8    with disputes, Amazon has sought to consider and investigate Plaintiffs' questions even when

9    doing so goes beyond Amazon's obligations in responding to particular Requests for

10   Production.[14]

11          Yet Plaintiffs will criticize Amazon even where Amazon has agreed to produce or has

12   answered the questions they asked.  This criticism is unfounded, both generally and in the

13   specific examples they provide.  First, Plaintiffs' discussion of the parties' negotiation on Supply

14   Chain by Amazon and Buy with Prime—about which Amazon has agreed to produce

15   documents—lacks context.  Neither of these programs is mentioned in the Complaint, yet

16   Plaintiffs propounded roughly thirty Requests for Production that sought documents related to

17   them.  Although Amazon maintained that these programs were not independently relevant to

18

19   [13] Plaintiffs state that at one point they were waiting for responses on eight outstanding letters,
     but they fail to mention that Amazon had responded to the vast majority of the items in most of
20   those letters but was still investigating a few questions.  They also fail to note that in the
     preceding month Plaintiffs had sent fourteen letters totaling 86 pages.  Meanwhile, it took
21   Plaintiffs five weeks to respond to a single three-and-a-quarter page letter from Amazon asking
     questions about the productions Plaintiffs made.

22   [14] For example, Amazon invested substantial effort to prepare and draft data field definitions for
     reproduced datasets, including in many instances where such definitions did not exist in the
23   ordinary course of business.  Beyond identifying and producing the data, this required Amazon
     to investigate with numerous individuals the meaning of various data fields purely for Plaintiffs'
24   benefit.

JOINT STATUS REPORT - 28                        **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                      600 Pennsylvania Avenue, NW
                                                Washington, DC 20580
                                                (202) 326-2222

Plaintiffs' claims, Amazon clarified months ago that its production would include documents relating to Supply Chain by Amazon or Buy with Prime to the extent otherwise responsive and relevant documents included information about those programs.  Plaintiffs insisted on pursuing a motion to compel on all of the RFPs.  Amazon did not want to burden the Court with this dispute and therefore agreed to search for and produce documents relating to those programs.  It did not concede the relevance of these programs to Plaintiffs' claims.

Second, Plaintiffs' complaint regarding Amazon's investigation into "other Amazon ecommerce fulfillment services" seems to amount to a complaint that it took too long for Amazon to get Plaintiffs an answer to one of the scores of questions Plaintiffs asked Amazon to investigate in connection with their hundreds of document requests.  In conferral on the issue of what Plaintiffs sought by their reference to "other Amazon ecommerce fulfillment services," Plaintiffs explained that they tacked on "other" services as a catch-all to requests that named specific fulfillment services in which they were interested.  Amazon agreed to investigate the existence of "other" services.  Plaintiffs never signaled that this question was a priority over the many others they asked, and they do not say so now either.  In any event, Amazon provided a response to this question nearly two months ago, and Plaintiffs have been silent on the issue since that time.

**Targeted collections.**  For several dozen of Plaintiffs' requests, Amazon has agreed to targeted collections—i.e., Amazon has agreed to collect and produce specific documents (which requires searching across many different units of Amazon's business), or to collect and reproduce documents that Amazon produced in other related cases.  Amazon has produced, on a rolling basis, over 525,000 documents (totaling over three million pages) of these collections. Amazon promised to begin producing these collections on a rolling basis on June 15, 2024, July 15, 2024, August 15, 2024, and September 15, 2024, and agreed to substantially complete

1  reproductions from other cases by July 1, 2024.  As Amazon anticipated in the last Joint Status

2  Report, Amazon has not missed any of the anticipated targeted production or substantial

3  completion deadlines it provided in its responses to Plaintiffs' requests.

4        Plaintiffs downplay the importance of these productions, even though they affirmatively

5  sought them and repeatedly asked for updates regarding when they would receive them.  They

6  now imply that Amazon's reproductions of materials produced in the *California* action and

7  Related Cases have little significance to Plaintiffs' ability to continue building their case in this

8  Action.[15]  But those materials provide Plaintiffs with over half a million additional documents

9  relating to many of Plaintiffs' allegations from many of the custodians Plaintiffs have proposed

10  in this action—meaning that Plaintiffs today have over 2.2 million documents from

11  Amazon.  Indeed, 43 of the 58 custodians in the *California* action are custodians that Plaintiffs

12  seek to include in this action, and Plaintiffs therefore already possess a meaningful amount of

13  documents they would expect to be produced from these custodians.  Meanwhile, Plaintiffs also

14  minimize the documents Amazon has produced in response to requests for targeted documents—

15  like key business planning documents, board materials, and financial information—by

16  suggesting that they are unimportant because the volume totals only around 3,000 documents.

17  But for targeted collections, it is not a game of quantity; the question is whether Plaintiffs get the

18  key, relevant documents that are the subject of that request, and the answer is yes: Amazon has

19  started producing, and in many instances finished productions for, over 50 of the 60 targeted

20  collections Amazon has agreed to make.

21        **Custodial collections.**  For several hundred other requests, Amazon has agreed to

22  produce documents after it collects files from Amazon's current and former employees and runs

23

24  ---
[15] At the same time, they move for an unnecessary order that these materials be produced on a
particular pace.

JOINT STATUS REPORT - 30
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

search terms over those files to narrow them down to materials that are responsive to the

Plaintiffs' document requests.   Amazon also plans to use TAR to identify responsive documents,

pursuant to a protocol that is currently being discussed among the parties.   The parties are in

active negotiations regarding the rest of the process for those custodial productions, including

discussions regarding custodians and search terms.   Although the parties have different

perspectives on certain aspects of those negotiations, the parties are currently working through

those differences and Amazon hopes that continued work by both sides can resolve these

disputes without the Court's further involvement.

Three areas identified by Plaintiffs in their narrative—but not as disputes for the Court's

intervention—show how the parties have the opportunity to continue productive negotiations.

**TAR.**   The parties have made substantial progress negotiating TAR since the last status

conference:

- The parties are near agreement on a final, detailed TAR protocol that will govern
  Amazon's use of TAR in this matter.

- The parties are aligned on using search terms as an initial step to identify potentially
  responsive documents for each custodian that will be put through a TAR workflow to
  determine which are actually responsive.

The parties are still negotiating which search terms will be applied to create the subset of

documents that will be subject to the TAR review.   Plaintiffs' current proposal returns some 15

million documents for 54 of the parties' agreed-upon custodians and would return an estimated

41 million documents if applied to all 148 of their proposed custodians.   This raises two issues.

First, the volume of documents that would require human review is far too large.

Although Plaintiffs have asserted that TAR would effectively negate any burden arguments, that

is incorrect.   TAR brings considerable efficiencies for both parties, but it is not a magic wand.

JOINT STATUS REPORT - 31
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  There will still be a substantial review component—perhaps on the order of 30% of documents

2  subject to the TAR workflow.  At current volumes, no party can review the volume of documents

3  by Plaintiff's proposed deadline of the beginning of next year.  As discussed below, Amazon

4  proposes a reasonable path forward for refinement of the search terms.

5      Second, there are limits to the TAR tool's ability to ingest such large document volumes.

6  In an effort to be transparent and ensure the efficient and orderly production of documents,

7  Amazon has raised this issue early and often throughout search term and TAR negotiations.

8  Amazon's representations stem from its discovery counsel's extensive experience in similar

9  matters, as well as the experience of its discovery vendor Consilio—one of the largest vendors in

10  the world with vast experience in complex cases.  Plaintiffs have largely dismissed these

11  technological concerns, while failing to have individuals with substantive TAR experience on the

12  meet and confer discussions, relaying performance claims from an unidentified sales

13  representative, and suggesting engineering solutions based on information found through online

14  searches.[16]

15      Plaintiffs have suggested that the parties may be able to agree on a set of search terms

16  that will result in a volume of documents that will not implicate our concerns.  Amazon is

17  hopeful that the parties can reach such an agreement.  At that point, disagreements over the TAR

18  tool's theoretical limits would become moot.

19

20

---

21  [16] Plaintiffs cite three cases where somewhat more than 9 million documents were reviewed by
   defendants. It is unclear from our review of the docket whether any of the parties used
22  Brainspace (the TAR tool at issue here) or a TAR 2.0 review, as the parties contemplate here.
   Moreover, those cases appear to have allotted considerably more time to complete document
23  review than the roughly four-month period proposed by Plaintiffs. *See, e.g.*, *In re Domestic
   Airlines Travel Antitrust Litig.*, No. 1:15-mc-1404, Dkt. #152, (D.D.C. Jan. 30, 2017); *id.* #207
24  (Feb. 14, 2018) (extending timeline for "core document production" to a 15-month period).

***Search Terms.***  Based on its due diligence, Amazon proposed over 200 search terms to be used to search the documents of 54 custodians[17] likely to have responsive documents.  In contrast, Plaintiffs proposed over 1,100 search terms across 148 custodians.[18]  Amazon has informed Plaintiffs that Plaintiffs' proposed terms, when run only against the 54 custodians Amazon initially proposed (as opposed to the 148 proposed by Plaintiffs), hit on a massive population of 15 million documents.

Despite these differences, Amazon has proposed a way forward:  In an August 8 letter, Amazon asked that Plaintiffs consider whether any of the 200 general terms they propose to run against all custodians—terms like "Microsoft," and "Jesus" that Plaintiffs proposed be run without limiters—can be deleted or adjusted, while Amazon works with the approximately 900 subject matter-specific terms Plaintiffs have suggested to see if there is a middle ground that can be reached.  In that letter, Amazon raised several different types of concerns with the 200 general terms, and provided examples; those concerns were not solely related to burden.  Plaintiffs did not respond to Amazon's proposed approach for bringing the parties together until the parties discussed it on an August 22 conferral.  In that call, Plaintiffs refused to commit to reconsidering their general terms, and argued that they could not assess those items without hit counts.  Amazon challenged the premise that Plaintiffs could not reconsider whether terms like Jesus or Microsoft could be reconsidered based solely on their facial lack of connection to the case, and asked Plaintiffs to work together with Amazon to get the parties closer.  Given the high-level concerns Amazon had with Plaintiffs' approach, Amazon also proposed the parties begin to exchange hit counts once their approaches were in the same ballpark and committed to including

---

[17] Amazon has agreed to 59 custodians as of this JSR.

[18] Plaintiffs have made almost no attempt to engage with Amazon's terms; in many cases, they just added those terms on top of the terms they have proposed.

hit counts for its anticipated counter-proposal to the subject matter-specific terms.  After
Plaintiffs refused to engage in any negotiation without hit counts for their facially overbroad and
problematic terms, Amazon agreed to provide hit counts for those terms too.  On August 27,
Plaintiffs agreed that they would reconsider the general terms.  Amazon anticipates sending back
its counter-proposal for the approximately 900 subject matter terms by August 30.  Amazon's
hope is that if the parties work together on more focused terms, they can get the hit count into an
acceptable range for TAR to function appropriately while also capturing the documents Plaintiffs
have requested.

     ***Date Range.*** The parties continue to discuss but have not yet fully agreed on the relevant
date range that will govern the productions:  Plaintiffs seek production of documents responsive
to all requests dating back to 2014.  Amazon proposes that the proper date range should
generally begin at January 1, 2016.  This is the date range that corresponds to the vast majority of
the events and practices alleged in the Complaint.  To the extent that an earlier date range is
appropriate for specific topics or issues, Amazon has agreed to produce documents from earlier
years, and it is willing to discuss specific issues for which an earlier date range would be
appropriate.  Amazon and Plaintiffs continue to negotiate the date range.

**B.**     **Plaintiffs' Disputes Regarding Amazon's Discovery Responses and Productions**

    **1.**     ***Plaintiffs' Request for Interim Discovery Deadlines and a Deadline for Amazon to Substantially Complete Document Productions by the Beginning of Next Year***

     Plaintiffs ask the Court to implement interim discovery deadlines, including a deadline
for Amazon to substantially complete document production by the beginning of next year.
Amazon shares Plaintiffs' interest in completing discovery efficiently, and has been diligently

JOINT STATUS REPORT - 34
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

producing documents and electronic data for months.  But at this stage, interim deadlines are not feasible and would not be effective.  As noted above, although the parties have been working in good faith, they have not yet agreed on custodians, search terms, and time periods, which will be the key drivers of the scope of the document production.  The date range, search terms, and number of custodians currently proposed by Plaintiffs would make meeting a substantial production deadline over a roughly four-month period impossible.  Because the time needed to complete a document review depends on the number of documents that need to be reviewed, setting a deadline for substantial completion at this stage puts the cart before the horse. Amazon has told Plaintiffs numerous times that it is willing to discuss interim discovery guidelines once the parties have a sense of the scope of the review.

Amazon does not believe that interim deadlines will improve the parties' negotiations, and would not impose them at this time.  But if the Court views interim deadlines as necessary, Amazon would request the parties meet and confer and propose deadlines that encourage both parties to take reasonable positions.[19]  Amazon further requests that any interim deadlines be subject to revision by written agreement of the parties in order to avoid unnecessary involvement of the Court in the event the parties need additional time.

### 2.    *Request for More Frequent Status Conferences*

Plaintiffs request that the Court hold status conferences every two months, instead of every three months.  Amazon believes that the Court's current cadence of quarterly status conferences, as set forth in the Case Management Order, is appropriate.  Dkt. 161, ¶ 1.  To the extent more frequent conferences would be driven solely by Plaintiffs' perception of the pace of

---

[19] Plaintiffs' proposal would place no incentive on Plaintiffs to be reasonable.  It would require Amazon to be bound by the deadline but allow Plaintiffs the opportunity to request more.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   discovery in this matter, Amazon maintains that the parties are capable of continuing to resolve
2   and negotiate disputes without more frequent court intervention.

3          The parties have made substantial progress on negotiating the scope of Amazon's
4   responsive discovery to date.  The parties have reached substantial agreement about what the
5   material scope of production should be in this matter, and given that agreement, the parties are in
6   a position to work together on reaching substantial agreement on search terms and custodians.[20]

7          **3.      *Non-Custodial ESI Sources***

8          Plaintiffs assert that Amazon has failed to comply with the ESI Order's requirement to
9   disclose non-custodial data sources.  That is incorrect:

10  - On June 20, 2024, Amazon disclosed a list of 20 custodial and non-custodial data sources
11    and categories of data sources to Plaintiffs.

12  - Amazon has since engaged with Plaintiffs' questions regarding Amazon's disclosure and
13    provided clarification on the search strategy for certain data sources, including Quip,
14    SharePoint, Workdocs, Amazon Drive, and Home Drive.

15  - During a meet and confer on August 23, 2024, Amazon agreed to provide by August 30
16    an updated disclosure, at Plaintiffs' request, with additional information, including (1)
17    whether a data source is custodial or non-custodial; and (2) for non-custodial data

18

19  [20] As Plaintiffs indicate, there is no ripe issue for the Court on structured data.  In its responses
20  and objections to Plaintiffs' requests for production, Amazon already provided estimated
    production deadlines for a substantial number of data productions, on a rolling basis from August
    2024 through February 2025—almost six months prior to the fact discovery deadline.  Amazon
21  began substantial data productions as soon as the parties' S3 production methodology was
    resolved in July 2024.  For other data requests that required further investigation and clarification
22  from Plaintiffs, Amazon has now agreed to provide additional estimated rolling production
    deadlines.  As it has in the past, Amazon will continue to cooperate and negotiate in good faith
23  with Plaintiffs to provide data on a rolling basis (having already produced or offered to produce
    over 200 TB), to provide data samples or data fields, where appropriate, and to provide data
24  sufficiently in advance of the final fact discovery deadline.

JOINT STATUS REPORT - 36
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

sources, whether Amazon believes the data source is likely to contain discoverable information.

Plaintiffs have also expressed concerns regarding whether Amazon conducted a reasonable search for non-custodial data sources.  This appears to be largely—if not entirely—based on Plaintiffs' identification of additional data sources it claims that Amazon failed to initially disclose.  Amazon has explained that two of the data sources raised by Plaintiffs are custodial rather than non-custodial—and, therefore, not subject to the ESI Order's requirement to disclose *non-custodial* data sources.  The remaining data source was disclosed *by Amazon* during the RFP negotiation process.  Moreover, Amazon has proposed a search and collection strategy for all three of these and has otherwise attempted to answer questions raised by Plaintiffs.

Amazon has also committed to disclosing any additional data sources it identifies as the parties continue to scope responses to Plaintiffs' overly broad requests for production and expressed a willingness to discuss any additional sources that Plaintiffs may identify through their own review of the voluminous discovery in their possession.

This is the process working as intended.  Amazon does not believe that the Court's intervention is warranted here.

### 4.  *Personnel Review Files*

Plaintiffs ask this Court to order Amazon to produce personnel review files for every custodian the parties agree to or the Court orders.  The Court should deny that request.

First, Amazon is surprised Plaintiffs chose to bring this issue to the Court without even following up on their own suggestion that perhaps Amazon could consider a narrower list of personnel files—or mentioning Amazon's agreement to do so over a month ago.  The parties have met and conferred about this request twice: first, on April 10, and then, after nearly three months without Plaintiffs seeking to meet again on the topic, on July 26.  During those

JOINT STATUS REPORT - 37
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  discussions, Amazon explained to Plaintiffs that these materials are extremely sensitive

2  (including within Amazon itself, which treats these as highly confidential) and of marginal

3  relevance, and that Plaintiffs' purported justification for needing them—to help them identify

4  relevant company goals, and Amazon's progress in achieving those goals—would be better

5  satisfied in myriad other documents Plaintiffs will receive in custodial files from Amazon's

6  decisionmakers.  But Amazon committed that it would produce any personnel review found in

7  custodial files that hit on Plaintiffs' search terms and was deemed responsive for their

8  substantive requests (i.e., their requests for documents related to subject matters).  And Amazon

9  *also* confirmed in writing that it would, as Plaintiffs requested, "consider a proposal from

10 Plaintiffs for a limited, targeted proposal of specific individuals whose personnel reviews

11 Plaintiffs seek."  Aug. 16, 2024 Ltr. from K. Trefz to C. Herd, at 3.  Despite sending several

12 letters to Amazon after its August 16 memorialization of that offer (originally made orally over a

13 month ago), Plaintiffs have not provided any response to Amazon.  It is disappointing that

14 Plaintiffs refuse to negotiate with Amazon regarding these highly sensitive documents that are of

15 minimal additive value.

16        Second, Plaintiffs' request should also be denied on the merits.  These files—which

17 Plaintiffs have requested regardless of the substantive topic they cover—have minimal

18 independent relevance.  Plaintiffs' purported justification for seeking the files is that they will

19 help identify Amazon's company goals and an employee's acts in furtherance of those goals.

20 But other documents Plaintiffs will receive (or already have received) are much better for this:

21 company planning documents, business updates, and the custodial files that reflect the employees

22 taking the actions will be a far better source of that information than any post-hoc, cursory write-

23 up in a personnel review.   And Plaintiffs' demand for these files is not limited by subject matter;

24 in other words, Plaintiffs seek an employee's reviews regardless of whether they discuss

1  company goals, on the theory that they *might*.  This is a classic fishing expedition that seeks to

2  wade through extremely personal, sensitive documents.

3   To be clear, if these documents hit on search terms and discuss relevant topics, Plaintiffs

4  will get these documents through custodial files, just as they did during their pre-Complaint

5  investigation.  Amazon confirmed in writing that many such personnel reviews and promotional

6  evaluations are indeed in those files, and it has confirmed that it will produce personnel files that

7  hit on the search terms and address one of the many topics at issue in the case.  If Plaintiffs are

8  correct that those reviews discuss Amazon's substantive goals, they will undoubtedly hit on the

9  substantive search terms the parties agree on.  Given the sensitivity of these files, their limited

10  and duplicative relevance, and that Plaintiffs will otherwise get relevant documents through other

11  means, the Court should deny Plaintiffs' request.

12     **5.** ***Discovery Correspondence from the California Action and Related***

13      ***Cases and Timing of Document Reproductions***

14   Plaintiffs ask the Court to order that Amazon produce all its correspondence related to

15  discovery in the *California* action and the Related Cases, and to reproduce all documents

16  produced to Amazon in those cases on a rolling basis, within one week of Amazon having

17  received them.  The Court should decline in both respects.

18   ***The Correspondence***.  Plaintiffs' Request No. 23 seeks from Amazon's lawyers all

19  discovery correspondence—every letter and email Amazon's lawyers have sent or received—in

20  the *California* case and Related Cases.  This information would primarily be in the possession of

21  Amazon's outside counsel who handle those cases.  Throughout the parties' conferrals over a

22  period of six months and here in the JSR, Plaintiffs have identified just two purposes for seeking

23  this material: they would like to understand the scope of Amazon's reproductions from other

24  cases and would like to use them to "expedite" discovery negotiations (though they do not say

JOINT STATUS REPORT - 39
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   how or regarding which issue the parties are negotiating).  In response to those purported

2   reasons, Amazon provided a collection of material that directly answered Plaintiffs' questions: 1)

3   the search terms and custodians it agreed to run in the *California* case; 2) a list of all targeted

4   productions Amazon agreed to in the *California* case; and 3) a collection of discrete requests for

5   production and correspondence regarding those collections.  Additionally, whenever Plaintiffs

6   had a specific question regarding a given reproduction, Amazon provided a detailed answer and

7   has committed to continuing to do so.  These materials are more helpful to understanding the

8   reproductions than the discovery correspondence itself would be; as is often the case in complex

9   matters, the exchanges between Amazon and its counterparties are both voluminous and

10  incomplete in that they do not capture the many oral conferrals that also occurred.  Nevertheless,

11  Plaintiffs claim these direct answers to their questions are insufficient and insist they want every

12  email and other piece of correspondence between Amazon and the California Attorney General.

13  But they have never explained what information is missing that they need to understand the

14  productions.

15         These materials are not independently relevant to Plaintiffs' claims or Amazon's

16  defenses, and Plaintiffs do not attempt to argue otherwise.  Instead, Plaintiffs' request constitutes

17  a clear attempt to obtain discovery on discovery, which is "disfavored," "closely scrutinized,"

18  and generally permitted only "where there is some indication that a party's discovery has been

19  insufficient or deficient."  *Anstead v. Va. Mason Med. Ctr.*, 2022 WL 1641425, at *5 (W.D.

20  Wash. May 24, 2022).  Rather than try to satisfy this standard to demonstrate a need for such

21  disfavored discovery, Plaintiffs merely bemoan that they "should not be forced to rely on

22  Amazon's second-hand narratives when the first-hand correspondence between Amazon and

23  other parties is readily available."  While that clearly does not provide "some indication that

24  [Amazon's] discovery has been insufficient or deficient" such that Plaintiffs are entitled to this

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   correspondence, it is also incorrect as a matter of fact.  The first-hand correspondence would be

2   *less useful* for Plaintiffs' purported purpose and this discovery is *not* readily available: collecting

3   and producing all discovery correspondence would be deeply burdensome due to its sheer

4   volume, the number of outside attorneys involved, and confidentiality issues involving third

5   parties.  Given the nebulous relevance and utility here, the associated burden is unwarranted.

6   The Court should deny this request.

7        ***The Timing of the Reproductions***.  It is unclear why Plaintiffs believe Court intervention

8   is necessary with respect to reproductions from other cases that Plaintiffs have timely received

9   and will continue to receive (as discovery in the other actions is ongoing).  Amazon substantially

10   completed providing the materials available for reproduction to Plaintiffs on July 1, 2024.  In the

11   weeks thereafter, Amazon has completed further rolling reproductions for additional documents

12   still being produced.  Plaintiffs have not expressed to Amazon any dissatisfaction as to the timing

13   of Amazon's reproductions since July, other than making general inquiries about what remained

14   to be produced.  Most of the materials that Amazon has not yet reproduced are ones that were

15   subject to an ongoing dispute between the parties that was resolved on August 14, 2024.

16   Amazon has already queued the remaining *California* materials for reproduction.

17        To the extent the Court agrees a deadline for reproductions is warranted, one week is

18   impracticable for the reasons Amazon noted in its response to Plaintiffs' Motion to Enter an ESI

19   Order.  ECF No. 191 at 3-4.  Each step of the reproduction process—ingesting the documents,

20   porting them from the document databases in the respective cases to Amazon's document

21   database for this case, preparing them for production, and providing them to Plaintiffs here—is a

22

23

24

1    process that can take several days at best, and much longer for sizable productions.[21]  If the

2    Court believes an order is necessary, it should order the parties to reproduce materials using

3    reasonable best efforts as soon as is practicable.  To be clear, Amazon is already complying with

4    that standard.

5            *6.    Economics Day*

6            As set forth in its submission as part of the June 27 Statement Regarding Proposed

7    Economics Day Hearing, Amazon believes that initial presentations in the Fall by counsel on the

8    economics issues of primary interest to the parties and the Court, followed by subsequent

9    presentations by proffered experts after expert reports have been exchanged, would be most

10   beneficial and would provide the Court with background and substance regarding how the

11   economic issues in the case interplay with the legal theories pled by Plaintiffs.  Amazon looks

12   forward to addressing any questions the Court has regarding the parties' proposals at the Status

13   Conference.

14   **C.    Plaintiffs' Responses to Amazon's Written Discovery**

15          As noted in the last status conference, Amazon served its First Set of Requests for

16   Production to each Plaintiff on November 14, 2023.  Those requests sought, inter alia, materials

17   comprising Plaintiffs' pre-Complaint investigation, including communications with and

18   documents from third parties.  Plaintiffs served their Responses and Objections on December 14,

19   2023.  The parties deferred discussion about Amazon's other requests until after the investigative

20   file was produced.  On May 24, 2024, Plaintiffs represented that their production of responsive

21   documents and third-party productions were substantially complete.  In a July 10 letter, Amazon

22   _____

23   [21] Plaintiffs insist that this can be mitigated because Amazon "can plan for those productions." But the delays are not in planning, they are in processing the materials, which cannot begin until the materials have been produced in the original action, and cannot be mitigated by mere

24   planning ahead.

JOINT STATUS REPORT - 42
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    asked for further information about Plaintiffs' production and collection efforts.  Plaintiffs

2    responded to that letter on August 19.  Amazon is in the process of assessing Plaintiffs' response.

3            Amazon also served its First Set of Interrogatories to each Plaintiff on July 30, 2024.

4    Plaintiffs' Responses and Objections are due August 29, 2024.  Amazon expects those responses,

5    Plaintiffs' productions and collection efforts, and Amazon's outstanding requests to be the

6    subject of future meet and confers.  Amazon does not request any Court action on these issues at

7    this time.

8        **D.    Third Party Discovery**

9            Amazon and Plaintiffs continue to seek discovery from third parties.  Since the parties

10   submitted the June 3, 2024 Joint Status Report, Amazon has served 15 additional non-party

11   subpoenas seeking documents from competing retailers, fulfillment and logistics providers, and

12   brand aggregators.  Amazon is in the process of conferring with those parties to reach agreement

13   on the documents to be produced in response to Amazon's requests.  Amazon expects to serve

14   non-party document subpoenas on additional third parties, including additional retail

15   competitors, fulfillment and logistics providers, and other market participants.

16            The parties continue to regularly exchange information about subpoenas issued to third

17   parties as well as third parties' responses and objections.  The parties have also held joint meet

18   and confers when requested by third parties to minimize the burden on those parties.

19            Regarding third-party depositions, since the June 3 Joint Status Report, two third-party

20   depositions were taken, and Amazon has informed Plaintiffs that the California Attorney General

21   has noticed a deposition in the *California* action of a competing retailer to occur in late fall 2024.

22   Amazon will work with Plaintiffs to allow for a coordinated deposition of that non-party and any

23   other non-party depositions that will be noticed in that action.  Plaintiffs in this action have

24   noticed 5 non-party depositions, and Amazon has informed the Plaintiffs in related cases of the

JOINT STATUS REPORT - 43
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  noticed dates to facilitate coordination of the depositions.  Amazon continues to expect that most

2  of the non-party depositions in this case will occur in late 2024 and early 2025.

3  **V.    OTHER ISSUES**

4          The parties are continuing to meet and confer regarding a draft protocol for the

5  coordination of depositions between this case, the *California* Action, and certain Related Cases.

6  Amazon awaits Plaintiffs' response to issues discussed on an August 13, 2024 meet and confer,

7  which will likely identify any issues that remain in dispute. The parties are also continuing to

8  meet and confer regarding the scope of privilege logging, pursuant to the Court's June 11, 2024

9  Order. *See* Dkt. #256.

10 **VI.   PENDING MOTIONS**

11         The chart below lists the motions that are pending before the Court:

| Motion | Response | Reply | Notice Date |
|---|---|---|---|
| Amazon's Motion to Dismiss for Failure to State a Claim (Dkt. #127) (12/8/2023) | Plaintiffs' Response (Dkt. #149) (2/6/2024)<br><br>Notice of Supplemental Authority (Dkt. #267) (8/9/2024)<br><br>Notice of Supplemental Authority (Dkt. #272) (8/23/2024) | Amazon's Reply (Dkt. #178) (3/22/2024)<br><br>Objection to Notice of Supplemental Authority (Dkt. #271) (8/19/2024) | March 22, 2024 |
| Plaintiffs' Motion to Bifurcate (Dkt. #167) (2/29/2024) | Amazon's Response (Dkt. #168) (3/11/2024) | Plaintiffs' Reply (Dkt. #173) (3/15/2024) | March 15, 2024; ruling deferred by March 18, 2024 order (Dkt #176) |

JOINT STATUS REPORT - 44
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Dated: August 28, 2024

Respectfully submitted,

*s/ Edward H. Takashima*

SUSAN A. MUSSER (DC Bar # 1531486)
EDWARD H. TAKASHIMA (DC Bar # 1001641)
THOMAS J. MILLER (PA Bar # 316587)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.:   (202) 326-2122 (Musser)
        (202) 326-2464 (Takashima)
        (202) 326-2663 (Miller)
Email:  smusser@ftc.gov
        etakashima@ftc.gov
        tmiller2@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

JOINT STATUS REPORT - 45
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*s/ Michael Jo*

Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

*s/ Rahul A. Darwar*

Rahul A. Darwar (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: Rahul.Darwar@ct.gov
*Counsel for Plaintiff State of Connecticut*

*s/ Alexandra C. Sosnowski*

Alexandra C. Sosnowski (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

*s/ Caleb J. Smith*

Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street, Suite 1000
Tulsa, OK 74119
Telephone: (918) 581-2230
Email: caleb.smith@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

*s/ Timothy D. Smith*

Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

*s/ Jennifer A. Thomson*

Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of
Pennsylvania*

*s/ Michael A. Undorf*

Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

*s/ Christina M. Moylan*

Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

JOINT STATUS REPORT - 46
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

*s/ Gary Honick*

2

Gary Honick (admitted *pro hac vice*)
Assistant Attorney General

3

Deputy Chief, Antitrust Division
Office of the Maryland Attorney General

4

200 St. Paul Place
Baltimore, MD 21202

5

Telephone: (410) 576-6474
Email: Ghonick@oag.state.md.us

6

*Counsel for Plaintiff State of Maryland*

7

*s/ Michael Mackenzie*

Michael Mackenzie (admitted *pro hac vice*)

8

Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General

9

One Ashburton Place, 18th Floor
Boston, MA 02108

10

Telephone: (617) 963-2369
Email: michael.mackenzie@mass.gov

11

*Counsel for Plaintiff Commonwealth of*
*Massachusetts*

12

*s/ Scott A. Mertens*

13

Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General

14

Michigan Department of Attorney General
525 West Ottawa Street

15

Lansing, MI 48933
Telephone: (517) 335-7622

16

Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*

17

*s/ Zach Biesanz*

18

Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel

19

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400

20

Saint Paul, MN 55101
Telephone: (651) 757-1257

21

Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

22

23

24

*s/ Lucas J. Tucker*

Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

*s/ Ana Atta-Alla*

Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

*s/ Jeffrey Herrera*

Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

*s/ Zulma Carrasquillo-Almena*

Zulma Carrasquillo (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00901-0192
Telephone: (787) 721-2900
Email: zcarrasquillo@justicia.pr.gov
*Counsel for Plaintiff Commonwealth of Puerto*
*Rico*

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

*s/ Stephen N. Provazza*

2    Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General

3    Chief, Consumer and Economic Justice Unit
Department of the Attorney General

4    150 South Main Street
Providence, RI 02903

5    Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov

6    *Counsel for Plaintiff State of Rhode Island*

7    *s/ Sarah L. J. Aceves*
Sarah L. J. Aceves (admitted *pro hac vice*)

8    Assistant Attorney General
Vermont Attorney General's Office

9    109 State Street
Montpelier, VT 05609

10   Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov

11   *Counsel for Plaintiff State of Vermont*

12   *s/ Laura E. McFarlane*
Laura E. McFarlane (admitted *pro hac vice*)

13   Assistant Attorney General
Wisconsin Department of Justice

14   Post Office Box 7857
Madison, WI 53707-7857

15   Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us

16   *Counsel for Plaintiff State of Wisconsin*

17

18

19

20

21

22

23

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**MORGAN, LEWIS & BOCKIUS LLP**

By: _s/ Molly A. Terwilliger_
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
         molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Katherine A. Trefz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
         jschmidtlein@wc.com
         khodges@wc.com
         jpitt@wc.com
         cmetz@wc.com
         ktrefz@wc.com
         cpruski@wc.com

**COVINGTON & BURLING LLP**

Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice*)
Katharine Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com
         dludwin@cov.com
         kmitchelltombras@cov.com

*Attorneys for Defendant Amazon.com, Inc.*

JOINT STATUS REPORT - 49
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222