THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

FEDERAL TRADE COMMISSION, *et al.*,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

**CASE NO.: 2:23-cv-01495-JHC**

**JOINT BRIEF REGARDING INTERIM DEADLINES**

**TABLE OF CONTENTS**

I.      The Parties' Agreement and Positions on Interim Deadlines ............................................. 1

II.     Plaintiffs' Proposal ............................................................................................................. 2

      A.      Plaintiffs' Proposed Deadlines are Needed to Ensure the Case Remains on
            Schedule ............................................................................................................. 4

      B.      Plaintiffs' Proposal is Feasible and Proportional to the Needs of the Case ............ 6

      C.      Amazon's Arguments About the Need for More Time are Rooted in its
            Own Delay ......................................................................................................... 10

III.    Amazon's Proposal ........................................................................................................... 11

      A.      Amazon's Proposal of March 31, 2025 for Substantial Completion and
            January 15, 2025 for 50% Completion is Reasonable and Aggressive. ............... 13

      B.      Amazon's Proposal Regarding Substantial Completion for Additional
            Documents Is Reasonable. ................................................................................. 18

      C.      Reproduction Of Documents Produced In *California* And Related
            Actions.. ............................................................................................................ 19

Pursuant to the Court's direction at the September 3, 2024, Case Status Conference ("CSC") (Dkt. #275), Plaintiffs Federal Trade Commission ("FTC") and the states and territories of New York, Connecticut, New Hampshire, Oklahoma, Oregon, Pennsylvania, Delaware, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Puerto Rico, Rhode Island, Vermont, and Wisconsin, by and through their respective Attorneys General (together, "Plaintiff States," and collectively with the FTC, "Plaintiffs"), and Defendant Amazon.com, Inc. ("Amazon") submit this joint brief regarding interim discovery deadlines. This statement is organized as follows: the parties' agreement and respective proposals on interim deadlines are set out immediately below in Section I, followed by Plaintiffs' position in Section II and Amazon's position in Section III.

## I.   THE PARTIES' AGREEMENT AND POSITIONS ON INTERIM DEADLINES

The parties' proposed interim deadlines are set out in the table below.

| Event | Plaintiffs' Proposed Date | Amazon's Proposed Date |
|---|---|---|
| Parties complete negotiations for an initial, agreed set of custodians, search terms, and TAR protocol | October 1, 2024 | |
| Amazon begins its review of custodial documents based on the parameters the parties agree to by October 1, 2024 ("Initial Set" of documents) | October 8, 2024 | |
| If needed, parties continue to negotiate the scope of Amazon's search, including custodians and search terms ("Second Set" of documents) | Through October 15, 2024 | |
| Amazon makes its first production of the Initial Set of documents | Approximately October 21, 2024 | |
| Amazon proposes a substantial completion date for any Second Set of documents | N/a | October 22, 2024 |

| Event | Plaintiffs' Proposed Date | Amazon's Proposed Date |
|---|---|---|
| Deadline for Plaintiffs to file a motion regarding any disputes regarding search, including custodians or search terms | October 24, 2024 ||
| Deadline for joint submission on proposed deadlines for any Second Set of documents | October 28, 2024 (if the Court deems additional briefing necessary; see position on substantial completion of the Second Set below) | October 28, 2024 |
| Amazon makes rolling productions every 2-3 weeks | Plaintiffs and Amazon agree ||
| Amazon substantially completes its production of the Initial Set of documents | January 15, 2025 | March 31, 2025 |
| Amazon substantially completes production of 50% of the custodial documents anticipated to be produced in the Initial Set | n/a | January 15, 2025 |
| Amazon substantially completes its production of the Second Set of documents | February 14, 2025 | n/a |

There are two principal disputes remaining between the parties: (1) the date of substantial completion of the production of documents within the scope of search the parties agree to by October 1 (the "Initial Set") and (2) the date for substantial completion of the production of documents within the scope of additional search the parties agree to by October 15 (the "Second Set").

## II.     PLAINTIFFS' PROPOSAL

As detailed in Plaintiffs' portion of the August 28, 2024 Joint Status Report (Dkt. #273), Amazon has taken an unreasonable approach to discovery that has stymied progress nearly a year into this case. Plaintiffs served their initial document requests on November 14, 2023, targeting what Plaintiffs expected would be discrete and easy-to-collect document sets. Plaintiffs then

served the bulk of their document requests on February 1, 2024.[1] And yet, to date, Amazon has produced only 3,890 documents unique to this case, and no custodial documents.[2] Despite Plaintiffs' best efforts, negotiations on the scope of Amazon's search, including crucial aspects like custodians and search terms, have been halting and difficult, with no prospect for timely conclusion until the Court's intervention during the September 3, 2024 CSC.

The parties have since been able to agree on several interim deadlines that should see Amazon finally begin to review custodial documents in response to Plaintiffs' requests. The parties agree that by approximately October 21, 2024, Amazon will begin producing the Initial Set of custodial documents (those within the scope of the searches that the parties have agreed to as of October 1). But the parties have been unable to agree on other critical deadlines, particularly when Amazon will substantially complete its production of responsive documents. Plaintiffs propose that Amazon substantially complete its production of documents for the Initial Set by January 15, 2025. For documents within the scope of the Second Set (any additional custodians or search terms agreed to between October 1 and October 15, 2024), Plaintiffs propose that Amazon substantially complete its production a month later, by February 14, 2025. In the alternative, should the Court prefer not to set a deadline for the Second Set at this time, Plaintiffs propose that the Court set this deadline after an additional round of joint briefing to be filed by October 28, 2024. Amazon, in contrast, maintains that it cannot complete production of

---

[1] Plaintiffs served a follow-up set of document requests on June 28, 2024, based on Amazon's positions during discovery negotiations and additional information learned during the litigation.

[2] Amazon states that more than 2.2 million documents have been produced in this case. 1.7 million of these documents were produced during the pre-Complaint investigation and are "deemed produced" in this case. August 28, 2024 Joint Status Report (Dkt. #273) at 6. The vast majority of the documents that have been produced since the Complaint was filed are reproductions of materials Amazon has already produced in *People of the State of California v. Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Super. Ct.) and Related cases.

even the Initial Set of documents until March 31, 2025. Amazon, while agreeing in principle to an additional round of joint briefing, believes that no deadline at all can be set now for the Second Set, which would inevitably occur even later in 2025.

Plaintiffs' proposed deadlines are needed to ensure that discovery remains on track. Plaintiffs' proposal is also feasible and consistent with the approach taken in other cases of similar magnitude. And Amazon's delay to date should not dictate the case schedule. It is reasonable to respond to discovery requests within twelve to fifteen months, and equitable within the context of the overall schedule set by the Court.

### A. Plaintiffs' Proposed Deadlines are Needed to Ensure the Case Remains on Schedule

Fact discovery in this case closes on August 8, 2025, and Plaintiffs are working diligently to move discovery forward as quickly as possible. To maintain the schedule set forth in the Case Scheduling Order (Dkt. #159), depositions of Amazon's employees—the Court has allowed up to eighty—must commence by the beginning of March 2025 at the latest. *See* Order Re: Deposition Limits (Dkt. #166). It is critical that Plaintiffs have access to substantially all of Amazon's responsive documents before these depositions begin. And any schedule should include time to resolve disputes relating to Amazon's document production. Requiring Amazon to substantially complete its production of the Initial Set of custodial documents by January 15, 2025, and the Second Set by February 14, 2025, is needed for Plaintiffs to have adequate time to prepare for and conduct depositions.

Amazon proposes substantial completion of only the Initial Set—well less than its total custodial production—by March 31, 2025, approximately ten weeks after Plaintiffs' proposed deadline. Amazon's proposed schedule gives Plaintiffs just over four months following substantial completion of the Initial Set to review those documents and conduct depositions of up

1   to eighty Amazon employees (whose documents may not be included in the Initial Set), and

2   complete gathering evidence—including from third parties—to support Plaintiffs' claims.

3   Amazon previously proposed a four-month period between its substantial completion of

4   document production and the end of fact discovery when it also envisioned Plaintiffs deposing

5   only ten Amazon employees. December 15, 2023 Joint Status Report (Dkt. #135) at 7, 33-34.

6   With eighty depositions of Amazon employees to conduct, this timeframe is clearly

7   unreasonable.

8          Amazon previously acknowledged that "most fact depositions will take place after

9   documents have been produced," and requested the Court set an accordingly late date for the

10  close of fact discovery to give the parties enough time for depositions. *Id.* at 7, 16. Now,

11  however, when Plaintiffs have raised concerns about their ability to take the allotted number of

12  depositions under Amazon's proposed timeline before the close of fact discovery, Amazon no

13  longer acknowledges Plaintiffs' need to receive documents in time to complete depositions.

14  Instead, Amazon argues that its offer to prioritize production of certain custodians' files is

15  enough to allow for the timely scheduling of depositions. But receipt and review of documents is

16  a critical input into witness selection. And Amazon has not yet agreed to include certain key

17  Amazon employees as custodians.[3] Plaintiffs cannot know which persons it will take depositions

18  of until after they have had a chance to review documents from the agreed-upon custodians.

19  Amazon's delay to date should not lead to Plaintiffs having to decide on witnesses without

20  having the benefit of reviewing custodial documents. Plaintiffs have raised concerns that

21

22  [3] As just one example, Amazon maintains its objection to including the former head of Supplier
    Fulfillment Services, Lakshmi Nidamarthi, who was responsible for Seller Fulfilled Prime
23  ("SFP"), an Amazon program central to Plaintiffs' claims. *See, e.g.* Am. Compl. ¶ 400 ("Amazon
    shuttered SFP enrollment in 2019 when Amazon executives recognized that SFP was fostering
24  competition and could lessen Amazon's stranglehold on its monopolies.").

Amazon's approach will force Plaintiffs to seek to reopen depositions, should Amazon produce relevant documents after Plaintiffs have deposed a knowledgeable employee. Declaration of Shira Steinberg in Support of the Joint Brief Regarding Interim Discovery Deadlines ¶ 3. In response to Plaintiffs' concerns, Amazon has been unwilling to commit to supplemental depositions because it will only be needed in rare circumstances. This inevitably will lead to a string of disputes about whether a particular deposition should be reopened. Even if Amazon is willing to agree to reopen a deposition, this is highly inefficient and costly and would effectively require even more depositions in the already-compressed time period before the close of fact discovery.

As above, Plaintiffs believe that a substantial completion deadline for the Second Set of custodial documents of February 14, 2025 is necessary. Amazon argues that a completion date cannot possibly be set before the scope of Amazon's search is determined. But courts routinely set discovery deadlines before, not after, parties conduct scope negotiations, and even before discovery requests are served. If, however, the Court prefers additional briefing on the appropriate timeline for Amazon to produce the Second Set, Plaintiffs are prepared to propose a timeline in a joint submission to be filed on October 28.

### B.  Plaintiffs' Proposal is Feasible and Proportional to the Needs of the Case

The difference between the parties' proposed substantial completion dates of the Initial Set is approximately ten weeks. Amazon has not adequately explained why it cannot meet Plaintiffs' proposal to substantially complete document production of the Initial Set by January 15, 2025. Amazon makes broad assertions that it is making a "serious commitment" to its document production, but, as set forth below, more can and should be done in a case of this magnitude.

1    Federal Rule of Civil Procedure 26(b)(1) directs courts to consider "whether the burden

2    or expense of the proposed discovery outweighs its likely benefit," taking into consideration "the

3    importance of the issues at stake in the action, the amount in controversy, the parties' relative

4    access to relevant information, the parties' resources, [and] the importance of the discovery in

5    resolving the issues." For purposes of this filing, Amazon is effectively arguing that discovery on

6    Plaintiffs' proposed timeframe is too burdensome and not proportional to the needs of the case.[4]

7    The party opposing discovery has the burden of showing that discovery should not be allowed

8    and to clarify, explain, and support objections with competent evidence. *See Frame-Wilson v.*

9    *Amazon.com, Inc.,* 2023 WL 4201679, at *2, *4 (W.D. Wash. June 27, 2023); *Denton v.*

10   *Thrasher*, 2019 WL 11779202, at *1 (W.D. Wash. Aug. 30, 2019).

11   The Rule 26(b)(1) factors favor production on Plaintiffs' proposed schedule. Amazon's

12   monopolistic conduct affects tens of millions of American households, hundreds of thousands of

13   sellers on Amazon, and hundreds of billions of dollars in commerce every year. Every day that

14   passes is another day of harm inflicted on shoppers, sellers, and competition. Congress has

15   expressed a "clear intent to prioritize speedy and efficient resolution of government antitrust

16   suits." *United States v. Google LLC*, 661 F. Supp. 3d 480, 493 (E.D. Va. 2023); *see also FTC v.*

17   *Vyera Pharms.*, LLC, 2021 WL 76336, at *1 (S.D.N.Y. Jan. 8, 2021) ("The parties and the

18   public have a significant interest in resolving the issues raised by the [government] plaintiffs'

19   claims with due expedition."). As discussed further below, Amazon is one of the largest

---

[4] As Judge Martinez recognized in one of the Related Cases, *Frame-Wilson v. Amazon.com, Inc.*, "this is a significant, substantial case," and discovery should be commensurate with the importance of the case. 2023 WL 4201679, at *3 (W.D. Wash. June 27, 2023). Likewise, "[i]n antitrust cases, courts have generally allowed liberal discovery." *Cyntegra, Inc. v. IDEXX Lab'ys, Inc.*, 2007 WL 9701999, at *4 (C.D. Cal. June 29, 2007) (collecting cases).

companies in the world with sophisticated resources. Any burden on Amazon associated with complying with Plaintiffs' proposed deadlines is proportionate to the needs of the case.

Plaintiffs' proposed schedule is also consistent with what has been proven feasible in other large-scale government antitrust enforcement actions. In these and similar cases, parties (and even non-parties) have been able to review and produce a substantial number of documents in short time periods. *See United States v. Google,* No. 1:23-cv-00108 (E.D. Va. Sept. 15, 2023), Dkt. #444 at 2 (Google reviewed approximately 4.8 million documents in twenty-two days); *id.* at Dkt. #478 at 1-2 (same); *FTC v. Qualcomm, Inc.*, 5:17-cv-00220, (N.D. Cal. Dec. 15, 2023), Dkt. #403 at 1 (third-party Apple utilized a review team of 500 attorneys to produce approximately 2.6 million documents, inevitably reviewing a far greater number, in two months); *Phipps v. Wal-Mart Stores, Inc.*, 2018 WL 1183746, at *8 (M.D. Tenn. Mar. 7, 2018) (noting that defendant had searched 26 million documents and reviewed two million documents for responsiveness, confidentiality, and privilege in three months). Amazon writes most of these examples off as involving "exceptional circumstances," but Amazon's delay to date, *see infra* Section II(C), warrants a similar commitment of resources here. Like the producing parties in the above-cited cases, Amazon has substantial resources and should be well-positioned to meet Court-ordered deadlines. Amazon is represented in this case by five top-tier law firms and has retained a sophisticated e-discovery vendor.[5] *See* Ex. C at 2. While Amazon has said that it intends to employ a review team of over 100 contract attorneys —after previously claiming that a review team of fifty reviewers was "large," *see id.* at 4—such a team is not commensurate to the scope of this complex antitrust case. *See United States v. Google*, No. 1:23-cv-00108 (E.D.

---

[5] Plaintiffs understand one of the five firms, Sidley Austin LLP and the head of the firm's eDiscovery and Data Analytics group, is leading Amazon's eDiscovery and document production in this litigation. Amazon is also represented by other top-tier law firms in the Related Cases, such as Paul, Weiss, Rifkind, Wharton & Garrison LLP.

Va. Sept. 22, 2023), Dkt. #456 at 2 ("Google has continued to expand the team tasked with reviewing the Review Population to now include over 1000 contract attorneys who are working at the direction of outside counsel"); *In re Domestic Airlines Travel Antitrust Litig.*, No. 1:15-mc-1404 (D.D.C. Nov. 13, 2017), Dkt. #194 at 5 (defendant states "nearly 200 attorneys have worked on the document review project so far"); *FTC v. Qualcomm*, 5:17-cv-00220, Dkt. #403 at 1 (third party utilizing a team of 500 reviewers).

Unlike at least some of the cases mentioned above, Amazon is using TAR 2.0 to facilitate its review of documents. This means that Amazon will not be manually reviewing the entire universe of unique documents that it collects. *Cf. Transamerica Comput. Co., Inc. v. Int'l Bus. Machs Corp.*, 573 F2d. 646, 648-49 (9th Cir. 1978) (describing IBM's production of 17 million pages of documents in 3-month period, when technological limitations required review to be done "page by page"). Amazon has previously estimated that "a well-performing TAR 2.0 workflow" may "exclude[e] 70% of documents from human review" although Amazon now claims it can exclude only 55% of documents using TAR. *See* Ex. C at 4.[6] In another matter, Amazon has advocated using TAR for its document review because this is "faster and more accurate" and will take a quarter of the time as manual human review. *Garner v. Amazon*, No. 2:21-cv-00750 (W.D. Wash., Jan. 12, 2023), Dkt. #147 at 12. Finally, Amazon is not starting

---

[6] *See also Reducing Review Costs on an International Regulatory Investigation*, Reveal, https://www.revealdata.com/success-stories/international-regulatory-investigation (last visited September 17, 2024) (Brainspace, Amazon's chosen TAR platform, organized review of 12.5 million documents and reduced population by 85%); *Culling 9.4M Documents From FTC Second Request Using Consilio Analytics*, Consilio, https://www.consilio.com/resource/culling-9-4m-documents-from-ftc-second-request-using-consilio-analytics/?portfolioCats=539 (last visited September 17, 2024) (Amazon's e-discovery vendor, Consilio, reduced 11.2 million document set by 84% using TAR and other processes); *Technology Assisted Review (TAR) Guidelines,* Bolch Judicial Inst. Duke Law, Jan. 2019, at iv, https://edrm.net/wp-content/uploads/2019/02/TAR-Guidelines-Final.pdf (TAR "can identify relevant documents faster than human review and can reduce time wasted reviewing nonrelevant documents.").

from scratch in this review, but can build on processes and efficiencies developed in responding to discovery in the *California* Action. In light of Amazon's substantial resources, its use of TAR, and the time that Amazon has already had to respond to Plaintiffs' document requests, substantial completion deadlines of January 15, 2025, for the Initial Set, and February 14, 2025, for the Second Set, respectively, are eminently reasonable.

### C. Amazon's Arguments About the Need for More Time are Rooted in its Own Delay

Amazon argues that a substantial completion deadline of January 15, 2025, for the Initial Set means that review and production of documents will be unreasonably compressed. As detailed above, Plaintiffs disagree. In any event, the fact that the parties are proposing interim discovery deadlines in September 2024 in a case filed in September 2023 is an issue of Amazon's own making. Plaintiffs' efforts to further progress discovery negotiations have been met with resistance at nearly every step, as detailed in past filings. *See* June 3, 2024 Joint Status Report (Dkt. #246) at 9-11; August 28, 2024 Joint Status Report (Dkt. #273) at 13-14. To the extent that Amazon may need to devote greater resources to complete its review than it otherwise would have in order to comply with any deadline set by the Court, the shorter timeframe is due to Amazon's delaying tactics. Plaintiffs are concerned that Amazon is capitalizing on its delays to effectively require Plaintiffs to accept either (a) a late or undetermined date for the substantial completion of document productions, or (b) Amazon's positions on the scope of its document search (*i.e.*, that the scope should be narrower than needed), given time constraints caused by Amazon. Plaintiffs should not be required to make this choice. *See generally FTC v. Amazon*, No. 2:23-cv-00932 (W.D. Wash. May 13, 2024), Dkt. #158 at 2-3, 6 (FTC forced to seek extension of discovery period in ROSCA litigation due to Amazon's refusal to provide an

1  estimated production date or inform Plaintiffs about scope of planned production of data), #170

2  (granting Plaintiffs' motion to modify scheduling order), #173 (ordering new case schedule).

3      Plaintiffs have been willing to devote the resources needed to bring negotiations with

4  Amazon to a close as quickly as possible. Well before this filing, Plaintiffs proposed milestones

5  for the parties to conclude negotiations and document production. *See* Ex. A at 8-9 (describing

6  timeline proposed in July 3, 2024 negotiations and requesting Amazon begin "produc[ing]

7  documents" to ensure it could "substantially complete its document production by the end of

8  2024"); Ex. B at 10 (Aug. 13, 2024) (requesting Amazon either accept Plaintiffs' proposed

9  milestones or submit a counterproposal). Until the Court directed this filing at the CSC, however,

10  Amazon refused all of Plaintiffs' suggestions and took no steps to drive its document production

11  forward, instead dragging its feet at every turn. Amazon could have begun moving discovery

12  forward in any number of ways as it has done before, *see Garner v. Amazon*, No. 2:21-cv-00750,

13  (W.D. Wa. Jan. 12, 2023), Dkt. #147 at 2 (Amazon began reviewing documents while

14  negotiations on search terms and custodians were ongoing "so as not to delay discovery"), but

15  Amazon refused to do so here until ordered by the Court to propose interim deadlines. *See* Ex. C

16  at 12 (stating that "setting a deadline for substantial completion at this stage puts the cart before

17  the horse"). Amazon's actions to-date indicate its view that agreeing to discovery deadlines has

18  not been in Amazon's interest. Amazon should not benefit from the delay it has created.

19                          *   *   *   *   *

20      For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order

21  containing Plaintiffs' proposed interim deadlines.

22  **III.    AMAZON'S PROPOSAL**

23      Over the past several months, the parties have conferred over the scope of the nearly 400

24  requests for production issued by Plaintiffs, the large majority of which will be satisfied by a

custodial review.  The parties have agreed on most of the milestones related to that upcoming custodial review.  There are essentially two disputes remaining: (1) the date for substantial completion of the production of documents from the Initial Set (the set agreed to by October 1, 2024) and (2) the date for substantial completion of the production of documents from any Second Set (any further documents agreed to by October 15, 2024).  Amazon's proposal balances the parties' and the Court's interests in completing discovery in a timely manner with the challenges inherent in a review of this size.  Specifically, Amazon proposes:

- **By January 15, 2025**, substantial completion of production of approximately 50% of the custodial documents anticipated to be produced from the Initial Set, assuming a review population of approximately six million documents.

- **By March 31, 2025**, substantial completion of production of custodial documents anticipated to be produced from the Initial Set, assuming a review population of approximately six million documents.

- **By October 22, 2024**, Amazon will provide an estimated substantial completion date for custodial documents anticipated to be produced from any Second Set.

Amazon's proposal is reasonable and proportional under the circumstances of the case, but also aggressive in terms of moving discovery forward.   In the most recent Joint Status Report, Amazon explained that Plaintiffs' nearly 400 separate requests for production implicate a staggering number of documents that test the capabilities of customary methods of document review and production.  *See* Joint Status Report, Dkt. 273, at 27, 31.  More than 2.2 million documents have already been produced in this case.  *See id.* at 30.  Millions more documents likely will be produced in the months ahead, and millions more than that will need to be reviewed before further productions.  That review will take time to complete.  Even with the assistance of TAR and the devotion of substantial resources, there are technical and practical limits to how quickly a high-quality review of this scale can occur.

Amazon's review will involve a serious commitment of resources—more than 100 attorneys will be employed to meet these deadlines at the cost of millions of dollars. And Amazon's proposal allows the parties to prioritize custodians so that party depositions can begin before the substantial completion of the full custodial production. Finally, unlike Plaintiffs' proposal, Amazon's timeline builds in time to implement mid-review adjustments that may surface in a review of this size. For these reasons and those discussed in more detail below, the Court should adopt Amazon's proposed interim deadlines.

Additionally, in subsection C, Amazon provides its timeline for reproductions of documents produced in the *California* and Related actions.

### A. Amazon's Proposal of March 31, 2025 for Substantial Completion and January 15, 2025 for 50% Completion is Reasonable and Aggressive.

Amazon proposes that by March 31, 2025, it will substantially complete production of documents from the approximately six million documents in the Initial Set, with approximately 50% of the production completed by January 15, 2025. These proposed dates assume a review team of over 100 attorney reviewers working full time at a review pace similar to what Amazon saw in the *California* litigation. Even with a large investment of resources, a review of this scale and scope still takes time to do well. In the experience of counsel, based on the number of documents in the review set, even with a review team of over 100 attorneys reviewing more than 100,000 documents per week, it would not be possible for Amazon to complete the review meaningfully before March 31, 2025. As discussed below, simply adding more reviewers is not a reasonable solution.

Amazon's latest proposal to Plaintiffs of the search terms, custodians, and time period that would be captured by the custodial review encompassed approximately six million documents, and Amazon's interim deadlines proposal here is based on an anticipated initial

review set of approximately the same size.  Declaration of Robert Keeling ("Keeling Decl.") ¶ 14.  Those six million documents will be run through the agreed-upon TAR protocol, and a significant portion will then require manual review.  Based on the experience of counsel, Amazon estimates that after running the documents through TAR's algorithm, attorneys will need to review approximately 45% of the document set, or 2.7 million documents.[7]  *Id.* ¶ 18. Amazon estimates it will take approximately 77,000 attorney hours to complete the review, or about 20 40-hour weeks, assuming 100 reviewers.  *Id.* ¶ 21.  It is also the experience of counsel that some additional time should be built into the deadlines to account for mid-review adjustments likely to be needed in any review, and especially likely in a review of this size. Based on the experience of counsel, Amazon estimates the review will be complete by March 25, 2025.  *Id.*

Plaintiffs' proposal that Amazon be ordered to substantially complete all production by January 15, 2025, as opposed to the approximately 50% Amazon has proposed, is based on three flawed premises.

*First*, Plaintiffs erroneously assume that an attorney review team can be infinitely scaled to whatever size is necessary in order to meet Plaintiffs' proposed substantial completion deadlines without any concern.  This is not the case.  It is not simply a matter of cost or burden

---

[7] There is no question that the use of TAR will allow the review of this enormous set of documents to occur much more efficiently than it would otherwise, and Amazon's proposal contemplates that.  Plaintiffs claim that Amazon "previously estimated that 'a well-performing TAR 2.0 workflow' would 'exclude 70% of documents from human review.'"  *See supra* at 9 (citing Ex. C at 4).  That was in reference to a hypothetical scenario provided "[f]or the sake of example" to illustrate a point.  Ex. C at 4.  The actual percentage of documents that will require review with a TAR 2.0 workflow varies from case to case and depends on a number of factors. Keeling Decl. ¶ 18.  The estimate used here is based on Amazon's experience in the *California* litigation, which involved a similar workflow employing TAR 2.0 combined with search terms. *Id.*  In that case, attorneys reviewed approximately 45% of the document set to achieve the agreed-upon recall level.  *Id.*

1    (though it involves both); it is also a matter of effectively administering a high-quality review to

2    produce documents in an orderly manner.

3        Adding reviewers is not an effective or sufficient solution when the review team is

4    already of the size Amazon proposes.  Review teams incur precipitous decreases in quality once

5    they grow significantly above 100 people for two reasons: (1) significant increased oversight is

6    required, and (2) qualified attorneys are limited.  Keeling Decl. ¶¶ 24-26.

7        Larger attorney review teams require significantly greater oversight and coordination and

8    incur significantly greater overhead.  It becomes increasingly difficult to keep responsiveness

9    and privilege standards aligned as more than 100 people make individual determinations on

10   documents.  *Id.* ¶ 24.  This means that an ever-larger "second level" quality control team is

11   needed to maintain alignment across the first level review team.  *Id.*  These individuals not only

12   have to quality check to catch potential mistakes that would be expected in the ordinary course of

13   any document review, but also must identify inconsistencies in responsiveness standards across

14   the numerous team members.  *Id.*

15       Additionally, there are only so many high-quality attorney reviewers available for hire at

16   any given time. This will be a complex review that will require evaluating each document against

17   hundreds of potentially applicable RFPs in addition to making careful privilege determinations.

18   Top-flight reviewers are highly sought after, and most are typically already staffed on other

19   matters. *Id.* ¶ 25.  Retaining more than about one hundred reviewers requires dipping deeper into

20   the available talent pool and yields diminishing returns and increased risk of errors and

21   inconsistencies, including an increased risk of privilege clawbacks.  *Id.* ¶ 26.

22       Combined, these reasons mean that a larger review team drives up the cost and time to

23   complete the review on a per document basis.  Finally, it is worth noting that in a complex case

24   such as this one, with a custodial review addressing hundreds of requests for production, the

burden on reviewers to learn and internalize the scope of complex (and often multi-part) requests for production is already immense.  Given this, Amazon has proposed a large review team, consisting of over 100 reviewers, but one that can ensure a high-quality review while still allowing for a substantial completion deadline that leaves sufficient time to complete fact depositions.  Amazon should not be required to increase its costs while sacrificing the quality of the review simply because Plaintiffs demand it produce voluminous materials by a deadline unconnected to review logistics.  Nor should Plaintiffs be permitted to dictate the size of Amazon's review team and quality control processes by imposing an unrealistic deadline for substantial completion.

Plaintiffs cite several cases where producing parties employed substantially more than 100 reviewers and suggest that Amazon ought to retain comparable resources in order to meet their proposed deadlines.  Two of these cases, however, involve exceptional circumstances that ought not guide what is reasonable and appropriate when establishing deadlines at the outset of a review.  In the Google AdTech case, for example, Google retained more than 1000 contract attorneys, *Google AdTech,* No. 1:23-cv-00108, Dkt. #456 at 2 (E.D. Va. Sept. 22, 2023), but only *after* the company learned shortly before the conclusion of fact discovery that it had inadvertently failed to run search terms over some 16.1 million documents, *id.*, Dkt. #422 at 4.  Similarly, in the *Qualcomm* case cited by Plaintiffs, Apple's review team originally consisted of 115 attorneys. *FTC v. Qualcomm, Inc.*, 5:17-cv-00220, Dkt. # 445, at 2-3 (N.D. Cal. Jan. 3, 2018).  Apple scaled its team to 500 attorneys only when it became clear that "the all-manual review Qualcomm insisted upon would be impossible to complete within the deadlines set by the Court," given that Qualcomm categorically refused any use of TAR. *Id.*  Plaintiffs also rely on *In re Domestic Airlines Travel Antitrust Litigation*.  Overall, that case does not provide a model that should be followed here.  While one defendant's review team consisted of 200 attorneys, another

1  defendant used a 180-attorney review team to produce 3.5 million documents, but the resulting

2  production consisted of "predominantly non-responsive documents," and the plaintiffs sought

3  and received a six-month extension to find the responsive documents buried in that large set.

4  2018 WL 4441507, at *3.

5      *Second*, Plaintiffs argue that no depositions of Amazon witnesses can begin until Amazon

6  substantially completes all of its custodial production.  This is not a reasonable position for a

7  number of reasons.  For one, Amazon will be making rolling productions and has proposed that

8  approximately 50% of the custodial review for the Initial Set will be complete by January 15,

9  2025, almost seven months before the close of fact discovery on August 8, 2025.  This is a

10  meaningful proposal because Amazon's TAR-driven process is designed to prioritize for review

11  those documents that the algorithm thinks are most likely to be responsive based on its training;

12  in other words, the model pushes to the front of the review the highest-scoring documents.

13  Moreover, to facilitate the Plaintiffs' ability to begin taking depositions before the completion of

14  document production, Amazon has also offered to work with Plaintiffs to prioritize the

15  production of custodial documents from the files of specific witnesses whom Plaintiffs wish to

16  depose prior to March 31, 2025.[8]  Additionally, Amazon's proposal accounts for more than four

17  months between the substantial completion date and the end of fact discovery, during which

18  depositions can be completed.

19      *Third*, Plaintiffs incorrectly suggest that Amazon has delayed complying with discovery

20  and that any time pressure on Amazon for review is a result of this supposed delay.  This is

---

[8] Of course, Plaintiffs already have at their disposal the more than 2.2 million documents
produced in this case to date, which include custodial productions from the pre-Complaint
investigation, custodial productions from the *California* case (which has many overlapping
custodians), and targeted collections.  Those prior custodial productions included custodial
documents from Lakshmi Nidamarthi, who was already a former employee at the time FTC
deposed her for a full day in a deposition focused on Seller Fulfilled Prime. *See* n.2, *supra.*

incorrect.  Contrary to Plaintiffs' mischaracterizations, and as it has previously described for the Court's benefit, Amazon invested significant resources to respond to Plaintiffs' voluminous discovery requests and has made meaningful productions so far.  *See* Joint Status Report, Dkt. 273, at 27-34.  Plaintiffs have chosen a kitchen-sink approach to discovery—serving nearly 400 requests for production despite a four-year pre-Complaint investigation that yielded millions of documents that have been deemed produced here, suggesting nearly 150 custodians, refusing to prioritize, and resisting compromise—while simultaneously insisting on rapid compliance with those demands.  Amazon's efforts to work cooperatively with Plaintiffs to "reasonably limit[] discovery requests and responses," ESI Order, Dkt. 256, at ¶ A(1), should not be held against Amazon simply because Plaintiffs have resisted those efforts.

For all of these reasons, the Court should accept Amazon's January 15 and March 31, 2025 proposals for 50% and substantial completion of the Initial Set of documents.

### B.  Amazon's Proposal Regarding Substantial Completion for Additional Documents Is Reasonable.

The substantial completion deadlines noted above would apply to the documents Amazon has agreed to review as of October 1, 2024.  The parties have agreed that between October 1, 2024, and October 15, 2024, they will attempt to come to agreements on additional custodians and search terms to be included in the review of documents—a Second Set.  The parties disagree as to what additional substantial completion deadline will apply to any additional documents brought into the review through a Second Set.  Plaintiffs request a February 14, 2025 completion of that as-yet-unidentified set of documents.  Amazon proposes that the parties see what the scope is, and then Amazon will identify a reasonable completion date based on the information available.  Amazon proposes that, within a week of October 15, it will identify an estimated substantial completion date for this potential Second Set and the parties can confer if needed.  At

that point, Amazon's estimate can be based on an assessment of the actual volume of additional documents implicated and metrics from the review already underway, rather than on an arbitrary date set without any of that information.

Plaintiffs' February 14, 2025 proposal for a Second Set is arbitrary and is based on the same flawed premise as its proposal regarding the Initial Set, i.e., that Amazon can meet any deadline simply by adding reviewers.  Amazon submits that it does not make sense to set deadlines in a vacuum.

*                *                *

Discovery is supposed to be an orderly process that balances need and burden.  Litigants should not be encouraged to make hundreds of discovery requests that implicate millions of documents, resist compromise, and then unilaterally determine a substantial completion date that would require the opposing party to sacrifice quality and exponentially increase its review team. Amazon's proposed schedule assumes it will spend millions of dollars to review and produce millions of documents in a six-month period that places substantial completion of production of custodial documents more than four months before the end of fact discovery.  Amazon respectfully requests the Court adopt its interim discovery deadlines for custodial productions.

### C.  Reproduction Of Documents Produced In *California* And Related Actions..

Amazon will satisfy its reproduction obligations with respect to documents produced in the *California* and Related actions currently outstanding by the end of September 2024. Reproductions of any future productions in those actions will be made within approximately two weeks of the original production.

Dated: September 17, 2024                    Respectfully submitted,

                                             _s/ Shira A. Steinberg_
                                             SUSAN A. MUSSER (DC Bar # 1531486)
                                             EDWARD H. TAKASHIMA (DC Bar # 1001641)
                                             SHIRA STEINBERG (NY Bar # 5695580)
                                             MICHAEL BAKER (DC Bar # 1044327)
                                             Federal Trade Commission
                                             600 Pennsylvania Avenue, NW
                                             Washington, DC 20580
                                             Tel.:   (202) 326-2122 (Musser)
                                                     (202) 326-2464 (Takashima)
                                             Email: smusser@ftc.gov
                                                     etakashima@ftc.gov
                                                     ssteinberg1@ftc.gov
                                                     mbaker1@ftc.gov

                                             *Attorneys for Plaintiff Federal Trade Commission*

JOINT BRIEF REGARDING
INTERIM DISCOVERY DEADLINES - 20
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

s/ Michael Jo
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

s/ Rahul A. Darwar
Rahul A. Darwar (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: Rahul.Darwar@ct.gov
*Counsel for Plaintiff State of Connecticut*

s/ Alexandra C. Sosnowski
Alexandra C. Sosnowski (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

s/ Caleb J. Smith
Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street, Suite 1000
Tulsa, OK 74119
Telephone: (918) 581-2230
Email: caleb.smith@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

s/ Timothy D. Smith
Timothy D. Smith, WSBA No. 44583
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

s/ Jennifer A. Thomson
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

s/ Michael A. Undorf
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

s/ Christina M. Moylan
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

JOINT BRIEF REGARDING
INTERIM DISCOVERY DEADLINES - 21
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  *s/ Gary Honick*
   Gary Honick (admitted *pro hac vice*)
2  Assistant Attorney General
   Deputy Chief, Antitrust Division
3  Office of the Maryland Attorney General
   200 St. Paul Place
4  Baltimore, MD 21202
   Telephone: (410) 576-6474
5  Email: Ghonick@oag.state.md.us
   *Counsel for Plaintiff State of Maryland*
6
   *s/ Katherine W. Krems*
7  Katherine W. Krems (admitted *pro hac vice*)
   Assistant Attorney General, Antitrust Division
8  Office of the Massachusetts Attorney General
   One Ashburton Place, 18th Floor
9  Boston, MA 02108
   Telephone: (617) 963-2189
10 Email: katherine.krems@mass.gov
   *Counsel for Plaintiff Commonwealth of*
11 *Massachusetts*

12 *s/ Scott A. Mertens*
   Scott A. Mertens (admitted *pro hac vice*)
13 Assistant Attorney General
   Michigan Department of Attorney General
14 525 West Ottawa Street
   Lansing, MI 48933
15 Telephone: (517) 335-7622
   Email: MertensS@michigan.gov
16 *Counsel for Plaintiff State of Michigan*

17 *s/ Zach Biesanz*
   Zach Biesanz (admitted *pro hac vice*)
18 Senior Enforcement Counsel
   Office of the Minnesota Attorney General
19 445 Minnesota Street, Suite 1400
   Saint Paul, MN 55101
20 Telephone: (651) 757-1257
   Email: zach.biesanz@ag.state.mn.us
21 *Counsel for Plaintiff State of Minnesota*

22

23

24

*s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

*s/ Ana Atta-Alla*
Ana Atta-Alla (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Ana.Atta-Alla@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

*s/ Jeffrey Herrera*
Jeffrey Herrera (admitted *pro hac vice*)
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: jherrera@nmag.gov
*Counsel for Plaintiff State of New Mexico*

*s/ Zulma Carrasquillo-Almena*
Zulma Carrasquillo (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00901-0192
Telephone: (787) 721-2900
Email: zcarrasquillo@justicia.pr.gov
*Counsel for Plaintiff Commonwealth of Puerto Rico*

1

*s/ Stephen N. Provazza*
Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit
Department of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

2

3

4

5

6

*s/ Sarah L. J. Aceves*
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Counsel for Plaintiff State of Vermont*

7

8

9

10

11

*s/ Laura E. McFarlane*
Laura E. McFarlane (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us
*Counsel for Plaintiff State of Wisconsin*

12

13

14

15

16

17

18

19

20

21

22

23

24

**MORGAN, LEWIS & BOCKIUS LLP**

By: _s/ Molly A. Terwilliger_
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
    molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

Heidi K. Hubbard (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Katherine A. Trefz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
    khodges@wc.com
    jpitt@wc.com
    cmetz@wc.com
    ktrefz@wc.com
    cpruski@wc.com

**COVINGTON & BURLING LLP**

Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice forthcoming*)
Katharine Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com
    dludwin@cov.com
    kmitchelltombras@cov.com

*Attorneys for Defendant Amazon.com, Inc.*

JOINT BRIEF REGARDING
INTERIM DISCOVERY DEADLINES - 24
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222