**Declaration of Robert D. Keeling on Behalf of Amazon.com, Inc.**

I, Robert D. Keeling, declare as follows:

1. I am an attorney admitted to practice law in the District of Columbia and a member in good standing of the District of Columbia Bar. I received a J.D. from the University of Virginia School of Law in 2000, and a B.S. from James Madison University in 1996.

2. I am a partner at the law firm Sidley Austin LLP ("Sidley"). Sidley is serving as discovery counsel to Amazon.com, Inc. ("Amazon") in this matter.

3. In making this declaration, I do not intend to—and am not authorized to—waive any applicable privilege or protection from discovery, including the attorney-client privilege and the work product protection.

4. I have reviewed the Joint Status Report Concerning Interim Discovery Deadlines ("Interim Deadlines JSR"). I also have reviewed the correspondence between the parties related to interim deadlines, TAR, search terms, ESI, and other discovery issues and have participated in multiple meet and confer conferences with Plaintiffs' counsel related to discovery. The purpose of my declaration is to provide factual context, including as to the cost, burden, and feasibility of the parties' respective proposals.

5. My declaration incorporates by reference the terms defined in the Interim Deadlines JSR.

6. I am co-founder and co-head of Sidley's eDiscovery and Data Analytics Group. I sit on the Steering Committee of The Sedona Conference's Working Group 1 on Electronic Document Retention and Production and serve as the chair of the Electronic Discovery Reference

Model's ("EDRM") Global Advisory Council. I am ranked by *Chambers USA* and *Chambers Global* for eDiscovery and Information Governance.

7.  I am an Adjunct Professor at George Mason University Law School, where I teach a course on eDiscovery, and have lectured on eDiscovery and technology issues at Harvard Law School, Vanderbilt Law School, Fordham University School of Law, and American University Washington College of Law. I am a frequent writer and speaker on eDiscovery topics.

8.  In my practice, I regularly advise clients on issues related to preservation, collection, processing, review, analysis, and production of Electronically Stored Information ("ESI"), including document reviews to identify responsive documents and privileged information.

9.  As co-head of Sidley's eDiscovery and Data Analytics Group, I am consulted by my clients and by my colleagues at Sidley to provide advice on a variety of eDiscovery issues, including how to conduct an effective document review in complex, large-scale matters. I have led eDiscovery-related negotiations with the government and opposing counsel, including on the ESI Order in this case and the ongoing discussions related to a TAR protocol.

10. I also serve as discovery counsel for Amazon in the ongoing matter of *People of the State of California v. Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Super. Ct.) [hereinafter California AG Litigation]. I previously served as discovery counsel to Amazon in connection with the Federal Trade Commission's [hereinafter "FTC"] antitrust review of the proposed acquisition of One Medical and the proposed acquisition of iRobot.

11. The remainder of my declaration is organized as follows. I first address eDiscovery issues related to Amazon's proposal of March 31, 2025 for substantial completion and January 15, 2025 for 50% completion of the Custodial Set. I then address eDiscovery issues related to Plaintiffs' proposal for substantial completion by January 15 of the Custodial Set.

**eDiscovery Issues Related to Amazon's Proposal**

12. Amazon has been negotiating a TAR protocol with Plaintiffs, and the parties have reached agreement on most portions. A TAR protocol is an agreement between the parties that governs how TAR will be applied in the matter, including the population of documents that will be subject to TAR, how documents not subject to TAR will be addressed, how the TAR model will be trained, what metrics will be provided, and how the receiving party will validate the performance of TAR.

13. The TAR protocol the parties have negotiated contemplates a TAR 2.0 review, whereby the model will be continually trained based on new responsiveness determinations over the course of the review. This is in contrast to a TAR 1.0 review, whereby a single model is trained towards the outset of the matter.

14. Amazon is using Consilio as the eDiscovery vendor for this matter. Based on information provided by Consilio, Amazon's last proposal of search terms, custodians, and time period returned approximately 6 million documents.

15. On behalf of Amazon, I expect to retain a contract review team of more than 100 attorneys working full time. I expect that the team will complete review of more than 100,000 documents per week. This assumes a team of 100 reviewers working full time (40 hours/week).

16. With a team of this size, I estimate that Amazon can achieve substantial compliance in accordance with the TAR protocol by March 31, 2025.

17. The California AG Litigation involved a similar TAR protocol with application of search terms followed by a TAR 2.0 review workflow.

18. According to Consilio, Amazon reviewed approximately 45% of the documents to reach the minimum recall level of 75% that the parties agreed to in the California AG TAR

protocol. In my experience, I would estimate that Amazon will review a similar percentage of documents pursuant to the TAR protocol in this matter. The actual review percentage varies from case to case and depends on a range of factors, including the responsiveness rate and the nature of the documents subject to review. It is difficult to estimate with precision in advance, but for the reasons stated here, I believe the review percentage required in the recent California AG matter provides the most reliable estimate.

19. Applying this anticipated review percentage to the anticipated review universe of 6 million documents would mean that Amazon would need to review approximately 2.7 million documents. This includes documents identified by TAR as well as family members of those documents.

20. In this matter, I would anticipate a review pace in line with that observed in the California AG matter, which averaged about 35 documents per hour for each member of the review team. That pace is also consistent with what I would expect for a large-scale review such as this in a matter where documents have already been culled by search terms and TAR.

21. Applying a review pace of 35 documents per hour to the expected review population of 2.7 million documents yields an estimated review time of approximately 77,000 reviewer hours. Dividing that work among 100 reviewers and assuming a typical work week of 40 hours yields an estimated first-level review duration of just over 19 weeks. Accounting for the intervening holiday season, I estimate that Amazon will achieve substantial compliance for the Custodial Set on or about March 25, 2025.

**eDiscovery Issues Related to Plaintiffs' Proposal**

*Team Size*

22. Even for large TAR-based document reviews conducted on an expedited basis similar to this matter, I typically retain between 50 to 120 reviewers.

23. For example, according to information provided by Amazon's review providers, Amazon averaged around 65 attorneys conducting the document review in the California AG litigation. In connection with the document review associated with the FTC's review of the proposed acquisition of One Medical, Amazon retained approximately 50 attorneys to perform the initial document review. For the document review associated with the FTC's review of the proposed acquisition of iRobot, Amazon retained approximately 70 attorneys to conduct the review.

24. In my experience, considerable challenges and inefficiencies arise when attempting to retain more than 100 contract attorney reviewers. As team size grows to that size, significantly more oversight, coordination, communication, and day-to-day management is required. A much larger second-level quality control team is needed to ensure alignment across the first-level review. The second-level team must not only monitor for ordinary coding mistakes, common to any review, but also must expend considerable effort to ensure that such a large review team is applying the appropriate responsiveness and privilege determinations consistently.

25. The market for high-quality review attorneys is limited. Only a limited number are available at a given time. Accordingly, it is not usually possible to retain more than about 100 high-quality reviewers for any given review.

26.     Accordingly, document reviews employing more than about 100 reviewers tend to have an increased risk of mistakes such as coding and privilege mistakes and inconsistencies, including a higher volume of clawbacks for inadvertently produced privileged documents.

*Rolling Productions and 50% Completion*

27.     A TAR 2.0 review prioritizes the review of documents that are the most likely to be responsive. As a result, in consideration of the assumptions and information described above, I estimate that Amazon will be able to produce approximately half of the documents anticipated for production under the TAR protocol by January 15, 2025.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of September, 2024, in Washington, D.C.

_____
Responsible Attorney

Robert D. Keeling