THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,
STATE OF NEW YORK, STATE OF
CONNECTICUT, COMMONWEALTH OF
PENNSYLVANIA, STATE OF DELAWARE,
STATE OF MAINE, STATE OF MARYLAND,
COMMONWEALTH OF MASSACHUSETTS,
STATE OF MICHIGAN, STATE OF
MINNESOTA, STATE OF NEVADA, STATE
OF NEW HAMPSHIRE, STATE OF NEW
JERSEY, STATE OF NEW MEXICO, STATE
OF OKLAHOMA, STATE OF OREGON,
COMMONWEALTH OF PUERTO RICO,
STATE OF RHODE ISLAND, STATE OF
VERMONT, and STATE OF WISCONSIN,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

Case No. 2:23-cv-01495-JCC

**AMAZON'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE FTC'S CLAIMS**

NOTE ON MOTION CALENDAR: JANUARY 3, 2025

*ORAL ARGUMENT REQUESTED*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

    A.    Section 13(b)'s Origin:  The Impossibility of Unscrambling Eggs. .......................2

    B.    Section 13(b)'s Text and Structure. .......................................................................3

    C.    The Original Interpretation of Section 13(b). ........................................................4

    D.    *Singer* and its Progeny Revolutionized the FTC's Enforcement Powers. ..............5

            1.    *Singer's* Origin. ........................................................................................5

            2.    Adoption of the FTC's "Routine Fraud" Rationale. ..................................6

            3.    Expansion of Section 13(b)'s Interpretation to Antitrust Cases. ...............7

    E.    The Supreme Court Has Not Adopted *Singer's* Interpretation. ..............................8

ARGUMENT ..................................................................................................................10

I.    THE THEORY, REASONING, AND HOLDING OF *SINGER* ARE "CLEARLY IRRECONCILABLE" WITH *AMG CAPITAL,* AND WITH MODERN PRINCIPLES OF STATUTORY INTERPRETATION. ..................................................10

    A.    *Singer* Was Implicitly Overruled by *AMG Capital*. ...........................................10

    B.    *Singer* Was Abrogated by a Sea Change in Statutory Interpretation. ....................11

            1.    Settled Principles of Statutory Construction No Longer Permit the Use of Legislative History to Construe Unambiguous Legislative Text. .........................................................................................................11

            2.    *Singer* Improperly Used Legislative History to Change the Settled Meaning of an Unambiguous Statute. ........................................................12

II.    THE FTC LACKS A STATUTORY BASIS FOR ITS CLAIMS. ...................................13

    A.    Section 13(b) Unambiguously Forecloses the FTC's Claims. ..............................13

    B.    The FTC's Expansive Interpretation of Section 13(b) Deprives Defendants of Important Rights. ..............................................................................................17

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - i
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

C.    Legislative History Does Not Support the FTC's Interpretation of Section 13(b). ..................................................................................................................19

D.    The Canon of Constitutional Avoidance Buttresses the Textualist Reading. ........21

CONCLUSION ...............................................................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - ii
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# TABLE OF AUTHORITIES

## CASES

*Abbott v. United States*,
    562 U.S. 8 (2010)..............................................................................................17

*American Cyanamid Co. v. FTC*,
    363 F.2d 757 (6th Cir. 1966) .............................................................................19

*AMG Capital Management LLC v. FTC*,
    593 U.S. 67 (2021)..................................................................................... *passim*

*Babb v. Wilkie*,
    589 U.S. 399 (2020)..........................................................................................12

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989)............................................................................................12

*Bostock v. Clayton County, Ga.*,
    590 U.S. 644 (2020)....................................................................................12, 13

*Bragdon v. Abbott*,
    524 U.S. 624 (1998)..........................................................................................15

*Carcieri v. Salazar*,
    555 U.S. 379 (2009)..........................................................................................12

*Chamber of Commerce of U.S. v. Whiting*,
    563 U.S. 582 (2011)..........................................................................................21

*Cinderella Careers and Finishing School, Inc. v. FTC*,
    425 F.2d 583 (D.C. Cir. 1970) ..........................................................................19

*Clark v. Martinez*,
    543 U.S. 371, 381 (2005)..................................................................................22

*Conroy v. Aniskoff*,
    507 U.S. 511 (1993)....................................................................................11, 12

*Dubin v. United States*,
    599 U.S. 110, 120-21 (2023) ............................................................................17

*FTC v. Abbott Labs.*,
    No. 92-1364, 1992 WL 335442 (D.D.C. Oct. 13, 1992) ............................7, 8, 19

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - iii
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*FTC v. Abbott Labs.*,
    853 F. Supp. 526 (D.D.C. 1994) ............................................................................8

*FTC v. American National Cellular, Inc.*,
    810 F.2d 1511 (9th Cir. 1987) ............................................................................22

*FTC v. Atl. Richfield Co.*,
    549 F.2d 289 (4th Cir. 1977) ..............................................................................5

*FTC v. British Oxygen Co., Ltd*,
    529 F.2d 196 (3d Cir. 1976).................................................................................5

*FTC v. Dean Foods Co.*,
    384 U.S. 597 (1966)...............................................................................2, 13, 19

*FTC v. Exxon Corp.*,
    636 F.2d 1336 (D.C. Cir. 1980)........................................................................2, 5

*FTC v. Food Town Stores, Inc.*,
    539 F.2d 1339 (4th Cir. 1976) ............................................................................5

*FTC v. H.N. Singer*,
    668 F.2d 1107 (9th Cir. 1982) ............................................................... *passim*

*FTC v. Mylan Labs., Inc.*,
    62 F. Supp. 2d 25 (D.D.C. 1999) ........................................................................8

*FTC v. Nat'l Tea Co.*,
    603 F.2d 694 (8th Cir. 1979) ..............................................................................5

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ............................................................................14

*FTC v. Security Rare Coin and Bullion Corp.*,
    931 F.2d 1312 (8th Cir. 1991) ............................................................................7

*FTC v. Shire ViroPharma, Inc.*,
    917 F.3d 147 (3d Cir. 2019)..............................................................................14

*FTC v. Simeon Mgmt. Corp.*,
    532 F.2d 708 (9th Cir. 1976) ..............................................................................5

*FTC v. Singer*,
    534 F. Supp. 24 (N.D. Cal. 1981) ......................................................................6

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - iv
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

*FTC v. Thomsen-King & Co.*,
    109 F.2d 516 (7th Cir. 1940) ................................................................15

*FTC v. Va. Homes Mfg. Corp.*,
    509 F. Supp. 51 (D. Md. 1981), *aff'd* 661 F.2d 920 (4th Cir. 1981) (Table)............6

*FTC v. Weyerhaeuser*,
    665 F.2d 1072 (D.C. Cir. 1981) .............................................................5

*FTC v. World Travel Vacation Brokers, Inc.*,
    861 F.2d 1020 (7th Cir. 1988) ...............................................................7

*Gonzalez v. Arizona*,
    677 F.3d 383 (9th Cir. 2012) ............................................................9, 11

*Gundy v. United States*,
    588 U.S. 128 (2019).........................................................................23

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935).........................................................................22

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ................................................................9

*Milner v. Dep't of Navy*,
    562 U.S. 562 (2011)................................................................12, 13, 21

*Myers v. United States*,
    272 U.S. 52 (1926)..........................................................................22

*Sackett v. EPA*,
    598 U.S. 651 (2023).........................................................................17

*Sanchez v. Mayorkas*,
    593 U.S. 409 (2021).........................................................................9

*Sebelius v. Cloer*,
    569 U.S. 369 (2013).........................................................................12

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020).........................................................................22

*Suate-Orellana v. Garland*,
    101 F.4th 624 (9th Cir. 2024) ..............................................................11

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - v
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

*United States v. JS & A Grp., Inc.*,
    716 F.2d 451 (7th Cir. 1983) ...........................................................................7

*United States v. Lynch*,
    268 F. Supp. 3d 1099 (D. Mont. 2017) .........................................................9

*United States v. Morrow*,
    266 U.S. 531 (1925) ......................................................................................17

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ......................................................................................20

*W. Va. v. EPA*,
    597 U.S. 697 (2022) ......................................................................................17

*Whitman v. Am. Trucking Ass'ns, Inc.*,
    531 U.S. 457 (2001) ......................................................................................17

## STATUTES & RULES

Fed. R. Civ. P. 12(c) ...........................................................................................1, 2

15 U.S.C. § 4 ...........................................................................................................22

15 U.S.C. § 45 ..................................................................................................14, 18

15 U.S.C. § 53 ................................................................................................. *passim*

28 U.S.C. § 1292 .......................................................................................................2

42 U.S.C. § 1988 .....................................................................................................12

50 U.S.C. § 525 .......................................................................................................11

## OTHER AUTHORITIES

93 Cong. Rec. S12968 (daily ed. July 10, 1973) .................................................3, 20

93 Cong. Rec. H36595 et seq. (daily ed. Nov. 12, 1973) ....................................3, 20

H.R. Rep. No. 624, 93d Cong., 1st Sess. (Nov. 7, 1973)....................................20, 21

S. Rep. No. 90-1311, 90th Cong., 2d Sess. (Jun. 21, 1968)....................................3

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - vi
(Case No. 2:23-cv-01495-JCC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

S. Rep. No. 93-151, 93d Cong., 1st Sess. (May 14, 1973) ...............................................6, 7, 20, 21

*Federal Trade Commission Reauthorization: Hearing Before the S. Comm. on Com., Sci., and Transp.*, 98th Cong. (1983)................................................................................................17

Brief of Appellee Federal Trade Commission,
    *filed in FTC v. H.N. Singer* (U.S.C.A. 9th Cir. No. 80-4508) ...................................................7

Brief of Plaintiff Federal Trade Commission,
    *filed in FTC v. Abbott Labs.* (D.D.C. No. 92-1364) ...................................................................8

D.M. FitzGerald, *The Genesis of Consumer Protection Remedies
    Under Section 13(b) of the FTC Act* .........................................................................................6

Hon. E. Kagan, *The Scalia Lecture: A Dialogue with Justice Kagan on the Reading of
    Statutes* (Harvard Nov. 17, 2015) ...........................................................................................12

J. McTague, *Merger Menace? Many antitrust watchers say FTC chairman is pushing the
    limit on enforcement* (Barron's Jan. 18, 1999). .........................................................................8

R.D. Paul, *The FTC's Increased Reliance on Section 13(b) in Court Litigation,*
    57 Antitrust L. J. 141 (1988).....................................................................................................7

W.E. Kovacic, *The Federal Trade Commission and Congressional Oversight of Antitrust
    Enforcement,* 17 Tulsa L.J. 587, 664-65 (1982) .......................................................................5

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - vii
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

# INTRODUCTION

2    The Federal Trade Commission ("FTC") lacks statutory authority to bypass administrative

3    proceedings and sue directly for a permanent injunction in federal district court.  As a result,

4    judgment should be entered for Amazon on all of the FTC's claims.  *See* Fed. R. Civ. P. 12(c).

5    When Congress enacted Section 13(b) of the FTC Act in 1973, 15 U.S.C. § 53(b), it

6    authorized the FTC to seek injunctive relief only in support of an FTC administrative

7    proceeding.  Over several decades, the FTC has gradually persuaded some courts to ignore clear

8    language in subsections 13(b)(1) and (b)(2) and to misinterpret Section 13(b) as containing a

9    standalone grant of authority for the FTC to seek permanent injunctions unrelated to an

10   administrative case.

11   The misinterpretation of Section 13(b) that the FTC invokes to bring this antitrust case in

12   federal court originated in *FTC v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982), a consumer

13   deception case alleging "routine fraud."  *Id.* at 1111.  In holding that the FTC could pursue such

14   a case directly in district court "even though the Commission does not contemplate any

15   administrative proceedings," *id.*, the court failed to give effect to the unambiguous preconditions

16   of Section 13(b).  Instead, the court relied almost entirely on "[w]hat little legislative history" it

17   erroneously thought to exist (a single sentence in a committee report concerning a different bill

18   with different language than the one that enacted Section 13(b)).  *Id.*  More than a decade later,

19   the FTC persuaded other courts that Section 13(b) authorized it to pursue, first, *per se* unlawful

20   antitrust violations, and later, *any* type of alleged antitrust violation.  These decisions allow the

21   FTC to file cases like this one, seeking remedies that are unavailable in its administrative forum.

22   But that interpretation openly conflicts with the statutory text, and it has been abrogated by

23   intervening Supreme Court decisions addressing the manner in which courts should interpret

24   Congressional statutes generally.  Indeed, as explained below, the Supreme Court's 2021

25   decision in *AMG Capital Management LLC v FTC* forecloses the very statutory construction of

26   Section 13(b) that the FTC has erroneously (but successfully) argued for years.

Amazon respectfully submits that, particularly in light of recent Supreme Court precedent reading Section 13(b) more narrowly than did *Singer* and its progeny, this Court should re-examine Section 13(b)'s text and structure and hold that the FTC lacks statutory authority to bypass administrative proceedings and sue for a permanent injunction directly in federal court. For the same reason, it should grant Amazon judgment on the pleadings on all of the FTC's claims. Should the Court deny this motion, Amazon respectfully requests that the Court's Order be certified for interlocutory appeal under 28 U.S.C. § 1292(b).[1]

## BACKGROUND

The statute upon which the FTC is relying to pursue this action for unspecified permanent injunctive relief directly in federal court was enacted in direct response to the FTC's request for the "specific power[]" to obtain *preliminary* injunctions during the pendency of its adjudication of administrative cases. *Infra*, at 3 n.3. Notwithstanding this limited initial purpose, the FTC has persuaded courts to incorrectly expand that authority, allowing it to bring entire cases in district court, contrary to the text of the statute and the intention of Congress.

A.      **Section 13(b)'s Origin:  The Impossibility of Unscrambling Eggs.**

A recurrent problem the FTC originally faced was that it lacked a clear statutory mechanism to require parties in an administrative case to desist from challenged conduct while their case was pending in the FTC's administrative court. The absence of such a power made it difficult for the FTC to obtain an effective remedy once the case concluded because, as Justice Fortas explained, "an omelette cannot be unscrambled." *FTC v. Dean Foods Co.*, 384 U.S. 597, 621 (1966) (Fortas, J., dissenting). "These concerns later motivated Congress to grant the FTC … express statutory authority to petition in District Court for a temporary restraining order or preliminary injunction." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1343 (D.C. Cir. 1980).

---

[1] This motion presents a significant issue concerning the FTC's authority to maintain this case. We are bringing this to the Court's attention at an early stage pursuant to Rule 12(c) so that it may consider and determine how to address the serious legal issue that is presented. The motion does not require evidence to be resolved.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

In 1968, the Chair of the FTC wrote to Congress asking it to approve draft legislation that would "grant authority to the Commission ... to bring suit … to temporarily enjoin" unlawful practices pending the completion of an *administrative* case.[2]  When, in June 1973, Congress still had not acted, the General Counsel of the FTC wrote to Washington's Senator Henry Jackson requesting that Congress give the FTC "two specific powers" that it had "sought for a long time."[3]   The first was the power to "enforce its own subpoenas" in federal court, and the second was the power to obtain preliminary injunctions in support of its administrative cases.  *Id.*  Citing that letter, Senator Jackson amended bill S.1081, the Trans-Alaska Pipeline Authorization Act, to include the text of what became Section 13(b).  The formally stated "purpose" of the amendment was to "insure prompt enforcement of the laws the Commission *administers* by granting statutory authority … to seek preliminary injunctive relief[.]" *Id.*

Three days before the House of Representatives' final vote on that bill, the FTC's Chair re-assured the House that the proposed law would authorize the FTC merely to seek injunctions "pending the completion of … *administrative* proceedings" and that this "'gap-filling' measure" would not "increase the Commission's substantive jurisdiction in any respect" nor "extend its substantive reach."[4]  Shortly thereafter, S.1081 was passed into law.

## B.    Section 13(b)'s Text and Structure.

Section 13(b) provides in relevant part:

> (b) Temporary restraining orders; preliminary injunctions
>
> Whenever the Commission has reason to believe--
>
> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

[2] Ltr. from FTC Chair Paul Rand Dixon to Senator Warren Magnuson (Mar. 27, 1968), *reprinted in* S. Rep. No. 90-1311, 90th Cong., 2d Sess. 3-5 (1968) (App'x C).

[3] Ltr. from FTC General Counsel Ronald Dietrich to Senator Henry Jackson (June 15, 1973), *reprinted in* 93 Cong. Rec. S12968 (daily ed. July 10, 1973) (hereafter, "S12968") (App'x D).

[4] Ltr. from FTC Chair Lewis Engman to Representative Harold Johnson (Nov. 9, 1973), *reprinted in* 93 Cong. Rec. H36595, at H36610 (daily ed. Nov. 12, 1973) (hereafter, "H36595" et seq.) (App'x E).  All emphasis is added unless otherwise indicated.

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 3
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1

2

3

4

5

6

7

8

9

10

11

> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—
>
> the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however*, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further*, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.

12

15 U.S.C. § 53(b) (emphasis in original).

13

14

15

16

17

18

19

20

21

22

23

As further discussed below, *infra* § II.A., there are at least two noteworthy features to the statute's structure. The first is that preceding *all* the provisions for injunctive relief—preliminary and permanent—is the requirement that the FTC have reason to believe that the circumstances described in subparts 13(b)(1) and (b)(2) exist. That requirement is significant because subpart (b)(2) requires the FTC to believe that the injunction it seeks would be in the interest of the public pending the completion of an FTC *administrative* complaint. The second notable feature is that the two forms of injunctive relief are contained in the same sentence where they are connected by two provisos ("*Provided, however*" and "*Provided, further*"), indicating that they are interrelated parts of a single delegation of power subject to the same pre-conditions. That is significant because the interpretation upon which the FTC relies requires treating the second proviso as its own stand-alone power unconnected to the rest of the statute.

24

## C.    The Original Interpretation of Section 13(b).

25

26

In the years immediately following the passage of Section 13(b), the courts of appeals, including the Ninth Circuit, uniformly understood it as granting the FTC the authority to seek

1  injunctions only in support of its administrative cases.  *See FTC v. Simeon Mgmt. Corp.*, 532

2  F.2d 708, 715 (9th Cir. 1976) (Kennedy, J.) ("The purpose of section 53 is to protect *those*

3  *[administrative] proceedings*, and only in a rare case would a court be justified in making a

4  finding of unlawful conduct which was not sustained in the FTC's initial decision.").[5]  The FTC

5  itself originally understood the statute that way, because before *Singer* every case involving

6  Section 13(b) to reach the court of appeals did so in the posture of reviewing the grant or denial

7  of a preliminary injunction sought in support of an administrative case.[6]

8      **D.**  ***Singer* and its Progeny Revolutionized the FTC's Enforcement Powers.**

9          **1.**  ***Singer's* Origin.**

10       By the early 1980s, the FTC faced Congressional criticism that it was both an

11  overreaching and ineffective administrative regulator.  "In 1979 and 1980, congressional

12  dissatisfaction with some elements of the FTC's competition and consumer protection work

13  swelled into a forceful movement to curtail certain specific projects and to redefine the agency's

14  underlying authority."[7]  "The intensity and breadth of this drive have been equaled only twice

15  before in the agency's history," and so deep was congressional hostility towards the FTC that the

16  agency "had gone without an authorization bill for fiscal years 1978, 1979, and 1980."  *Id.*

17       It was in this environment that the FTC first attempted the maneuver of bypassing

18  administrative adjudication and suing directly in federal court.  In 1979 and 1980, it brought two

19  cases, both alleging fraud, that would serve as experimental tests of the agency's ability to use

20  Section 13(b) to sue directly for a permanent injunction without instituting administrative

---

[5] *See also FTC v. British Oxygen Co., Ltd*, 529 F.2d 196, 197 (3d Cir. 1976) ("The statute gives the Federal Trade Commission power to seek preliminary injunctions in the district court, pending the outcome of administrative cease and desist proceedings"); *FTC v. Food Town Stores, Inc.*, 539 F.2d 1339, 1342 (4th Cir. 1976) (single judge order) ("Th[e] adjudicatory function is vested in FTC in the first instance.  The only purpose of a proceeding under s 13 is to preserve the status quo until FTC can perform its function.").

[6] *Id*; *see also Exxon*, 636 F.2d at 1338; *FTC v. Atl. Richfield Co.*, 549 F.2d 289, 292 (4th Cir. 1977); *FTC v. Nat'l Tea Co.*, 603 F.2d 694, 696 (8th Cir. 1979); *FTC v. Weyerhaeuser*, 665 F.2d 1072, 1073-74 (D.C. Cir. 1981).

[7] W.E. Kovacic, *The Federal Trade Commission and Congressional Oversight of Antitrust Enforcement*, 17 Tulsa L.J. 587, 664-65 (1982).

AMAZON'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE FTC'S CLAIMS - 5 (Case No. 2:23-cv-01495-JCC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

1    proceedings.  Despite starting in the context of "routine fraud," that experiment would eventually

2    swell into the sweeping antitrust enforcement authority to which the FTC lays claim today.

3    "Through [a] carefully considered, step-by-step approach, the Commission established its basic

4    Section 13(b) analyses and arguments, and obtained favorable decisions endorsing them, *before*

5    *pursuing a more ambitious agenda*."[8]

6            **2.        Adoption of the FTC's "Routine Fraud" Rationale.**

7            The first case to countenance the FTC's use of Section 13(b) to directly seek a permanent

8    injunction was *Singer*.  The defendants moved to dismiss, arguing "that the FTC has no authority

9    to proceed in federal district court without first conducting administrative proceedings."  *FTC v.*

10   *Singer*, 534 F. Supp. 24, 26 (N.D. Cal. 1981).  The district court recognized that it was being

11   asked to decide a "question … of first impression," and held that "the legislative history of

12   Section 13(b) suggests that it was contemplated that the FTC would, in *routine fraud cases*

13   where its expertise was unnecessary, seek relief in the first instance in federal district court."  *Id.*

14   at 27 (citing S. Rep. No. 93-151, 93d Cong., 1st Sess. 31 (May 14, 1973)).[9]

15           On appeal, the Ninth Circuit held that subparts 13(b)(1) and (b)(2) apply only to requests

16   for preliminary injunctions, and that the statute "does not on its face condition the issuance of a

17   permanent injunction upon the initiation of administrative proceedings."  *Singer*, 668 F.2d at

18   1110.  Asserting that "[w]hat little legislative history there is supports our conclusion," the court

19   then quoted from the same Senate conference report upon which the district court had relied—a

20   May 1973 report discussing a different bill (S.356) than the one that finally passed Section 13(b)

21   into law (S.1081) six months later.  *Id.* at 1110-11 (quoting S. Rep. 93-151, at 30-31).  The

22

23   ───────────────────────

[8] D.M. FitzGerald, *The Genesis of Consumer Protection Remedies Under Section 13(b) of the FTC Act*, at

24   22, available at:
     https://www.ftc.gov/sites/default/files/documents/public_events/FTC%2090th%20Anniversary%20Symp
     osium/fitzgeraldremedies.pdf.

25   [9] The other court from which the FTC first sought this authority also granted it, but that case was affirmed
     on appeal in a non-precedential opinion.  *See FTC v. Va. Homes Mfg. Corp.*, 509 F. Supp. 51, 53 n.1, 56

26   (D. Md. 1981), *aff'd* 661 F.2d 920 (4th Cir. 1981) (Table).

FTC's brief submitted to the Ninth Circuit identified that report, and no other source, as the "legislative history explain[ing] the Congressional intent underlying" Section 13(b). *See* App'x A, at 28-29; *but see infra* § II.C (discussing additional legislative history not considered in *Singer*). Based on the lone source identified in the parties' briefs, the court held "that § 13(b) gives the Commission the authority to seek, and gives the district court the authority to grant, permanent injunctions in proper cases even though the Commission does not contemplate any administrative proceedings." *Singer*, 668 F.2d at 1111. Other courts followed *Singer* to later reach the same conclusion, often in reliance upon the same Senate committee report.[10]

These and other decisions significantly altered the FTC's enforcement authority from an administrative agency to a frequent federal court plaintiff. "Prior to the 1980s, Bureau attorneys handled the trial of administrative complaints before administrative law judges[.]"[11] By 1988, they had "*far more* enforcement cases in progress before federal district judges in federal court than … before administrative law judges under Part III of the Commission's Rules of Practice." *Id.* Even so, because of their complexity, "[t]he Commission ha[d] not yet sought a permanent injunction under Section 13(b) in a case" alleging antitrust violations. *Id.* at 146.

### 3. Expansion of Section 13(b)'s Interpretation to Antitrust Cases.

In 1992, almost twenty years after the enactment of Section 13(b), the FTC for the first time bypassed its administrative system to file an *antitrust* complaint in federal district court seeking "a permanent injunction … plus restitution to the United States[.]" *FTC v. Abbott Labs.*, No. 92-1364, 1992 WL 335442, *1 (D.D.C. Oct. 13, 1992). The defendant Abbott moved to dismiss, "argu[ing] that the complaint presents a case of first impression and marks an improper attempt by the Commission to avoid its administrative responsibility to define and enforce unfair

---

[10] *See, e.g., United States v. JS & A Grp., Inc.*, 716 F.2d 451, 456-57 (7th Cir. 1983); *FTC v. World Travel Vacation Brokers Inc.*, 861 F.2d 1020, 1027-28 (7th Cir. 1988); *FTC v. Security Rare Coin and Bullion Corp.*, 931 F.2d 1312, 1314-15 (8th Cir. 1991).

[11] R.D. Paul, *The FTC's Increased Reliance on Section 13(b) in Court Litigation*, 57 Antitrust L. J. 141, 142 (1988).

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 7
(Case No. 2:23-cv-01495-JCC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   trade practices." *Id.*  Contradicting the position it had taken in *Singer* and other cases, the FTC

2   argued that S. Rep. 93-151 *should not* be relied upon as evidence of Congressional intent,

3   because it pertained to an "earlier bill" that was not adopted.  *See* App'x B, at 12.  Additionally,

4   the FTC represented to the court that "there is no legislative history relating to the permanent

5   injunction proviso *as enacted*." *Id.* (emphasis in original).  The district court accepted the FTC's

6   representation that there was "*no legislative history* contemporaneous with the enactment of this

7   proviso" and denied Abbott's motion to dismiss.  *Abbott Labs.*, 1992 WL 335442, at *2.

8       The FTC later lost the *Abbott Laboratories* case on the merits and elected not to appeal,

9   thereby preserving a precedent allowing it to bring antitrust cases directly in federal court.  *FTC*

10  *v. Abbott Labs.*, 853 F. Supp. 526, 537 (D.D.C. 1994).  When the FTC next brought an antitrust

11  case in the same district—a case the FTC's Chair publicly acknowledged was a "stretch" of its

12  authority[12]—the defendants again moved to dismiss arguing that "this Court lacks jurisdiction to

13  issue a permanent injunction in an action brought by the FTC." *FTC v. Mylan Labs., Inc.*, 62 F.

14  Supp. 2d 25, 32 (D.D.C. 1999).  The court declined to dismiss it, relying upon "the *Abbott Labs*

15  holding." *Id.* at 35-36.

16      **E.    The Supreme Court Has Not Adopted *Singer's* Interpretation.**

17      In addition to the cases discussed above that trace the evolution of the interpretation of

18  Section 13(b) from a statute that authorized injunctions solely in support of administrative

19  proceedings, to one that authorized the FTC to pursue direct litigation of antitrust cases in federal

20  court, there are also a wide array of other decisions in which the FTC's authority to sue was not

21  challenged and therefore was simply assumed to exist.  Among those cases is the recent Supreme

22  Court decision in *AMG Capital Management LLC v. FTC*, 593 U.S. 67 (2021), a case in which

23  all of the parties before the Court assumed that Section 13(b) allowed the FTC to sue directly for

24  a permanent injunction (their differences were over what form that injunction could take).  It

25

26  [12] J. McTague, *Merger Menace? Many antitrust watchers say FTC chairman is pushing the limit on enforcement* (Barron's Jan. 18, 1999) (FTC Chair Pitofsky stating of *Mylan*: "[I]t's a stretch, that is true.").

therefore should come as no surprise that there are statements in *AMG Capital* that the FTC will surely characterize as endorsing its ability to bypass "its own administrative proceedings" and "file[] a complaint against [defendants] directly in federal court." *Id.* at 70-71.  Indeed, the FTC will assuredly describe the first sentence of the Court's opinion in that way.  *Id.* at 70.

But elsewhere in *AMG Capital,* the Court acknowledged that its "task here [was] not to decide" whether the FTC's use of Section 13(b) "was desirable," but was instead to answer the narrower question whether Congress gave "the Commission authority to obtain *monetary* relief directly from courts[.]"  *Id.* at 74.  The belief that Congress had authorized the FTC to seek monetary recovery had also originated in *Singer*, *id.* at 71, and the Court unanimously held that the FTC did not have that power even though the "courts of appeals ha[d], until recently, consistently accepted [the FTC's] interpretation" of Section 13(b) on that question.  *Id.* at 81.

## STANDARD OF REVIEW

The rule in this Circuit is that "a published decision loses its precedential force when subsequent binding precedent has 'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'"  *United States v. Lynch*, 268 F. Supp. 3d 1099, 1104 (D. Mont. 2017) (quoting *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (*en banc*)).  "In that case, district courts are instead required to 'consider themselves bound by the intervening higher authority and reject the prior opinion ... as having been effectively overruled.'"  *Id.* (quoting *Gonzalez*, 677 F.3d at 389 n.4).  "[T]he issues decided by the higher court need not be identical in order to be controlling."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*), *overruled other grounds*, *Sanchez v. Mayorkas*, 593 U.S. 409 (2021).

//

//

//

//

//

1

**ARGUMENT**

2

**I.     THE THEORY, REASONING, AND HOLDING OF *SINGER* ARE "CLEARLY**

3
**IRRECONCILABLE" WITH *AMG CAPITAL*, AND WITH MODERN
PRINCIPLES OF STATUTORY INTERPRETATION.**

4
*Singer* and its progeny are no longer binding authority in this Circuit.

5
**A.     *Singer* Was Implicitly Overruled by *AMG Capital*.**

6
When the Supreme Court partially overruled *Singer* in *AMG Capital* on the issue of

7
whether the FTC could obtain monetary remedies through Section 13(b)'s permanent injunction

8
provision, it interpreted Section 13(b) in a way that contradicts *Singer's* premise that preliminary

9
and permanent injunctions are subject to different pre-conditions.  *Singer* reached its

10
interpretation in the belief that the "conditions laid down earlier in the section for the issuance of

11
preliminary injunctions" do not apply to "the issuance of a permanent injunction."  *Singer*, 668

12
F.2d at 1110.  That is the necessary first step to enable its incorrect interpretation that actions for

13
permanent injunction may be sought in federal court independent of administrative proceedings.

14
*Id.* at 1111.  *AMG Capital* says that is wrong, and that the FTC may only seek a *permanent*

15
injunction in circumstances that satisfy the pre-conditions of both subparts 13(b)(1) and (b)(2).

16
593 U.S. at 75-77.  *Singer* is therefore "clearly irreconcilable" with *AMG Capital* and is no

17
longer controlling.

18
The narrow question presented in *AMG Capital* was whether the authority to obtain

19
permanent injunctive relief also included the ability to obtain monetary remedies.  The Supreme

20
Court answered that question by holding that subparts 13(b)(1) and (b)(2) are preconditions that

21
apply every time the FTC seeks an injunction (whether preliminary or permanent).  593 U.S. at

22
76-77.  Importantly, although not directly at issue in *AMG Capital*, subpart 13(b)(2) requires the

23
FTC to believe that the injunction it seeks would be "in the interest of the public" during the

24
pendency of an *administrative* case.  15 U.S.C. § 53(b)(2).  The FTC cannot hold that belief if its

25
intention is to bypass its administrative system altogether.  While the Court stated in *dicta* that

26
the statute "*might* also be read" to allow the FTC to "dispense with administrative proceedings"

---

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 10
(Case No. 2:23-cv-01495-JCC)

to directly seek injunctions, *AMG Capital*, 593 U.S. at 76, its instruction that subparts 13(b)(1) and (b)(2) apply to every form of injunction sought by the FTC ultimately forecloses that exact result.

Thus, the "reasoning underlying" *Singer* is "clearly irreconcilable" with an intervening Supreme Court decision, and this Court's duty is to consider itself bound by that intervening higher precedent. *Gonzalez*, 677 F.3d at 389 n.4; *see also Suate-Orellana v. Garland*, 101 F.4th 624, 632 (9th Cir. 2024) (panel opinions were no longer binding because they "did not apply the analysis" required by a subsequent Supreme Court decision).

### B.    *Singer* Was Abrogated by a Sea Change in Statutory Interpretation.

Additionally, an entire body of law that changed the way courts read statutes now invalidates *Singer's* methodology and reasoning. Consistent with the era in which it originated, *Singer* turned to legislative history to guide its understanding of Section 13(b) without first determining that the statute was ambiguous. While that approach was accepted at the time, it is unequivocally rejected today.

#### 1.    Settled Principles of Statutory Construction No Longer Permit the Use of Legislative History to Construe Unambiguous Legislative Text.

It was once commonplace for courts to examine legislative history to help determine a statute's meaning, whether or not the statutory text was ambiguous. For example, a unanimous Supreme Court once believed that the "statutory command" of 50 U.S.C. § 525 was "unambiguous, unequivocal," and provided "unlimited" support for the petitioner in *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993). But an eight-member majority nevertheless considered it necessary to pore through committee reports and other legislative history to confirm that those sources were aligned with its interpretation. *Id.* at 516-17 & n.11. The majority believed that "[a] jurisprudence that confines a court's inquiry to the 'law as it is passed,' and is wholly unconcerned about 'the intentions of legislators,' … would enforce an unambiguous statutory

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 11
(Case No. 2:23-cv-01495-JCC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1   text even when it produces manifestly unintended and profoundly unwise consequences." *Id.* at

2   518 n.12.[13]

3          Today, that approach is a dead letter. "This Court has explained many times over many

4   years that, when the meaning of the statute's terms is plain, our job is at an end." *Bostock v.*

5   *Clayton County, Ga.*, 590 U.S. 644, 673-74 (2020). "The people are entitled to rely on the law as

6   written, without fearing that courts might disregard its plain terms based on some extratextual

7   consideration." *Id.* "'Legislative history, for those who take it into account, is meant to clear up

8   ambiguity, not create it.'" *Id.* (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)).[14]  It is

9   thus a "settled principle[] of statutory construction" that courts "must first determine whether the

10  statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). "If it is,

11  we must apply the statute according to its terms." *Id.* These developments were aptly summarized

12  by Justice Kagan in 2015 with the observation that "we're all textualists now."[15]

   **2.    *Singer* Improperly Used Legislative History to Change the Settled
           Meaning of an Unambiguous Statute.**

13

14

15         *Singer* cannot be reconciled with the modern, textualist approach to interpreting statutes.

16  The Court devoted only a single sentence of its opinion to analyzing the text of Section 13(b),

17  before turning to legislative history to supply its meaning. *Singer*, 668 F.2d at 1110. The only

18  explanation given for why the court did not believe subparts (b)(1) or (b)(2) were applicable to

19  permanent injunctions, is that the report of the Senate's Commerce Committee "sets out a clear

20  and coherent policy underlying the new section and supports the natural reading of the statute."

21  *Id.* at 1111. But under current controlling law, the Court should not have even turned to

22

23  [13] *See also Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989) (eight Justice majority using House and Senate
    Committee reports to ascertain the meaning of 42 U.S.C. § 1988's fee provisions).

24  [14] *See also Babb v. Wilkie*, 589 U.S. 399, 413 (2020) ("[W]here ... the words of [a] statute are unambiguous,
    the judicial inquiry is complete."); *Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (court's "inquiry ceases if
    the statutory language is unambiguous and the statutory scheme is coherent and consistent").

25  [15] Hon. Elena Kagan, *The Scalia Lecture: A Dialogue with Justice Kagan on the Reading of Statutes*, at

26  8:29 (Nov. 17, 2015), *available at* http://today.law.harvard.edu/in-scalia-lecture-kagan-discusses-statutory-
    interpretation

1  legislative history unless it first determined that the statute was ambiguous.  The *Singer* court

2  made no such finding, because the statute is not ambiguous.  It plainly requires the FTC "to

3  believe," as a pre-condition of seeking an injunction, that it "would be in the interest of the

4  public" to enjoin conduct during the pendency of a complaint that *the FTC itself* has the power to

5  "dismiss[]" or "ma[k]e" orders upon, i.e., an administrative proceeding.  15 U.S.C. § 53(b)(2).

6  *Singer* turned to a Senate committee report to nullify that requirement without ever purporting to

7  find that the statute was ambiguous.  Because even *valid* legislative history may not be used to

8  create ambiguity where it does not already exist, *Bostock*, 590 U.S. at 674; *Milner*, 562 U.S. at

9  574, the approach taken in *Singer* is "clearly irreconcilable" with current controlling law and is

10  not binding on the Court.

11  **II.    THE FTC LACKS A STATUTORY BASIS FOR ITS CLAIMS.**

12         The FTC is a creature of statute, and it may not act in ways that Congress has not

13  authorized.  Before the enactment of Section 13(b), it was well-understood that the FTC's only

14  basis for seeking an injunction of any kind was the "incidental power" to seek preliminary

15  injunctions from the court of appeals in support of administrative cases.  *Dean Foods*, 384 U.S. at

16  606, 611-12.  Its claims in this case are explicitly premised upon the enactment of Section 13(b),

17  *see* Second Amended Complaint ("2nd Am. Compl."), ECF 327, ¶ 46, and thus require the FTC

18  to show that Section 13(b) authorizes it to bypass its administrative proceedings and directly seek

19  a permanent injunction from this Court.  Because Congress authorized no such thing, judgment

20  should be entered for Amazon on all of the FTC's claims.

21         **A.    Section 13(b) Unambiguously Forecloses the FTC's Claims.**

22         The plain and ordinary meaning of Section 13(b) is that the FTC may seek injunctions

23  (preliminary or permanent) only when it is in the public interest to do so in support of an FTC

24  administrative complaint.  15 U.S.C. § 53(b).  The contrary interpretation that the statute

25  authorizes the FTC to directly seek a permanent injunction in federal court independent from an

26

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 13
(Case No. 2:23-cv-01495-JCC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

administrative complaint, openly conflicts with both the statute's text and the intervening commands of the Supreme Court.

Subpart (b)(2) is vital to any proper understanding of the statute's scope.  It identifies one of two necessary conditions that must exist before the FTC can exercise its authority to seek an injunction.  Critically, it cannot be read as contemplating that the FTC would use those powers to dispense with administrative proceedings and sue directly in federal court.[16]

Consider three elements of the text of (b)(2).  First, the phrase "until such complaint is dismissed *by the Commission*," 15 U.S.C. § 53(b)(2), plainly refers to administrative action by the FTC.  Only within its own administrative system can the FTC decide whether a complaint lacks merit and, if it does, dismiss it.

Second, the phrase "or *set aside* by the court *on review*," *id.*, is a reference to the procedure in Section 5(c) of the FTC Act for obtaining court of appeals "review" of FTC cease-and-desist orders issuing from an administrative proceeding.  *See* 15 U.S.C. § 45(c).  The words "set aside" and "on review" *cannot* be read as contemplating an original decision by a federal district court, and are thus incompatible with an interpretation that the FTC is still holding a belief that satisfies Section 13(b)(2) when it bypasses administrative proceedings and directly sues in this Court.

Third, the phrase "or until the order *of the Commission made thereon* has become final," *id.* § 53(b)(2), plainly is another reference to an administrative cease-and-desist order.  *See* 15 U.S.C. § 45(g) ("Finality of order").  As the FTC has no power to "ma[k]e" any orders in federal district court, that language *also* is incompatible with an interpretation that allows the FTC to bypass administrative proceedings to sue in this Court.  Although this precise question was not

---

[16] Subpart (b)(1) likewise substantively limits the FTC's authority to seek injunctions.  *See AMG Capital*, 593 U.S. at 76 ("[T]he words 'is violating' and 'is about to violate' (not 'has violated') set[] forth when the Commission may request injunctive relief."); *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020) ("[T]he FTC 'may' seek an injunction in federal district court only when the defendant 'is violating, or is about to violate,' one or more of the antitrust laws"); *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 156, 160 (3d Cir. 2019) (same).  Notably, the FTC affirmatively alleges that its claims comply with subpart (b)(1), but makes no similar claim about (b)(2).  *See* 2nd Am. Compl. ¶ 46.

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 14
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

before the Court in *AMG Capital*, the Court's unanimous opinion reflects the same

understanding of subpart 13(b)(2).  593 U.S. at 76 (the "words" of subpart (b)(2) "reflect that the

provision addresses … stopping seemingly unfair practices from taking place while the

Commission determines their lawfulness.").

Any doubt that the plain language of Section 13(b) is referring to an administrative

proceeding is laid to rest by the obvious parallels between that provision and its earlier-enacted

counterpart, Section 13(a).  With only minor differences in wording, both sections provide that

the FTC can seek injunctions only when it holds the beliefs required by the statutes' respective

subparts (1) and (2), including the belief that the injunction would be in the public interest

pending the adjudication of an FTC Complaint.  *See* 15 U.S.C. §§ 53(a), (b).  When Section

13(b) was enacted, that language in Section 13(a)(2) was well-understood to mean an FTC

*administrative* Complaint.[17]  By selecting nearly identical language to describe the parallel

requirements of Section 13(b)(2), Congress deliberately enacted a statute with the same intended

meaning.  "When administrative and judicial interpretations have settled the meaning of an

existing statutory provision, repetition of the same language in a new statute indicates, as a

general matter, the intent to incorporate its administrative and judicial interpretations as well."

*Bragdon v. Abbott*, 524 U.S. 624, 645 (1998).

An express premise of the contrary interpretation reached in *Singer* and its progeny is that

subparts 13(b)(1) and (b)(2) are "conditions … for the issuance of preliminary injunctions," but

not for permanent injunctions.  *Singer,* 668 F.2d at 1110.  That holding is the linchpin for treating

the second proviso in Section 13(b) ("*Provided further*, That in proper cases the Commission may

seek, and after proper proof, the court may issue, a permanent injunction") as a stand-alone grant

of authority, cabined only by the phrase "in proper cases."  *Singer* reasoned backwards by using a

committee report to first determine that the proviso was *intended* to allow the FTC to bypass

---

[17] *See, e.g., FTC v. Thomsen-King & Co.*, 109 F.2d 516, 518 (7th Cir. 1940) ("Subsection (2) was written for a purpose which was to prevent the ineffectuality of proceedings before the Commission").

administrative proceedings in some cases, and then likewise using that same report to define the category of cases that would be "proper" exercises of that power.  *Id.* at 1111.  But the text itself is not at all ambiguous on that point.[18]

There is no textual basis for distinguishing between "preliminary" and "permanent" injunctions when it comes to the two pre-conditions that must be satisfied for the issuance of an injunction.  As the Supreme Court has now directly held in a *permanent* injunction case, Section 13(b) must be "[t]aken as a whole," and the FTC may only seek injunctions, preliminary or permanent, under the conditions described in subparts 13(b)(1) and (b)(2).  *AMG Capital*, 593 U.S. at 76-77.  Section 13(b) thus cannot be read as authorizing the FTC to bypass its administrative proceedings and sue directly for a permanent injunction in federal district court, because doing so is inherently inconsistent with the FTC holding the belief required by subpart (b)(2):  that the injunction is being sought because obtaining it "would be in the interest of the public" while the FTC considers and makes orders upon an *administrative* complaint.  15 U.S.C. § 53(b)(2).

Further textual support for that reading comes from the fact that both forms of injunction are provided for *in the same sentence* containing an initial delegation of power followed by two provisos ("*Provided, however*" and "*Provided, further*") indicating that they are all articulations of a single set of powers.  15 U.S.C. § 53(b).  The first proviso, which requires preliminary injunctions to be dissolved if an administrative complaint is not timely filed, *see* 15 U.S.C. § 53(b), plainly modifies the initial provision establishing the standards for issuing preliminary injunctions.  The second proviso describing the FTC's ability to obtain permanent injunctions, is explicitly identified as a "*further*" modification of the preceding language, and thus is not a stand-alone power.  *Id.*  The Supreme Court has already agreed with this interpretation, finding that its placement "as a proviso" most naturally "suggests that those words are directly related to

---

[18] Courts have long struggled to understand what the phrase "in proper cases" was meant to convey. However, that ambiguity does not cloud the plain language requiring the FTC to hold the beliefs set forth in sub-sections 13(b)(1) "and" (b)(2) as prerequisites to seeking an injunction.  15 U.S.C. § 53(b).

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 16
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

1    a previously issued preliminary injunction." *AMG Capital*, 593 U.S. at 76; *see also Abbott v.*

2    *United States*, 562 U.S. 8, 25-26 (2010) ("The 'grammatical and logical scope' of a proviso …

3    'is confined to the subject-matter of the principal clause' to which it is attached.") (quoting

4    *United States v. Morrow*, 266 U.S. 531, 534-535 (1925)).[19]

5          This plain reading of the statute is also reinforced by the presumption "that Congress

6    does not 'hide elephants in mouseholes' by 'altering the fundamental details of a regulatory

7    scheme in vague terms or ancillary provisions.'" *Sackett v. EPA*, 598 U.S. 651, 677 (2023)

8    (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)).[20]  Section 13(b) was

9    enacted as an ancillary part of a statute that primarily was designed to authorize the construction

10   of a pipeline to transport oil across protected wilderness in Alaska.  And it is not Section 13(b) as

11   a whole, but only its "second proviso"—a minor component part of an ancillary statute—that has

12   been misinterpreted as transforming the FTC into an agency that routinely litigates entire cases in

13   federal district court.  If Congress had truly intended to bring about such a fundamental revision

14   in the FTC's mandate, it would have done so through major legislation—not through a proviso.[21]

15   **B.    The FTC's Expansive Interpretation of Section 13(b) Deprives Defendants of**
         **Important Rights.**

16

17         The misinterpretation of Section 13(b) that has allowed the FTC to pursue cases like this

18   one in district court prejudices parties in multiple ways.

19

20   _____

     [19] This construction is reinforced by Section 13(b)'s heading: "Temporary restraining orders; preliminary
21   injunctions."  15 U.S.C. § 53(b).  "[T]he title of a statute and the heading of a section are tools available
     for the resolution of a doubt about the meaning of a statute."  *Dubin v. United States*, 599 U.S. 110, 120-
22   21 (2023) (quotation omitted).  "[A] title is especially valuable where it reinforces what the text's nouns
     and verbs independently suggest."  *Id.* at 121 (quotation omitted).

23   [20] *See also W. Va. v. EPA*, 597 U.S. 697, 723 (2022) ("Extraordinary grants of regulatory authority are
     rarely accomplished through 'modest words,' 'vague terms,' or 'subtle devices.'").

24   [21] In 1983, an FTC Commissioner (and former Chair) testified that Congress should enact "a new Section
     13(c)" to authorize the FTC to bring antitrust cases—because Section 13(b) had not clearly done so.
25   *Federal Trade Commission Reauthorization: Hearing Before the S. Comm. on Com., Sci., and Transp.*,
     98th Cong. 47-48, 53-54 (1983) (statement of FTC Commissioner Michael Pertschuk) (App'x H).
26   Congress has never adopted that suggestion, but the FTC still practices as though it had.

1        First, the FTC Act imposes a balance that—were it not for *Singer* and its progeny—

2  encourages the Commission to take measured actions that are well-supported in law.  Section

3  5(c) provides that, after the agency issues a cease-and-desist order, the party against whom that

4  order was issued "may obtain a review of such order in the court of appeals of the United States,

5  *within any circuit* where the method of competition or the act or practice in question was used or

6  where such person … resides or carries on business[.]"  15 U.S.C. § 45(c).  That provision

7  assures the defendant in an administrative case that it can decide where an appeal ultimately will

8  be heard, but just as importantly, it incentivizes the Commission to take positions that can

9  withstand scrutiny in *every* circuit able to review its resulting orders.  Should the FTC instead

10  use its authority, as it does here, to push the boundaries of antitrust law (and Section 5 of the

11  FTC Act) in ways that conflict with the precedents of one or more circuits, then it has every

12  reason to expect that the defendant would seek review of any of its orders in those circuits.  The

13  expansive, contra-textual interpretation of Section 13(b) that the FTC invokes here  directly

14  interferes with the balance of the FTC Act and deprives defendants of the procedural right to

15  decide where their arguments will first receive judicial review.

16        Second, *Singer's* interpretation greatly expands the coercive power that the FTC purports

17  to wield over all manner of companies.  Under the design of the FTC Act, the principle remedy

18  that the FTC can impose on a defendant is an order to cease and desist from conduct it has

19  determined to be an unfair method of competition. 15 U.S.C. § 45(b) (stating that the

20  Commission may "issue … an order requiring such person, partnership, or corporation to cease

21  and desist from using such method of competition").  In its Complaint in this case, the FTC

22  asserts a right to obtain unspecified "structural relief" in the organization of Amazon's business,

23  *see* 2nd Am. Compl. at 163:8, a power that it simply does not have in its administrative tribunal.

24  Congress did not provide the FTC with the power to restructure companies its Commissioners

25  view with disfavor.  The FTC only claims that power through the courts.

26

Third, defendants have a right to impartial treatment from FTC Commissioners, but the perceived ability of the FTC to avoid its administrative process undermines this protection.  Prior to the development of the *Singer* line of cases, there were members of the Supreme Court who believed that even allowing the FTC to request *preliminary* injunctions required an act of prejudgment so severe that it would "strike a devastating blow at the fundamental theory upon which" the FTC was based.[22]  In those instances in which an FTC Commissioner had publicly prejudged an industry or a company that they later regulated, the federal courts rebuked them for it.[23]

Today, FTC Commissioners can be appointed *despite* their well-known, pre-existing views of industries or specific companies they are expected to regulate.  Those prejudgments, as is the case here with respect to FTC Chair Khan, are not seen as disqualifying from service as an FTC Commissioner, because the Commissioners can instead direct the Commission to file a complaint in district court.  *Singer's* erroneous interpretation enables that tolerance for bias by making it optional for the FTC to fulfill its original mandate of fairly and impartially applying the FTC Act to a record developed after notice and a hearing.

### C.    Legislative History Does Not Support the FTC's Interpretation of Section 13(b).

As discussed above, *Singer* reached its interpretation based upon "[w]hat little legislative history" it thought to exist.  668 F.2d at 1110.  *Abbott Labs* further expanded the FTC's power in the incorrect belief that contemporaneous legislative history did not exist at all.  1992 WL 335442, at *2.  Setting aside that both decisions wrongly focused on legislative history in the

---

[22] *Dean Foods*, 384 U.S. at 617 (Fortas, J., dissenting) ("The Commission was not intended to—it has no power to—it should not—make a judgment on the merits prior to notice and hearing.").

[23] *See, e.g.*, *Cinderella Careers and Finishing School, Inc. v. FTC*, 425 F.2d 583, 591 (D.C. Cir. 1970) (labeling it "appalling" that a Commissioner who had made public speeches critical of an industry later participated in regulating it); *American Cyanamid Co. v. FTC*, 363 F.2d 757, 767-78 (6th Cir. 1966) (vacating FTC Order because of Commissioner prejudgment).

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 19
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   interpretation of an unambiguous statute, both were also wrong about the scope and direction of

2   that history.

3           The Senate Commerce committee report quoted in *Singer* and other cases contains the

4   statement that the FTC would "have the ability, in the routine fraud case, to merely seek a

5   permanent injunction[.]"  S. Rep. 93-151, at 31 (App'x F).  But that report concerned S.356,

6   which was not the bill through which Section 13(b) was ultimately enacted into law.[24]  When the

7   Senate moved a modified portion of that bill (with different operative language) into S.1081, the

8   Trans-Alaska Pipeline Authorization Act, it took that action in direct response to the FTC's

9   request for the long-sought, "specific" power to obtain "*preliminary* injunctions."  S12968

10  (App'x D).  That the Senate was acting on that specific request is confirmed by the text of

11  Senator Jackson's amendment, which says that its purpose was to authorize "*preliminary*

12  injunctive relief" for "laws the Commission *administers*."  *Id.*  That purpose is further confirmed

13  by the letter through which the FTC's Chair re-assured Congress, just days before enactment,

14  that the law would be a "'gap-filling' measure" utilized during FTC "administrative

15  proceedings," and that it would not "increase the Commission's substantive jurisdiction *in any*

16  *respect*" nor in *any* "*way extend* its substantive reach."  H36610 (App'x E).  That same

17  understanding was echoed on the floor of the House shortly before passage.  *Id.* at H36612 (Rep.

18  John Dingell:  "The bill makes no changes whatever in the substantive powers of the FTC.").

19          The Senate report cited in *Singer* was written months before Congress voted on a

20  different bill, and thus cannot shed meaningful light on Congress's intention.  In contrast, the

21  House Report concerning S.1081, H.R. Rep. No. 624, 93d Cong., 1st Sess. (Nov. 7, 1973)

22  (App'x G), was a conference report published *nine days* before enactment; it was signed by

23  fourteen conference managers, representing *both* chambers of Congress; and it contradicts the

24

25  [24] The report also states that no hearings or debates were held on S.356.  *Id.* at 6.  Believing that Congress
    "had this Report in mind" when it enacted S.1081 six months later requires "even a greater suspension of
26  disbelief than legislative history normally requires."  *Vt. Agency of Natural Resources v. United States ex*
    *rel. Stevens*, 529 U.S. 765, 783 n.12 (2000).

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 20
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  Senate report cited in *Singer* in multiple ways.  First, it fails to contain the statement about the

2  FTC directly obtaining permanent injunctions in routine cases, suggesting an absence of

3  bicameral agreement over the intention to give the FTC any such power.  Given that the House

4  had previously rejected inclusion of any version of the FTC amendments in the Trans-Alaska

5  Pipeline bill, *id.* at 22-23, that omission is meaningful.  *See Chamber of Commerce of U.S. v.*

6  *Whiting*, 563 U.S. 582, 599 (2011) (finding "particularly compelling" reasons to disregard a

7  statement contained in a report from just "one House of a politically divided Congress").

8      Second, the Conference report twice states that the House and Senate conferees did not

9  consider it "appropriate" to require the Commission to meet common law burdens of proof that

10  are meant for "litigation between private parties" because the FTC was not such a party, but was

11  instead "an independent regulatory agency[.]"  H.R. Rep. 93-624, at 31 (App'x G).  Such

12  concerns contradict any suggestion that Congress's intention was to transform the FTC into the

13  general antitrust litigant that it functions as today.

14      Third, although the Conference report discusses the FTC's ability to obtain "a temporary

15  restraining order or preliminary injunction," *id.*, it makes no mention of permanent injunctions.

16  That suggests that whatever Section 13(b)'s second proviso was intended to accomplish, it was

17  not regarded as a major element of the legislation.

18      In sum, Section 13(b)'s legislative history does not support the FTC's interpretation.

19  Even if S. Rep. 93-151 were a valid source to consider, its inconsistency with other evidence

20  would be reason enough to disregard it.  "When presented, on the one hand, with clear statutory

21  language and, on the other, with dueling committee reports, we must choose the language."

22  *Milner*, 562 U.S. at 574.

23      **D.**    **The Canon of Constitutional Avoidance Buttresses the Textualist Reading.**

24      Section 13(b) should also be construed as not allowing the FTC to bypass administrative

25  proceedings and directly seek permanent injunctions in antitrust cases for the further reason that

26  any other reading would raise serious questions about the constitutionality of the FTC that are

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 21
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

avoided through that interpretation. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (this canon "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.").

An interpretation of Section 13(b) that allows the FTC to pick and choose whether to adjudicate antitrust cases in its own administrative process, or to prosecute them on behalf of the government in federal district courts, needlessly raises multiple, weighty constitutional issues. First, it raises a separation-of-powers concern because the Commissioners of the FTC are protected by tenure, and the Constitution requires that all principal officers exercising an executive function be terminable at will by the President. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citing *Myers v. United States*, 272 U.S. 52 (1926)).

Well before the enactment of Section 13(b), the FTC's constitutionality was questioned under that principle due to the Commissioners' protection from removal except for cause. *See Humphrey's Executor v. United States*, 295 U.S. 602, 629-30 (1935). The Court resolved that question in favor of the FTC's continued existence, because "[r]ightly or wrongly, the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" *Seila Law*, 591 U.S. at 215; *see also Humphrey's Executor*, 295 U.S. at 628. But if Congress had indeed given the FTC the power to enforce the antitrust laws shoulder-to-shoulder with the attorneys of the Department of Justice supervised by the Attorney General, then it would indeed have given it *some part* of the executive power, and a serious question would arise of whether the Commission was now unconstitutional.[25]

If the FTC were to argue that its interpretation of Section 13(b) does not involve a delegation of *executive* power, then a different but no less weighty constitutional problem would

---

[25] The constitutional questions that interpretation raises are not answered by *FTC v. American National Cellular, Inc.*, 810 F.2d 1511 (9th Cir. 1987), a fraud case that pre-dates the FTC's maneuver to expand the scope of its asserted Section 13(b) power to include enforcement of the Sherman Act. *Supra*, at 7-8. Such enforcement is explicitly a responsibility of the Executive branch of government. *See* 15 U.S.C. § 4 (making it "the duty" of the Attorney General to enforce the Sherman Act).

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 22
(Case No. 2:23-cv-01495-JCC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   arise.  A Congressional delegation of its own *legislative* power is only "constitutional as long as

2   Congress lays down by legislative act an intelligible principle to which the person or body

3   authorized to exercise the delegated authority is directed to conform." *Gundy v. United States*,

4   588 U.S. 128, 135 (2019) (quotation and alteration omitted).  In the FTC's interpretation of

5   Section 13(b), the completely unintelligible principle separating when it can seek a permanent

6   injunction, and when it cannot, is that it may do so "in proper cases."  *Singer*, 668 F.2d at 1111.

7   Nothing in the statute even begins to describe how the FTC should determine when a particular

8   case is a "proper" exercise of that authority, and when it is not.

9           Thus, under the FTC's interpretation, Section 13(b) is either an unconstitutional

10  delegation of executive power, or it is an unconstitutional delegation of legislative power

11  unaccompanied by an intelligible principle by which to guide agency action.  The more than

12  acceptable construction that avoids both of these constitutional questions, is to read Section 13(b)

13  consistent with its plain text as empowering the FTC only to seek injunctions in support of its

14  administrative cases.

### CONCLUSION

16          Judgment should be entered for Amazon on all of the FTC's claims.

17                                  Respectfully submitted,

18                                  *I certify that this memorandum contains 8,396*
19                                  *words, in compliance with the Local Civil Rules.*

20                                  **MORGAN, LEWIS & BOCKIUS LLP**

21                                  By: *s/ Patty A. Eakes*
22                                  Patty A. Eakes, WSBA #18888
                                    Molly A. Terwilliger, WSBA #28449
23                                  1301 Second Avenue, Suite 3000
                                    Seattle, WA 98101
24                                  Phone: (206) 274-6400
                                    Email:  patty.eakes@morganlewis.com
25                                           molly.terwilliger@morganlewis.com

26

AMAZON'S RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO
THE FTC'S CLAIMS - 23
(Case No. 2:23-cv-01495-JCC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**WILLIAMS & CONNOLLY LLP**
Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email:  hhubbard@wc.com
        jschmidtlein@wc.com
        khodges@wc.com
        jpitt@wc.com
        cmetz@wc.com
        cpruski@wc.com

**COVINGTON & BURLING LLP**
Thomas O. Barnett (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com

*Attorneys for Defendant Amazon.com*