UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., a corporation, <br><br> Defendant. | CASE NO. 2:23-cv-01495-JHC <br><br> ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Compel Production of Documents. Dkt. ## 331 (SEALED), 333. Plaintiffs seek production of two categories of documents from Amazon: (1) the complete personnel files of 128 Amazon employees whom the parties have agreed to designate as document custodians, Dkt. # 333 at 7; and (2) documents related to competition investigations and regulations in foreign jurisdictions, *id.* at 11. For the reasons below, the Court grants the motion as to the personnel files and orders the parties to meet and confer regarding a procedure to protect the custodians' privacy. As to the documents related to competition investigations and regulations, the Court grants in part and denies in part the

ORDER - 1

motion.  The Court orders Amazon to run searches with the terms in Appendix A, Dkt. # 331 at 23–24, to identify competition investigations in foreign jurisdictions that could involve relevant materials.

## II

### LEGAL STANDARDS

Federal Rule of Civil Procedure 26 governs discovery here.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26 (b)(1).  As to proportionality, Rule 26 directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

The party who seeks to compel discovery bears the burden of establishing relevance.  *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022); *Doe v. Trump*, 329 F.R.D. 262, 270–71 (W.D. Wash. 2018).  But only a "minimal showing" is required to show relevance.  *O. L. v. City of El Monte*, No. 220CV00797RGKJDE, 2021 WL 926392, at *2 (C.D. Cal. Feb. 1, 2021). Once relevance is established, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections with competent evidence." *Doe*, 329 F.R.D. at 270–71 (internal citations and quotations omitted).

Courts liberally grant discovery in antitrust cases.  *See In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2004 WL 7200711, at *3 (E.D. Pa. Oct. 29, 2004) ("In antitrust cases, courts often take a liberal view of relevance and permit broad discovery."); *United States v. Dentsply Int'l, Inc.*, No. CIV. A. 99-5 MMS, 2000 WL 654286, at *4 (D. Del. May 10, 2000)

ORDER - 2

("Liberal discovery is particularly appropriate in a government antitrust suit because of the important public interest involved.").

# III
## DISCUSSION

A.  Personnel Files

Plaintiffs seek the personnel files of the 128 document custodians. Dkt. ## 333 at 7, 350 at 7.  Specifically, Plaintiffs seek "[a]ll Documents relating to personnel reviews, evaluations, and promotion materials (whether in draft or final form) concerning individuals with responsibilities relating to the conduct described in the Complaint." Dkt. ## 332-1 at 3 (SEALED), 333 at 7.  Amazon agreed to "produce any personnel review found in custodial files that hit on Plaintiffs' search terms and [is] deemed responsive for their substantive requests (i.e., their requests for documents related to subject matters)." Dkt. # 273 at 38.  But Amazon has declined to search for responsive documents in its centralized repository. Dkt. # 333 at 7.  Plaintiffs ask the Court to compel Amazon "to collect and produce personnel reviews, evaluations, and promotion materials from its centralized repository for all document custodians agreed upon by the parties." *Id.* at 9–10.

As to relevance, Plaintiffs say that these materials "will provide important information regarding Amazon's competitive strategies and business goals, and shed light on the responsibilities, knowledge, and credibility of the Amazon employees closest to the conduct at issue in this case." *Id.* at 8.  Plaintiffs say that "performance evaluations are commonly produced and used in antitrust litigation," pointing to the federal government's antitrust case against Google in the District of Columbia. *Id.* (citing *United States v. Google LLC*, No. 20-cv-03010 (D.D.C. June 29, 2021), Dkt. #151 at 29 (court determined that personnel files of document custodians were relevant) and *United States v. Google LLC*, No. 20-cv-03010 (D.D.C. Aug. 27,

ORDER - 3

2021), Dkt. #189 at 7–8 (joint status report outlining parties' disagreements about the procedure for protecting the sensitive information in the personnel files).

Amazon responds that this request is not proportional to Plaintiffs' needs because "by their nature, personnel reviews are not where a business discusses its policies and practices." Dkt. # 347 at 9. Amazon says that the business records that it has already produced "are the proportional sources of documents regarding the business practices at issue here, and Amazon's production of this information will satisfy Plaintiffs' stated needs in a far less intrusive manner." *Id.* at 8. It says that it will produce these records if they appear within a document custodian's records but that asking for a search of its central repository for these records is overly broad. *Id.* at 12. Amazon also says that these documents contain sensitive materials, including "appraisals of an employee's strengths and weaknesses" and "granular detail why some [employees] were promoted and some were not." *Id.* at 10. Further, Amazon says that the Court's protective order "does not protect Amazon's employees from the use of their private and sensitive information in court filings, at depositions, and in later open court proceedings." *Id.* at 11.

Plaintiffs respond that the requests are proportional because they are limited to the agreed-upon document custodians, whom the parties agree held roles relevant to Plaintiffs' claims. Dkt. # 361 at 4. They also say that the protective order provides sufficient protection. *Id.*

Plaintiffs have shown that the documents are relevant. In fact, Amazon appears to concede relevance to some extent. *See* Dkt. # 347 at 11–12 (offering "to consider a discrete list of relevant personnel reviews proportionate to Plaintiffs' needs" and noting that the documents are "tangentially relevant"). And Amazon has not shown that the requests are disproportionate to the needs of the case; its substantive argument regarding proportionality underscores concerns

ORDER - 4

for employee privacy. Amazon thus proposes additional protections for the individuals. *Id.* at 12. The Court determines that with additional protections in place, the production of the personnel files for the 128 document custodians is appropriate here.

The Court orders the parties to meet and confer regarding protections with respect to these documents, such as "limit[ing] the reviews to relevant roles" and giving Amazon the ability to redact non-relevant information. *See* Dkt. # 347 at 12. But the Court will not restrict access to the documents "to a limited set of Plaintiffs' attorneys." *See id.*

B.   Competition Investigations and Regulations in Foreign Jurisdictions

Plaintiffs seek documents related to competition regulations and investigations of Amazon in foreign countries. Dkt. # 333 at 11. Specifically, Plaintiffs seek documents related to (1) "Amazon actions in response to related competition investigations in foreign jurisdictions," Request for Production (RFP) No. 376; (2) "communications with foreign competition enforcers," RFP No. 387; and (3) "Amazon actions in response to three competition regulations in specific foreign jurisdictions," RFP No. 377. *Id.* Amazon responds that it does not have to produce these documents because (1) the competition investigations and regulations are irrelevant to Amazon's conduct in the United States and (2) the breadth of these discovery requests "impose an undue and unjustified burden." Dkt. # 347 at 15. Amazon also says that principles of international comity should block the production of such materials. *Id.* at 16.

Amazon argues that the requests seek irrelevant materials, saying that Plaintiffs have "not shown how documents related to *any* competition enforcer or regulatory regimes that are not applicable in the U.S. are relevant to this case." *Id.* at 14 (emphasis in original). Amazon adds, "The problem with Plaintiffs' requests is that they sweep far and wide: as written, they are not limited to any specific investigation or even to any specific topic, and Plaintiffs' Motion does not

ORDER - 5

limit them either." *Id.* Amazon says that these foreign regulatory compliance and competition investigation documents are irrelevant because this matter concerns only Amazon's conduct in the United States. *Id.* at 13.

Plaintiffs say that these documents are relevant because they "may illuminate the purpose and effect of Amazon's conduct in the United States." Dkt. # 333 at 11. Plaintiffs offer three specific reasons why they believe these documents are relevant. *Id.* First, Plaintiffs say that, as to the request for Amazon's response to foreign investigations and competition regulations, these documents could "shed light on the validity of Amazon's asserted procompetitive justifications in the United States." *Id.* Second, Plaintiffs say that Amazon's remedial actions "may inform whether less restrictive alternatives are available here." *Id.* Third, Plaintiffs say, "while this case is broader than any foreign competition investigation Plaintiffs are aware of, remedies imposed or agreed to in other jurisdictions may provide information relevant to potential remedies here." *Id.*

Courts have resisted a bright line rule as to whether discovery of documents about foreign conduct is relevant in antitrust cases. *See Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), 2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020) ("[T]he Court cannot endorse a simplistic holding that documents about foreign conduct are always relevant or never relevant because neither proposition is true."). Rather, "[t]he moving party needs to explain why documents concerning foreign activities are relevant to U.S. claims or defenses, and the Court must conduct a careful analysis to determine if the foreign documents actually would be relevant." *Id.*

"Courts generally permit discovery of documents and communications from foreign agencies when the requests are narrowed to specific countries, regulatory agencies, or subject areas." *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 582

ORDER - 6

(E.D.N.Y. 2024) (collecting cases). But "courts have denied requests for 'all' documents and communications as overbroad and impermissible." *Id.* Courts apply this rule in antitrust cases, in which relevance is generally construed broadly but the party seeking the foreign documents must show relevance as to the specific competition regulations and investigations. *See, e.g., In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714 (N.D. Cal. Aug. 19, 2024), Dkt. # 919 at 4–6 (ordering Apple to produce documents related to its responses to the European Union's Digital Markets Act because "[i]n Europe, Apple is doing some of the very things it refuses to do in the U.S. because of privacy, security and other concerns, and it is doing them with some apparent success. Plaintiffs say this may show that Apple's pro-competitive justifications for its complete control over app distribution are not as important as Apple says they are. This is a good theory of relevance").

Here, Plaintiffs point to specific investigations and regulations, in addition to broadly seeking documents related to all foreign competition investigations. The Court considers each RFP at issue—and Plaintiffs' proposed limitations on them—in turn.

1. Competition investigations in foreign jurisdictions

Plaintiffs seek two categories of documents related to competition investigations in foreign jurisdictions: (1) those relating to actions that Amazon took or considered taking in response to these competition investigations, RFP No. 376, and (2) communications with foreign regulators, RFP No. 387. Dkt. # 333 at 12, 16. RFP No. 376 seeks:

> All Documents relating to Amazon's actions, whether as formal commitments, voluntary commitments, or otherwise, undertaken or considered as the result of any investigation or inquiry by any government competition enforcer in any country or jurisdiction including without limitation, actions relating to implementation, monitoring, evaluation, and compliance, as well as the evaluation, consideration, proposal, study, or analysis of any alternatives.

Dkt. # 332-9 at 3. RFP No. 387 seeks:

> All Documents and data, including any requests for information, responses, questionnaires, surveys, presentations, or charges received from and provided to any government competition enforcer in any country or jurisdiction in connection with an antitrust or competition-related investigation or inquiry.

Dkt. # 332-9 at 7. Plaintiffs apparently seek the documents with respect to all the investigations because they do not have a complete list of the matters; they say that they offered to narrow the scope of RFP Nos. 376 and 387 "to address Amazon's expressed concern that not every antitrust investigation into Amazon's conduct might be relevant, and asked Amazon to provide a list of investigations in other jurisdictions to further discussions. Amazon refused to provide that information." Dkt. # 333 at 12; *see id*. at 16.

Plaintiffs have identified specific public investigations to show the relevance of the materials at issue. *Id.* at 13. Plaintiffs say that investigations in the European Union (EU), United Kingdom (UK), Germany, and Japan "involve conduct similar to the conduct at issue in this case." *Id.* Plaintiffs say that regulators in the EU and UK "investigated Amazon's selection of sellers eligible for the Buy Box, which is part of the Amazon antidiscounting conduct Plaintiffs challenge here." *Id.* Plaintiffs say that regulators in Germany and Japan "investigated Amazon's use of contractual price parity terms," which Amazon also used in the United States. *Id.*

Plaintiffs say that, based on public information, they know that Amazon made voluntary changes based on the Japanese and EU investigations, and "[d]ocuments showing what those voluntary measures were, how Amazon implemented them, and their effects, if any—as detailed in the annual report Amazon was ordered to file as part of its agreement to close the JFTC's investigation, among other sources—may contain information relevant to potential alternatives to the policies and practices Plaintiffs are challenging in this case." *Id.* at 14. Plaintiffs also point

ORDER - 8

to a limited number of documents related to competition investigations in foreign countries, which Amazon has produced, to illustrate the relevance of these documents. *Id.*

As an initial matter, materials relating to at least some of Amazon's actions in response to competition investigations and its communications with foreign regulators are relevant and discoverable. Plaintiffs have shown why documents concerning Amazon's actions in response to competition investigations in the EU, UK, Japan, and Germany and communications with regulators in those investigations are relevant—the investigations involved conduct at issue in this case. Amazon makes a fleeting argument that these RFPs will impose an undue burden because "[t]he production of information from dozens of foreign investigations and regulatory responses also would require review in foreign languages for relevance and privilege, as well as consideration against any unique confidentiality or other laws that impact production in those other jurisdictions." Dkt. # 347 at 15. But the importance of this information and the stakes of this litigation outweigh any burden imposed. *See* Fed. R. Civ. P. 26 (b)(1); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 7200711, at *3.

But the Court agrees with Amazon that the request sweeps too broadly as applied to any other competition investigations not specifically identified. Plaintiffs say that they cannot offer a more narrowly tailored request because Amazon has not provided a list of all the investigations. Dkt. # 361 at 5. To remedy this, Plaintiffs ask the Court to "order Amazon to run a narrow set of additional search terms designed to capture the names of foreign competition enforcers and regulations" presented in Appendix A of the Plaintiffs' motion. Dkt. # 333 at 18; *see id*. at 23–24 (Appendix A). Amazon agrees to run this search as to U.S.-based conduct only, but says that "[i]f the Court finds that more is required of Amazon, the Court should order Plaintiffs to appropriately tailor their requests to seek specific relevant information by identifying particular foreign laws or regulatory investigations and the Amazon business practices that are directly

ORDER - 9

relevant to the U.S.-based conduct at issue in the Complaint." Dkt. # 350 at 16–17. But it is unclear how Plaintiffs could identify these investigations without first obtaining information from Amazon.

Thus, the Court orders Amazon to run the search terms in Appendix A as requested by Plaintiffs to identify a list of competition investigations in foreign jurisdictions and provide sufficient other information to allow Plaintiffs to identify whether the subject matter of each foreign investigation overlaps with the present case.

2. Competition regulations in foreign jurisdictions

RFP No. 377 seeks:

> All Documents relating to Amazon's actions, whether as formal commitments, voluntary commitments, or otherwise, undertaken or considered as the result of requirements consistent with its designation under any regulatory scheme, such as the European Union's Digital Markets Act, as a gatekeeper, platform with strategic market status, or similar designation, including without limitation actions relating to implementation, monitoring, evaluation, and compliance, as well as the evaluation, consideration, proposal, study, or analysis of any alternatives.

Dkt. # 332-9 at 5. Plaintiffs say that they have narrowed RFP No. 377 to: "the European Union's Digital Markets Act; the United Kingdom's Digital Markets, Competition, and Consumers Bill; and Section 19(e) of Germany's Competition Act." Dkt. # 333 at 12 (citing Dkt. # 332-10 at 3). As discussed *supra* in section III.B.1, Amazon changed its behavior in response to the EU, UK, and German investigations pursuant to these regulations. Plaintiffs' narrowly tailored request as to specific regulations seeks relevant and proportional materials. Thus, the Court grants Plaintiffs' motion to compel as to RFP No. 377 as to the identified regulations in the UK, EU, and Germany.

### 3. International comity

Amazon says that Plaintiffs' requests violate principles of international comity. Dkt. # 347 at 15. To determine whether principles of comity should limit discovery, courts balance various factors, including:

> the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (citation omitted). Amazon says that sovereigns such as the EU have previously sought to protect the confidentiality of their investigative process. Dkt. # 347 at 16 (citing Memorandum of Law of *Amicus Curiae* the European Commission, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 2010 WL 9937917 (E.D.N.Y. Mar. 19, 2010)). The Supreme Court has emphasized that "the concept of international comity requires . . . a more particularized analysis of the respective interests of the foreign nation" beyond a determination that another country may have an interest in protecting certain documents from discovery. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 543–44 (1987).

Amazon addresses no other factors as to whether "compliance with the request would undermine important interests of" the EU. Because Amazon has not shown any particularized interest of the EU, nor any such interest of Japan, the UK, or Germany, in shielding this information from discovery, the Court declines to limit discovery based on international comity.

## IV
## CONCLUSION

The Court GRANTS the motion as to the personnel files and ORDERS the parties to meet and confer about the privacy concerns. The Court GRANTS the motion as to RFP No. 377 as limited to (1) the European Union's Digital Markets Act; (2) the United Kingdom's Digital Markets, Competition, and Consumers Bill; and (3) Section 19(e) of Germany's Competition Act, as narrowed by Plaintiffs. The Court GRANTS the motion as to RFP Nos. 376 and 387 as to the identified competition investigations in the UK, EU, Germany, and Japan. The Court DENIES the motion without prejudice as to unidentified competition investigations. The Court ORDERS Amazon to run the search terms in Appendix A to identify a list of competition investigations in foreign jurisdictions and provide sufficient other information to allow Plaintiffs to identify whether the subject matter of each foreign investigation overlaps with the present case.

Dated this 27th day of December, 2024.

John H. Chun
United States District Judge