THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

FEDERAL TRADE COMMISSION, *et al.*,

       Plaintiffs,

       v.

AMAZON.COM, INC., a corporation,

       Defendant.

**CASE NO.: 2:23-cv-01495-JHC**

**JOINT STATUS REPORT**

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

## TABLE OF CONTENTS

I.     STATUS OF LITIGATION ................................................................. 3

II.    JOINT REPORT ON THE STATUS OF DISCOVERY ..................................... 4

       A.     Party Discovery.................................................................. 4

       B.     Third Party Discovery ......................................................... 5

III.   OTHER ISSUES ....................................................................... 6

       A.     Case Schedule ................................................................. 6

       B.     Economics Day ............................................................... 19

       C.     Conferrals with Witnesses During Deposition Breaks ......................... 19

IV.    PENDING MOTIONS...................................................................... 28

JOINT STATUS REPORT - 2
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Pursuant to the February 13, 2024 Case Management Order ("CMO"), Plaintiffs Federal Trade Commission ("FTC") and the states and territories of New York, Connecticut, New Hampshire, Oklahoma, Oregon, Pennsylvania, Delaware, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Puerto Rico, Rhode Island, Vermont, and Wisconsin, by and through their respective Attorneys General (together, "Plaintiff States," and collectively with the FTC, "Plaintiffs") and Defendant Amazon.com, Inc. ("Amazon") submit this joint status report in advance of the parties' June 2, 2025 status conference with the Court.

## I.    STATUS OF LITIGATION

Plaintiffs filed the Complaint on September 26, 2023, Dkt. #1, and filed an Amended Complaint adding Puerto Rico and Vermont as Plaintiffs on March 14, 2024, Dkt. #170. Amazon filed a Motion to Dismiss the Complaint on December 8, 2023, Dkt. #127, which the parties agreed and the Court ordered would be deemed to be Amazon's Motion to Dismiss the Amended Complaint, Dkt. #175. The Court granted the motion as to certain state law claims and otherwise denied the motion on September 30, 2024, and granted leave to amend the dismissed state law claims, Dkt. #289. The Court also granted Plaintiffs' motion to bifurcate. *Id.*

Plaintiffs filed a Second Amended Complaint on October 31, 2024, amending state law claims under the laws of Maryland, Pennsylvania, and New Jersey. Dkt. #326. Amazon filed a motion to dismiss the amended Pennsylvania and New Jersey claims on November 14, 2024, Dkt. #340, and the Court granted that motion on March 20, 2025. Dkt. #450. Amazon also filed an Answer to the Second Amended Complaint on November 14, 2024. Dkt. #341. Amazon filed a Motion for Judgment on the Pleadings as to the FTC's claims on December 6, 2024. Dkt. #372. The Court denied that motion on April 8, 2025, and denied Amazon's request to certify the matter for an interlocutory appeal. Dkt. #463.

On February 13, 2024, the Court issued a Case Scheduling Order, Dkt. #159, that
included the following key dates:

| | |
|---|---|
| August 8, 2025 | Close of Fact Discovery |
| February 23, 2026 | Close of Expert Discovery |
| April 6, 2026 | Deadline to File Dispositive and *Daubert* Motions |
| | (with motions noted for June 15, 2026) |
| September 28, 2026 | Final Pretrial Conference |
| October 13, 2026 | Bench Trial |

## II.    JOINT REPORT ON THE STATUS OF DISCOVERY

### A.    Party Discovery

The parties are continuing to meet and confer regarding various discovery issues,
including:

- Amazon's responses to Plaintiffs' interrogatories, including Amazon's Amended Objections and Responses to Plaintiffs' Second and Third Set of Interrogatories;

- Amazon's ongoing production of structured data, and associated data definitions;

- Amazon's privilege claims and the adequacy of Amazon's privilege logs;

- Amazon's collection and production of documents in response to Plaintiffs' discovery requests, including Amazon's collection and production of messages from custodians' phones and devices and Amazon's collection and production of recorded calls between Amazon employees and sellers;

- Amazon's compliance with the Court's December 27, 2024 Order compelling the production of personnel files, Dkt. #389.

The parties are hopeful that they will be able to resolve or narrow their disputes through further
discussions, but will file discovery motions promptly if the parties come to an impasse.

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Plaintiffs have taken the depositions of 18 Amazon employees or former employees and

2  have noticed the depositions of an additional 45 Amazon employees or former employees. The

3  parties have confirmed dates for 12 of these additional depositions.  Amazon has proposed dates

4  for an additional 28 witnesses Plaintiffs have noticed; Plaintiffs have informed Amazon they are

5  prepared to accept those dates as part of an extension of the case schedule, and asked about an

6  alternate date for one witness. Amazon is in the process of providing dates for 3 other witnesses.

7  The parties are coordinating many of those depositions with the Coordinated Actions, as required

8  by the Deposition Coordination Protocol and Order.

9    In advance of the June 2 status conference, Amazon agreed that it will make best efforts

10  to serve any clawback notices for documents associated with a deposition witness (including for

11  documents where the witness is a custodian, author, sender, or recipient) one week or more

12  before the deposition, but Amazon does not waive the procedures specified in the ESI Order.

13  Plaintiffs reserve their rights to reopen the depositions of Amazon witnesses based on documents

14  Amazon produces after the deposition, including any documents Amazon withholds as privileged

15  but later produces, either voluntarily or pursuant to a determination that the documents are not

16  privileged. Amazon reserves all rights to object to the reopening of depositions based on later-

17  produced (including later-downgraded) documents.

18    The parties exchanged supplemental initial disclosures on March 21 and have agreed to

19  exchange a second round of supplemental initial disclosures (or confirm that they have no

20  updates to make) on June 2, 2025.

21    **B.    Third Party Discovery**

22    Plaintiffs have served 31 document subpoenas to third-party online retailers and

23  marketplaces, third-party logistics providers, and sellers, and will continue to issue additional

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

subpoenas on a rolling basis as needed. Plaintiffs are conferring with third-party subpoena recipients regarding the scope of their responses to Plaintiffs' requests.

Amazon has served 48 third-party subpoenas seeking documents from online retailers and marketplaces, third-party logistics providers, and sellers. Amazon is in the process of conferring with those parties to reach agreement on the documents to be produced in response to Amazon's requests. Amazon expects to serve third-party document subpoenas on additional third parties, including additional retailers, fulfillment and logistics providers, and other relevant parties.

The parties have agreed to regular exchanges of information about subpoenas to third parties and third parties' responses and objections. The parties have also agreed to hold joint meet and confers when requested by third parties in order to minimize the burden of discovery for them.

The parties have taken 20 depositions of third-party witnesses to date, including coordinated depositions. To date, the parties have noticed an additional 14 depositions of third-party witnesses, and have confirmed dates for 8 of those depositions. Plaintiffs and Amazon anticipate noticing additional third-party depositions, and coordinating with plaintiffs in other cases in scheduling and conducting these depositions.

## III.    OTHER ISSUES

### A.    Case Schedule

**Plaintiffs' Position:**

A modest extension of the case schedule is necessary to allow the parties to complete fact discovery in an orderly manner. Accordingly, Plaintiffs propose to extend the deadline for fact discovery by two and half months, to October 22, 2025. Plaintiffs also propose adding two weeks to each of the expert report deadlines to account for Amazon's ongoing production of structured

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

data that may be relevant to expert analyses and the time both sides may need to analyze and respond to each other's reports given the volume of data in this case. Amazon has indicated that it is willing to extend fact discovery by six weeks, to September 19, but that its proposal is conditioned on *shortening* the deadlines for expert discovery in order to maintain an October 2026 trial date. Plaintiffs do not believe that proposal is reasonable, given Amazon's delays in producing documents and structured data and Amazon's superior access to its own materials. As a result, the parties are at an impasse.

The parties' proposals are shown below.

| Event | Current Deadline | Plaintiffs' Proposal | Amazon's Proposal |
|---|---|---|---|
| Close of Fact Discovery | August 8, 2025 | October 22, 2025 **[+75 days]** | September 19, 2025 **[+42 days]** |
| Disclosure of Opening Expert Reports | October 3, 2025 (56 days after close of fact discovery) | December 31, 2025 (70 days after close of fact discovery) **[+14 days]** | November 4, 2025 (46 days after close of fact discovery) **[-10 days]** |
| Disclosure of Rebuttal Expert Reports | December 1, 2025 (59 days after opening reports) | March 16, 2026 (75 days after opening reports) **[+16 days]**[1] | December 19, 2025 (45 days after opening reports) **[-14 days]** |
| Disclosure of Reply Expert Reports | January 26, 2026 (56 days after rebuttal reports) | May 25, 2026 (70 days after rebuttal reports) **[+14 days]** | January 26, 2026 (38 days after rebuttal reports) **[-18 days]** |
| Close of Expert Discovery | February 23, 2026 (28 days after reply reports) | June 22, 2026 (28 days after reply reports) | February 23, 2026 (28 days after reply reports) |
| Dispositive and *Daubert* motions | April 6, 2026 (42 days after close of expert discovery) | August 3, 2026 (42 days after close of expert discovery) | April 6, 2026 (42 days after close of expert discovery) |

---

[1] March 14-15, 2026 is a weekend.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

| Event | Current Deadline | Plaintiffs' Proposal | Amazon's Proposal |
|---|---|---|---|
| Oppositions to Dispositive and *Daubert* Motions | May 18, 2026 (42 days later) | September 14, 2026 (42 days later) | May 18, 2026 (42 days later) |
| Reply Briefs In Support of Dispositive and *Daubert* Motions | June 15, 2026 (28 days later) | October 12, 2026 (28 days later) | June 15, 2026 (28 days later) |
| Plaintiffs' Pretrial Statement | August 12, 2026 (58 days later) | December 9, 2026 (58 days later) | August 12, 2026 (58 days later) |
| Settlement Conference held not later than | August 14, 2026 (2 days later) | December 11, 2026 (2 days later) | August 14, 2026 (2 days later) |
| Defendants' Pretrial Statement | August 21, 2026 (9 days after Plaintiffs' Pretrial Statement) | December 18, 2026 (9 days after Plaintiffs' Pretrial Statement) | August 21, 2026 (9 days after Plaintiffs' Pretrial Statement) |
| MILs Filed | September 1, 2026 (11 days after Defendants' Pretrial Statement) | December 29, 2026 (11 days after Defendants' Pretrial Statement) | September 1, 2026 (11 days after Defendants' Pretrial Statement) |
| Proposed Pretrial Order | September 11, 2026 (10 days later) | January 8, 2027 (10 days later) | September 11, 2026 (10 days later) |
| Pretrial Conference | September 28, 2026 (17 days later) | January 25, 2027 (17 days later) | September 28, 2026 (17 days later) |
| Trial Briefs, Proposed Findings of Fact, and Proposed Conclusions of Law | October 6, 2026 (8 days later) | February 2, 2027 (8 days later) | October 6, 2026 (8 days later) |
| Trial | October 13, 2026 (7 days later) | February 9, 2027 (7 days later) | October 13, 2026 (7 days later) |

Plaintiffs' proposed extension is necessary due to Amazon's extensive efforts to obstruct and delay discovery. As the Court is aware, the parties have had numerous disputes about the scope of Amazon's responses to Plaintiffs' discovery requests and the deadlines for Amazon to

JOINT STATUS REPORT - 8
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

complete its document productions (including Amazon's initial opposition to the Court setting any deadline for those productions). *See* Joint Status Report at 3-4, 8-16 (June 3, 2024), Dkt. #246 (summarizing discovery disputes and noting Plaintiffs' concerns about Amazon's limited progress in discovery); Joint Status Report at 4-6, 8-25 (Aug. 28, 2024), Dkt. #273 (same); *id.* at 34-35 (Amazon's opposition to interim document production deadlines); Joint Brief Regarding Interim Deadlines (Sept. 17, 2024), Dkt. #284; Order Setting Interim Deadlines (Sept. 24, 2024), Dkt. #288. Ultimately the Court ordered Amazon to substantially complete its productions of custodial documents in two waves, by January 31 and March 24, 2025. Dkt. ## 288, 343. As a consequence of those deadlines, which fell over a year after Plaintiffs served most of their document requests, and the time needed to review Amazon's documents, Plaintiffs were not able to begin depositions of Amazon witnesses until late March. Those depositions have been further delayed and hindered by Amazon's belated productions of ***over 190,000 documents*** it previously withheld as privileged, including ***almost 60,000 documents*** that Amazon withheld during Plaintiffs' pre-Complaint investigation—documents that Amazon could and should have produced *years* ago, before Plaintiffs even filed this case. Amazon is also continuing to produce documents and data: it has produced hundreds of thousands of documents *after* its substantial completion deadline, and is still investigating and "scoping" data requests.[2]

Plaintiffs have been diligent in pursuing discovery. Even with the need to fight Amazon on almost every conceivable discovery front, Plaintiffs have deposed 18 Amazon employees or

---

[2] Amazon claims that its post-March 24 productions "primarily consist of documents sought by [Plaintiffs' Fifth and Sixth Sets of RFPs], for which Amazon agreed to provide additional custodians and search terms." That is incorrect. Amazon has produced hundreds of thousands of documents after March 24 that are responsive to Plaintiffs' earlier document requests. Amazon has also not yet produced any materials in response to Plaintiffs' Sixth Set of RFPs, which is a data request. Plaintiffs are also still waiting for Amazon to produce certain data in response to Plaintiffs' Third Set of RFPs, which were served over a year ago.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

former employees and conducted 20 third-party depositions to date. The majority of those depositions have been coordinated with other cases, as required by the Coordination Order and Deposition Protocol. But there remains much to be done. As of this filing, there are at least 45 Amazon depositions that remain to be taken (of which 38 are coordinated depositions that will take place across two days), and 14 additional third-party depositions that have been noticed. That does not account for the additional third-party depositions that both sides will notice. Amazon recently advised the Court in the *California* action that it "anticipates deposing between 20 and 30 additional third-party witnesses" and that "most, if not all, of these depositions will be coordinated." Plaintiffs likewise plan to notice additional third-party depositions.

Under the current working deposition schedule Plaintiffs have been negotiating with Amazon—which already extends out to September 19—there will be at least three depositions every week (many of which will be two-day depositions) from mid-June through the end of July, and in at least one week in August. There will be at least five weeks with four depositions. That is *before* adding in 6 third-party depositions that have been noticed but not scheduled, the inevitable depositions that will need to be rescheduled due to changes in witness or attorney availability (such as the two Amazon depositions Amazon has asked to reschedule so far), and additional depositions that will be noticed.

***The Court Should Extend Fact Discovery to October 22.*** Without an extension of fact discovery, deposition logistics will rapidly become unworkable—particularly given the need to coordinate many depositions across several cases—and will sharply limit the parties' ability to accommodate the schedules of third parties and witnesses when scheduling depositions. Plaintiffs believe that a 75-day extension of fact discovery will allow for the depositions of both Amazon *and* third-party witnesses in a manner that will limit the burden on third-party witnesses, while keeping this case moving towards trial as quickly as possible. Amazon's

JOINT STATUS REPORT - 10
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  position appears to be that because Amazon can schedule its witnesses who have been noticed

2  for depositions by September 19, Amazon "do[es] not see a need for extra weeks of fact

3  discovery after the last Amazon witness deposition has been completed." However, that

4  approach does not account for the need to schedule third-party depositions (including depositions

5  that will be coordinated across several cases).

6          Plaintiffs have conferred with the plaintiffs in the other cases that have been involved in

7  coordination, and can represent that Plaintiffs' proposal to extend the fact discovery deadline is

8  acceptable to all plaintiffs in those cases. Plaintiffs also note that the District of Columbia is

9  separately negotiating an overall schedule modification with Amazon. Plaintiffs' proposal would

10  extend the deadline for coordinated discovery but would not limit further case-specific non-

11  coordinated discovery in the *District of Columbia* action.[3]

12          ***The Court Should Extend the Deadlines for Expert Reports by 14 Days.*** Despite

13  Plaintiffs' efforts to keep data discovery moving as quickly as possible, Amazon's production of

14  structured data has been repeatedly delayed by the time Amazon has taken to investigate and

15  "scope" those data requests. After over a year of negotiations, Amazon has not yet given

16

17  [3] Private Plaintiffs have agreed to align the fact discovery deadline in their cases with Plaintiffs'
   proposed fact discovery deadline for coordinated fact discovery. The People of the State of

18  California are not opposed to Plaintiffs' proposed schedule extension, provided that: (1) the
   Amazon depositions confirmed for May and June, that are being coordinated with the FTC,

19  proceed as confirmed, (2) the Amazon depositions noticed by The People, which are not being
   coordinated with the FTC, proceed as confirmed; and (3) the balance of the pretrial dates in the

20  California action are continued by a commensurate number of days to be agreed between The
   People and Amazon, and trial set to commence no later than October 21, 2026. Plaintiffs believe

21  those issues can be addressed in the *California* case after an extension of the schedule in this
   case. *See* Ex. A, Case Management Conference Tr. 10:15-21, *People of California v.*

22  *Amazon.com, Inc.*, Case No. CGC-22-601826 (May 14, 2024) (Court: "[I]f there is to be a
   substantial continuance of the discovery schedule in the FTC action, which currently has the

23  same discovery cutoff date as this action, and in light of the orders and stipulations that the
   depositions be coordinated in the two cases, obviously, that's going to have a knock-on effect

24  here.").

JOINT STATUS REPORT - 11                              **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                              600 Pennsylvania Avenue, NW
                                                        Washington, DC 20580
                                                        (202) 326-2222

1  Plaintiffs a final position about *what* Amazon will produce in response to some data requests,

2  much less a date certain by which Amazon will make those productions. Those delays are

3  impacting and will continue to impact the ability of Plaintiffs' expert witnesses to prepare their

4  opening reports. Meanwhile, Amazon has full access to its own data. Plaintiffs believe that a

5  short extension of the expert report deadlines is warranted due to Amazon's delays in data

6  production. A short extension of the deadline for reply reports is also warranted in light of the

7  considerable amount of data that has been produced in this case, which will affect the time

8  Plaintiffs' expert witnesses will need to analyze and respond to Amazon's experts.

9       Amazon's proposal to *reduce* the amount of time set aside for expert reports would cut

10  weeks out of the time for Plaintiffs' expert witnesses to prepare their opening and reply reports.

11  That would compound the prejudice to Plaintiffs resulting from Amazon's delayed production of

12  data, and effectively reward Amazon for dragging its feet in discovery.

13       The only concrete rationale Amazon has given for opposing Plaintiffs' proposals is

14  Amazon's stated desire to keep an October 2026 trial date. However, Amazon has not identified

15  any prejudice it will face if this case is tried in early 2027. Any trial in this case is more than a

16  year away. There is enough time to reset the schedule in order to allow for the orderly

17  completion of both fact and expert discovery.

18       Moreover, even if a short extension of the schedule would inconvenience Amazon, that is

19  a self-inflicted injury. Since the outset of this case Plaintiffs have made every effort to move

20  forward as quickly as possible. To highlight just one example, in the parties' first Joint Status

21  Report, Plaintiffs proposed interim deadlines for document and data production *precisely* to

22  avoid a scenario where Amazon's delays forced an extension of the case schedule. *See* Joint

23  Status Report at 5-8 (Dec. 15, 2023), Dkt. #135; *id.* at 12-13 ("[Interim document production]

24  deadlines will ensure that the parties make steady progress in document discovery and avoid a

JOINT STATUS REPORT - 12
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  pile-up of late document discovery that might otherwise derail the discovery schedule or

2  depositions."); *id.* at 14 ("deadlines for the completion of structured data production . . . will

3  ensure that the parties make steady progress in data discovery and avoid a pile-up of late data

4  that might otherwise derail the discovery schedule or expert discovery"). Amazon largely

5  opposed those deadlines, *see id.* at 6-7, opposed Plaintiffs' later request to set interim deadlines

6  for document production (which the Court ordered), *see* Joint Brief Regarding Interim Deadlines

7  (Sept. 17, 2024), Dkt. #284, and then slow-walked discovery on every front. Amazon cannot

8  reasonably complain that the Court's initial schedule needs to be modified in order to account for

9  Amazon's ongoing and strategic delays in discovery.

10      Plaintiffs respectfully request that the Court enter Plaintiffs' proposed schedule.

11      **Amazon's Position:**

12      Amazon respectfully requests that the trial date of October 13, 2026, be maintained.

13  Plaintiffs have wrongfully portrayed Amazon's practices of offering low prices, wide selection,

14  and fast delivery as somehow a threat to competition requiring expeditious remedy.  Amazon

15  seeks the opportunity to go to trial on those unfair and inaccurate allegations on the scheduled

16  date of October 13, 2026, around which dozens of fact and expert witnesses, trial counsel for

17  Amazon, and – notably – the Court have structured the progress of this litigation.  To meet the

18  trial date, Amazon has devoted considerable time and resources to meet Plaintiffs' extensive

19  discovery demands.  Amazon has proposed a six-week extension of the fact discovery deadlines

20  and a one-month extension of the expert discovery deadlines to accommodate Plaintiffs while

21  keeping the trial date.  In the interest of fundamental fairness, Amazon requests that the Court

22  adopt Amazon's proposed modification of interim deadlines, allowing the trial to proceed as

23  scheduled on October 13, 2026.

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

It was Plaintiffs who argued for a fast pretrial schedule and a large number of depositions.  Amazon has incurred substantial expense to produce millions of documents and offer dozens of current and former executives for deposition within the short window demanded by Plaintiffs.  Now, Plaintiffs have changed course and ask that the case be slowed down. Plaintiffs' request for change in the schedule will require the extension of all of the deadlines in this case, result in a *four-month* delay of the trial, and require an adjustment of the schedules of at least three coordinated cases in multiple jurisdictions.  To avoid that significant disruption while looking to find compromise, Amazon has proposed modest extensions of the fact and expert discovery deadlines that allow the subsequent pretrial and trial deadlines to remain unchanged.  As discussed below, Amazon has offered deposition dates that will allow the case to proceed on schedule with only minor modifications.  Amazon has offered dates for all of its witnesses' depositions on or before September 19, 2025.  Plaintiffs do not and cannot explain why they need an additional month, until October 22, to conduct those depositions.   Plaintiffs' request for a disruptive extension from the aggressive schedule that they requested should be denied, as it is not needed to complete fact discovery and it will disrupt the carefully coordinated schedules in related cases.

**Plaintiffs Fail to Acknowledge the Disruption Posed by their Proposal.**    Plaintiffs assert that plaintiffs in other related cases are willing to adjust their fact discovery deadlines, but Plaintiffs fail to address the other aspects of those cases that have been coordinated, including expert discovery deadlines and trial dates—all of which have been either aligned with or coordinated around this case.  That coordination is the result of lengthy negotiations with multiple plaintiff groups and orders from courts in different matters in different jurisdictions. Amazon will be prejudiced if the expert deadlines become unaligned and it faces duplicative deadlines and duplicative depositions of the same experts within a relatively short expert period.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  This problem is especially present in the *California* action, where the opening expert reports are

2  due on October 3—prior to the new fact discovery deadline Plaintiffs propose.   Plaintiffs'

3  proposal also fails to address that the trial dates in the various coordinated cases have been set

4  around the schedule in this case.   Plaintiffs offer no representations or assurances as to how this

5  complicated scheduling issue would be resolved.   Plaintiffs have been proceeding with and

6  benefitting from taking coordinated discovery.   Now they appear ready to abandon coordination

7  to suit their own needs, while creating the burden for Amazon of duplicative expert discovery

8  obligations, which coordination of discovery schedules was intended to avoid.

9       **A Further Extension Beyond September 19, 2025 is Not Necessary.**   Amazon has

10  already agreed to extend fact discovery six weeks to September 19 and proposed dates for the

11  depositions noticed by Plaintiffs by that date.   In proposing dates, Amazon has largely been able

12  to accommodate the order of witnesses that Plaintiffs have requested.   Given that all company

13  witness depositions will be concluded by September 19, there is no compelling reason to extend

14  the fact discovery period for an additional month after that date, as Plaintiffs request.

15       Plaintiffs do not explain why that additional month is needed.   An extension should not

16  be granted if Plaintiffs are planning to take even more depositions than are currently noticed,

17  after complaining about their inability to conduct the existing depositions.   Nor should an

18  extension be granted if Plaintiffs are simply planning to reschedule the current depositions.

19  Scheduling these depositions has been exceedingly difficult given the coordination required for

20  Plaintiffs' schedules, the witnesses' schedules, and counsel's schedules.   Many of the witnesses

21  are former employees, and scheduling during the summer months, in the sequencing requested

22  by Plaintiffs, has been extremely difficult.   These witnesses have now blocked off time on their

23  calendars and scheduled other commitments around their depositions.   With regard to Amazon

24  witnesses, Amazon has advised Plaintiffs multiple times that the fall is a particularly busy and

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   difficult time to schedule. Amazon has its annual planning meetings and, like all retailers, is in

2   high gear to prepare for the holiday season. Amazon has advised Plaintiffs that rescheduling

3   depositions into October and November will not be feasible and will only increase the burden on

4   these witnesses.[4]

5   **Plaintiffs Sought Expansive Discovery Despite a Lengthy Pre-Litigation**

6   **Investigation.** Despite Plaintiffs' attempt to shift blame onto Amazon, Plaintiffs find themselves

7   in a quandary of their own making. The FTC began investigating this case in 2019 through a

8   sprawling CID that resulted in the production of over 1.7 million documents and 100 terabytes of

9   data, and the testimony of over two-dozen Amazon employees. After filing suit, Plaintiffs

10  requested a fast case schedule. Plaintiffs objected to the longer discovery timeline Amazon

11  proposed and sought a May 2026 trial date. *See* 12/15/2023 Joint Status Report at 11-12 (ECF

12  135).

13        Instead of engaging in targeted discovery to reflect a case honed as a result of a lengthy

14  investigation, however, Plaintiffs took the opposite approach: Plaintiffs have issued *400* requests

15  for production of documents and data. They insisted on over 120 document custodians and

16  initially proposed 90 depositions of Amazon employees and former employees (the Court

17  ordered 80). They expanded the scope of discovery by, for example, refusing to identify the

18  relevant market (despite having had a four-year investigation to assess it), declining to answer

19  interrogatories propounded by Amazon, and insisting on production of documents from

20  jurisdictions around the world for use in an indisputably U.S.-limited case. This is indicative of

21  Plaintiffs' approach to the case – they have insisted on a fast schedule, citing vague threats of

22

23  ───────────────
    [4] Plaintiffs note the number of concurrent depositions. Amazon presumes that Plaintiffs do not
    argue they lack the resources to prosecute this case under the current schedule. There are 72
24  Plaintiffs' attorneys who have entered an appearance in this matter from 19 states and the FTC.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  imminent harm, but have refused to conduct their case in order to meet the expedited deadlines

2  that they themselves demanded.

3        Amazon has made Herculean efforts to respond to Plaintiffs' extensive and expansive

4  discovery requests.  Plaintiffs complain about a small percentage of the approximately *4.3*

5  *million* documents Amazon has made available to them in this case.  Amazon has engaged in a

6  massive document review, which has resulted in production of approximately 2.6 million

7  documents (in addition to the 1.7 million produced in the investigation).  Production of

8  documents for "priority" custodians identified by Plaintiffs was substantially completed by

9  January 31, with 1,014,928 documents produced by then.  Production of documents for

10  remaining custodians was substantially completed by March 24, with 566,369 additional

11  documents produced between February 1 and March 24.  In the middle of these efforts, Plaintiffs

12  served *additional* requests for production this year: a Fifth Set of RFPs on January 24, 2025 and

13  a Sixth Set on March 10, 2025.  Even using Plaintiffs' numbers, which Amazon does not

14  concede are correct, the documents produced after March 24 constitute approximately *4%* of the

15  total documents produced in this case; in other words, by March 24, Plaintiffs already had

16  approximately *96%* of the documents produced in this case.  The documents Plaintiffs complain

17  Amazon is still producing currently primarily consist of documents sought by those Fifth and

18  Sixth Sets, for which Amazon agreed to provide additional custodians and search terms.

19        As noted above, Amazon has also provided two-day deposition windows for dozens of

20  employees of all different seniority levels and facilitated the availability of former employees

21  where possible.[5]  Amazon agrees that a reasonable extension of the schedule is appropriate to

22  allow for the scheduling of the most senior Amazon employees Plaintiffs have noticed for

23

24  ---
[5] Despite the fact that documents for half of the custodians were substantially produced by the
end of January, Plaintiffs did not take the first Amazon deposition until late March 2025.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   deposition.  But this does not justify a disruptive extension to the schedule that would delay the

2   trial by four months.  Nor does it justify an extra month of fact discovery after the deposition

3   dates offered by Amazon.

4          Plaintiffs' complaints about Amazon's data productions are likewise unfounded.

5   Amazon has consistently produced large and complex datasets in response to Plaintiffs'

6   voluminous (approximately 450) data requests.  Amazon began its structured data productions to

7   Plaintiffs in July 2024 and has regularly produced data nearly every month since.  Amazon has

8   now made about 65 data productions, which comprise over 460 TB of data (288 TB of which

9   Amazon produced but Plaintiffs have yet to accept for download).  Most of Amazon's data

10  productions have been prioritized in cooperation with Plaintiffs, producing the data Plaintiffs

11  requested first.  For the small remainder of data requests that Amazon still is investigating, those

12  are primarily due to a mutual decision to re-scope certain metrics following conversations with

13  Plaintiffs in recent months.[6]

14         Finally, Plaintiffs are not simply asking for two more weeks for their opening expert

15  reports, but an additional three months from the original deadline.  Amazon has largely

16  completed Plaintiffs' voluminous data requests and has not missed its only court-ordered

17  deadline—the August 8 close of fact discovery, which Amazon remains on track to meet for the

18  small remainder of data productions.  Amazon's proposed one-month extension of the opening

19  expert reports is therefore squarely sufficient.

20

21  [6] As Amazon has noted in the past, Amazon's data is decentralized and most of the time does not
    exist in a format responsive to Plaintiffs' requests.  Amazon therefore undertakes a lengthy and
22  burdensome process to investigate data responsive to each of Plaintiffs' data requests, including
    identifying people familiar with the subject of the request, assessing whether Amazon maintains
23  data of the type requested by Plaintiffs, and working with data engineers to write queries to pull
    and verify data for production.  Amazon continues to cooperate with Plaintiffs and produce data
24  pursuant to Plaintiffs' priorities.

JOINT STATUS REPORT - 18                          **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                         600 Pennsylvania Avenue, NW
                                                   Washington, DC 20580
                                                   (202) 326-2222

1                                    *      *      *

2          Plaintiffs insisted on expansive, burdensome discovery, which Amazon has worked hard

3    to respond to and comply with.  The record does not justify a disruptive, lengthy extension of the

4    deadlines in this case.  The Court should impose the modest schedule extension proposed by

5    Amazon and maintain the current trial date.

6    **B.       Economics Day**

7          During the Joint Status Conference and Economics Day Hearing held on March 7, 2025,

8    the Court directed the parties to provide a proposal as to the next Economics Day hearing,

9    which would include presentations from the parties' economists.

10         The parties have conferred and jointly propose that the next Economics Day Hearing be

11   scheduled after the conclusion of expert discovery. The parties believe that, at that point in time,

12   the relevant economic issues and areas of dispute will be more clearly defined, and the

13   presentations of the experts will be closer in time and more tailored to any related disputes that

14   may be presented to the Court. This proposed schedule will also minimize the burden on the

15   parties and their respective experts during a busy time when the parties are conducting dozens

16   of depositions ahead of the fact discovery deadline, and when the parties' experts are working

17   diligently to complete their analyses ahead of the relevant expert discovery deadlines.

18   **C.       Conferrals with Witnesses During Deposition Breaks**

19   **Plaintiffs' Position:**

20         Several Amazon deposition witnesses have stated that they discussed the substance of

21   their testimony with counsel during deposition breaks, and Amazon has asserted privilege over

22   those discussions. Plaintiffs believe that these substantive discussions during depositions are

23   improper and are not protected by the attorney-client privilege.

24

JOINT STATUS REPORT - 19                          **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                        600 Pennsylvania Avenue, NW
                                                  Washington, DC 20580
                                                  (202) 326-2222

1    Federal Rule of Civil Procedure 30(c)(1) provides that the examination of a deposition

2  witness proceeds as though the witness were testifying at trial. *See In re Cathode Ray Tube*

3  *(CRT) Antitrust Litig.*, 2015 WL 12942210, at *3 (N.D. Cal. May 29, 2015). For this reason,

4  several courts in this circuit have held that any discussions about the substance of a witness's

5  testimony during breaks in a deposition are impermissible and are not protected by privilege. *See*

6  *id.* ("[O]nce a deposition begins, counsel should not confer with the witness except to determine

7  whether a privilege should be asserted."); *Barajas v. Abbott Lab'ys, Inc.*, 2018 WL 6248550, at

8  *4 (N.D. Cal. Nov. 29, 2018) ("It is improper for a witness and her attorney to discuss the

9  substance of her testimony during breaks in a deposition, except where necessary to address

10  matters of privilege."); *Horowitz v. Chen*, 2018 WL 4560697, at *3 (C.D. Cal, Sept. 20, 2018)

11  (same); *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, 2009 WL 3872043, at *3-4 (E.D. Cal.

12  Nov. 17, 2009) ("Because a deposition generally proceeds as at trial, courts have held that once a

13  deposition starts, counsel has no right to confer during the deposition except to determine if a

14  privilege should be claimed.") (collecting cases). Likewise, the only circuit court to address this

15  question concluded that "private conferences (on issues other than privilege) that would be

16  inappropriate during trial testimony are not excused during a deposition." *Hunt v. DaVita, Inc.*,

17  680 F.3d 775, 780 (7th Cir. 2012).

18    These rulings reflect that the fundamental purpose of a deposition is to obtain the

19  witness's truthful testimony, and are grounded in the recognition that permitting substantive

20  discussions between the witness and their counsel during the course of the deposition threatens

21  this basic goal. "There is no proper need for the witness's own lawyer to act as an intermediary,

22  interpreting questions, deciding which questions the witness should answer, and helping the

23  witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a

24  parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  legally convenient record." *Hall v. Clifton Precision*, 150 F.R.D. 525, 528-29 (E.D. Pa. 1993);

2  *see also Hunt*, 680 F.3d at 780.

3       Moreover, even the courts that have declined to adopt a bright-line standard barring

4  conferences between a witness and their attorney during regularly-scheduled deposition breaks

5  have nonetheless recognized that an attorney may not "coach[ ] the witness by telling the witness

6  what to say or how to answer a specific question." *In re Stratosphere Corp. Sec. Litig.*, 182

7  F.R.D. 614, 621 (D. Nev. 1998); *see also New Age Imports, Inc. v. VD Importers, Inc.*, 2019 WL

8  1427468, at *3 (C.D. Cal. Feb. 21, 2019) ("[E]ven courts that decline to adopt the standard in . . .

9  *Hall* . . . nevertheless affirm the principle that an attorney may not coach the witness . . . .")

10  (internal quotation omitted).[7] Further, as the court explained in *Pape v. Suffolk Cnty. Soc'y for*

11  *the Prevention of Cruelty to Animals*, 2022 WL 1105563, (E.D.N.Y. Apr. 13, 2022), "discussions

12  between attorney and client as to how a question should be handled are not protected by

13  attorney-client privilege," and "opposing counsel has the right to ask about matters that may

14  have affected or changed the witness's testimony." *Id.* at *4 (E.D.N.Y. Apr. 13, 2022) (internal

15  citations and quotations omitted). The court further explained: "It necessarily follows that

16  improper coaching by an attorney to remind the witness, or refresh the recollection of a witness

17  as to what their testimony should be during a break in the deposition would not be protected by

18  the attorney-client privilege and thus subject to disclosure." *Id.* (internal quotation marks

19  omitted).

20

21

---

22  [7] *McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648 (D. Colo 2001) is inapposite. That case
    involved a deposition that took place over two sessions that were scheduled nearly a month apart,
23  and the court expressed concerns about a decision that would have the effect of barring the
    defendant from conferring with his counsel for "several weeks." *Id.* at 650. There are no similar
24  depositions here.

JOINT STATUS REPORT - 21                    **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                   600 Pennsylvania Avenue, NW
                                             Washington, DC 20580
                                             (202) 326-2222

1    To the extent Amazon seeks to ensure that its witnesses understand a particular question

2  or document or wants to clarify their testimony, the proper avenue to do so is to question the

3  witness directly on the record. *See Barajas*, 2018 WL 6248550, at *4 (explaining that if counsel

4  for the witness "felt his client's recollection needed refreshing or her testimony required

5  clarification, he should have questioned her himself on the record at the conclusion of the

6  deposition"). The alternative—attempting to make these changes via confidential conferences

7  during the course of the deposition—jeopardizes the fact-finding purpose of the deposition. *See*

8  *Hall*, 150 F.R.D at 528.

9    The risk of witness coaching is not an abstract concern here. Amazon documents show

10  that Amazon's in-house attorneys coach executives on how to write about business matters. For

11  example, Amazon Legal issued "Do's and Don'ts" for Amazon's Global Competition Update

12  such as ██████████████████████████████████████████████

13  ██████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  ████████████████████ Ex. B, Amazon-FTC-CID_05827170. Amazon's conduct in

17  party depositions suggests that Amazon's counsel may similarly be shaping the substance of

18  witnesses' testimony.[8] For example, during the deposition of Daniel Silverman, Amazon's

19  ─────────────────

[8] The Court should consider this issue in the context of substantial evidence that Amazon is
20  systemically abusing the attorney-client privilege to shield business documents from government
investigations and discovery. *See* LCR 37 Joint Submission at 8-13 (Feb. 20, 2025), Dkt. #419;
21  *see also De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (W.D. Wash. Mar. 25, 2025),
Dkt. #302 ("The Court's in camera review shows that Amazon improperly designated
22  operational, business, and strategic documents as attorney-client communications or attorney-
work product."); *Garner v. Amazon.com, Inc.*, 2024 WL 4266665, at *3 (W.D. Wash. Sept. 23,
23  2024) (concluding that the court's in camera review "show[ed] that Amazon improperly
attempted to cloak operational, business, and strategic documents . . . with the attorney client
24  privilege.").

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  Director of Economics, Seller Fees, Mr. Silverman altered his testimony concerning a specific

2  document after a deposition break. Mr. Silverman initially testified that he had no recollection of

3  an email he sent or why he sent it. Ex. C, Tr. 108:4-25. Following a break. Mr. Silverman

4  testified that part of the email was material he had copied and pasted from someone else. Tr.

5  193:4-21. Mr. Silverman subsequently confirmed that during the breaks in his deposition, he had

6  discussed the substance of his testimony and one or more of the exhibits he had been shown with

7  Amazon's in-house *and* outside counsel. Tr. 291:8-292:14.[9]

8       As the *Hall* court reasoned: "During a civil trial, a witness and his or her lawyer are not

9  permitted to confer at their pleasure during the witness's testimony. Once a witness has been

10 prepared and has taken the stand, the witness is on his or her own. The same is true at a

11 deposition." 150 F.R.D. at 528. The potential for witnesses to alter their testimony based on

12 discussions with counsel during breaks warrants a clear rule barring any such substantive

13 conversations. *See Barajas*, 2018 WL 6248550, at *4 (coaching breaks at issue were "absolutely

14 improper" and highlighting particular concerns where witness's testimony appeared to be

15 "influenced by her conference with counsel during the break").

16      Plaintiffs respectfully request that the Court order that (1) Amazon counsel may not

17 discuss the substance of a witness's testimony with the witness during any deposition breaks,

18

19 [9] Amazon suggests that Mr. Silverman's testimony following a break concerned an entirely
   separate portion of the document and that the seeming change was merely the result of the
20 witness drawing conclusions from the "context" of the document. But the relevant sections of the
   document discussed before and after the break appear roughly six lines away from each other
21 and contain nearly identical language. In both instances, Mr. Silverman was asked about a
   statement that "we shared" a particular document with certain colleagues. Tr. 111:16-23; Tr.
22 191:12-22. Before to the break, the witness indicated that he had not personally sent the
   document, but that the "we" could have referred to the team he just joined, *see* Tr. 111:16-23.
23 After the break, the witness offered a different explanation for the language, suggesting instead
   that he did not author the relevant portions of the email and that instead this language must have
24 been copied from someone else, *see* Tr. 191:12-22.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    including between the first and second day of a two-day deposition, and (2) that any such

2    conversations are not protected by attorney-client privilege. This order would not limit

3    discussions between Amazon counsel and a witness for the purpose of determining whether a

4    privilege should be asserted.

5        **Defendant's Position:**

6        Plaintiffs' position relies on the baseless and inappropriate accusation that counsel has

7    been improperly coaching witnesses and is not supported by the record.  Plaintiffs use this

8    speculation to assert the right to breach privileged communications between witnesses and their

9    counsel.  Prohibiting witnesses from conferring with their counsel on breaks in the deposition—

10   as opposed to while a question is pending, which is not at issue here—interferes with an

11   individual's right to counsel and impedes attorneys from performing their ethical duties.

12       First, no Federal Rule of Civil Procedure or local rule in this District prohibits discussion

13   between deponents and their lawyers during breaks in depositions.  Washington state procedure

14   in fact expressly *permits* discussion between a witness and the witness's lawyer "during normal

15   recesses and at adjournment unless prohibited by the court."  Wash. Ct. R. 30(h)(5).

16       Second, courts in this Circuit and around the country routinely hold that during

17   depositions, "when there is no question pending, discussions between counsel and client do not

18   violate any express rule and are permissible." *Pape v. Suffolk Cnty. Soc'y for Prevention of*

19   *Cruelty to Animals*, 2022 WL 1105563, at *2 (E.D.N.Y. Apr. 13, 2022).  That is because a

20   blanket prohibition on discussions between counsel and their clients "unnecessarily

21   jeopardize[s]" the "right to counsel." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621

22   (D. Nev. 1998).  While "it is one thing to preclude attorney-coaching of witnesses," it is "quite

23   another to deny someone" the right to counsel.  *Id.*  There is an ocean between the inappropriate

24   coaching of answers and counsel "making sure that his or her client did not misunderstand or

JOINT STATUS REPORT - 24
CASE NO. 2:23-cv-01495-JHC

1    misinterpret questions or documents, or attempt to help rehabilitate the client by fulfilling an

2    attorney's ethical duty to prepare a witness." *Id.*; *see also* Brian R. Iverson, *Give Me A Break:*

3    *Regulating Communications Between Attorneys and Their Witness-Clients During Deposition*

4    *Recesses*, 36 Geo. J. Legal Ethics 497, 526 (2023) ("A strict no-consultation rule, however,

5    would make it impossible for the attorney to comply with this ethical obligation to remonstrate

6    with the client confidentially during the deposition."). Any such "consultations, during periodic

7    deposition breaks, luncheon and overnight recesses, and more prolonged recesses ordinarily are

8    appropriate." *McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) (*citing In re*

9    *Stratosphere*, 182 F.R.D. at 621). *See also New Age Imports, Inc. v. VD Importers, Inc.*, 2019

10   WL 1427468, at *4 (C.D. Cal. Feb. 21, 2019) ("[T]here is no binding precedent that requires this

11   Court to prevent a witness from conferring with his or her counsel during a deposition.").

12      Plaintiffs essentially rely on an old case from the Eastern District of Pennsylvania, *Hall v.*

13   *Clifton Precision*, 150 F.R.D. 525, 528-29 (E.D. Pa. 1993), which has been "highly criticized."

14   *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 92 (N.D.N.Y. 2003). Many courts, including

15   in this Circuit, instead follow the holding of *In re Stratosphere Corp.*, which protects the sanctity

16   of the attorney-client privilege by prohibiting inquiry into communications between counsel and

17   witnesses during breaks in depositions. Examining *Hall*, the *Stratosphere* court concluded that

18   *Hall* "goes too far and its strict adherence could violate the right to counsel." *In re Stratosphere*,

19   182 F.R.D. at 620. The court further observed: "The right to prepare a witness is not different

20   before the questions begin than it is during (or after, since a witness may be recalled for rebuttal,

21   etc., during trial). What this Court, and the Federal Rules of Procedure seek to prevent is

22   coaching the witness by telling the witness what to say or how to answer a specific question. We

23   all want the witness's answers, but not at the sacrifice of his or her right to the assistance of

24   counsel." *Id.* at 621.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Third, courts also hold that these discussions between counsel and client are privileged,

2    and deny to "interrogating counsel *carte blanche* to invade the privileged communications." *Id.*

3    at 622. *See also New Age Imports*, 2019 WL 1427468, at *3 ("Defendants' counsel properly

4    asserted attorney-client privilege" over discussions during a deposition); *Henry*, 212 F.R.D.at 92

5    (asking "to reveal" what "counsel said to him during the break of his deposition . . . may truly

6    intrude upon the attorney-client privilege and the work product doctrine").

7    Fourth, Plaintiffs' accusation that counsel is improperly "coaching" witnesses appears to

8    be based on nonsensical logic and a misunderstanding of the testimony they have elicited.

9    Plaintiffs argue that because, *in the regular course of business*, in-house counsel advise

10    employees with respect to drafting documents (a regular part of an in-house counsel's job),

11    Amazon's different, outside counsel must be improperly shaping witnesses' *testimony in the*

12    *litigation*. Plaintiffs do not even attempt to explain how those two contexts are related.

13    The deposition example Plaintiffs raise in no way suggests that there was any improper

14    coaching—or even that discussions covered the document at issue. Plaintiffs identify testimony

15    about whether a witness authored a particular exhibit and leap to the suspicion that something

16    untoward must have occurred. In reality, the example highlights the ways in which Plaintiffs

17    waste deposition time asking witnesses questions about documents the witnesses have testified

18    they do not remember, and then seek to draw factual conclusions based on foundationless

19    testimony. Here, when the exhibit was introduced, the witness was asked whether he recalled the

20    email in question and he testified that he did not. Ex. C at 108:15-17. He also testified that it

21    appeared to be an email "from him" based on the "header." *Id.* at 108:18-20. Plaintiffs

22    proceeded to ask questions about one portion of the email. Over two hours later, Plaintiffs

23    returned to the email and asked questions about a portion of the email they had not focused on

24    previously. The witness noted that the language highlighted by Plaintiffs suggested he was not

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  the author of that portion of the email and had instead copied it from another source.  The

2  witness also explained why he thought that: the witness testified that because he was not in the

3  Fees organization as of July 31, 2023, he concluded it was unlikely he would have written

4  language suggesting *he* had shared a fees document with Fees leadership at that time ("Fee

5  Optimization Review (07/31/2023): this is the document *we* shared with Ben").  *Id.* at 191:2-

6  18.  Plaintiffs assume that this clarification must have been the result of some coaching that

7  occurred, but there is no indication that is the case.  The witness did not indicate that any

8  discussions with counsel impacted the substance of his testimony, or that they even covered this

9  document.  *See Id.* at 291-292.  Rather, it is apparent from the testimony that the witness merely

10 used the context of the document to make a note about the email, which he had already testified

11 he did not recall.[10]

12      It is apparent that what Plaintiffs are really seeking is to invade the attorney-client

13 privilege that exists between counsel and the witness.  Plaintiffs want authorization to inquire

14 into privileged conversations by offering nothing but speculation that counsel has acted

15 improperly.  "The attorney-client privilege is the oldest of the privileges for confidential

16 communications known to the common law.  Its purpose is to encourage full and frank

17 communication between attorneys and their clients and thereby promote broader public interests

18 in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S.

19 383, 389 (1981) (cleaned up); *see also Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881

20 F.2d 1486, 1491 (9th Cir. 1989) ("[M]aintenance of the attorney-client privilege up to its proper

21

22

_____

23 [10] Amazon denies that any improper coaching of witness testimony occurred, but Amazon notes
   that it cannot fully respond to Plaintiffs' accusation without betraying privileged
24 communications.

JOINT STATUS REPORT - 27
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    limits has substantial importance to the administration of justice." (quoting *Harper & Row*

2    *Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970)).

3         This record provides no basis for the Court to impede the ethical duties of counsel, or the

4    rights of a witness to counsel, in providing or seeking legal advice during breaks in a deposition.

5    The Court should not accept Plaintiffs' unfounded invitation to do so.

6    **IV.    PENDING MOTIONS**

7         The chart below lists the motions that are pending before the Court:

| Motion | Response | Reply | Notice Date |
|---|---|---|---|
| Amazon's Motion to Compel Further Responses to its First Set of Interrogatories (Dkt. #414) (2/19/2025) | Plaintiffs' Opposition (Dkt. #434) (3/6/2025) | Amazon's Reply (Dkt. #444) (3/12/2025) | March 12, 2025 |

Dated: May 28, 2025                    Respectfully submitted,

                                       */s/ Edward H. Takashima*
                                       SUSAN A. MUSSER (DC Bar # 1531486)
                                       EDWARD H. TAKASHIMA (DC Bar # 1001641)
                                       MICHAEL BAKER (DC Bar # 1044327)
                                       LEIGH BARNWELL (NY Reg. # 5440821)
                                       Federal Trade Commission
                                       600 Pennsylvania Avenue, NW
                                       Washington, DC 20580
                                       Tel.:   (202) 326-2122 (Musser)
                                               (202) 326-2464 (Takashima)
                                       Email:  smusser@ftc.gov
                                               etakashima@ftc.gov
                                               mbaker1@ftc.gov
                                               lbarnwell@ftc.gov

                                       *Attorneys for Plaintiff Federal Trade Commission*

JOINT STATUS REPORT - 28
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

2  *s/ Michael Jo* _____
   Michael Jo (admitted *pro hac vice*)

3  Assistant Attorney General, Antitrust Bureau
   New York State Office of the Attorney
   General

4  28 Liberty Street
   New York, NY 10005

5  Telephone: (212) 416-6537
   Email: Michael.Jo@ag.ny.gov

6  *Counsel for Plaintiff State of New York*

7  *s/ Victoria Field* _____
   Victoria Field (admitted *pro hac vice*)

8  Assistant Attorney General
   Office of the Attorney General of Connecticut

9  165 Capitol Avenue
   Hartford, CT 06016

10 Telephone: (860) 808-5030
   Email: Victoria.Field@ct.gov

11 *Counsel for Plaintiff State of Connecticut*

12 *s/ Alexandra C. Sosnowski* _____
   Alexandra C. Sosnowski (admitted *pro hac
   vice*)

13 Assistant Attorney General

14 Consumer Protection and Antitrust Bureau
   New Hampshire Department of Justice
   Office of the Attorney General

15 One Granite Place South
   Concord, NH 03301

16 Telephone: (603) 271-2678

17 Email: Alexandra.c.sosnowski@doj.nh.gov
   *Counsel for Plaintiff State of New Hampshire*

18 *s/ Malisa McPherson* _____

19 Malisa McPherson (admitted *pro hac vice*)
   Deputy Attorney General, Public Advocacy

20 Office of the Oklahoma Attorney General
   313 N.E. 21st Street

21 Oklahoma City, OK 73105
   Telephone: (405) 522-2297

22 Email: Malisa.McPherson@oag.ok.gov
   *Counsel for Plaintiff State of Oklahoma*

23

24

*s/ Timothy D. Smith* _____
Timothy D. Smith, WSBA No. 44583
Attorney-in-Charge
Antitrust, False Claims, & Privacy Section
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 798-3297
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

*s/ Jennifer A. Thomson* _____
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of
Pennsylvania*

*s/ Michael A. Undorf* _____
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

*s/ Christina M. Moylan* _____
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

JOINT STATUS REPORT - 29
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

_s/ Schonette Walker_
Schonette Walker (admitted _pro hac vice_)
Assistant Attorney General
Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6473
Email: swalker@oag.state.md.us
_Counsel for Plaintiff State of Maryland_

_s/ Katherine W. Krems_
Katherine W. Krems (admitted _pro hac vice_)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: katherine.krems@mass.gov
_Counsel for Plaintiff Commonwealth of Massachusetts_

_s/ Scott A. Mertens_
Scott A. Mertens (admitted _pro hac vice_)
Assistant Attorney General
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov
_Counsel for Plaintiff State of Michigan_

_s/ Zach Biesanz_
Zach Biesanz (admitted _pro hac vice_)
Senior Enforcement Counsel
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
_Counsel for Plaintiff State of Minnesota_

_s/ Lucas J. Tucker_
Lucas J. Tucker (admitted _pro hac vice_)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
_Counsel for Plaintiff State of Nevada_

_s/ Andrew Esoldi_
Andrew Esoldi  (admitted _pro hac vice_)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-7819
Email: Andrew.Esoldi  @law.njoag.gov
_Counsel for Plaintiff State of New Jersey_

_s/ Billy Jimenez_
Billy Jimenez (admitted _pro hac vice_)
Deputy Attorney General, Civil Affairs
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 527-2694
Email: bjimenez@nmag.gov
_Counsel for Plaintiff State of New Mexico_

_s/ Zulma Carrasquillo-Almena_
Zulma Carrasquillo (admitted _pro hac vice_)
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00901-0192
Telephone: (787) 721-2900
Email: zcarrasquillo@justicia.pr.gov
_Counsel for Plaintiff Commonwealth of Puerto Rico_

JOINT STATUS REPORT - 30
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

*s/ Stephen N. Provazza*

2

Stephen N. Provazza (admitted *pro hac vice*)
Special Assistant Attorney General

3

Chief, Consumer and Economic Justice Unit
Department of the Attorney General

4

150 South Main Street
Providence, RI 02903

5

Telephone: (401) 274-4400
Email: sprovazza@riag.ri.gov

6

*Counsel for Plaintiff State of Rhode Island*

7

*s/ Sarah L. J. Aceves*

Sarah L. J. Aceves (admitted *pro hac vice*)

8

Assistant Attorney General
Vermont Attorney General's Office

9

109 State Street
Montpelier, VT 05609

10

Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov

11

*Counsel for Plaintiff State of Vermont*

12

*s/ Caitlin M. Madden*

Caitlin M. Madden (admitted *pro hac vice*)

13

Assistant Attorney General
Wisconsin Department of Justice

14

Post Office Box 7857
Madison, WI 53707-7857

15

Telephone: (608) 267-1311
Email: maddencm@doj.state.wi.us

16

*Counsel for Plaintiff State of Wisconsin*

17

18

19

20

21

22

23

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Molly A. Terwilliger*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
         molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Katherine A. Trefz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
         jschmidtlein@wc.com
         khodges@wc.com
         jpitt@wc.com
         ereddington@wc.com
         cmetz@wc.com
         ktrefz@wc.com
         cpruski@wc.com

**COVINGTON & BURLING LLP**

Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice*)
Katharine Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com
         dludwin@cov.com
         kmitchelltombras@cov.com

*Attorneys for Defendant Amazon.com, Inc.*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

# EXHIBIT A

Page 1

1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SAN FRANCISCO

3        400 McALLISTER STREET, SAN FRANCISCO, CALIFORNIA 94102

4           BEFORE THE HONORABLE ETHAN P. SCHULMAN, JUDGE

5                        DEPARTMENT NO. 304

6                           ---oOo---

7

8    THE PEOPLE OF THE STATE OF
     CALIFORNIA,

9

10        Plaintiff,

11   vs.                              CASE NO. CGC-22-601826

12   AMAZON.COM, INC.,

13        Defendant.
     _____/

14

15

16

17            REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                  WEDNESDAY, MAY 14, 2025

19                         ---oOo---

20

21   STENOGRAPHICALLY REPORTED BY:
     CAROL HARABURDA, CSR NO. 8052

22   Court Certified Realtime Reporter
     Official Reporter Pro Tempore

23

24

                     VERITEXT LEGAL SOLUTIONS

25          calendar-ca@veritext.com - 866.299.5127

Page 2

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFF:
 3       ROB BONTA
         ATTORNEY GENERAL OF CALIFORNIA
 4       BY:   STEPHEN R. SMEREK, Deputy Attorney General
               LONNIE A. BROWNE, Deputy Attorney General
 5       300 South Spring Street, Suit 1702
         Los Angeles, California 90013
 6       213.269.6000 - 213.269.6353
         stephen.smerek@doj.ca.gov
 7       lonnie.browne@doj.ca.gov
 8   FOR DEFENDANT AND CROSS-COMPLAINANT AMAZON.COM:
 9        WILLIAMS & CONNOLLY LLP
          BY:   KEVIN M. HODGES, Attorney at Law
10              ANDREW LEMENS, Attorney at Law
          680 Maine Avenue SW
11        Washington, D.C. 20024
          202.434.5000 - 202.434.5221 - 202.434.5132
12        khodges@wc.com
          alemens@wc.com
13
          COVINGTON & BURLING LLP
14        BY:   JEFFREY M. DAVIDSON, Attorney at Law
          415 Mission Street, Suite 5400
15        San Francisco, California 94105
          415.591.6000
16        jdavidson@cov.com
17
18                        ---oOo---
19
20
21
22
23
24
25
```

Page 10

1    been proceeding with depositions on a coordinated basis.

2    They came back and said, Well, it's just for us, but we

3    will reach out to the other plaintiffs, including

4    California, and we heard from California last night.

5              So, we haven't substantively engaged with the FTC

6    on schedule yet, because we didn't really know what we

7    were engaging with, but that's the status.  So, we didn't

8    ask -- we didn't ask the AG's office for a scheduling

9    proposal, but we are prepared to discuss schedules with

10   all the plaintiffs, if necessary.  I just wanted to

11   clarify that.

12             THE COURT:  Thank you.

13             Well, let me say at the outset, Mr. Smerek, by

14   raising that issue last in your update, you kind of buried

15   the lede here, because, in a sense, if there is to be a

16   substantial continuance of the discovery schedule in the

17   FTC action, which currently has the same discovery cutoff

18   date as this action, and in light of the orders and

19   stipulations that the depositions be coordinated in the

20   two cases, obviously, that's going to have a knock-on

21   effect here -- it ought to -- and it may affect all those

22   other issues that we're about to discuss.

23             So, I guess I'm prepared to discuss them, sort

24   of, provisionally, but it does sound to me like maybe your

25   summers are not going to be quite as dire as you are

# EXHIBIT B
# FILED UNDER SEAL

# EXHIBIT C

CONFIDENTIAL ATTORNEYS EYES ONLY          May 8, 2025

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3                        Index No.  2:23-cv-01495-JHC

4     FEDERAL TRADE COMMISSION et al.,

5               Plaintiffs,

6     v.

7     AMAZON.COM, INC., a corporation,

8               Defendants.

      _____/

9

10                  REMOTE VIDEOCONFERENCE

11                      DEPOSITION OF

12                    DANIEL SILVERMAN

13            Confidential Attorneys' Eyes Only

14             Taken on behalf of Defendant

15                        *  *  *

16                     May 8, 2025

17

18

19

20

21

22

23

      Job No. CS7357751

24    Rachel McRoy, RPR

      Court Reporter

25

CONFIDENTIAL ATTORNEYS EYES ONLY                    May 8, 2025

```
                                                      Page 2
 1                      APPEARANCES:
 2         For the Private Plaintiffs:
 3         ALICIA COBB, ESQUIRE
           QUINN EMANUEL URQUHART & SULLIVAN, LLP
 4         1109 First Avenue
           Suite 210
 5         Seattle, Washington 98101
           (206)905-7002
 6         Aliciacobb@quinnemanuel.com
 7         For the FTC:
 8         ERIC ZEPP, ESQUIRE
           FEDERAL TRADE COMMISSION (FTC)
 9         600 Pennsylvania Avenue Northwest
           Washington, District of Columbia 20580
10         (800)382-4357
           Ezepp@ftc.gov
11
12         For California Department of Justice:
13         ELLIOTT DIONISIO, ESQUIRE
           ELENA BAUGHMAN, LEGAL ANALYST
14         CHARLES MILLER, LEGAL ANALYST
           CALIFORNIA DEPARTMENT OF JUSTICE ATTORNEY GENERAL
15         1425 River Park Drive
           Suite 300
16         Sacramento, California 95815
           (916)210-6276
17         Elliott.dionisio@doj.ca.gov
18         For Office of Attorney General District of Columbia:
19         ESTEFANIA TORRES PAEZ, ESQUIRE
           ATTORNEY GENERAL DISTRICT OF COLUMBIA
20         441 Fourth Street Northwest
           10th Floor South
21         Washington, District of Columbia 20001
           (202)540-7227
22         Estefania.torrespaez@dc.gov
23
24
25
```

CONFIDENTIAL ATTORNEYS EYES ONLY    May 8, 2025

Page 3

1

                    APPEARANCES CONTINUED:

2

      For Amazon.com, Inc.:

3

          EDWARD C. REDDINGTON  ESQUIRE

4         LEE ROACH, ESQUIRE
          COLE WINTHEISER, ESQUIRE

5         WILLIAMS & CONNOLLY, LLP
          680 Main Avenue

6         Washington, District of Columbia 20024
          (202)434-5029

7         Ereddington@wc.com

8
          ALSO PRESENT:  Robert Guier, Videographer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1                          INDEX
2     Examination by:                              Page
3     Mr. Zepp                                     8
      Mr. Dionisio                                 267
4
5                         EXHIBITS
6
7     Exhibit    Description                        Page
8     Exhibit 1  LinkedIn Profile                   19
9     Exhibit 3  SPS Long-Term Fee Strategy         139
                 Bates Labeled 09235987
10
      Exhibit 4  E-mail Correspondence dated        108
11               October 2023
                 Bates Labeled 12967339
12
      Exhibit 5  E-mail Correspondence dated        222
13               August 12, 2024
                 Bates Labeled 14326341
14
      Exhibit 13 E-mail Correspondence dated        261
15               April 18, 2024
                 Bates Labeled 12972476
16
17
18
19
20
21
22
23
24
25

Page 108

1    Q.  Okay.  Well, I'd like to formally introduce what

2    has been marked as Silverman Exhibit 4, and it's Bates

3    12967339.

4         (Exhibit No. 4 was marked for identification.)

5    BY MR. ZEPP:

6    Q.  And, Mr. Silverman, if you look at the top of the

7    page of the first PDF, do you see that this is an e-mail

8    from yourself to Chris Nosko sent in October of 2023?

9    A.  Yes, I see it.

10   Q.  And just a little bit of help, you can control

11   and zoom in with your mouse, and we might be navigating

12   around the document, and so you can also type in the PDF

13   page if helpful as we're going through it.

14   A.  Oh yeah, I see that.  Okay.

15   Q.  Do you recall sending this e-mail in October 2023

16   to Chris Nosko?

17   A.  I don't have a specific memory of it, no.

18   Q.  But you would agree this appears to be a e-mail

19   from you?

20   A.  It does yeah.  From the heading, yeah.

21   Q.  Do you recall why you were sending Mr. Nosko this

22   e-mail?

23             MR. REDDINGTON:  Objection.  Form.

24             THE WITNESS:  I don't know.  I could try to

25   read it, but I don't know.

1      under the subject line which reads "███████ and other fee

2      optimization models," there's a series of attachments,

3      right?

4           A.  Yeah, I see that now.  Thanks.

5           Q.  And do you recall why in the subject line you

6      called out ███████ first before the other fee

7      optimization models?

8           A.  I don't -- I don't know why that was.

9           Q.  That's okay.  If you look at the ███████ section

10     of your e-mail that's the bold caps, and specifically I

11     want to focus on the ███████████ which says October

12     12th, 2020, it says, "This document is the document that

13     we shared with Pat Bajari, Matt Taddy and Phil Leslie in

14     2020."  Is that -- did I read that correctly?

15          A.  That's what it says, yes.

16          Q.  When you said "we shared," do you recall whether

17     you personally shared this ███████████ with these three

18     individuals?

19          A.  I did not, I think is the answer.  So I did not

20     share it personally.

21          Q.  Could the "we" here be referring to the seller

22     fees team?

23          A.  It might be.  I don't know quite specifically.

24          Q.  Okay.  Is it fair to say that Pat Bajari, Matt

25     Taddy and Phil Leslie are senior executives within

Page 191

1          A.   Yes.

2          Q.   All right.  I want to focus now on the document

3     or in your e-mail it says, ███████" and the first

4     document is a fee optimization review, and that appears

5     to be from July 2023.  And it says, "This is the

6     document we shared with Ben on ███ background +

7     output."  Do you see that?

8          A.   I see that, yes.

9          Q.   And who is Ben mentioned here?

10         A.   I don't know for sure, but my guess is that that

11    is Ben Hartman.

12         Q.   And it says, "This is the document we shared."

13    Do you know or do you recall when you shared this

14    document with Ben?

15         A.   So I think this is -- how do I say it?  I think I

16    copied and pasted this from -- this list from someone

17    else.  So I wasn't on the team at that time.  So I think

18    this is just we as referring really to someone else.

19         Q.   Well, you're saying you weren't on the time -- on

20    the team at that time that specific document was shared;

21    is that fair?

22         A.   Yeah.  That's what I'm trying to say.

23         Q.   But you are familiar with the ████████████

24    correct?

25         A.   I've become familiar with it in its current form,

CONFIDENTIAL ATTORNEYS EYES ONLY          May 8, 2025

Page 193

```
 1      I'm just saying I didn't quite write this, but it's -- I
 2      presume that's Kevin O'Neil.
 3      BY MR. ZEPP:
 4         Q.  Okay.  I just want to make sure I'm clear.
 5      Earlier when I showed you this e-mail, you didn't recall
 6      sending it, you didn't recall the context of you sending
 7      it, but now you are testifying that the ███████████
 8      ████ description here, you believe you just copy and
 9      pasted from someone else?
10              MR. REDDINGTON:  Objection.  Form.
11              THE WITNESS:  That's the imprint I draw from
12      its context, yeah.
13      BY MR. ZEPP:
14         Q.  And at what point is your recollection refreshed
15      that these were just copy and pasted?
16              MR. REDDINGTON:  Objection.  Form.
17              THE WITNESS:  I don't claim to have my
18      recollection refreshed.  Actually, instead, I would
19      argue is that from the context and the dates, I assume
20      that that's what happened because I was not around at
21      the time.
22      BY MR. ZEPP:
23         Q.  Okay.  So you don't believe you would have used
24      the word we shared here because you don't believe you
25      ever shared it; is that fair?
```

HIGHLY CONFIDENTIAL
May 9, 2025

Page 283

1                UNITED STATES DISTRICT COURT

2               WESTERN DISTRICT OF WASHINGTON

3                        AT SEATTLE

4

5        FEDERAL TRADE COMMISSION,

6        et al.,

7                Plaintiffs,        No. 2:23-cv-01495-JHC

8            v.

9        AMAZON.COM, INC., a

10       corporation,

11               Defendant.

12       _____

13       (Captions Continued)

14

15

16                 ** HIGHLY CONFIDENTIAL **

17                        VOLUME II

18           REMOTE VIDEOCONFERENCE DEPOSITION OF

19                    DANIEL SILVERMAN

20               Taken in behalf of Plaintiffs

21                       May 9, 2025

22

23

24

25   Job No. CS7357841

HIGHLY CONFIDENTIAL

May 9, 2025

Page 284

```
 1              BE IT REMEMBERED THAT, the remote

 2         videoconference deposition of DANIEL SILVERMAN

 3         was reported by Aleshia K. Macom, Oregon CSR No.

 4         94-0296, Washington CCR No. 2095, California CSR

 5         No. 7955, RMR, CRR, RPR, on Friday, May 9, 2025,

 6         commencing at the hour of 8:01 a.m., the witness

 7         appearing at Perkins Coie, 2525 E. Camelback

 8         Road, Unit 500, Phoenix, Arizona.

 9

10

11              APPEARANCES (Via videoconference)

12

13         APPEARING FOR PLAINTIFF THE STATE OF CALIFORNIA:

14           DEPARTMENT OF JUSTICE ATTORNEY GENERAL

15           By Elliott Dionisio

16               Charles Miller (San Francisco)

17           300 South Spring Street, Suite 1702

18           Los Angeles, California 90013

19           elliott.dionisio@doj.ca.gov

20           charlesa.miller@doj.ca.gov

21

22

23

24

25
```

HIGHLY CONFIDENTIAL

Page 285

1    APPEARING FOR PLAINTIFF FEDERAL TRADE

2    COMMISSION:

3      OFFICE OF THE ATTORNEY GENERAL FOR THE

4      DISTRICT OF COLUMBIA

5      By Estefania Torres Paez

6      441 4th Street NW 10th Floor South

7      Washington, DC 20001

8      estefania.torrespaez@dc.gov

9          And

10     FEDERAL TRADE COMMISSION WASHINGTON, D.C.

11     By Eric Zepp

12     600 Pennsylvania Avenue, NW

13     Washington, DC 20580

14     ezepp@ftc.gov

15

16   APPEARING FOR PRIVATE PLAINTIFFS DE COSTER,

17   FRAME-WILSON AND BROWN:

18     QUINN EMANUEL URQUHART & SULLIVAN, LLP

19     By Alicia Cobb

20     1109 First Avenue, Suite 210

21     Seattle, Washington 98101

22     aliciacobb@quinnemanuel.com

23

24

25

1          APPEARING FOR DEFENDANT:

2             WILLIAMS & CONNOLLY LLP

3             By Edward C. Reddington

4                Cole Wintheiser

5             680 Maine Avenue SW

6             Washington, DC 20024

7             ereddington@wc.com

8             cwintheiser@wc.com

9

10         Also Present:  Ed Burke - Videographer

11                         Lee Roach

12                         Elena Baughman

13                              *    *    *

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL                    May 9, 2025

Page 287

1                        EXAMINATION INDEX

2                                                  Page

3        Examination by Mr. Dionisio              290

4

5

6

7                         EXHIBIT INDEX

8        Exhibit No.    Item                       Page

9        Exhibit 14     Chat messages              351

10                      AMZN-RTL-FTC-12669316 - 12669331

11                      CAAGLit-AMZ_17166970 - 17166985

12

13

14

15       REPORTER'S NOTE:  All quotations from exhibits

16       are reflected in the manner in which they were

17       read into the record and do not necessarily

18       indicate an exact quote from the document.

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 291

```
 1    Q.    And just a very quick note of thanks to Aleshia
 2          and Ed for being nimble and joining at this
 3          early hour.
 4                And, you know, I just, I'm just going to
 5          spend some time this morning, today asking you
 6          some questions and -- regarding various topics
 7          that kind of, to continue what we started
 8          yesterday.  And the first questions I want to
 9          ask are do you remember during the course of
10          your questioning yesterday that we took some
11          breaks?  Do you remember that?
12    A.    Yes.
13    Q.    And at any of those breaks did you, without
14          discussing the substance or, you know, what was
15          discussed, did you discuss the substance of your
16          testimony with anyone?  And that can be a yes or
17          a no.
18    A.    Yes.
19    Q.    And who did you discuss the substance of your
20          testimony with?  Just the names.
21    A.    Ed Reddington, Cole Wintheiser and Lee Roach.
22    Q.    And can you discuss the substance of your
23          testimony during each of the breaks that we had?
24    A.    I don't recall precisely.  I don't, I don't
25          know.
```

HIGHLY CONFIDENTIAL

Page 292

1    Q.    Was it more than one?

2    A.    Yes.

3    Q.    Okay.  And at any of the breaks yesterday did

4          you discuss any of the exhibits that you

5          reviewed during your deposition yesterday with

6          anyone?  Did you discuss those exhibits with

7          anyone?

8    A.    Yes.

9    Q.    And did you -- Who did you discuss those

10         exhibits with?  Just the names.

11   A.    Ed Reddington, Cole Wintheiser and Lee Roach.

12   Q.    And did you discuss more than one exhibit?

13   A.    I don't recall precisely.  I remember one, but

14         not -- I don't know.

15   Q.    And at any of the breaks yesterday did you

16         review any other documents that were not

17         exhibits?

18   A.    Not that I recall.  No.

19   Q.    Okay.  And between the time we adjourned

20         yesterday in the evening and this morning when

21         we started just moments ago, did you discuss the

22         substance of your testimony with anyone?  Not

23         asking you what the substance is, but yes or no,

24         did you discuss the substance in that time?

25              MR. REDDINGTON:  Objection; form.