THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

FEDERAL TRADE COMMISSION, *et al.*,

      Plaintiffs,

      v.

AMAZON.COM, INC., a corporation,

      Defendant.

**CASE NO.: 2:23-cv-01495-JHC**

**JOINT STATUS REPORT**

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

# TABLE OF CONTENTS

I.    STATUS OF LITIGATION ................................................................. 3

II.   JOINT REPORT ON THE STATUS OF DISCOVERY ....................................... 4

      A.    Party Discovery........................................................................ 4

      B.    Third Party Discovery................................................................. 5

III.  OTHER ISSUES ................................................................................ 6

      A.    Case Schedule ......................................................................... 6

      B.    Economics Day ........................................................................ 19

      C.    Conferrals with Witnesses During Deposition Breaks ......................... 19

IV.   PENDING MOTIONS........................................................................... 28

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Pursuant to the February 13, 2024 Case Management Order ("CMO"), Plaintiffs Federal Trade Commission ("FTC") and the states and territories of New York, Connecticut, New Hampshire, Oklahoma, Oregon, Pennsylvania, Delaware, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Puerto Rico, Rhode Island, Vermont, and Wisconsin, by and through their respective Attorneys General (together, "Plaintiff States," and collectively with the FTC, "Plaintiffs") and Defendant Amazon.com, Inc. ("Amazon") submit this joint status report in advance of the parties' June 2, 2025 status conference with the Court.

## I.    STATUS OF LITIGATION

Plaintiffs filed the Complaint on September 26, 2023, Dkt. #1, and filed an Amended Complaint adding Puerto Rico and Vermont as Plaintiffs on March 14, 2024, Dkt. #170. Amazon filed a Motion to Dismiss the Complaint on December 8, 2023, Dkt. #127, which the parties agreed and the Court ordered would be deemed to be Amazon's Motion to Dismiss the Amended Complaint, Dkt. #175. The Court granted the motion as to certain state law claims and otherwise denied the motion on September 30, 2024, and granted leave to amend the dismissed state law claims, Dkt. #289. The Court also granted Plaintiffs' motion to bifurcate. *Id.*

Plaintiffs filed a Second Amended Complaint on October 31, 2024, amending state law claims under the laws of Maryland, Pennsylvania, and New Jersey. Dkt. #326. Amazon filed a motion to dismiss the amended Pennsylvania and New Jersey claims on November 14, 2024, Dkt. #340, and the Court granted that motion on March 20, 2025. Dkt. #450. Amazon also filed an Answer to the Second Amended Complaint on November 14, 2024. Dkt. #341. Amazon filed a Motion for Judgment on the Pleadings as to the FTC's claims on December 6, 2024. Dkt. #372. The Court denied that motion on April 8, 2025, and denied Amazon's request to certify the matter for an interlocutory appeal. Dkt. #463.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1        On February 13, 2024, the Court issued a Case Scheduling Order, Dkt. #159, that

2  included the following key dates:

3        August 8, 2025               Close of Fact Discovery

4        February 23, 2026         Close of Expert Discovery

5        April 6, 2026               Deadline to File Dispositive and *Daubert* Motions

6                                (with motions noted for June 15, 2026)

7        September 28, 2026       Final Pretrial Conference

8        October 13, 2026          Bench Trial

## II.    JOINT REPORT ON THE STATUS OF DISCOVERY

### A.    Party Discovery

The parties are continuing to meet and confer regarding various discovery issues, including:

- Amazon's responses to Plaintiffs' interrogatories, including Amazon's Amended Objections and Responses to Plaintiffs' Second and Third Set of Interrogatories;

- Amazon's ongoing production of structured data, and associated data definitions;

- Amazon's privilege claims and the adequacy of Amazon's privilege logs;

- Amazon's collection and production of documents in response to Plaintiffs' discovery requests, including Amazon's collection and production of messages from custodians' phones and devices and Amazon's collection and production of recorded calls between Amazon employees and sellers;

- Amazon's compliance with the Court's December 27, 2024 Order compelling the production of personnel files, Dkt. #389.

The parties are hopeful that they will be able to resolve or narrow their disputes through further discussions, but will file discovery motions promptly if the parties come to an impasse.

JOINT STATUS REPORT - 4
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    Plaintiffs have taken the depositions of 18 Amazon employees or former employees and

2    have noticed the depositions of an additional 45 Amazon employees or former employees. The

3    parties have confirmed dates for 12 of these additional depositions.  Amazon has proposed dates

4    for an additional 28 witnesses Plaintiffs have noticed; Plaintiffs have informed Amazon they are

5    prepared to accept those dates as part of an extension of the case schedule, and asked about an

6    alternate date for one witness. Amazon is in the process of providing dates for 3 other witnesses.

7    The parties are coordinating many of those depositions with the Coordinated Actions, as required

8    by the Deposition Coordination Protocol and Order.

9    In advance of the June 2 status conference, Amazon agreed that it will make best efforts

10   to serve any clawback notices for documents associated with a deposition witness (including for

11   documents where the witness is a custodian, author, sender, or recipient) one week or more

12   before the deposition, but Amazon does not waive the procedures specified in the ESI Order.

13   Plaintiffs reserve their rights to reopen the depositions of Amazon witnesses based on documents

14   Amazon produces after the deposition, including any documents Amazon withholds as privileged

15   but later produces, either voluntarily or pursuant to a determination that the documents are not

16   privileged. Amazon reserves all rights to object to the reopening of depositions based on later-

17   produced (including later-downgraded) documents.

18   The parties exchanged supplemental initial disclosures on March 21 and have agreed to

19   exchange a second round of supplemental initial disclosures (or confirm that they have no

20   updates to make) on June 2, 2025.

21   **B.    Third Party Discovery**

22   Plaintiffs have served 31 document subpoenas to third-party online retailers and

23   marketplaces, third-party logistics providers, and sellers, and will continue to issue additional

24

JOINT STATUS REPORT - 5
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  subpoenas on a rolling basis as needed. Plaintiffs are conferring with third-party subpoena

2  recipients regarding the scope of their responses to Plaintiffs' requests.

3       Amazon has served 48 third-party subpoenas seeking documents from online retailers

4  and marketplaces, third-party logistics providers, and sellers. Amazon is in the process of

5  conferring with those parties to reach agreement on the documents to be produced in response to

6  Amazon's requests. Amazon expects to serve third-party document subpoenas on additional third

7  parties, including additional retailers, fulfillment and logistics providers, and other relevant

8  parties.

9       The parties have agreed to regular exchanges of information about subpoenas to third

10 parties and third parties' responses and objections. The parties have also agreed to hold joint

11 meet and confers when requested by third parties in order to minimize the burden of discovery

12 for them.

13      The parties have taken 20 depositions of third-party witnesses to date, including

14 coordinated depositions. To date, the parties have noticed an additional 14 depositions of third-

15 party witnesses, and have confirmed dates for 8 of those depositions. Plaintiffs and Amazon

16 anticipate noticing additional third-party depositions, and coordinating with plaintiffs in other

17 cases in scheduling and conducting these depositions.

18 **III.    OTHER ISSUES**

19      **A.    Case Schedule**

20      **Plaintiffs' Position:**

21      A modest extension of the case schedule is necessary to allow the parties to complete fact

22 discovery in an orderly manner. Accordingly, Plaintiffs propose to extend the deadline for fact

23 discovery by two and half months, to October 22, 2025. Plaintiffs also propose adding two weeks

24 to each of the expert report deadlines to account for Amazon's ongoing production of structured

data that may be relevant to expert analyses and the time both sides may need to analyze and respond to each other's reports given the volume of data in this case. Amazon has indicated that it is willing to extend fact discovery by six weeks, to September 19, but that its proposal is conditioned on *shortening* the deadlines for expert discovery in order to maintain an October 2026 trial date. Plaintiffs do not believe that proposal is reasonable, given Amazon's delays in producing documents and structured data and Amazon's superior access to its own materials. As a result, the parties are at an impasse.

The parties' proposals are shown below.

| Event | Current Deadline | Plaintiffs' Proposal | Amazon's Proposal |
|---|---|---|---|
| Close of Fact Discovery | August 8, 2025 | October 22, 2025 **[+75 days]** | September 19, 2025 **[+42 days]** |
| Disclosure of Opening Expert Reports | October 3, 2025 (56 days after close of fact discovery) | December 31, 2025 (70 days after close of fact discovery) **[+14 days]** | November 4, 2025 (46 days after close of fact discovery) **[-10 days]** |
| Disclosure of Rebuttal Expert Reports | December 1, 2025 (59 days after opening reports) | March 16, 2026 (75 days after opening reports) **[+16 days]**[1] | December 19, 2025 (45 days after opening reports) **[-14 days]** |
| Disclosure of Reply Expert Reports | January 26, 2026 (56 days after rebuttal reports) | May 25, 2026 (70 days after rebuttal reports) **[+14 days]** | January 26, 2026 (38 days after rebuttal reports) **[-18 days]** |
| Close of Expert Discovery | February 23, 2026 (28 days after reply reports) | June 22, 2026 (28 days after reply reports) | February 23, 2026 (28 days after reply reports) |
| Dispositive and *Daubert* motions | April 6, 2026 (42 days after close of expert discovery) | August 3, 2026 (42 days after close of expert discovery) | April 6, 2026 (42 days after close of expert discovery) |

---

[1] March 14-15, 2026 is a weekend.

JOINT STATUS REPORT - 7
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

| Event | Current Deadline | Plaintiffs' Proposal | Amazon's Proposal |
|---|---|---|---|
| Oppositions to Dispositive and *Daubert* Motions | May 18, 2026 (42 days later) | September 14, 2026 (42 days later) | May 18, 2026 (42 days later) |
| Reply Briefs In Support of Dispositive and *Daubert* Motions | June 15, 2026 (28 days later) | October 12, 2026 (28 days later) | June 15, 2026 (28 days later) |
| Plaintiffs' Pretrial Statement | August 12, 2026 (58 days later) | December 9, 2026 (58 days later) | August 12, 2026 (58 days later) |
| Settlement Conference held not later than | August 14, 2026 (2 days later) | December 11, 2026 (2 days later) | August 14, 2026 (2 days later) |
| Defendants' Pretrial Statement | August 21, 2026 (9 days after Plaintiffs' Pretrial Statement) | December 18, 2026 (9 days after Plaintiffs' Pretrial Statement) | August 21, 2026 (9 days after Plaintiffs' Pretrial Statement) |
| MILs Filed | September 1, 2026 (11 days after Defendants' Pretrial Statement) | December 29, 2026 (11 days after Defendants' Pretrial Statement) | September 1, 2026 (11 days after Defendants' Pretrial Statement) |
| Proposed Pretrial Order | September 11, 2026 (10 days later) | January 8, 2027 (10 days later) | September 11, 2026 (10 days later) |
| Pretrial Conference | September 28, 2026 (17 days later) | January 25, 2027 (17 days later) | September 28, 2026 (17 days later) |
| Trial Briefs, Proposed Findings of Fact, and Proposed Conclusions of Law | October 6, 2026 (8 days later) | February 2, 2027 (8 days later) | October 6, 2026 (8 days later) |
| Trial | October 13, 2026 (7 days later) | February 9, 2027 (7 days later) | October 13, 2026 (7 days later) |

Plaintiffs' proposed extension is necessary due to Amazon's extensive efforts to obstruct and delay discovery. As the Court is aware, the parties have had numerous disputes about the scope of Amazon's responses to Plaintiffs' discovery requests and the deadlines for Amazon to

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

complete its document productions (including Amazon's initial opposition to the Court setting

any deadline for those productions). *See* Joint Status Report at 3-4, 8-16 (June 3, 2024), Dkt.

#246 (summarizing discovery disputes and noting Plaintiffs' concerns about Amazon's limited

progress in discovery); Joint Status Report at 4-6, 8-25 (Aug. 28, 2024), Dkt. #273 (same); *id.* at

34-35 (Amazon's opposition to interim document production deadlines); Joint Brief Regarding

Interim Deadlines (Sept. 17, 2024), Dkt. #284; Order Setting Interim Deadlines (Sept. 24, 2024),

Dkt. #288. Ultimately the Court ordered Amazon to substantially complete its productions of

custodial documents in two waves, by January 31 and March 24, 2025. Dkt. ## 288, 343. As a

consequence of those deadlines, which fell over a year after Plaintiffs served most of their

document requests, and the time needed to review Amazon's documents, Plaintiffs were not able

to begin depositions of Amazon witnesses until late March. Those depositions have been further

delayed and hindered by Amazon's belated productions of ***over 190,000 documents*** it previously

withheld as privileged, including ***almost 60,000 documents*** that Amazon withheld during

Plaintiffs' pre-Complaint investigation—documents that Amazon could and should have

produced *years* ago, before Plaintiffs even filed this case. Amazon is also continuing to produce

documents and data: it has produced hundreds of thousands of documents *after* its substantial

completion deadline, and is still investigating and "scoping" data requests.[2]

   Plaintiffs have been diligent in pursuing discovery. Even with the need to fight Amazon

on almost every conceivable discovery front, Plaintiffs have deposed 18 Amazon employees or

---

[2] Amazon claims that its post-March 24 productions "primarily consist of documents sought by [Plaintiffs' Fifth and Sixth Sets of RFPs], for which Amazon agreed to provide additional custodians and search terms." That is incorrect. Amazon has produced hundreds of thousands of documents after March 24 that are responsive to Plaintiffs' earlier document requests. Amazon has also not yet produced any materials in response to Plaintiffs' Sixth Set of RFPs, which is a data request. Plaintiffs are also still waiting for Amazon to produce certain data in response to Plaintiffs' Third Set of RFPs, which were served over a year ago.

former employees and conducted 20 third-party depositions to date. The majority of those depositions have been coordinated with other cases, as required by the Coordination Order and Deposition Protocol. But there remains much to be done. As of this filing, there are at least 45 Amazon depositions that remain to be taken (of which 38 are coordinated depositions that will take place across two days), and 14 additional third-party depositions that have been noticed. That does not account for the additional third-party depositions that both sides will notice. Amazon recently advised the Court in the *California* action that it "anticipates deposing between 20 and 30 additional third-party witnesses" and that "most, if not all, of these depositions will be coordinated." Plaintiffs likewise plan to notice additional third-party depositions.

Under the current working deposition schedule Plaintiffs have been negotiating with Amazon—which already extends out to September 19—there will be at least three depositions every week (many of which will be two-day depositions) from mid-June through the end of July, and in at least one week in August. There will be at least five weeks with four depositions. That is *before* adding in 6 third-party depositions that have been noticed but not scheduled, the inevitable depositions that will need to be rescheduled due to changes in witness or attorney availability (such as the two Amazon depositions Amazon has asked to reschedule so far), and additional depositions that will be noticed.

***The Court Should Extend Fact Discovery to October 22.*** Without an extension of fact discovery, deposition logistics will rapidly become unworkable—particularly given the need to coordinate many depositions across several cases—and will sharply limit the parties' ability to accommodate the schedules of third parties and witnesses when scheduling depositions. Plaintiffs believe that a 75-day extension of fact discovery will allow for the depositions of both Amazon *and* third-party witnesses in a manner that will limit the burden on third-party witnesses, while keeping this case moving towards trial as quickly as possible.  Amazon's

JOINT STATUS REPORT - 10
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

position appears to be that because Amazon can schedule its witnesses who have been noticed for depositions by September 19, Amazon "do[es] not see a need for extra weeks of fact discovery after the last Amazon witness deposition has been completed." However, that approach does not account for the need to schedule third-party depositions (including depositions that will be coordinated across several cases).

Plaintiffs have conferred with the plaintiffs in the other cases that have been involved in coordination, and can represent that Plaintiffs' proposal to extend the fact discovery deadline is acceptable to all plaintiffs in those cases. Plaintiffs also note that the District of Columbia is separately negotiating an overall schedule modification with Amazon. Plaintiffs' proposal would extend the deadline for coordinated discovery but would not limit further case-specific non-coordinated discovery in the *District of Columbia* action.[3]

**_The Court Should Extend the Deadlines for Expert Reports by 14 Days_**.  Despite Plaintiffs' efforts to keep data discovery moving as quickly as possible, Amazon's production of structured data has been repeatedly delayed by the time Amazon has taken to investigate and "scope" those data requests. After over a year of negotiations, Amazon has not yet given

---

[3] Private Plaintiffs have agreed to align the fact discovery deadline in their cases with Plaintiffs' proposed fact discovery deadline for coordinated fact discovery. The People of the State of California are not opposed to Plaintiffs' proposed schedule extension, provided that: (1) the Amazon depositions confirmed for May and June, that are being coordinated with the FTC, proceed as confirmed, (2) the Amazon depositions noticed by The People, which are not being coordinated with the FTC, proceed as confirmed; and (3) the balance of the pretrial dates in the California action are continued by a commensurate number of days to be agreed between The People and Amazon, and trial set to commence no later than October 21, 2026. Plaintiffs believe those issues can be addressed in the *California* case after an extension of the schedule in this case. *See* Ex. A, Case Management Conference Tr. 10:15-21, *People of California v. Amazon.com, Inc.*, Case No. CGC-22-601826 (May 14, 2024) (Court: "[I]f there is to be a substantial continuance of the discovery schedule in the FTC action, which currently has the same discovery cutoff date as this action, and in light of the orders and stipulations that the depositions be coordinated in the two cases, obviously, that's going to have a knock-on effect here.").

JOINT STATUS REPORT - 11
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   Plaintiffs a final position about *what* Amazon will produce in response to some data requests,

2   much less a date certain by which Amazon will make those productions. Those delays are

3   impacting and will continue to impact the ability of Plaintiffs' expert witnesses to prepare their

4   opening reports. Meanwhile, Amazon has full access to its own data. Plaintiffs believe that a

5   short extension of the expert report deadlines is warranted due to Amazon's delays in data

6   production. A short extension of the deadline for reply reports is also warranted in light of the

7   considerable amount of data that has been produced in this case, which will affect the time

8   Plaintiffs' expert witnesses will need to analyze and respond to Amazon's experts.

9          Amazon's proposal to *reduce* the amount of time set aside for expert reports would cut

10  weeks out of the time for Plaintiffs' expert witnesses to prepare their opening and reply reports.

11  That would compound the prejudice to Plaintiffs resulting from Amazon's delayed production of

12  data, and effectively reward Amazon for dragging its feet in discovery.

13         The only concrete rationale Amazon has given for opposing Plaintiffs' proposals is

14  Amazon's stated desire to keep an October 2026 trial date. However, Amazon has not identified

15  any prejudice it will face if this case is tried in early 2027. Any trial in this case is more than a

16  year away. There is enough time to reset the schedule in order to allow for the orderly

17  completion of both fact and expert discovery.

18         Moreover, even if a short extension of the schedule would inconvenience Amazon, that is

19  a self-inflicted injury. Since the outset of this case Plaintiffs have made every effort to move

20  forward as quickly as possible. To highlight just one example, in the parties' first Joint Status

21  Report, Plaintiffs proposed interim deadlines for document and data production *precisely* to

22  avoid a scenario where Amazon's delays forced an extension of the case schedule. *See* Joint

23  Status Report at 5-8 (Dec. 15, 2023), Dkt. #135; *id.* at 12-13 ("[Interim document production]

24  deadlines will ensure that the parties make steady progress in document discovery and avoid a

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  pile-up of late document discovery that might otherwise derail the discovery schedule or

2  depositions."); *id.* at 14 ("deadlines for the completion of structured data production . . . will

3  ensure that the parties make steady progress in data discovery and avoid a pile-up of late data

4  that might otherwise derail the discovery schedule or expert discovery"). Amazon largely

5  opposed those deadlines, *see id.* at 6-7, opposed Plaintiffs' later request to set interim deadlines

6  for document production (which the Court ordered), *see* Joint Brief Regarding Interim Deadlines

7  (Sept. 17, 2024), Dkt. #284, and then slow-walked discovery on every front. Amazon cannot

8  reasonably complain that the Court's initial schedule needs to be modified in order to account for

9  Amazon's ongoing and strategic delays in discovery.

10      Plaintiffs respectfully request that the Court enter Plaintiffs' proposed schedule.

11      **Amazon's Position:**

12      Amazon respectfully requests that the trial date of October 13, 2026, be maintained.

13  Plaintiffs have wrongfully portrayed Amazon's practices of offering low prices, wide selection,

14  and fast delivery as somehow a threat to competition requiring expeditious remedy.  Amazon

15  seeks the opportunity to go to trial on those unfair and inaccurate allegations on the scheduled

16  date of October 13, 2026, around which dozens of fact and expert witnesses, trial counsel for

17  Amazon, and – notably – the Court have structured the progress of this litigation.  To meet the

18  trial date, Amazon has devoted considerable time and resources to meet Plaintiffs' extensive

19  discovery demands.  Amazon has proposed a six-week extension of the fact discovery deadlines

20  and a one-month extension of the expert discovery deadlines to accommodate Plaintiffs while

21  keeping the trial date.  In the interest of fundamental fairness, Amazon requests that the Court

22  adopt Amazon's proposed modification of interim deadlines, allowing the trial to proceed as

23  scheduled on October 13, 2026.

24

JOINT STATUS REPORT - 13
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

It was Plaintiffs who argued for a fast pretrial schedule and a large number of depositions. Amazon has incurred substantial expense to produce millions of documents and offer dozens of current and former executives for deposition within the short window demanded by Plaintiffs. Now, Plaintiffs have changed course and ask that the case be slowed down. Plaintiffs' request for change in the schedule will require the extension of all of the deadlines in this case, result in a *four-month* delay of the trial, and require an adjustment of the schedules of at least three coordinated cases in multiple jurisdictions. To avoid that significant disruption while looking to find compromise, Amazon has proposed modest extensions of the fact and expert discovery deadlines that allow the subsequent pretrial and trial deadlines to remain unchanged. As discussed below, Amazon has offered deposition dates that will allow the case to proceed on schedule with only minor modifications. Amazon has offered dates for all of its witnesses' depositions on or before September 19, 2025. Plaintiffs do not and cannot explain why they need an additional month, until October 22, to conduct those depositions. Plaintiffs' request for a disruptive extension from the aggressive schedule that they requested should be denied, as it is not needed to complete fact discovery and it will disrupt the carefully coordinated schedules in related cases.

**Plaintiffs Fail to Acknowledge the Disruption Posed by their Proposal.** Plaintiffs assert that plaintiffs in other related cases are willing to adjust their fact discovery deadlines, but Plaintiffs fail to address the other aspects of those cases that have been coordinated, including expert discovery deadlines and trial dates—all of which have been either aligned with or coordinated around this case. That coordination is the result of lengthy negotiations with multiple plaintiff groups and orders from courts in different matters in different jurisdictions. Amazon will be prejudiced if the expert deadlines become unaligned and it faces duplicative deadlines and duplicative depositions of the same experts within a relatively short expert period.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    This problem is especially present in the *California* action, where the opening expert reports are

2    due on October 3—prior to the new fact discovery deadline Plaintiffs propose.   Plaintiffs'

3    proposal also fails to address that the trial dates in the various coordinated cases have been set

4    around the schedule in this case.  Plaintiffs offer no representations or assurances as to how this

5    complicated scheduling issue would be resolved.  Plaintiffs have been proceeding with and

6    benefitting from taking coordinated discovery.  Now they appear ready to abandon coordination

7    to suit their own needs, while creating the burden for Amazon of duplicative expert discovery

8    obligations, which coordination of discovery schedules was intended to avoid.

9        **A Further Extension Beyond September 19, 2025 is Not Necessary.**  Amazon has

10   already agreed to extend fact discovery six weeks to September 19 and proposed dates for the

11   depositions noticed by Plaintiffs by that date.  In proposing dates, Amazon has largely been able

12   to accommodate the order of witnesses that Plaintiffs have requested.  Given that all company

13   witness depositions will be concluded by September 19, there is no compelling reason to extend

14   the fact discovery period for an additional month after that date, as Plaintiffs request.

15       Plaintiffs do not explain why that additional month is needed.  An extension should not

16   be granted if Plaintiffs are planning to take even more depositions than are currently noticed,

17   after complaining about their inability to conduct the existing depositions.  Nor should an

18   extension be granted if Plaintiffs are simply planning to reschedule the current depositions.

19   Scheduling these depositions has been exceedingly difficult given the coordination required for

20   Plaintiffs' schedules, the witnesses' schedules, and counsel's schedules.  Many of the witnesses

21   are former employees, and scheduling during the summer months, in the sequencing requested

22   by Plaintiffs, has been extremely difficult.  These witnesses have now blocked off time on their

23   calendars and scheduled other commitments around their depositions.  With regard to Amazon

24   witnesses, Amazon has advised Plaintiffs multiple times that the fall is a particularly busy and

JOINT STATUS REPORT - 15
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

difficult time to schedule. Amazon has its annual planning meetings and, like all retailers, is in high gear to prepare for the holiday season. Amazon has advised Plaintiffs that rescheduling depositions into October and November will not be feasible and will only increase the burden on these witnesses.[4]

**Plaintiffs Sought Expansive Discovery Despite a Lengthy Pre-Litigation Investigation.** Despite Plaintiffs' attempt to shift blame onto Amazon, Plaintiffs find themselves in a quandary of their own making. The FTC began investigating this case in 2019 through a sprawling CID that resulted in the production of over 1.7 million documents and 100 terabytes of data, and the testimony of over two-dozen Amazon employees. After filing suit, Plaintiffs requested a fast case schedule. Plaintiffs objected to the longer discovery timeline Amazon proposed and sought a May 2026 trial date. *See* 12/15/2023 Joint Status Report at 11-12 (ECF 135).

Instead of engaging in targeted discovery to reflect a case honed as a result of a lengthy investigation, however, Plaintiffs took the opposite approach: Plaintiffs have issued *400* requests for production of documents and data. They insisted on over 120 document custodians and initially proposed 90 depositions of Amazon employees and former employees (the Court ordered 80). They expanded the scope of discovery by, for example, refusing to identify the relevant market (despite having had a four-year investigation to assess it), declining to answer interrogatories propounded by Amazon, and insisting on production of documents from jurisdictions around the world for use in an indisputably U.S.-limited case. This is indicative of Plaintiffs' approach to the case – they have insisted on a fast schedule, citing vague threats of

---

[4] Plaintiffs note the number of concurrent depositions. Amazon presumes that Plaintiffs do not argue they lack the resources to prosecute this case under the current schedule. There are 72 Plaintiffs' attorneys who have entered an appearance in this matter from 19 states and the FTC.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  imminent harm, but have refused to conduct their case in order to meet the expedited deadlines

2  that they themselves demanded.

3         Amazon has made Herculean efforts to respond to Plaintiffs' extensive and expansive

4  discovery requests.  Plaintiffs complain about a small percentage of the approximately *4.3*

5  *million* documents Amazon has made available to them in this case.  Amazon has engaged in a

6  massive document review, which has resulted in production of approximately 2.6 million

7  documents (in addition to the 1.7 million produced in the investigation).  Production of

8  documents for "priority" custodians identified by Plaintiffs was substantially completed by

9  January 31, with 1,014,928 documents produced by then.  Production of documents for

10 remaining custodians was substantially completed by March 24, with 566,369 additional

11 documents produced between February 1 and March 24.  In the middle of these efforts, Plaintiffs

12 served *additional* requests for production this year: a Fifth Set of RFPs on January 24, 2025 and

13 a Sixth Set on March 10, 2025.  Even using Plaintiffs' numbers, which Amazon does not

14 concede are correct, the documents produced after March 24 constitute approximately *4%* of the

15 total documents produced in this case; in other words, by March 24, Plaintiffs already had

16 approximately *96%* of the documents produced in this case.  The documents Plaintiffs complain

17 Amazon is still producing currently primarily consist of documents sought by those Fifth and

18 Sixth Sets, for which Amazon agreed to provide additional custodians and search terms.

19        As noted above, Amazon has also provided two-day deposition windows for dozens of

20 employees of all different seniority levels and facilitated the availability of former employees

21 where possible.[5]  Amazon agrees that a reasonable extension of the schedule is appropriate to

22 allow for the scheduling of the most senior Amazon employees Plaintiffs have noticed for

23

24 [5] Despite the fact that documents for half of the custodians were substantially produced by the end of January, Plaintiffs did not take the first Amazon deposition until late March 2025.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    deposition.  But this does not justify a disruptive extension to the schedule that would delay the

2    trial by four months.  Nor does it justify an extra month of fact discovery after the deposition

3    dates offered by Amazon.

4        Plaintiffs' complaints about Amazon's data productions are likewise unfounded.

5    Amazon has consistently produced large and complex datasets in response to Plaintiffs'

6    voluminous (approximately 450) data requests.  Amazon began its structured data productions to

7    Plaintiffs in July 2024 and has regularly produced data nearly every month since.  Amazon has

8    now made about 65 data productions, which comprise over 460 TB of data (288 TB of which

9    Amazon produced but Plaintiffs have yet to accept for download).  Most of Amazon's data

10   productions have been prioritized in cooperation with Plaintiffs, producing the data Plaintiffs

11   requested first.  For the small remainder of data requests that Amazon still is investigating, those

12   are primarily due to a mutual decision to re-scope certain metrics following conversations with

13   Plaintiffs in recent months.[6]

14       Finally, Plaintiffs are not simply asking for two more weeks for their opening expert

15   reports, but an additional three months from the original deadline.  Amazon has largely

16   completed Plaintiffs' voluminous data requests and has not missed its only court-ordered

17   deadline—the August 8 close of fact discovery, which Amazon remains on track to meet for the

18   small remainder of data productions.  Amazon's proposed one-month extension of the opening

19   expert reports is therefore squarely sufficient.

20

21   ─────────────────────

[6] As Amazon has noted in the past, Amazon's data is decentralized and most of the time does not
22   exist in a format responsive to Plaintiffs' requests.  Amazon therefore undertakes a lengthy and
     burdensome process to investigate data responsive to each of Plaintiffs' data requests, including
23   identifying people familiar with the subject of the request, assessing whether Amazon maintains
     data of the type requested by Plaintiffs, and working with data engineers to write queries to pull
24   and verify data for production.  Amazon continues to cooperate with Plaintiffs and produce data
     pursuant to Plaintiffs' priorities.

1                                    *      *      *

2          Plaintiffs insisted on expansive, burdensome discovery, which Amazon has worked hard

3   to respond to and comply with.  The record does not justify a disruptive, lengthy extension of the

4   deadlines in this case.  The Court should impose the modest schedule extension proposed by

5   Amazon and maintain the current trial date.

6          **B.        Economics Day**

7          During the Joint Status Conference and Economics Day Hearing held on March 7, 2025,

8   the Court directed the parties to provide a proposal as to the next Economics Day hearing,

9   which would include presentations from the parties' economists.

10         The parties have conferred and jointly propose that the next Economics Day Hearing be

11  scheduled after the conclusion of expert discovery. The parties believe that, at that point in time,

12  the relevant economic issues and areas of dispute will be more clearly defined, and the

13  presentations of the experts will be closer in time and more tailored to any related disputes that

14  may be presented to the Court. This proposed schedule will also minimize the burden on the

15  parties and their respective experts during a busy time when the parties are conducting dozens

16  of depositions ahead of the fact discovery deadline, and when the parties' experts are working

17  diligently to complete their analyses ahead of the relevant expert discovery deadlines.

18         **C.        Conferrals with Witnesses During Deposition Breaks**

19         **Plaintiffs' Position:**

20         Several Amazon deposition witnesses have stated that they discussed the substance of

21  their testimony with counsel during deposition breaks, and Amazon has asserted privilege over

22  those discussions. Plaintiffs believe that these substantive discussions during depositions are

23  improper and are not protected by the attorney-client privilege.

24

JOINT STATUS REPORT - 19                          **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                            600 Pennsylvania Avenue, NW
                                                         Washington, DC 20580
                                                            (202) 326-2222

1    Federal Rule of Civil Procedure 30(c)(1) provides that the examination of a deposition

2    witness proceeds as though the witness were testifying at trial. *See In re Cathode Ray Tube*

3    *(CRT) Antitrust Litig.*, 2015 WL 12942210, at *3 (N.D. Cal. May 29, 2015). For this reason,

4    several courts in this circuit have held that any discussions about the substance of a witness's

5    testimony during breaks in a deposition are impermissible and are not protected by privilege. *See*

6    *id.* ("[O]nce a deposition begins, counsel should not confer with the witness except to determine

7    whether a privilege should be asserted."); *Barajas v. Abbott Lab'ys, Inc.*, 2018 WL 6248550, at

8    *4 (N.D. Cal. Nov. 29, 2018) ("It is improper for a witness and her attorney to discuss the

9    substance of her testimony during breaks in a deposition, except where necessary to address

10   matters of privilege."); *Horowitz v. Chen*, 2018 WL 4560697, at *3 (C.D. Cal, Sept. 20, 2018)

11   (same); *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, 2009 WL 3872043, at *3-4 (E.D. Cal.

12   Nov. 17, 2009) ("Because a deposition generally proceeds as at trial, courts have held that once a

13   deposition starts, counsel has no right to confer during the deposition except to determine if a

14   privilege should be claimed.") (collecting cases). Likewise, the only circuit court to address this

15   question concluded that "private conferences (on issues other than privilege) that would be

16   inappropriate during trial testimony are not excused during a deposition." *Hunt v. DaVita, Inc.*,

17   680 F.3d 775, 780 (7th Cir. 2012).

18       These rulings reflect that the fundamental purpose of a deposition is to obtain the

19   witness's truthful testimony, and are grounded in the recognition that permitting substantive

20   discussions between the witness and their counsel during the course of the deposition threatens

21   this basic goal. "There is no proper need for the witness's own lawyer to act as an intermediary,

22   interpreting questions, deciding which questions the witness should answer, and helping the

23   witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a

24   parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   legally convenient record." *Hall v. Clifton Precision*, 150 F.R.D. 525, 528-29 (E.D. Pa. 1993);

2   *see also Hunt*, 680 F.3d at 780.

3          Moreover, even the courts that have declined to adopt a bright-line standard barring

4   conferences between a witness and their attorney during regularly-scheduled deposition breaks

5   have nonetheless recognized that an attorney may not "coach[ ] the witness by telling the witness

6   what to say or how to answer a specific question." *In re Stratosphere Corp. Sec. Litig.*, 182

7   F.R.D. 614, 621 (D. Nev. 1998); *see also New Age Imports, Inc. v. VD Importers, Inc.*, 2019 WL

8   1427468, at *3 (C.D. Cal. Feb. 21, 2019) ("[E]ven courts that decline to adopt the standard in . . .

9   *Hall* . . . nevertheless affirm the principle that an attorney may not coach the witness . . . .")

10  (internal quotation omitted).[7] Further, as the court explained in *Pape v. Suffolk Cnty. Soc'y for*

11  *the Prevention of Cruelty to Animals*, 2022 WL 1105563, (E.D.N.Y. Apr. 13, 2022), "discussions

12  between attorney and client as to how a question should be handled are not protected by

13  attorney-client privilege," and "opposing counsel has the right to ask about matters that may

14  have affected or changed the witness's testimony." *Id.* at *4 (E.D.N.Y. Apr. 13, 2022) (internal

15  citations and quotations omitted). The court further explained: "It necessarily follows that

16  improper coaching by an attorney to remind the witness, or refresh the recollection of a witness

17  as to what their testimony should be during a break in the deposition would not be protected by

18  the attorney-client privilege and thus subject to disclosure." *Id.* (internal quotation marks

19  omitted).

20

21

---

22  [7] *McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648 (D. Colo 2001) is inapposite. That case
    involved a deposition that took place over two sessions that were scheduled nearly a month apart,
23  and the court expressed concerns about a decision that would have the effect of barring the
    defendant from conferring with his counsel for "several weeks." *Id.* at 650. There are no similar
24  depositions here.

JOINT STATUS REPORT - 21                          **FEDERAL TRADE COMMISSION**
CASE NO. 2:23-cv-01495-JHC                         600 Pennsylvania Avenue, NW
                                                   Washington, DC 20580
                                                   (202) 326-2222

1    To the extent Amazon seeks to ensure that its witnesses understand a particular question

2    or document or wants to clarify their testimony, the proper avenue to do so is to question the

3    witness directly on the record. *See Barajas*, 2018 WL 6248550, at *4 (explaining that if counsel

4    for the witness "felt his client's recollection needed refreshing or her testimony required

5    clarification, he should have questioned her himself on the record at the conclusion of the

6    deposition"). The alternative—attempting to make these changes via confidential conferences

7    during the course of the deposition—jeopardizes the fact-finding purpose of the deposition. *See*

8    *Hall*, 150 F.R.D at 528.

9    The risk of witness coaching is not an abstract concern here. Amazon documents show

10   that Amazon's in-house attorneys coach executives on how to write about business matters. For

11   example, Amazon Legal issued "Do's and Don'ts" for Amazon's Global Competition Update

12   such as "Do discuss examples of increasing competition . . . Do not discuss examples that may

13   give the impression that competition is decreasing," and "Do summarize the large number of

14   competitors that Amazon faces in a segment and label the list as 'competitors include . . .' Do not

15   list a small number of competitors and label them as key or top competitors because that could

16   suggest a limited competitive set." Ex. B, Amazon-FTC-CID_05827170. Amazon's conduct in

17   party depositions suggests that Amazon's counsel may similarly be shaping the substance of

18   witnesses' testimony.[8] For example, during the deposition of Daniel Silverman, Amazon's

19

---

[8] The Court should consider this issue in the context of substantial evidence that Amazon is
20   systemically abusing the attorney-client privilege to shield business documents from government
investigations and discovery. *See* LCR 37 Joint Submission at 8-13 (Feb. 20, 2025), Dkt. #419;
21   *see also De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (W.D. Wash. Mar. 25, 2025),
Dkt. #302 ("The Court's in camera review shows that Amazon improperly designated
22   operational, business, and strategic documents as attorney-client communications or attorney-
work product."); *Garner v. Amazon.com, Inc.*, 2024 WL 4266665, at *3 (W.D. Wash. Sept. 23,
23   2024) (concluding that the court's in camera review "show[ed] that Amazon improperly
attempted to cloak operational, business, and strategic documents . . . with the attorney client
24   privilege.").

Director of Economics, Seller Fees, Mr. Silverman altered his testimony concerning a specific document after a deposition break. Mr. Silverman initially testified that he had no recollection of an email he sent or why he sent it. Ex. C, Tr. 108:4-25. Following a break. Mr. Silverman testified that part of the email was material he had copied and pasted from someone else. Tr. 193:4-21. Mr. Silverman subsequently confirmed that during the breaks in his deposition, he had discussed the substance of his testimony and one or more of the exhibits he had been shown with Amazon's in-house *and* outside counsel. Tr. 291:8-292:14.[9]

As the *Hall* court reasoned: "During a civil trial, a witness and his or her lawyer are not permitted to confer at their pleasure during the witness's testimony. Once a witness has been prepared and has taken the stand, the witness is on his or her own. The same is true at a deposition." 150 F.R.D. at 528. The potential for witnesses to alter their testimony based on discussions with counsel during breaks warrants a clear rule barring any such substantive conversations. *See Barajas*, 2018 WL 6248550, at *4 (coaching breaks at issue were "absolutely improper" and highlighting particular concerns where witness's testimony appeared to be "influenced by her conference with counsel during the break").

Plaintiffs respectfully request that the Court order that (1) Amazon counsel may not discuss the substance of a witness's testimony with the witness during any deposition breaks,

_____

[9] Amazon suggests that Mr. Silverman's testimony following a break concerned an entirely separate portion of the document and that the seeming change was merely the result of the witness drawing conclusions from the "context" of the document. But the relevant sections of the document discussed before and after the break appear roughly six lines away from each other and contain nearly identical language. In both instances, Mr. Silverman was asked about a statement that "we shared" a particular document with certain colleagues. Tr. 111:16-23; Tr. 191:12-22. Before to the break, the witness indicated that he had not personally sent the document, but that the "we" could have referred to the team he just joined, *see* Tr. 111:16-23. After the break, the witness offered a different explanation for the language, suggesting instead that he did not author the relevant portions of the email and that instead this language must have been copied from someone else, *see* Tr. 191:12-22.

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  including between the first and second day of a two-day deposition, and (2) that any such

2  conversations are not protected by attorney-client privilege. This order would not limit

3  discussions between Amazon counsel and a witness for the purpose of determining whether a

4  privilege should be asserted.

5  **Defendant's Position:**

6      Plaintiffs' position relies on the baseless and inappropriate accusation that counsel has

7  been improperly coaching witnesses and is not supported by the record.  Plaintiffs use this

8  speculation to assert the right to breach privileged communications between witnesses and their

9  counsel.  Prohibiting witnesses from conferring with their counsel on breaks in the deposition—

10  as opposed to while a question is pending, which is not at issue here—interferes with an

11  individual's right to counsel and impedes attorneys from performing their ethical duties.

12      First, no Federal Rule of Civil Procedure or local rule in this District prohibits discussion

13  between deponents and their lawyers during breaks in depositions.  Washington state procedure

14  in fact expressly *permits* discussion between a witness and the witness's lawyer "during normal

15  recesses and at adjournment unless prohibited by the court."  Wash. Ct. R. 30(h)(5).

16      Second, courts in this Circuit and around the country routinely hold that during

17  depositions, "when there is no question pending, discussions between counsel and client do not

18  violate any express rule and are permissible." *Pape v. Suffolk Cnty. Soc'y for Prevention of*

19  *Cruelty to Animals*, 2022 WL 1105563, at *2 (E.D.N.Y. Apr. 13, 2022).  That is because a

20  blanket prohibition on discussions between counsel and their clients "unnecessarily

21  jeopardize[s]" the "right to counsel." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621

22  (D. Nev. 1998).  While "it is one thing to preclude attorney-coaching of witnesses," it is "quite

23  another to deny someone" the right to counsel.  *Id.*  There is an ocean between the inappropriate

24  coaching of answers and counsel "making sure that his or her client did not misunderstand or

misinterpret questions or documents, or attempt to help rehabilitate the client by fulfilling an attorney's ethical duty to prepare a witness." *Id.*; *see also* Brian R. Iverson, *Give Me A Break: Regulating Communications Between Attorneys and Their Witness-Clients During Deposition Recesses*, 36 Geo. J. Legal Ethics 497, 526 (2023) ("A strict no-consultation rule, however, would make it impossible for the attorney to comply with this ethical obligation to remonstrate with the client confidentially during the deposition."). Any such "consultations, during periodic deposition breaks, luncheon and overnight recesses, and more prolonged recesses ordinarily are appropriate." *McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) (*citing In re Stratosphere*, 182 F.R.D. at 621). *See also New Age Imports, Inc. v. VD Importers, Inc.*, 2019 WL 1427468, at *4 (C.D. Cal. Feb. 21, 2019) ("[T]here is no binding precedent that requires this Court to prevent a witness from conferring with his or her counsel during a deposition.").

Plaintiffs essentially rely on an old case from the Eastern District of Pennsylvania, *Hall v. Clifton Precision*, 150 F.R.D. 525, 528-29 (E.D. Pa. 1993), which has been "highly criticized." *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 92 (N.D.N.Y. 2003). Many courts, including in this Circuit, instead follow the holding of *In re Stratosphere Corp.*, which protects the sanctity of the attorney-client privilege by prohibiting inquiry into communications between counsel and witnesses during breaks in depositions. Examining *Hall*, the *Stratosphere* court concluded that *Hall* "goes too far and its strict adherence could violate the right to counsel." *In re Stratosphere*, 182 F.R.D. at 620. The court further observed: "The right to prepare a witness is not different before the questions begin than it is during (or after, since a witness may be recalled for rebuttal, etc., during trial). What this Court, and the Federal Rules of Procedure seek to prevent is coaching the witness by telling the witness what to say or how to answer a specific question. We all want the witness's answers, but not at the sacrifice of his or her right to the assistance of counsel." *Id.* at 621.

JOINT STATUS REPORT - 25
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1      Third, courts also hold that these discussions between counsel and client are privileged,

2   and deny to "interrogating counsel *carte blanche* to invade the privileged communications." *Id.*

3   at 622. *See also New Age Imports*, 2019 WL 1427468, at *3 ("Defendants' counsel properly

4   asserted attorney-client privilege" over discussions during a deposition); *Henry*, 212 F.R.D.at 92

5   (asking "to reveal" what "counsel said to him during the break of his deposition . . . may truly

6   intrude upon the attorney-client privilege and the work product doctrine").

7      Fourth, Plaintiffs' accusation that counsel is improperly "coaching" witnesses appears to

8   be based on nonsensical logic and a misunderstanding of the testimony they have elicited.

9   Plaintiffs argue that because, *in the regular course of business*, in-house counsel advise

10  employees with respect to drafting documents (a regular part of an in-house counsel's job),

11  Amazon's different, outside counsel must be improperly shaping witnesses' *testimony in the*

12  *litigation*.  Plaintiffs do not even attempt to explain how those two contexts are related.

13     The deposition example Plaintiffs raise in no way suggests that there was any improper

14  coaching—or even that discussions covered the document at issue.  Plaintiffs identify testimony

15  about whether a witness authored a particular exhibit and leap to the suspicion that something

16  untoward must have occurred.  In reality, the example highlights the ways in which Plaintiffs

17  waste deposition time asking witnesses questions about documents the witnesses have testified

18  they do not remember, and then seek to draw factual conclusions based on foundationless

19  testimony.  Here, when the exhibit was introduced, the witness was asked whether he recalled the

20  email in question and he testified that he did not. Ex. C at 108:15-17.  He also testified that it

21  appeared to be an email "from him" based on the "header."  *Id.* at 108:18-20.  Plaintiffs

22  proceeded to ask questions about one portion of the email.  Over two hours later, Plaintiffs

23  returned to the email and asked questions about a portion of the email they had not focused on

24  previously.  The witness noted that the language highlighted by Plaintiffs suggested he was not

JOINT STATUS REPORT - 26
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   the author of that portion of the email and had instead copied it from another source. The

2   witness also explained why he thought that: the witness testified that because he was not in the

3   Fees organization as of July 31, 2023, he concluded it was unlikely he would have written

4   language suggesting *he* had shared a fees document with Fees leadership at that time ("Fee

5   Optimization Review (07/31/2023): this is the document *we* shared with Ben"). *Id.* at 191:2-

6   18. Plaintiffs assume that this clarification must have been the result of some coaching that

7   occurred, but there is no indication that is the case. The witness did not indicate that any

8   discussions with counsel impacted the substance of his testimony, or that they even covered this

9   document. *See Id.* at 291-292. Rather, it is apparent from the testimony that the witness merely

10  used the context of the document to make a note about the email, which he had already testified

11  he did not recall.[10]

12          It is apparent that what Plaintiffs are really seeking is to invade the attorney-client

13  privilege that exists between counsel and the witness. Plaintiffs want authorization to inquire

14  into privileged conversations by offering nothing but speculation that counsel has acted

15  improperly. "The attorney-client privilege is the oldest of the privileges for confidential

16  communications known to the common law. Its purpose is to encourage full and frank

17  communication between attorneys and their clients and thereby promote broader public interests

18  in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S.

19  383, 389 (1981) (cleaned up); *see also Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881

20  F.2d 1486, 1491 (9th Cir. 1989) ("[M]aintenance of the attorney-client privilege up to its proper

21

22

---

23  [10] Amazon denies that any improper coaching of witness testimony occurred, but Amazon notes that it cannot fully respond to Plaintiffs' accusation without betraying privileged

24  communications.

limits has substantial importance to the administration of justice." (quoting *Harper & Row*

*Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970)).

This record provides no basis for the Court to impede the ethical duties of counsel, or the

rights of a witness to counsel, in providing or seeking legal advice during breaks in a deposition.

The Court should not accept Plaintiffs' unfounded invitation to do so.

## IV. PENDING MOTIONS

The chart below lists the motions that are pending before the Court:

| Motion | Response | Reply | Notice Date |
|---|---|---|---|
| Amazon's Motion to Compel Further Responses to its First Set of Interrogatories (Dkt. #414) (2/19/2025) | Plaintiffs' Opposition (Dkt. #434) (3/6/2025) | Amazon's Reply (Dkt. #444) (3/12/2025) | March 12, 2025 |

Dated: June 2, 2025                    Respectfully submitted,

                                       /s/ _____
                                       SUSAN A. MUSSER (DC Bar # 1531486)
                                       EDWARD H. TAKASHIMA (DC Bar # 1001641)
                                       MICHAEL BAKER (DC Bar # 1044327)
                                       LEIGH BARNWELL (NY Reg. # 5440821)
                                       Federal Trade Commission
                                       600 Pennsylvania Avenue, NW
                                       Washington, DC 20580
                                       Tel.:   (202) 326-2122 (Musser)
                                               (202) 326-2464 (Takashima)
                                       Email:  smusser@ftc.gov
                                               etakashima@ftc.gov
                                               mbaker1@ftc.gov
                                               lbarnwell@ftc.gov

                                       *Attorneys for Plaintiff Federal Trade Commission*

JOINT STATUS REPORT - 28
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*s/ Michael Jo*
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

*s/ Victoria Field*
Victoria Field (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: Victoria.Field@ct.gov
*Counsel for Plaintiff State of Connecticut*

*s/ Alexandra C. Sosnowski*
Alexandra C. Sosnowski (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

*s/ Malisa McPherson*
Malisa McPherson (admitted *pro hac vice*)
Deputy Attorney General, Public Advocacy
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-2297
Email: Malisa.McPherson@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

*s/ Timothy D. Smith*
Timothy D. Smith, WSBA No. 44583
Attorney-in-Charge
Antitrust, False Claims, & Privacy Section
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 798-3297
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

*s/ Jennifer A. Thomson*
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

*s/ Michael A. Undorf*
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

*s/ Christina M. Moylan*
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

JOINT STATUS REPORT - 29
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

*s/ Schonette Walker*
2
Schonette Walker (admitted *pro hac vice*)
Assistant Attorney General
3
Chief, Antitrust Division
Office of the Maryland Attorney General
4
200 St. Paul Place
Baltimore, MD 21202
5
Telephone: (410) 576-6473
Email: swalker@oag.state.md.us
6
*Counsel for Plaintiff State of Maryland*

7
*s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
8
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
9
One Ashburton Place, 18th Floor
Boston, MA 02108
10
Telephone: (617) 963-2189
Email: katherine.krems@mass.gov
11
*Counsel for Plaintiff Commonwealth of
Massachusetts*
12
*s/ Scott A. Mertens*
13
Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General
14
Michigan Department of Attorney General
525 West Ottawa Street
15
Lansing, MI 48933
Telephone: (517) 335-7622
16
Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*
17
*s/ Zach Biesanz*
18
Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel
19
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
20
Saint Paul, MN 55101
Telephone: (651) 757-1257
21
Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

22

23

24

*s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

*s/ Andrew Esoldi*
Andrew Esoldi  (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-7819
Email: Andrew.Esoldi  @law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

*s/ Billy Jimenez*
Billy Jimenez (admitted *pro hac vice*)
Deputy Attorney General, Civil Affairs
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 527-2694
Email: bjimenez@nmag.gov
*Counsel for Plaintiff State of New Mexico*

*s/ Zulma Carrasquillo-Almena*
Zulma Carrasquillo (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00901-0192
Telephone: (787) 721-2900
Email: zcarrasquillo@justicia.pr.gov
*Counsel for Plaintiff Commonwealth of Puerto
Rico*

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

*s/ Stephen N. Provazza*

2  Stephen N. Provazza (admitted *pro hac vice*)
   Special Assistant Attorney General
3  Chief, Consumer and Economic Justice Unit
   Department of the Attorney General
4  150 South Main Street
   Providence, RI 02903
5  Telephone: (401) 274-4400
   Email: sprovazza@riag.ri.gov
6  *Counsel for Plaintiff State of Rhode Island*

7  *s/ Sarah L. J. Aceves*

   Sarah L. J. Aceves (admitted *pro hac vice*)
8  Assistant Attorney General
   Vermont Attorney General's Office
9  109 State Street
   Montpelier, VT 05609
10 Telephone: (802) 828-3170
   Email: sarah.aceves@vermont.gov
11 *Counsel for Plaintiff State of Vermont*

12 *s/ Caitlin M. Madden*

   Caitlin M. Madden (admitted *pro hac vice*)
13 Assistant Attorney General
   Wisconsin Department of Justice
14 Post Office Box 7857
   Madison, WI 53707-7857
15 Telephone: (608) 267-1311
   Email: maddencm@doj.state.wi.us
16 *Counsel for Plaintiff State of Wisconsin*

17

18

19

20

21

22

23

24

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Molly A. Terwilliger*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
      molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Katherine A. Trefz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
      jschmidtlein@wc.com
      khodges@wc.com
      jpitt@wc.com
      ereddington@wc.com
      cmetz@wc.com
      ktrefz@wc.com
      cpruski@wc.com

**COVINGTON & BURLING LLP**

Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice*)
Katharine Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com
      dludwin@cov.com
      kmitchelltombras@cov.com

*Attorneys for Defendant Amazon.com, Inc.*

JOINT STATUS REPORT - 32
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222