UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a corporation,<br><br>Defendant. | CASE NO. 2:23-cv-01495-JHC<br><br>ORDER GRANTING IN PART AND DENYING IN PART AMAZON'S MOTION TO COMPEL |

**I**
**INTRODUCTION**

This matter comes before the Court on Defendant Amazon's Motion to Compel Further Responses to its First Set of Interrogatories. Dkt. # 414. Amazon asks the Court to compel Plaintiffs to answer all but one interrogatory in its first set of interrogatories. *Id.* at 2 n.1 (not seeking a further answer to Interrogatory No. 6). The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law. For the reasons below, the Court GRANTS in part and DENIES in part the motion.

## II
## DISCUSSION

A. Ripeness

Plaintiffs contend that Amazon's motion is unripe because they have agreed to supplement their responses to Interrogatories Nos. 1, 3, 4, 7, and 8 by March 21, 2025. Dkt. # 434 at 6. Because this deadline has passed and Amazon has not withdrawn its motion, the Court rules on it.

B. Compound Interrogatories

Plaintiffs contend that they cannot be compelled to answer Interrogatories Nos. 13–16, asserting that Amazon has exceeded its 40-interrogatory limit, Dkt. # 161 at 3, in its first 12 interrogatories, which are compound. Amazon counters that although Interrogatory No. 9 counts as six interrogatories, the remaining interrogatories count as only one each.

"[I]nterrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." *Rabel v. Univ. of Washington Med. Ctr.*, 2024 WL 197370, at *4 (W.D. Wash. Jan. 18, 2024) (citation omitted). But because formulations of this rule "are difficult to apply or perhaps even conflicting, some courts take a 'pragmatic approach,' looking to see if an interrogatory threatens the purpose of Rule 33 by combining into one interrogatory several lines of inquiry that should be kept separate." *Paananen v. Cellco P'ship*, 2009 WL 3327227, at *2 (W.D. Wash. Oct. 8, 2009) (citation omitted).

The Court relies on the parties' prior agreements to guide its application of this legal standard. Plaintiffs say that the parties established a rule based on Amazon's previous response to Plaintiffs' Interrogatory No. 1, which asks:

> Identify and describe in detail *each justification* Amazon contends is associated with the interrelated conduct challenged as unlawful in the Complaint, including

> but not limited to the conduct identified in paragraphs 257-261, 262-350, 351-409, 410-415, 416-432, 433-441 of the Complaint, and *for each, identify every alternative means* Amazon evaluated, considered, or tested to accomplish the justification and *explain why each alternative was not sufficient to accomplish each such justification.*

Dkt. # 435-3 at 6–7 (emphasis added). Amazon objected to this interrogatory as excessively compound, *id.* at 7, but responded on the condition that it be treated as six interrogatories:

> - Describe and explain the justifications for Amazon's alleged contractual restrictions on lowering prices through the BSA, ASB, and the CXA, including any alternative means considered and why those means were not sufficient.
>
> - Describe and explain the justifications for Amazon's alleged use of SC-FOD, including any alternative means considered and why those means were not sufficient.
>
> - Describe and explain the justifications for Amazon's alleged first-party anti-discounting algorithm, including any alternative means considered and why those means were not sufficient.
>
> - Describe and explain the justifications for Amazon's alleged requirement that sellers participate in FBA to obtain a Prime Badge, including any alternative means considered and why those means were not sufficient.
>
> - Describe and explain the justifications for Amazon's alleged decision to shut down SFP in 2019 and reopen after the Complaint, including any alternative means considered and why those means were not sufficient. In your answer, address any efforts to deter or limit sellers' ability to use third-party logistics providers (3PLs) to fulfill SFP orders.
>
> - Describe and explain the justifications for Amazon's alleged practice of holding SFP sellers to stricter delivery benchmarks than FBA, including any alternative means considered and why those means were not sufficient.

Dkt. # 435-4 at 9–10. The parties appear to agree that asking for: (1) a justification for allegedly unlawful conduct; (2) every alternative means considered to accomplish the justification; and (3) why each alternative was insufficient to accomplish the justification, all count as a single interrogatory. *See* Dkt. # 434 at 7 ("When Plaintiffs received Amazon's interrogatories, they sought to apply the same rule Amazon invoked."). What separates Plaintiffs' Interrogatory No. 1

into six interrogatories is the subject: justification for allegedly unlawful conduct. The alternative means considered for each justification and why each alternative was insufficient to accomplish it are subparts to a single interrogatory. The Court applies this approach to assess the first 12 interrogatories.

Interrogatory No. 1 asks:

> Identify each and every Person that You claim participates in each of the relevant antitrust markets alleged in Your Complaint, and Identify their respective market shares for each year since 2015.

Dkt. # 415 at 14. Plaintiffs say that this interrogatory can be broken into four subparts that ask Plaintiffs to identify: "(1) participants in the online superstore market; (2) participants in the online marketplace services market; (3) market shares in the online superstore market; and (4) market shares in the online marketplaces services market." Dkt. # 434 at 8.

The Court agrees with Plaintiffs that the online superstore market and the online marketplace services market are, like different types of allegedly unlawful conduct, distinct subjects. Contrary to Amazon's contention, *Rabel* is not on point. There, the court held that an interrogatory asking for the "internal valuation of Ms. Rabel's medical and pension benefits," could not be broken into two interrogatories asking about medical benefits and pension benefits. *Rabel*, 2024 WL 197370, at *5. As the court explained, both types of benefits related to the broader question about "the value of Ms. Rabel's benefits." *Id.* Amazon does not ask for something akin to a sum valuation here.

The Court, however, disagrees that identifying participants in a market and their respective market shares are distinct. Plaintiffs cite *Paananen* for the proposition that "if the first question can be answered fully and completely without answering the second question then the questions are distinct." 2009 WL 3327227, at *2 (quotation marks and citation omitted). But in responding to Plaintiffs' Interrogatory No. 1 as discussed above, Amazon could have, for

example, identified a justification for allegedly unlawful conduct without also identifying every alternative means considered to accomplish the justification. The Court concludes that identifying a participant in a marketplace and its market share are sufficiently related to count as one interrogatory.

Thus, Interrogatory No. 1 counts as two interrogatories.

Interrogatory No. 2 asks:

> For each purported "anti-discounting tactic" alleged in Your Complaint, Identify each and every Third Party You know or have a reason to believe has also engaged in one or more of the same or similar 'tactics.'

Dkt. # 415 at 15.

Plaintiffs say that this interrogatory contains at least three distinct inquiries based on:

- Amazon's use of SC-FOD;
- Amazon's use of contractual restrictions on sellers' ability to sell products at lower prices on other online stores (including through the BSA, ASB, and CXA);
- Amazon's use of its first-party anti-discounting algorithm.

*Id.* at 68–69.[1] Amazon does not specifically address interrogatories other than Interrogatory No. 1; it asks the Court to apply its analysis of Interrogatory No. 1 to the remaining interrogatories. But Interrogatory No. 2 is more analogous to Plaintiffs' Interrogatory No. 1, discussed above. Like Plaintiffs' Interrogatory No. 1, which focuses on each justification for allegedly unlawful conduct, Interrogatory No. 2 focuses on each purported "anti-discounting tactic." And Plaintiffs identify three anti-discounting tactics.

Thus, Interrogatory No. 2 counts as three interrogatories.

Interrogatory No. 3 asks:

> For each purported "coercive tactic involving its order fulfillment business" alleged in Your Complaint, Identify all Persons who were coerced by the purported

[1] Plaintiffs say that their "position on each interrogatory, as clearly communicated to Amazon, is set forth in Amazon's Ex. 6." Dkt. # 434 at 9 n.7.

> "tactic," the products they were coerced into fulfilling through Amazon, when that occurred, and the fulfillment provider(s) they would have used but-for the alleged coercive tactic.

Dkt. # 415 at 17.

Plaintiffs say that this interrogatory contains at least four distinct lines of inquiry that ask them to (1) "[i]dentify all Persons who were coerced by the purported 'tactic'"; (2) "[i]dentify the products they were coerced into fulfilling through Amazon"; (3) "[i]dentify when that occurred"; and (4) "[i]dentify the fulfillment provider(s) they would have used but-for the alleged coercive tactic." *Id.* at 69. The Court concludes that these four subparts are sufficiently related to count as one inquiry. *See Paananen*, 2009 WL 3327227, at *3 (an interrogatory about Verizon's backup procedures counts as one interrogatory because "[t]he types of media storage, their size and brand, which computers are backed up, and the timing of those backups are all secondary inquiries subsumed within the primary inquiry."). Although Interrogatory No. 3 could count as multiple interrogatories if Plaintiffs identified different coercive tactics, they do not do so in its letter to Amazon or in its response to Amazon's motion to compel.

Thus, Interrogatory No. 3 counts as one interrogatory.

Interrogatory No. 4 asks:

> Identify every Person that raised its prices in a retail store other than Amazon in response to any of the alleged anticompetitive conduct, the product(s) for which they raised prices, the store(s) in which they raised prices, and when that occurred.

Dkt. # 415 at 19.

Plaintiffs say that this interrogatory contains at least four distinct lines of inquiry that ask them to (1) "[i]dentify every Person that raised its prices in a retail store other than Amazon in response to any of the alleged anticompetitive conduct"; (2) "[i]dentify the product(s) for which they raised prices"; (3) "[i]dentify the store(s) in which they raised prices"; and (4) "[i]dentify

when that occurred." *Id.* at 69. The Court applies the same analysis discussed above as to Interrogatory No. 3.

Thus, Interrogatory No. 4 counts as one interrogatory.

Interrogatory No. 5 asks:

> Identify every product for which retail prices were raised as a result of the alleged anticompetitive conduct, and the prices for which they would have been available but-for the alleged anticompetitive conduct.

*Id.* at 21.

Plaintiffs say that this interrogatory contains at least two distinct lines of inquiry that ask them to (1) "[i]dentify every product for which retail prices were raised as a result of the alleged anticompetitive conduct"; and (2) "[i]dentify the prices for which they would have been available but-for the alleged anticompetitive conduct." *Id.* at 69. The Court applies the same analysis discussed above as to Interrogatory No. 3.

Thus, Interrogatory No. 5 counts as one interrogatory.

Interrogatory No. 6 asks:

> With respect to the allegation in Your Complaint that Amazon "degrade[d] the customer experience," Describe the basis for Your allegation, including but not limited to each and every aspect of the customer experience that you contend has been degraded, and Identify all third-parties with knowledge of any facts that form the basis of Your allegation.

*Id.* at 22.

Plaintiffs say that this interrogatory contains at least three distinct lines of inquiry that ask them to (1) describe the basis of their allegation that Amazon degraded the customer experience; (2) describe every aspect of the customer experience that they contend has been degraded; and (3) identify all third parties with knowledge of any facts that form the basis of their allegation. *Id.* at 69. The Court applies the same analysis discussed above as to Interrogatory No. 3. And here, it is clear that this interrogatory pertains to only one of Plaintiffs' allegations.

Thus, Interrogatory No. 6 counts as one interrogatory.

Interrogatory No. 7 asks:

> With respect to the allegation in Your Complaint that Amazon's "take rate" from sellers, as the Complaint defines that term, is "higher than its rivals," Describe the basis for Your allegation including by Identifying the firms that you believe have lower rates for any component that makes up your allegation of "take rate" and the basis for that belief, Describe each and every fee or cost that You know or have reason to believe is assessed at a lower rate to sellers in any Channel other than Amazon, and Identify all third-parties with knowledge of any facts that form the basis of Your allegation.

*Id.* at 25.

Plaintiffs say that this interrogatory contains at least four distinct lines of inquiry that ask them to (1) describe the basis for its allegation that Amazon's "take rate" is "higher than its rivals"; (2) identify the firms that they believe have lower rates for any component that makes up a "take rate" and the basis for that belief; (3) describe every fee they have reason to believe is assessed at a lower rate to sellers in any Channel other than Amazon; and (4) identify all third-parties with knowledge of any facts that form the basis of their allegation. *Id.* at 70. The Court applies the same analysis discussed above as to Interrogatory No. 3. And here, it is clear that this interrogatory pertains to only one of Plaintiffs' allegations.

Thus, Interrogatory No. 7 counts as one interrogatory.

Interrogatory No. 8 asks:

> With respect to the allegations in Your Complaint that "barriers to entry" exist for Your alleged relevant markets, Identify each prospective entrant to one of those markets that is known to You, Identify each "barrier to entry," Identify each prospective entrant that was prevented from doing so by such alleged "barriers to entry," Identify the specific "barrier" that prevented each prospective entrant's entry, and Identify how such prospective entrant intended and was prepared to enter such market but-for the "barrier to entry."

*Id.* at 26.

Plaintiffs say that this interrogatory contains at least five distinct lines of inquiry that ask them to (1) identify each prospective entrant to one of their alleged relevant markets; (2) identify each "barrier to entry"; (3) identify each prospective entrant that was prevented from entering one of the markets due to alleged "barriers to entry"; (4) identify the specific "barrier" that prevented each prospective entrant's entry; and (5) identify how each prospective entrant intended and was prepared to enter the market but-for the "barrier to entry." *Id.* at 70. For the same reasons as discussed above as to Interrogatory No. 1, the Court concludes that inquiries pertaining to two separate markets are distinct. Because Interrogatory No. 8 asks about multiple "allegations" concerning "barriers to entry," it could be that it can be further divided into separate interrogatories concerning different allegations as they pertain to the two alleged markets. But Plaintiffs do not explain how this interrogatory might be so divided.

Thus, Interrogatory No. 8 counts as two interrogatories.

Interrogatory No. 9 asks:

> For each anticompetitive practice alleged in Your Complaint, Identify any alternative means of achieving the same ends as those practices without inhibiting competition.

*Id.* at 28.

Amazon says that this interrogatory should count as six interrogatories. Dkt. # 414 at 12 n.7. Plaintiffs say that this interrogatory contains at least seven distinct lines of inquiry based on:

- Amazon's use of SC-FOD;
- Amazon's use of contractual restrictions on sellers' ability to sell products at lower prices on other online stores (including through the BSA, ASB, and CXA);
- Amazon's use of its first-party anti-discounting algorithm.
- Amazon's use of Project Nessie;
- Amazon's requirement that sellers participate in FBA to obtain the Prime badge;
- Amazon's decision to shut down SFP in 2019 and reopen after the Complaint;
- Amazon's practice of holding SFP sellers to stricter delivery benchmarks than sellers who use FBA.

Dkt. # 415 at 70.

Amazon asserts that because this interrogatory is the "mirror image" of Plaintiffs' Interrogatory No. 1, it "should be counted equally." Dkt. # 444 at 5. But Amazon does not explain why "Amazon's use of Project Nessie" should not count as an additional, distinct line of inquiry. *Compare* Dkt. # 435-4 at 9–10 *with* Dkt. # 415 at 70.

Thus, Interrogatory No. 9 counts as seven interrogatories.

Interrogatory No. 10 asks:

> Identify the month and year during which Amazon became a monopolist in each of your alleged relevant markets.

Dkt. # 415 at 30.

For the same reasons as discussed above as to Interrogatory No. 1, the Court concludes that inquiries pertaining to the online superstore market and the online marketplace services market are distinct.

Thus, Interrogatory No. 10 counts as two interrogatories.

Plaintiffs do not dispute that Interrogatory No. 11 counts as one interrogatory. *Id.* at 71.

Interrogatory No. 12 asks:

> For every year that You contend Amazon was a Monopolist in either of Your alleged relevant markets, Identify every other competitor in that market during that year.

*Id.* at 33.

For the same reasons discussed above as to Interrogatory No. 1, the Court concludes that inquiries pertaining to the online superstore market and the online marketplace services market are distinct.

Thus, Interrogatory No. 12 counts as two interrogatories.

In sum, Interrogatories Nos. 1–12 count as 24 interrogatories. Even if Plaintiffs were correct in contending that Interrogatories Nos. 13–16 count as seven interrogatories, *id.* at 71, Amazon would be below the 40-interrogatory limit. The 40-interrogatory limit does not prohibit Amazon from compelling Plaintiffs to answer interrogatories Nos. 13–16.

C. General Discovery

Plaintiffs assert that they cannot respond to Interrogatories Nos. 9, 13, and 16 until Amazon provides more information in discovery. Interrogatory No. 9, which asks Plaintiffs to identify alternative means of achieving certain ends without inhibiting competition, is reproduced above in Section II.B. Interrogatory No. 13 similarly asks:

> Identify every factor that you believe Amazon permissibly can take into account in deciding whether third-party offers should not be "Featured Offers" in Amazon's store, and Identify the impact upon the marketplace of Amazon withholding "Featured Offer" status on that basis.

Dkt. # 415 at 34.

And Interrogatory No. 16 asks:

> Describe each and every remedy and form of relief that You intend to seek in this Action, including, but not limited to, any "structural remedy."

*Id.* at 39.

"The Court may order that a contention interrogatory need not be answered 'until designated discovery is complete, or until a pretrial conference or some other time.'" *New Flyer Indus. Canada ULC v. Rugby Aviation, LLC*, 2019 WL 2491901, at *4 (W.D. Wash. June 14, 2019) (quoting Fed. R. Civ. P. 33(a)(2)). Plaintiffs contend that they cannot answer Interrogatories Nos. 9, 13, and 16 until Amazon finishes producing documents pertaining to Amazon's procompetitive justifications and possible remedies.[2] Plaintiffs say that they will need

[2] Plaintiffs say that Amazon supplemented its response to their Interrogatory No. 1, which seeks information about Amazon's procompetitive justifications, on February 14, 2025, and that Amazon's

time to review these documents and may also need time to conduct depositions before responding to these interrogatories. Amazon merely states as a general matter that Plaintiffs have access to "millions of pages of documents and dozens of deposition transcripts." Dkt. # 444 at 6. It does not explain with specificity why allowing Plaintiffs to review more documents and possibly take depositions will not help them respond to Interrogatories Nos. 9, 13, and 16.[3]

Thus, the Court denies the motion to compel responses to Interrogatories Nos. 9, 13, and 16.[4]

D. Expert Discovery

Plaintiffs contend that they cannot respond to Interrogatories Nos. 1, 4, 5, 7, 8, 10–12, 14, and 15 at this stage because they seek information that is subject to expert discovery.

1. Interrogatories Nos. 4 and 5

Interrogatories Nos. 4 and 5, reproduced above in Section II.B, ask Plaintiffs to identify "every product for which retail prices were raised as a result of the alleged anticompetitive conduct," the stores that sold these products, when the prices were raised, and "the prices for which they would have been available but-for the alleged anticompetitive conduct." Plaintiffs assert that because responding to these interrogatories would require assessing "millions of unique products," they can only respond to them by "analyzing data from both Amazon and relevant third parties," which would require expert discovery. Dkt. # 434 at 13–14. Amazon

---

production of custodial documents is not scheduled to be complete until at least March 24, 2025. Dkt. # 434 at 11–12. And Plaintiffs have requested production of documents about Amazon's actions taken in response to antitrust enforcement actions in other jurisdictions. Dkt. # 435-7 at 3–4 (Request for Production No. 376).

[3] For Interrogatory No. 9, Amazon says that it has told Plaintiffs "its competitive justifications last July and recently supplemented that response to provide even more information." Dkt. # 444 at 7 n.8. But Amazon does not explain with specificity why its response and supplementary responses to Plaintiffs' interrogatory about procompetitive justifications are enough for Plaintiffs to respond to Interrogatory No. 9 before they review more documents and, if necessary, conduct depositions.

[4] Because the Court concludes that responses to these interrogatories are premature before additional discovery, it does not reach Plaintiffs' alternative contentions as to these interrogatories.

relies on *In re Urethane Antitrust Litig.*, 2009 WL 2058759, at *2 (D. Kan. July 15, 2009) for the proposition that even if expert discovery could provide more information, Plaintiffs are required to respond to interrogatories with whatever factual information they might currently have.

But *In re Urethane Antitrust Litig.* is distinguishable. There, the plaintiffs brought antitrust claims "with respect to urethane chemical products," and their amended complaint "set forth a number of specific dates and amounts of price-increase announcements allegedly made by defendants, as well as the allegedly false and pretextual reasons for those increases." *Id.* at *1–2. By contrast, the products at issue here are not limited to a particular category and Amazon does not show that Plaintiffs' claims are based on a reasonable number of products. The Court agrees with Plaintiffs that expert discovery is necessary to meaningfully respond to these interrogatories.

Thus, the Court denies the motion to compel responses to Interrogatories Nos. 4 and 5.[5]

2. Interrogatories Nos. 1, 10–12, and 15

Interrogatories Nos. 1, 10–12, and 15 ask Plaintiffs to provide information about their alleged markets, such as the dates that Amazon became a monopolist in each of the markets and Amazon's competitors in those markets. Interrogatories Nos. 1, 10, and 12 are reproduced above in Section II.B. Interrogatory No. 11 asks:

> Identify the month and year during which any other "Online Superstore" identified in response to Interrogatory Number 1 gained the status of an "Online Superstore," and why it attained that status.

Dkt. # 415 at 32. And Interrogatory No. 15 asks:

> Identify each firm that competes in the alleged "Online Superstore" relevant market that does not engage in a practice of matching competitors' prices.

[5] Because the Court concludes that responses to these interrogatories are premature before expert discovery, it does not reach Plaintiffs' alternative contentions as to these interrogatories.

*Id.* at 38.

Plaintiffs assert that they should not be required to respond to these interrogatories before expert discovery because "the bases and methodologies of market analysis necessarily implies an application of antitrust law to facts." Dkt. # 434 at 15 (quoting *Fed. Trade Comm'n v. Kroger Co.*, 2024 WL 2805295, at *2 (D. Or. May 31, 2024)). Amazon says that *Kroger* is distinguishable because there, the court denied a motion to compel responses to interrogatories that "self-consciously sought expert testimony," Dkt. # 444 at 2, by asking the plaintiffs to respond with the "basis for [their] calculations of market share and market concentration using the Herfindahl-Hirschman Index ("HHI") in each geographic market, including the alleged competitors and geographic boundaries used to define the markets." 2024 WL 2805295, at *1. Amazon contends that, by contrast, its interrogatories "seek basic facts about the *Plaintiffs'* alleged markets, such as their participants and market shares." Dkt. # 444 at 3.

But Amazon does not explain how Plaintiffs can meaningfully identify these "basic facts" without first conducting expert discovery that could help them define their alleged markets.[6] *Cf. Procaps S.A. v. Patheon, Inc.*, 2015 WL 1608807, at *3–4 (S.D. Fla. Apr. 10, 2015) (compelling the plaintiff to respond to an interrogatory about market participants and shares after the parties had access to an expert report). Plaintiffs might have a working theory as to which companies are, for example, deterred from competing with Amazon Prime. A working theory, however, is not a "basic fact"; it can be shaped by expert testimony about market definitions. *See United States v. Anthem, Inc.*, 2016 WL 11755527, at *5 (D.D.C. Sept. 30, 2016) ("Market shares are not themselves 'facts' in the traditional sense of the word, but instead a legal and

---

[6] In responding to Interrogatory No. 1, Plaintiffs say that "market definition will be the subject of expert analysis," and that they "will provide additional detail on specific market participants and their market shares in their expert report(s) in accordance with the [relevant] deadlines." Dkt. # 415 at 15.

economic interpretation of other underlying facts."), *report and recommendation adopted*, 2016 WL 11755535 (D.D.C. Oct. 14, 2016). Even if "the validity of the 'relevant market' is typically a factual element rather than a legal element," *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008), determining the competitors in a market that is not yet fully defined is not a basic factual question that can be answered at this stage.

And while Amazon says that it will suffer prejudice if Plaintiffs are allowed expert discovery before responding to these interrogatories, it does not explain with specificity why the characteristics of the relevant markets and estimates of the market shares for different groups of online stores as set forth in Plaintiffs' complaint are "superficial and incomplete" for purposes of conducting discovery at this stage. Dkt. # 444 at 3. Nor does Amazon respond to Plaintiffs' observation that over four months for expert discovery is enough time for Amazon to prepare its case based on Plaintiffs' responses to these interrogatories. Dkt. # 434 at 15 n.11 (citing Dkt. # 159 at 2–3).

Thus, the Court denies the motion to compel responses to interrogatories Nos. 1, 10–12, and 15.[7]

3. Interrogatories Nos. 7, 8, and 14

Interrogatories Nos. 7, 8, and 14 ask for specific information about Amazon's competitors. Interrogatories Nos. 7 and 8 are reproduced above in Section II.B. Interrogatory No. 14 asks:

> Identify each firm that has "introduced comparable [to Prime] subscription services at a fraction of the price" that "have struggled to make serious inroads," Describe the subscription program they introduced (including the services or products provided and the cost to consumers) and Describe all of the reasons that they "struggled to make serious inroads."

---

[7] Because the Court concludes that responses to these interrogatories are premature before expert discovery, the Court does not reach Plaintiffs' alternative contentions as to these interrogatories.

Dkt. # 415 at 36–37.

Interrogatory No. 7, among other things, asks Plaintiffs to identify the basis for their allegation that Amazon's "take rate" is "higher than its rivals," to identify firms that have lower rates, and to describe "each and every fee or cost" that they believe "is assessed at a lower rate to sellers in any Channel other than Amazon." Amazon contends that Plaintiffs' response, which consists of a 2017 Amazon document discussing revenue from seller fees in the aggregate, is insufficient because it does not provide information about individualized fees. And determining individualized fees merely requires "basic addition and subtraction." Dkt. # 444 at 4. But the interrogatory does not appear to ask Plaintiffs to engage in a few instances of simple arithmetic. The Court is persuaded by Plaintiffs' assertion that because "fees and costs assessed to sellers change depending on the year, seller, or product," they require expert discovery to help assess the "data, documents, and testimony to study fees and costs assessed to sellers" before they can fully respond to the interrogatory. Dkt. # 434 at 17. Nor does Amazon respond to Plaintiffs' observation that they need more time to receive and review materials from third parties to inform their response. *Id.* at 17 n.13.

Interrogatories Nos. 8 and 14 ask Plaintiffs about potential entrants into a market and their barriers to entry. Amazon does not dispute Plaintiffs' assertion that parties routinely rely on expert opinion for analysis of barriers to entry, nor specifically respond to Plaintiffs' contentions about these interrogatories in its reply. Dkt. # 434 at 18 (citing *In re Urethane Antitrust Litig.*, 152 F. Supp. 3d 357, 361 (D.N.J. 2016) (observing that an expert in another case examined the scope of a market, market shares held by relevant suppliers, and barriers to entry)). Because these interrogatories bear on defining the alleged markets, the Court concludes that responses are premature until expert discovery for the reasons discussed above as to interrogatories Nos. 1, 10–12, and 15.

Thus, the Court denies the motion to compel responses to interrogatories No. 7, 8, and 14.[8]

E. Interrogatory No. 2

Interrogatory No. 2, reproduced above in Section II.B, asks Plaintiffs to identify every third party that they believe has engaged in tactics similar to Amazon's "anti-discounting tactics." After making objections, Plaintiffs responded:

> Plaintiffs are not aware of any third party that is in a position to engage in "the same or similar anti-discounting 'tactics'" because, unlike Amazon, no third party possesses the monopoly power that enables the suppression of price competition through the conduct described in the Amended Complaint as anti-discounting tactics.

Dkt. # 415 at 16–17. Amazon contends that this response is insufficient because it assumes that Plaintiffs will prove their claims that Amazon is a monopoly. Plaintiffs clarify in their opposition to the present motion to compel that they are unaware of any third party that engages in tactics like Amazon's anti-discounting tactics because Amazon engages in a series of actions that, in the aggregate, comprise a unique scheme that cannot be isolated into distinct parts. Dkt. # 434 at 18–19. Amazon does not explain how this clarification, which is based on Amazon's unique scheme of various actions rather than its assumed "monopoly power," is insufficient.

Thus, the Court grants the motion to compel as to Interrogatory No. 2 and orders Plaintiffs to supplement their response with their clarification as set forth in their opposition brief. Dkt. # 434 at 18–19.

---

[8] Because the Court concludes that responses to these interrogatories are premature before expert discovery, the Court does not reach Plaintiffs' alternative contention as to interrogatory No. 7.

F. Interrogatory No. 3

Because Plaintiffs do not respond to Amazon's motion to compel a full response to interrogatory No. 3, the Court grants the motion as to this interrogatory.

## III
## CONCLUSION

For these reasons, the Court GRANTS in part Amazon's motion to compel. Plaintiffs must supplement their response to Amazon's interrogatory No. 2 with their clarification as set forth in their opposition brief. Dkt. # 434 at 18–19, and more fully respond to interrogatory No. 3. The Court DENIES the motion as to all other interrogatories. Amazon may, if necessary, and when proper, file another motion to compel responses to these interrogatories.

Dated this 2nd day of June, 2025.

John H. Chun
United States District Judge