1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

FEDERAL TRADE COMMISSION, *et al.*,

    Plaintiffs,

    v.

AMAZON.COM, INC., a corporation,

    Defendant.

CASE NO.: 2:23-cv-01495-JHC

**LCR 37 JOINT SUBMISSION
REGARDING PLAINTIFFS'
MOTION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S
THIRD-PARTY MARKETPLACE**

NOTE ON MOTION CALENDAR:
December 12, 2025

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Pursuant to Local Civil Rule 37(a)(2) and the Court's Case Management Order, Dkt. #161 at ¶ 8, Plaintiffs respectfully request that the Court compel Best Buy Co., Inc. ("Best Buy") to provide non-privileged documents and deposition testimony regarding its online third-party marketplace and—if necessary due to the timing of the Court's decision on this motion and when fact discovery closes in any updated scheduling order in this case—to make the head of Best Buy's marketplace business available for an out-of-time deposition within 21 days after Best Buy produces the documents at issue.

Plaintiffs certify that the parties are at an impasse after conferring in good faith on this issue, including through several telephonic conferences and written correspondence.

## I.   INTRODUCTORY STATEMENTS

### A.   Plaintiffs' Introductory Statement

Best Buy launched a U.S. online marketplace in August 2025, following years of planning dating back to late 2022. Ex. A at 2 (Aug. 15, 2025 Letter from E. Jalkut to E. Zepp). However, Best Buy generally refuses to produce materials or permit deposition testimony regarding its marketplace (the "marketplace materials") unless: (1) the materials were created before 2023; (2) the materials pertain only to Best Buy's marketplace's operations, rather than its strategy or forward-looking plans; or (3) the information is publicly available.[1] Best Buy has identified certain specific exceptions to that rule where it will allow deposition testimony. Mendelsohn Decl. ¶ 4; Ex. B at 1-3. However, Best Buy has maintained its objections to providing documents or testimony related to several major topics, including Best Buy's future plans for its marketplace,

---

[1] This motion uses the term "marketplace materials" to refer to the documents and deposition testimony Best Buy has not agreed to provide, i.e., materials outside the three categories identified and not subject to any carve-outs later specified by Best Buy. *See* Ex. B (Oct. 27, 2025 Letter from E. Jalkut to N. Sahni).

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 1
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  strategies Best Buy has not (or has not yet) implemented, and Best Buy's views regarding

2  "competitor reactions." Ex. B at 3-4.

3      Best Buy cannot seriously contest the relevance of these marketplace materials. Best Buy's

4  current strategy and forward-looking plans for its online marketplace are directly germane to

5  central issues in this case. For example, Best Buy's marketplace materials are relevant to the

6  existence of an Online Marketplace Services market, how Amazon's conduct has impeded

7  competition in this space, and how Amazon's conduct impacts market outcomes. Best Buy also

8  cannot reasonably claim that collecting or producing its marketplace materials will be unduly

9  burdensome: it has already collected, reviewed, and set aside the relevant documents at issue, and

10  it has already agreed to make the head of its marketplace business available for a deposition.

11      Instead, Best Buy objects that the marketplace materials are too sensitive to produce to

12  Amazon, even on an outside counsel eyes-only basis. Ex. A at 1. While Plaintiffs are sympathetic

13  to Best Buy's concerns, commercial sensitivity is not a basis to withhold highly probative evidence

14  that Plaintiffs cannot obtain anywhere else. Best Buy's confidentiality concerns should be

15  adequately addressed by the Protective Order entered by this Court (Dkt. #160) and the separate

16  side agreement between Best Buy and Amazon that provides Best Buy with *additional* protections

17  vis-à-vis Amazon—specifically, that Amazon will maintain sensitive commercial documents and

18  testimony it receives from Best Buy on an outside counsel eyes-only basis.[2] While Plaintiffs do

19  not have a copy of the agreement between Best Buy and Amazon, Plaintiffs generally would not

20

21  [2] According to Amazon's counsel, "Best Buy and Amazon have reached an agreement to resolve
    Best Buy's objections to the Protective Order. That agreement provides additional protections vis-

22  à-vis Amazon with respect to information produced by Best Buy in this action, specifically, an
    opportunity for Best Buy to require, in the first instance, that documents and testimony provided

23  by Best Buy are maintained on an outside counsel eyes only basis." Ex. C (Oct. 3, 2025 Email

24  from E. Dowd to E. Zepp).

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 2
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

object to the Court ordering additional confidentiality protections for Best Buy (or third parties generally). *See* LCR 37 Joint Submission for Protective Order, Dkt. #144 at 14-18 (proposing Protective Order that would have not allowed Amazon's in-house counsel to access material designated "Highly Confidential—Attorneys' Eyes Only").

Plaintiffs respectfully request the Court compel Best Buy to produce all non-privileged marketplace materials and permit all related questioning regarding Best Buy's online third-party marketplace. Plaintiffs also request that the Court order Best Buy to produce the disputed materials and make a deposition witness available following the Court's order, even if that discovery occurs after the scheduled close of fact discovery.

### 1.    Best Buy's Confidentiality Objections

In January 2025, Plaintiffs learned that Best Buy planned to launch an online marketplace and requested that Best Buy include documents regarding its planned marketplace in its upcoming response to Plaintiffs' outstanding document subpoena, noting that those documents were within Plaintiffs' existing requests to Best Buy. Mendelsohn Decl. ¶ 2; Ex. D at Request Nos. 14-22 (April 26, 2024 document subpoena); Ex. E (Jan. 23, 2025 Email from N. Mendelsohn to E. Jalkut). Plaintiffs subsequently served Best Buy with a Rule 30(b)(6) deposition subpoena seeking testimony concerning, among other topics, "[t]he planning and launching of Best Buy Marketplace in the United States, including Your reasons for launching Best Buy Marketplace in the United States, Your efforts to recruit Vendors, Sellers, and Customers, and Your analyses of any Customer acquisition technology and design costs." Ex. F, Topic 7 (June 16, 2025 deposition subpoena); *see also* Ex. F, Topics 1, 4-6, 8-16.

Best Buy responded that it was unwilling to produce certain commercially sensitive marketplace documents, including business planning and strategy documents, because those

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 3
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

documents would in turn be produced to Amazon. Mendelsohn Decl. ¶ 4; Ex. A at 1. In an attempt to narrow the issues in dispute, Plaintiffs identified key topics of interest regarding Best Buy's marketplace on which they sought discovery. Ex. G (July 24, 2025 Email from E. Zepp to E. Jalkut). Best Buy responded that it would only agree to produce a narrow subset of marketplace documents:

> [A]s a guidance for its production and deposition testimony, Best Buy is generally willing to allow discovery into the marketplace category prior to 2023. In addition, Best Buy will consider producing documents and allowing testimony related to the "marketplace" market after January 2023 to the extent the discussion is limited to operations (as opposed to strategy) or draws exclusively from public information or information that may be purchased from third parties[.]

Ex. A at 2.

In late September 2025, Best Buy provided additional guidance regarding its proposal and indicated it would not provide documents or allow testimony covering marketplace issues Plaintiffs view as plainly relevant, including Best Buy's forward-looking business plans, how Best Buy plans to differentiate its offerings, expectations for the future competitive environment, anticipated competitive responses, and more recent projections for volume and revenue of Best Buy's marketplace. Mendelsohn Decl. ¶ 4; Ex. B.

On October 1, 2025, Best Buy confirmed that it would not agree to produce any of the disputed marketplace materials, and the parties confirmed they had reached an impasse. Mendelsohn Decl. ¶ 2. This case was stayed from October 1, 2025 through November 18, 2025. Dkt. ##548, 556. On November 24, 2025, Best Buy agreed to submit this dispute to the Court using the LCR 37 joint submission procedure. Mendelsohn Decl. ¶ 2.

## 2.     The Marketplace Materials are Highly Relevant

Plaintiffs filed this suit to challenge the illegal course of exclusionary conduct Amazon deploys to block competition, impede rivals' growth, and cement its dominance to the detriment

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 4
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

of the tens of millions of American households who regularly shop on Amazon's online superstore and the hundreds of thousands of sellers who rely on Amazon's marketplace to reach them. Second Amended Complaint ("SAC") ¶¶ 3, 7 (Dkt. #326). Plaintiffs allege that Amazon has illegally maintained monopoly power in two relevant markets, including the Online Marketplace Services Market. *Id.* ¶¶ 186-210. Unlike the traditional retail model—where a retailer purchases products from vendors to sell on a first-party basis to the retailer's customers—marketplaces allow sellers to sell their products directly to online shoppers and offer sellers a distinct set of services that help sellers make those sales without having to directly operate an online store. *Id.* ¶¶ 188, 190-191. Marketplaces operated by online stores can expand the breadth and depth of products offered by those stores, and in turn attract customers to those stores. *Id.* ¶¶ 9-10, 121, 126, 132.

Online marketplaces, like the one recently launched by Best Buy, are particularly susceptible to the effects of Amazon's conduct. For example, Plaintiffs allege that Amazon punishes sellers that offer lower prices on off-Amazon sales channels. *Id.* ¶ 17. Sellers who want to avoid that punishment and maintain their Amazon sales have an incentive to raise or ensure higher prices on other marketplaces to avoid having Amazon suppress the Buy Box. *Id.* ¶ 280. This has direct and significant consequences for rival marketplaces like Best Buy's, imposing a chokehold that limits their access to sellers, which are critical to their success. Because Amazon is far and away the largest online marketplace in the United States, Plaintiffs expect that Best Buy's marketplace materials will reflect Amazon's conduct and presence in the market, including the effects of Amazon's challenged conduct on Best Buy's marketplace pricing, product selection, and revenues.

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 5
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

### B.    Best Buy's Introductory Statement

Plaintiffs' motion should be denied, and this Court should grant a protective order that restricts Plaintiffs from accessing the narrow swath of highly-sensitive competitive information about its recently-launched online marketplace. Contrary to what Plaintiffs suggest, Best Buy has already produced thousands of documents, including hundreds that relate to its marketplace, and will allow testimony into those documents and other related topics. These documents, already produced and in Plaintiffs' possession, "reflect Amazon's conduct and presence in the market, including the effects of Amazon's challenged conduct on Best Buy's marketplace pricing, product selection, and revenues,"—the reason Plaintiffs claim they need the documents that Best Buy has withheld. *See* Plaintiffs' Introductory Statement, *supra* at 5. Plaintiffs cannot show why their case, that relates to Amazon's conduct going back to 2014, relies on Best Buy's most competitively-sensitive, very recent, if not current, and often forward-looking analysis of its new online marketplace. The narrow subset of online marketplace information Best Buy seeks to withhold and for which it seeks protection from this Court is not proportionate to Plaintiffs' needs. Also, there is significant risk of inadvertent disclosure of this information due to the many attorneys from numerous other cases who will also have access by virtue of multiple subpoenas seeking all documents Best Buy has produced in this case and the Deposition Coordination Protocol and Order (Dkt. # 337). These risks far outweigh Plaintiffs' purported needs.

This case is about Amazon's conduct in two markets dating back to 2014: (1) the online superstore market and (2) the market for online marketplace services. SAC ¶¶ 7, 231, 254, 422. Plaintiffs allege that Amazon has illegally maintained monopoly power in these two markets over the past eleven years in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 2 of the Sherman Act, 15 U.S.C. § 2, and the laws of eleven states. See SAC ¶¶ 444-603. The entire

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 6
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

case is about **Amazon's** conduct over an eleven-year period. Nonetheless, Plaintiffs, in this motion, claim that Best Buy's most highly-confidential plans and strategies for its recently-launched online marketplace are so relevant and necessary to their prosecution of Amazon's conduct as to outweigh any risk of disclosure. Ironically, in the very market where the Federal Trade Commission ("FTC") and attorneys general from nineteen states purportedly are protecting competition, these same entities are willing to stifle Best Buy's ability to compete. As the government institutions charged with protecting Best Buy's ability to compete are willing to forgo their obligations, Best Buy requests that the Court employ its authority vested through Rule 45(d)(3)(B) to limit discovery of four topics: (1) Future plans, aspirations, or intent for the growth and development of the Best Buy marketplace; (2) Raw data from customer surveys since January 1, 2023 (note: Best Buy has already produced analysis from this data); (3) Marketplace strategies that were developed after January 1, 2023, but not yet implemented; and (4) Predictions regarding competitor reactions to its marketplace plans.

### 1. Discovery Requests Served on Best Buy

This motion is not just about the instant case. Before receiving the Subpoena to Produce Documents from the FTC on April 26, 2024 ("FTC Document Subpoena"), Best Buy received subpoenas from Amazon and the California Department of Justice in a case alleging that Amazon monopolized the ecommerce market. Exs. 1 & 2 ("California Subpoenas"). The FTC Document Subpoena and California Subpoenas contained requests for reciprocal productions. *See* Ex. 1 ¶ 6; Ex. D ¶ 5. Then came the private plaintiffs. Best Buy received subpoenas for documents in three related class actions. Exs. 3-5. The subpoenas sought all documents produced by Best Buy in response to the California Subpoenas, the FTC Document Subpoena and the subpoena receive by Amazon in this action. *See id*. ¶¶ 1-4. In addition, Zulily's counsel recently requested reproduction

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 7
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    of the documents in *Zulily v. Amazon*, 2:23-cv-01900-JHC (W.D. Wash.) (Jalkut Decl. ¶ 7.) and

2    counsel for the state of Arizona notified Best Buy's counsel that it wants reproduction of the

3    documents for *State of Arizona ex rel Mayes v. Amazon.com, Inc.*, No. CV2024-011990 (Ariz.

4    Super. Ct.). *Id*. ¶ 8. On top of the document requests, Best Buy has received deposition subpoenas

5    or been notified that one is forthcoming in all of these actions. *See id*. ¶¶ 7-14; Exs. 6-9. Under the

6    Deposition Coordination Protocol and Order (Dkt. # 337), the parties to these actions consulted to

7    agree on dates and time allocations for Best Buy's witnesses. Jalkut Decl. ¶ 15.

8        Despite the widespread disclosure of its documents and forthcoming deposition testimony

9    across at least eight actions staffed by hundreds of attorneys, Best Buy produced thousands of

10   documents and transactional data and agreed to produce two witnesses in late January 2026. Jalkut

11   Decl. ¶ 16-18. Best Buy's document productions contain hundreds of documents related to Best

12   Buy's marketplace and Best Buy agreed that the parties may pursue over a dozen lines of inquiry

13   into Best Buy's marketplace. *See* ¶17; Ex. B; *see also, e.g.,* Exs. 10-12.

14       **2.  Best Buy's Document Productions**

15       The FTC's subpoenas contained forty-six (46) separate requests, many of which relate to

16   Best Buy's marketplace. *See* Ex. D. Request Nos. 4, 14, 15, 16, 17, 18, 19, 20, 22, 27, 32, 33, 37,

17   38, 39, 41, and 43. On May 10, 2024, Best Buy served Responses and Objections to the FTC's

18   Subpoena to Produce Documents. *See* Ex. 13. Best Buy objected to all of the marketplace requests

19   on the basis that the requests were not relevant and required Best Buy to disclose "confidential,

20   highly confidential, proprietary, or otherwise competitively sensitive information, that will

21   ultimately be disclosed to one of Best Buy's competitors." *See* Ex. 13, Responses to Request Nos.

22   4, 14, 15, 16, 17, 18, 19, 20, 22, 27, 32, 33, 37, 38, 39, 41, and 43. For most of the relevant time

23   period, Best Buy did not operate a marketplace, although throughout the period it both competed

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 8
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

against Amazon in certain product categories and partnered with Amazon to sell certain products on Amazon and at Best Buy. *Id*. ¶ 23.

After Best Buy publicly announced in late 2024 that it would launch a third-party marketplace, the FTC informed Best Buy on January 14, 2025, that it sought Best Buy's "high-level strategy or planning documents relating to Best Buy's plan to launch a third-party US marketplace this year." Jalkut Decl. ¶ 24; Ex. E. Thereafter, the FTC and Best Buy negotiated appropriate search terms and custodians. Jalkut Decl. ¶ 25. Upon review of the captured documents, Best Buy informed the FTC that it could not produce a narrow subset of documents that contained particularly-sensitive confidential commercial information. *Id.* ¶ 26-27. Best Buy worked diligently to reach agreement with the parties about withholding this small subset of marketplace-related documents, proposing guidance on the documents it planned to withhold and setting forth a deposition protocol that would ensure a smooth process. *See* Ex. A. Additionally, Best Buy's counsel met and conferred with the FTC four times regarding Best Buy's concerns. Jalkut Decl. ¶¶ 27-30; Mendelsohn Decl. ¶ 2. Indeed, in a further attempt to reach a compromise, Best Buy scheduled a call between the parties and Best Buy's Vice President Associate General Counsel in which he explained Best Buy's concerns and articulated the line that differentiated confidential documents it had produced and the extraordinarily-sensitive documents and testimony it would not. Jalkut Decl. ¶ 31; Mendelsohn Decl. ¶ 3-4. Following that call, Best Buy sent a letter specifying it would not object to over a dozen categories of questions related to its marketplace, including questions about highly relevant marketplace-related documents it had produced and that it was only withholding and resisting questions related to the four narrow categories of marketplace discovery. Mendelsohn Decl. ¶ 6, Ex. B.

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 9
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

During the course of the negotiations, Best Buy produced almost all documents sought by the FTC. In all, Best Buy produced over 2,000 documents. *See* Jalkut Decl. ¶¶ 16-17. The documents spanned the past ten years and include vendor contracts, communications with vendors relating to product pricing, and explanations of Best Buy's pricing analysis and tools. *Id*. ¶ 16; *see, e.g.,* Ex. 14 (2018 analysis comparing Best Buy and Amazon's delivery services); Ex. 15 (email discussing vendor concerns about pricing on BestBuy.com compared to Amazon.com); Ex. 16 (explanation of Best Buy's pricing tool which incorporates prices seen on Amazon.com). In addition, Best Buy produced millions of entries of purchase data and quarterly sales data from 2017 through 2024. *Id.* ¶ 18. Crucially, on September 26, 2025, Best Buy produced 1,716 documents captured by search terms proposed by the FTC, which included 497 documents related to the very online marketplace services at issue in this motion. *Id.* ¶ 17. The documents include a May 2024 overview (but not the raw data) of consumers understanding of the term "marketplace" and expectations of what an online marketplace offers (Ex. 10); a 2024 presentation prepared by Bain & Co. analyzing the U.S. online marketplace services provided by Amazon and its competitors (Ex. 11), and a 2021 overview of the types of online marketplaces offered by Amazon and its competitors and considerations for entering the online marketplace services market. Ex. 12.

### 3. Confidentiality of Documents Withheld

The four narrow categories of marketplace discovery that Best Buy seeks to protect are highly confidential commercial information—even more than the confidentially-sensitive material Best Buy has already produced. As described by Frank Bedo, Best Buy's Chief Marketplace and eCommerce Officer, these four narrow categories are interrelated and necessary components of Best Buy's strategic business planning in a highly competitive retail industry. Bedo Decl. ¶ 7-8. Best Buy maintains the confidentiality of its **future** plans and strategies related to its marketplace

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 10
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   to ensure that competitors do not undercut those plans. *Id.* ¶ 9. Moreover, disclosure of future plans

2   and strategies could negatively impact supplier negotiations and expectations of Best Buy's

3   customers and shareholders.[3] *Id.* ¶ 11. Best Buy uses customers surveys to develop and sharpen

4   these business plans. *Id.* ¶ 12. Likewise, Best Buy relies upon competitive analysis and predictions

5   regarding competitors' reactions in its business planning around its online marketplace services.

6   *Id.* ¶ 18. While Best Buy is working to implement many plans and strategies, it has paused or

7   deprioritized other ideas. But Best Buy may use unimplemented plans and strategies in the future

8   depending on changes in market conditions. *Id.* ¶ 17. Confidentiality of all these categories is

9   necessary to ensure that Best Buy can compete in the online marketplace services market. *Id.* ¶ 21.

10   **II.**   **ISSUE # 1: DISCOVERY OF BEST BUY MARKETPLACE MATERIALS**

11       **A.**     **Plaintiffs' Position**

12        When relevant materials contain confidential commercial information and a party

13   demonstrates a substantial need for that information, courts "balance the harm from disclosing the

14   information, the requesting party's need for the information, and the effectiveness of possible

15   safeguards for the information" in deciding whether to order production. *HP Tuners, LLC v. Sykes-*

16   *Bonnett*, 2018 U.S. Dist. LEXIS 233924, at *6 (W.D. Wash. Dec. 6, 2018) (quoting *In re eBay*

17   *Seller Antitrust Litig.*, 2009 U.S. Dist. LEXIS 146473, at *13 (W.D. Wash. Aug. 14, 2009)). Here,

18   that balancing test squarely weighs in favor of production. Best Buy's marketplace materials are

19   highly relevant and cannot be obtained from any other source. While Plaintiffs do not dispute that

20

---

21   [3] Like any public company, Best Buy has a Securities Trading Policy that prohibits certain

22   employees from disclosing material nonpublic information to Best Buy employees who do not require the information and anyone outside of Best Buy unless pursuant to Best Buy's

23   Confidentiality Policy. *See* Best Buy Co., Inc., Form 10-K for Fiscal Year Ended 02/01/2025 Exhibit 19, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0000764478/5e7e7995-

24   8c9b-4cb5-9333-e46a32319031.pdf.

LCR 37 JOINT SUBMISSION TO COMPEL         **FEDERAL TRADE COMMISSION**
DOCUMENTS AND TESTIMONY             600 Pennsylvania Avenue, NW
RELATED TO BEST BUY'S MARKETPLACE - 11       Washington, DC 20580
CASE NO. 2:23-cv-01495-JHC                   (202) 326-2222

1   they contain confidential commercial information, any risk of harm to Best Buy should be

2   addressed by the Protective Order entered by the Court and the additional protections Best Buy

3   negotiated and agreed to with Amazon. Accordingly, the Court should grant Plaintiffs' motion.

4         *First,* and as discussed above, Best Buy's marketplace materials are highly probative with

5   respect to numerous issues in this case, including:

6         1.     The existence of an Online Marketplace Services market, including the barriers to

7               launching and expanding an online third-party marketplace and differences

8               between marketplaces and traditional first-party retail;

9         2.     The importance of a marketplace to offering broad and deep product selection, and

10              the impact that can have for online stores and online superstores operating

11              marketplaces; and

12         3.     The impact of Amazon's pricing conduct on market participants, including how

13              Amazon's challenged conduct may affect the prices sellers offer on non-Amazon

14              online marketplaces and the selection of products they offer on those marketplaces.

15         There is no reasonable dispute that Best Buy's marketplace materials are "likely to produce

16   relevant evidence in response to the subpoena." *See HP Tuners*, 2018 U.S. Dist. LEXIS 233924,

17   at *4. It is self-evident that documents and testimony about a third-party's online marketplace's

18   strategy and forward-looking plans are relevant in a case involving a monopoly in the Online

19   Marketplace Services market. Courts routinely order the production of sensitive confidential third-

20   party materials that are relevant. *See, e.g.*, *FTC v. Deere & Co.*, 2025 U.S. Dist. LEXIS 153607,

21   at *17 n.11 (N.D. Ill. Aug. 8, 2025) ("Similarly, apparently, it's common practice for parties in

22   large antitrust cases to subpoena and receive detailed transactional data from third parties to better

23   inform their experts' economic analyses."). Best Buy "questions the relevance of information from

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 12
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   recent years, not to mention future plans, when Amazon's conduct at issue began long before that

2   period." Ex. A at 1. However, Plaintiffs allege that Amazon's challenged conduct is ongoing. SAC

3   ¶¶ 449, 455. Best Buy's recent materials are thus directly relevant and probative regarding the

4   ongoing impact of Amazon's unlawful conduct—particularly regarding the impact of Amazon's

5   conduct on attempts to enter the market for Online Marketplace Services. Best Buy's marketplace

6   materials likely also contain relevant information about barriers to entry and Amazon's dominant

7   position in that market.

8          Additionally, Best Buy's materials are likely relevant to Plaintiffs' allegations regarding

9   the Online Superstore Market. Best Buy has publicly identified its marketplace as a new way it

10  can offer "items sold by third-party sellers, all in one seamless experience, . . . bringing more

11  variety, more brands, and more discoveries to BestBuy.com than" its retail only offerings. Ex. H

12  (Best Buy, *Welcome to the Best Buy Marketplace: a Q&A with Frank Bedo* (Aug. 19, 2025),

13  https://corporate.bestbuy.com/2025/marketplace-qa/). Best Buy explained that a marketplace is a

14  unique way for it to "offer a much wider range of products, from hard-to-find accessories to niche

15  electronics and lifestyle brands" and that its marketplace should enable it to "introduce[] entirely

16  new categories like seasonal items and licensed sporting goods." *Id*. Any materials discussing Best

17  Buy's marketplace as a means to expand Best Buy's category offerings may be relevant to barriers

18  to entry in the Online Superstore Market and Amazon's dominant position in that market, among

19  other issues. *See* SAC ¶ 213 ("Online superstores that operate marketplaces can increase their

20  breadth and depth of product selection by offering products sold by third-party sellers.").

21         *Second*, Plaintiffs have a substantial need for the marketplace materials. Best Buy's internal

22  analyses of its *own* recently launched marketplace are not available outside of its internal

23  documents and the testimony of its executives. *See HP Tuners*, 2018 U.S. Dist. LEXIS 233924, at

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 13
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  *8 ("[P]laintiff has shown need—plaintiff has shown that the subpoena seeks relevant information

2  that plaintiff has been unable to obtain through other discovery methods.").

3      *Third*, there are sufficient safeguards for the marketplace materials. Best Buy's principal

4  objection is that it is "highly sensitive to having such prospective competitive plans subjected to

5  unfettered questions that one of its biggest direct competitors will be privy to—even if limited to

6  outside counsel." Ex. A at 1. While it is understandable that Best Buy would fear an incumbent

7  monopolist obtaining its internal strategy documents, this is not a valid basis to withhold discovery

8  into highly probative and unique materials.

9      This Court issued a Protective Order to protect confidential information in this case,

10  including third-party confidential information. Dkt. #160; *see also Gradillas Court Reporters, Inc.*

11  *v. Cherry Bekaert, LLP*, 2018 U.S. Dist. LEXIS 81062, at *22 (N.D. Cal. May 14, 2018) ("[The

12  Northern District of California's Model Protective Order] . . . was designed with precisely the

13  instant scenario in mind, to reduce the risk of exposing confidential information in ways that would

14  harm the producing party."). The Protective Order provides that "current or forward-looking

15  internal business strategy documents concerning direct competition with a Party" can be

16  designated as Highly Confidential—Attorneys' Eyes Only. Dkt. #160 at ¶ 4.2. The parties do not

17  dispute that Best Buy's marketplace materials qualify for protection under this provision. In

18  addition to the protections set out in the Protective Order, Best Buy secured *additional* protections

19  for its commercially sensitive information through a side agreement with Amazon. Plaintiffs

20  understand that sensitive confidential materials designated by Best Buy will be restricted to

21  Amazon's outside counsel only. Ex. C (Oct. 3, 2025 Email from E. Dowd to E. Zepp).

22      In significant antitrust cases such as this—whose outcome will impact large swaths of the

23  U.S. population and *billions* of dollars in commerce—third parties routinely produce materials to

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 14
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

their competitors subject to a protective order. And courts, including this Court, have consistently required the production of third parties' confidential, sensitive materials where, as here, a protective order is in place to protect commercially sensitive information. Nonparty businesses objecting on the grounds of commercial sensitivity "already have an effective safeguard: the parties must proceed as the protective order and addendum to the protective order instruct." *HP Tuners*, 2018 U.S. Dist. LEXIS 233924, at *8; *see also Phillips v. Lycamobile USA, Inc.*, 2025 U.S. Dist. LEXIS 145107, at *6-7 (E.D. Wash. July 18, 2025) ("[O]f course, this Court already ordered that any information regarding sensitive business matters is protected by the protective order and thus is not exempt from disclosure."); *Oracle Am., Inc. v. Google Inc.*, 2016 U.S. Dist. LEXIS 20563, at *11 (N.D. Cal. Feb. 19, 2016) ("[The third party's] concerns about the disclosure of its confidential information are addressed by the fact that [Defendant] has designated the document as 'Highly Confidential—Attorneys' Eyes Only' under the existing Protective Order."); *Pride Truck Sales, L.P. v. JMR Grp., LLC*, 2023 U.S. Dist. LEXIS 240701, at *4 (D. Or. Dec. 28, 2023) ("[T]he stipulated protective order will adequately protect the confidentiality of the requested records."); *FTC v. Deere & Co.*, 2025 U.S. Dist. LEXIS 153607, at *30-31 ("The existing protections of the Confidentiality Order in conjunction with the additional requirements the Court has added provide the Court with confidence that inadvertent disclosure is not reasonably likely to occur. And the possibility of inadvertent disclosure doesn't require barring access to confidential information when a protective order reasonably addresses that possibility." (internal citations omitted)).

*Finally*, Best Buy's proposal to limit deposition questioning regarding commercially sensitive topics about its marketplace business would be burdensome to implement and prejudicial to Plaintiffs. Best Buy has essentially proposed to treat the marketplace materials as if they were

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 15
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

privileged. Ex. A at 1 ("[W]e believe it would be helpful to think of these lines as the lines between privileged and unprivileged communications."). While Best Buy would allow some deposition questioning about its marketplace, it reserved the right to "interrupt and instruct witnesses to stop answering or direct the witness not to answer where the answer strays beyond [Best Buy's] guidance," and to "confer with a witness to ensure compliance with the guidance, even if a question is pending." Ex. A at 4. This approach would mean frequent stoppages, including any time a witness was not sure if the answer to the question was too "commercially sensitive." It would result in an incomplete and potentially misleading record. And it would likely lead to disputes *after* the deposition about the propriety of any instructions not to answer.

In sum, the marketplace materials sought are highly probative and cannot be obtained except from Best Buy. While they contain confidential commercial information, Best Buy has not identified any cognizable, specific risk of improper disclosure or any risk that the existing Court-ordered Protective Order and Best Buy's additional side agreement with Amazon would not sufficiently protect its commercially sensitive information—commercial information that is routinely produced in major antitrust litigations such as this. Therefore, the Court should grant Plaintiffs' request that Best Buy produce the withheld marketplace materials and be required to answer all Plaintiffs' questions that elicit non-privileged information about its online third-party marketplace business.

## B.    Best Buy's Position

This Court should modify the subpoenas to protect Best Buy's confidential commercial information under Rule 45 and Ninth Circuit caselaw. Rule 45(c) requires the party issuing a subpoena to take "reasonable steps to avoid imposing undue burden or expense" on the person subject to the subpoena. Fed. R. Civ. P. 45(d)(1); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 16
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

F.3d 774, 779 (9th Cir. 1994). Where a subpoena seeks disclosure of "a trade secret or other confidential research, development, or commercial information" the Court may issue an order quashing or modifying the subpoena (Fed. R. Civ. P. 45(d)(3)(B)(i)) or specify conditions for appearance or production if the serving party "shows a substantial need for the testimony or material" and "ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i), (iii); *Greenberg v. Amazon.com, Inc.* Case No. 2:21-cv-00898-RSL, ECF 178 at 3, (W.D. Wash. July 18, 2025) (a court determining the appropriateness of a subpoena "must balance the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena") (citation omitted). With respect to non-party discovery, greater restrictions are permitted. *See, e.g.*, *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery."); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982) (noting courts afford special protections to nonparties because they "are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation.").

Plaintiffs have not satisfied their obligations under Rules 26 or 45. There is no dispute that the information sought is confidential commercial information and disclosure could be harmful. Thus, it is Plaintiffs' burden to demonstrate that the information Best Buy seeks to protect is "relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Edwards v. California Dairies, Inc.,* No. 1:14-MC-00007-SAB, 2014 WL 2465934, at *4 (E.D. Cal. June 2, 2014) (quoting *Nat'l Academy of Recording Arts & Sciences, Inc.,* 256 F.R.D. 678, 681 (C.D. Cal. 2009); *FTC v. Deere & Co.*, 2025 U.S. Dist. LEXIS 153607, at *19; 2025 WL 2299596, at *5

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 17
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   (N.D. Ill. Aug. 8, 2025) (recognizing "the burden shifts to the serving party to establish that the

2   information is sufficiently relevant and necessary so as to outweigh the harm the disclosure would

3   cause").

4          In their argument, Plaintiffs fail to differentiate between the sliver of documents and

5   testimony Best Buy seeks to protect and the universe of Best Buy's marketplace-related documents

6   Best Buy has already produced or testimony it has agreed can be taken. Plaintiffs argue Best Buy's

7   marketplace documents in general are probative of three specific areas of their case: (1) the

8   existence of the Online Marketplace Services market and barriers to entry; (2) the importance of

9   broad and deep product selection; and (3) the impact of Amazon's conduct on competition in the

10  marketplace. Plaintiffs do not explain why the hundreds of documents that Best Buy has already

11  produced and the testimony it has already agreed to allow do not address these areas of their case.

12  Indeed, Plaintiffs quote and cite a publicly-available Q&A with Best Buy's Frank Bedo and Best

13  Buy has already agreed to allow testimony into those public statements. *See* Plaintiffs' Argument,

14  *supra* at 13; Ex. H.

15         Additionally, Plaintiffs do not explain the relationship between the four narrow categories

16  that Best Buy seeks to protect and these three specific areas of their case. Instead, Plaintiffs state

17  that it is "self-evident that documents and testimony about a third-party's online marketplace's

18  strategy and forward-looking plans are relevant." Plaintiffs' Position, *supra* at 12.  There is nothing

19  self-evident about the relevance between a purported monopolist's historic and current conduct

20  and a non-party's future strategy and forward plans, many of which are speculative and will never

21  come to pass. And Plaintiffs speculation that "Best Buy's marketplace materials likely also contain

22  relevant information about barriers to entry" (Plaintiffs Position, *supra* at 13) makes little sense

23  when Best Buy did enter the market. The cases Plaintiffs rely upon are highly distinguishable and

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 18
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

do not save the lack of explanation of the relevance here. *See HP Tuners*, 2018 U.S. Dist. LEXIS

233924, at *3-4; 2018 WL 10398217, at *1 (denying defendants' motion to quash subpoena that

sought *defendant's* confidential information previously discussed during depositions—not a third

party's information); *FTC v. Deere & Co.*, 2025 U.S. Dist. LEXIS 153607, at *20; 2025 WL

2299596, at *5 (declining to use the Rule 45 balancing test for confidential information when the

nonparties had already produced the documents to the FTC and reasoning "[t]he cat's out of the

bag.").

Moreover, Plaintiffs do not demonstrate proportionality in demanding a non-party's most

highly confidential commercial information when they have access to public information and

hundreds of Best Buy's already-produced confidential documents. As detailed above, Best Buy

already produced thousands of documents, including hundreds related to online marketplace

services and is willing to allow inquiry into over a dozen marketplace-related topics at the

depositions. Best Buy only seeks to withhold, consistent with its numerous objections, documents

and testimony that fall into the four narrow categories detailed in its October 2025 letter.

Plaintiffs have also failed to show that it has a substantial need for the withheld documents.

"Whether the information sought is necessary to the case is satisfied where the party's claim or

defense **virtually rises or falls** with the admission or exclusion of the proffered evidence."

*Edwards v. California Dairies, Inc.*, 2014 WL 2465934, at *5 (quoting *In re National Gas

Commodities Litigation*, 235 F.R.D. 241, 244 (S.D.N.Y. 2006)) (emphasis added) (internal

quotation marks omitted); *see also Little Bay Lobster, LLC v. Rhys*, No. 1:20-cv-00246-DBH, 2021

WL 768217, at *5 (D. Maine Feb. 25, 2021) (quoting 8A *FPP* § 2043, at 248) (holding that to

show "substantial need," the requesting party must "establish that the information is sufficiently

relevant and necessary to [its] case to outweigh the harm disclosure would cause to the person

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 19
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   from whom [it] is seeking the information."). "The determination of substantial need is especially

2   important in the context of enforcing a subpoena where confidential information is sought from a

3   non-party." *Edwards*, 2014 WL 2465934, at *5 (citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674,

4   685 (N.D. Cal. 2006)). Plaintiffs claim to have a "substantial need" for the "Best Buy's internal

5   analyses of its *own* recently launched marketplace" simply because the documents "are not

6   available outside of its internal documents and the testimony of its executives." Plaintiffs' Position*,*

7   *supra* at 13. In other words, Plaintiffs have a substantial need for Best Buy's most confidential

8   commercial information because Best Buy is the only source of its most confidential commercial

9   information. Such cyclical reasoning falls woefully short of showing that Plaintiffs' claim

10  "virtually rises or falls with the admission or exclusion of the proffered evidence." *See Edwards*,

11  2014 WL 2465934, at *5 (citation omitted). Plaintiffs do not explain at all the substantial need for

12  the four categories of information Best Buy seeks to protect. Moreover, Plaintiffs cite publicly

13  available information about Best Buy's marketplace in support of the instant motion, information

14  that Best Buy agrees Plaintiffs may probe in a deposition. The citation itself demonstrates that

15  there is no need for Best Buy's confidential commercial information. *See, e.g., Greenberg v.*

16  *Amazon.com, Inc.,* Case No. 2:21-cv-00898-RSL, ECF 178 at 5-6,  (W.D. Wash. July 19, 2025)

17  (refusing to force a non-party competitor to disclose highly confidential data when it will merely

18  provide additional support to evidence the party already has).

19         Plaintiffs' argument regarding "sufficient safeguards" is similarly unavailing. As an initial

20  matter, "the fact that a protective order is in place in the underlying action does not resolve the

21  issue of whether the non-party is required to produce information that is claimed to be confidential

22  commercial information." *Edwards*,   2014 WL 2465934, at *4; *compare Greenberg v.*

23  *Amazon.com, Inc.* Case No. 2:21-cv-00898-RSL, ECF 178 at 5-6 (granting a motion to quash for

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 20
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

unnecessary confidential information despite the existence of a protective order) *with Greenberg v. Amazon.com, Inc.* Case No. 2:21-cv-00898-RSL, ECF 42 (W.D. Wash. Jan. 23, 2023). Nonetheless, Plaintiffs rely on the existence of the Protective Order, arguing that Best Buy's marketplace materials qualify for protection under the Order and Best Buy is further protected by its agreement with Amazon that confidential materials designated by Best Buy will be restricted to Amazon's outside counsel only. But other courts have recognized that disclosure of a non-party's confidential commercial information to even just the outside-counsel of a competitor is not appropriate, and the existence of a protective order is insufficient. *See Waymo LLC v. Uber Technologies, Inc.*, Case No. 17-cv-00939-WHA(JSC), 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017) (highlighting that harms of compliance with a subpoena that required document production by a nonparty to its direct competitor operating in the same industry were not mitigated by a protective order that limited disclosure to outside counsel only). Similarly, the District Court of Kansas stated:

> Finally, the Court concludes that even if Mylan had shown a need for these documents, the potential harm to kaléo would outweigh Mylan's need. The Court finds that kaléo would indeed be harmed by the disclosure of these documents to its only competitor in the EAI market. The requested documents contain information material and critical to kaléo's business. Disclosing the documents to Mylan would create a competitive disadvantage and potentially devastate the company. While the Court is well aware of the strength of the protective order in this case, and without casting aspersions on the good faith of any party's adherence to its terms, the Court does not find the protective order provides adequate protection to kaléo.

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, MDL No. 2785, 2018 WL 3818914, at *5 (D. Kan. Aug. 10, 2018).

Here, the Protective Order is inadequate to prevent disclosure of Best Buy's most confidential commercial information. Requiring Best Buy to produce documents and testify regarding the four narrow categories risks disclosure to Amazon, one of its primary competitors,

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 21
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1   as well as other competitors, suppliers, or customers. While dissemination of this information to

2   any of these groups hinders Best Buy's ability to compete in Online Marketplace Services market,

3   the risk of disclosure to Amazon is particularly high and consequential. Even more, limiting access

4   to the documents to attorneys-eyes only does not cure the risk of disclosure. The documents Best

5   Buy produces will be disclosed to at least three (3) attorneys representing the FTC, nineteen (19)

6   State Attorney Generals listed on the instant brief, and the thirty-eight (38) attorneys representing

7   Amazon who have appeared in the instant matter. The support staff and experts in these matters

8   will likewise have access. On top of this, there are four other cases that have subpoenaed the

9   documents, noticed depositions, and plan to attend Best Buy's depositions. Attorneys for two other

10  cases have also reached out about reproduction of the documents and attendance at the deposition

11  (Jalkut Decl. ¶¶ 7-8) and Amazon notified Best Buy that the Attorney General of the District of

12  Columbia plans to attend Best Buy's depositions. *Id.*¶ 9. Even an attorneys-eyes-only rule

13  potentially allows access to hundreds of people across at least eight cases.

14      Finally, Best Buy's proposal regarding treatment of marketplace discovery at the

15  depositions is the most straightforward means of ensuring a smooth deposition process without

16  abusing judicial resources. The marketplace topic is merely one of dozens of topics of interest

17  identified by the parties. *See* Exs. F, 6-9. Best Buy has agreed to over a dozen lines of inquiry into

18  its marketplace. *See* Ex. B. For those few questions that seek disclosure of information in the four

19  categories Best Buy identified as its most confidential commercial information, Best Buy simply

20  requests permission to use a protocol similar to when privilege is at issue—allowing the witnesses

21  to confer with counsel while the question is pending to navigate the proper line of disclosure and

22  to instruct the witness not to answer if the questioning attorney insists on demanding information

23

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 22
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1    beyond that line. As there will be attorneys present from eight different cases, such a procedure is

2    necessary.

3        The information Best Buy seeks to protect and that Plaintiffs demand is not available to

4    **anyone** other than a very narrow group at Best Buy because of its competitively-sensitive nature.

5    Bedo Decl. ¶¶ 10, 13, 16, 19. Best Buy understands that the parties will have the best intentions in

6    maintaining the confidentiality of Best Buy's most closely guarded confidential business plans.

7    Nonetheless, inadvertent disclosures of information are not unprecedented and such a risk is

8    exacerbated here due to the number of matters, parties, and individuals who will have access to

9    this information in eight different matters. *See* Jalkut Decl. ¶¶ 7-14. And **any** disclosure could

10   result in irreparable harm, including an inability for Best Buy to compete in the very market that

11   the FTC and involved-states are attempting to safeguard.

12       For these reasons, the Court should deny Plaintiffs' motion to compel and modify the

13   subpoenas to allow Best Buy to withhold documents and testimony related to (1) Future plans,

14   aspirations, or intent for the growth and development of the Best Buy marketplace; (2) Raw data

15   from customer surveys since January 1, 2023; (3) Marketplace strategies that were developed after

16   January 1, 2023, but not yet implemented; and (4) Predictions regarding competitor reactions to

17   its marketplace plans.

18       C.    **Plaintiffs' Reply**

19       Best Buy's argument that Plaintiffs must show that their "claim or defense virtually rises

20   or falls" on the disputed evidence, *supra* at 19, is not the law. Best Buy relies on a legal standard

21   concerning the reporters' privilege. *See In re Nat. Gas Commodities Litig.*, 235 F.R.D. 241, 244

22   (S.D.N.Y. 2006). That standard was dicta in *Edwards*, because the court employed the "substantial

23   need" test applicable here. 2014 WL 2465934, at *5-6.

24

Plaintiffs have demonstrated a substantial need for the disputed marketplace materials and satisfied the applicable balancing test. *Supra* at 11-13. Best Buy's production of *other* marketplace documents does not undercut Plaintiffs' need for highly relevant documents concerning Best Buy's forward-looking plans and predictions about competitor reactions. *Supra* at 12-14. That need outweighs the speculative harm associated with an inadvertent disclosure of protected information by outside counsel and government lawyers, especially where Best Buy has not "put forth concrete evidence suggesting that [any] individual might use [its] information improperly." *United States v. Aetna Inc.*, 2016 WL 8738421, at *4 (D.D.C. Sept. 14, 2016).

## III.    ISSUE # 2: OUT-OF-TIME DISCOVERY

### A.    Plaintiffs' Position

Depending on when the Court is able to rule on this motion and when fact discovery closes in any updated scheduling order in this case, Plaintiffs and Amazon may need to depose the head of Best Buy's marketplace business after the deadline for fact discovery. To avoid any unnecessary follow-on disputes about the timing of that deposition, Plaintiffs respectfully request that the Court order Best Buy to produce the disputed marketplace materials within 7 days of the entry of an order on this motion and make the head of its marketplace business available for a deposition on a mutually agreeable date no more than 21 days later than the completion of Best Buy's production, even if those dates fall outside of the scheduled close of fact discovery.

### B.    Best Buy's Position

Should the Court grant the instant motion, Best Buy does not object to the out-of-time discovery schedule proposed by Plaintiffs.

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 24
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1

Dated: December 12, 2025          Respectfully submitted,

2

                                  *s/ Nathan A. Mendelsohn*
3                                 EDWARD H. TAKASHIMA (DC Bar # 1001641)
                                  NATHAN A. MENDELSOHN (MD Bar # 1712140047)
4                                 ERIC ZEPP (NY Reg. # 5538491)
                                  Federal Trade Commission
5                                 600 Pennsylvania Avenue, NW
                                  Washington, DC 20580
6                                 Tel.:    (202) 326-2464 (Takashima)
                                  Email: etakashima@ftc.gov
7                                          nmendelsohn@ftc.gov
                                           ezepp@ftc.gov
8
                                  *Attorneys for Plaintiff Federal Trade Commission*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 25
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1 _s/ Michael Jo_____
Michael Jo (admitted *pro hac vice*)
2 Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney
3 General
28 Liberty Street
4 New York, NY 10005
Telephone: (212) 416-6537
5 Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

6

_s/ Victoria Field_____
7 Victoria Field (admitted *pro hac vice*)
Assistant Attorney General
8 Office of the Attorney General of Connecticut
165 Capitol Avenue
9 Hartford, CT 06016
Telephone: (860) 808-5030
10 Email: Victoria.Field@ct.gov
*Counsel for Plaintiff State of Connecticut*

11

_s/ Alexandra C. Sosnowski_____
12 Alexandra C. Sosnowski (admitted *pro hac vice*)
13 Assistant Attorney General
Consumer Protection and Antitrust Bureau
14 New Hampshire Department of Justice
Office of the Attorney General
15 One Granite Place South
Concord, NH 03301
16 Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
17 *Counsel for Plaintiff State of New Hampshire*

18 _s/ Cameron Capps_____
Cameron Capps (admitted *pro hac vice*)
19 Deputy Attorney General, Consumer
Protection
20 Office of the Oklahoma Attorney General
313 N.E. 21st Street
21 Oklahoma City, OK 73105
Telephone: (405) 522-0858
22 Email: Cameron.Capps@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

23

24

_s/ Timothy D. Smith_____
Timothy D. Smith, WSBA No. 44583
Attorney-in-Charge
Antitrust and False Claims & Privacy Section
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us
*Counsel for Plaintiff State of Oregon*

_s/ Jennifer A. Thomson_____
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

_s/ Michael A. Undorf_____
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

_s/ Christina M. Moylan_____
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

s/ Schonette Walker
Schonette Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6473
Email: swalker@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: katherine.krems@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

s/ Scott A. Mertens
Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*

s/ Zach Biesanz
Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

s/ Andrew Esoldi
Andrew Esoldi (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-7819
Email: andrew.esoldi@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

s/ Billy Jimenez
Billy Jimenez (admitted *pro hac vice*)
Deputy Attorney General, Civil Affairs
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 527-2694
Email: bjimenez@nmag.gov
*Counsel for Plaintiff State of New Mexico*

s/ Zulma Carrasquillo Almena
Zulma Carrasquillo Almena (admitted *pro hac vice*)
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900, Ext. 1211
Email: zcarrasquillo@justicia.pr.gov
*Counsel for Plaintiff Commonwealth of Puerto Rico*

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 27
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1
*s/ Stephen N. Provazza*
Stephen N. Provazza (admitted *pro hac vice*)

2
Special Assistant Attorney General
Chief, Consumer and Economic Justice Unit

3
Department of the Attorney General
150 South Main Street

4
Providence, RI 02903
Telephone: (401) 274-4400

5
Email: sprovazza@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

6

*s/ Sarah L. J. Aceves*

7
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General

8
Public Protection Division
Vermont Attorney General's Office

9
109 State Street
Montpelier, VT 05609

10
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov

11
*Counsel for Plaintiff State of Vermont*

12
*s/ Caitlin M. Madden*
Caitlin M. Madden (admitted *pro hac vice*)

13
Assistant Attorney General
Wisconsin Department of Justice

14
Post Office Box 7857
Madison, WI 53707-7857

15
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov

16
*Counsel for Plaintiff State of Wisconsin*

17

18

19

20

21

22

23

24

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 28
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

1  */s/ Anne M. Lockner*
Anne M. Lockner (*pro hac vice*)
2  ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
3  Minneapolis, MN 55402
Telephone: 612-349-8500
4  Facsimile: 612-339-4181
ALockner@RobinsKaplan.com
5

6  Ellen G. Jalkut (*pro hac vice*)
ROBINS KAPLAN LLP
7  1325 Avenue of the Americas
New York, NY 10019
8  Telephone: 212-980-7422
ejalkut@robinskaplan.com
9

10  */s/ Brian W. Esler*
Brian W. Esler WSBA No. 22168
11  Donald B. Scaramastra WSBA# 21416
Edward Decker, WSBA No. 57841
12  Nicholas Hesterberg, WSBA# 41970
MILLER NASH LLP
13  605 5th Ave S, Ste 900
Seattle, WA 98104
14  Telephone: 206-624-8300
Facsimile: 206-340-9599
15  brian.esler@millernash.com
don.scaramastra@millernash.com
16  edward.decker@millernash.com
nick.hesterberg@millernash.com
17
*Attorneys for Best Buy Co., Inc.*
18

19

20

21

22

23

24
LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 29
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**CERTIFICATION**

I certify that the full response by the responding party has been included in this submission, and that prior to making this submission the parties conferred to attempt to resolve this dispute in accordance with LCR 37(a). I further certify that Plaintiffs' total text in this submission contains 3434 words, and that Plaintiffs' reply is 175 words or fewer with respect to each issue in dispute, in compliance with the Local Civil Rules.


DATED:  December 12, 2025

*s/ Nathan A. Mendelsohn*
Nathan A. Mendelsohn


**CERTIFICATION**

I certify that Best Buy's total text in this submission contains 4,169 words, in compliance with the Local Civil Rules.

DATED: December 8, 2025

*s/ Ellen Jalkut*
Ellen Jalkut

LCR 37 JOINT SUBMISSION TO COMPEL
DOCUMENTS AND TESTIMONY
RELATED TO BEST BUY'S MARKETPLACE - 30
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222