THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, et al.,

                 Plaintiffs,

   v.

AMAZON.COM, INC., a corporation,

                 Defendant.

Case No. 2:23-cv-01495-JHC

**DEFENDANT AMAZON.COM, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

**REDACTED**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................2

I.      Amazon Extensively Preserved Documents as Plaintiffs Gradually Identified
        Their Theories. ....................................................................................................2

II.     Rough Draft Notes ..............................................................................................4

        A.      Amazon employees had varied note-taking practices. ............................4

        B.      Amazon took reasonable steps to preserve meeting notes. .....................4

III.    Signal Messages ..................................................................................................6

        A.      Certain executives used Signal to a limited extent following a hacking
                incident. ..................................................................................................6

        B.      Amazon took reasonable steps to preserve Signal messages. .................7

        C.      Amazon provided Plaintiffs comprehensive information about Signal. ..................8

ARGUMENT ..................................................................................................................8

I.      Sanctions Cannot Be Imposed Without Particularized, Demanding Findings. ..................8

II.     Rough Draft Notes ............................................................................................10

        A.      Amazon took reasonable steps to preserve meeting notes. ...................10

        B.      Plaintiffs identify only three meetings for which rough draft notes are
                unavailable. ...........................................................................................11

        C.      Plaintiffs were not prejudiced by the unavailability of any meeting notes. ...........12

        D.      No meeting notes were discarded with intent to deprive Plaintiffs of their
                use in litigation. ....................................................................................14

III.    Signal Messages ................................................................................................15

        A.      Amazon took reasonable steps to preserve Signal messages. ...............15

        B.      Plaintiffs have not been prejudiced by the unavailability of any Signal
                messages. ...............................................................................................16

        C.      No Signal messages were discarded with intent to deprive Plaintiffs of
                their use in litigation. ...........................................................................18

IV.     There Is No Basis for the Sweeping Sanctions Plaintiffs Request. ....................19

CONCLUSION .............................................................................................................20

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - i
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*AliveCor, Inc. v. Apple Inc.*,
163 F.4th 1259 (9th Cir. 2026) ........................................................................12

*Armstrong v. Holmes*,
2024 WL 1345214 (D. Nev. Mar. 29, 2024) ....................................................14

*Carty v. Steem Monsters Corp.*,
2022 WL 17083645 (E.D. Pa. Nov. 18, 2022) ..................................................16

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)...................................................16

*Est. of Arroyo v. Cnty. of San Diego*,
2025 WL 1914399 (S.D. Cal. Apr. 14, 2025)....................................................10

*Fast v. GoDaddy.com LLC*,
340 F.R.D. 326 (D. Ariz. 2022) .......................................................................10

*Feindt v. United States*,
2023 WL 8650190 (D. Haw. Dec. 14, 2023)......................................................14

*FTC v. Noland*,
2021 WL 3857413 (D. Ariz. Aug. 30, 2021)...............................................10, 16

*Gault v. United States*,
2022 WL 4292340 (C.D. Cal. Aug. 23, 2022)...................................................8, 9

*Gerlich v. U.S. Dep't of Just.*,
711 F.3d 161 (D.C. Cir. 2013) ........................................................................10

*Gregory v. Montana*,
118 F.4th 1069 (9th Cir. 2024) ...........................................1, 8, 9, 10, 14

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
341 F.R.D. 474 (S.D.N.Y. 2022) ......................................................................13

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024) ........................................................................9, 14

*Kachina v. Gutierrez*,
2023 WL 9896190 (D. Ariz. Aug. 23, 2023) .....................................................9

*Llera v. Las Vegas Metro. Police Dep't*,
2023 WL 11910850 (D. Nev. Mar. 31, 2023) .........................................................................16

*Mastr Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.*,
295 F.R.D. 77 (S.D.N.Y. 2013) .............................................................................................15

*MGA Ent., Inc. v. Harris*,
2023 WL 2628225 (C.D. Cal. Jan. 5, 2023) ..........................................................................11

*S. Cntys. Oil Co. v. Henry*,
2023 WL 2891378 (D. Ariz. Apr. 11, 2023) ..........................................................................10

*Sanchez v. Washington*,
2024 WL 4665567 (W.D. Wash. Nov. 4, 2024) .......................................................................9

*SiteLock LLC v. GoDaddy.com LLC*,
2022 WL 3716499 (D. Ariz. Aug. 29, 2022) ..........................................................................17

*United States v. Google LLC*,
747 F. Supp. 3d 1 (D.D.C. 2024) ..............................................................................12, 16, 20

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) ................................................................................................12

*Zunum Aero, Inc. v. Boeing Co.*,
2024 WL 664540 (W.D. Wash. Feb. 7, 2024) ...........................................................1, 2, 9, 10

RULES

Fed. R. Civ. P. 37(e) ............................................................................................... *passim*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**INTRODUCTION**

Even though Amazon has gone to extraordinary lengths to preserve evidence and provide discovery in this action—including over 4.5 million documents and a thousand hours of testimony from Amazon witnesses—Plaintiffs seek an array of unwarranted sanctions that would shortcut their burden of proof. Plaintiffs come nowhere close to meeting the legal standard for the extreme sanctions they seek.

To impose any sanction for spoliation of electronically stored information ("ESI"), a court must first find that: (1) "the responding party was under a duty to preserve the ESI," (2) "the responding party 'failed to take reasonable steps to preserve it,'" and (3) "the ESI is 'lost.'" *Zunum Aero, Inc. v. Boeing Co.*, 2024 WL 664540, at *2 (W.D. Wash. Feb. 7, 2024) (quoting Fed. R. Civ. P. 37(e)). If the court also finds that a party was prejudiced by the loss of the ESI, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). And a court may impose an adverse inference instruction "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). This is a "demanding specific-intent standard," which requires that the sanctioned party engaged in "willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). Plaintiffs have not shown these elements for any of the notes or messages at issue.

Regarding what Plaintiffs call "raw notes," their motion conveniently ignores the fact that Amazon has produced rough draft notes from hundreds of meetings. Crucially, Plaintiffs identify only three meetings for which they contend rough draft notes were not preserved; and they fail to explain why those meetings are material to their claims or why sufficient information cannot be discovered from other sources. Indeed, when Plaintiffs deposed Amazon employees who participated in these meetings, they did not even ask what was discussed. That underscores the irrelevance of those meetings and calls into question the credibility of Plaintiffs' arguments.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 1
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Moreover, Plaintiffs' questioning produced no indication that any notes were discarded with the specific intent to deprive Plaintiffs of those notes in litigation.

Plaintiffs have also known about certain executives' Signal use—and Amazon's related preservation efforts—for years. They took substantial discovery on the issue, including review of thousands of Signal screenshots, a 30(b)(6) deposition, and depositions of each custodian who used Signal. That discovery yielded no evidence of any prejudice to Plaintiffs from any unpreserved Signal message, much less that any custodian used ephemeral messaging with the specific intent to deprive Plaintiffs of evidence.

Plaintiffs seek a breathtakingly broad sanction: "an adverse inference that spoliated evidence was unfavorable to Amazon on all disputed issues at trial." Dkt. 601-1. But Plaintiffs' motion does not identify any unavailable evidence that would have been material to any disputed issue, much less make the demanding showing that such evidence was destroyed with a specific intent to make it unavailable to Plaintiffs.

## BACKGROUND

### I.   Amazon Extensively Preserved Documents as Plaintiffs Gradually Identified Their Theories.

Throughout the investigation and litigation, Amazon has extensively preserved documents and provided Plaintiffs unprecedented discovery into its retail business. Plaintiffs contend that Amazon was obligated to preserve "all documents" from June 17, 2019, through the present. Mot. 1-2. But the duty to preserve "does not extend to every bit of ESI in a defendant's possession; rather, it is limited to evidence likely to be relevant to a claim or defense as to which litigation is reasonably foreseeable." *Zunum Aero*, 2024 WL 664540, at *3.[1] The FTC's document preservation letter provided no workable guidance about what information was likely to be relevant, indicating only that the FTC was investigating "conduct related to online retail

---

[1] All brackets, ellipses, internal quotation marks and citations have been omitted from quotes for readability. All emphasis is added unless otherwise indicated.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 2
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1   sales and distribution." Pls.' Ex. 1. Nonetheless, Amazon began issuing document preservation

2   notices ("DPNs" or "litigation holds") on July 2, 2019. Pls.' Ex. 9, at 1.

3       The FTC served a Civil Investigative Demand ("CID") with additional details more than

4   seven months later, and Amazon promptly provided the FTC with organizational charts and a list

5   of proposed custodians. Exs. 1-3.[2] Amazon issued a further round of DPNs on March 19, 2020.

6   Pls.' Ex. 9. The parties continued negotiating CID custodians, and by June 12, 2020, had agreed

7   upon a list of 75 such custodians. Ex. 4. Amazon issued another round of DPNs on June 4,

8   2020. Pls.' Ex. 9. The FTC did not file its Complaint until September 26, 2023. Dkt. 1.

9       Amazon continued to issue DPNs throughout the FTC's investigation and litigation,

10  ultimately placing over 1,200 individuals on litigation hold. Pls.' Ex. 9; Ex. 5, Tr.21:14-26:11

11  (Keeling). Amazon's DPNs instructed recipients that their obligations to retain documents

12  extended to electronic and hard-copy records of any kind. Ex. 5, Tr.29:11-39:5, 48:1-52:7,

13  60:19-75:5 (Keeling). When Amazon sent DPNs to employees, it also automatically preserved

14  their ESI stored in central Amazon systems, such as email, without intervention by the employee.

15  *Id.* Tr.88:12-94:9, 222:14-223:22.

16      During discovery, Amazon has responded to over 400 RFPs, and the parties extensively

17  negotiated the scope of document review to satisfy these wide-ranging requests. *See, e.g.*,

18  Dkt. 273, at 27-34. Ultimately, the parties agreed to 132 custodians and over 1,400 search terms

19  in this litigation. Ex. 6 (Keeling Decl.) ¶ 8. To review this overwhelming volume of material,

20  the parties also agreed on a protocol for technology-assisted review ("TAR"). Ex. 7. In total,

21  Amazon produced approximately 4.5 million documents. Ex. 6 ¶¶ 8-10. At the close of

22  discovery, Plaintiffs now assert that these herculean efforts were insufficient.

23

24

25

26  _____
[2] Exhibits filed with this opposition are attached to the Declaration of Katherine Trefz in Support of Amazon's Response to Plaintiffs' Motion for Spoliation Sanctions.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 3
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  **II.    Rough Draft Notes**

2      **A.    Amazon employees had varied note-taking practices.**

3          Plaintiffs' motion attempts to create the false impression that Amazon employees take

4  notes of every internal meeting.  In fact, there is no company-wide policy regarding notetaking,

5  and practices differ across business units, meeting types, and individuals.  Ex. 8, Tr.169:11-172:1

6  ███████; Ex. 9, Tr.183:3-20 (██████    At many meetings, no one took notes.  Ex. 10,

7  Tr.230:8-13 ██████    For certain meetings, teams tasked a notetaker with circulating takeaways

8  and action items.  *Id.* Tr.230:14-231:12.  Some notetakers were active meeting participants, and

9  thus only ever recorded action items.  Ex. 11, Tr.243:13-244:4 (Clark).  Others took longer rough

10  draft notes in an email and then edited that document for circulation.  Ex. 12, Tr.268:1-20

11  (██████    Still others circulated their draft notes for review by a small group as they prepared

12  takeaways and action items for wider distribution.  Ex. 13, Tr.283:14-25 (██████

13          Teams that limited meeting notes to key takeaways and action items had good business

14  reasons for doing so.  Trying to capture detailed notes in real time is distracting and interferes

15  with participation in the meeting.  Ex. 11, Tr.243:13-244:4 (Clark).  Lengthy notes are time-

16  consuming to review and do not efficiently convey the most relevant points.  Ex. 12, Tr.298:4-

17  299:21 (██████    Ex. 14, Tr.179:21-182:3 (██████    Ex. 15, Tr.76:9-78:20 ██████.  Having a

18  single set of final notes also helps teams ensure everyone is aligned on key decisions and next

19  steps.  Ex. 14, Tr.179:21-182:3 ██████.  Numerous employees explained these business

20  practices to Plaintiffs in depositions.  Ex. 14, Tr.196:25-198:2 ██████; Ex. 12, Tr.298:4-299:21

21  ██████    Ex. 11, Tr.246:13-247:23 (Clark); Ex. 16, Tr.146:24-148:6 ██████

22      **B.    Amazon took reasonable steps to preserve meeting notes.**

23          Plaintiffs accuse Amazon of waging a "campaign to delete" rough draft meeting notes.

24  Mot. 6.  Amazon did no such thing.  Amazon produced thousands of substantive business

25  documents, including operational plans ("OP1s") and quarterly business reviews ("QBRs"), in

26  accordance with the search protocol agreed between the parties.  Ex. 17, at 2-4.  Plaintiffs never

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 4
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

served an RFP targeting meeting notes associated with these documents.  *See* Ex. 6 ¶ 8

(describing targeted and custodial productions).  Nonetheless, many such notes were preserved

under the over 1,200 DPNs discussed above, and hundreds were produced.  Ex. 6 ¶ 13.  Indeed,

five documents containing the type of notes Plaintiffs claim were systematically destroyed ***are***

***attached to Plaintiffs' motion***.  *See* Pls.' Exs. 10, 14, 47, 56, 61.  And Plaintiffs selectively

omitted the attachment to their Exhibit 18, which Amazon produced and contains the notes

Plaintiffs claim are missing.  *Compare* Pls.' Ex. 18, *with* Ex. 18.

Plaintiffs purport to be especially interested in a small number of meetings related to a

well-documented program called Amazon Standards for Brands ("ASB").  Plaintiffs contend that

the employee who took notes at those meetings "should have" received a DPN.  Mot. 2 n.3.  But

Plaintiffs have had visibility into Amazon's DPNs since the summer of 2022, and never

identified that employee as a gap in Amazon's preservation efforts.  Ex. 19, at 3-9.  Meanwhile,

Amazon issued DPNs to at least nine other employees who had responsibilities related to ASB.

Ex. 20.  Plaintiffs fail to explain why Amazon was required to place more individuals on hold.[3]

Of the ASB meetings Plaintiffs mention, Mot. 4-5, Amazon ***produced*** rough draft notes

from two.  Exs. 18, 21.  For the other two meetings, as Amazon previously disclosed to

Plaintiffs, Amazon could not identify rough draft meeting notes.  Pls.' Ex. 23, at 7.  But Plaintiffs

deposed multiple employees who attended these meetings, and their questioning (or lack thereof)

shows that availability of rough draft notes made no difference.  For example, Plaintiffs deposed

a senior manager who attended these ASB meetings.  Ex. 12, Tr.31:15-34:14 ████; Ex. 12A,

at 1.  Even though Plaintiffs possessed the rough draft notes from one meeting, they did not use

them in their questioning of the manager; they used only the "Key Points of Feedback" that were

circulated after the meeting.  Ex. 12, Tr.272:3-289:16 ████  As to the other meetings,

Plaintiffs ***did not even ask*** about the substance of any discussion or decisions that were made.

---

[3] Plaintiffs seem to suggest that "several" other persons also should have received DPNs, but then identify
only the ASB notetaker discussed above.  Mot. 2 n.3.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 5
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

*Id.* Tr.290:1-306:6.  Plaintiffs' suggestion that they were deprived of "the best evidence of decisions made at Amazon," Mot. 6, cannot be taken seriously when they either (1) had access to both the rough draft and final notes, and chose to use the latter; or (2) did not even ask witnesses about the meetings.

## III.    Signal Messages

### A.    Certain executives used Signal to a limited extent following a hacking incident.

Amazon has provided Plaintiffs with substantial discovery into Signal messages, which confirms that such messages were used for short exchanges that either were not relevant to Plaintiffs' claims or were preserved.  Signal is a free messaging application that provides enhanced security through end-to-end encryption and by storing messages only on users' devices.  *See* Ex. 22.[4]  It also has an ephemerality feature (sometimes called the disappearing message or "DM" function) that can be enabled or disabled in any conversation by any participant.

Amazon founder Jeff Bezos began using Signal after his phone was hacked in 2018, likely by a foreign state actor.  *See* Exs. 23-24.  Some Amazon executives followed.  *See, e.g.*, Ex. 25, Tr.304:2-305:4 (Jassy IH); *see also* Ex. 26, Tr.245:23-246:3 (Jassy).  Sometimes, users would enable the DM feature for added security.  *See* Ex. 26, Tr.245:17-22 (Jassy); Ex. 27, Tr.284:19-23 (Bezos IH).

Signal was never part of Amazon's regular practice for making business decisions.  Rather, Signal was a way to quickly get someone's attention or briefly discuss sensitive topics.  *See, e.g.*, Ex. 27, Tr.268:17-24 (Bezos IH) ("data security," "sensitive personnel issues," and "very minor things, like … don't forget to read this e-mail"); Ex. 26, Tr.242:2-18 (Jassy) ("security," "HR," etc.); Ex. 28, Tr.298:17-20, 299:11-12 ██████ ("Can you take a look at

---

[4] For more background on Signal, Amazon respectfully refers the Court to its earlier briefing.  Dkt. 223-225.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 6
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

the email.").  As Mr. Bezos explained, "[t]o discuss anything in text messaging or Signal messaging ... of any substance would be akin to business malpractice.  It's just too short of a messaging format."  Ex. 27, Tr.269:13-17 (Bezos IH).

**B.      Amazon took reasonable steps to preserve Signal messages.**

Signal messages were covered by the first DPNs that Amazon issued.  Ex. 5, Tr.33:9-12 (Keeling).  Amazon instructed custodians to preserve responsive materials in all forms, including "instant messaging" and "electronic data contained on a smartphone."  *Id.* Tr.32:21, 33:15-17.  Such instructions were amplified in ensuing DPNs, culminating with explicit language that "instructs employees that to the extent they have an application that is using any type of auto-delete or disappearing message functionality, to turn it off."  *Id.* Tr.66:13-16.

As early as the summer of 2020, Amazon instructed potential custodians who used Signal to preserve responsive messages and disable the DM feature.  *Id.* Tr.198:2-16.  Amazon interviewed potential custodians and directly asked if they used Signal.  *Id.* Tr.198:21-199:12.  Those who used Signal for any communication that might be deemed work-related were instructed "to preserve those documents, and data, and messages, and to turn off any auto-delete functionality around them."  *Id.* Tr.198:10-16.  In addition, on October 10, 2020, Amazon Legal provided written legal guidance on use and preservation of Signal, "the main instruction" being "if you are under a litigation hold, to turn off disappearing or auto-delete functionality."  *Id.* Tr.95:21-96:11; *see also id.* Tr.101:11-102:1, 148:5-11.  A Legal Hold FAQ also provided step-by-step instructions on "how to turn off the disappearing message functionality."  *Id.* Tr.57:16-22.

Because Signal is not an Amazon-managed application, "[t]here is no way [for Amazon] to preserve Signal on the back end."  *Id.* Tr.94:12-13.  Therefore, Amazon had to collect Signal messages by obtaining custodians' personal devices and manually taking screenshots of any potentially work-related conversations.  Amazon did just that, collecting more than 8,000 screenshots that were reviewed for RFP responsiveness.  Ex. 6 ¶ 14.

**C.    Amazon provided Plaintiffs comprehensive information about Signal.**

By March 2022, Amazon voluntarily informed the FTC that certain custodians had used Signal and the DM function. *See* Ex. 29. Amazon then identified the dates and recipients of its hold notices, the identities of custodians who used Signal, and the dates when Signal collections occurred, and prepared a corporate witness who provided testimony to the FTC on those topics in October 2022. *See* Ex. 30; Ex. 31, Tr.20:16-24:25 ▮▮▮▮▮▮

Amazon also voluntarily provided the FTC with a log of potentially work-related Signal threads collected from custodians, as well as the changes in DM settings in each thread. *See* Pls.' Ex. 26. And to provide additional assurance, Amazon took the unusual step of repeatedly hosting FTC staff at outside counsel's offices to review collected Signal threads in which DM had been enabled—even when those messages were not responsive to the FTC's investigation. Of the more than 8,000 screenshots reviewed, only 127 were produced as responsive to any substantive discovery request.[5]

# ARGUMENT

## I.    Sanctions Cannot Be Imposed Without Particularized, Demanding Findings.

Federal Rule of Civil Procedure 37(e) was "rewritten in 2015 to provide a nationally uniform standard" governing sanctions for the loss of ESI. *Gault v. United States*, 2022 WL 4292340, at *6 (C.D. Cal. Aug. 23, 2022). The revised rule carefully specifies "findings that *must* be made before any sanction may be imposed." *Gregory*, 118 F.4th at 1079 (emphasis in original). As the advisory committee explained, "perfection in preserving all relevant electronically stored information is often impossible," and as such the rule requires only "reasonable steps to preserve"—"it does not call for perfection." Fed. R. Civ. P. 37(e), note to 2015 amendment.

---

[5] Another 745 screenshots were produced regardless of their subject matter because they show the nature of custodians' Signal and DM usage, including screenshots specifically requested for production after the FTC's in-person review. Ex. 6 ¶ 14.

Before imposing *any* sanction under Rule 37(e), a court must make three threshold findings: (1) that the ESI "should have been preserved in the anticipation or conduct of litigation," (2) that the responding party "failed to take reasonable steps to preserve" the ESI, and (3) that the ESI is "lost" and "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e); *accord Zunum Aero*, 2024 WL 664540, at *2. The party seeking sanctions bears the burden of proof on these elements. *Sanchez v. Washington*, 2024 WL 4665567, at *3 (W.D. Wash. Nov. 4, 2024); *Kachina v. Gutierrez*, 2023 WL 9896190, at *7 (D. Ariz. Aug. 23, 2023).

Additional findings are required depending on the type of sanctions the movant seeks. Under Rule 37(e)(1), "upon finding prejudice to another party from loss of the information," the court "may order measures no greater than necessary to cure the prejudice." The rule "does not place a burden of proving or disproving prejudice on one party or the other," but requiring the party seeking sanctions "to prove prejudice may be reasonable," especially when "the content of the lost information [is] fairly evident … or the abundance of preserved information [appears] sufficient to meet the needs of all parties." Fed. R. Civ. P. 37(e), note to 2015 amendment.

To obtain more severe sanctions, such as an adverse inference, the movant must show that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). This is "a demanding specific-intent standard, and purposely so." *Gregory*, 118 F.4th at 1080. It cannot be satisfied even by gross negligence; it requires proof that the spoliating party engaged in "the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Even if a court finds the requisite intent, any "remedy should fit the wrong, and the severe measures authorized by Rule 37(e)(2) should not be used when the information lost was relatively unimportant or lesser measures … would be sufficient to redress the loss." *Gault*, 2022 WL 4292340, at *7.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 9
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

The findings required by Rule 37(e) must be particularized to each piece of ESI that the movant claims was spoliated. *See, e.g.*, *Zunum Aero*, 2024 WL 664540, at *2-8 (conducting separate analysis for ten custodians); *S. Cntys. Oil Co. v. Henry*, 2023 WL 2891378, at *14 (D. Ariz. Apr. 11, 2023) (separate analysis for two documents and three hard drives); *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 341 (D. Ariz. 2022) (separate analysis for 109 Facebook messages). Imposing sanctions without making each of the particularized findings required by Rule 37(e) is reversible error. *Gregory*, 118 F.4th at 1079-80.

## II.    Rough Draft Notes

### A.    Amazon took reasonable steps to preserve meeting notes.

Plaintiffs argue that a party targeted by a government investigation is immediately required to begin preserving all "potentially relevant" documents, and that such a duty attached in this case nearly seven years ago. Mot. 10-11. Plaintiffs' initial letter to Amazon, however, provided no workable sense of the investigation's scope, and certainly not one that suggested Amazon should preserve rough draft meeting notes taken by lower-level employees in particular business units. *See* Pls.' Ex. 1 ("online retail sales and distribution"). The applicable standard for preservation efforts is "reasonableness, not perfection," and the "current focus" of a movant's litigation strategy does not "retroactively dictate" the scope of required preservation "at a much earlier point in the litigation." *Est. of Arroyo v. Cnty. of San Diego*, 2025 WL 1914399, at *8 (S.D. Cal. Apr. 14, 2025). Indeed, the cases that Plaintiffs cite highlight how extensive Amazon's preservation efforts were in contrast to those of parties sanctioned under Rule 37(e). *See FTC v. Noland*, 2021 WL 3857413, at *1 (D. Ariz. Aug. 30, 2021) (day after learning of FTC investigation, defendants switched to communications platforms that were not preserved); *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 166, 171 (D.C. Cir. 2013) (DOJ attorneys destroyed employment records they knew were subject of internal investigation).

Perhaps the most straightforward indication that Amazon's preservation efforts were reasonable is the fact that, for each of the meetings Plaintiffs now raise, Amazon has produced

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 10
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

the substantive documents that were discussed at the meetings, as well as any notes identifying the key takeaways and action items from the meeting, and—in nearly all cases—also rough draft meeting notes.

### B. Plaintiffs identify only three meetings for which rough draft notes are unavailable.

Plaintiffs assert that broad swaths of meeting notes are unavailable. *E.g.,* Mot. 1 ("years-long practice of deliberately deleting"); *id.* at 6 ("campaign to delete documents"); *id.* at 16 ("intense effort to create a sanitized record"). Since Plaintiffs bear the burden of proof, one might expect these accusations to be backed up by evidence, such as a list of meetings for which Plaintiffs requested but did not receive rough draft notes. In fact, however, Plaintiffs never requested that Amazon specifically search for ***any*** meeting notes, much less the rough draft notes they now contend are so crucial. Instead, the parties agreed upon a set of custodians and search terms, and Amazon produced meeting notes where identified as responsive under the agreed-upon search methodology. *See* Ex. 6 ¶¶ 8-10. For most of the meetings Plaintiffs raise in their motion, Amazon has in fact ***produced*** the notes Plaintiffs contend were destroyed. *See* Ex. 32 (identifying notes for nine such meetings).

Plaintiffs are also wrong to presume that any time rough draft notes were not produced, such notes were destroyed. For many meetings, detailed notes would not have been taken. Ex. 10, Tr.230:8-13 ████; Ex. 11, Tr.243:13-244:4 (Clark). Even when notes were taken, they may have been directly edited without saving a rough draft. Ex. 12, 268:1-20 ████ Even if rough drafts were saved, they would not have been collected unless they were in the files of one of the agreed-upon document custodians; and they would not have been produced unless they hit on agreed-upon search terms and reached the TAR cutoff. Plaintiffs fail to address these realities, and therefore do not carry their burden to show meeting notes were actually "lost." *MGA Ent., Inc. v. Harris*, 2023 WL 2628225, at *5-6 (C.D. Cal. Jan. 5, 2023).

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 11
(Case No. 2:23-cv-01495-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    Despite the sweeping language of their motion, Plaintiffs only show "three instances" in

2 which draft notes have not been identified.  Mot. 14; Pls.' Ex. 23, at 6-7.  That is fatal to

3 Plaintiffs' request for sanctions regarding any meeting notes except those three; and as discussed

4 below, Plaintiffs have not shown that they were prejudiced by the unavailability of such notes,

5 nor that Amazon discarded them with an intent to deprive Plaintiffs of evidence.

6    **C.    Plaintiffs were not prejudiced by the unavailability of any meeting notes.**

7    Plaintiffs contend that rough draft meeting notes are "often the only source of key

8 information about what was said and who made decisions in meetings."  Mot. 16.  Even if that

9 were true (and it is not), isolated comments in three meetings cannot possibly be the key to the

10 antitrust issues in this litigation.  Plaintiffs' Sherman Act § 2 claims require them to prove:

11 (1) that Amazon possesses monopoly power and (2) that it acquired or maintained that power

12 through anticompetitive conduct, rather than "as a consequence of a superior product, business

13 acumen, or historic accident."  *AliveCor, Inc. v. Apple Inc.*, 163 F.4th 1259, 1265 (9th Cir. 2026).

14 In determining whether conduct is anticompetitive, the "focus is upon the effect of that conduct,

15 not upon the intent behind it."  *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir.

16 2001); *accord United States v. Google LLC*, 747 F. Supp. 3d 1, 187 (D.D.C. 2024) (even an

17 "evil mental state" does not indicate conduct was anticompetitive).

18    For the three instances in which Plaintiffs contend rough draft meeting notes were

19 destroyed, Amazon produced the substantive documents discussed at the meetings and the final

20 meeting notes.  And Plaintiffs deposed meeting attendees but ***did not ask*** about any discussions

21 that occurred or decisions that were made:

22    • *April 19, 2021, "Bezos Review: Q1 Grocery Product Update"* (Mot. 6.):  Amazon

23        produced the 19-page document discussed at this meeting and key takeaways.  Exs.

24        35-36.  Plaintiffs deposed attendees Jeff Bezos and Dave Clark for more than 24

25        hours combined and asked them zero questions about this meeting.

26

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 12
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

- *July 20, 2021 "NACLT ASB MBR"* (Mot. 4, 6): Amazon produced the 13-page document discussed at this meeting, Chime chat messages exchanged during the meeting, and key takeaways. Ex. 37; Pls.' Ex. 16. Plaintiffs deposed numerous attendees, including ███████████████████████████, but did not ask any of them about the substance of the discussion or decisions made at the meeting; insofar as they raised this meeting at all, it was only to ask about note-taking practices.

- *January 20, 2022, "ASB Program Deep Dive"* (Mot. 5-6): Amazon produced the 13-page document discussed at this meeting, Chime chat messages exchanged during the meeting, and key takeaways. Ex. 38; Pls.' Ex. 19. Again, Plaintiffs did not ask attendees any questions about the substance of this meeting during depositions.

Given that Plaintiffs received detailed information about these meetings, chose not to question attendees about topics that might have been addressed in rough draft notes, and have received cumulative discovery about the business decisions at issue, they cannot possibly claim prejudice. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 511 (S.D.N.Y. 2022) (no prejudice where movant failed to ask relevant witness about purportedly missing documents).

Plaintiffs also attempt to show that rough draft notes contained relevant information by comparing one set of draft notes to final notes. Mot. 11-12. But Plaintiffs flagrantly misrepresent the record—they compare final notes from a July 20, *2021* meeting, Pls.' Ex. 48, to rough draft notes from a July 21, *2022* meeting, Pls.' Ex. 47. Amazon also produced the final notes of the 2022 meeting, which disprove Plaintiffs' assertion that such notes were "sanitized." *See* Ex. 39 (showing that final notes contain each piece of information Plaintiffs contend would have been deleted).

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 13
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

**D.    No meeting notes were discarded with intent to deprive Plaintiffs of their use in litigation.**

An adverse inference is a "severe sanction[]," which requires a "demanding" showing that a party "acted with the *intent* to deprive another party of the information's use in the litigation." *Gregory*, 118 F.4th at 1078 (emphasis in original).  Plaintiffs advance two arguments in support of an intent finding, neither of which is persuasive.

*First*, Plaintiffs assert that spoliation must have been intentional because it occurred "after receipt of a document preservation notice."  Mot. 17.  But Plaintiffs never requested the notetakers for the three meetings be document custodians or placed on litigation hold.  There is no indication that the notetakers would have thought their notes were material to the FTC's investigation, much less that they acted with an intent to deprive Plaintiffs of information.

*Second*, Plaintiffs argue that the notetakers took "affirmative steps" to discard draft notes and that this constitutes "selective preservation."  Mot. 18.  In fact, the most important affirmative steps that Amazon took regarding rough draft notes were the issuance of over 1,200 DPNs and the automatic back-end preservation of those employees' communications.  *See Feindt v. United States*, 2023 WL 8650190, at *7-8 (D. Haw. Dec. 14, 2023) (intent to deprive not shown given lost ESI from only two of 800 potential custodians).  The three meetings for which rough draft notes apparently fell outside these broad preservation efforts do not reflect an intent to gain a litigation advantage.  Insofar as Plaintiffs suggest that these three meetings were intentionally targeted for record destruction, that cannot be squared with the fact that Plaintiffs did not even think the meetings were material enough to ask attendees about during depositions. This is a far cry from the cases Plaintiffs cite in which adverse inference instructions were entered because a party picked and chose "the messages [they] thought were important to the case," while deleting others.  *Armstrong v. Holmes*, 2024 WL 1345214, at *4 (D. Nev. Mar. 29, 2024); *see also Jones*, 95 F.4th at 736.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 14
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

III.    **Signal Messages**

A.    **Amazon took reasonable steps to preserve Signal messages.**

Given Signal's design, Amazon—like any organization—could not preserve Signal communications though its IT systems.  Instead, it issued DPNs with increasingly specific instructions about ephemeral messaging preservation, investigated whether potential custodians used Signal to discuss work, and repeatedly provided written and oral guidance to preserve any responsive messages.

Amazon does not claim perfection, and it improved its processes for dealing with this new third-party messaging platform throughout the relevant time period.  But Amazon responded reasonably under the circumstances, resulting in the collection of thousands of Signal screenshots along with extensive information on Signal use by Amazon employees.  This satisfies Rule 37(e).  *See, e.g.*, *Mastr Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.*, 295 F.R.D. 77, 85 (S.D.N.Y. 2013); *Commentary on Ephemeral Messaging*, 22 Sedona Conf. J. 435, 483 (2021) ("preservation of relevant ephemeral messaging data … limited by considerations of reasonableness").

Plaintiffs' complaints about the timing of Amazon's preservation efforts, Mot. 7-8, are ill-founded.  As explained in prior briefing, the timing of the DPN to Mr. Bezos was reasonable.  *See* Dkt. 223, at 11; Ex. 41, at 6.  And Mr. Jassy had no responsibility for Amazon's retail business until he became CEO, at which point he received a DPN as well.  Ex. 26, Tr.20:16-21:5 (Jassy).  Plaintiffs also argue that use of Signal in April 2019 by Amazon's General Counsel means that Amazon should have acted more expeditiously to preserve and collect Signal messages.  But there is no evidence that the General Counsel believed Amazon executives were discussing matters responsive to the FTC's investigation on Signal, let alone that such hypothetical discussions occurred with the DM function turned on.  And as soon as counsel learned about the Signal practices of potential custodians, they provided clear advice on preservation, which they continued to reinforce and amplify.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 15
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

The cases Plaintiffs cite do not indicate that Amazon's preservation efforts were unreasonable—quite the opposite.  In *United States v. Google LLC*, the court denied a request for sanctions regarding Google's failure to automatically preserve all chat messages in a ***Google-managed*** chat system.  747 F. Supp. at 185-87.  Here, Signal was not designed or operated by Amazon, and was thus substantially more difficult for Amazon to preserve.  In *Noland*, the defendants intentionally uninstalled the Signal application "just prior to having their phones forensically imaged," effectively eliminating all information about their Signal communications.  2021 WL 3857413, at *10.  Here, by contrast, Amazon repeatedly instructed potential custodians to preserve Signal messages, collected screenshots of Signal communications, allowed the FTC to inspect collected messages, and produced messages at Plaintiffs' request.[6]

### B.     Plaintiffs have not been prejudiced by the unavailability of any Signal messages.

Amazon has provided Plaintiffs with extensive evidence about custodians' Signal usage confirming that they did not use the application to discuss issues material to this litigation.  Plaintiffs' speculation that some unavailable messages might have been relevant is insufficient to establish prejudice.  *See, e.g.*, *Llera v. Las Vegas Metro. Police Dep't*, 2023 WL 11910850, at *3 (D. Nev. Mar. 31, 2023); *Carty v. Steem Monsters Corp.*, 2022 WL 17083645, at *5 (E.D. Pa. Nov. 18, 2022).[7]

*First*, insofar as Plaintiffs point to a handful of produced messages touching on issues related to this litigation, that is evidence of effective preservation, not selective deletion.  Amazon produced 127 screenshots as responsive to merits-related discovery requests.  Ex. 6 ¶ 14.  That Plaintiffs inspected thousands of additional screenshots and did not seek their

---

[6] In *Colonies Partners, L.P. v. County of San Bernardino*, defendants and their counsel "took no steps to preserve the ESI" at all.  2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020).

[7] Plaintiffs also demonstrate no prejudice from a single custodian's use of WhatsApp.  Mot. 8 & n.6.  That custodian testified she used WhatsApp only to discuss specific matters outside the scope of this case.  *See* Pls.' Ex. 29, at 233:18-19 ("I've used WhatsApp very rarely to discuss topics on international countries, specifically EU.").

production confirms that most collected messages have no bearing on this litigation. And

custodians provided sworn testimony that they avoided using the DM feature to discuss matters

relevant to this case. *See, e.g.*, Ex. 26, Tr.254:18-20 (Jassy); Ex. 27, Tr.298:21-24 (Bezos IH).

*Second*, for the handful of Signal messages that Plaintiffs highlight in their motion, the

production includes other documents about the same topic. Sanctions are not called for when the

allegedly lost communications are "duplicative of information [the defendant] did produce."

*SiteLock LLC v. GoDaddy.com LLC*, 2022 WL 3716499, at *12 (D. Ariz. Aug. 29, 2022). For

example, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Mot. 8-9. ████████████

████████████████████████████████████████████████ and Amazon's

decision-making was memorialized in other produced documents and emails. *See* Pls.' Ex. 36;

Exs. 42-43. Plaintiffs also suggest that ████████████████████████████████████

Mot. 9. But the produced document ████████████████████████████ Pls.'

Ex. 45, at -4583.[8]

*Third*, when Plaintiffs questioned witnesses on time periods where DM was enabled, the

testimony indicated that few messages would have been sent, and none would have been

material. For example, with respect to one conversation with Mr. Bezos, Mr. Jassy testified that

he was on vacation at that time, as evidenced by the text in the produced messages, and so would

have sent few messages, if any. Ex. 26, Tr.249:5-250:3 (Jassy); Ex. 44; *see also* Ex. 26,

Tr.254:18-20 (Jassy) ("quite confident" that messages in particular conversation "weren't related

to this matter"). Others testified that their own Signal use was infrequent. *See, e.g.*, Ex. 45,

Tr.260:11-19 ████ ("very rare"); Ex. 46, Tr.283:10-284:12 ████████ (maybe

"a handful of messages"); Ex. 47, Tr.35:23-36:1 ████████ ("a few times, but not on a regular

---

[8] Plaintiffs cite May 2022 Signal messages about ████████████████████. Mot. 9; Pls.' Exs.
39-41. But as those preserved messages demonstrate, ████████████████████████████
████ not Signal). Moreover, the Signal messages confirm that ████████████████████
████████████ Plaintiffs cite two other examples that are about public articles or do not concern
Amazon's business. *See* Mot. 9; Pls.' Exs. 43-44.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 17
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

basis"). That the DM feature was enabled at times does not mean that significant messages were sent and lost.

### C.    No Signal messages were discarded with intent to deprive Plaintiffs of their use in litigation.

"[C]ourts should not reflexively presume that ephemeral messaging has been implemented to avoid common law preservation obligations." 22 Sedona Conf. J. at 484. Plaintiffs' motion rests on this unwarranted, reflexive presumption. There is no support for Plaintiffs' accusation that Signal or its DM feature was used with the intent to deprive them of relevant information. Signal use began in response to a hacking incident, before Amazon received notice of the FTC's investigation. *See* Exs. 23-24. In time, custodians turned off the DM feature even in plainly non-responsive conversations. *See* Ex. 27, Tr.289:20-290:14 (Bezos IH) (testifying in October 2022 that he stopped using the DM feature in 2021 or 2022); Pls.' Ex. 24, at 32-35 (indicating repeated disabling of the DM feature in 2021 and 2022). Before turning off DM systematically, custodians took steps to preserve the rare messages that contained potentially relevant information. For example, when another Amazon executive enabled the DM feature in a Signal thread in March 2022, Mr. Bezos disabled it and then copy-pasted the text of the message the other executive had sent, writing, "Just preserving this." Exs. 48-49; *see also* Ex. 50.

Plaintiffs also had the opportunity to depose any custodian who used Signal and—unlike in cases where sanctions have been issued—each custodian explained that they used Signal for its legitimate security benefits, not with any intent to interfere with the FTC's investigation. To the contrary, custodians testified that they made efforts to preserve potentially relevant communications. Ex. 27, Tr.298:21-24 (Bezos IH) ("I tried very hard to be careful not to use it, to preserve messages and only use disappearing messages on things that were not, you know, responsive to these document preservation requests."); Ex. 26, Tr.254:10-16 (Jassy) ("I would not intentionally communicate in such a way where we were supposed to preserve documents

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 18
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

about this particular matter in a way where the documents couldn't be preserved."). Such actions and testimony are wholly inconsistent with an intent to deprive Plaintiffs of relevant evidence.

## IV.    There Is No Basis for the Sweeping Sanctions Plaintiffs Request.

Plaintiffs first request a Rule 37(e)(1) sanction, that the Court bar Amazon from introducing evidence about meetings "where Amazon has been unable to produce and identify 'raw notes' for the meeting." Dkt. 601-01. Plaintiffs seek this sanction as to all Amazon meetings, even though they have not shown that notes would have existed for all meetings or that their unavailability caused any prejudice. Plaintiffs seemingly try to flip the burden, asserting that "Amazon is unwilling or unable to catalog instances where raw notes were prepared and subsequently deleted." Mot. 17. [9] But the party seeking sanctions bears the burden to show unavailability of specific evidence before obtaining a Rule 37(e)(1) sanction, which must be "no greater than necessary to cure the prejudice."

Second, Plaintiffs request a Rule 37(e)(2) "adverse inference that spoliated evidence was unfavorable to Amazon on all issues disputed at trial." Dkt. 601-01. Plaintiffs do not explain how they propose to identify the scope of "spoliated evidence," instead asking the Court to assume that some broad category of such evidence exists. Plaintiffs are not entitled to an extreme sanction for a set of documents that they fail to even describe—much less show should have been preserved, are in fact unavailable, and were destroyed with a *specific intent* to shield them from Plaintiffs. [10]

Finally, as a fallback, Plaintiffs request "leave to conduct additional discovery." Mot. 20. Enough is enough. Plaintiffs have received millions of documents and taken over a thousand

---

[9] For this proposition, Plaintiffs cite an interrogatory to which Amazon objected. Pls.' Ex. 23, at 5-6. Nonetheless, Amazon provided information about 15 meetings; as Amazon found, for 12 of those meetings, notes had been produced. Amazon served that response in October 2025, and Plaintiffs did not move to compel. *See* Ex. 41, at 1-3.

[10] Plaintiffs have failed to show any of the necessary elements under Rule 37(e), and their motion should be denied outright. If the Court considers any sanction, Amazon submits that the requisite findings must be made on a document-by-document basis and that it may be more efficient for the Court to appoint a Special Master to make that assessment. *See* Dkt. 618.

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 19
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

hours of testimony, over the course of nearly seven years.  They provide no hint about what

additional discovery they would take, much less how it could move the needle on any issue in

dispute.  *Cf. Google LLC*, 747 F. Supp. 3d at 187.  If Plaintiffs cannot prove their allegations

with the massive amount of information they now possess, it is because their case is

fundamentally flawed on the merits.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion.

DATED this 3rd day of March, 2026.

*I certify that this memorandum contains 6,491 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Molly A. Terwilliger*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
            molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
Katherine Trefz (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
            jschmidtlein@wc.com
            khodges@wc.com
            jpitt@wc.com
            ereddington@wc.com
            cmetz@wc.com
            cpruski@wc.com
            ktrefz@wc.com

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 20
(Case No. 2:23-cv-01495-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

**COVINGTON & BURLING LLP**

Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice*)
Kate Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com
        dludwin@cov.com
        kmitchelltombras@cov.com

**WILKINSON STEKLOFF LLP**

Kosta S. Stojilkovic (*pro hac vice*)
2001 M Street NW, 10th Fl.
Washington, DC 20036
Phone: (202) 847-4045
Email: kstojilkovic@wilkinsonstekloff.com

*Attorneys for Defendant Amazon.com, Inc.*

AMAZON.COM INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS - 21
(Case No. 2:23-cv-01495-JHC)