THE HONORABLE JOHN H. CHUN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

FEDERAL TRADE COMMISSION, *et al.*,

      Plaintiffs,

      v.

AMAZON.COM, INC., a corporation,

      Defendant.

CASE NO.: 2:23-cv-01495-JHC

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S JUNE 18, 2026 ORDER (DKT. #683)**

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - i
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**TABLE OF AUTHORITIES**

*Cases*

*De Coster v. Amazon.com, Inc.*,
  2025 WL 904465 (W.D. Wash. Mar. 25, 2025)...................................................................7

*Dolby Lab'ys Licensing Corp. v. Adobe Inc.*,
  402 F. Supp. 3d 855 (N.D. Cal. 2019).............................................................................6

*Epic Games, Inc. v. Apple Inc.*,
  161 F.4th 1162 (9th Cir. 2025) ...........................................................................8, 9, 10

*Fisher v. United States*,
  425 U.S. 391 (1976)..........................................................................................................6

*FTC v. Amazon.com, Inc.*,
  2025 WL 821890 (W.D. Wash. Mar. 14, 2025)...............................................................7

*Garner v. Amazon.com, Inc.*,
  2024 WL 4266665 (W.D. Wash. Sept. 23, 2024)...........................................................3, 7

*Greer v. Cnty. of San Diego*,
  127 F.4th 1216 (9th Cir. 2025) .....................................................................................1, 7

*Hartford Life Ins. Co. v. Bank of Am. Corp.*,
  2007 WL 2398824 (S.D.N.Y. Aug. 21, 2007)...............................................................2, 3

*In re Allergan plc Securities Litig.*,
  2021 WL 4121300 (S.D.N.Y. Sept. 9, 2021).............................................................4, 5, 6

*In re Domestic Drywall Antitrust Litig.*,
  2014 WL 5090032 (E.D. Pa. Oct. 9, 2014) ............................................................. *passim*

*In re Examination of Privilege Claims*,
  2015 WL 13886330 (W.D. Wash. Nov. 12, 2015) ......................................................4, 5, 6

*In re Grand Jury*,
  23 F.4th 1088 (9th Cir. 2021) .......................................................................................7, 8

*In re Sulfuric Acid Antitrust Litig.*,
  235 F.R.D. 407 (N.D. Ill. 2006) ...................................................................................2, 3

*In re Sulfuric Acid Antitrust Litig.*,
  432 F. Supp. 2d 794 (N.D. Ill. 2006)............................................................................2, 3

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - ii
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*Logsdon v. BNSF Rwy. Co.*,
  2016 WL 11969813 (D. Neb. Feb. 17, 2017)..................................................................2, 3

*Oracle Am., Inc. v. Google, Inc.*,
  2011 WL 3794892 (N.D. Cal. Aug. 26, 2011) ...............................................................1, 7

*Sherwood v. BNSF Rwy. Co.*,
  325 F.R.D. 652 (D. Idaho May 9, 2018) ....................................................................2, 3, 9

*Stevens v. Corelogic, Inc.*,
  2016 WL 397936 (S.D. Cal. Feb. 2, 2016) ................................................................ *passim*

*Stevens v. Corelogic, Inc.*,
  No. 3:14-cv-1158, Dkt. #142 (S.D. Cal. Feb. 17, 2016) ......................................................5

*United States v. Gray*,
  876 F.2d 1411 (9th Cir. 1989) ............................................................................................6

*Virtru Corp. v. Microsoft Corp.*,
  2024 WL 2133953 (W.D. Wash. May 10, 2024)......................................................... *passim*

***Rule***

Fed. R. Civ. P. 26(b)(5)(A)(ii) ............................................................................................10

Pursuant to the Court's June 18, 2026, Order (Dkt. #683), Plaintiffs submit the responses below.

***Question 1:*** *Does the attorney-client privilege protect generalized training materials on legal issues and matters of legal compliance—such as when and how privilege law applies—when such materials are prepared and presented by in-house corporate counsel and shared widely throughout the organization?*

The attorney-client privilege can apply to training materials prepared and presented by in-house counsel only if: (1) the "primary purpose" of the materials is to provide legal advice, *see Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025); (2) the party asserting privilege makes a "clear showing" that in-house counsel was acting as a "legal advisor," *see Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *3, *4 (N.D. Cal. Aug. 26, 2011); (3) the training materials are not too generalized to constitute legal advice, *see In re Domestic Drywall Antitrust Litig.*, 2014 WL 5090032, at *4 (E.D. Pa. Oct. 9, 2014); and (4) the materials were not distributed beyond individuals in the organization who had a "need to know" their contents, *see Virtru Corp. v. Microsoft Corp.*, 2024 WL 2133953, at *2 (W.D. Wash. May 10, 2024).

Because Plaintiffs and the Court have previously addressed the first two issues above, *see* Dkt. #604, 657, 678 at 25, Plaintiffs will focus on the latter two issues. As set forth below, "*generalized* training materials" frequently do not constitute legal advice, and materials "shared widely throughout the organization" are often not restricted to individuals who need to know their contents.

*First*, a communication that simply describes the law and an applicable company policy does not constitute legal advice, and is not protected by the attorney-client privilege. "General policy statements and instructional guides, the purpose of which is to notify employees of legal

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 1
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

requirements, is not specific legal advice." *Logsdon v. BNSF Rwy. Co.*, 2016 WL 11969813, at *1-2 (D. Neb. Feb. 17, 2017) (training and instructional materials prepared by counsel were not privileged), *reconsideration denied*, 2017 WL 11920315 (D. Neb. Jan. 18, 2017), *objections overruled*, 2017 WL 11920316 (D. Neb. Feb. 17, 2017). "A corporation's legal compliance policy that serves as a reference or instructional guide to corporate employees is primarily a 'business' policy rather than a 'legal' policy, even if based on the advice of counsel." *Sherwood v. BNSF Rwy. Co.*, 325 F.R.D. 652, 661 (D. Idaho May 9, 2018) (citation omitted), *clarified in* 2018 WL 2228889 (D. Idaho May 15, 2018).

Thus, an antitrust compliance manual drafted by counsel that summarized the law and laid out the company's policies was not privileged because "[n]o advice [was] reflected" and "no confidential confidences [were] revealed." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 431 (N.D. Ill. 2006). Discussions of hypothetical scenarios in the manual were also not privileged, because they were "instructional devices" rather than "responses to requests for legal advice." *In re Sulfuric Acid Antitrust Litig.*, 432 F. Supp. 2d 794, 796-98 (N.D. Ill. 2006). A "due diligence presentation" prepared by counsel and presented as part of an internal training program was not privileged because it "contain[ed] only generic descriptions of the law as it might apply to the securities industry," and did not "apply any of these generalized legal principles to specific factual situations nor . . . disclose any inquiry by or concern of [the company] that would not be self evident from the nature of [the company]'s business." *Hartford Life Ins. Co. v. Bank of Am. Corp.*, 2007 WL 2398824, at *3, *6 (S.D.N.Y. Aug. 21, 2007). And a compliance policy drafted by counsel "summariz[ing] anti-competitive practices to be avoided, provid[ing] guidance for situations that could lead to violations, and detail[ing] possible sanctions for antitrust violations" was not privileged. *In re Domestic Drywall*, 2014 WL 5090032, at *1, *4. In that case, the court

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 2
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

reasoned that the attorney-client privilege "should ordinarily be limited to legal advice leading to a decision by the client," and thus did not apply to the policy, which was "general and [did] not contain any specific advice." *Id.* at *4.

Applying the principles above to the Court's question, generalized training materials that merely explain or summarize privilege law—including discussions of hypothetical scenarios— are not legal advice and are not privileged. *See Logsdon*, 2016 WL 11969813, at *1-2; *Hartford Life*, 2007 WL 2398824, at *3, *6; *In re Sulfuric Acid*, 235 F.R.D. at 431; *In re Sulfuric Acid*, 432 F. Supp. 2d at 796-98. Similarly, materials communicating a company's policies related to privilege—such as instructions about what documents to mark as privileged and confidential, or directions about how to maintain privilege—are business policies, not legal advice, and are not privileged. *See In re Domestic Drywall*, 2014 WL 5090032, at *4; *Sherwood*, 325 F.R.D. at 661; *see also Stevens v. Corelogic, Inc.*, 2016 WL 397936, at *4 (S.D. Cal. Feb. 2, 2016) ("[A] corporate legal compliance policy . . . even if based on the advice of legal counsel, is primarily a 'business' policy rather than a 'legal' policy." (citation omitted)).

On the other hand, training materials could be privileged if they address specific factual scenarios that are or have been the subject of requests for legal advice. For example, a Q&A section answering employees' questions about specific issues could be considered legal advice, as could a summary of past legal advice concerning specific situations.

*Second*, a communication may not be privileged if it is disseminated beyond the "employees who need to know the information to carry out their responsibilities." *Virtru*, 2024 WL 2133953, at *2; *see also Garner v. Amazon.com, Inc.*, 2024 WL 4266665, at *1 (W.D. Wash. Sept. 23, 2024) ("[A] privileged communication does not lose its protections simply because its substance is shared among non-legal professionals in the client organization as long

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 3
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

as it 'is not disseminated beyond those individuals who, because of the organization's structure, need to know its contents.'" (citation omitted)). Some courts have addressed this issue as a waiver of privilege, while others have approached it as a failure to maintain confidentiality.

The first approach can be seen in *In re Examination of Privilege Claims*, where the magistrate judge held the defendant waived privilege over a set of due diligence presentations, including 19 slides of "legal information," because those documents were "disseminated in full . . . to every member of the due diligence team." 2015 WL 13886330, at *1-2 (W.D. Wash. Nov. 12, 2015). The court rejected the company's claim that "the entire team needed to be aware of all the legal issues that could impact the transaction," finding that the company had not shown "that this information was needed by these employees to carry out their work or would have influenced any of the decisions made by the heads of the various divisions considering the acquisition." *Id.* at *2. The district court adopted the magistrate judge's decision. *Id.* at *3. In doing so, the court indicated that it was not required to credit the company's claims of "need to know." The defendant argued that one of its executives had submitted a declaration stating that "the entire due diligence team needed access to the legal content" of the disputed documents. *Id.* The district court noted that the magistrate judge's "finding indicates that he did not consider the declaration to be adequate evidence of the due diligence team's 'need to know.'" *Id.*

In other waiver cases, courts have similarly scrutinized company claims of a broad "need to know." In *In re Allergan plc Securities Litigation*, the court held that the company failed to demonstrate non-waiver over "widely disseminated" documents where it did not show that "the employees included on these e-mails were 'in a position to act or rely on the legal advice contained in the communication.'" 2021 WL 4121300, at *9-10 (S.D.N.Y. Sept. 9, 2021) (citation omitted). In another case, *Virtru Corp. v. Microsoft Corp.*, the court rejected the

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 4
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

company's blanket argument that every employee in a "relatively small start-up" needed to know the information at issue, explaining that "this general statement without further elaboration about the employees' responsibilities and how they would act on this information leaves the Court with an insufficient showing of non-waiver." 2024 WL 2133953, at *2.

The second approach is shown in *In re Domestic Drywall*, where the court decided that a company's claim that it had maintained confidentiality over its antitrust compliance policy was "undermined by the wide distribution of the policy within the organization." 2014 WL 5090032, at *4-5. The court held that the policy had "lost any privileged communication status" after the company "distributed the policy to more than 120 employees who attended a training session and made it available to numerous employees on an internal Internet site." *Id.* Similarly, in *Stevens v. Corelogic*, the court suggested that company policies "distributed widely within the corporation"—including documents maintained on the company's intranet and SharePoint— were not privileged. 2016 WL 397936, at *5. After the court ordered the company to provide further information, the company withdrew its privilege claim. Minute Order, *Stevens v. Corelogic, Inc.*, No. 3:14-cv-1158, Dkt. #142 (S.D. Cal. Feb. 17, 2016).

Under the waiver approach, any privilege over training materials would be waived if those materials were shared with people in the organization who did not have a "need to know" the privileged information to perform their work for the organization. *See In re Examination of Privilege Claims*, 2015 WL 13886330, at *1-2; *In re Allergan*, 2021 WL 4121300, at *9-10; *Virtru*, 2024 WL 2133953, at *2. Courts should distinguish between individuals who had a need to know company policies covered by a training—which would not be privileged, *see, e.g., In re Domestic Drywall*, 2014 WL 5090032, at *4—and individuals who had a need to know any legal advice in the training materials, such as advice that led to the adoption of those policies, "to carry

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 5
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

out their work." *See In re Examination of Privilege Claims*, 2015 WL 13886330, at *1-2; *see also Virtru*, 2024 WL 2133953, at *2 (considering whether employees "would act on" privileged information to carry out their responsibilities); *In re Allergan*, 2021 WL 4121300, at *9-10 (looking to whether employees were "in a position to act or rely on the legal advice").

Under the broader approach taken in *In re Domestic Drywall* and *Stevens*, widely shared training materials would not be privileged due to the company's failure to maintain adequate confidentiality. *See In re Domestic Drywall*, 2014 WL 5090032, at *4-5; *Stevens*, 2016 WL 397936, at *5.

**Question 2:** *Does the attorney-client privilege apply differently to legal guidance on the application of privilege law as opposed to legal guidance on the application of other laws?*

Plaintiffs are not aware of any authority categorically holding that that the attorney-client privilege applies differently to legal guidance on the application of privilege law as opposed to legal guidance on the application of other laws. However, because attorney-client privilege "has the effect of withholding relevant information from the fact-finder, it applies only where necessary," *Fisher v. United States*, 425 U.S. 391, 403 (1976), and is "narrowly and strictly construed," *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989). The rule requiring courts to apply privilege narrowly applies twofold in assessing how privilege applies to attorney guidance *about* the application of privilege, particularly in the context of communications with in-house counsel, where "there is no presumption that [the] communications . . . are protected by attorney-client privilege." *See Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019); *see also* Dkt. #604 at 15-19.

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 6
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

***Question 3:*** *Does the attorney-client privilege apply to guidance from a lawyer on corporate procedures, such as whom to include on an email, how to format a document, or where to save a document in the system?*

Guidance from a lawyer on corporate procedures could be privileged only if the "primary purpose" of the guidance was to provide "legal advice, as opposed to business or [other non-legal] advice." *Greer*, 127 F.4th at 1224 (quoting *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021)) (brackets in original). A communication can only have one "primary purpose." *Id.* (citation omitted). If the lawyer in question was in-house, the party asserting privilege would need to make a "clear showing" that in-house counsel was acting as a legal advisor. *See Oracle*, 2011 WL 3794892, at *3-4 (citation omitted).

An attorney's guidance on business or operational issues is not privileged. *See De Coster v. Amazon.com, Inc.*, 2025 WL 904465, at *9 (W.D. Wash. Mar. 25, 2025) (finding that Amazon "improperly designated operational, business, and strategic documents as attorney-client communications," and distinguishing between "technical/operational issues, strategic goals for the company . . . [and] regulatory demands," and "the provision of legal advice"); *FTC v. Amazon.com, Inc.*, 2025 WL 821890, at *4-5 (W.D. Wash. Mar. 14, 2025) (finding that any in-house counsel input on a document "about operational and business considerations" would not be privileged); *Garner*, 2024 WL 4266665, at *4 (rejecting privilege claims over "operational, business, and strategic documents"). Attorney guidance about "corporate procedures, such as whom to include on an email, how to format a document, or where to save a document in the system" is guidance on business or operational matters, and therefore would not be protected by privilege.

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 7
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

It is possible that attorney guidance on corporate procedures could also touch on legal issues. In that situation the Court would need to determine whether the primary purpose of the communication was to provide legal advice or operational/business advice.

*Question 4:* *How do courts apply the attorney-client privilege to communications policies and guidelines that are limited to communications guidance but are designed and implemented by in-house counsel for the purpose of mitigating legal risk?*

Plaintiffs are not aware of any authority specifically addressing the application of the attorney-client privilege to "communications policies and guidelines that are limited to communications guidance but are designed and implemented by in-house counsel for the purpose of mitigating legal risk." However, based on relevant case law, including recent Ninth Circuit precedent and this Court's April 29, 2026 Order, Dkt. #678 (which Amazon has not challenged), the communications policies and guidelines described in the Court's question would not be privileged.

As a starting point, "communications policies and guidelines . . . designed and implemented by in-house counsel," Dkt. #683, could only be privileged if their "primary purpose . . . is to give or receive legal advice." *See In re Grand Jury*, 23 F.4th at 1091-92; *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1179 (9th Cir. 2025), *petition for cert. filed*, 94 U.S.L.W. 3374 (U.S. May 21, 2026) (No. 25-1311). But while companies may discuss and consider privileged legal advice when setting their corporate policies, those policies themselves are a business decision and are not privileged. As the Court explained in its April 29 Order, "corporate policies . . . are typically not privileged (*even if* motivated by legal concerns) because they concern business matters, not legal advice." Dkt. #678 at 28; *accord In re Domestic Drywall*, 2014 WL 5090032, at *4 (antitrust compliance policy was not privileged; "[a]lthough it is based

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 8
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

on legal advice, the policy is primarily a business policy”); *Stevens*, 2016 WL 397936, at *4; *Sherwood*, 325 F.R.D. at 661.

The Ninth Circuit’s recent decision in *Epic Games, Inc. v. Apple Inc.* shows that attorneys’ involvement in what is primarily a business matter—even if that involvement is to address legal risk—does not confer privilege on an otherwise non-privileged communication. 161 F.4th at 1179-80. Apple asserted privilege over two internal presentations “prompted by a Court order,” respectively titled “Proposed responses to Epic injunction” and “Epic Injunction Implementation Proposal.” *Id.* at 1179. According to Apple, the presentations included an analysis of the “‘requirements’ imposed by the district court’s injunction” and “walked through benefits and risks associated with various compliance routes,” “unambiguously document[ing] legal advice Apple received about how it could comply with the injunction.” Apple Opening Brief, *Epic Games, Inc. v. Apple Inc.*, 2025 WL 3730938, at *59 (9th Cir. June 23, 2025). Apple claimed the “documents were privileged because their ‘primary purpose’ was to ‘receive legal advice’ about injunction compliance.” *Id.* at 59-60 (citation omitted).

The Ninth Circuit held that “Apple [had] not presented a close privilege call, even reviewing de novo,” because a review of the documents showed that “legal advice was not the primary purpose of the communications.” *Epic*, 161 F.4th at 1179-80. The court squarely rejected Apple’s argument that the documents “were prompted by a Court order,” explaining: “Apple must do more than show the dual-purpose communication was made because of the need to give or receive legal advice. The fact that the Injunction prompted, or caused, these communications is not enough.” *Id.* at 1179 (cleaned up).

*Epic* demonstrates that there is no “legal risk” exception to the “primary purpose” test. If the primary purpose of a communication is a business matter rather than legal advice, that

PLAINTIFFS’ SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT’S
JUNE 18, 2026 ORDER (DKT. #683) - 9
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

communication is not privileged, even if attorneys were involved in that communication in an effort to address legal risks. Attorneys were involved in Apple's deliberations about how to comply with a court-ordered injunction—plainly a matter involving legal risk for the company— but the presentations at issue in *Epic* were not privileged because "legal advice was not [their] primary purpose." *Id.* at 1179-80. It follows that a corporate communications policy—ordinarily a business matter, not legal advice—would not become privileged because it was "designed and implemented by in-house counsel for the purpose of mitigating legal risk."

* * *

In the interest of completeness, Plaintiffs briefly raise two additional issues that may be relevant to the Court's *in camera* review.

First, to the extent the Court finds that certain documents—including documents implicated by the questions above—are privileged, the crime-fraud exception to privilege may apply. *See* Dkt. #604 at 20-23.

Second, as Plaintiffs noted in the parties' May 27, 2026 Joint Status Report, Amazon has narrowed or revised its privilege claims for 14 of the 30 documents (46.6%) Plaintiffs identified for the Court's *in camera* review. *See* Dkt. #681 at 6-7. Those changes undermine Amazon's argument that a privilege re-review is unwarranted because "Amazon has already reviewed (or re-reviewed in some cases) all documents produced in this litigation following the Court's privilege guidance," Dkt. #635 at 18, and support Plaintiffs' position that a re-review is necessary. Dkt. #604 at 24. To the extent the Court needs to consider materials beyond Amazon's privilege log and Amazon's documents themselves to determine whether those documents are privileged, that further suggests that Amazon's privilege log is not adequate to support its claims. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring a party claiming privilege to

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 10
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

"describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim").

Dated: June 25, 2026

Respectfully submitted,

*s/ Edward H. Takashima*
EDWARD H. TAKASHIMA (DC Bar # 1001641)
CHRISTOPHER A. GRAHAM (NY Reg. # 5649389)

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.:    (202) 326-2464 (Takashima)
Email: etakashima@ftc.gov
          cgraham@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

I certify that this memorandum contains 3,147 words, in compliance with the Court's order in Dkt. #683.

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 11
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

s/ Michael Jo
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

s/ Nicole Demers
Nicole Demers (admitted *pro hac vice*)
Deputy Associate Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: nicole.demers@ct.gov
*Counsel for Plaintiff State of Connecticut*

s/ Alexandra C. Sosnowski
Alexandra C. Sosnowski (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

s/ Christopher J. Campbell
Christopher J. Campbell (admitted *pro hac vice*)
Assistant Attorney General
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-0858
Email: Chris.Campbell@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

s/ Timothy D. Smith
Timothy D. Smith, WSBA No. 44583
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.oregon.gov
*Counsel for Plaintiff State of Oregon*

s/ Jennifer A. Thomson
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

s/ Michael A. Undorf
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

s/ Christina M. Moylan
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 12
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

s/ Schonette Walker
Schonette Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6473
Email: swalker@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: katherine.krems@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

s/ Scott A. Mertens
Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*

s/ Zach Biesanz
Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

s/ Andrew Esoldi
Andrew Esoldi (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-7819
Email: andrew.esoldi@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

s/ Anthony R. Juzaitis
Anthony R. Juzaitis (admitted *pro hac vice*)
Deputy Attorney General, Civil Affairs
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 651-7565
Email: AJuzaitis@nmag.gov
*Counsel for Plaintiff State of New Mexico*

s/ Zulma Carrasquillo Almena
Zulma Carrasquillo Almena (admitted *pro hac vice*)
Senior Attorney & Special Prosecutor
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900, Ext. 1211
Email: zcarrasquillo@justicia.pr.gov
*Counsel for Plaintiff Commonwealth of Puerto Rico*

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 13
CASE NO. 2:23-cv-01495-JHC

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*s/ Alexander Carnevale*
Alexander Carnevale (admitted *pro hac vice*)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: acarnevale@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

*s/ Sarah L.J. Aceves*
Sarah L.J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: Sarah.Aceves@vermont.gov
*Counsel for Plaintiff State of Vermont*

*s/ Caitlin M. Madden*
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Counsel for Plaintiff State of Wisconsin*

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S
JUNE 18, 2026 ORDER (DKT. #683) - 14
CASE NO. 2:23-cv-01495-JHC

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222