UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION ET AL., | CASE NO. 2:23-cv-01495-JHC |
| Plaintiffs, | ORDER |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

**I**
**INTRODUCTION**

This matter comes before the Court on the April 29, 2026 Order authorizing a limited *in camera* review (Dkt. # 678), Plaintiffs' List of Documents for *In Camera Review* (Dkt. # 679), the parties' supplemental filings (Dkt. ## 685, 689, & 690), and the parties' direct submissions to the Court in connection with this review.  Having reviewed the pertinent materials, the Court now issues the following rulings and explanations regarding the 30 documents in question.

ORDER - 1

## II
### DISCUSSION

A.    Document Nos. 1, 14, 15, & 19[1] (43501, FTCRTL0000227, FTCRTL0000229, & FTCRTL0021995)

Document Nos. 1, 14, 15, & 19 are PRIVILEGED in whole or in part.

These documents consist of legal memoranda, prepared by in-house counsel and shared with employees, for the primary purpose of conveying legal advice.  The documents contain fact-specific legal advice, recommendations on how to avoid future liability, and actual legal analysis from in-house counsel.  Defendant has thus properly withheld these documents, either in whole or in part, based on the attorney-client privilege.[2]

B.    Document Nos. 17, 20, 22, 25, & 29 (FTCRTL0012690, FTCRTL0022015, FTCRTL0022526, FTCRTL0029688, & FTCRTL0045228)

Document Nos. 17, 20, 22, 25, & 29 are PRIVILEGED in whole or in part.

These documents consist of email and chime messages between in-house counsel and employees for the primary purpose of conveying or seeking legal advice.  The messages discuss specific legal concerns, include explicit legal guidance, and address concrete issues and strategy related to the FTC investigation.  Defendant has thus properly withheld Document Nos. 17, 20,

---

[1] "Document No." refers to the number assigned to each document by Plaintiffs' List of Documents for *In Camera Review* (Dkt. # 679).

[2] *See, e.g.*, *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (The attorney-client privilege applies if "the primary purpose of the communication is to give or receive legal advice, as opposed to business or [other non-legal] advice.") (quoting *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021)); *id*. at 1226–27 (finding documents privileged because their primary purpose is "assessing legal liability for a past event and avoiding legal liability for future similar events"); *Tsantes v. BioMarin Pharm. Inc.*, 2022 WL 17974487, at *1 (N.D. Cal. Dec. 7, 2022) ("Where an attorney 'gives a client legal advice on a business decision, that communication is protected by privilege.'") (quoting *L.D. v. United Behav. Health*, 2022 WL 3139520, at *13 (N.D. Cal. Aug. 5, 2022)); *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *3 (N.D. Cal. Aug. 26, 2011) (The attorney-client privilege applies if the communication "constitutes a communication related to the purpose of obtaining legal advice from a legal advisor in [their] capacity as such."); *In re Premera Blue Cross Customer Data Sec. Breach Litig. (Premera I)*, 296 F. Supp. 3d 1230, 1244 (D. Or. 2017) (explaining that communications would be privileged if they "were sent to or from counsel seeking or providing actual legal advice, such as about possible legal consequences of proposed text or an action being contemplated by [the company]").

ORDER - 2

22, & 29, either in whole or in part, based on the attorney-client privilege.[3]  For the same reasons, Document No. 25 is now also properly withheld, subject to Defendant's recent downgrade of this document from "Wholly Privileged" to "Partially Privileged - Redacted."  *See* Cover Sheet for Document No. 25.

C.    Document No. 28 (FTCRTL0045200)

Document No. 28 is PRIVILEGED in part.

This document is a strategy document that contains a one-sentence "legal note" on page 15.  Defendant asserts that this note was written by in-house counsel, *see* Cover Sheet for Document No. 28, and the Court sees no reason to doubt this assertion.  The redacted sentence thus reflects counsel's opinions and legal advice concerning the possible risks of Amazon's grocery strategy, and so it was properly withheld by Defendant as privileged.[4]

D.    Document No. 21 (FTCRTL0022465)

Document No. 21 is PRIVILEGED in whole.

This document is a memorandum prepared by business employees pursuant to a request from Amazon's Litigation and Regulatory Department.  While the document itself concerns business matters, its primary purpose appears to be disclosure of information to Amazon's attorneys to allow them to assess legal risk and advise on next steps for the proposed experiment. Defendant has thus properly withheld this document based on the attorney-client privilege.[5]

---

[3] *See* Footnote 2.

[4] *See* Footnote 2; *see also Premera I*, 296 F. Supp. 3d at 1242 ("If underlying edited or redlined documents contain legal advice from counsel, those documents (or at least the edits or redlines) are entitled to protection."); *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) ("Counsel's comments on, and revisions to, drafts of documents that are intended for ultimate disclosure to third parties can be privileged to the extent that the comments and revisions communicate legal advice and have been maintained confidential.").

[5] *See* Footnote 2; *see also In re Premera Blue Cross Customer Data Sec. Breach Litig. (Premera II)*, 329 F.R.D. 656, 661 (D. Or. 2019) (The attorney-client privilege applies to "reports and other documents generated at the request of in-house counsel or risk management if done for the purpose of

ORDER - 3

E.    Document No. 23 (FTCRTL0026472)

Document No. 23 is PRIVILEGED in part.

This document was recently downgraded by Defendant from "Wholly Privileged" to "Partially Privileged-Redacted."  As the redacted 2-minute portion involves the presenter transmitting legal advice received directly from counsel, Document No. 23 is now properly withheld in part based on the attorney-client privilege.[6]

F.    Document No. 30 (FTCRTL0045250)

Document No. 30 is PRIVILEGED in part.

The redacted portions of this document consist of: (1) an email from an attorney conveying certain opinions; and (2) in-document edits to a business document by that same attorney.  As both the email and the edits provide guidance on possible legal risks and reflect analysis from the attorney in their role as a legal adviser, the edits and email were properly withheld by Defendant based on the attorney-client privilege.[7]

G.    Document Nos. 18 & 26 (FTCRTL0020988 & FTCRTL0037845)

Document Nos. 18 & 26 are NOT PRIVILEGED.

These documents were recently downgraded by Defendant from "Wholly Privileged" to "Not Privileged."  Based on Defendant's representations, unredacted copies of these documents have been shared with Plaintiffs.  *See* Cover Sheets for Document Nos. 18 & 26.  The Court thus need not order Defendant to produce these documents.

---

assisting to address issues of liability or to avoid or prepare for litigation."); *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege.").

[6] *See* Footnote 2; *see also United States v. Rite Aid Corp.*, 2021 WL 1196250, at *5 (E.D. Cal. Mar. 30, 2021) ("[C]ourts have held that the privilege may apply to 'a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel[.]'") (quoting *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002)).

[7] *See* Footnote 5.

ORDER - 4

H.      Document Nos. 2, 5, & 9 (AMZ_LOG_000204132, FTCRTL0000159, & FTCRTL0000200)

Document Nos. 2, 5, & 9 are NOT PRIVILEGED.

These documents consist of wiki pages drafted by unknown members of Amazon's legal team. Although supposedly drafted by a lawyer, the withheld portions of these documents do not appear to involve a lawyer acting in their professional capacity as a legal adviser. These documents do not include any legal analysis, fact-specific legal advice, or guidance concerning possible legal risks; they contain only general communications guidance and read like corporate communications policies, not confidential legal memoranda prepared for the primary purpose of providing legal advice.

The primarily business, i.e., non-legal, purpose of these documents is further belied by their titles and descriptions—"Document writing top tips," "Full Communications Policy," and a "brief reminder of best practices for written communications at Amazon"—as well as their widespread distribution throughout the organization. *See* Dkt. # 689 at 6–7 (Document Nos. 2 & 5 are "accessible by all Amazon employees"); *id*. at 8 (Document No. 9 is "accessible by any attorney at Amazon and business employees working within the Worldwide Operations business unit"). These documents are thus not protected by the attorney-client privilege,[8] and so must be produced by Defendant in whole.

_____

[8] *See, e.g.*, *Stevens v. Corelogic, Inc*, 2016 WL 397936, at *4 (S.D. Cal. Feb. 2, 2016) (rejecting claim of privilege over a written legal compliance policy and explaining that "conversations between counsel and the corporate client leading up to the adoption of the policy would be privileged, but the policy itself would not be protected by the attorney-client privilege"); *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1179 (9th Cir. 2025), *cert. granted in part*, WL 1871316 (U.S. June 30, 2026) (rejecting claim of privilege over corporate presentations that concerned compliance with a court order because "legal advice was not the primary purpose of the communications"); *Logsdon v. BNSF Rwy. Co.*, 2016 WL 11969813, at *2 (D. Neb. Feb. 17, 2017) ("General policy statements and instructional guides, the purpose of which is to notify employees of legal requirements, is not specific legal advice."); *In re Domestic Drywall Antitrust Litig.*, 2014 WL 5090032, at *4–5 (E.D. Pa. Oct. 9, 2014) (rejecting claim of privilege over a corporate compliance policy because the policy "is general and does not contain any

ORDER - 5

I.  Document Nos. 3, 4, 7, 10, 11, 12, & 13 (FTCRTL0000147, FTCRTL0000155, FTCRTL0000194, FTCRTL0000202, FTCRTL0000203, FTCRTL0000204, & FTCRTL0000218)

Document Nos. 3, 4, 7, 11, 12, & 13 are NOT PRIVILEGED.  Document No. 10 is PRIVILEGED in part.

These documents consist of training materials prepared by in-house counsel concerning the basics of attorney-client privilege and antitrust law.  These materials concern legal topics.  And at the end of Document No. 10, an attorney conveys actual legal advice during a short Q&A with employees.  But apart from this Q&A, these documents do not contain any specific legal advice.  Instead, the presentations merely: (1) reiterate Amazon's general corporate communications policies, which are non-privileged for the reasons discussed in the Court's Order at Dkt. # 678 and part II(H) above; and (2) discuss general legal concepts and principles relating to antitrust and privilege law, which, in the absence of any fact-specific applications, requests for legal advice, or sharing of specific legal advice, does not trigger the attorney-client privilege.

The non-privileged nature of these documents is further confirmed by their contents.  For example, in Document No. 10, the presenter states that all the examples—examples that also appear in some of the PowerPoints—are "made up" and meant to be "illustrative," thereby confirming the non-specific nature of counsel's purported "legal advice."  Defendant's claim of

specific advice" and "[n]o court has yet held that a corporate policy of lawfulness is protected from discovery as privileged"); *Sherwood v. BNSF Rwy. Co.*, 325 F.R.D. 652, 661 (D. Idaho May 9, 2018), *clarified in* 2018 WL 2228889 (D. Idaho May 15, 2018) ("A corporation's legal compliance policy that serves as a reference or instructional guide to corporate employees is primarily a 'business' policy rather than a 'legal' policy, even if based on the advice of counsel."); *Virtru Corp. v. Microsoft Corp.*, 2024 WL 2133953, at *2 (W.D. Wash. May 10, 2024) (collecting cases and explaining that claims of privilege may be defeated if the document is shared beyond the select group of employees who "need to know" the document's contents); *Garner v. Amazon.com, Inc.*, 2024 WL 4266665, at *2 (W.D. Wash. Sept. 23, 2024) (rejecting claim of privilege where "neither the authors nor the recipients of the document are identified, and the substance addresses purely operational considerations and how to prioritize them").

ORDER - 6

privilege is also undermined by the widespread dissemination of these materials throughout the organization and by Defendant marking these documents as "Wholly Privileged," despite many containing portions that are obviously not protected by the attorney-client privilege.[9]  The Court thus concludes that these documents are general educational materials presented by lawyers in their business capacities,[10] not privileged communications for the primary purpose of conveying actual legal advice on antitrust issues or privilege law.[11]  Defendant is thus required to produce these materials in full, minus the short Q&A session at the end of Document No. 10.

---

[9] The clearly non-privileged sections include: the agenda and questions slides, the introductory and conclusory remarks in the training videos, and the many minutes spent discussing technical problems in Document No. 10, among others.

[10] *See* Footnote 8; *see also Logsdon*, 2016 WL 11969813, at *2 ("Documents which merely explain an area of law fall outside the privilege: A summary of applicable law, by itself, neither reveals nor threatens to expose any client confidential communications."); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 431 (N.D. Ill. 2006) (rejecting claim of privilege over portions of an antitrust compliance manual drafted by counsel because "[n]o advice is reflected" and "no confidential confidences are revealed"); *In re Sulfuric Acid Antitrust Litig.*, 432 F. Supp. 2d 794, 796 (N.D. Ill. 2006) (rejecting claim of privilege over an antitrust manual and the hypothetical scenarios therein in because it is "clear that the manuals were in fact instructional devices, not responses to requests for legal advice[:] [t]hey were designed to make clear to [certain employees] that [the company] operated under competition laws that could restrict their interactions with customers and others and to sensitize [such employees] to the need for care and circumspection in potentially compromising situations"); *Hartford Life Ins. Co. v. Bank of Am. Corp.*, 2007 WL 2398824, at *6 (S.D.N.Y. Aug. 21, 2007) (rejecting claim of privilege over a due diligence presentation prepared and presented by counsel because the presentation "contains only generic descriptions of the law as it might apply to the [applicable] industry" and "does not [ ] apply any of these generalized legal principles to specific factual situations nor does it indirectly disclose any inquiry by or concern of [the company] that would not be self evident from the nature of [its] business"); *In re Domestic*, 2014 WL 5090032, at *1, 4–5 (rejecting claim of privilege over materials that were "intended to provide employees with an overview of general antitrust law principles and procedures" and "summarize[ ] anti-competitive practices to be avoided, provide[ ] guidance for situations that could lead to violations, and detail[ ] possible sanctions for antitrust violations"); *Oracle*, 2011 WL 3794892, at *3 (rejecting claim of privilege in part because "the contents of the [communication] itself severely undermine the claim that [the employee] generated [the] particular [communication] as part of an attorney-directed effort to provide legal advice or prepare for litigation").

[11] *See, e.g.*, *Freedom of the Press Found. v. U.S. Dep't of Just.*, 241 F. Supp. 3d 986, 1002 (N.D. Cal. 2017) (finding training materials partially privileged because they "contained legal advice from [counsel] to [employees] on the use of [national security letters] as an investigative technique" and the "withheld portions described legal issues and scenarios involving the use of [such letters]"); *Meyer v. Cnty. of San Diego*, 2025 WL 776192, at *8 (S.D. Cal. Mar. 11, 2025) (finding training materials privileged because the defendant affirmatively established that such materials "were prepared and presented by attorneys providing legal advice to [employees] to avoid prospective litigation"); *McKnight v. Honeywell Safety Prods. USA, Inc.*, 2019 WL 452741, at *2 (D.R.I. Feb. 5, 2019) (finding training

ORDER - 7

J.    Document Nos. 6, 8, 16, & 27 (FTCRTL0000170, FTCRTL0000198, FTCRTL0000230, & FTCRTL0040276)

Document Nos. 6, 8, 16, & 27 are PRIVILEGED in part.

Like the documents in part II(H) above, these documents are widely distributed documents, drafted by unknown members of Amazon's legal team that convey communications guidance. But unlike the documents in part II(H) above, these documents are not limited to communications guidance: they include general communications guidance *and* advice that reflects counsel's analyses of possible legal risks, interpretation of privilege law and antitrust principles, and application of legal standards to specific factual scenarios faced by Amazon employees. Accordingly, Defendant correctly withheld parts of these documents—those that convey legal advice[12]—but improperly withheld other parts of these documents—those that merely convey communications guidance and reiterate Amazon's corporate communications policies.[13]

Defendant is thus required to produce these documents to Plaintiffs but may apply redactions.[14] Specifically, Defendant must produce all sections that are equivalent to or identical to the non-privileged materials discussed in parts II(H) and (I) above. For example, Defendant

---

document privileged because its "content is pure legal advice, which was communicated to an employee who has testified that she was 'seeking legal advice,' related to her job, by an attorney who has averred that she was 'providing legal advice'") (citations omitted); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 5180, at *2 (N.D. Ill. Jan. 3, 1996) (finding presentation privileged because it "describe[s] the application of the antitrust laws to specific aspects of [the] business"); *State ex rel. Montpelier U.S. Ins. Co. v. Bloom*, 757 S.E.2d 788, 799 (W. Va. 2014) (finding training materials privileged where the documents "explain legal concepts and procedures and specific policy issues" and "clearly demonstrate specific requests by [counsel's] clients for legal opinions on specific subjects").

[12] *See* Footnote 2.
[13] *See* Footnote 8.
[14] *See Est. of Serna v. Cnty. of San Diego*, 689 F. Supp. 3d 848, 863 (S.D. Cal. 2023), *aff'd sub nom. Est. of Serna by & through Gilliland v. Cnty. of San Diego*, 2024 WL 942368 (S.D. Cal. Mar. 5, 2024) ("[R]edaction is available for documents" that contain both legal and nonlegal advice, where nonlegal advice "is the predominant purpose of the communication.") (citation and internal quotation marks omitted).

ORDER - 8

must produce the row headers and the "Do's and Don'ts" for the row titled "Marking documents 'Privileged and Confidential'" in Document Nos. 6 & 8. Defendant may, however, redact any sections of these documents that reflect more specific legal advice or analysis. For example, Defendant is not required to produce the "Do's and Don'ts" for the row titled "Describing the various shopping formats and channels operated by Amazon" in Document Nos. 6 & 8 or the FAQ and client hypotheticals in Document Nos. 16 & 27.

K.      Document No. 24 (FTCRTL0029120)

        Document No. 24 is PRIVILEGED in part.

        This document was recently downgraded by Defendant from "Wholly Privileged" to "Partially Privileged-Redacted." One redacted portion—the section titled "2. Best Practices, Documents and Communication"—remains properly withheld on the basis of attorney-client privilege, as it reflects fact-specific information, legal analysis, and actual legal advice from counsel.[15] The other redacted portion—the section titled "6. Legal Questions" is improperly withheld, as it merely conveys information on corporate procedures and policies, such as who to email, and does not contain any actual legal advice.[16] Defendant is thus required to produce this document to Plaintiffs with Section 6 unredacted.[17]

---

[15] *See* Footnote 2.
[16] *See* Footnote 8.
[17] *See* Footnote 14.

ORDER - 9

L.    Additional Notes

Given the above, as well as the parties' briefing and the forthcoming motion for re-review that the Court anticipates receiving from Plaintiffs, the Court believes it useful to conclude with the following observations.

First, the Court acknowledges the massive number of documents at issue and the enormous burden on Defendant to appropriately withhold all documents that are legitimately subject to the attorney-client privilege.  Even so, the Court affirms that it is Defendant that bears the burden of proving the applicability of the attorney-client privilege.  *See In re Grand Jury Invest.*, 974 F.2d 1068, 1070 (9th Cir. 1992) ("The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications.").  And it is Defendant that bears the burden of supporting its claims of privilege with a detailed privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed—and do[es] so in a manner that . . . will enable [Plaintiffs] to assess the claim."  Fed. R. Civ. P. 26(b)(5)(ii).  The Court is thus concerned that: (1) Defendant felt the need to provide the Court with additional, supplemental privilege log descriptions for *every* document submitted to the Court for the instant *in camera* inspection; (2) for many documents, Defendant's additional descriptions effectively rewrote the privilege log and/or significantly expanded upon the initial privilege log description; and (3) in practice, the Court needed to consult many of these descriptions, as well as Defendant's supplemental declaration at Dkt. # 689, to properly evaluate Defendant's claims.  These observations suggest that Defendant's original privilege log suffers from certain deficiencies and is therefore insufficient to sustain all of Defendant's privilege claims.

Second, the Court notes that between Defendant's voluntary downgrades and the Court-ordered downgrades in this Order, a significant percentage of the documents at issue in this *in*

ORDER - 10

*camera* review have now been deemed not privileged either in whole or in part. The Court thus agrees with Plaintiffs that some degree of re-review is necessary to ensure that Defendant does not continue to withhold documents based on an improper application of the attorney-client privilege.

Third, the Court wishes to clarify that despite its rulings above, it is not equally concerned by all the downgrades addressed in this Order. The Court is not too concerned by its own downgrades, as the primary purpose test is a fact-specific inquiry and reasonable minds could differ as to how the attorney-client privilege applies to training materials and communications guidance prepared by in-house counsel. The Court is, however, concerned by Defendant's voluntarily downgrades, as they reflect clear misapplications of the attorney-client privilege that likely would not have come to light but for this *in camera* review. For example, Document No. 23—an almost two-hour long business meeting—was originally designated by Defendant as "Wholly Privileged" despite a total absence of lawyers and legal advice in all but two minutes of the recording. The existence of any, let alone multiple, downgrades of this nature in this small subset of documents thus raises serious questions about the extent to which the attorney-client privilege has been properly applied to the full set of documents withheld by Defendant.

Finally, the Court acknowledges, but ultimately rejects, Plaintiffs' request to evaluate Defendant's remaining privilege claims under the crime-fraud exception. *See* Dkt. # 685 at 13; *see also* Dkt. # 604 at 25–28. Although the crime-fraud exception can be used to legitimately pierce the attorney-client privilege, "[t]he burden of overcoming [the] attorney-client privilege under the crime-fraud exception is high" and "[a] mere accusation of crime or fraud is not sufficient[.]" *Virtue Glob. Holdings Ltd. v. Rearden LLC*, 2016 WL 1588268, at *8 (N.D. Cal. Apr. 20, 2016). And the Court did not find that Plaintiffs satisfied this burden in its prior Order,

ORDER - 11

nor did it order an *in camera* review on this basis. *See generally* Dkt. # 678. The Court thus declines to consider the crime-fraud exception now.[18]

### III
#### CONCLUSION

Based on the above, the Court:

(1) ORDERS Defendant to produce the following documents to Plaintiffs: Document Nos. 2, 3, 4, 5, 7, 9, 11, 12, & 13. These documents must be produced in whole, and should be produced to Plaintiffs on or before July 15, 2026.

(2) ORDERS Defendant to produce the following documents to Plaintiffs: Document Nos. 6, 8, 10, 16, 24, & 27. These documents may be produced in whole or in part, and should be produced to Plaintiffs on or before July 15, 2026. If produced in part, Defendant is permitted to redact the following sections: (a) the attorney-employee Q&A session at the end of Document No. 10; (b) the specific examples, legal analyses, and discussions of legal risks in Document Nos. 6, 8, 16, & 27 (as explained in part II(J) above); and (c) the section titled "2. Best Practices, Documents and Communication" in Document No. 24.

(3) AUTHORIZES Plaintiffs to move for a privilege re-review. For the sake of efficiency, the Court requests that any such request is narrowly tailored to the privilege issues identified in this Order and the Court's Order at Dkt. # 678, considers the Court's commentary in part II(L) above, and is supported by a detailed, workable proposal that requires minimal court involvement. The Court also DIRECTS the parties to meet and confer before Plaintiffs file such a motion.

---

[18] *See, e.g.*, *Grand Jury*, 974 F.2d at 1074 (explaining that an *in camera* review "is an intrusion which must be justified"); *United States v. Zolin*, 491 U.S. 554, 571–72 (1989) (setting forth the standard for determining when an *in camera* review based on the crime-fraud exception is appropriate).

ORDER - 12

Dated this 7th day of July, 2026.

John H. Chun
United States District Judge

ORDER - 13