THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, et al.,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

Case No. 2:23-cv-01495-JHC

**AMAZON'S MOTION TO EXCLUDE EXPERT OPINIONS OF DR. ANDREAS GROEHN**

NOTE ON MOTION CALENDAR:
December 23, 2026

*ORAL ARGUMENT REQUESTED*

**FILED UNDER SEAL**



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## TABLE OF CONTENTS


INTRODUCTION ....... 1

BACKGROUND ....... 2

A. Plaintiffs' Expert Disclosures ....... 2

B. Dr. Groehn's "Economic Framework" ....... 3

C. Dr. Groehn's Analysis of Amazon Documents ....... 5

D. Dr. Groehn's Empirical Analyses ....... 6

LEGAL STANDARD ....... 6

ARGUMENT ....... 7

I. Dr. Groehn's Price Leadership Opinions Should Be Excluded in Full ....... 7

II. Dr. Groehn's Opinions on Intent and State of Mind Should Be Excluded ....... 9

III. Dr. Groehn's "Calculation" of Nessie's Profit Impact Should Be Excluded ....... 11

IV. Dr. Groehn's Cherry-Picked Case Studies Should Be Excluded ....... 11

V. Dr. Groehn's New Reply Analyses Should Be Excluded ....... 12

CONCLUSION ....... 12




MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## TABLE OF AUTHORITIES


Page(s)

**CASES**

*Aya Healthcare Servs., Inc. v. AMN Healthcare*, Inc.,
613 F. Supp. 3d 1308 (S.D. Cal. 2020) ... 9

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ... 1

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ... 8

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ... 6

*Eritrean Ass'n of Greater Seattle v. Gebrekidan*,
2026 WL 2211177 (W.D. Wash. July 31, 2026) ... 8

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ... 7, 8

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
957 F.3d 979 (9th Cir. 2020) ... 11

*Johnson v. Grays Harbor Cmty. Hosp.*,
2007 WL 4510313 (W.D. Wash. Dec. 18, 2007) ... 12

*Klein v. Meta Platforms, Inc.*,
766 F. Supp. 3d 956 (N.D. Cal. 2025) ... 7

*MetroNet Servs. Corp. v. Qwest Corp.*,
383 F.3d 1124 (9th Cir. 2004) ... 12

*Moussouris v. Microsoft Corp.*,
311 F. Supp. 3d 1223 (W.D. Wash. 2018) ... 11

*R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*,
2011 WL 2923703 (D. Nev. July 18, 2011) ... 12

*Roost Project, LLC v. Andersen Constr. Co.*,
2020 WL 13094357 (D. Idaho Oct. 24, 2020) ... 11

*Simmons v. Safeway, Inc.*,
2019 WL 2921013 (W.D. Wash. July 8, 2019) ... 9, 10

*Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*,
927 F. Supp. 2d 1069 (D. Or. 2013) ... 9




MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*United States v. Hermanek*,
289 F.3d 1076 (9th Cir. 2002) .......... 8

*United States v. Town of Colorado City*,
2015 WL 11163601 (D. Ariz. Mar. 16, 2015) .......... 11

**RULES**

Fed. R. Evid. 702 .......... 1



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## INTRODUCTION

The Court should exclude the testimony of Andreas Groehn, Ph.D., because his opinions regarding "Project Nessie" are not grounded in any specialized knowledge and would not assist the Court in determining any fact of consequence. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).[1]

Certain Plaintiffs retained Dr. Groehn to "undertake an economic analysis of" Project Nessie. Ex. 31 (Groehn Rep.) ¶ 9.[2] But the only opinions Dr. Groehn offers that he even attempts to link to principles of economics are so completely divorced from the academic literature upon which he relies that they represent nothing more than inadmissible *ipse dixit* statements. Dr. Groehn purports to analyze Amazon's ability to use Project Nessie to induce other retailers to raise their own prices—a concept he describes as "dominant firm price leadership." However, the economic framework Dr. Groehn uses to formulate this analysis is based upon a number of key assumptions, none of which exist in the record of this case. In particular, Dr. Groehn relies upon a theoretical model that explains how firms can engage in price leadership when they are the dominant firm in a ***duopoly*** (i.e., a market with only two sellers, one of which is the ostensible price leader). Dr. Groehn admits that neither this, nor other key conditions, exist with respect to Amazon's first-party retail sales, or to Project Nessie. Instead, he asserts that such disconnects between theory and fact are "not relevant." But an expert cannot offer an analysis that is supported only by his own say-so.

The vast majority of Dr. Groehn's other analyses are not economic opinions at all, but rather interpretations of emails, an instant messenger transcript, and other documents to divine Amazon's intent. As Dr. Groehn acknowledges, each of the documents he discusses "speaks for itself" and thus needs no expert explanation, and he "can't look into the heads of the[] people who

---

[1] Dr. Groehn's disclosed opinions are limited to Project Nessie. Accordingly, this motion would be mooted if the Court grants Amazon's separately filed motion for summary judgment on all claims that are based on Project Nessie.

[2] All numbered exhibits are to the contemporaneously filed Declaration of Molly A. Terwilliger.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

wrote documents" to say what the authors meant by particular words or phrases. Ex. 42 (Groehn Dep.) 64:12-25, 83:7-23, 103:20-104:8. Yet, that is precisely what Dr. Groehn proposes to do, opining as to how the Court should interpret words like "bazooka," "old friend," and perhaps most implausibly of all, "shut down" (a phrase that Dr. Groehn says is "a misrepresentation of what" its author truly "meant"). *Id.* 116:20-117:11, 102:8-103:4, 149:20-150:2. The Court does not require, and would not be aided by, Dr. Groehn's interpretation of these documents. The law is clear that such testimony exceeds the bounds of permissible expert opinion.

Dr. Groehn similarly adds no expert economic analysis with his opinion on Project Nessie's "impact." For that opinion, Dr. Groehn merely takes the bottom-line figures contained in a handful of Amazon documents and totals them up without further analysis. The Court does not need Dr. Groehn's help to perform basic arithmetic.

Dr. Groehn also offers affirmative opinions on four individual products to which Nessie was applied. He admits these products were not selected at random and were not intended "to draw broad conclusions about every Nessie application." Ex. 41 (Groehn Reply) ¶ 55. These opinions should be excluded as irrelevant.

Finally, the Court should exclude all of the untimely quantitative analyses Dr. Groehn first disclosed in his Reply report. He has no justification for failing to produce them earlier.

## BACKGROUND

### A. Plaintiffs' Expert Disclosures

Dr. Groehn is a Managing Director at Berkeley Research Group, an economic consulting firm that primarily provides expert witness support in litigation. Aside from what he described as four brief internships during graduate school, he has spent his entire career in academia and consulting. Ex. 42 (Groehn Dep.) 16:23-21:4. He was retained by the FTC and certain Plaintiff States to "assess Project Nessie from an economic perspective." Ex. 31 (Groehn Rep.) ¶ 9.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

### B. Dr. Groehn's "Economic Framework"

Dr. Groehn analyzes Project Nessie under the "economic framework" of "dominant firm price leadership." *See id.* ¶ 67; Ex. 41 (Groehn Reply) ¶ 39. He begins with "price leadership," which he describes as a pattern in which "one firm regularly adjusts its prices first and others respond." Ex. 31 (Groehn Rep.) ¶ 76. When done by a firm that is "dominant," or "substantially larger or more influential than its rivals," Dr. Groehn claims it "can move the entire market to higher price levels." *Id.* ¶ 77.

Across his two reports, Dr. Groehn relies upon only one piece of literature that develops a unique theoretical framework for how he argues Amazon engaged in price leadership through "Project Nessie": a 1992 article by Deneckere & Kovenock entitled "Price Leadership." In contrast to a vast body of other economic literature addressing the difficulty of exercising price leadership, the Deneckere & Kovenock article uses game theory to predict how price leadership might be exercised in a market with just two firms. Dr. Groehn does not discuss any of the model's assumed marketplace conditions until his reply. Those assumptions are (1) that there is competition between ***only*** two firms (i.e., that the relevant market is a "duopoly"); (2) that other competitors cannot enter the relevant market; (3) that differences exist in the two firms' relative size and capacity to meet marketplace demand; (4) that the products they sell are homogeneous with each other (so that all purchasing decisions would be made on price alone); and (5) that both firms have complete information about the other's pricing. Ex. 41 (Groehn Reply) ¶ 50; *see also* Ex. 29 (Lafontaine Rebuttal) ¶ 380; Ex. 43 (Deneckere & Kovenock) at 144, 146.

Dr. Groehn does not opine that any of these conditions apply to Amazon or Project Nessie. As to the first condition, he agreed Deneckere & Kovenock created their price leadership model by analyzing the game theory choices faced by firms in a duopoly. Ex. 42 (Groehn Dep.) 210:22-211:15, 217:6-218:1. Nevertheless, he did "not independently check[] where Amazon has only one rival." *Id.* 224:7-225:3. Indeed, he conceded Project Nessie "would not work" in a duopoly setting, because inherent in the idea of switching from matching the lowest competitor price to the



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

second-lowest-competitor price is that there are at least three competing sellers in the marketplace. *Id.*; *see also* Ex. 31 (Groehn Rep.) ¶ 31(b) ("In most cases" Nessie operated by raising Amazon's price to that of the second-lowest-priced competitor.).

With respect to competitive entry, Dr. Groehn agreed that for the types of retail products that were involved in Nessie pricing experiments, "[t]here could be entry" over "longer time ranges" beyond a mere "one day or three days." Ex. 42 (Groehn Dep.) 225:11-226:7. He "did not" attempt to determine whether there were capacity differences between Amazon and its competitors—"neither was it relevant" to him. *Id.* 226:15-25. He agreed customers would "[p]ossibly" consider non-price factors in making their purchasing decisions. *Id.* 228:4-229:11. And rather than establishing each firm has "complete information" about the other, he states there are "informational asymmetries." Ex. 41 (Groehn Reply) ¶ 50(e).

Dr. Groehn nevertheless purports to apply that framework of dominant firm price leadership to Project Nessie to explain "how Amazon implemented Project Nessie to profitably influence market-wide prices to the detriment of consumers." Ex. 31 (Groehn Rep.) ¶ 84. To support his contention that Amazon is a "dominant firm price leader," Dr. Groehn cites three pieces of evidence: (1) Amazon's "dominance in the shopper-facing market for online superstores"; (2) Amazon's "price monitoring capabilities"; and (3) a single Amazon document stating [redacted] Ex. 41 (Groehn Reply) ¶ 40. But he did not analyze whether Amazon was even a leading seller of any of the individual products involved in Nessie price experiments, much less that it was a "dominant" seller of all of them. Ex. 42 (Groehn Dep.) 233:22-234:7, 237:11-21, 240:6-10. The four "case studies" Dr. Groehn examines in his opening report in an effort to show that Nessie led to "sustained elevated market prices" consider 21 unique retailers, 19 of which fall outside of the so-called "online superstores market" proffered by Plaintiffs' antitrust market expert. *See* Ex. 31 (Groehn Rep.) ¶ 134 & figs. 8, 10, 12, 14; Ex. 44 (Evans Rep.) ¶ 442.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Dr. Groehn also considers Amazon's price monitoring capabilities evidence of its "dominant firm price leadership." But the concept of a "leader" presupposes the existence of one or more "followers." All of the retailers whose price monitoring strategies Dr. Groehn discusses monitor retailers beyond Amazon. *See* Ex. 41 (Groehn Reply) ¶¶ 158-159. And he does not provide *any* example of a retailer that says it matches Amazon's prices (as opposed to simply monitoring them among others). His final piece of evidence is a single May 2018 document in which Amazon assessed that [redacted]. Ex. 31 (Groehn Rep.) ¶ 89. One statement about what Amazon *was not* in another economic market is not evidence of what Amazon *is* in the United States.

**C. Dr. Groehn's Analysis of Amazon Documents**

Despite purporting to offer an "economic analysis" of Nessie, *id.* ¶ 9, Dr. Groehn spends much of his report opining on Amazon's intent behind using Project Nessie and interpreting communications of Amazon employees he has never met and knows nothing about. Dr. Groehn concludes his opinions by explaining why "Amazon designed and operated Project Nessie," as "confirm[ed]" by Amazon documents. Ex. 41 (Groehn Reply) ¶ 172.

Dr. Groehn devotes one section of his report to examining "Amazon Leadership's Support for Project Nessie." In it, he discusses a January 2022 email in which an Amazon executive asked his team whether they should test allowing prices to rise in response to inflation and mentioned "our old friend Nessie." Ex. 31 (Groehn Rep.) ¶ 126. Dr. Groehn ascribed importance to the fact that the executive did not say "Bad Nessie" or "[m]y archenemy Nessie," but instead chose the word "friend" which signaled "affinity," "familiarity," and "proximity." Ex. 42 (Groehn Dep.) 102:8-103:4, 198:3-12. On that basis, Dr. Groehn intends to testify that Amazon's "management strongly support[ed]" Nessie even after the internal evaluation that led to its 2019 shutdown. *See* Ex. 31 (Groehn Rep.) ¶¶ 126, 131; Ex. 41 (Groehn Reply) ¶ 9.

Dr. Groehn could not recall searching to see whether anyone responded to the executive's email but stated he did not think a response "would change his view." Ex. 42 (Groehn Dep.) 65:22-



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

66:13. When presented with the response stating they did "not recommend reinstating Nessie," and the executive's confirmation that he was "aligned" with their thinking, Dr. Groehn could not recall having ever seen it. *Id.* 199:14-204:17.

### D. Dr. Groehn's Empirical Analyses

The only "empirical" analyses in Dr. Groehn's opening report are "case studies" of four Nessie applications that lasted a total of five days in 2018. *See* Ex. 31 (Groehn Rep.) ¶¶ 132-133, 135, 139, 143, 146 & figs. 8, 10, 12, 14 (two-day [redacted] experiment; one-day [redacted] experiment; one-day [redacted] experiment; one-day [redacted] experiment). He concedes the purpose of these case studies "is not to draw broad conclusions about every Nessie application." Ex. 41 (Groehn Reply) ¶ 55.

For the first time on reply, Dr. Groehn also proffered 27 new empirical analyses, which include topics on which Amazon's expert, Professor Lafontaine, offers no opinions. All of the data on which he relies was available at the time of his opening report. When asked why he did not "conduct those analyses … in connection with [his] opening report," Dr. Groehn replied that it was only "after reading Professor Lafontaine's report" that he "realized" the potential value of doing so. Ex. 42 (Groehn Dep.) 250:8-19.

## LEGAL STANDARD

Rule 702 requires that, "before admitting expert testimony, the district court must perform a gatekeeping role to ensure that the [proffered] testimony is both relevant and reliable." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025). That gatekeeping "'responsibility' ... encompasses the requirement that expert testimony be 'based on sufficient facts or data.'" *Id.* at 1051. "The 'key inquiry' is whether an expert had sufficient factual grounds on which to draw conclusions." *Id.*



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## ARGUMENT

**I. Dr. Groehn's Price Leadership Opinions Should Be Excluded in Full**

Dr. Groehn's opinions are premised on the theory that Amazon exercises dominant firm price leadership. Yet, Dr. Groehn fails to establish either prong—that Amazon is "dominant" or a "price leader." Likewise, his support for the very concept of dominant firm price leadership is an academic article that makes game theory predictions about the behavior of firms in a "duopoly." Ex. 43 (Deneckere & Kovenock);[3] *see also* Ex. 42 (Groehn Dep.) 210:22-211:15. But Dr. Groehn concedes Amazon is not in a duopoly and never articulates how the theoretical duopoly framework upon which he relies could have any application to retail markets with numerous competing sellers. Instead, he asserts simply that "Amazon's position in online retail markets enabled precisely this dynamic, as Amazon is and was substantially larger than its rivals in many categories." Ex. 31 (Groehn Rep.) ¶ 87. Dr. Groehn offers this bottom-line assertion without ever articulating "Amazon's position in online retail markets," who Amazon's "rivals" are, how many rivals there are, or in which categories Amazon is "substantially larger" than those rivals. But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 963 (N.D. Cal. 2025) (expert opinions "must fit not just the literature but also the facts in the record").

Dr. Groehn departs from the theoretical model cited in his report in favor of three standalone pieces of evidence he claims establish Amazon's "dominant firm price leadership." While establishing dominance requires, at minimum, identifying the market Amazon supposedly dominates and the portion it controls, Dr. Groehn offers no such opinions of his own. He relies instead on Plaintiffs' proffered antitrust market expert, Dr. Evans. Ex. 31 (Groehn Rep.) ¶ 88 n.205. But Dr. Evans does not even analyze, much less opine upon, Amazon's "dominance" as a

---

[3] *Id.* at 144 ("In this paper, we construct a model of price leadership in a duopolistic market.… We analyze duopolistic price-setting games" to produce a "game-theoretic model" of price leadership).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

seller of any particular products that were re-priced through Nessie. His "online superstores" market consists only of eBay, Walmart.com, and Target.com. Ex. 44 (Evans Rep.) ¶ 442. Dr. Groehn's case studies, by contrast, span 21 unique retailers—19 of which fall outside of the "online superstores" market. *See* Ex. 31 (Groehn Rep.) figs. 8, 10, 12, 14. Dr. Groehn thus purports to illustrate four examples of Amazon's "dominant firm price leadership" by pointing to retailers that are not even in Plaintiffs' alleged market. There is zero evidence as to whether Amazon "dominates" the broader market covered by Dr. Groehn's four case studies, much less the entire population of retailers against which Nessie was applied. Such a significant "analytical gap between the data and the opinion proffered" is grounds for exclusion. *Eritrean Ass'n of Greater Seattle v. Gebrekidan*, 2026 WL 2211177, at *4 (W.D. Wash. July 31, 2026) (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022)); *see also Joiner*, 522 U.S. at 146 (same).

Dr. Groehn's assertion that Amazon exercises price leadership is at odds with Plaintiffs' antitrust claims relating to Amazon's first-party practice of so-called "price mirroring." His attempt to reconcile the two fails on its own terms. He observes that Amazon uses price matching as its "predominant pricing strategy," while Nessie was used in "the relatively limited context of price deadlocks." Ex. 41 (Groehn Reply) ¶¶ 126-127; *see also* Ex. 42 (Groehn Dep.) 259:1-25 ("[I]t's a very small number of products in a specific time frame that were eligible for Project Nessie, and those were deadlocks as identified by Amazon."). But his own definition of price leadership requires that "one firm ***regularly adjusts its prices first*** and others respond." Ex. 31 (Groehn Rep.) ¶ 76.

Dr. Groehn likewise fails to establish that Amazon is a price "leader" that other retailers reliably "follow." He did not undertake any effort to "quantify or understand" how many competitors "systematically monitor" Amazon's prices. *See* Ex. 42 (Groehn Dep.) 260:19-261:3. Instead, he merely asserts that "in order for Project Nessie to be successful, the rival had to monitor – or had to detect that Amazon raised prices." *Id.* Rule 702 prohibits such "circular, subjective



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

reasoning." *United States v. Hermanek*, 289 F.3d 1076, 1096 (9th Cir. 2002). His scant review of the third-party record suggests no such widespread, systematic monitoring occurs, as he opines that third parties' "monitoring of rival prices pales in comparison to Amazon's." Ex. 41 (Groehn Reply) ¶ 159. And for those competitors that do monitor Amazon's prices, all of them also monitor prices offered by retailers other than Amazon. *Id.* ¶¶ 158-159. Whether and how retailers ***monitor*** prices also says nothing about the retailers' pricing strategies and whether they ***match*** the prices they observe. Dr. Groehn never addresses or considers this topic.

## II. Dr. Groehn's Opinions on Intent and State of Mind Should Be Excluded

After purporting to establish Amazon's dominant firm price leadership, Dr. Groehn transitions to explaining Amazon's intent behind Project Nessie. These opinions should be excluded. An expert may not "simply provid[e] a narrative of [a litigant's] theory of the case." *Aya Healthcare Servs., Inc. v. AMN Healthcare*, Inc., 613 F. Supp. 3d 1308, 1322-23 (S.D. Cal. 2020). Nor can they recite what they "believe[] the facts to be." *Simmons v. Safeway, Inc.*, 2019 WL 2921013, at *2 (W.D. Wash. July 8, 2019). The Court "can and should determine the facts without [an expert's] opinions of the evidence." *Id.* "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case," which the fact-finder is capable of doing itself. *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013).

Dr. Groehn's treatment of a January 2022 email in which an Amazon executive (Doug Herrington) mentioned "[o]ur old friend Nessie" illustrates the danger of expert state of mind testimony. Dr. Groehn first ascribed importance to the email because it was discussing the "major issue" Amazon was facing with rising inflation and was not a "colloquial communication" about having a "barbecue." Ex. 42 (Groehn Dep.) 73:8-74:20. Also important to Dr. Groehn's analysis was the use of "old friend Nessie," rather than "arch enemy Nessie," "the crazy idea of using Project Nessie," or "Bad Nessie." *Id.* 102:8-103:4, 198:3-12. Such language suggested to Dr. Groehn there was an "affinity" to Nessie and signaled "familiarity" and "proximity." *Id.*



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Whatever the meaning or importance (or lack thereof) of the phrase "[o]ur old friend Nessie" in an email from nearly five years ago, Dr. Groehn has no ability to assist the Court in making that determination. As he said, the document "speaks for itself," *id.* 197:19-198:12, and Dr. Groehn "can't talk to Mr. Herrington's belief.... [T]hat is a question for Mr. Herrington and could be addressed in a deposition with Mr. Herrington," *id.* 88:12-24; *see also id.* 67:17-68:4 ("I can't speak for Mr. Herrington, and you would have to ask Mr. Herrington."). Moreover, illustrative of the arbitrariness and complete lack of expert methodology underlying these opinions, even when Dr. Groehn was shown that the answer to Mr. Herrington's question about Project Nessie was that his team did ***not*** recommend using it, Dr. Groehn's reaction was to speculate that since "Doug Herrington was more senior than" the employee making that recommendation, "we don't know what happened with Project Nessie after that." *Id.* 200:24-201:23. But Dr. Groehn ***does*** know what happened to Project Nessie "after that"—the same document shows Mr. Herrington telling his team he was "aligned" with their analysis. *Id.* 203:19-205:17.

The opinion Dr. Groehn intends to offer based on his selective reading of this and other documents is that Amazon's "management strongly support[ed]" Project Nessie, even after it was "shut down" in 2019. *See* Ex. 31 (Groehn Rep.) ¶ 131; Ex. 41 (Groehn Reply) ¶ 9.[4] But the law is clear that opinions on "the meaning of, and interpretation of, the evidence ... are not admissible and directly invade the province of the" factfinder. *Simmons*, 2019 WL 2921013, at *2. One of the reasons they are improper is exactly as Dr. Groehn explains: He "can't look into the heads of these people who wrote documents that were produced." Ex. 42 (Groehn Dep.) 103:20-104:8. The Court should exclude these improper opinions.

[4] Dr. Groehn's selective reading includes saying that the term "shut down" in one document really just meant "paused," and that a 2021 document describes Nessie as an "existing" program when it actually says Nessie was "in deprecation." Ex. 41 (Groehn Reply) ¶ 9; Ex. 42 (Groehn Dep.) 76:9-77:9, 116:20-117:11, 148:23-150:2.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## III. Dr. Groehn's "Calculation" of Nessie's Profit Impact Should Be Excluded

Figure 7 of Dr. Groehn's opening report purports to calculate Nessie's "contribution profit impact over time." Ex. 31 (Groehn Rep.) ¶ 122 & fig. 7. Dr. Groehn himself does not perform any analysis, relying instead on "Amazon's own contemporaneous estimates" taken from five internal Amazon documents and adding those five numbers together to yield the "total" impact. *Id.* at fig. 7. Amazon later determined these prior estimates were overstated and unreliable. Ex. 32 (AMZN-RTL-FTC-13850805) at -805; Ex. 28 (Amazon-FTC-CID_07675017) at -.001, .004. But even setting that aside, this Court does not need an expert to explain to it how to add five numbers together. *See United States v. Town of Colorado City*, 2015 WL 11163601, at *1 (D. Ariz. Mar. 16, 2015) ("A jury does not need help with simple mathematics ...."); *Roost Project, LLC v. Andersen Constr. Co.*, 2020 WL 13094357, at *8 (D. Idaho Oct. 24, 2020) ("[S]traightforward mathematical calculations ... do not require the specialized knowledge of an expert.").

## IV. Dr. Groehn's Cherry-Picked Case Studies Should Be Excluded

The only "empirical" analyses offered in Dr. Groehn's opening report are four "case studies" he used [redacted] Ex. 31 (Groehn Rep.) ¶ 133. Dr. Groehn's case studies suffer from a litany of problems. Not only do they fail to show that Amazon [redacted] Dr. Groehn did not pick these four examples at random. *See id.* ¶¶ 132-133. And even if he had, four examples out of all Nessie applications is a meaningless illustration. *See Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1245 (W.D. Wash. 2018) ("lack of representativeness—combined with the sampling error resulting from the small sample size" made methodology "unreliable"); *Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 983-84, 987 (9th Cir. 2020) (no abuse of discretion in excluding expert who examined 26 out of 441,600 car parts at issue).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

On reply, Dr. Groehn concedes "[t]he purpose of [his] case study analysis is not to draw broad conclusions about every Nessie application." Ex. 41 (Groehn Reply) ¶ 55. But if that is so, then there is no useful purpose for his "case studies" at all.

## V. Dr. Groehn's New Reply Analyses Should Be Excluded

For the first time on reply, Dr. Groehn conducted 27 new empirical analyses. Fourteen of these analyses (Figures 2, 4, 7, 13-17, 20, 22-23, 26-28) relate to the purported effects of Project Nessie on Amazon's prices and margins and should be excluded in full.[5] Professor Lafontaine offers no opinions on these topics, instead opining that [redacted] *See* Ex. 29 (Lafontaine Rebuttal) ¶¶ 385-389 & exhibits 40-41. Rule 26 "permits the admission of rebuttal expert testimony that is 'intended ***solely*** to contradict or rebut evidence on the same subject matter identified by" the other party's expert. *R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011) (emphasis added). Dr. Groehn implicitly concedes his reply covers entirely untrod ground. He responds not to any opinion offered by Professor Lafontaine but instead to her "fail[ure] to report Project Nessie's actual effect on the prices of Amazon" and "fail[ure] to perform a systematic analysis of the margin level of Project Nessie products." Ex. 41 (Groehn Reply) ¶¶ 75, 79. Advancing such "new arguments" is not proper rebuttal. *See R&O Constr.*, 2011 WL 2923703, at *2.

## CONCLUSION

Amazon respectfully requests that the Court exclude Dr. Groehn's opinions for the reasons set forth above.

///

///

///

[5] Dr. Groehn's remaining belatedly disclosed reply analyses should be excluded from being offered as affirmative testimony. *See Johnson v. Grays Harbor Cmty. Hosp.*, 2007 WL 4510313, at *2 (W.D. Wash. Dec. 18, 2007).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

DATED: October 16, 2026.

*I certify that this memorandum contains 4,196 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Molly A. Terwilliger*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**
Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
jschmidtlein@wc.com
khodges@wc.com
jpitt@wc.com
cmetz@wc.com
cpruski@wc.com

**COVINGTON & BURLING LLP**
Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice*)
Kate Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com
dludwin@cov.com
kmitchelltombras@cov.com

*Attorneys for Defendant Amazon.com*