THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, et al.,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

Case No. 2:23-cv-01495-JHC

**AMAZON'S MOTION TO EXCLUDE CERTAIN PORTIONS OF DR. DAVID S. EVANS' TESTIMONY**

NOTE ON MOTION CALENDAR:
December 23, 2026

*ORAL ARGUMENT REQUESTED*

**REDACTED**



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

# TABLE OF CONTENTS

I. BACKGROUND ..... 1
II. LEGAL STANDARD ..... 2
III. ARGUMENT ..... 3
A. Dr. Evans' opinions on survey methodology and reliability should be excluded ..... 4
B. Dr. Evans' sponsored products analysis does not properly implement a SSNIP test ..... 6
IV. CONCLUSION ..... 9



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AU Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
20 F.4th 466 (9th Cir. 2021) ....................7

*Claar v. Burlington N.R.R. Co.*,
29 F.3d 499 (9th Cir. 1994) ....................3

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ....................3

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) ....................4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................3

*Fed. Trade Comm'n v. Meta Platforms, Inc.*
811 F. Supp. 3d 67, 90-91 (D.D.C. 2025)....................7, 9

*Fed. Trade Comm'n v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ....................3

*Gen. Elec. Co. v. Joyner*,
522 U.S. 136 (1997)....................9

*Gunaratna v. Dennis Gross Cosmetology LLC*,
2023 WL 2628620 (C.D. Cal. Mar. 15, 2023)....................5

*Mountaineers Found. v. Mountaineers*,
2022 WL 1061925 (W.D. Wash. Apr. 8, 2022)....................5

*Ollier v. Sweetwater Union High Sch. Dist.*,
267 F.R.D. 339 (S.D. Cal. 2010), *aff'd on other grounds*, 768 F.3d 843 (9th Cir. 2014)....................5

*Qualey v. Pierce Cnty.*,
2025 WL 254810 (W.D. Wash. Jan. 21, 2025)....................3

*United States v. Pangang Grp. Co.*,
2026 WL 1824097 (N.D. Cal. June 24, 2026) ....................5

*United States v. Santini*,
656 F.3d 1075 (9th Cir. 2011) ....................3, 5



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Walker v. Conagra Brands, Inc.*,
2023 WL 8885148 (C.D. Cal. Sept. 21, 2023) .....5

**OTHER AUTHORITIES**

Fed. R. Evid. 702 .....2



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

# INTRODUCTION

Plaintiffs offer opinions from Dr. David S. Evans to critique the survey design and methodology employed by Dr. Nancy Mathiowetz to conduct the survey of US-based online sellers she discusses in her expert report. Ex. 38 (Evans Reply) ¶¶ 253-82.[1] Dr. Evans, however, is admittedly not an expert in survey methodology, and thus lacks the expertise required to offer those criticisms.

Plaintiffs also offer opinions from Dr. Evans to support their two alleged relevant markets. He opines that Plaintiffs' alleged relevant markets are correctly defined and that Amazon possesses monopoly power in those markets. As relevant here, he supports these opinions by conducting an analysis of Amazon's sponsored products program that he claims shows Amazon can profitably exercise monopoly power in the alleged markets. *See* Ex. 44 (Evans Rep.) ¶¶ 517-20. Specifically, Dr. Evans claims that Amazon's profitable expansion of its sponsored products program imposed a price increase on sellers and a quality decrease for consumers, and that Amazon exercised monopoly power by expanding the program. However, because Dr. Evans' analysis takes into account only one aspect of the quality of the Amazon Store and fails to take into account extensive improvements to the quality of the Amazon Store that Amazon implemented during the same period, it cannot support the conclusion that Amazon's prices increased, or quality decreased, overall. The analysis thus cannot establish that Amazon possesses monopoly power.

Dr. Evans' survey methodology criticisms and related opinions, as well as Dr. Evans' sponsored products analysis, should be excluded.

## I. BACKGROUND

Dr. Evans claims that Dr. Mathiowetz's survey of US-based online sellers suffers from technical and methodological flaws that render its results unrepresentative. By his own admission, however, Dr. Evans is not an expert in survey methodology.

---

[1] All numbered exhibits are to the contemporaneously filed Declaration of Molly A. Terwilliger.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Dr. Evans also opines that (1) the relevant shopper-facing product market in this case is limited to "online superstores" (i.e., Amazon, Walmart.com, Target.com, and eBay.com); (2) the relevant seller-facing product market in this case is limited to "general online marketplaces" (*i.e.*, the same four websites); and (3) Amazon possesses monopoly power in both markets.

As relevant here, Dr. Evans presents what he calls a SSNIP analysis of Amazon's sponsored products advertising program between 2015 and 2024 that he claims supports these opinions.[2] Dr. Evans claims that sellers on Amazon purchased more ads and that these purchases represented a price increase for sellers for using the Amazon Store. He further claims that the addition of ads to Amazon search results degraded the quality of the experience for users and thereby created a quality-adjusted price increase for shopping in the Amazon Store. He then opines that these supposed price increases were profitable and that they show that Amazon possesses monopoly power in the two alleged relevant markets. *See* Ex. 44 (Evans Rep.) ¶¶ 139-44, 496, 517-20. Dr. Evans' analysis does not, however, consider the undisputed improvements to the overall quality of the Amazon Store for shoppers and sellers (*e.g.*, faster and more reliable delivery, more services for sellers, and improvements to its advertising services) that Amazon implemented during the same time period. *See id*. By failing to consider or quantify these improvements against the supposed quality degradation caused by the increase in sponsored ads in Amazon search results, Dr. Evans is unable to opine that the overall shopping experience on Amazon decreased over the time period he considered. That failure is fatal to his SSNIP analysis.

## II. LEGAL STANDARD

Expert testimony is admissible only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Rule 702 requires expert testimony to be "the product of reliable principles and methods" and to reflect "a reliable application of the principles and methods to the

[2] Dr. Evans' remaining analyses are not at issue in this Motion.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

facts of the case." Fed. R. Evid. 702(c), (d). Reliability is the lynchpin of Rule 702, and the Ninth Circuit has held that it goes directly to the *admissibility*—not merely the *weight*—of expert testimony. *Cooper v. Brown*, 510 F.3d 870, 880 n.6 (9th Cir. 2007).

When assessing reliability, courts must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-94 (1993). The proponent of expert testimony has the burden of proving relevance and reliability by a preponderance of the evidence. *See Qualey v. Pierce Cnty.*, 2025 WL 254810, at *3 (W.D. Wash. Jan. 21, 2025). An expert's opinions are not reliable if they are based on "mere subjective beliefs or unsupported speculation." *Claar v. Burlington N.R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994).

Rule 702's "'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. In other words, "[a]n expert in one field . . . cannot express an opinion relying on data that requires expertise in another." *United States v. Santini*, 656 F.3d 1075, 1078-79 (9th Cir. 2011).

## III. ARGUMENT

Dr. Evans, an economist, presents a series of criticisms of the methodology underlying a seller survey conducted by Dr. Mathiowetz, an expert in survey methodology and design. *See* Ex. 45 (Mathiowetz Rep.) ¶¶ 1-4; Ex. 46 (Mathiowetz Dep.) at 28:8-10 ("I consider myself and the courts have certified me in both federal and state court as an expert in statistics and survey methodology."). According to Dr. Evans, the survey suffers from a variety of methodological flaws that render it unrepresentative and unreliable. As explained below, however, he lacks the expertise required to advance these criticisms and they should be excluded.

Dr. Evans also advances opinions and analyses regarding Plaintiffs' alleged relevant markets and whether Amazon possesses monopoly power in those markets. "A threshold step in any antitrust case is to accurately define the relevant market, which refers to the area of effective



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

competition." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (internal quotation omitted). To define the market, courts look for evidence of substitution—which products are "reasonably interchangeable" or have sufficient "cross-elasticity of demand" with each other. *See, e.g., Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023).

Plaintiffs here define two relevant markets: an "online superstores" market in which Amazon competes for consumers' purchases; and a "general online marketplaces" market in which Amazon competes for sellers' products. As relevant here, they support these alleged relevant markets in part with what Dr. Evans calls a SSNIP analysis that, he claims, establishes that Amazon possesses monopoly power in both alleged markets. Dr. Evans' analysis, however, deviates substantially from the standard "SSNIP test" that courts have recognized may inform the market definition analysis, and thus does not shed light on whether either alleged relevant market is properly defined.

As its name indicates, a SSNIP test analyzes how consumers respond to a "small, but significant, non-transitory increase in price": *i.e.*, a price increase. Here, as explained in further detail below, Dr. Evans fails to establish that Amazon has implemented a price increase, or quality decrease, that can provide the basis for a SSNIP-type analysis. His analysis does not account for the many improvements (to its ads services and more generally to other aspects of the shopping experience on Amazon) that Amazon implemented during the same period, and so cannot show that the quality-adjusted price increased.

**A. Dr. Evans' opinions on survey methodology and reliability should be excluded.**

Dr. Evans is an economist who specializes in applied economics and industrial organization. *See* Ex. 44 (Evans Rep.) ¶ 2. By his own description, his academic publications, the academic courses he teaches, and his consulting work are all in the field of economics. *See id.* ¶¶ 2-5. In contrast, Dr. Evans does not possess expertise in survey methodology or design: by his own admission, he is not qualified as an expert in online surveys and he has never been retained to conduct an online survey. *See* Ex. 47 (Evans Dep.) at 251:19-253:4 ([redacted]



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

[redacted]). Dr. Evans nevertheless advances a series of opinions regarding survey methodology and design in his reply report, including with respect to survey sample frame construction, a survey "response rate" that he purports to calculate and interpret, purported non-response bias, and other similarly technical aspects of survey construction and analysis. *See* Ex. 38 (Evans Reply) ¶¶ 253-82.

The Court should exclude these opinions. Because "[a]n expert in one field . . . cannot express an opinion relying on data that requires expertise in another," *United States v. Santini*, 656 F.3d 1075, 1078-79 (9th Cir. 2011), courts routinely exclude testimony from an expert in one field who "lacks the requisite qualifications or experience to independently offer an expert opinion" in another field. *See, e.g.*, *Walker v. Conagra Brands, Inc.*, 2023 WL 8885148, at *11 (C.D. Cal. Sept. 21, 2023) (preventing ergonomics expert from testifying about product design and safety); *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 342 (S.D. Cal. 2010), *aff'd on other grounds*, 768 F.3d 843, 860 (9th Cir. 2014). Regardless of Dr. Evans' credentials as an economist, he lacks expertise in survey methodology. The Court should exclude his testimony on this subject. *See Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620, at *20-21 (C.D. Cal. Mar. 15, 2023) (excluding expert economist's opinions regarding "survey methods, designs, or conclusions": economist "is not qualified to opine on matters outside of his economic expertise, including on matters such as conjoint survey, consumer surveys, and consumer behavior"); *Mountaineers Found. v. Mountaineers*, 2022 WL 1061925, at *6 (W.D. Wash. Apr. 8, 2022) (excluding survey-related testimony from damage valuation expert who was not in expert in preparing surveys); *United States v. Pangang Grp. Co.*, 2026 WL 1824097 at *4 (N.D. Cal. June 24, 2026) ("Though the threshold for expert qualification is permissive, it does not allow an expert to testify as to a field in which he has no expertise").



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

**B. Dr. Evans' sponsored products analysis does not properly implement a SSNIP test.**

Dr. Evans purports to conduct a "SSNIP test" to assess whether Plaintiffs' alleged relevant markets are properly defined, as well as whether Amazon possesses monopoly power in those markets. However, the analysis he completes is not a SSNIP test, and does not provide reliable evidence that supports his opinions regarding market definition or monopoly power. It thus should be excluded as unreliable under Rule 702.

From a conceptual standpoint, market definition analysis typically proceeds following the framework known as the Hypothetical Monopolist Test (HMT). *See* Ex. 44 (Evans Rep.) ¶¶ 58-59; Ex. 48 (Gowrisankaran Rep.) ¶¶ 60-61. This test starts from considering the alleged relevant market and the firms that produce the product at issue and certain substitutes for that product. The test then asks: could a hypothetical monopolist in this market profitably impose a small, but significant (typically 5-10%) price increase over the product it controls? If the answer is yes, then that implies that the hypothetical monopolist would not lose sufficient business in the wake of the price increase to render the increase unprofitable. One could thus conclude that the candidate relevant market includes sufficient products, firms, and reasonable substitutes to be legally viable. By contrast, if the answer is no, then that implies that the hypothetical monopolist would lose sufficient business to options outside its control to render the price increase unprofitable; in that instance, the candidate market is too narrowly defined and must be expanded to include additional firms and products that are competitors supplying products that are substitutes with those in the alleged market. *See id*.

A SSNIP test is the implementation of the Hypothetical Monopolist Test. In essence, a SSNIP test assesses empirically how consumers in the alleged market would respond if a hypothetical monopolist were to impose a small, but significant, non-transitory increase in price (or decrease in quality) for the products in the alleged market. If such a price increase would be profitable, the candidate market passes the SSNIP test; if such a price increase would be



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

unprofitable, the candidate market fails the SSNIP test and is too narrowly defined. *See, e.g.*, *AU Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 482 n.1 (9th Cir. 2021).

By way of example, if the alleged relevant market consists of jarred strawberry jam, the SSNIP test would analyze how consumers would respond to a 5% price increase for jarred strawberry jam. If sufficient consumers would buy jarred strawberry jam at the elevated price rather than switching to jarred raspberry jam (for example), such that the price increase would be profitable, then the jarred strawberry jam market would be legally viable. If, by contrast, sufficient consumers would respond to the price increase by switching to buying jarred raspberry jam instead, rendering the price increase unprofitable, then the market is too narrow and omits reasonable substitutes that should be included.

Importantly, the logic of the HMT (and the SSNIP test) requires that the hypothetical monopolist implement a true price increase—*i.e.*, an increase in price overall, after factoring in quality improvements or any other changes to the product. Otherwise, the test cannot measure the effect of a price increase as opposed to the effect of improvements to product quality. In other words, the test must take into account the quality-adjusted price for the product at issue. For example, if a hypothetical monopolist of jarred strawberry jam upgrades its offerings such that the jam is made only with fresh (not frozen) organic strawberries and thus increases the quality of the product, and then raises prices by 5%, consumers that continue buying the newly-organic jam might do so because they value that the jam is now higher quality. For them, the quality-adjusted price might have decreased notwithstanding the increase in the price per jar.

*Fed. Trade Comm'n v. Meta Platforms, Inc.* is instructive. 811 F. Supp. 3d 67, 90-91 (D.D.C. 2025). There, the court rejected the FTC's claim that Meta's "increase in ad load is equivalent to an increase in quality-adjusted price" because "ads are only one aspect of an app's quality," and "[w]hen Meta has stuffed its apps with more ads <u>and</u> upgraded them with new features, it is not clear that the company has reduced quality overall." *Id.* at 90 (emphasis in original). In other words, the FTC's failure to account for the quality improvements Meta had



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

implemented in its apps meant that the FTC's purported SSNIP test could not analyze, or shed light on, how consumers would respond to a decrease in the quality of Meta's ads offerings. *Id*.

These well-established, undisputed principles make clear that Dr. Evans' sponsored products analysis is not an appropriate SSNIP test and does not provide reliable information with respect to market definition or monopoly power. Dr. Evans' purported SSNIP test assumes that Amazon's expanded sponsored products program degraded the quality of the Amazon Store. However, Dr. Evans does not analyze the improvements Amazon implemented to the Store for sellers and consumers between 2015 and 2024, let alone endeavor to balance those improvements against the decreased quality he purports to identify during the same time period. *See* Ex. 44 (Evans Rep.) ¶¶ 139-144, 496, 517-20.

Those improvements are indisputably substantial. *See* Ex. 44 (Evans Rep.) ¶ 847 ("Amazon, like other online retailers, has improved aspects of the quality of its online store over time."). For example, between 2015 and 2024, Amazon improved its search algorithms, delivery speed and access, as well as its returns processing. *See, e.g., id.*; Ex. 49, CNBC, "Amazon starts to roll out free one-day delivery for Prime members" (June 3, 2019); Ex. 50, Amazon expands free returns with no shipping box, tape, or label needed to over 10,000 U.S. drop-off locations (July 5, 2019); Ex. 51, CEO Andy Jassy's 2024 Letter to Shareholders ("[F]or the second year in a row, we shipped at record speed to our Prime members." . . . "An increasing number of deliveries happen same day."). Amazon also improved its seller offerings by expanding its product listing, customer support, inventory management, returns processing, fraud prevention, and educational services between 2015 and 2024. *See* Ex. 52 (Mathur Rebuttal) at Ex. 1, Fig. 3. Finally, Amazon also improved its ad services during this time, including "extensive initiatives to measure and improve the customer experience with ads and minimize irrelevant ads." Ex. 53 (Chiou Rep.) ¶ 74; *see also id.* ¶¶ 73-79, Ex. 7 (describing Amazon ads-related improvements and initiatives for sellers, vendors, and customers).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

By failing to consider Amazon's quality improvements between 2015 and 2024 for both sellers and consumers, Dr. Evans relies on "simply too great an analytical leap between the data and the opinion proffered" to opine that either customers or sellers were receiving an overall better quality-adjusted price from Amazon in 2015 than they were in 2024. *Gen. Elec. Co. v. Joyner*, 522 U.S. 136, 146 (1997); *Meta*, 811 F. Supp. 3d at 90. Dr. Evans' SSNIP analyses thus should be excluded.

## IV. CONCLUSION

For the foregoing reasons, this Court should exclude the survey methodology opinions and the sponsored products analysis conducted by Dr. David S. Evans as inadmissible under Federal Rule of Evidence 702.

DATED: October 16, 2026.

*I certify that this memorandum contains 2,924 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Molly A. Terwilliger*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**
Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
Katherine Trefz (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000

Email: hhubbard@wc.com
jschmidtlein@wc.com
khodges@wc.com
jpitt@wc.com
ereddington@wc.com
cmetz@wc.com
cpruski@wc.com
ktrefz@wc.com

**COVINGTON & BURLING LLP**
Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice*)
Katharine Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-6000
Email: tbarnett@cov.com
dludwin@cov.com
kmitchelltombras@cov.com

*Attorneys for Defendant Amazon.com, Inc.*