THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION, et al.

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

Case No. 2:23-cv-01495-JHC

**AMAZON'S MOTION TO EXCLUDE CERTAIN OPINIONS OF JUSTIN JOHNSON**

NOTE ON MOTION CALENDAR:
December 23, 2026

*ORAL ARGUMENT REQUESTED*

**REDACTED**



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

I. BACKGROUND ........................................................................................................2

A. Plaintiffs' Challenge to Amazon's Fulfillment Conduct ........................................2

B. Johnson's Assignment and Opinions ........................................................................3

C. Johnson's Pricing Regression Analyses....................................................................4

D. Johnson's Fulfillment-Related Analyses ..................................................................4

1. Johnson's "Seller Constraints" Opinion ....................................................5

2. Johnson's "Foreclosure" of Competition Opinion......................................7

II. LEGAL STANDARD..................................................................................................8

III. ARGUMENT ............................................................................................................8

A. Johnson's "Seller Constraints" Opinion Should Be Excluded. ................................9

B. Johnson Should Not Be Permitted To Opine on Cost Increases Imposed by Hypothetical "Foreclosure" of 3PL Competition. ..................................................11

IV. CONCLUSION..........................................................................................................12




MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## TABLE OF AUTHORITIES

**Pages(s)**

**CASES**

*Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308 (S.D. Cal. 2020) .................... 10

*Coca-Cola Co. v. Omni Pac. Co.*, 2000 WL 33194867 (N.D. Cal. Sep. 27, 2000) .................... 12

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .................... 2

*Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025) .................... 8

*Eritrean Ass'n of Greater Seattle v. Gebrekidan*, 2026 WL 2211177 (W.D. Wash. July 31, 2026) .................... 9

*In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal. 2012) .................... 10

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914 (9th Cir. 2015) .................... 11

*In re REMEC Inc. Sec. Litig.*, 702 F. Supp.2d 1202 (S.D. Cal. 2010) .................... 10

*Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956 (N.D. Cal. 2025) .................... 8, 12

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) .................... 10

*United States v. Hermanek*, 289 F.3d 1076 (9th Cir. 2002) .................... 11

*Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455 (9th Cir. 1993) .................... 9

*Whisnant v. United States*, 2006 WL 2927732 (W.D. Wash. Oct. 11, 2006) .................... 8

**RULES**

Fed. R. Evid. 702 .................... 3, 8, 10



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## INTRODUCTION

Plaintiffs allege that Amazon has engaged in two categories of anticompetitive conduct. First, they claim that Amazon employs certain pricing practices that they allege discourage sellers and competing retailers from offering discounts relative to Amazon's prices. Second, they claim that Amazon requires third-party sellers to use its fulfillment solution, Fulfillment by Amazon ("FBA"), to succeed in the store. That is because, according to Plaintiffs, Amazon conditions eligibility for the Prime badge on the use of FBA. Based on these allegations, Plaintiffs contend that Amazon has harmed competition in the two alleged relevant markets—neither of which consists of fulfillment services of any kind.

Plaintiffs engaged Professor Justin Johnson to analyze the competitive effects of both the at-issue pricing practices and the alleged "FBA-Prime requirement." Such "competitive effects" analyses often focus on whether the challenged conduct on balance harms consumers by increasing prices or reducing output in the relevant market. Because an antitrust plaintiff's burden is to show that the challenged conduct harmed competition market-wide, not just a handful of competitors or market participants, anticompetitive effects are typically demonstrated through market-wide quantitative or empirical analysis. Johnson performed econometric regression analyses purporting to isolate price and output effects caused by certain of the challenged pricing practices. Amazon disputes the reliability of Johnson's findings, but those disputes are not the subject of this motion.[1]

Johnson's analysis and opinions regarding the fulfillment conduct are an entirely different story. His opinion that the alleged FBA-Prime requirement harms competition is based on no econometric or regression study demonstrating such effects. He instead relies on unvalidated intuition and general theory backstopped with a handful of cherry-picked anecdotes.

---

[1] This motion is limited to Johnson's opinions on the competitive effects of the alleged FBA-Prime requirement. It would be mooted if the Court grants Amazon's separately filed motion for summary judgment addressing Plaintiffs' claims based on their challenges to the fulfillment conduct.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Amazon moves to exclude two of Johnson's fulfillment-related opinions that do not rest "on a reliable foundation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). First, the Court should exclude Johnson's opinion that the alleged FBA-Prime requirement raised sellers' costs by constraining them from pooling their inventory. Second, the Court should exclude Johnson's opinion that the conduct increased sellers' costs by foreclosing third-party logistics providers ("3PLs") from achieving sufficient "scale" to compete with FBA. These opinions are not the product of any reliable methodology. Johnson does not try to demonstrate that all or some substantial portion of Amazon's over one million sellers experienced these purported cost increases, nor does he quantify—even approximately—their purported effects on either alleged market. To take just one example, Johnson extrapolates from a single seller's testimony that it might be able to secure "volume discounts" absent the challenged conduct to reach his sweeping conclusion that sellers across the market experience higher fulfillment costs. He likewise relies on an imagined hypothetical to claim that a seller *could*, in certain circumstances, experience higher inventory costs when using more than one fulfillment service, ignoring his own concession that some sellers *prefer* to diversify their fulfillment solutions and providing no analysis about the prevalence or magnitude of the hypothesized higher costs. The breezy theory and anecdotes that Johnson offers are no substitute for rigorous analysis and confirm that these opinions amount to nothing more than speculation. These two fulfillment-related opinions should be excluded.

## I. BACKGROUND

### A. Plaintiffs' Challenge to Amazon's Fulfillment Conduct

Plaintiffs allege monopolization claims with respect to two purported relevant antitrust markets: first, an "online superstore" market allegedly consisting of firms with "a broad and deep product selection accompanied by a distinct set of features," 2d Am. Compl. (Dkt. #327) ("Compl.") ¶¶ 123, 128; and, second, a market for "online marketplace services," in which firms operate general marketplaces to compete for sellers (to sell products) and shoppers (to buy them), *id.* ¶¶ 186-187. Plaintiffs claim that both markets include only Amazon, Walmart's online store,



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Target's online store, and eBay. *Id.* ¶¶ 172-173. All other retailers—online, omnichannel, brick-and-mortar, social media, and the myriad other avenues available to consumers seeking to buy the same products—are excluded.

Plaintiffs allege that Amazon has coerced sellers to enroll in FBA by conditioning Prime eligibility for their products on their use of that fulfillment service. According to the Complaint, third-party sellers cannot succeed on Amazon without having Prime-badged products, which are featured in Amazon's store and more attractive to Prime-subscribing shoppers. *Id.* ¶¶ 354, 361. Although Plaintiffs recognize that Amazon runs a program, Seller-Fulfilled Prime, through which third-party sellers can earn the Prime badge without using FBA, Plaintiffs claim that option is illusory.[2] *Id.* ¶¶ 406-411.

Plaintiffs claim this alleged Prime-FBA requirement harms competition by increasing seller fulfillment costs in two ways. First, they claim that the requirement constrains sellers from pooling inventory with a single fulfillment solution and, as a result, imposes higher total costs on sellers by virtue of using more than one solution. *Id.* ¶ 368. Second, because sellers supposedly must place inventory with FBA, Plaintiffs claim, non-Amazon fulfillment providers are deprived of scale necessary to compete effectively and drive down fulfillment costs. *Id.* ¶ 368.

### B. Johnson's Assignment and Opinions

Plaintiffs retained Professor Justin Johnson, an economist at Cornell University's College of Business, to evaluate the competitive effects of the conduct challenged in the Complaint. Ex. 11 (Johnson Rep.) ¶ 4.[3] He divides his analysis of Amazon's conduct into two separate sections addressing "Anti-Discounting Conduct" (§ V) and "the FBA-Prime Requirement" (§ VI). In each

[2] Amazon disputes that it has engaged in any exclusionary conduct. This motion focuses, however, on certain opinions related to the purported *effects* of that conduct. So Amazon accepts Plaintiffs' characterization of an "FBA-Prime requirement" for purposes of this motion because—even if there were such a requirement and that requirement was anticompetitive—Johnson's opinions relating to its purported effects do not satisfy Rule 702.

[3] All numbered exhibits are to the contemporaneously filed Declaration of Molly A. Terwilliger.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

section, he concludes that the respective conduct caused anticompetitive effects in the relevant markets.

**C. Johnson's Pricing Regression Analyses**

To support his opinions regarding Amazon's pricing conduct, Johnson relies on a series of difference-in-differences econometric analyses purporting to show the effects that Amazon's practices have on prices for specific products on Amazon and other retailers in the alleged market. *See, e.g.*, Ex. 11 (Johnson Rep.) ¶¶ 490-496. At a high level, Johnson's regressions try to compare how prices of products subject to a challenged practice changed over time against price changes for a set of comparable products that are not subject to the challenged practice, attributing the difference in increase or decrease to the effect of the practice. *See, e.g.*, *id.* Fig. 12 ("The Effect of SC-FOD Suppressions on eBay's Prices Before and After the First SC-FOD Suppression"). To perform these analyses, Johnson draws on certain datasets from Amazon and other retailers subpoenaed by the parties, reflecting the prices for various products offered and sold. *E.g.*, *id.* (noting sources including eBay transaction data and Amazon's competitive price monitoring data reflecting Amazon and competitor offer prices); *see id.* App'x II (data summary). Johnson's methodology is deeply flawed in multiple respects, leading to inaccurate results. But those opinions are not the subject of this motion.

**D. Johnson's Fulfillment-Related Analyses**

Johnson conducted no similar regression or other econometric analyses to support his fulfillment-related opinions. Instead, Johnson's opinion that the FBA-Prime requirement harms competition in the alleged markets turns on his hypothesis that the "FBA-Prime requirement raises sellers' costs of operating off Amazon." Ex. 11 (Johnson Rep.) ¶ 149. Johnson theorizes that by increasing their off-Amazon costs, "[e]verything else equal," sellers earn lower profits in non-Amazon marketplaces and this, in turn, reduces competition for sellers and customers, leading supposedly to higher prices, less output, and slower shipping times. *Id.* The lynchpin of his competitive effects opinion is thus the allegedly increased seller costs that—according to



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Johnson's logic—precipitate a chain reaction leading to market-wide competitive deterioration. Johnson offers no empirical or econometric analysis demonstrating these increased costs, nor does he offer such analysis quantifying the purported effects on either market.

**1. Johnson's "Seller Constraints" Opinion**

Johnson claims that by constraining sellers' ability to consolidate inventory with a single fulfillment provider, Amazon's conduct increases three categories of seller costs: (1) "administrative costs and complexities"; (2) excess inventory costs associated with keeping products in-stock on multiple channels simultaneously; and (3) reduced ability to negotiate volume discounts with independent fulfillment providers. *Id.* ¶¶ 141-143.

*Administrative Costs and "Complexities."* Johnson opines that "[e]ffectively requiring sellers to use a distinct fulfillment solution to sell off Amazon increases sellers' administrative costs and complexit[ies]." *Id.* ¶ 931. He does not estimate the proportion of sellers for which administrative costs increased, approximate the magnitude of these cost increases, or evaluate whether there are any offsetting benefits to using multiple fulfillment providers. Yet he agrees that there are "legitimate pro-competitive reasons why a seller would want to use multiple fulfillment services" and would expect some sellers to "use multiple fulfillment services" absent the challenged conduct. Ex. 23 (Johnson Dep.) at 268:17-24. Johnson provides a narrative summary comprising:

- An Amazon blog post/FBA marketing pitch describing administrative benefits associated with "pooling your inventory with a single 3PL." Ex. 11 (Johnson Rep.) ¶ 931 & n.1408 (quoting Amazon, *3 Key benefits of using a single 3PL provider*).
- A blog post from a 3PL and testimony from a representative of another touting the benefits of using 3PL services. *Id.* ¶¶ 932, 936 & n.1414.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

- Testimony from nine sellers and a consultant that using a single fulfillment provider would likely reduce administrative costs.[4] *Id.* ¶¶ 934-938.
- The opinion of Plaintiffs' fulfillment industry expert, Professor Elliot Rabinovich, that using a single fulfillment solution "can reduce operational complexities."[5] *Id.* ¶ 933 (citing Rabinovich Rep. ¶¶ 99-100). Notwithstanding these purported benefits, Johnson and Rabinovich agree that "there are several reasons sellers may find it advantageous to rely on a wider array of fulfillment service providers." Ex. 24 (Johnson Reply) ¶ 678 (quoting Rabinovich Rep. ¶ 103).

*Inventory Pooling.* Johnson next claims that by limiting sellers' ability to pool inventory with a single fulfillment provider, the conduct imposes additional "inventory-splitting costs" associated with keeping products in-stock in multiple channels. Ex. 11 (Johnson Rep.) ¶ 872 n.1295. Johnson did not conduct any analysis to "attempt to directly quantify" the benefits of pooling inventory or calculate splitting costs. Ex. 23 (Johnson Dep.) at 270:25-272:13. Johnson again relies on Rabinovich's opinions, *e.g.*, Ex. 11 (Johnson Rep.) ¶ 961, yet Rabinovich did no empirical analysis of and offered no opinion on inventory-splitting costs, Ex. 5 (Rabinovich Dep.) at 196:1-24. Johnson provides no opinion or analysis on the percentage of sellers that would consolidate their inventory with a non-Amazon fulfillment solution absent the conduct, let alone attempt to demonstrate the purported cost savings associated with such consolidation.

Instead of empirical analysis, Johnson points to anecdotal testimony from five sellers.[6] Ex. 11 (Johnson Rep.) ¶¶ 967-972, 977. This testimony suggests, according to Johnson's report, that some sellers would prefer to use a single pool of inventory, or that doing so [redacted]

---

[4] Johnson recognizes that Amazon had 1.1 million third-party sellers in 2024. Ex. 24 (Johnson Reply) ¶ 217.

[5] Elliot Rabinovich is a supply chain professor whom Plaintiffs engaged, among other things, to offer an opinion that scale economies exist in fulfillment and to estimate the portion of "e-commerce volume" fulfilled by FBA. Ex. 1 (Rabinovich Rep.) ¶¶ 1, 5.

[6] Four of these sellers are repeats of those on whom Johnson relies when addressing administrative costs.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

[redacted]" but does not identify any specific increased inventory cost that any seller incurred by using FBA or any harm in the relevant markets. *Id.* ¶ 974 (quoting [redacted]) Dep. Tr. (Apr. 17, 2025) at 123:13-22). Johnson likewise references the generalized beliefs of personnel from [redacted] *Id.* ¶ 963. These accounts unsurprisingly reveal nothing about seller costs, because these [redacted] Nor do these executives testify about [redacted]. *See id.*

*Volume Discounts.* Finally, Johnson claims that the alleged FBA-Prime requirement makes it more difficult for sellers "to negotiate volume discounts with" other fulfillment services. *Id.* ¶ 978. Johnson again provides no quantitative analysis, so one can only guess as to the extent to which "volume discounts" are available or how those hypothetical discounts might affect the market. For his part, Johnson did not even review 3PL rate cards and therefore is in no position to provide any specifics on 3PL costs. Ex. 23 (Johnson Dep.) at 270:17-270:4. He relies on testimony from a single seller, whose testimony is cited for each of Johnson's three purported categories of costs, who apparently believed [redacted] Ex. 11 (Johnson Rep.) ¶ 980 & n.1485 ([redacted]). He also points to two emails in which sellers raise the possibility of better carrier rates by withholding selection from FBA. *Id.* ¶ 981.

**2. Johnson's "Foreclosure" of Competition Opinion**

Johnson claims that the "FBA-Prime requirement *likely* limits the scale and hence the capabilities of 3PLs and other marketplace-neutral fulfillment solutions, and so competition in the relevant markets is *likely* reduced." *Id.* ¶ 1043 (emphases added); *see id.* § VI.E. Because the conduct "*likely*" limits 3PL scale, Johnson opines that sellers would enjoy "*likely* lower costs and higher quality" from 3PLs absent the conduct. *Id.* ¶ 201 (emphases added). These assertions rest on no empirical analysis. Johnson did not "perform[] a separate empirical study in which [he]



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

examine[s] economies of scale in fulfillment," Ex. 23 (Johnson Dep.) at 278:12-17, and he does not identify what scale would be sufficient to enable a 3PL effectively to compete with FBA, *id.* at 277:10-18. Johnson did not quantify "the additional volume that" 3PLs "would have achieved in the 'but for' world." *Id.* at 268:25-269:7.

Johnson relies extensively on Rabinovich's opinion to support his theory that the conduct denies 3PLs scale, *see, e.g.*, Ex. 11 (Johnson Rep.) ¶¶ 1021-24 & nn.1545-1556, but Rabinovich has not opined as to any "minimum scale that's required to compete in the fulfillment industry." Ex. 5 (Rabinovich Dep.) at 126:24-127:3, has not identified any Amazon conduct that prevented "fulfillment providers from reaching the scale and capabilities," *id.* at 232:17-22, and believes that some fulfillment providers have in fact reached "viable scale to . . . participate in the industry," *id.* at 122:20-123:5.

## II. LEGAL STANDARD

Rule 702 requires that, "before admitting expert testimony, the district court must perform a gatekeeping role to ensure that the [proffered] testimony is both relevant and reliable." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025) (quotation omitted). That gatekeeping "responsibility . . . encompasses the requirement that expert testimony be 'based on sufficient facts or data.'" *Id.* at 1051 (citation omitted). "The 'key inquiry' is whether an expert had sufficient factual grounds on which to draw conclusions." *Id.* (citation omitted). "[E]conomic theory alone does not make" an expert's proffered "opinions admissible." *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 963 (N.D. Cal. 2025). "[A]n expert does not have license to simply disregard reality and base a 'necessary link' in his theory on guesswork or speculation." *Id.*

## III. ARGUMENT

Johnson's opinions that the alleged FBA-Prime requirement increased seller costs through two distinct mechanisms should be excluded because there is no "objective, independent validation" for his methodology. *Whisnant v. United States*, 2006 WL 2927732, at *3 (W.D. Wash. Oct. 11, 2006). Although Johnson at least attempted to assess the pricing conduct's effects on



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

competition through econometric analysis, he performed no such empirical or quantitative analysis to assess the fulfillment conduct's market-wide effects. Rather, all he offers is a handful of examples and general theory. The "analytical gap" between his sparse, anecdotal data and sweeping claims of market-wide harm is too significant to bridge. *Eritrean Ass'n of Greater Seattle v. Gebrekidan*, 2026 WL 2211177, at *4 (W.D. Wash. July 31, 2026). His opinions concerning how the fulfillment conduct affected seller costs should be excluded on that basis alone. Each of his subsidiary opinions suffer, moreover, from additional deficiencies reiterating that exclusion is warranted.

**A. Johnson's "Seller Constraints" Opinion Should Be Excluded.**

Johnson has no reliable basis on which to offer an opinion that the alleged FBA-Prime requirement increased seller costs by constraining their ability to use a single fulfillment provider. This opinion proceeds on the understanding that sellers realize various savings and efficiencies from pooling inventory, yet he did not conduct "an empirical study in which [he] attempt[ed] to directly quantify . . . the benefits of pooling inventory." Ex. 23 (Johnson Dep.) at 272:2-13. He and his co-expert, who likewise did not quantify the benefits of pooling inventory, agree that diversifying fulfillment solutions also has advantages. Ex. 24 (Johnson Reply) ¶ 678 (quoting Rabinovich Rep. ¶ 103). And in any event, Johnson admits that he did not even compare FBA costs with 3PLs', Ex. 23 (Johnson Dep.) at 270:17-270:24, and therefore he has no business venturing opinions about how those rates—which he did not review—were affected by the conduct.

Johnson's over-reliance on a handful of anecdotes further highlights the lack of support for his opinions concerning market-wide effects.[7] *See, e.g.*, *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1462 (9th Cir. 1993) (opinion "based on limited anecdotal evidence" was "inconclusive"). The

[7] The minimal force of these anecdotes is further undermined by Johnson's concession that there are "legitimate pro-competitive reasons why a seller would want to use multiple fulfillment services." Ex. 23 (Johnson Dep.) at 268:17-24; Ex. 24 (Johnson Reply) ¶ 678.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

court in *Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*, rejected a similar effort by an antitrust plaintiff to show anticompetitive effects through an expert-constructed narrative. 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021). There, an industry expert offered interpretations of certain contract terms and then proceeded to opine, based on her review of certain record evidence, "as to their effects on competition and states of mind of industry participants." *Id.* This all reduced to an improper "narrative" of the plaintiff's "theory of the case," which the court excluded. *Id.* at 1322-23.

For his part, Johnson relies heavily on anecdotes from less than a dozen of Amazon's one-million-plus sellers. He points to one seller, for instance, that testified that [redacted]." Ex. 11 (Johnson Rep.) ¶ 937. At best, such vague accounts endorse his general theory that some sellers would prefer to pool inventory, but they shed no light on concrete costs that any seller—let alone a sufficient constituency of sellers to affect the relevant market—incur as a result of the conduct. Johnson offers these snippets of testimony without the "key ingredient" of "*economic analysis* (be it quantitative or qualitative) tying these statements" to his ultimate conclusions. *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 993 (C.D. Cal. 2012); *see, e.g.*, Ex. 11 (Johnson Rep.) ¶¶ 935-940 (describing testimony with no economic analysis of purported administrative cost increases); *id.* ¶ 980 (referencing testimony with no economic analysis of volume discounts).

Finally, Johnson's thought experiment demonstrating that pooling might prevent inventory-splitting costs is uninformative. The point of expert testimony is to "interpret[] market facts," not create an alternate reality. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995). Yet Johnson seems to suppose a highly stylized hypothetical—one seller, selling one product on two equal-cost channels, facing random demand—for the sole purpose of confirming his own suspicion. Expert opinion that follows from a model that predetermines its result, as Johnson's does, is not useful. *See In re REMEC Inc. Sec. Litig.*, 702 F. Supp.2d 1202, 1273 (S.D. Cal. 2010) (excluding expert who "predetermines the results of his analysis"). Rule 702 prohibits



**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

such "circular, subjective reasoning." *See United States v. Hermanek*, 289 F.3d 1076, 1096 (9th Cir. 2002).

### B. Johnson Should Not Be Permitted To Opine on Cost Increases Imposed by Hypothetical "Foreclosure" of 3PL Competition.

Johnson's opinion that sellers faced higher costs because the fulfillment conduct prevented alternative fulfillment providers from achieving scale should be excluded. The premise of Johnson's opinion—that 3PLs have been denied scale—is divined from thin air. Johnson did not apply any economic expertise to arrive at an opinion about how hypothetically diminished competition from 3PLs led to hypothetical seller cost increases leading to hypothetical effects in the relevant markets. He did not, for instance, offer an economic analysis of what "scale" a 3PL needs to achieve to compete. *See supra* § II.D.2. Indeed, he did not conduct any empirical analysis of economies of scale in fulfillment, for instance by evaluating any 3PL's cost structure. *Id.* Johnson did not identify a single competitor who failed to achieve sufficient "scale." *Id.* He did not quantify the cost reductions that sellers would have enjoyed had these unidentified 3PLs achieved the unmeasured scale needed to compete. *Id.*

Johnson does not profess to have any particular expertise in fulfillment and relied heavily on Rabinovich's "opinions regarding fulfillment practices, how 3PLs work, the role that 3PLs play in e-commerce," and "what economies of scale are like in fulfillment," Ex. 23 (Johnson Dep.) at 38:25-39:14. He thus repeatedly points to Rabinovich in his discussion of supposed foreclosure of 3PLs, but this game of telephone does not salvage Johnson's opinion because *neither* expert conducted any rigorous economic analysis of the relevant competitive dynamics. Just like Johnson, Rabinovich does not identify some scale sufficient for fulfillment competition, nor does he identify a single large retailer that was unable to fulfill orders due to the alleged conduct. Ex. 5 (Rabinovich Dep.) at 248:20-24, 291:24-292:11, 297:10-14. Johnson's opinion about foreclosure-imposed costs is speculation untethered to any market reality. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 924 (9th Cir. 2015).



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Given the absence of economic analysis on scale, Johnson's opinion of the costs associated with foreclosure turns on general theory.[8] For instance, Johnson states that competing for additional FBA volume "would allow 3PLs to fulfill a greater proportion of Prime-eligible sales, which would likely increase their scale, lower their variable costs, and improve their quality." Ex. 11 (Johnson Rep.) ¶ 1039. This chain of logic might comport with highly generalized theory, but "theory alone does not make [an expert's] opinions admissible." *Klein*, 766 F. Supp. 3d at 963. Johnson has identified some directional relationship between scale, on the one hand, and costs and quality on the other. But a proper economic analysis of anticompetitive effects requires an expert to "quantify or otherwise demonstrate the level of impact" that the challenged conduct has on the relevant market. *Coca-Cola Co. v. Omni Pac. Co.*, 2000 WL 33194867, at *7 (N.D. Cal. Sep. 27, 2000). Johnson does not even hint at any opinion on the extent to which the fulfillment conduct foreclosed competition from 3PLs or raised prices or reduced output in the relevant markets, nor can he identify a single 3PL that was denied "scale" as a result of Amazon's conduct.

## IV. CONCLUSION

For the foregoing reasons, Amazon respectfully requests the Court to exclude Johnson's opinions that Amazon's fulfillment conduct increased sellers' costs by constraining their ability to consolidate inventory with non-Amazon fulfillment services or by foreclosing competition from such fulfillment services.

///

///

///

///

---

[8] Johnson makes various claims about Amazon perceiving certain 3PLs as competitive threats and taking actions with respect to its Seller-Fulfilled Prime program to respond to these threats. *See, e.g.*, Ex. 11 (Johnson Rep.) ¶ 1038. Amazon disagrees. But these contentions are beside the point here. Amazon challenges the admissibility of Johnson's opinion that sellers across the market likely faced higher costs due to actual foreclosure of competition. *Id.* ¶ 144. That is a claim about economic consequences, not Amazon's state of mind.



MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Dated: October 16, 2026.

*I certify that this memorandum contains 4,014 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Molly A. Terwilliger*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**
Heidi K. Hubbard (*pro hac vice*)
John E. Schmidtlein (*pro hac vice*)
Kevin M. Hodges (*pro hac vice*)
Jonathan B. Pitt (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
Carol J. Pruski (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: hhubbard@wc.com
jschmidtlein@wc.com
khodges@wc.com
jpitt@wc.com
cmetz@wc.com
cpruski@wc.com

**COVINGTON & BURLING LLP**
Thomas O. Barnett (*pro hac vice*)
Derek Ludwin (*pro hac vice*)
Kate Mitchell-Tombras (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-5407
Email: tbarnett@cov.com
dludwin@cov.com
kmitchelltombras@cov.com

*Attorneys for Defendant Amazon.com*