THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

FEDERAL TRADE COMMISSION, *et al.*,

Plaintiffs,

v.

AMAZON.COM, INC., a corporation,

Defendant.

CASE NO.: 2:23-cv-01495-JHC

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON AMAZON'S PROCOMPETITIVE JUSTIFICATION OF "CUSTOMER TRUST"**

NOTE ON MOTION CALENDAR:
December 23, 2026

**PUBLIC REDACTED VERSION**



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

I. STATEMENT OF MATERIAL FACTS ..... 2

A. Plaintiffs Are Challenging Amazon's Anticompetitive Anti-Discounting Policies .. 2

B. Amazon Asserts That Its Anti-Discounting Practices Are Procompetitive Because They Maintain "Competitive" Prices and Thus "Customer Trust" ..... 5

C. "Customer Trust" Is a Euphemism for Reduced Comparison Shopping, Amazon Sales, and Ultimately Amazon Profits ..... 6

II. LEGAL STANDARD ..... 10

III. ARGUMENT ..... 11

A. Saving Shoppers the Purported Hassle of Shopping on Amazon's Rivals Does Not Enhance Competition ..... 13

B. "Trust" in Amazon Benefits Amazon, Not Competition ..... 16

C. Amazon's Asserted Second-Order Benefits of "Trust" for Third Parties Do Not Enhance Competition ..... 21

CONCLUSION ..... 23



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

# TABLE OF AUTHORITIES

***Cases***

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 10

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) .......... 11

*Celotex Corp. v. Catlett*,
477 U.S. 317 (1986) .......... 11

*Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*,
754 F. Supp. 1336 (N.D. Ill. 1991) .......... 20

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025) .......... 4

*Del. & Hudson Ry. Co. v. Consol. Rail Corp.*,
902 F.2d 174 (2d Cir. 1990) .......... 20

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) .......... 12

*Far Out Prods., Inc. v. Oskar*,
247 F.3d 986 (9th Cir. 2001) .......... 11

*FTC v. Amazon.com, Inc.*,
No. 2:23-cv-00932, 2025 WL 2677086 (W.D. Wash. Sept. 17, 2025) .......... 10

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) .......... 11, 12

*Gallerson v. Burlington N. Santa Fe Ry. Co.*,
2019 WL 3006988 (W.D. Wash. July 9, 2019) .......... 11

*Gen. Cinema Corp. v. Buena Vista Distribution Co.*,
532 F. Supp. 1244 (C.D. Cal. 1982) .......... 15

*Grappone, Inc. v. Subaru of New England, Inc.*,
858 F.2d 792 (1st Cir. 1988) .......... 12, 21

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
778 F.3d 593 (7th Cir. 2015) .......... 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
37 F. Supp. 3d 1126 (N.D. Cal. 2014) .......... 12

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) .......... 22

*Law v. Nat'l Collegiate Athletic Ass'n*,
134 F.3d 1010 (10th Cir. 1998) .......... *passim*

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003) .......... 12, 20

*Lies v. Farrell Lines, Inc.*,
641 F.2d 765 (9th Cir. 1981) .......... 11



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

*McWane, Inc. v. FTC*,
783 F.3d 814 (11th Cir. 2015) .......... 17, 18

*Metro. Group Prop. & Cas. Ins. Co. v. Fite*,
738 F. Supp. 3d 1371 (W.D. Wash. 2024) .......... 10

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
435 U.S. 679 (1978) .......... *passim*

*Naxos, LLC v. Am. Fam. Ins. Co.*,
611 B.R. 358 (W.D. Wash. 2019) .......... 11

*NCAA v. Board of Regents of University of Oklahoma*,
468 U.S. 85 (1984) .......... 17, 18, 20

*N. Pac. Ry. Co. v. United States*,
356 U.S. 1 (1958) .......... 22

*Otter Tail Power Co. v. United States*,
410 U.S. 366 (1973) .......... *passim*

*PLS.com, LLC v. Nat'l Ass'n of Realtors*,
32 F.4th 824 (9th Cir. 2022) .......... *passim*

*Polygram Holding, Inc. v. FTC*,
416 F.3d 29 (D.C. Cir. 2005) .......... 20

*Realcomp II, Ltd. v. FTC*,
635 F.3d 815 (6th Cir. 2011) .......... 20

*Simon and Simon, PC v. Align Tech., Inc.*,
2026 WL 2980631 (9th Cir. Oct. 5, 2026) .......... 11, 12, 21

*United States v. Am. Airlines Grp. Inc.*,
121 F.4th 209 (1st Cir. 2024) .......... 12

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) .......... *passim*

*Viamedia, Inc. v. Comcast Corp.*,
951 F.3d 429 (7th Cir. 2020) .......... 12, 21

***Rule***

Fed. R. Civ. P. 56(a) .......... 10, 11

***Other Authority***

1 A.B.A, Antitrust Law Developments § 2-C-10 (9th ed. 2022),
Lexis (updated 2025) .......... 20

Peter A. Diamond, *A Model of Price Adjustment*,
3 J. Econ. Theory 156 (1971) .......... 15

Glenn Ellison & Alexander Wolitzky, *A Search Cost Model of Obfuscation*,
43 Rand J. Econ. 417 (2012) .......... 15



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

## INTRODUCTION

Plaintiffs will prove at trial that Amazon's price parity policies impede competition by stifling rivals' ability to offer lower prices to attract shoppers, which in turn limits those rivals' ability to attract marketplace sellers, insulates Amazon from competition, and leads to higher prices for American households both on and off Amazon. The harms are enormous: Plaintiffs' expert economist conservatively estimates that Amazon's price parity policies cost American households more than $10 billion every year. Amazon disputes all this, and that dispute will be addressed at trial. But Amazon also argues that *even if* Plaintiffs are correct about the anticompetitive effects of its conduct, its conduct is justified under the Sherman Act Section 2 burden-shifting framework because it maintains "customer trust" in Amazon. As Amazon explains it, customer trust means that shoppers know that other stores do not beat Amazon on price, so they shop on Amazon instead of looking elsewhere for better deals.

Amazon has it backwards: deterring shoppers from visiting competitors through a policy that raises competitors' prices is an anticompetitive effect, not a procompetitive justification. Amazon's position amounts to a version of the long-rejected argument that a monopolist's desire to protect its profitability justifies its anticompetitive conduct and that defense should be rejected here. *See, e.g.*, *Otter Tail Power Co. v. United States*, 410 U.S. 366, 380 (1973). The Court should enter partial summary judgement finding that Amazon's "customer trust" and "customer experience" justifications for its third-party anti-discounting conduct are not cognizable procompetitive justifications and cannot support Amazon's Second Affirmative Defense (Procompetitive Conduct). Def. Amazon.com, Inc.'s Answer to Pls.' Second Am. Compl.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

(Dkt. #341) at 87; Ex. 1 (Def. Amazon.com, Inc.'s Third Am. Objs. and Resps. to Pls.' Interrog. No. 1) at 9–12.[1]

## I. STATEMENT OF MATERIAL FACTS

### A. Plaintiffs Are Challenging Amazon's Anticompetitive Anti-Discounting Policies

Amazon maintains restrictions on the third-party sellers on its marketplace that limit rivals' ability to compete against Amazon on price. Pls.' Second Am. Compl. (Dkt. #326) at 85–98. These restrictions penalize sellers if their prices off Amazon are lower than their prices on Amazon. They also punish sellers if they allow others, such as retailers who buy their products wholesale and sell them to shoppers on a first-party basis, to offer prices that are lower than the sellers' prices on Amazon. As a result, Amazon's rivals who want to offer lower prices face resistance from their sellers and vendors who also sell on Amazon's marketplace. Plaintiffs will prove at trial that Amazon's anti-discounting policies harm competition by leveraging Amazon's monopoly power as the dominant online superstore and general online marketplace to weaken price competition and prevent Amazon's rivals from growing into significant competitive threats. This harms shoppers by, among other things, tending to raise prices above the competitive level. Plaintiffs will present evidence at trial showing that Amazon's anti-discounting conduct has raised the prices American consumers pay by more than $11 billion per year.[2]

Amazon's implementation and enforcement of these restrictions on sellers has grown over time. Until 2019, Amazon had an express contractual prohibition on discounting off

---

[1] Citations in the form of Ex. __ are to the Declaration of Ethan Stevenson.

[2] Plaintiffs' expert economist Professor Justin Johnson has conservatively estimated anticompetitive price effects of Amazon's SC-FOD policy on [redacted] shoppers to be approximately $11.07 billion in 2024 alone. Ex. 2 (Johnson Rebuttal Report) ¶¶ 323–26.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Amazon, a type of agreement known as a price parity clause or "most favored nation" ("MFN") provision. Ex. 1 (Def. Amazon.com, Inc.'s Third Am. Objs. and Resps. to Pls.' Interrog. No. 1) at 9–10. Since 2015, Amazon has enforced its price parity policies through its "SC-FOD" mechanism, which disqualifies sellers' offers from the Buy Box—a critical path to sales—if Amazon finds a lower off-Amazon price.[3] And since 2018, the Amazon Standards for Brands policy ("ASB") has expressly required "price competitiveness" from brand owners and their representatives, a category that includes [redacted], *see* Ex. 3 (AMZN-RTL-FTC-02231250) at -252 ("[redacted]"), by preventing them from offering lower prices somewhere else. Ex. 4 (AMZN-RTL-FTC-02528739) at -747, -750–751; Ex. 5 (AMZN-RTL-FTC-02105976) at -976; Ex. 6 (AMZN-RTL-FTC-00369847) at -849–850 (requiring that [redacted] are price competitive). Amazon can impose brand-wide or portfolio-wide penalties on sellers who do not comply with ASB: for example, it can [redacted] on Amazon. *See* Ex. 7 (AMZN-RTL-FTC-12892562) at Slide 6. Amazon has internally referred to ASB as a "[redacted]," Ex. 8 (AMZN-RTL-FTC-01076835) at -838, a "[redacted]," Ex. 9 (AMZN-RTL-FTC-14090218) at -219, and [redacted] against sellers, Ex. 10 (AMZN-RTL-FTC-08604065) at -065; Ex. 11 (AMZN-RTL-FTC-02780734) at -737.

[redacted]. Ex. 12 (Lafontaine Opening Report) ¶ 14 n.18. To Amazon, a "competitive" price is always defined by the prices of other retailers. This definition is distinct

[3] Select Competitor—Featured Offer Disqualification, or SC-FOD, "[redacted]" Ex. 12 (Lafontaine Opening Report) ¶ 23.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

from the concept of competitive prices in antitrust law or economics because "competitive" prices—under Amazon's definition—can be high *or* low in absolute terms. Put differently, prices can be "competitive" as Amazon defines its term even though they are "supracompetitive," as antitrust law defines it, i.e., "price[s] above competitive levels." *See CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1068–69 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 1836 (2026).

Under Amazon's definition, if Amazon agreed with other retailers to set a price floor for a tube of toothpaste at $7.99, that inflated price would be "competitive" because Amazon's price would not be higher than its lowest-priced monitored competitor. But of course, jointly fixing a price above the level it would command in a competitive market is exactly the type of anticompetitive conduct that the antitrust laws prohibit. So too with other mechanisms—such as price parity policies—that raise prices by disrupting ordinary price competition.

Amazon's documents further illustrate why. For example, after Amazon enforced SC-FOD and ASB on a seller due to lower prices off Amazon, the seller told an Amazon employee that it planned to "[redacted]." Ex. 13 (Amazon-FTC-CID_05231155) at -157. An Amazon executive referred to this plan as a "[redacted]" *Id.* (emphasis added). In other words, when Amazon learned that the seller planned to increase its off-Amazon prices due to Amazon's price parity enforcement, Amazon considered that an improvement in its customer experience. As the hypothetical and concrete examples show, "competitive" prices on Amazon are not evidence of *competition*.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**B. Amazon Asserts That Its Anti-Discounting Practices Are Procompetitive Because They Maintain "Competitive" Prices and Thus "Customer Trust"**

As a procompetitive justification in support of its Second Affirmative Defense against Plaintiffs' claims, Amazon has asserted that its anti-discounting conduct ensures that prices on Amazon are no higher than rivals' prices, which preserves "customer trust." *See* Def.'s Answer to Pls.' Second Am. Compl. (Dkt. #341) at 87; Ex. 1 (Def. Amazon.com, Inc.'s Third Am. Objs. and Resps. to Pls.' Interrog. No. 1) at 11–12 ("[redacted].").

In her opening report addressing the purported procompetitive benefits of Amazon's conduct, Amazon's expert economist Professor Francine Lafontaine explained, "[redacted]." Ex. 12 (Lafontaine Opening Report) ¶ 140.[4] Amazon executives agree that [redacted] Doug Herrington, CEO of Worldwide Stores, North America Consumer, testified that "[redacted]" Ex. 14 (Herrington Oct. 14, 2022 IH Tr.) 55:4–21, 57:2–20; *see also* Ex. 15 (Bezos Sept. 18, 2025 Dep. Tr.) 67:6–13; Ex. 16A ([redacted] Aug. 20, 2025 Dep. Tr.) 38:19–39:5 ("[redacted].").

Analogous to her opinions regarding SC-FOD, Professor Lafontaine concludes that "[redacted]

---

[4] [redacted] *See* Ex. 18 (Lafontaine Sept. 11, 2026 Dep. Tr.) 65:15–66:4.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

[redacted]" Ex. 12 (Lafontaine Opening Report) ¶ 166. This [redacted] as explained above, includes [redacted] *See* Ex. 4 (AMZN-RTL-FTC-02528739) at -750–751; Ex. 5 (AMZN-RTL-FTC-02105976) at -976; Ex. 6 (AMZN-RTL-FTC-00369847) at -849–850. Therefore, like SC-FOD, ASB ensures that prices on Amazon are no higher than prices offered by other retailers.

[redacted] *See, e.g.*, Ex. 17 (Herrington Mar. 28, 2022 Cal. Investigational Interview Tr.) 110:9–112:15; Ex. 12 (Lafontaine Opening Report) ¶ 140.

### C. "Customer Trust" Is a Euphemism for Reduced Comparison Shopping, Amazon Sales, and Ultimately Amazon Profits

According to Amazon, by ensuring rivals' prices are not lower than prices on Amazon, SC-FOD preserves "trust" and promotes competition because a loss of trust might encourage consumers to shop on Amazon's rivals. As Professor Lafontaine tells it:

[redacted]

Ex. 12 (Lafontaine Opening Report) ¶ 140 (emphasis added). She testified similarly: "[I]f a shopper loses trust in the featured offer due to an uncompetitive price, they would likely shop less at Amazon in the future." Ex. 18 (Lafontaine Sept. 11, 2026 Dep. Tr.) 74:23–75:2; *see also id.* 70:20–71:7. Consistent with the above discussion, "consumer trust" here means ensuring that



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

shoppers return to Amazon, not Amazon's rivals, by limiting rivals' ability to offer lower prices to attract customers.

[redacted]

[redacted]

Ex. 1 (Def. Amazon.com, Inc.'s Third Am. Objs. and Resps. to Pls.' Interrog. No. 1) at 11 (emphasis added); *see also* Ex. 19 ([redacted] June 23, 2022 Cal. Investigational Interview Tr.) 96:3–22 ("[redacted]"); Ex. 20 ([redacted] Sept. 23, 2022 IH Tr.) 64:13–21; Ex. 21 ([redacted] Aug. 27, 2025 Dep. Tr.) 520:16–19 [redacted]"); Ex. 12 (Lafontaine Opening Report) ¶ 95 n.198 (quoting Ex. 21 ([redacted] Aug. 27, 2025 Dep. Tr.) 519:21–520:21).

Amazon also claims that ASB is procompetitive because it induces shoppers to return to Amazon instead of patronizing its rivals. As Amazon states in its interrogatory response: "[redacted]" Ex. 1 (Def.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Amazon.com, Inc.'s Third Am. Objs. and Resps. to Pls.' Interrog. No. 1) at 10 (emphasis added).[5]

Amazon's [redacted] Ex. 22 ([redacted] Oct. 11, 2022 IH Tr.) 133:23–135:4. As Mr. Herrington explained, [redacted] and [redacted] Ex. 17 (Herrington Mar. 28, 2022 Cal. Investigational Interview Tr.) 110:24–111:22; *see also, e.g.*, Ex. 14 (Herrington Oct. 14, 2022 IH Tr.) 46:8–16; Ex. 23 ([redacted] Mar. 2, 2022 Cal. Investigational Interview Tr.) 106:3–8; Ex. 24 ([redacted] Oct. 1, 2025 Dep. Tr.) 78:1–4.

[redacted] testified that he viewed [redacted] Ex. 22 ([redacted] Oct. 11, 2022 IH Tr.) 133:23–135:4.[6] [redacted] Ex. 25 (AMZN-RTL-FTC-02134865) at -871 ("[redacted]

[5] Though Amazon made these statements to justify SC-FOD and ASB, it has also raised similar justifications for its first-party anti-discounting conduct, *see, e.g.*, Ex. 12 (Lafontaine Opening Report) §§ 3.1.2, 4.3.1. This reasoning applies equally to justifications that "trust" in "competitive" prices maximizes the likelihood consumers return to Amazon and do not patronize Amazon's rivals. While "trust" is Amazon's sole justification for SC-FOD (and its analog, "customer experience," for ASB), [redacted] *See* Ex. 1 (Def. Amazon.com, Inc.'s Third Am. Objs. & Resps. To Pls.' Interrog. No. 1) at 15. Accordingly, this motion concerns only Amazon's third-party anti-discounting justifications.

[6] [redacted]



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

[redacted]"); *see also* Ex. 26 ([redacted] Aug. 20, 2025 Dep. Tr.) 173:14–175:2 ([redacted]). And an Amazon [redacted] explains, [redacted] Ex. 27 (AMZN-RTL-FTC-07953634) at -639; *see also* Ex. 28 (Amazon-FTC-CID_08640397) at -412–413.

Amazon also ties its commitment to "competitive prices," i.e., ensuring that its rivals cannot offer lower prices, to its profits. A [redacted] document states that Amazon uses [redacted] Ex. 29 (AMZN-RTL-FTC-01177286) at -289. Professor Lafontaine makes the same connection, stating, [redacted] Ex. 30 (Lafontaine Rebuttal Report) ¶ 403.

Increased sales and profits obviously benefit Amazon. In an attempt to identify a benefit to *consumers* flowing from customer trust, Amazon explains that the "trust" preserved by SC-FOD benefits consumers because it removes the need for shoppers to consider shopping on Amazon's competitors. Under this theory, if shoppers can trust that Amazon has "competitive" prices—again, meaning that no other retailer has a lower price—then customers do not need to comparison shop or check prices at Amazon's rivals. For example, when asked [redacted] answered:

[7] Free cash flow is a measure of profitability. *See* Ex. 26 ([redacted] Aug. 20, 2025 Dep. Tr.) 40:19–25 ([redacted]).



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

[redacted] Ex. 16B ([redacted] Aug. 21, 2025 Dep. Tr.) 545:17–546:24. [redacted] testified similarly, stating that [redacted] Ex. 31 ([redacted] May 6, 2025 Dep. Tr.) 63:8–17; *see also* Ex. 18 (Lafontaine Sept. 11, 2026 Dep. Tr.) 72:3–74:2 (explaining how [redacted] reduces the need to comparison shop, which is "useful" to consumers); Ex. 16B ([redacted] Aug. 21, 2025 Dep. Tr.) 581:15–582:16; Ex. 32 (AMZN-RTL-FTC-13953279) at -297 [redacted]"). [redacted] Ex. 33B ([redacted] Apr. 24, 2025 Dep. Tr.) 17:21–18:9; *see also* Ex. 33A ([redacted] Apr. 23, 2025 Dep. Tr.) 76:25–77:6.

## II. LEGAL STANDARD

"Summary judgment is warranted when the evidence, viewed in the light most favorable to the non-moving party, shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *FTC v. Amazon.com, Inc.*, No. 2:23-cv-00932, 2025 WL 2677086, at *4 (W.D. Wash. Sept. 17, 2025) (Chun, J.) (quoting Fed R. Civ. P. 56(a)). "A fact is 'material' if it might affect the outcome of the case." *Metro. Group Prop. & Cas. Ins. Co. v. Fite*, 738 F. Supp. 3d 1371, 1375–76 (W.D. Wash. 2024) (Chun, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Id.*



FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

at 1376 (quoting *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)) (citation modified). "The moving party bears the burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law." *Id.* (citing *Celotex Corp. v. Catlett*, 477 U.S. 317, 323 (1986)).

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) Advisory Committee Notes (2010). "A request for partial summary judgment can serve a useful brush-clearing function even if it does not obviate the need for a trial . . . ." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015). Rule 56(a)'s standards apply to motions for partial summary judgment. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *Gallerson v. Burlington N. Santa Fe Ry. Co.*, 2019 WL 3006988, at *8 (W.D. Wash. July 9, 2019); *see also Naxos, LLC v. Am. Fam. Ins. Co.*, 611 B.R. 358, 363 n.9 (W.D. Wash. 2019) (citing Fed. R. Civ. P. 56(a) and *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 768 (9th Cir. 1981)).

## III. ARGUMENT

Under Section 2 of the Sherman Act, courts apply a "three-part burden-shifting test." *Simon and Simon, PC v. Align Tech., Inc.*, No. 24-1703, 2026 WL 2980631, at *5–6 (9th Cir. Oct. 5, 2026). "At step one, a plaintiff must establish a prima facie claim of anticompetitive conduct." *Id.* at *2. If the plaintiff succeeds, at step two, the burden shifts to the defendant to "proffer a 'procompetitive justification' for its conduct." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) (en banc)); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608 (1985) (upholding verdict where defendant "did not persuade the jury that its conduct was justified by



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

any normal business purpose"). If the monopolist does so, "then the burden shifts back to the plaintiff to rebut that claim." *Qualcomm*, 969 F.3d at 991 (quoting *Microsoft*, 253 F.3d at 59). "If the plaintiff cannot rebut the monopolist's procompetitive justification, 'then the plaintiff must demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit.'" *Id.* at 991 (quoting *Microsoft*, 253 F.3d at 59). "This burden-shifting has evolved based on which party has access to the various categories of evidence and information, with any evidence of procompetitive justifications likely to be under the defendant's control." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 464 (7th Cir. 2020).

As implied by its name, a procompetitive justification must "enhance[] competition." *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 836 (9th Cir. 2022) (emphasis omitted); *see also Align*, 2026 WL 2980631, at *5. A justification is not procompetitive if it only benefits the defendant; it must benefit "consumers and 'the competitive process itself.'" *United States v. Am. Airlines Grp. Inc.*, 121 F.4th 209, 226 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2866, 222 L. Ed. 2d 1148 (2025) (quoting *Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792, 794 (1st Cir. 1988) (Breyer, J.)); *LePage's Inc. v. 3M*, 324 F.3d 141, 163 (3d Cir. 2003) (en banc) ("In general, a business justification is valid if it relates directly or indirectly to the enhancement of consumer welfare." (internal quotation omitted)).[8] Courts frequently reject asserted justifications because they do not "enhance[] competition," *see, e.g.*, *PLS.com*, 32 F.4th at 837 (emphasis omitted), including by granting summary judgment for plaintiffs, *see Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1010, 1023–24 (10th Cir. 1998); *cf. In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126, 1151–52 (N.D. Cal. 2014)

[8] Courts have referred to this defense with different labels, such as "legitimate business justification," *Align*, 2026 WL 2980631, at *5, or "valid business reason," *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 483 (1992). However labeled, the defense must involve a showing of legitimate improvements to *competition*. *See Align*, 2026 WL 2980631, at *5; *LePage's*, 324 F.3d at 163.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

(granting plaintiff partial summary judgment due to legal deficiencies in defendants' procompetitive justification).

### A. Saving Shoppers the Purported Hassle of Shopping on Amazon's Rivals Does Not Enhance Competition

Amazon claims that enhancing "trust" in Amazon and the Buy Box benefits consumers by saving them the need to shop anywhere other than Amazon. *See supra* § I.C. As discussed above, [redacted] Ex. 16B ([redacted] Aug. 21, 2025 Dep. Tr.) 545:17–546:24; *see also* Ex. 31 ([redacted] May 6, 2025 Dep. Tr.) 63:8–17 ("[redacted]"); Ex. 33B ([redacted] Apr. 24, 2025 Dep. Tr.) 17:21–18:9 [redacted] Ex. 32 (AMZN-RTL-FTC-13953279) at -297 [redacted]"). Professor Lafontaine also testified that the consumer benefits of "trust" in Amazon manifest in reduced comparison shopping. As she put it, "If consumers trust what Amazon is suggesting is a good offer, then they benefit from not having to search as much on the store or on other stores, other marketplaces, and -- so that's useful." Ex. 18 (Lafontaine Sept. 11, 2026 Dep. Tr.) 72:2–74:2.

Any such savings, however, are not a *procompetitive* benefit; the Ninth Circuit has already foreclosed this defense. In *PLS.com*, an upstart real estate listing platform sued a real estate brokerage trade association over the association's policy requiring that all real estate listings be shared with an association-affiliated listing platform. 32 F.4th at 830 (assessing allegations of a group boycott under Section 1 of the Sherman Act). Due to the policy, listings could not be exclusively listed on the rival platform. *Id.* The "[d]efendants argue[d] that [the



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

policy was] procompetitive because it 'reduc[ed] search and transaction costs.'" *Id.* at 836. The Ninth Circuit forcefully disagreed:

> Although this contention is dressed up in the language of economics, at its core it is just an argument that the [challenged policy] benefits buyers' agents because it allows them to see more listings on the [defendant-affiliated platforms] and to avoid the need to consult competing services. This is not a procompetitive justification because it does not explain how the [challenged policy] enhances *competition.*

*Id.* The court concluded, "In the end, sparing consumers the need to patronize competing firms is not a procompetitive justification for a group boycott." *Id.* Quite the contrary: the defendants' argument was "nothing less than a frontal assault on the basic policy of the Sherman Act." *Id.* (quoting *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 695 (1978)).

The *PLS.com* reasoning applies equally here.[9] If Amazon's conduct has anticompetitive effects, it cannot be justified because it also saved consumers from [redacted] Ex. 16B [redacted] Aug. 21, 2025 Dep. Tr.) 545:17–546:24. Without Amazon's anti-discounting conduct, shoppers could freely choose between searching less while buying from Amazon *or* searching for lower prices elsewhere, which they would also be more likely to find. Amazon is imposing *its* choice on consumers and calling it a benefit. *See* Ex. 2 (Johnson Rebuttal Report) ¶ 107 ([redacted]). The Sherman Act does not recognize such justifications. *Nat'l Soc'y of Pro. Eng'rs*, 435 U.S. at 695 (rejecting justification where restraint "prevent[ed] all customers from making price comparisons . . . and imposes [the defendant's]

[9] Though *PLS.com* addressed this issue in determining whether to apply a quasi-per se rule to the defendants' conduct, *PLS.Com*, 32 F.4th at 835–36, the purpose of all antitrust analysis "is to form a judgment about the competitive significance of the" defendant's conduct. *Nat'l Soc'y of Pro. Eng'rs*, 435 U.S. at 693. Thus, the *PLS.com* court's rejection of a purported procompetitive justification because it did not promote competition applies in the Section 2 context.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

views of the costs and benefits of competition on the entire marketplace"). As a result, Amazon's "trust" justification fails as a matter of law.

If anything, Amazon's claim of reduced cross shopping "confirms rather than refutes the anticompetitive . . . effect of its" conduct. *Nat'l Soc'y of Pro. Eng'rs*, 435 U.S. at 693; *see also Gen. Cinema Corp. v. Buena Vista Distribution Co.*, 532 F. Supp. 1244, 1268–69 (C.D. Cal. 1982). A reduction in consumer comparison shopping can be *evidence of* or *cause* anticompetitive effects. *See* Ex. 2 (Johnson Rebuttal Report) ¶¶ 94, 104, 107, 110; *see also id.* ¶ 98 fig. 1. [redacted] *See* Ex. 2 (Johnson Rebuttal Report) ¶ 107. If no retailers offer discounts, there is no benefit to looking for them. Glenn Ellison & Alexander Wolitzky, *A Search Cost Model of Obfuscation*, 43 Rand J. Econ. 417, 417–18 (2012) (Ex. 34) ("[C]onsumers have no incentive to search if they expect all firms to charge monopoly prices."); Ex. 35 (Chen Reply Report) ¶ 9. Thus, less search is the predicted outcome of the anticompetitive effects caused by Amazon's conduct.

And, as recognized by Nobel Prize-winning economist Peter Diamond, when consumers search less, it can create a vicious cycle: less searching reduces rivals' incentives to cut prices, which then further disincentivizes search and so on. *See* Peter A. Diamond, *A Model of Price Adjustment*, 3 J. Econ. Theory 156, 157, 165 (1971) (Ex. 36); *see also* Ellison & Wolitzky, *A Search Cost Model of Obfuscation*, *supra*, at 417–18 (Ex. 34). Consistent with this principle, Professor Lafontaine testified that economic theory predicts that consumers who search more pay lower prices and consumers who search less pay higher prices. Ex. 18 (Lafontaine Sept. 11, 2026 Dep. Tr.) 180:17–181:2. Thus, Amazon's touted benefits of [redacted] Ex. 16B ([redacted] Aug. 21, 2025 Dep. Tr.) 545:17–546:24,



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

thereby "sparing consumers the need to patronize competing firms," support rather than rebut Plaintiffs' proof of anticompetitive effects. *PLS.com*, 32 F.4th at 836.

**B. "Trust" in Amazon Benefits Amazon, Not Competition**

As discussed above, Amazon asserts that SC-FOD [redacted]" Ex. 12 (Lafontaine Opening Report) ¶ 140; *see supra* § I.B. Enhancing trust, in turn, ensures that consumers do not "[redacted]." Ex. 12 (Lafontaine Opening Report) ¶ 140; Ex. 1 (Def. Amazon.com, Inc.'s Third Am. Objs. & Resps. To Pls.' Interrog. No. 1) at 11 ([redacted]). Amazon justifies ASB similarly. *See supra* § I.C. In essence, Amazon argues that its conduct is justified because it makes shoppers less likely to patronize Amazon's rivals. While this effect benefits Amazon, it does not benefit *competition*. To the contrary, it reflects the anticompetitive effects of Amazon's conduct. Such justifications are not cognizable procompetitive justifications.

*Otter Tail* is instructive. 410 U.S. 366. There, the Supreme Court condemned a private power company's anticompetitive scheme to prevent municipalities from replacing the company with public power systems and thus "eroding [the defendant's] monopolistic position." *Id.* at 378. The defendant sought to justify its conduct by arguing that "without the weapons which [the defendant] used, more and more municipalities will turn to public power and [the defendant] will go downhill." *Id.* at 380. The Supreme Court rejected that argument, stating, "The promotion of self-interest alone does not . . . immunize otherwise illegal conduct." *Id.* (internal quotation omitted). Instead, the Court explained, the Sherman Act "assumes that an enterprise will protect itself against loss by operating with superior service, lower costs, and improved efficiency," not anticompetitive conduct. *Id.*



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

The Supreme Court affirmed this precept in *NCAA v. Board of Regents of University of Oklahoma*, 468 U.S. 85 (1984). In *NCAA*, a college sports association defended its policy limiting television broadcasts of its games by asserting that the policy protected live attendance at its games. *Id.* at 94, 115–16. The Court rejected this justification, holding:

> The NCAA's argument that its television plan is necessary to protect live attendance is . . . based on . . . a fear that the product will not prove sufficiently attractive to draw live attendance when faced with competition from televised games. At bottom the NCAA's position is that ticket sales for most college games are unable to compete in a free market. . . . By seeking to insulate live ticket sales from the full spectrum of competition because of its assumption that the product itself is insufficiently attractive to consumers, petitioner forwards a justification that is inconsistent with the basic policy of the Sherman Act.

*Id.* at 116–17.

Justifications like Amazon's have also been rejected by circuit courts since *NCAA*. In *Microsoft*, the defendant attempted to justify its exclusive dealing by arguing that "it want[ed] to keep developers focused upon its APIs." 253 F.3d at 71. The D.C. Circuit rejected that defense, stating that it amounted to a desire to "preserve [the defendant's] power in the operating system market." *Id.* As the court explained, "[t]hat is not an unlawful end, *but neither is it a procompetitive justification* for the specific means here in question, namely exclusive dealing contracts . . . ." *Id.* (emphasis added); *see also id.* at 72 (holding that justification for other exclusionary conduct failed for similar reasons: "As we explained before, however, keeping developers focused on Windows—that is preserving the Windows monopoly—is a competitively neutral goal").

The Eleventh Circuit held similarly in *McWane, Inc. v. FTC*, 783 F.3d 814 (11th Cir. 2015). There, the defendant argued that its exclusive dealing "was necessary to retain enough sales to keep its domestic foundry afloat." *Id.* at 840–41. Relying on *Microsoft*, the Eleventh



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

Circuit rejected this argument, stating that "such a goal is 'not an unlawful end, but neither is it a procompetitive justification.'" *Id.* (quoting *Microsoft*, 253 F.3d at 71).

Amazon's lament that without its conduct, consumers will lose [redacted] in Amazon and hence "[redacted]," Ex. 12 (Lafontaine Opening Report) ¶ 140, is merely a different way to express these rejected justifications. According to Amazon, if sellers' products were offered for lower prices off Amazon, "more and more [shoppers] will turn to [Amazon's competitors]," *see Otter Tail*, 410 U.S. at 380, or Amazon will be "insufficiently attractive to consumers," *see NCAA*, 468 U.S. at 117; *see also* Ex. 18 (Lafontaine Sept. 11, 2026 Dep. Tr.) 76:3–11 (agreeing that "if a shopper loses trust in the featured offer due to an uncompetitive price, Amazon will be less attractive to that shopper in the future"). That is, without its anti-discounting conduct, Amazon will struggle to "retain enough sales," *see McWane*, 783 F.3d at 841, or "keep [shoppers] focused on [Amazon]," *see Microsoft*, 253 F.3d at 71; *see also* Ex. 22 ([redacted] Oct. 11, 2022 IH Tr.) 133:23–135:4 ([redacted]); Ex. 24 [redacted] Oct. 1, 2025 Dep. Tr.) 77:23–78:4.

Of course, if Amazon cannot compete on price, shoppers may go to Amazon's competitors. But that does not give Amazon free reign to protect its dominant market position through anticompetitive means. Rather, the antitrust laws require that Amazon only respond with *competitive* weapons, such as by lowering fees to sellers, to ensure its attractiveness to shoppers. *See Otter Tail*, 410 U.S. at 380. Amazon has experimented with such procompetitive efforts in the past. For example, a [redacted] document recounted that [redacted] *See* Ex. 37 (AMZN-RTL-FTC-02443172) at -172 (describing [redacted]).



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

As the cases above recognize, a desire to retain customers "is not an unlawful end, but neither is it a procompetitive justification . . . ." *Microsoft*, 253 F.3d at 71. Retaining customers is often an expected *effect* of anticompetitive conduct. So too with "competitive prices" and "customer trust." As discussed above, Amazon's documents demonstrate that it can acquire "competitive" prices and "trust" anticompetitively. *See supra* § I.A. For example, in an email chain regarding SC-FOD and ASB, [redacted] Ex. 13 (Amazon-FTC-CID_05231155) at -156–157.

In another example, a brand had its offers suspended by Amazon under an ASB predecessor program due to lower prices at other retailers. *See* Ex. 38 (AMZN-RTL-FTC-08635004) at -005. As an Amazon email recounts, the brand [redacted]. *Id.* Though the brand was disappointed in Amazon's application of its policy, it [redacted] *Id.* As these examples show, Amazon's efforts to maintain "customer trust" that Amazon's prices will not be any higher than its lowest-priced competitor do not necessarily translate into benefits for shoppers. Instead, those efforts can drive prices up and reduce competition.

Though Amazon cloaks its justifications in the positive-sounding label of "trust," the evidence shows that "enhanc[ing] trust" means enhancing Amazon's profits. *See, e.g.*, Ex. 12 (Lafontaine Opening Report) ¶ 140. As discussed above, Amazon has viewed [redacted]. *See supra* § I.C; Ex. 22 ([redacted] Oct. 11, 2022 IH Tr.) 134:20–135:4; Ex. 25 (AMZN-RTL-FTC-02134865) at -871. In other circumstances, Amazon



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

has viewed "trust" and "competitive" prices solely as vehicles to maximize its profits. *See supra* § I.C.

But "'[w]e do it because it's more profitable' is not a defense under the Sherman Act." *Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 754 F. Supp. 1336, 1359 (N.D. Ill. 1991), *aff'd*, 961 F.2d 667 (7th Cir. 1992); *see also Otter Tail*, 410 U.S. at 380; *Lepage's*, 324 F.3d at 163–64; *Polygram Holding, Inc. v. FTC*, 416 F.3d 29, 38 (D.C. Cir. 2005); *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990). As a leading treatise explains, "the aim to enhance [a defendant's] profitability [will not] be a sufficient business justification, since such an objective could be achieved anticompetitively as well as procompetitively." 1 A.B.A, Antitrust Law Developments § 2-C-10 (9th ed. 2022), Lexis (updated 2025). Accordingly, Amazon's "trust" justification is not a valid procompetitive justification and summary judgment should be granted. *See Otter Tail*, 410 U.S. at 380; *Law v. NCAA*, 134 F.3d at 1022–24.

At its core, Amazon's "customer trust" justification for its price parity policies "seek[s] to insulate [Amazon] from the full spectrum of competition" and assumes that rivals offering lower prices would somehow harm consumers. *See NCAA*, 468 U.S. at 116; *see also Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 835–36 (6th Cir. 2011) (rejecting procompetitive justification that eliminated a "bidding disadvantage" because it protected traditional firms from competition); Ex. 18 (Lafontaine Sept. 11, 2026 Dep. Tr.) 76:12–77:9 [redacted] But Amazon cannot "impose[] [its] views of the costs and benefits of competition on the entire marketplace." *See Nat'l Soc'y of Pro. Eng'rs*, 435 U.S. at 695. Its attempt to do so "is nothing less than a frontal assault on the basic policy of the Sherman Act." *See id.*



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

**C. Amazon's Asserted Second-Order Benefits of "Trust" for Third Parties Do Not Enhance Competition**

To the extent Amazon argues that "customer trust" benefits not only Amazon but also sellers and vendors on Amazon, this justification similarly fails. Amazon's interrogatory response hypothesizes that [redacted] *See* Ex. 1 (Def. Amazon.com, Inc.'s Third Am. Objs. and Resps. to Pls.' Interrog. No. 1) at 9–12. Conversely, Amazon claims that [redacted] *Id.* at 11.

This assertion is not a procompetitive justification. Many antitrust defendants will have suppliers or customers who could conceivably benefit from the defendant entrenching its market power. But "the antitrust laws exist to protect the competitive process itself, not individual firms." *Grappone*, 858 F.2d at 794 (Breyer, J.); *cf. Align*, 2026 WL 2980631, at *8. It is not enough to show that Amazon's practices benefit some partner business; Amazon must show that they further the competitive process, such as through "cost-reducing innovations." *See Viamedia*, 951 F.3d at 478; *cf. Nat'l Soc'y of Pro. Eng'rs*, 435 U.S. at 695 (explaining that under Sherman Act Section 1, the rule of reason "does not open the field of antitrust inquiry to any argument in favor of a challenged restraint that may fall within the reason. Instead, it focuses directly on the challenged restraints' impact on competitive conditions.").

The Tenth Circuit rejected an analogous justification in *Law v. NCAA*. 134 F.3d 1010. There, the NCAA argued that capping coaches' salaries was necessary to "allow younger, less experienced coaches entry into Division I coaching positions." *Id.* at 1021. Though the court



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

recognized that this might have some "social value," it rejected the justification because the court found it did not enhance competition. *Id.* at 1021–22. So too here. Increasing vendors' or sellers' sales on Amazon does not demonstrate that Amazon's conduct promotes competition. Thus, the putatively beneficial side effects of Amazon's conduct cannot justify its anticompetitive effects. Otherwise, any monopolist could justify its exclusionary conduct because *someone* benefits from its monopoly. *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988–89 (9th Cir. 2000) (rejecting argument that "conspiracy to depress" milk prices would benefit consumers via "lower prices for cheese products" as "contrary to long-established antitrust law"); *see also Law v. NCAA*, 134 F.3d at 1023 ("The exercise of market power by a group of buyers virtually always results in lower costs to the buyers—a consequence which arguably is beneficial to the members of the industry and ultimately their consumers" but that alone is not enough to justify anticompetitive conduct (internal quotation omitted)).

Moreover, Amazon's argument fails because it relates only to vendors and sellers' sales *on Amazon*, not sales across all retailers in the relevant markets. [redacted] Ex. 12 (Lafontaine Opening Report) ¶ 140, [redacted]. In other cases, a sale may be won by a different seller or vendor on that store. The Sherman Act does not prefer that consumers shop at one retailer instead of another or buy from one particular seller or vendor. Rather, "[i]t rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress . . . ." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958). Because Amazon's justification focuses only on sales on *Amazon*, it is not *procompetitive*.



**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2222

## CONCLUSION

For the reasons stated above, Amazon's "customer trust" justification for its third-party anti-discounting conduct is not a procompetitive justification recognized under the antitrust laws. Plaintiffs respectfully move that the court grant partial summary judgment by rejecting this justification as a matter of law.

Dated: October 16, 2026

Respectfully submitted,

*s/ Ethan D. Stevenson*

EDWARD H. TAKASHIMA (DC Bar # 1001641)
ETHAN D. STEVENSON (NY Reg. # 5597679)
CHINWE T. CHUKWUOGO (DC Bar # 1617332)
CHRISTOPHER A. GRAHAM (NY Reg. # 5649389)
OLIVIA JERJIAN (DC Bar # 1034299)
NATHAN A. MENDELSOHN (MD Bar # 1712140047)
HANA VERWILT (CA Bar # 360731)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel.: (202) 326-2464 (Takashima)
Email: etakashima@ftc.gov
estevenson1@ftc.gov
cchukwuogo@ftc.gov
cgraham@ftc.gov
ojerjian@ftc.gov
nmendelsohn@ftc.gov
hverwilt@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

I certify that this memorandum contains 7,288 words, in compliance with the Local Civil Rules

*s/ Michael Jo*
Michael Jo (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov
*Counsel for Plaintiff State of New York*

*s/ Nicole Demers*
Nicole Demers (admitted *pro hac vice*)
Deputy Associate Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: nicole.demers@ct.gov
*Counsel for Plaintiff State of Connecticut*

*s/ Alexandra C. Sosnowski*
Alexandra C. Sosnowski (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov
*Counsel for Plaintiff State of New Hampshire*

*s/ Christopher J. Campbell*
Christopher J. Campbell (admitted *pro hac vice*)
Assistant Attorney General
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-0858
Email: Chris.Campbell@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

*s/ Timothy D. Smith*
Timothy D. Smith, WSBA No. 44583
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.oregon.gov
*Counsel for Plaintiff State of Oregon*

*s/ Jennifer A. Thomson*
Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov
*Counsel for Plaintiff Commonwealth of Pennsylvania*

*s/ Michael A. Undorf*
Michael A. Undorf (admitted *pro hac vice*)
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov
*Counsel for Plaintiff State of Delaware*

*s/ Christina M. Moylan*
Christina M. Moylan (admitted *pro hac vice*)
Assistant Attorney General
Chief, Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov
*Counsel for Plaintiff State of Maine*

*s/ Schonette Walker*
Schonette Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6473
Email: swalker@oag.state.md.us
*Counsel for Plaintiff State of Maryland*

*s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: katherine.krems@mass.gov
*Counsel for Plaintiff Commonwealth of Massachusetts*

*s/ Scott A. Mertens*
Scott A. Mertens (admitted *pro hac vice*)
Assistant Attorney General
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov
*Counsel for Plaintiff State of Michigan*

*s/ Zach Biesanz*
Zach Biesanz (admitted *pro hac vice*)
Senior Enforcement Counsel
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Counsel for Plaintiff State of Minnesota*

*s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov
*Counsel for Plaintiff State of Nevada*

*s/ Andrew Esoldi*
Andrew Esoldi (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-7819
Email: andrew.esoldi@law.njoag.gov
*Counsel for Plaintiff State of New Jersey*

*s/ Anthony R. Juzaitis*
Anthony R. Juzaitis (admitted *pro hac vice*)
Deputy Attorney General, Civil Affairs
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 651-7565
Email: AJuzaitis@nmag.gov
*Counsel for Plaintiff State of New Mexico*

*s/ Zulma Carrasquillo Almena*
Zulma Carrasquillo Almena (admitted *pro hac vice*)
Senior Attorney & Special Prosecutor
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900, Ext. 1211
Email: zcarrasquillo@justicia.pr.gov
*Counsel for Plaintiff Commonwealth of Puerto Rico*

*s/ Alexander Carnevale*
Alexander Carnevale (admitted *pro hac vice*)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: acarnevale@riag.ri.gov
*Counsel for Plaintiff State of Rhode Island*

*s/ Sarah L.J. Aceves*
Sarah L.J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: Sarah.Aceves@vermont.gov
*Counsel for Plaintiff State of Vermont*

*s/ Caitlin M. Madden*
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Counsel for Plaintiff State of Wisconsin*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 16, 2026, I electronically filed a true and correct copy of the foregoing document using the United States District Court for the Western District of Washington's CM/ECF System.

I FURTHER CERTIFY that I served the foregoing document on the following counsel via secure FTP service:

Patricia A. Eakes
Molly A. Terwilliger
MORGAN LEWIS & BOCKIUS LLP
1301 Second Ave, Suite 3000
Seattle, WA 98101
Telephone: (206) 274-6400
Email: patty.eakes@morganlewis.com
molly.terwilliger@morganlewis.com

Heidi K. Hubbard
John E. Schmidtlein
Kevin M. Hodges
Jonathan B. Pitt
Carl R. Metz
Carol J. Pruski
Katherine Trefz
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: 202-434-5000
Email: hhubbard@wc.com
khodges@wc.com
jpitt@wc.com
cmetz@wc.com
cpruski@wc.com
ktrefz@wc.com

Thomas O. Barnett
Katherine Mitchell-Tombras
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001
Telephone: 202-662-5407
Email: tbarnett@cov.com
kmitchelltombras@cov.com

Kosta S. Stojilkovic
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Phone: (202) 847-4045
Email: kstojilkovic@wilkinsonstekloff.com

*Counsel for Defendant Amazon.com, Inc.*

Michael Jo
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6537
Email: Michael.Jo@ag.ny.gov

*Counsel for Plaintiff State of New York*

Alexandra C. Sosnowski
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Telephone: (603) 271-2678
Email: Alexandra.c.sosnowski@doj.nh.gov

*Counsel for Plaintiff State of New Hampshire*

Christopher J. Campbell
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-0858
Email: Chris.Campbell@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

Jennifer A. Thomson
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jthomson@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of Pennsylvania*

Nicole Demers
Deputy Associate Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06016
Telephone: (860) 808-5030
Email: nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

Gary Honick
Office of the Maryland Attorney General
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6474
Email: Ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

Katherine W. Krems
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: katherine.krems@mass.gov

*Counsel for Plaintiff Commonwealth of Massachusetts*

Scott A. Mertens
Michigan Department of Attorney General
525 West Ottawa Street
Lansing, MI 48933
Telephone: (517) 335-7622
Email: MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Michael A. Undorf
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
Email: michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

Christina M. Moylan
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Telephone: (207) 626-8800
Email: christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

Lucas J. Tucker
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
Telephone: (775) 684-1100
Email: LTucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

Andrew Esoldi
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-7819
Email: andrew.esoldi@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

Anthony R. Juzaitis
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 651-7565
Email: AJuzaitis@nmag.gov

*Counsel for Plaintiff State of New Mexico*

Zach Biesanz
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

Zulma Carrasquillo-Almena
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900
Email: zcarrasquillo@justicia.pr.gov

*Counsel for Plaintiff Commonwealth of Puerto Rico*

Alexander Carnevale
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
Email: acarnevale@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

Sarah L. J. Aceves
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov

*Counsel for Plaintiff State of Vermont*

Timothy D. Smith
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us

*Counsel for Plaintiff State of Oregon*

Caitlin M. Madden
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov

*Counsel for Plaintiff State of Wisconsin*