# Exhibit 1

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Shira Steinberg
Bureau of Competition
(202) 569-7761
ssteinberg1@ftc.gov

July 2, 2026

**BY ELECTRONIC MAIL**

Katherine Trefz
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
ktrefz@wc.com

Re: *Federal Trade Commission, et al. v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC (W.D. Wash.)

Counsel,

We write in response to Amazon's June 17, 2026 letter regarding Amazon's Objections and Responses to Plaintiffs' Fifth Set of Interrogatories and Ninth Set of Requests for Production.

**Request No. 408**. The parties are in agreement regarding Amazon's response to Request No. 408, subject to an agreement between the parties regarding TAR, custodians, and search terms. We address those issues below.

**Request Nos. 410-412**. At the outset we note that, contrary to Amazon's assertion, Plaintiffs are not "reneg[ing]" on the parties' prior negotiations regarding Amazon's collection and production of its custodians' mobile devices. The parties reached that agreement on January 23, before Plaintiffs filed their motion for spoliation sanctions. The Court subsequently found that "Amazon failed to preserve at least some ESI that should have been preserved," and granted Plaintiffs leave to conduct discovery "into the extent of Amazon's spoliation." Dkt. #671 at 11, 35 (cleaned up). Plaintiffs believe that the Court's order constitutes a change of circumstances that warrants further discovery into custodian mobile devices, despite the parties' previous agreements.

Turning to the specifics of Plaintiffs' requests, we understand Amazon's position to be that the probative value of these Requests is "minimal" in light of the documents and Signal

messages Amazon has already produced. June 17, 2026 Ltr. from K. Trefz to S. Steinberg at 2-3. In order to adequately evaluate that claim, Plaintiffs are seeking to understand which custodians used Signal and what devices Amazon collected—and correspondingly, whether there are additional custodians who *may* have used Signal, or for whom Amazon has not investigated Signal usage, and whether there are devices from Signal-using custodians that Amazon has not collected and reviewed. To that end, Plaintiffs asked Amazon to confirm: (1) which custodians Amazon collected mobile devices from and the date(s) of collection; (2) of those custodians, who used Signal. We also specified: "To the extent Amazon did not collect mobile device(s) from a custodian, please identify the custodian and device, and explain why Amazon did not collect the device. If Amazon believes a custodian did not use Signal, please provide your basis for that belief . . . If there are any custodians Amazon believes used Signal only in their personal capacity and not for work matters, please identify those individuals and clarify Amazon's process of confirming there are no responsive messages on those custodians' devices." June 8, 2026 Ltr. from S. Steinberg to K. Trefz at 2. Amazon notably does not answer these straightforward, simple questions. Instead, Amazon points to a list of employees that used Signal, *see* Aug. 31, 2022 Ltr. from B. Wilkinson to D. Schwartz at 9-20, and a log of Signal messages between custodians, *see* Dkt. 250-1 (July 6, 2023 Updated Signal Log with DM Feature Information). But this letter and log were both prepared almost four years ago for Plaintiffs' investigation, and do not address the question of which mobile devices Amazon collected in discovery for the current litigation. Further, Amazon's reference to a letter from June 2, 2025, does not answer Plaintiffs' questions. That letter is a repeat of the same opaque response Amazon repeats, again, in its June 17, 2026 letter: if Amazon determined through reasonable investigation that a currently employed custodian had work-related text messages, Signal messages, or other potentially relevant materials on their phone, those materials were collected. *See* June 2, 2025 Ltr. from R. Keeling to C. Chukwuogo at 2. Those representations do not answer the question of which custodians Amazon collected mobile devices from, and of those, who used Signal. They also do not address whether there are any custodians whose Signal usage is unknown or unconfirmed.

Plaintiffs additionally asked Amazon to confirm "whether there are any Signal communications related to Amazon business matters that Amazon is withholding on the grounds that they are not responsive to previous RFPs." Amazon has represented to the Court that "Signal was never a part of Amazon's regular practice for making business decisions," and "[r]ather, . . . was a way to quickly get someone's attention or briefly discuss sensitive topics." Dkt. #639 at 6; *see also* Dkt. #223 at 3 ("Signal has no part in Amazon's practice of detailed writing and discussion."). Amazon has also emphasized that its executives have testified that their use of Signal was very limited. *See* Dkt. #639 at 17-18. To the extent that Amazon is withholding business-related Signal messages, those messages may show that Amazon's use of Signal was broader than it claims. Further, if Amazon executives used the Disappearing Messages feature on Signal differently when discussing matters not related to this case, that would be evidence that Amazon intentionally destroyed communications relevant to this case. On the other hand, if Amazon is *not* withholding business-related Signal messages, we can narrow or set aside some of these Requests.

Amazon should be able to easily respond to Plaintiffs' questions regarding its collection of Signal messages and mobile devices. Accordingly, Plaintiffs reiterate their request that

Amazon provide the information requested in our June 8, 2026 letter. If Amazon is standing on its refusal to do so, please state the full basis for Amazon's objections.

**Request Nos. 413 & 414.** As a threshold matter, Amazon's argument that "Plaintiffs have absolutely no basis for these Requests" because Amazon has produced a "mountain of documents and data," June 17, 2026 Ltr. from K. Trefz to S. Steinberg at 3, is a red herring. Amazon's production of a large volume of documents does not show that it has not spoliated *other* documents. Indeed, the Court has already found that "Amazon failed to preserve at least some evidence that it was under a duty to preserve," and that "Amazon failed to take reasonable steps to preserve" relevant documents. Dkt. #678 at 9, 14 (cleaned up).

We view these requests as covering three related categories of documents, all of which are relevant and within the scope of the Court's order:

*First*, "documents regarding the destruction of or failure to preserve" raw notes or Signal messages," including "instructions, guidance, or guidelines" to destroy or preserve materials; observations that materials had been destroyed or not preserved; and instances where materials were destroyed or not preserved. Request Nos. 413-414. Our proposed search terms are aimed at capturing these documents.

*Second*, documents that are relevant to the destruction of or failure to preserve raw notes or Signal messages, but do not specifically refer to raw notes or Signal. For example, guidance directing employees to destroy a broader universe of sensitive or potentially sensitive documents would be broader than instructions to destroy raw notes, but would apply to at least some raw notes. *See* Dkt. #598 at 3. These documents are relevant to the scope of spoliation and are squarely within the Court's order.

Third, documents that concern spoliation *other* than the deletion of raw notes and the use of Signal disappearing messages. These documents are relevant to Amazon's intent. In addition, we believe that the Court, as the finder of fact, should be aware if Amazon has destroyed or failed to preserve other categories of documents relevant to this case. We assume that Amazon is not currently aware of any spoliation that is not related to raw notes or the use of Signal disappearing messages. Accordingly, we will understand Amazon's objections to be based on burden rather than relevance or the scope of the Court's order.

In an effort to reach an agreement, we propose the following: based on our understanding that Amazon is not currently aware of any spoliation is that is not related to raw notes or the use of Signal disappearing messages, we will continue to limit our proposed custodians and search terms (as discussed further below) to target documents in the first two categories above. In turn, Amazon will produce all documents responsive to any part of these Requests to the extent they are identified through those custodians and search terms. To the extent Amazon is aware or becomes aware of any other documents responsive to these Requests, Amazon will also produce those, whether or not they are captured by agreed-upon custodians and search terms. We reserve our rights to seek further discovery if documents or discovery responses produced by Amazon indicate that there has been spoliation that is not related to raw notes or the use of Signal disappearing messages. Further, if we are unable to reach an agreement on custodians and search

terms and are forced to seek relief from the Court, we reserve our rights to seek a broader set of custodians and search terms.

Please let us know if Amazon agrees to the above compromise no later than July 10, 2026. If not, we will understand that the parties are at an impasse.

**Interrogatory No. 31 & Request No. 409.** We continue to disagree with Amazon's asserted burden to respond to Interrogatory No. 31, and in turn, Request No. 409. Amazon's explanation of its burden wholly ignores the parties' discussion during the parties' June 5 meet and confer and the reality of resources and personnel available to Amazon to respond. As an example of the supposed burden counsel must undertake to find a relevant meeting, Amazon points to the number of times the phrase "Chime Meeting ID" comes up in documents produced by Amazon. This ignores the fact that Amazon has access to relevant employees and their respective calendars to quickly identify responsive meetings and notes. Amazon's counsel can use both these tools to quickly narrow the universe necessary to respond to this Interrogatory. It is particularly unreasonable that Amazon maintains that it is too burdensome for *Amazon* to search through hits for the phrase "Chime Meeting ID" or other means to identify responsive meetings, while insisting that Plaintiffs, who have no access to Amazon's employees and less access to Amazon's documents, identify 50 specific meetings for review.

At a high level, an overarching issue here is that Amazon has argued that Plaintiffs must identify each and every document that was spoliated, while at the same time suggesting that certain documents were not spoliated, but rather were not captured or deemed responsive due to Amazon's use of document custodians, search terms, and TAR. *See, e.g.*, Dkt. #639 at 10-11. While the Court has already rejected Amazon's argument—explaining, in part, that "it is not Plaintiffs' burden to specifically identify every piece of evidence that was lost and why it was relevant before moving for spoliation sanctions," Dkt. #678 at 10-11—we expect that Amazon will maintain this position or a similar argument, and must respond accordingly.

In the interests of moving forward, we propose the following compromise: Plaintiffs are willing to narrow the scope of Interrogatory No. 31 and Request No. 409 to five topics that are highly relevant to this case, if Amazon will stipulate that its interrogatory responses and document production concerning those topics are representative of all meetings covered by Interrogatory No. 31 and Request No. 409. Thus, if Amazon's responses to the five topics below show that Amazon has not engaged in any significant spoliation, the Court can infer that the same is true for all meetings covered by Interrogatory No. 31 and Request No. 409. Convsersely, if Amazon's responses to the five topics show that Amazon has destroyed or intentionally failed to preserve the "raw notes" for a substantial number of meetings, the Court can infer that Amazon has engaged in the same conduct for the other meetings covered by Interrogatory No. 31 and Request No. 409. The five topics Plaintiffs identify are:

- The implementation, modification, and/or expansion of Buy Box Removal, Buy Box Suppression, or SC-FOD, including but not limited to adding competitors for consideration in SC-FOD or mapping new products at competitors, and the development and/or expansion of Overlap Removal;

- Amazon's policies or standards for enforcement of Amazon's Standards for Brands;
- the potential limitation of use of 3PLs by sellers in Seller Fulfilled Prime, as discussed in 2019;
- the potential closure of the Seller Fulfilled Prime program, as discussed in 2019;
- the reopening of enrollment in Seller Fulfilled Prime in 2023.

Please let us know if Amazon agrees to the proposed compromise above no later than July 10, 2026. If not, we will understand that the parties are at an impasse.

**Interrogatory No. 32.** Plaintiffs agree to accept a verified interrogatory response from Amazon stating that Amazon received the FTC's June 17, 2019 voluntary access letter and the FTC's March 19, 2020 CID, and that Amazon's knowledge of those documents can be imputed to its in-house counsel. Please provide a verified response no later than July 10, 2026.

**Interrogatory No. 33.** Amazon's response misstates the parties' meet and confer and mischaracterizes what Plaintiffs are seeking in this Interrogatory. As we explained in our meet and confer, Plaintiffs are seeking either (i) verification that Amazon is not asserting privilege or work product protection over any documents or portions of documents concerning the destruction of or failure to preserve Relevant Materials,[1] or (ii) identification of any such documents Amazon is withholding. Amazon's response that it is "not withholding *non-privileged* documents on the basis that they reference document preservation or destruction," June 17, 2026 Ltr. from K. Trefz to S. Steinberg at 7, is answering a different question.

We understand Amazon's position that "[t]he scope and implementation of the duty to preserve documents" can be the subject of privileged legal advice. *Id.* On the other hand, not all communications with attorneys regarding the destruction of documents are privileged: for example, instructions, guidance, or guidelines that Relevant Material be deleted may not be privileged.

If Amazon is not asserting privilege or work product protection over any documents regarding the destruction of or failure to preserve Relevant Materials, that would resolve this Request. As we stated in our June 8 letter, we will accept a verified interrogatory response that (1) Amazon is not asserting attorney-client privilege or work product protection, whether in whole or in part, over any documents regarding the destruction of or failure to preserve Relevant Materials, including but not limited to: (a) instructions, guidance, or guidelines that Relevant Material be deleted, shredded, destroyed, not preserved, or otherwise made unavailable; (b) observations that Relevant Material has been deleted, shredded, destroyed, not preserved, or otherwise made unavailable; or (c) instances in which Relevant Materials were deleted, shredded, destroyed, not preserved, or otherwise made unavailable; and that (2) Amazon is not withholding any such documents.

---

[1] As used in Plaintiffs' interrogatories, "'Relevant Material' means any document responsive to any Request for Production in this or any related action or to any compulsory process issued in Plaintiffs' investigation of Amazon or any related government investigation of Amazon." Definition 11, Plaintiffs' Fifth Set of Interrogatories to Amazon.com, Inc. (May 15, 2026).

If, on the other hand, Amazon *is* asserting privilege or work product protection over such documents, Plaintiffs are entitled to know which documents are at issue. Amazon's privilege log does not provide sufficient information for Plaintiffs to identify documents regarding the destruction of or failure to preserve Relevant Materials. Plaintiffs therefore request that Amazon identify which entries in its privilege log pertain to documents regarding the destruction of or failure to preserve Relevant Materials. Amazon can provide that information without disclosing the purportedly privileged contents of those documents, and with minimal burden. As we explained in our June 8 letter, we are only requesting that Amazon run a set of targeted search terms against the documents it is withholding for privilege. That does not entail "a broader re-review" of Amazon's privilege log, as Amazon claims.

Please confirm Amazon will provide a verification or agree to search the documents contained in its privilege log by July 10, 2026. If Amazon does not agree, Plaintiffs will understand that the parties are at impasse regarding this Interrogatory.

**TAR.** As Plaintiffs previewed during our meet and confer, we believe a new TAR model that is trained for the narrowly tailored discovery sought here is necessary. We understand that Amazon's current TAR model has been trained to identify documents responsive to Plaintiffs' prior document requests that concern issues such as Amazon's challenged conduct and market definition. As a result, that model likely will not adequately identify documents that are specifically relevant to spoliation issues. Accordingly, we will not agree to Amazon using its prior TAR model for Request Nos. 408, 410-414. Creating a new TAR model should impose only a minor burden on Amazon and should not be a serious factor in the number of responsive documents the parties agree to input into the model. Notwithstanding, we are willing to meet and confer regarding Plaintiffs' search terms upon Amazon providing concrete evidence of the comparative burden between using the old TAR model compared to creating a new one for the limited discovery into the extent of Amazon's spoliation.

**Search Terms and Custodians.** Regarding search terms, Amazon has agreed to run the first six search terms in Plaintiffs' May 15, 2026 proposal, and states that it is "willing to discuss" the last search term "after Plaintiffs have reviewed the information contained in" Amazon's June 17 letter. We have reviewed Amazon's letter and maintain that Amazon should run the seventh search term in our May 15 proposal. This search term is aimed at communications between Amazon employees where the employees seek to move a discussion off of Amazon's systems and onto Signal or other platforms where the discussion would not be preserved. This search term should be run independent of the parties' negotiations regarding custodians' mobile devices.

As to custodians, first, Plaintiffs appreciate Amazon's disclosure that [redacted] was not under a litigation hold when she left Amazon [redacted]. Please explain whether Amazon nonetheless has her custodial files, or whether those files have been deleted. If Amazon still has some categories of files but not others, please explain what files Amazon still has.

Second, we disagree with Amazon's objections to including certain in-house attorneys as custodians. Despite Amazon's assertions to the contrary, Plaintiffs have already provided

evidence of Amazon's in-house counsel directing employees to spoliate evidence. Plaintiffs, accordingly, have reason to believe this happened in other circumstances and with other Amazon employees. Amazon's claim that responsive documents in the files of attorney custodians would also be found in the files of non-attorney business custodians, *see* June 17, 2026 Ltr. from K. Trefz to S. Steinberg at 9, also misses the mark. Some documents that *were* in the files of non-attorney employees may not have been preserved—for example, directions sent to [redacted] or other note-takers who did not receive litigation holds. There may be communications between certain attorneys and non-custodians whose documents are relevant to this case. And there may be non-privileged communications between attorneys. Amazon can easily de-duplicate any documents in the files of attorney custodians that are *also* in the files of non-attorney custodians, so unless Plaintiffs' proposed in-house custodians have a very large number of documents discussing issues like the destruction of documents and the use of Signal, the incremental burden associated with these custodians should be relatively low. And if these custodians *do* have a very large number of such documents, that underscores their likely relevance.

Plaintiffs are providing a further explanation below for each of the proposed in-house counsel custodians. To the extent Amazon is maintaining an objection to any of these custodians, please provide a hit count of their unique documents captured by Plaintiffs' proposed search terms, after de-duplication.

Four in-house attorneys identified by Plaintiffs were directly involved in instances of spoliation already identified by Plaintiffs. Plaintiffs thus have reason to believe that these proposed custodians may have given other directions to destroy relevant materials, or may have been involved in other instances of spoliation.

- [redacted] directed an employee to collect and destroy hard copies of "a highly sensitive doc[ument]" used in a meeting, *see* Mot. Ex. 21 (Dkt. #599-21) at -801 to -803, and appears to have instructed another employee to "delete" a document about [redacted] *see* Mot. Ex. 22 (Dkt. #599-22) at -899.

- [redacted] specifically directed an employee to "get rid of the raw notes," *see, e.g.*, Mot. Ex. 16 (Dkt. #599-16) at -465, and was on other communications discussing the destruction of raw notes, Mot. Ex. 18 (Dkt. #599-18) at -583 (failing to object when program manager instructed recipients of her raw notes to "[p]lease delete" those notes and stated she would delete her personal copy); Mot. Ex. 19 (Dkt. #599-19) at -694 (failing to object when program manager stated, "Per prior legal counsel advice, I will delete the raw notes once everyone is aligned on the below"). Plaintiffs thus have reason to believe that [redacted] may have given other directions to destroy relevant materials, or may have been involved in other instances of spoliation.

- [redacted] instructed a non-attorney employee to send notes "as described in the guidelines," which included a direction to "delete/shred . . . raw notes." Mot. Exh. 12 (Dkt. #599-12) at -761.

- [redacted], like [redacted], appears to have instructed another employee to "delete" a document about "[redacted]," *see* Mot. Ex. 22 (Dkt. #599-22) at -899.

Three in-house attorneys identified by Plaintiffs directed employees not to take raw or verbatim notes. These types of instructions to avoid creating a written record are closely related to efforts to *destroy* any such records. *See, e.g.*, Dkt. #678 ("Plaintiffs support their contentions about the existence of the protocol by pointing to many instances of Amazon executives and lawyers instructing employees to avoid creating a written record or to alter language in existing documents to mitigate risk. For example, Plaintiffs note that on various occasions, Amazon and its lawyers directed employees to avoid creating a written record and to delete such records when they exist."). Plaintiffs thus have reason to believe that these proposed custodians may have documents showing that Amazon issued directions against taking raw notes, or illustrating a connection between those directions and later directions to destroy raw notes, both of which would be relevant to the scope of spoliation and Amazon's intent. These proposed custodians may also have been directly involved in instances of spoliation.

- [redacted] conveyed instructions from then-Senior Vice President Dave Clark's office "that detailed, raw notes like in the attached should not be taken," because "conversations taken out of context can create issues if we end up having to produce notes to a regulator or in litigation." Mot. Exh. 10 (Dkt. #599-10) at -467.

- [redacted] counseled a non-attorney employee to "avoid taking and sharing" raw notes. *See* Mot. Ex. 20 (Dkt. #599-20) at -919.

- [redacted] circulated "North America Category Leadership (NACL) Note-taking Guidelines" to be distributed to designated note-takers in advance of meetings in the "upcoming OP/QBR season," which included an instruction that "For P&C meetings, notes are not to be distributed." *See* AMZN-RTL-FTC-06258463 at -463.

  - [redacted]: *see, e.g.*, Mot. Ex. 50 (Dkt. #600-19) at -521 (receiving request for review of ASB meeting notes); Reply Mot. Ex. F (Dkt. #656-6) at -109 (invited to Jan. 20, 2022 "ASB Program Deep Dive" meeting for which Amazon cannot identify meeting notes, per Mot. Ex. 23 (Dkt. 599-23)); CAAGLit-AMZ_10776591 at -591 (receiving email from [redacted] regarding sharing material via a "P&C meeting doc").

Finally, three of the in-house attorneys Plaintiffs have identified are the in-house counsel responsible for this case and Amazon's overall antitrust litigation program: Nate Sutton (Vice President and Associate General Counsel), who Plaintiffs understand leads the team in Amazon's Litigation Department that is responsible for competition matters, *see* Dkt. #146; Andrew DeVore (Vice President and Associate General Counsel), the head of Amazon's Litigation Department, *see id.*; and David Zapolsky (Chief Global Affairs and Legal Officer), the head of Amazon's in-house legal department. Plaintiffs have reason to believe that these executives

would have been aware of or involved in any widespread spoliation, particularly if Amazon willfully destroyed evidence to avoid its discovery obligations. Further, Mr. DeVore and Mr. Zapolsky were directly involved in the spoliation conduct challenged by Plaintiffs. Mr. DeVore was responsible for providing guidance to the S-team about the circumstances in which individuals could use Signal, and that guidance was later disseminated to other Amazon employees. *See, e.g.*, Keeling 30(b)(6) Dep. Tr. at 145:5-146:7. Mr. DeVore also issued preservation notices to then-CEO Jeff Bezos and Mr. Jassy, after which Mr. Bezos continued using Signal disappearing messages. *See id.* at 52:22-53:15; Mot. Ex. 32. Mr. Zapolsky personally *used* Signal disappearing messages, including in communications with then-CEO Jeff Bezos, after Amazon was aware of Plaintiffs' pre-Complaint. *See* Mot. Ex. 24 at 3; Dkt. #678 at 13 n.15 (court citing this use).

* * *

Please confirm Amazon's position regarding Interrogatory No. 31 & Request Nos. 409, 413 and 414, and Amazon's position regarding in-house counsel as custodians by July 10, 2026. Please also provide times for the parties to meet and confer, if necessary.

Sincerely,

*/s/ Shira Steinberg*
Shira Steinberg
Attorney
Bureau of Competition
Federal Trade Commission