# Exhibit 3

LAW OFFICES
WILLIAMS & CONNOLLY LLP*

KATHERINE A. TREFZ
(202) 434-5038
ktrefz@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 20, 2026

HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY

Via Email

Shira A. Steinberg, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20590
ssteinberg1@ftc.gov

Re: *FTC v. Amazon.com, Inc.*, Case No. 2:23-cv-01495-JHC (W.D. Wash.)

Dear Shira:

I write in response to your letter of July 2, 2026 ("Pltfs.' Ltr."), regarding Amazon's Objections and Responses to Plaintiffs' Fifth Set of Interrogatories and Ninth Set of Requests for Production (the "Responses"), about which the parties met and conferred on June 5, 2026.

**Request Nos. 410-412**

Request Nos. 410 through 412 seek documents relating to "the deletion of or failure to retain communications on Signal related to Amazon business matters by any Amazon employee," "[a]ll communications using Signal related to Amazon business matters," and documents that "discuss or refer to using Signal or Signal disappearing messages" or "moving or relocating communications relating to Amazon or Amazon business matters to Signal or Signal disappearing messages," respectively. Plaintiffs' July 2 letter still has not identified any information that has not already been provided. For the avoidance of doubt, nothing in this letter, including Amazon's willingness to provide the information below, is or should be construed as a concession that Amazon failed to collect any responsive Signal messages that exist.

As an initial matter, Amazon strongly disagrees with Plaintiffs' assertion that "the Court's order constitutes a change of circumstances that warrants further discovery into custodial mobile devices." Pltfs.' Ltr. at 1. As Plaintiffs are aware, in agreeing to "not seek any further mobile device collections," Plaintiffs specifically reserved only the right "to pursue *remedies*"

for alleged "spoliation of mobile device messages." Jan. 23, 2026 Email from S. Steinberg to K. DeWilde (emphasis added). When the parties entered that agreement, Plaintiffs were already intimately familiar with the years of prior discussions about Signal, possessed all of the relevant information necessary to ask questions about Amazon's Signal collections, and knew the contents of their forthcoming motion for spoliation sanctions, which was filed just seven days later, on January 30, 2026. That motion did not seek any additional mobile device collections, much less argue that Amazon's prior collections were inadequate or seek additional collections as a form of relief. Nothing in the Court's Order expressly or implicitly abrogated the parties' clear agreement that mobile device collections had reached their end. We presume that when Plaintiffs wrote that they would "not seek any further mobile collections," they did not in fact secretly intend to move to compel such collections.

The parties' prior agreement regarding the collection of additional mobile devices further underscores the thoroughness of Amazon's custodial process with respect to Signal. As part of the refresh for this litigation, Plaintiffs asked Amazon to collect mobile devices from nearly 20 custodians, notwithstanding that many of those custodians said they did not use their devices for work-related messaging. In reliance on Plaintiffs' agreement that doing so would be the end of years of discovery into mobile device messaging, Amazon imposed on the privacy of many custodians who did not use their mobile devices for work and completed the burdensome collections requested by Plaintiffs. Despite collecting messages from those custodians going back more than a decade, no new Signal messages were identified. That outcome belies Plaintiffs' claim that additional work-related Signal messages remain for collection or that additional discovery into Signal is needed.

Further, Amazon remains confused as to which of Plaintiffs' many questions they think have not been answered through the years of correspondence and discussion the parties have had on this issue. As Amazon explained at length in its June 17, 2026 letter, Amazon has already:

- Provided Plaintiffs a comprehensive log of Signal messages involving custodians in this case. *See* Dkt. 201-1 (July 6, 2023 Updated Signal Log).

- Allowed Plaintiffs to review the *entire set* of collected Signal messages in which disappearing messages had been enabled—regardless of any apparent relevance to this case—and produced every message thread Plaintiffs requested after that review. *See* Dkt. 223, at 1, 6.

- Made witnesses available for both an FTC Rule 2.7(h) investigational hearing and a Federal Rule 30(b)(6) deposition that specifically addressed the collection of Signal messages. *See* Oct. 7, 2022 Investigational Hearing of Robert Stangler; Aug. 21, 2024 Deposition of Robert Keeling.

- Explained to Plaintiffs that it addressed potential Signal usage with every custodian from whom it collected documents and collected any work-related Signal messages where identified. *See* June 2, 2025 Ltr. from R. Keeling to C. Chukwuogo at 2; *see*

*also* Aug. 8, 2025 Ltr. from R. Keeling to M. Baker at 1-5 (providing additional detail regarding Amazon's process for reviewing mobile messages); June 27, 2025 Ltr. from R. Keeling to M. Baker at 3 (same).

Insofar as there is any basis to think that a custodian used Signal for Amazon business matters, that information was disclosed long ago. If Plaintiffs had any doubts about that, they had ample opportunities to inquire.

Plaintiffs now purport to ask Amazon to identify "who used Signal" and, for custodians who did not use Signal for Amazon business, "Amazon's process of confirming there are no responsive messages on those custodians' devices." Pltfs.' Ltr. at 2. Amazon again clarifies that—as the parties agreed—Amazon addressed Signal usage with every custodian still employed at Amazon when Amazon conducted its custodial process. Feb. 20, 2024 Ltr. from C. Forkner to E. Bolles at 2. Though under no obligation to do so, Amazon also inquired about Signal usage with several former employees in connection with their depositions, which revealed no additional Signal messages for collection. Moreover, Plaintiffs had the opportunity to inquire about Signal usage at custodians' depositions. If Plaintiffs were dissatisfied with deponents' answers or thought any additional collections should have been undertaken based on those answers, Plaintiffs should have said so at the time.

Amazon has also provided Plaintiffs with a detailed description of steps it took to identify investigation custodians who used Signal, the individuals identified, and collection efforts. Dkt. 201-3 (Aug. 31, 2022 Ltr. from Wilkinson Stekloff to D. Schwartz) at 9-20)). Amazon followed a similar process for this litigation, using custodial questionnaires, custodial interviews, counsel review of mobile devices, and cross-references against collected messages to identify custodians who may have used Signal or other mobile messaging applications for work. Where work-related Signal messages were identified through that process, those messages were collected, reviewed by counsel, and produced if responsive to Plaintiffs' Requests.[1]

There is no basis for Plaintiffs' untimely request for a custodian-by-custodian accounting of mobile device collections, which Plaintiffs could have requested during the parties' years-long discovery discussions, and which has no relevance now that Plaintiffs have agreed not to seek further mobile device collections.

Beyond the Signal users previously disclosed, Amazon's custodial process has not revealed any additional custodians who used Signal for work-related messaging. To be clear, Amazon has collected and reviewed thousands of Signal messages from custodians for this

[1] As Amazon has informed Plaintiffs on numerous occasions, after becoming aware of Signal usage by certain executives, "Amazon launched an enterprise version of Wickr—a secure messaging application owned by Amazon—for internal use" which allows "Amazon to preserve messages sent and received by executives and employees who are on litigation hold." Dkt. 201-3 (Aug. 31, 2022 Ltr. from Wilkinson Stekloff to D. Schwartz) at 9-20)). Counsel understand that following the Wickr launch, many Amazon employees who used Signal shifted secure messaging from Signal to Wickr. Of course, Amazon has collected, reviewed, and produced messages from Wickr as part of this litigation.

litigation. To ensure all potentially relevant Signal users were identified, Amazon analyzed the participants in those thousands of messages to identify any custodians requiring additional collections. That analysis identified no custodians who used Signal for work whose messages remain uncollected. This makes clear that Plaintiffs are in full possession of information they have sought regarding the scope of custodians' Signal usage, as Amazon has consistently explained.

Finally, Plaintiffs ask again whether Amazon is withholding any Signal messages related to Amazon business matters on the grounds that they are not responsive to previous Requests. As Plaintiffs are aware from both the Signal log Amazon provided, as well as their opportunity to review *all* messages Amazon possesses where the disappearing messages feature was toggled on or off, some Signal messages Amazon collected were not responsive to Plaintiffs' Requests. Plaintiffs reviewed many such messages, even before Plaintiffs served the Requests during this litigation, and well before the parties negotiated the custodians, times-in-role, and topics of relevance for Amazon's corresponding production. Despite that review, at no point did Plaintiffs request the production of every Signal message from each custodian discussing each and every topic. Nor could they; as Amazon explained in its June 17 letter, Plaintiffs have no basis to seek such a sweeping collection of messages. Plaintiffs' July 2 letter entirely fails to engage with the points made in Amazon's prior letter.

**Request Nos. 413 & 414**

Amazon appreciates the clarification Plaintiffs provided as to the categories of documents they understand these Requests to seek. Amazon addresses each category in turn.

*Category One*: Plaintiffs clarify that they seek documents regarding the preservation of raw notes or Signal messages, including instructions or guidelines regarding their preservation, observations regarding their preservation, and instances where they were not preserved. Plaintiffs also agree that their proposed search terms were aimed at capturing these documents. Regarding this Category, Amazon will produce responsive, non-privileged documents, subject to agreement on custodians and search terms.

*Category Two*: Plaintiffs clarify that they seek documents relevant to the preservation of raw notes or Signal messages but that do not specifically refer to raw notes or Signal messages. Amazon continues to disagree that documents contemplated by this Category fall within the scope of Plaintiffs' motion or the Court's corresponding Order. Nevertheless, as explained in Amazon's June 17 letter, Amazon will not withhold a non-privileged document that hits on the search terms the parties have otherwise negotiated but that is responsive to only this Category.

*Category Three*: Plaintiffs clarify that they seek documents that concern the preservation of documents other than raw notes or Signal. Amazon is not aware of any spoliation allegations unrelated to rough draft meeting notes or the use of Signal disappearing messages. Contrary to the assumption advanced in Plaintiffs' letter, Amazon's objections to searching for this Category of documents are grounded in burden, relevance, *and* the scope of the Court's Order. *See*

Amazon's Objs. & Resps. To Pltfs.' Ninth RFPs at 12-15. Plaintiffs' motion and the Court's corresponding Order were cabined to preservation of meeting notes and Signal messages, rather than any broader theory of preservation or spoliation that Plaintiffs now seek with this Category. Amazon objects to Plaintiffs' repeated attempts to rewrite their motion after the fact. But, as with Category Two and as explained in Amazon's June 17 letter, Amazon will not withhold a non-privileged document that hits on the search terms the parties have otherwise negotiated but that is responsive to only this Category.

*Plaintiffs' Proposal*: Plaintiffs propose that they will continue to limit their proposed custodians and terms to target only Categories One and Two, on the condition that if Amazon is aware of or becomes aware of any other documents responsive to these Requests (*i.e.*, to any of Plaintiffs' proposed categories), Amazon will also produce those documents, "whether or not they are captured by agreed-upon custodians and search terms." As Amazon has now reiterated twice, Amazon will not withhold any non-privileged document responsive to any of Plaintiffs' three proposed categories that hits on the parties' agreed-upon search terms and is found in the custodial files of the parties' agreed-upon custodians. But the purpose of those negotiations and agreements is to focus the otherwise limitless review obligations that Plaintiffs apparently seek to impose. Amazon does not intend to undertake any process to identify documents potentially responsive to Requests 413 and 414 other than reviewing documents identified through the parties' agreed-upon custodians and search terms. If Plaintiffs contend that some additional process is called for, please describe what is contemplated.

**Interrogatory No. 31 & Request No. 409**

Plaintiffs accuse Amazon of "ignor[ing] the . . . discussion during the parties' June 5 meet and confer." Pltfs.' Ltr. at 4. Exactly the opposite is true; it is Plaintiffs who persist with the initial assertions they offered during that discussion, undeterred by facts to the contrary. As Amazon explained during the meet-and-confer and detailed in its June 17 letter, a new investigation into whether anyone at Amazon ever discussed certain topics at a meeting is neither practical nor proportionate to the needs of the case in light of the extensive discovery Plaintiffs have already received. *See* June 17, 2026 Ltr. from K. Trefz to S. Steinberg at 5-6. Plaintiffs suggest that because Amazon has "access to relevant employees and their respective calendars," it can "quickly narrow the universe necessary to respond to this Interrogatory." Pltfs.' Ltr. at 4. Given the breadth of the topics and dates for which Plaintiffs seek discovery and the number of persons who may have attended meetings on those topics, even identifying a set of "relevant" employees is burdensome, to say nothing of the time it would take to interview each person about the hundreds of meetings they may have participated in over the six-year period for which Plaintiffs seek responses.

Plaintiffs should instead use the extensive discovery already provided to identify meetings for which there may be probative notes that have not been produced. Plaintiffs have received over 4.5 million documents and a thousand hours of testimony from Amazon witnesses. Based on that extensive record, Plaintiffs should know which meetings they contend are material and might discuss at trial. Even in the three instances Plaintiffs have previously identified where

rough draft meetings notes were not preserved, Amazon did preserve and produce the substantive document discussed at the meeting (which describes in detail the issues for discussion), any chat messages exchanged during the meeting, and key takeaways from the meeting; and Plaintiffs had the opportunity to depose individuals who attended the meetings. Dkt. 641, at 12-13. Accordingly, Plaintiffs possess ample information from which to identify meetings at which they contend relevant decisions were made. Amazon's proposal that Plaintiffs identify the meetings in which they are most interested is therefore a reasonable solution to the burden and proportionality challenges presented by Plaintiffs' Interrogatory No. 31 and Request No. 409.

Instead, Plaintiffs now propose to limit these requests to 5 of the 16 topics initially identified in Interrogatory No. 31, but only "if Amazon will stipulate that its interrogatory responses and document production concerning these topics are representative of all meetings covered by Interrogatory No. 31 and Request No. 409." Pltfs.' Ltr. at 4. As Amazon has explained, however, there is no company-wide policy regarding notetaking, and practices differ across business units, meeting types, and individuals. Dkt. 641, at 4. Moreover, whether meeting notes have been preserved may vary across topics based on additional factors such as when Plaintiffs identified that topic as an area relevant to the potential litigation, whether individual note-takers were identified as potential custodians or placed under litigation hold, whether note-takers are now current or former Amazon employees, and whether duplicates of the document were circulated and preserved. These factors may vary down to the individual meeting level, and thus it is not possible to reliably infer that the non-preservation of notes of one meeting indicates that notes from a different meeting were taken and not preserved. Accordingly, Amazon cannot agree to Plaintiffs' proposed approach to Interrogatory No. 31.

Plaintiffs' letter asserts that Amazon should undertake to identify relevant meetings because Plaintiffs have "less access to Amazon's documents." Pltfs.' Ltr. at 4. But Plaintiffs have the approximately 4.5 million documents they have sought through hundreds of RFPs, which Plaintiffs presumably drafted and negotiated in order to identify documents concerning the topics they contend are relevant to the litigation. It is those documents that Plaintiffs should use to identify any meetings at which Plaintiffs contend key issues were discussed, but for which rough draft meeting notes were not captured by the broad set of prior custodians and search terms. If Plaintiffs cannot identify which meetings they contend are relevant to the litigation at this point in the case—after fact discovery has ended, after they have served expert reports, and on the eve of dispositive motions—there is no basis to conclude that the unavailability of rough draft meeting notes would have prejudiced Plaintiffs.

As Amazon explained on the meet-and-confer, the proposed target of 50 meetings is not a hard limit; if Plaintiffs identify a moderately higher number of meetings they contend are material, Amazon would be willing to undertake a search for notes from more than 50 meetings. But Plaintiffs' proposed approach—that Amazon should go beyond the already enormous discovery record to search for any and all discussions of broad topics over the course of many years—is not reasonable or practical.

**Interrogatory No. 32**

It appears the parties have agreement in principle on this Interrogatory. Amazon will provide an amended response as described in its June 17 letter. Amazon will provide this response by July 24; the verification will be provided on that date if possible, though due to summer travel schedules the verification may follow at a later date.

**Interrogatory No. 33**

As explained in our June 17 letter, Amazon is not withholding non-privileged documents on the basis that they reference document preservation or destruction. Plaintiffs are not entitled to have Amazon describe the substance of privileged communications, which is apparently what this Interrogatory seeks. If Plaintiffs contend any of Amazon's privilege log entries are inadequate, the usual process would be for Plaintiffs to identify the entries they have concerns with, and we disagree with Plaintiffs' assertion that Amazon's "privilege log does not provide sufficient information" for this purpose. Pltfs.' Ltr. at 2. Nonetheless, in light of the Court's July 7, 2026 Order authorizing a "narrowly tailored" privilege re-review, Amazon is open discussing this further as part of the forthcoming conferral on such a re-review.

**Search Terms, TAR, & Custodians**

*TAR.* Plaintiffs continue to insist that a new TAR model trained for the additional discovery they seek is warranted. Amazon disagrees. As it explained at length, both on the parties' previous conferral and in its June 17 letter, Amazon's existing model has already identified and surfaced documents Plaintiffs have used to present these issues to the Court. Moreover, the non-preservation of documents unconnected to "issues such as Amazon's challenged conduct and market definition," Pltfs.' Ltr. at 6, would not support Plaintiffs' claim of spoliation here, which requires Plaintiffs to establish that they were prejudiced by the purported spoliation.

That said, even though Amazon's existing model would effectively parse the universe of documents that hit on the parties' agreed-upon terms, Amazon agrees to conduct a linear review (*i.e.*, without using any TAR model) of that population, and produce to Plaintiffs any responsive, non-privileged documents from that set. Amazon trusts this resolves the parties' dispute regarding TAR.

*Search Terms.* Amazon appreciates the additional context regarding Plaintiffs' proposed Signal search term. While Amazon maintains that Plaintiffs have all the relevant information regarding Signal and its use by Amazon's employees for business purposes, Amazon will nevertheless agree to run Plaintiffs' search term regarding Signal. Amazon will review those documents in the same manner as those that hit on Plaintiffs' first six terms, and will produce to Plaintiffs responsive, non-privileged documents as a result of that review.

*Non-Attorney Custodians.* Plaintiffs ask Amazon to confirm whether Amazon retains the custodial files of Ms. [redacted], who was not under a litigation hold when she left Amazon in November 2024. After review, Amazon confirms that it possesses Ms. [redacted] WorkDocs and Quip, but lacks emails, Chime messages, Slack messages, or other data sources for her. Amazon is in possession of the custodial files of Ms. [redacted] and Mr. [redacted].

*Proposed Attorney Custodians.* Plaintiffs purport to provide additional explanation regarding the supposed relevance of the in-house counsel they seek as custodians. While Amazon appreciates the additional context, Plaintiffs' explanations in fact reveal that there is no evidence the vast majority of proposed attorney custodians ever advised destruction of a document, and for the small number of instances in which an attorney may have so advised, it would be found in the files of a non-attorney recipient.

Plaintiffs' justifications for particular custodians fall far short. *First*, Plaintiffs suggest Ms. [redacted], Mr. [redacted], and Ms. [redacted] should be custodians because they may have "been directly involved in instances of spoliation." Pltfs.' Ltr. at 8. But Plaintiffs do not identify any evidence that they *actually were* involved in destruction of meeting notes, just that they "directed employees not to take raw or verbatim notes." *Id.* There is no obligation to begin taking verbatim notes of all meetings whenever a company is threatened with litigation. Plaintiffs identify nothing to justify their fishing expedition into advice provided by these attorneys, and Amazon again declines to include them as custodians.

*Second*, for four other counsel—Mr. [redacted], Mr. Nate Sutton, Mr. Andrew DeVore, and Mr. David Zapolsky—Plaintiffs identify no affirmative action taken regarding the failure to preserve meeting notes or Signal messages. Plaintiffs do not attribute *any* action to Mr. Sutton (just that he "leads the team in Amazon's Litigation Department that is responsible for competition matters") or Mr. [redacted] (just that he "receiv[ed a] request for review of" notes, was "invited" to a meeting, and "receiv[ed an] email from [redacted] regarding sharing material"). Pltfs.' Ltr. at 8. For Mr. DeVore, Plaintiffs note only that he provided "guidance to the S-team about the circumstances in which individuals could use Signal"—guidance Plaintiffs did not challenge in their motion and that explicitly directed "employees under hold" "should turn off the ephemeral messaging for business communications absent exceptional security risks," Keeling 30(b)(6) Dep. Tr. at 148:8-11—and issued preservation notices to Mr. Bezos and Mr. Jassy. For Mr. Zapolsky, Plaintiffs note only that he used Signal, a fact Plaintiffs were aware of before they filed their Complaint and during custodial negotiations when the parties first discussed adding Mr. Zapolsky as a custodian. But despite that knowledge, Plaintiffs did not renew any request for Mr. Zapolsky to be a custodian, including when the parties specifically discussed additional collection of mobile messages. Plaintiffs' speculation that these senior counsel "would have been aware of or involved in any widespread spoliation," Pltfs' Ltr. at 9, does not justify including them as document custodians.

*Third*, Plaintiffs mis-read documents involving Mr. [redacted], Mr. [redacted], and Mr. [redacted]. Regarding Mr. [redacted] and Mr. [redacted] as Amazon explained in its June 17 letter, the documents Plaintiffs refer to in fact show instructions only that "copies" of a

document could be discarded, while any non-duplicative marked copies should be retained. *See* AMZN-RTL-FTC-10820801, at -803 ("If people make markings on the doc they're supposed to keep them[.]"). Amazon produced the document at issue to Plaintiffs, *see* AMZN-RTL-FTC-11201230. Similarly, Plaintiffs wrongly assert that Mr. [redacted] and Mr. [redacted] advised the deletion of a document [redacted] but that document was preserved and produced in the very document Plaintiffs cite. *See* AMZN-RTL-FTC-11146899, at -900 ("[redacted]"); *see also* June 17 Ltr. from K. Trefz to S. Steinberg at 4-5 (previously providing these explanations). As to Mr. [redacted] he advised that he did not "think this P&C/notes advice is right for all cases," but that the note-taker should "send out" the notes "to the attendees" and "omit the SVPs from the notes circulation, as described in the guidelines." Dkt. 599-12, at AMZN-RTL-FTC-11054761. Mr. [redacted] gave no instruction to delete meeting notes. Moreover, this document illustrates that the type of documents Plaintiffs seek can and have already been collected from non-attorney custodians.

*Fourth*, Plaintiffs do not even mention, much less offer a cogent justification for Mr. [redacted] proposed inclusion as a custodian.

The only remaining proposed attorney custodian is Mr. [redacted]. Amazon does not agree that he was involved in spoliation or that he is likely to have a significant number of unique, responsive, non-privileged documents. However, because Mr. [redacted] did exchange emails with Ms. [redacted] and as described above Amazon does not have preserved copies of Ms. [redacted] emails, this is the rare case in which Amazon agrees there is a colorable basis to collect documents from an attorney custodian. Amazon therefore agrees to provide the hit count of unique documents captured using the agreed-upon search terms from Mr. [redacted] custodial files, after de-duplication, as Plaintiffs request. Pltfs.' Ltr. at 7. Amazon will limit this search using [redacted] relevant time-in-role of January 2022 to November 2024. Amazon will provide this report as soon as it is able and is willing to meet and confer on the results of that report thereafter.

* * *

We are available to meet and confer further about any of the above topics.

Sincerely,

/s/ Katie Trefz

Katie Trefz