# Exhibit 4

LAW OFFICES
WILLIAMS & CONNOLLY LLP®

KATHERINE A. TREFZ
(202) 434-5038
ktrefz@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 17, 2026

HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY

Via Email

Shira A. Steinberg, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20590
ssteinberg1@ftc.gov

Re: *FTC v. Amazon.com, Inc.*, Case No. 2:23-cv-01495-JHC (W.D. Wash.)

Dear Shira:

I write in response to your letter of June 8, 2026 ("Pltfs.' Ltr."), regarding Amazon's Objections and Responses to Plaintiffs' Fifth Set of Interrogatories and Ninth Set of Requests for Production (the "Responses"), about which the parties met and conferred on June 5, 2026.

**Request No. 408**

Request No. 408 seeks all "Documents relating to instructions, guidance, or guidelines about taking (or not taking), revising, editing, distributing (or not distributing), deleting, shredding, destroying, or preserving meeting notes." As indicated on the parties' conferral and reflected in Plaintiffs' letter, Amazon agrees to produce documents responsive to this Request pending agreement on search terms and custodians, subject to Amazon's objections regarding relevance, burden, and privilege.

**Request Nos. 410-412**

Request Nos. 410 through 412 seek documents relating to "the deletion of or failure to retain communications on Signal related to Amazon business matters by any Amazon employee," "[a]ll communications using Signal related to Amazon business matters," and documents that "discuss or refer to using Signal or Signal disappearing messages" or "moving or relocating communications relating to Amazon or Amazon business matters to Signal or Signal disappearing messages," respectively.

As Amazon explained on the parties' conferral, these Requests are duplicative of several others issued by Plaintiffs, including Request Nos. 27, 28, 383, and 384, to which Amazon produced documents after a lengthy negotiation process. The documents and Signal messages produced pursuant to those Requests already address Plaintiffs' topics of interest and make plain that the probative value of any Signal message to Plaintiffs' claims and defenses here is minimal. Despite that, Amazon is willing to produce additional documents in response to Plaintiffs' duplicative Requests subject to clarification of what new information Plaintiffs seek, and agreement on search terms and custodians.

As an initial matter, Plaintiffs ask Amazon to confirm whether it has "produced screenshots of all instances where disappearing messages settings were changed for the custodians from whom Amazon collected mobile devices." Pltfs.' Ltr. at 2. Amazon confirms that it has produced all such examples in work-related conversations from the custodians from whom it collected mobile devices, subject to the parties' agreed upon time-in-role parameters for those custodians.

Next, to "assist in considering narrowing these RFPs," Plaintiffs ask an extensive series of questions regarding Amazon's mobile device collections and custodians' use, or lack thereof, of Signal. Several of Plaintiffs' questions appear to be nothing more than a belated attempt to reopen discussion about mobile device collections writ large, which were not the subject of Plaintiffs' motion or the Court's order. The parties have already negotiated at length regarding mobile collections, including last year and earlier this year. At the end of that negotiation process, Plaintiffs indicated that "in exchange" for Amazon's agreement to refresh mobile collections for nineteen custodians, "Plaintiffs *will not seek any further mobile device collections*." Jan. 23, 2026 email from S. Steinberg to K. DeWilde (emphasis added). Plaintiffs' attempt to renege on that representation and reopen that discussion—despite years of negotiation between the parties on both mobile collections and Signal—is unproductive.

Regarding Plaintiffs' questions about Signal use, Plaintiffs are already in possession of significant information regarding the use, or lack thereof, of Signal amongst Amazon's custodians (including the hundreds of Signal messages Amazon has produced). For example, during Plaintiffs' investigation, Amazon disclosed the extent of Signal usage amongst for twenty-four employees, including their respective collection dates and Amazon's conclusion that for many of those employees, their Signal use was neither substantive nor responsive to Plaintiffs' investigation. *See* Aug. 31, 2022 Ltr. from B. Wilkinson to D. Schwartz at 9-20. Amazon also provided Plaintiffs an extensive log of Signal messages between custodians. *See* Dkt. 250-1 (July 6, 2023 Updated Signal Log with DM Feature Information). Amazon has also confirmed to Plaintiffs that it "painstakingly addressed this issue with every document custodian still at Amazon" for the litigation and collected work-related Signal messages where identified. *See* June 2, 2025 Ltr. from R. Keeling to C. Chukwuogo at 2. Put simply, the parties have had years of prior discussions about Signal, during which Plaintiffs had ample opportunities to (and did) ask questions through correspondence and through both an FTC Rule 2.7(h) investigational hearing and a Federal Rule 30(b)(6) deposition specifically on this topic. Amazon remains

perplexed as to whether Plaintiffs think the questions in their letter are unanswered by those prior disclosures, and—if so—why Plaintiffs did not say so contemporaneously.

Next, Plaintiffs ask "whether there are any Signal communications related to Amazon business matters that Amazon is withholding on the grounds that they are not responsive to previous RFPs." Pltfs.' Ltr. at 2. As Plaintiffs are aware, the parameters of Amazon's production in this matter—including custodians, their times-in-role, and the topics of relevance—have been exhaustively negotiated over almost three years. Pursuant to the parties' many agreements over the course of those negotiations, some Signal messages Amazon has collected were not responsive. Plaintiffs have never before sought—and have no basis to seek—*all* Signal messages from any Amazon employee discussing any and every topic. Indeed, Amazon already provided the FTC the opportunity to review at outside counsel's offices the entire set of collected Signal conversations in which disappearing messages had been enabled, without regard to whether the messages were responsive to the FTC's document requests, a set that ultimately encompassed over 2,900 screenshots. Amazon then produced messages from this set that the FTC requested. *See* Dkt. 223, at 1, 6. Accordingly, this new document request largely amounts to a request for Amazon to produce documents that the FTC has already reviewed and determined were not responsive. There are no grounds for such discovery.

Finally, Plaintiffs also ask Amazon to provide the "basis" for its belief that any custodians did not use Signal or used Signal only for personal reasons. While this clearly exceeds the substantive information Plaintiffs are entitled to, Amazon nevertheless responds that it investigated Signal usage during its collection process and collected from each custodian who indicated that they had work-related Signal messages.

**Request Nos. 413 & 414**

Request Nos. 413 and 414 seek all "Documents regarding the destruction of or failure to preserve Relevant Materials," which Plaintiffs define as "any document responsive to any Request for Production in this or any related action or to any compulsory process issued in Plaintiffs' investigation of Amazon or any related government investigation of Amazon."

To start, Plaintiffs have absolutely no basis for these Requests. Between Plaintiffs' pre-Complaint investigation and this case, Amazon has produced over 4.5 million documents—and almost a petabyte of data—from over 130 custodians. Any assertion that Amazon engaged in widespread spoliation of other "material relevant to this case" (Pltfs.' Ltr. at 2) is completely unfounded and belied by the mountain of documents and data Plaintiffs already possess.

Further, as Amazon explained in its Responses as well as on the parties' June 5 conferral, these Requests exceed the scope of Plaintiffs' spoliation motion and the Court's subsequent order permitting discovery into the issues Plaintiffs raised. Amazon did not take the strawman position that "spoliation of other material relevant to this case would not give rise to concern." Pltfs.' Ltr. at 2. But general fact discovery in this litigation closed on January 30, 2026. Dkt. 577, at 1. Any continuing discovery must be limited to the specific issues regarding which

Plaintiffs sought relief, which bounds the scope of the Court's order. Plaintiffs made no showing that Amazon engaged in generalized spoliation of "other material relevant to this case," did not seek discovery into any such purported spoliation, and were not granted leave by the Court to conduct discovery into any such purported spoliation. These limits are evident from a straightforward reading of Plaintiffs' motion and the Court's order.

The introduction to Plaintiffs' motion complained that Amazon had deleted "unedited 'raw' notes from business meetings," and "[s]eparately" had "lost" communications due to the "use of ephemeral messaging." Dkt. 598, at 1. Plaintiffs went on to argue that the materials subject to their motion could not be restored or replaced because "Amazon has not been able to identify recovered versions of raw notes that have been deleted, and Signal disappearing messages are permanently erased." *Id.* at 13.[1] Plaintiffs' reply framed the issue the same way: that "Amazon had a duty to preserve *the relevant 'raw notes' and Signal messages at issue in this motion*." Dkt. 651, at 1 (emphasis added); *see also id.* at 2 (describing alleged "company directive at the center of *the 'raw notes' issue in this motion*" (emphasis added)). Indeed, Plaintiffs explicitly acknowledged that their motion did not relate to the "substantial volume of documents in this case" broadly, but rather sought "*certain categories*" of documents, namely "*the lost raw notes and ephemeral messages*." *Id.* at 4 (emphasis added); *see also id.* at 8-9 (arguing that "Amazon's raw notes" and "lost Signal messages" were prejudicial and mentioning no other category of documents).

The Court's Order was cabined to the issues Plaintiffs had briefed. The Court observed that Plaintiffs had argued "Amazon failed to preserve ESI—*raw notes from business meetings and Signal messages among executives*." Dkt. 678, at 5 (emphasis added). The Order explicitly described the "question before the Court" as "whether Amazon spoliated the *raw meeting notes and Signal messages* at issue in *this* motion." *Id.* at 6 n.6 (second emphasis in original). When describing the scope of the duty to preserve, the Court wrote that as of summer 2020 Amazon should have known that certain "*raw meeting notes and Signal messages* . . . may be relevant to this action and so must be preserved." *Id.* at 8 (emphasis added). The "universe of spoliated evidence" into which the Court ordered discovery was "missing Signal messages or raw meeting notes (beyond the three identified in this Order) that are relevant to this litigation." *Id.* at 16-17. There is no reasonable reading of the Court's order that concludes it granted something Plaintiffs never sought: fishing-expedition discovery into *any* potential failure to retain *any* responsive material, unrelated to the specific raw notes and Signal issues Plaintiffs raised.

Neither of the exhibits cited in Plaintiffs' letter suggests otherwise. The first exhibit even Plaintiffs frame as relating only to "copies" of a sensitive document. Pltfs.' Ltr. at 3. Not only has that sensitive document already been *produced* to the Plaintiffs, *see* AMZN-RTL-FTC-11201230, but the in-house counsel in the exhibit Plaintiffs cite also advised that any non-

---

[1] And though Plaintiffs point to their claim that they "have identified multiple instances where Amazon's campaign to delete documents that could be used against it in antitrust litigation appears to have been effective," Pltfs.' Ltr. at 2-3 (quoting Dkt. 598, at 6), the motion then goes on to identify only three instances of notes from business team meetings, not any broader category of documents. Dkt. 598, at 6.

duplicative marked copies of the exhibit should be retained, *see* AMZN-RTL-FTC-10820801, at -803 ("If people make markings on the doc they're supposed to keep them[.]"). It is hard to imagine a weaker basis for Plaintiffs' proposed discovery than this exhibit, which in fact relates to a document that was retained and produced. Plaintiffs' second example is no better. The letter speculatively describes it as an "instruction to 'delete'" a document about [redacted], Pltfs.' Ltr. at 3, but an even cursory review of the exhibit shows that the "document . . . [redacted]" was pasted immediately below and produced. *See* AMZN-RTL-FTC-11146899, at -900-01. Again, contrary to Plaintiffs' unfounded speculation, the document was not "delet[ed]"—it was preserved and produced. The flimsiness of Plaintiffs' only given examples, neither of which the Court discussed or cited in its Order, confirms that there is no basis for the broad discovery requested.

Plaintiffs now contend that "[a]t minimum, Amazon has no reasonable basis to object to these RFPs to the extent they seek documents related to Amazon's spoliation of raw notes and Signal messages." If that is what Plaintiffs seek with these Requests, then these Requests are duplicative of Request Nos. 408 through 412, as well as Request Nos. 27, 383, and 384.

But despite Plaintiffs' attempt to rewrite their motion after the fact and impermissibly stretch the bounds of the Court's order, a clarification may resolve the parties' dispute. Amazon will not withhold a document that hits on the search terms the parties otherwise negotiate in the unlikely event the document is responsive to only Request Nos. 413 or 414, but Amazon will not add search terms or custodians aimed at these Requests. Amazon trusts that this clarification resolves the parties' dispute, but if Plaintiffs have further questions, Amazon remains willing to meet and confer.

**Interrogatory No. 31 & Request No. 409**

Interrogatory No. 31 asks Amazon to identify all meetings, invitees, note-takers, and raw notes, draft meeting minutes, or verbatim notes, for 31 teams and 16 meeting topics and, if it cannot locate any such notes, to provide an extensive set of additional explanations and information. Request No. 409 seeks all Documents identified in response to Interrogatory No. 31.

Plaintiffs' letter suggests that Amazon has "not sufficiently supported or detailed the actual burden responding to this interrogatory would entail." Pltfs.' Ltr. at 4. We discussed that burden extensively during our June 5 conferral, but reiterate those concerns in writing here. Even as narrowed by Plaintiffs' June 8 letter, this Interrogatory still seeks information about meetings of 25 "teams" and 13 "topics" (slightly reduced from the initial set of 31 teams and 16 topics), over a period of at least six years.[2] Plaintiffs' suggestion that it would be possible to "quickly identify the responsive meetings" from this broad swath of teams and topics cannot be

[2] As explained in Amazon's Objections and Responses to Plaintiffs' Fifth Set of Interrogatories, Amazon construes the Interrogatories as seeking information regarding documents that were created, modified, sent, or received from June 17, 2019 though August 31, 2025. Amazon's Objs. & Resps. to Pltfs.' Fifth Interrogs. at 7 (June 15, 2026). It is unclear from Plaintiffs' letter whether Plaintiffs would accept even this limitation.

squared with the scope of this litigation and what Amazon has already produced. For example, a search in already produced documents for the phrase "Chime Meeting ID" (a common phrase in Amazon calendar invitations) returns over 35,000 results. And Plaintiffs' proposal is not even limited to meetings for which a calendar invitation or substantive document discussed has already been produced. Plaintiffs seem to envision Amazon undertaking new document collections from anyone who ever worked on a "team" or might have discussed a "topic"—surely a number of persons larger than the total number of custodians agreed to in this litigation to date—and searching their documents for indicia of "meetings" connected with those teams or topics. This is entirely untenable and would amount to re-starting discovery and unravelling the parties' agreements regarding the scope of responses to Plaintiffs' 407 previously-issued Requests.

Notably, the foregoing describes only what the Plaintiffs apparently contend would be required to identify the set of meetings within the scope of Interrogatory No. 31. Then, for each meeting, Plaintiffs ask Amazon to identify: (1) the date of the meeting, (2) the "team" involved in the meeting, (3) the "topic" of the meeting, (4) the "type" of meeting, (5) the "individuals who were invited to the meeting," (6) "any note-takers," and (7) "raw notes, draft meeting minutes, or verbatim notes of the meeting by Bates number." Pltfs.' Fifth Set of Interrogs. at 5. If such notes cannot be identified by Bates number, Plaintiffs additionally seek: (1) a statement of "whether raw notes, rough draft meeting minutes, or verbatim notes related to that meeting were taken or recorded," (2) an explanation of "why Amazon cannot or will not produce" such notes, (3) if notes were taken but not preserved, a "full[] expla[nation]" of the circumstances regarding the non-preservation, and (4) a list of "all individuals" who had access to such notes through a Collaborative Work Environment. Finally, if Amazon contends that no rough draft notes were taken, Plaintiffs ask that Amazon "fully explain the basis for that representation and identify by Bates number all documents supporting that representation." *Id.* at 5.

The foregoing is, to put it mildly, an enormously burdensome exercise. Nonetheless, as we explained on our meet-and-confer, Amazon is willing to conduct a reasonable investigation into 50 meetings of Plaintiffs' choosing and to provide the information Plaintiffs requested that such an inquiry yields. From Plaintiffs' perspective, this should be an appealing prospect. At this point in the case—after fact discovery has closed, armed with millions of documents, and having made expert disclosures—Plaintiffs are certainly aware of the meetings they believe are important to their substantive allegations. If Plaintiffs believe there are substantive business meetings about which they lack adequate information to pursue their claims, especially meetings which Plaintiffs might discuss in their presentation at trial, they may identify those meetings and obtain additional discovery. By the same token, if there are business meetings for which Plaintiffs suspect additional meeting notes were taken and not preserved, this proposal allows Plaintiffs targeted discovery into their spoliation allegations.

The scope of response Plaintiffs seek for each individual meeting makes it impossible to conduct in a reasonable timeframe for thousands of meetings. That is especially so because Plaintiffs ask that Amazon investigate sources beyond the agreed-upon custodial collections to date. Accordingly, the path forward that will provide the most useful discovery is for Plaintiffs

to identify, by date and title or topic, the 50 meetings it would like Amazon to investigate. That far surpasses the number of meetings about which Plaintiffs could realistically present evidence at trial, so this proposal allows Plaintiffs significant latitude to explore areas about which they contend more information is required.

As to Request No. 409, as indicated on the parties' conferral and assuming the parties can reach agreement on the proper scope of Interrogatory No. 31, Amazon will produce the documents referred to in its response.

**Interrogatory No. 32**

Interrogatory No. 32 asks Amazon to identify the first date on which 12 in-house attorneys were "notified of the existence of a litigation hold or other document preservation directive relevant to" Plaintiffs' investigation, this case, or the related cases and, if they did not receive such notice, to explain why.

During our June 5 conferral, Plaintiffs asserted that they have a basis to believe each of these 12 in-house attorneys directed or observed but failed to stop the destruction of potentially responsive documents. Nonetheless, Plaintiffs refused to identify or provide any such basis.

Plaintiffs' letter suggests this Interrogatory could be resolved through "written verification that Amazon, and by extension its in-house counsel, were under a duty to preserve any relevant materials as of Amazon's receipt of the FTC's Civil Investigative Demand on June 17, 2019." Pltfs.' Ltr. at 5. But the FTC did not in fact serve its CID until March 19, 2020. Moreover, as you know from prior briefing, Amazon disagrees with Plaintiffs about the scope of the duty to preserve that resulted from receipt of the Civil Investigative Demand, and from receipt of the June 17, 2019 letter. Dkt. 641, at 2-3, 10 (noting that Plaintiffs' initial letter provided no workable sense of investigation's scope, and that the applicable standard of preservation calls for "reasonableness, not perfection"); *see also* Dkt. 678, at 10 (Court ruling that duty to preserve notes and Signal messages attached only as of "Summer 2020"). Amazon would, however, be willing to verify that it received Plaintiffs' June 17, 2019 letter and the March 19, 2020 CID, and would be willing to agree that Amazon's knowledge of those documents can be imputed to its in-house counsel. Please let us know if such a response would resolve Interrogatory No. 32.

**Interrogatory No. 33**

Interrogatory No. 33 asks Amazon to identify each document on its privilege log, in whole or in part, "regarding the destruction of or failure to preserve" responsive documents. During our conferral, Plaintiffs could not explain why this Interrogatory would be a proper subject of discovery. The scope and implementation of the duty to preserve documents is straightforwardly a subject on which attorneys can provide privileged legal advice. Amazon confirms it is not withholding non-privileged documents on the basis that they reference document preservation or destruction. If there are entries on Amazon's privilege log that

Plaintiffs contend are insufficient, please identify them, but Plaintiffs have identified no basis for Amazon to conduct a broader re-review of documents on its privilege log. Indeed, the Court expressly denied Plaintiffs' request for such a review. Dkt. 678, at 34-36.

**Search Terms, TAR, & Custodians**

*Search Terms & TAR.* Amazon is in receipt of Plaintiffs' search term counterproposal. Though Amazon maintains that Plaintiffs' proposal is unnecessarily and improperly burdensome, including in light of the millions of total documents Amazon has already produced, Amazon is willing to agree to the first six terms Plaintiffs propose. (Amazon remains willing to discuss Plaintiffs' Signal term after Plaintiffs have reviewed the information contained in this letter.)

However, Amazon's agreement to run these terms (including, should the parties reach agreement, the Signal term) is contingent upon the use of Amazon's TAR model. Plaintiffs suggest that Amazon should train a new model for the purpose of responding to these Requests, but a new model is unnecessary. Amazon's existing model already identified scores of documents relating to this issue, resulting in the substantial productions Plaintiffs already possess. Further, the documents Plaintiffs seek are, by their own framing, those reflecting "conduct squarely at issue in this case," Dkt. 598, at 1, precisely the type of document Amazon's existing TAR model is most equipped to find. Moreover, use of Amazon's existing TAR model will greatly expedite Amazon's production of these documents. Amazon remains willing to meet and confer on the use of TAR and, should Plaintiffs reject Amazon's proposal, meet and confer on a further, narrowed proposal for search terms that results in approximately the same number of documents to review.

*Custodians.* As an initial matter, though their status went unmentioned in Plaintiffs' letter, Amazon agrees to add as custodians [redacted],[3] [redacted], and [redacted] for the following times-in-role:

- [redacted]: May 2022 through August 2025
- [redacted]: January 2022 through November 2024
- [redacted]: May 2021 through August 2025

Amazon is in possession of documents for Mr. [redacted] and Ms. [redacted] for the time periods above. Ms. [redacted] is a former Amazon employee who was not under hold at the time of her departure, which may limit the extent of the documents Amazon has available for her under standard document retention practices. Nevertheless, as indicated by the fact that Plaintiffs have already attached several documents from Ms. [redacted] to their spoliation motion, Amazon

[3] In Plaintiffs' May 15, 2026 letter, Mr. [redacted] was erroneously identified as [redacted]

anticipates many documents that would have been custodial to Ms. [redacted] have already been produced from the files of related custodians.

As to the proposed in-house counsel custodians Plaintiffs seek, Amazon asked during the parties' conferral that Plaintiffs provide the justification for why they believe each attorney would have unique, responsive, non-privileged documents. Plaintiffs' letter identifies no such basis.

First and foremost, Plaintiffs provide no argument that the in-house counsel they seek will provide *any* responsive documents that are not equally accessible through the dozens other custodians from across the business whose documents have already been produced. Plaintiffs contend that they have "presented evidence of Amazon's in-house counsel directing employees to spoliate evidence." Pltfs.' Ltr. at 7. That is inaccurate, but even if it were true, it reveals that any responsive document would be found in the files of the employee who received the purported direction. Any such advice, should it exist, could properly be discovered through the files of non-attorney business custodians, a fact made plain by the many documents Plaintiffs have received to date that contain communications between in-house counsel and non-attorneys.

Setting that aside, Plaintiffs do not even *attempt* to provide a factual basis for the allegation that each requested custodian directed spoliation. Despite seeking a dozen in-house counsel custodians, Plaintiffs' letter mentions only two such counsel and Plaintiffs' motion itself mentions only six. Several in-house counsel Plaintiffs seek do not appear in any exhibit to their spoliation motion, and several others do only in passing, providing no substantive advice regarding alleged spoliation. Nor do Plaintiffs explain in which "other cases against Amazon" such justification can be found, nor for which custodians. This scattered showing in no way demonstrates that the dozen counsel are so extensively involved in the alleged conduct that their inclusion as custodians would be appropriate.

This obfuscation is unproductive and inconsistent with Plaintiffs' assertion that they should receive responses on these issues on an "expedited basis." May 15, 2026 Ltr. from S. Steinberg to K. Trefz at 1. The parties have reached countless agreements on custodians (including Amazon's most senior executives) via good-faith discussions about why each custodian was individually relevant, which sorts of documents the custodian was likely to have, and when necessary, citations to specific documents in Amazon's production that demonstrated or undercut the potential custodian's relevance. *See, e.g.*, Oct. 4, 2024 Ltr. from M. Baker to K. Trefz (providing detailed justifications, often with citations to produced documents, for dozens of proposed custodians). Though Amazon believes the inclusion of any in-house counsel as a custodian here is inappropriate and unnecessary, it is willing to consider any arguments Plaintiffs can provide regarding why a specific attorney's files would provide relevant, non-duplicative, non-privileged documents.

* * *

We are available to meet and confer further about any of the above topics.

Sincerely,

/s/ Katie Trefz

Katie Trefz