# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
- - - - -

FEDERAL TRADE COMMISSION, et al, Plaintiffs, vs. AMAZON.COM, INC., a corporation, Defendant.

CASE NO: 2:23-cv-01495-JHC

VIDEO RECORDED DEPOSITION OF ROBERT KEELING

Wednesday, August 21, 2024, 9:04 a.m.

Wilkinson Stekloff
2001 M Street, NW, 10th Floor
Washington, DC

Reported By: Marjorie Peters, FAPR, RMR, CRR, RSA
Job Number: Veritext CS 6866185

VIDEO RECORDED DEPOSITION OF ROBERT KEELING, a witness herein, called by the Plaintiffs for examination, taken pursuant to the Notice, by and before Marjorie Peters, a Registered Merit Reporter, Certified Realtime Reporter and Notary Public in and for the District of Columbia, at Wilkinson Stekloff, 2001 M Street, NW, 10th Floor, Washington, DC, on Wednesday, August 21, 2024, at 9:04 a.m.

A P P E A R A N C E S

For the Plaintiffs:

Edward H. Takashima, Esquire
Kara King, Esquire
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Washington, DC 20580
etakashima@ftc.gov
kking@ftc.gov
202.326.2464

For the Defendant:

Kosta Stojilkovic, Esquire
Logan L. Page, Esquire
WILKINSON STEKLOFF
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
kstojilkovic@wilkinsonstekloff.com
lpage@wilkinsonstekloff.com
(202) 847-4045

ALSO PRESENT:

Warren Brey, legal videographer
Scott Fitzgerald, Esquire, Amazon

# I N D E X


| EXAMINATION | PAGE |
|---|---|
| ROBERT KEELING | |
| By Mr. Takashima | 7 |
| Acknowledgment of Deponent | 268 |
| Certificate of Court Reporter | 269 |
| Errata Sheet | 270 |


# I N D E X O F E X H I B I T S


| KEELING EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 1 | Plaintiff's 30(b)(6) Notice | 12 |
| Exhibit 2 | list of Document Preservation Notices | 19 |
| Exhibit 3 | 7.9.2024 list of Document Preservation Notices | 21 |
| Exhibit 4 | Legal Hold FAQ 8.23.2022 | 80 |
| Exhibit 5 | Legal Hold FAQ at revision 21.1 | 86 |
| Exhibit 6 | How turn off disappearing messages on Signal | 87 |
| Exhibit 7 | Zapolsky e-mail, 3.2.2022 | 158 |

I N D E X O F E X H I B I T S


| KEELING EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 8 | Wilkinson Stekloff letter and attachment, 8.31.2022, PX1701-001-093 | 216 |
| Exhibit 9 | Relevant Signal Collections list | 229 |
| Exhibit 10 | Stipulation Regarding Privilege Logging, PX2097-001-005 | 261 |

Q. Following the March 19, 2020, hold notice, when was the next time instructions, guidance, or requests were issued to Amazon employees regarding the preservation or collection of information or data?

A. Another hold notice issued on June 4, 2020.

Q. What changes were there between the March 19, 2020, hold notice and the June 4, 2020, hold notice?

A. The text of the June 4, 2020, notice, as far as the types of data that were covered, largely, not entirely, followed the March 19, 2020, notice.

As far as the categories, it made a few edits to some of the subcategories, just to, again, clarify and add that the categories also applied to exclusive brands.

And then -- among others.

And then it further added a few additional categories as well.

Q. Okay.

What are those additional

categories?

A. It included acquisitions, policies and procedures, personnel-related materials, inquiries or complaints from third-party sellers.

There may have been one or two others, but those are most of the additional categories.

Q. Do you recall any other categories?

A. I may recall later, but, again, those were, I think, the vast majority of the additional categories.

Q. You don't recall any other categories, as you sit here right now?

A. Correct.

Q. Okay.

Just to go back to the types of data that were covered, just to make sure we're clear, you said that the types of data that were covered entirely followed the March 19, 2020, notice; is that correct?

A. It's my recollection, yes.

Q. Going back to Exhibit 2 in front of you,

that lists under Tab 3 a document preservation notice from Andrew DeVore to Jeff Bezos; correct?

A. That's correct.

Q. That was on April 13, 2020; correct?

A. Correct.

Q. Was that notice substantively the same as the March 19, 2020, hold notice?

A. Yes.

Q. Were there any changes from the March 19th hold notice to the April 13th hold notice?

A. No.

Q. Was Mr. Bezos the only person who received the April 13th hold notice?

A. That is my understanding, yes.

Q. After the June 4, 2020, hold notice, when was the next time instructions, guidance, or requests were issued to Amazon employees regarding preservation or collection?

MR. STOJILKOVIC: I'll object as to vague in terms of whether you're asking about hold notices or other instructions. He's prepped on

both.

Q. I am asking about both hold notices and anything else.

A. Well, as you can tell by Keeling Exhibit 2, that the hold notice continued to be -- as Amazon, in the course of its evolution of understanding the Government's investigation, identified additional employees to include on the hold, as that occurred, the hold notice that existed at the time was sent to those employees.

Amazon, separately, as I testified before, continued to essentially evolve the hold notice, and a revised version was sent in February 23, 2023, which we refer to as the omnibus hold notice, and, again, May 22, 2024.

But as Exhibit 2 mentions, the hold notice instructions were then, you know, sent to different employees as they were added to the hold.

Instructions on preservation, there are significant numbers of them, kind of more broadly. Do you want me to speak to those?

Q. Please.

But first is e-mail under what steps does Amazon take to preserve e-mail, where it notes that Amazon preserves e-mail kind of on the -- either in place or some language like that. But employees are responsible for preserving e-mail that is separately contained on their laptop.

And then with Slack and Chime, it has a further explanation to employees that Slack and Chime are preserved by Amazon, in place.

Q. Amazon does not preserve Signal on the back end; correct?

A. There is no way to preserve Signal on the back end.

Q. If you will turn back to Exhibit 6.

A. Okay.

Q. Can you describe what this document is?

A. So this document is linked to Exhibit 4, and also, for what it's worth, linked to Exhibit 5 as well.

But Exhibit 6 is titled "How Turn Off Disappearing Messages on Signal." Exhibit 6 represents step-by-step instructions to employees,

to the extent they use Signal, to turn off the disappearing message functionality on that application.

Q. Part of Exhibit 6 is redacted; correct?

A. Yes.

Q. You've seen the unredacted version of this document?

A. Yes.

Q. Under the redaction, are there any instructions regarding preservation of documents or information?

A. Yes.

Q. What are those instructions?

A. It states that if you're under a litigation hold, that the employees should turn off disappearing or auto-delete functionality from applications, and that they should follow the Andrew DeVore communication.

Q. I'm sorry. Can you explain what you mean by the Andrew DeVore communication.

A. There is an October 10, 2020, communication from Andrew DeVore to the S-team that

contained preservation guidance on Signal and Wickr.

Q. So was that guidance then made available to all other employees?

A. No.

This version may -- again, I don't know if there are multiple versions, but this may have been kind of relevant one to S-team employees, I don't know.

But the main instruction is if you are under a litigation hold, to turn off disappearing or auto-delete functionality.

MR. STOJILKOVIC: Just for the record, that Andrew DeVore e-mail is what's listed as Tab 20 of the privilege binder.

MR. TAKASHIMA: Thank you.

Q. Let me take a step back because I want to make sure we have a clear record here.

So the legal hold FAQ we've been talking about that is marked as Exhibit 4 links to -- has a link titled "Follow These Steps" --

A. Yes.

Q. -- regarding disappearing messages;

correct?

A. Correct.

Q. You said that that link, the document linked to that is what's shown here as Exhibit 6; correct?

A. Correct.

Q. Is there more than one version of Exhibit 6, of this page?

A. I do not know the answer to that.

Q. Okay.

Do you know if this is the version of these instructions, "How to Turn Off Disappearing Messages on Signal" that would have been, I guess, at the link in the legal hold FAQ as of February 23, 2023?

A. That is my understanding, yes.

Q. Okay. What is that understanding based on?

A. Based on my preparation today, including communications with counsel and my review of documentation.

Q. Okay.

Your understanding, having seen the actual text here, is that this is an instruction. It is not -- it is not permissive guidance of here's how you can turn off disappearing messages. It is "turn of disappearing messages"; is that correct?

A. I would refer -- I think you get into, again, somewhat of the language behind the particular words that would impact my answer.

In general, this is guidance to Amazon employees to turn off the auto-delete functionality to the extent that they are under legal hold.

Q. Okay. Thank you.

Then you said earlier that, again, in Exhibit 6, there's an instruction to turn off disappearing messages or auto-delete, and a reference to Andrew DeVore's October 10, 2020, communication; is that correct?

A. That's right.

MR. STOJILKOVIC: Just for the record, it's October 1, 2020. The witness may have misspoke, but for clarification.

MR. TAKASHIMA: I appreciate it.
BY MR. TAKASHIMA:
Q. Mr. DeVore's communication to the S-team regarding Signal; correct?
A. Yes, which counsel's correct, was on October 1, 2020.
Q. How -- I'm sorry. Backing up.
The litigation hold FAQ is, you said earlier, available to all employees; correct?
A. That's my understanding, yes.
Q. But Mr. DeVore's e-mail was only sent to the S-team; correct?
A. Andrew DeVore's October 1, 2020, e-mail was sent to the S-team on that date. Afterwards, it was separately forwarded to some additional employees. Some of those may not have been on the S-team.
Q. Okay. When was that e-mail forwarded to people outside of the S-team?
A. Over time. A number of the communications on page 4 and 5 involve, at least in part, forwarding the -- or at least reattaching the

October 1, 2020, guidance from Andrew DeVore.

Q. Okay.

Can you tell me which of the e-mails on pages 4 and 5 of Exhibit 2 were forwarding or attaching or cutting and pasting Mr. DeVore's e-mail to the S-team regarding Signal?

A. I cannot.

I will say it is a majority of these, but as far as which -- there's a lot here. So as far as which one forwarded it versus not, I would not be able to tell you.

Q. Okay.

MR. STOJILKOVIC: I'll just represent that if this is something we need to clean up, I think that's something that we could -- we did not attempt to include that in the forwarded e-mail necessarily here. But we can do that after the deposition.

MR. TAKASHIMA: Let me ask a few more questions, and we'll follow up on that.

BY MR. TAKASHIMA:

Q. I guess just to be clear, this may be

duplicative.

Was Mr. DeVore's e-mail forwarded to anyone who is not identified in these pages 4 and 5 of Exhibit 2?

A. And who are not on the original communication?

Q. Correct.

A. I don't think I could say that with 100 percent certainty.

Q. Under -- on page 5 of the index under Tab 47, there's an entry from [redacted] -- e-mail from [redacted] to multiple recipients.

Do you see that?

A. Yes.

Q. Do you know who those recipients are?

A. I don't.

Q. Going back to Exhibit 6.

A. Yes.

Q. I guess I'm trying just to understand, and you can help me get there, this is a document, you explained, since it's linked in the legal hold FAQ, would be widely available to Amazon employees;

discussion with counsel?

A. Yes, and, really, counsel refreshing my recollection on that point.

Q. Okay.

On the topic of the custodian questionnaire, are you -- has the custodian questionnaire that we discussed been sent to anybody new after the filing of the Complaint?

A. I believe I testified before that I don't know one way or the other. I don't have an understanding one way or the other.

Q. Okay.

Does the custodian questionnaire -- bear with me. This is a little bit of a long-winded question, but I'm trying to make sure -- clear the distinction I'm asking about.

Does the custodian questionnaire on one hand ask recipients what documents and sources of ESI they may have, and then separately ask which of those they use for work-related purposes, or does it just ask what sources of ESI recipients have and may use for work-related purposes, all in one

question?

A. It's the latter. The questionnaire is seeking to understand what information or data sources employees use for work.

Q. Okay. Thank you.

If you go to Exhibit 2 --

A. Yes.

Q. -- and turn to Tab 20, the entry -- there's an entry there for an e-mail from Mr. DeVore to the S-team; correct?

A. Yes.

Q. The date there is 10/1/2020?

A. Correct.

Q. That's the -- Mr. DeVore's S-team guidance regarding Signal that we've talked about a couple of times before the break; correct?

A. Yes.

Q. Then, again, that -- in that e-mail, Mr. DeVore, I guess, gave some guidance regarding the use of Signal or other messaging; is that correct?

A. Yes. The guidance related to both

Signal and Wickr, because at this point, in October of 2020, Amazon had not yet rolled out an enterprise version of Wickr.

Q. Okay.

What was that guidance?

A. The guidance was for employees to limit the use of Wickr and Signal to one of, essentially, five use cases.

Q. Okay.

What were those five use cases?

[redacted]

Q. Okay.

[redacted]

[redacted]

Fourth is purely administrative or nonsubstantive communications.

And the fifth use case is purely personal communications.

Q. Did Mr. DeVore's e-mail contain any further guidance on what personnel matters would be highly sensitive versus routine?

A. No. As I said, there was essentially further guidance that -- I kind of forget the exact language, but essentially, normal personnel discussions or personnel records would be outside of the use case.

Q. Okay.

No further elaboration on what would be considered -- what would qualify as highly sensitive; is that fair?

A. That is my understanding.

Q. Okay.

Did Mr. DeVore's e-mail contain any, I guess, further elaboration on what would be -- what would fall under the category of purely