# EXHIBIT 4

LAW OFFICES
WILLIAMS & CONNOLLY LLP®

KATHERINE A. TREFZ
(202) 434-5038
ktrefz@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 8, 2024

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

Via Email

Shira A. Steinberg, Esq.
Amanda L. Butler, Esq.
Jesse Vella, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20590
ssteinberg1@ftc.gov
abutler2@ftc.gov
jvella@ftc.gov

Re: *FTC v. Amazon.com, Inc.*, Case No. 2:23-cv-01495-JHC (W.D. Wash.)

Dear Counsel:

I write to follow up on your July 25, July 26, July 29, and August 2, 2024 letters regarding search terms, custodians, and date ranges. I also provide several additional responses to inquiries raised in the July 18, 2024 meet and confer regarding information Plaintiffs requested to inform custodial negotiations.

On June 20, 2024, Amazon proposed 54 custodians, and on June 27, 2024, Amazon indicated its willingness to immediately begin negotiating search strings for those custodians bucketed into broad subject-matter categories for over 150 of Plaintiffs' Requests for Production, in the interest of getting productions underway for a tranche of documents while maintaining negotiations for later tranches. In furtherance of its proposal, Amazon provided almost 200 search strings on July 22, 2024. Plaintiffs opted for a different, wholesale, approach. On July 22, 2024, Plaintiffs sent over 1,000 search strings with custodians forthcoming. On July 25, 2024, Amazon first received Plaintiffs' custodian proposal, which included 95 custodians beyond those Amazon had proposed.

In the backdrop of search terms and custodian discussions, Plaintiffs have asked Amazon to defend its default time period of 1/1/2018 through the date of Complaint (counter to Plaintiffs'

default time period proposal of 1/1/2014 to present). Amazon explained its position that not all topics were relevant going back to 2014 but continuously agreed to consider more expansive date ranges for particular topics, such as for Seller-Fulfilled Prime and Nessie, where it made sense based on the allegations in the case. Amazon also explained to Plaintiffs the difficulty of assessing burden for producing and reviewing pre-2018 documents without having received both Plaintiffs search terms and custodian proposals—an explanation that bore out in reality. There is a clear difference between scoping the burden of production for 54 custodians and 200 search terms as opposed to 148[1] custodians and counting and 1100 search terms (many of which could be considered as more than one search term given that some terms are joined merely by an "OR" connector).

Custodians, search terms, and date range all work together to determine whether the scope of Amazon's potential production satisfies the principles encompassed in Federal Rule of Civil Procedure 26(b)(1), Local Civil Rule 26(f), and the Court's ESI Order (Dkt. 256). Plaintiffs' current proposals on all three combine to create a technologically unworkable approach that leaves Amazon shouldering an extreme and undue burden. Amazon hopes the parties can work together to bridge the gap between their proposals, particularly given the lengthy investigation and massive amount of documents produced to date in this case.

In the interest of moving negotiations forward, Amazon proposes the following next steps:

*Search Terms*. As an initial assessment of the burden that would be imposed by Plaintiffs' proposal, Amazon ran Plaintiffs' search terms on the 54 custodians Amazon proposed for Amazon's proposed default time period of 1/1/2018 – 9/26/2023.[2] Those search terms hit on over 15 million documents (including families) in that 54-custodian set. As Amazon has previously explained, documents of that volume cannot be efficiently or effectively run through TAR via Brainspace or Relativity. *See* July 30, 2024 Ltr. from R. Keeling to S. Steinberg at 2-3.

Many of the terms that received the highest hit counts include those in Plaintiffs' "General" category—a category that has little independent relevance, lacks any link to Plaintiffs' discovery requests, and runs contrary to statements Plaintiffs have made throughout the parties' months-long meet and confers. Take the following examples:

- "Sh*t OR Shoot" and "F*ck OR fck OR Fu€k OR Motherf* OR WTF*" return nearly 6 million hits. These terms are not even facially relevant to Plaintiffs' Complaint, let alone responsive to any of the 393 Requests for Production that Plaintiffs have issued.

- Plaintiffs have proposed at least one expansive search term clearly meant to capture documents responsive to Plaintiffs' Request No. 8 regarding words on David

---

[1] Plaintiffs repeat [redacted] twice in their list of proposed custodians by switching first and last names.
[2] Amazon is not able to run all of Plaintiffs' search terms as many return errors in Relativity. Plaintiffs have yet to correct all their proposed search terms.

Zapolsky's wall.[3] But this search term is written in a way that yields an extraordinarily high number of document hits for a topic that Amazon has strenuously objected to on relevance grounds. Moreover, Plaintiffs ignore the fact that Amazon never agreed to search terms for this Request in the first place.

- Plaintiffs have proposed a number of one-word general terms similarly driving high hit counts such as "Google," "Target," "Microsoft," "Walmart," "UPS," "Jet," and "eBay." Again, Plaintiffs repeatedly assured Amazon during the last several months of meet and confers that Amazon's burden and vagueness objections to Plaintiffs' expansive discovery requests could be addressed through search terms and custodian negotiations. Amazon repeatedly stated in response that it would be willing to defer those objections to these negotiations under the understanding that this meant Plaintiffs would not propose one-word terms like "eBay" or "Jet" lacking any tie, connector, or limiter. Plaintiffs' own statements contradict this approach. During the parties' July 25, 2024 meet and confer, the FTC agreed a one-word search term like "Walmart" would be inappropriate.

As a result, Amazon proposes that Plaintiffs work to reasonably narrow, revise, or delete search terms in their "General" category. In conjunction, Amazon will work towards responding to the Plaintiffs' categories of search terms tied to the Complaint allegations: (1) Market Definition; (2) Fulfillment; and (3) Anti-discounting.

*Bucketing*. The parties are aligned that an efficient way to address Plaintiffs' expansive discovery requests involves bucketing custodians and search terms into categories rather than working on an RFP-by-RFP basis. While Amazon disagrees with whether particular search terms and particular custodians should belong to certain categories, Amazon agrees with Plaintiffs that search terms and custodians can be bucketed into at least three categories: (1) Market Definition; (2) Fulfillment; and (3) Anti-discounting. Amazon requests, however, that Plaintiffs separate out a bucket for their distinct advertising and search-related allegations. Amazon's advertising and search business units focus their work on Amazon's advertising services and organic search results. Applying any and all of Plaintiffs' broader market definition terms eviscerates the point of the bucketing. For example, some of Plaintiffs' broader "market definition" terms include: "all your needs," "GMS," and "Margin*." Other terms clearly do not relate to Plaintiffs' advertising or search allegations, like "((Prime W/2 (component* OR benefit* OR bundle*)) OR Prime Shipping OR Prime Video OR Amazon Music OR Prime Gaming OR Prime Reading OR Whole Foods OR Amazon Fresh) W/25 (subscription* OR subscrib* OR members* OR value*)." If Plaintiffs agree, Amazon requests that Plaintiffs identify their advertising- and search-related search terms and custodians.

---

[3] Plaintiffs' proposed search string is as follows: (Zapolsky OR banned OR forbidden OR specific word* OR legal OR guidance OR guideline*) AND (wall OR whiteboard OR list OR align* OR big data OR cadence OR frame OR impact OR platform OR scal* OR table stake* OR vector OR contour* OR frictionless OR mitigant OR lean-in OR level set OR machine learning OR ML OR over-index OR revector OR say more about OR single-thread* OR super* OR think around corner)

*Custodians*. Amazon is actively scoping all of Plaintiffs' additional proposed custodians. Amazon expects that it will be able to agree to some of the additional custodians on Plaintiffs' list, subject to further discussion on relevant time in role, bucketing, and efforts to address Amazon's burden-related objections. With respect to other proposed custodians, Amazon believes that a meet and confer would be useful, and requests that the parties discuss the items below. Amazon cannot fully evaluate many of Plaintiffs' proposed custodians without further discussion, including on the following topics:

- We would like to understand the roles for which Plaintiffs propose each custodian. Plaintiffs have listed numerous roles for particular custodians, even when current or certain former roles appear to have marginal or no relevance.

- Plaintiffs propose a number of custodians that, to the extent they have any relevant or responsive documents, will have duplicative documents of other senior custodians that Amazon has already proposed; thus, the burden of collecting, reviewing, and producing their documents is not warranted. These individuals include but are not limited to [redacted]

- Plaintiffs propose a number of custodians who hold roles in subject matters for which Amazon has not agreed to search for documents and/or for which Amazon provided targeted collections given the marginal or complete lack of relevance of these topics to the Complaint. Amazon seeks to further understand Plaintiffs' basis for proposing the following custodians:
    - [redacted]
    - Jeff Blackburn, who held a high-level role over Prime Video
    - [redacted]
    - [redacted]
    - [redacted]
    - Jay Carney, who previously served as Senior VP of Global Corporate Affairs
    - Individuals who have had financial roles, including: [redacted] Brian Olsavsky, [redacted]

- [redacted]
- Russell Grandinetti, who is SVP of International Stores
- Drew Herdener, who is SVP of Comms and Community Impact
- Tony Hoggett, who is SVP of WW Grocery Stores
- Mike Hopkins, who is SVP of Amazon Video and Studios
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- David Zapolsky, who is Amazon's General Counsel

- Amazon seeks to further understand Plaintiffs' interest in additional custodians that appear to be proposed in relation to Plaintiffs' Prime allegations given the relatively small role Prime plays in Plaintiffs' Complaint, the information that Plaintiffs already received in response to their investigation, and the custodians Amazon has already proposed on this subject, including: Noah Borun, Nahshon Davidai., Greg Greeley, and Cem Sibay.

*Date Ranges*. Given that Amazon has now had some ability to scope Plaintiffs' search terms and proposed custodians, Amazon proposes the following compromise on date ranges in this action, though we reiterate that a broader date range will exacerbate concerns about search term and custodian breadth:

- **Custodial Productions**. Amazon agrees to produce custodial documents starting on 1/1/2016. Amazon reserves rights to negotiate more limited collections and productions for certain custodians who cover topics with marginal relevance and for whom a full 8-year collection and review effort is not warranted. For pre-2016 documents, Amazon will continue to consider specific topics for which Plaintiffs seek pre-2016 documents and Plaintiffs' rationale. Amazon has already

agreed to produce SFP-related documents back to 2015 and Nessie-related documents back to 2014 and is not aware of any outstanding requests for particular topics going back to pre-2014.

- **Targeted Productions**. As requested by Plaintiffs, Amazon provided a list of targeted collections it has agreed to produce to date. Given the burden of retrieving targeted collections, Amazon has requested that Plaintiffs identify which targeted collections, if any, that they seek additional documents. Plaintiffs have agreed to do so. Amazon further requests that Plaintiffs make any such evaluation in light of what the custodial collections will already cover in this action.

- **Documents Past the Date of the Complaint**. Amazon is willing to meet and confer regarding an appropriate refresh of documents in this matter past the date of the Complaint.

Amazon requests a conferral to discuss the issues outlined above.

* * *

In addition to the above, Amazon also provides several responses to questions raised in the July 18, 2024 conferral and various letters:

- For the purposes of custodian negotiations, Plaintiffs requested that Amazon provide a present organization chart, and organization charts going back to 2014. As we have previously noted, these charts do not exist independently and must be created. In the spirit of cooperation, Amazon will create additional organization chart information and provide it by August 16.

- For the purposes of custodian negotiations, Plaintiffs asked whether we can confirm how the reporting tree under [redacted] works with respect to FMA. [redacted]

- For the purposes of custodian negotiations, Plaintiffs asked who had responsibility for SC-FOD after 2022. From December 2022 to the present, [redacted].

- For the purposes of custodian negotiations, Plaintiffs asked that Amazon confirm whether the Brand Excellence Team owns ASB and CXA, and whether Amazon can

provide some explanation for the Brand Excellence Team's responsibilities. [redacted]

- In their July 25 letter, Plaintiffs asked whether documents existed for [redacted]. Plaintiffs relied on a letter in the *California* action. Amazon represented in the California action that it did not have emails for these custodians. The *California* AG later asked Amazon to check if such custodians had Workdocs available. Amazon was able to confirm that Wordocs were available for those custodians.

- In their July 29 letter, Plaintiffs claim that "Amazon's July 22 letter accompanying its search terms proposes groups of custodians for each of its suggested five buckets. However, within certain bucket of search terms (i.e., buckets 2, 3 and 5), Amazon then proposes running some search strings for smaller groups of custodians while others would be run for all custodians within those buckets." Plaintiffs are mis-reading Amazon's spreadsheet. Amazon made 5 different tabs for its custodian buckets. However, Amazon agreed and identified in its letter that certain terms relating to certain topics should be run for more than one bucket. Accordingly, for example, in Amazon's bucket 5, Plaintiffs will generally see most search terms applied to bucket 5 custodians: Dave Clark, Doug Herrington, Jamil Ghani, Jeff Bezos, Jeff Wilke, John Felton, [redacted], Neil Lindsay, [redacted], Tom Taylor. For Plaintiffs' benefit, Amazon identified when a term was being repeated across more than one custodian bucket by marking it green and *adding*, not subtracting, custodians for certain terms in that bucket. Amazon is happy to use Plaintiffs' one-tab formatting moving forward if that is easier for Plaintiffs.

Sincerely,

Katie Trefz

cc: Susan A. Musser, Edward H. Takashima, Daniel A. Principato, FTC
Michael Jo, New York State Office of the Attorney General

Timothy D. Smith, Oregon Department of Justice
Molly A. Terwilliger, Morgan, Lewis & Bockius LLP
Robert Keeling, Sidley Austin LLP